UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ABU DHABI COMMERCIAL BANK,           :
                                     :
                                     :
                                     :
                          Plaintiff, :
                                     :   08 Civ. No. 7508 (SAS)
           - against -               :
                                     :   **ECF Case**
MORGAN STANLEY & CO.                 :
INCORPORATED, ET AL.,                :
                                     :
                          Defendants.:
                                     :
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

Joshua M. Rubins
James J. Coster
SATTERLEE STEPHENS BURKE &
    BURKE LLP
230 Park Avenue
11th Floor
New York, New York  10169
(212) 818-9200
*Counsel to Defendants Moody's Investors
    Service, Inc. and Moody's Investors
    Service Ltd.*


Jonathan Sherman
BOIES SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC  20015
(202) 237-2727
*Counsel to Defendants The Bank of New
    York Mellon and QSR Management
    Limited*

James P. Rouhandeh
Antonio J. Perez-Marques
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
(212) 450-4000
*Counsel to Defendants Morgan Stanley &
    Co. Incorporated and Morgan Stanley &
    Co. International Limited*


Floyd Abrams
Dean Ringel
Adam Zurofsky
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
(212) 701-3000
*Counsel to Defendants Standard & Poor's
    Ratings Services and The McGraw-Hill
    Companies, Inc.*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT .............................................................................................................................. 4

    I.    There Is No Diversity Jurisdiction Over This Action Pursuant to 28 U.S.C. § 1332(a)(2) Because There Are Foreign Parties on Both Sides of the Action ................................................................................................................... 6

    II.    Plaintiff Cannot Cure the Facial Defect by Dropping the Foreign Defendants ............................................................................................................ 7

    III.    Plaintiff Has Not Pled CAFA Jurisdiction and There Is No Factual Basis for CAFA Jurisdiction .............................................................................................. 11

        A.    The Complaint Does Not Plead CAFA Jurisdiction and Fails to Allege the Necessary Factual Predicate ........................................ 12

        B.    Plaintiff Has No Basis to Assert CAFA Jurisdiction .................... 13

CONCLUSION ........................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**CASES**                            **PAGE**

Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157 (2d Cir. 1998) ........................ 12

Cargill Int'l. S.A. v. M/T Pavel Dybenko, 991 F.2d 1012 (2d Cir. 1993) ............................... 5

Duruaku v. BB & T Bank, No. 05-5285, 2006 WL 1805887 (D.N.J. June 29, 2006) ............ 14

Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc., 744 F. Supp. 450
    (S.D.N.Y. 1990) ................................................................................................................ 8

Envirotech Corp. v. Bethlehem Steel Corp., 729 F.2d 70 (2d Cir. 1984) ................................ 8

Fosen v. United Techs. Corp., 484 F. Supp. 490 (S.D.N.Y. 1980) .......................................... 6

Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007) ........................................................ 12

Gladstone Florist, LLC v. TTP, Inc., No. 06-0713-CV-W-DW, 2006 WL 3827518
    (W.D. Mo. Dec. 28, 2006) ............................................................................................... 14

Global Disc. Travel Servs., LLC v. Trans-World Airlines, Inc., 960 F. Supp. 701
    (S.D.N.Y. 1997) ................................................................................................................ 8

Growth Fund v. Morgan Stanley & Co. Int'l Ltd., No. 97 Civ. 2583, 1998 WL
    375201 (S.D.N.Y. July 2, 1998) ....................................................................................... 6

Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567 (2004) .................................... 6, 7

Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675 (7th Cir. 2006) ............................... 12

John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 588 F.2d 24 (2d Cir. 1978) ............. 4

Lincoln Prop. Co. v. Roche, 546 U.S. 81 (2005) ..................................................................... 6

Lowery v. Ala. Power Co., 483 F.3d 1184 (11th Cir. 2007) .................................................. 12

McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178 (1936) ..................................... 4, 12

Murphy v. Capital One Bank, No. 08 C. 801, 2008 WL 2357641 (N.D. Ill. June 5,
    2008) ............................................................................................................................... 13

Palisades Collections LLC v. Shorts, No. 5:07CV098, 2008 WL 249083 (N.D. W.
    Va. Jan. 29, 2008) ........................................................................................................... 13

Phifer v. City of N.Y., 289 F.3d 49 (2d Cir. 2002) ................................................................... 5

**PAGE**

Rubler v. Unum Provident Corp., No. 04 Civ. 7102, 2007 WL 188024 (S.D.N.Y. Jan. 25, 2007) .................................................................................................................. 8

Ryan v. Volpone Stamp Co., Inc., 107 F. Supp. 2d 369 (S.D.N.Y. 2000) ............................... 8

Samaha v. Presbyterian Hosp., 757 F.2d 529 (2d Cir. 1985) ...................................................... 8

Serrano v. 180 Connect, Inc., 478 F.3d 1018 (9th Cir. 2007) ........................................... 12, 14

Snyder v. Harris, 394 U.S. 332 (1969) ....................................................................................... 6

Strawbridge v. Curtiss, 7 U.S. 267 (1806) ................................................................................. 6

Thomson v. Gaskill, 315 U.S. 442 (1942) .................................................................................. 5

Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518 (D. Conn. 1991) ................... 8

Universal Licensing Corp. v. Paola del Lungo, S.p.A., 293 F.3d 579 (2d Cir. 2002) .............. 6

Wetmore v. Rymer, 169 U.S. 115 (1898) ................................................................................... 5

Williamson v. Tucker, 645 F.2d 404 (5th Cir. 1981) ................................................................. 5

Woodley v. Mass. Mutual, No. 08 Civ. 0949, 2008 WL 2191767 (S.D.N.Y. May 23, 2008) ............................................................................................................................. 12

## STATUTES AND RULES

28 U.S.C. § 1332(a) ......................................................................................................... 1, 4, 5, 6, 7

28 U.S.C. § 1332(d) ............................................................................................................ 2, 12, 13

Fed. R. Civ. P. 12(b)(1) .............................................................................................................. passim

Fed. R. Civ. P. 12(h)(3) ..................................................................................................................... 4

Fed. R. Civ. P. 8(a)(1) ................................................................................................................ 4, 12

Fed. R. Civ. P. 19 ......................................................................................................................... 2, 7

Defendants Morgan Stanley & Co. Incorporated ("MS&Co"), Morgan Stanley & Co. International Limited ("MSIL") (n/k/a Morgan Stanley & Co. International plc), The Bank of New York Mellon ("BNYM"), QSR Management Limited ("QSR"), Moody's Investors Service, Inc. ("Moody's U.S."), Moody's Investors Service Ltd. ("Moody's U.K."), and The McGraw-Hill Companies, Inc. ("McGraw-Hill") and its unincorporated division Standard & Poor's Ratings Services ("S&P" and, together with the other defendants, the "defendants") respectfully submit this Memorandum of Law in support of their Joint Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[1]

## PRELIMINARY STATEMENT

The complaint should be dismissed because the sole basis of federal subject matter jurisdiction alleged in the complaint is invalid. In this action, a foreign plaintiff, Abu Dhabi Commercial Bank ("ADCB" or "plaintiff"), asserts claims against domestic and foreign defendants and alleges diversity jurisdiction under 28 U.S.C. § 1332(a)(2). (Compl. ¶¶ 22, 25.) At a conference on September 22, 2008, defendants asserted – and plaintiff did not dispute – that diversity jurisdiction did not exist as alleged, because plaintiff is an alien and defendants include both citizens and aliens. The complaint alleges neither the existence of, nor the basis for, any other theory of subject matter jurisdiction. Accordingly, the complaint is facially deficient as to subject matter jurisdiction and must be dismissed.

At the September 22 conference, two possibilities were raised as to how this facial defect might be cured. First, plaintiff raised the possibility of jurisdiction under the Class Action

---

[1] With the permission of the Court, as discussed at a conference on September 22, 2008, defendants intend to raise other grounds for dismissal, if necessary, in a subsequent motion to dismiss pursuant to Rule 12. Without limiting the generality of the foregoing, defendants expressly reserve and do not waive any and all defenses on the basis of personal jurisdiction.

Fairness Act, § 1332(d) ("CAFA") – a jurisdictional ground neither alleged in nor supported by the allegations of the complaint.  Second, there was discussion as to whether the facial defect in diversity jurisdiction could be cured by dropping the foreign defendants, which would only be possible if those defendants were not indispensable parties under Rule 19 of the Federal Rules of Civil Procedure.

The Court permitted limited jurisdictional discovery to explore these possibilities.  The discovery provided by defendants to plaintiff following the September 22 conference clearly demonstrates that (i) plaintiff has no basis to assert CAFA jurisdiction, which can exist only if the potential class consists of 100 or more plaintiffs; and (ii) plaintiff cannot cure the facial defect by dropping the foreign defendants, because several foreign parties are indispensable to plaintiff's contract claims.  Plaintiff's continuing refusal to amend its complaint to drop the foreign defendants or otherwise cure the jurisdictional defects mandates dismissal of the complaint.

For the foregoing reasons and as set forth more fully below, the complaint should be dismissed for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

On August 25, 2008, ADCB, a bank headquartered in Abu Dhabi, United Arab Emirates (Compl. ¶ 25) and a citizen of Abu Dhabi (Compl. ¶ 22), filed a complaint in the above-captioned action asserting 33 claims against three foreign and five domestic defendants (Compl. ¶¶ 10-11, 13, 148-370).

ADCB's claims arise from its purchase on August 3, 2005, of $10,000,000 of investment-grade mezzanine capital notes issued by Cheyne Finance PLC ("Cheyne-Ireland"), an investment vehicle created under Irish law for the purpose of issuing securities to sophisticated overseas

investors.[2] (Rouhandeh Decl. Ex. A (Info. Mem.) at 3 (prohibiting sales in United States); 18 (suitable only for sophisticated investors); 70 ("Description of the Issuer").)[3] ADCB brings its claims as a putative class action on behalf of all persons who, like ADCB, acquired investment-grade mezzanine capital notes issued by Cheyne-Ireland, as well as on behalf of purchasers of similar investment-grade mezzanine notes issued by Cheyne Finance Capital Notes LLC ("Cheyne-U.S.," and such Irish and U.S. notes, the "Capital Notes").[4] (Compl. ¶ 8.)

The complaint asserts claims against three foreign defendants – MSIL, QSR, and Moody's UK – and five domestic defendants – MS&Co, BNYM, Moody's U.S., S&P and McGraw-Hill. (Compl. ¶¶ 10-11, 13, 148-370.) MSIL, which recently changed its name to Morgan Stanley & Co. International plc, is a United Kingdom broker-dealer regulated by the United Kingdom Financial Services Authority, with its principal place of business in London, England. (Rouhandeh Decl. Ex. F (Annual Report of Morgan Stanley on Form 10-K for the

---

[2] ADCB purchased $10,000,000 of mezzanine capital notes issued by Cheyne Ireland on August 3, 2005. See Rouhandeh Decl. Ex. D (Redacted Investor List) at 2-3 (establishing that ADCB purchased $10,000,000 of mezzanine capital notes designated as tranche and series MCN 2005-5A on August 3, 2005); Marshall Decl. Ex. A (Pricing Supplement for Cheyne Finance PLC Mezzanine Capital Notes Series and Tranche Number MCN 2005-5A) at 1 (establishing that MCN 2005-5A consisted of mezzanine capital notes issued by Cheyne Finance PLC on August 3, 2005). "Rouhandeh Decl." and "Marshall Decl." refer, respectively, to the accompanying declarations of James P. Rouhandeh and Damien Marshall, each in support of Defendants' Joint Motion to Dismiss the Complaint dated Nov. 5, 2008.

[3] "Info. Mem." refers to the Cheyne Finance PLC U.S. $3,000,000,000 Capital Note Programme Information Memorandum dated July 29, 2005. In accordance with the rules of the Court, each exhibit has been excerpted to total no more than 15 pages. For the convenience of the Court, relevant excerpts appear highlighted within each exhibit.

[4] Cheyne-U.S. is a wholly owned subsidiary of Cheyne-Ireland, established under Delaware law for the purposes of issuing capital notes to U.S. investors and investing the proceeds in the capital notes issued by Cheyne-Ireland. (Rouhandeh Decl. Ex A (Info. Mem.) at 70.)

Fiscal Year Ended November 30, 2007) at 81.) Moody's UK is a corporation established under English and Welsh law with its principal place of business in London, England. (Decl. of Felix Sotomayor in Supp. of Defs.' Mot. to Dismiss.) QSR is also a corporation established under English and Welsh law with its principal place of business in London. (Marshall Decl. Ex. B (QSR Management Limited Certificate of Incorporation on Change of Name).) Plaintiff does not and cannot dispute that certain defendants are foreign. Indeed, plaintiff has referred in correspondence to the Court to the "foreign defendants" and directed its Summons in this case to the London address of each foreign defendant. (Rouhandeh Decl. Ex. E (Letter from Daniel Drosman to the Court (Sept. 17, 2008)) at 1; Summons, Sched. "A.")

Plaintiff asserts three categories of claims against each defendant, all pursuant to New York law: claims for and related to alleged contract breaches, claims for alleged breaches of fiduciary duties, and claims for alleged common law fraud and negligent misrepresentation. (Compl. ¶¶ 148-370.) Plaintiff has asserted no federal claims, and has not alleged the existence of any federal question.

The complaint states that "[t]his Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2)." (Compl. ¶ 22.) No other basis of jurisdiction is identified in the complaint. (See, e.g., Compl. ¶¶ 22-24 ("Jurisdiction and Venue").)

## ARGUMENT

A party may move to dismiss an action for lack of subject matter jurisdiction at any time during the course of an action. Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(h)(3); John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 588 F.2d 24, 27 (2d Cir. 1978). It is the burden of the plaintiff to plead a basis for jurisdiction. See Fed. R. Civ. P. 8(a)(1) (requiring that the complaint state the grounds for jurisdiction); McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189

(1936) (holding that party asserting jurisdiction "must allege in his pleading the facts essential to show jurisdiction").  Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting jurisdiction.  Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

Courts may consider evidence extrinsic to the complaint in assessing whether subject matter jurisdiction exists.  See Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002).  Moreover, when a defendant challenges the existence of subject matter jurisdiction as a factual matter, irrespective of the pleadings, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981).  Rather, the Court is free to weigh the evidence and satisfy itself as to the existence of jurisdiction, including by examining extrinsic evidence.  See, e.g., Wetmore v. Rymer, 169 U.S. 115, 120 (1898); Phifer, 289 F.3d at 55.  Indeed, the Second Circuit has held that "the district court *must* look at the substance of the allegations to determine jurisdiction.  In resolving the jurisdictional dispute, the district court must review the pleadings and any evidence before it . . . ."  Cargill Int'l. S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993) (emphasis added).

Here, ADCB's assertion of federal jurisdiction on the basis of diversity under § 1332(a)(2) is facially defective.  It is well-established that the existence of foreign parties on both sides of the action renders § 1332(a)(2) inapplicable.  The complaint alleges neither the existence of nor the factual basis for any other theory of subject matter jurisdiction.  As a result, and as explained further below, the complaint should be dismissed pursuant to Rule 12(b)(1).

5

## I. There Is No Diversity Jurisdiction Over This Action Pursuant to 28 U.S.C. § 1332(a)(2) Because There Are Foreign Parties on Both Sides of the Action

The complaint alleges that "[t]his Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2)." (Compl. ¶ 22.) Section 1332(a)(2) provides that the federal courts have diversity jurisdiction over a civil action if the matter in controversy exceeds $75,000 and the matter "is between . . . citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Section 1332(a)(2) requires "complete diversity" between all plaintiffs and all defendants. Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005); Strawbridge v. Curtiss, 7 U.S. 267 (1806). For that reason, diversity jurisdiction under § 1332(a)(2) does not exist when aliens appear on both sides of the action. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 569 (2004) (finding a lack of diversity "because . . . aliens were on both sides of the case"); Universal Licensing Corp. v. Paola del Lungo, S.p.A., 293 F.3d 579, 581 (2d Cir. 2002) ("[D]iversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens."). This is true even if the aliens on each side are from different countries. See Fosen v. United Techs. Corp., 484 F. Supp. 490, 495 (S.D.N.Y. 1980) (finding no jurisdiction where plaintiffs were Norwegian and one of defendants was Japanese). Furthermore, a plaintiff cannot circumvent the "complete diversity" requirement by pointing to unnamed class members who may be diverse from defendants, as the "complete diversity" requirement is in respect of named plaintiffs, and unnamed class members are disregarded. See Snyder v. Harris, 394 U.S. 332, 340 (1969).

For example, in Growth Fund v. Morgan Stanley & Co. Int'l Ltd., No. 97 Civ. 2583, 1998 WL 375201 (S.D.N.Y. July 2, 1998) (Scheindlin, J.), the plaintiffs were both domestic and

foreign citizens and the defendant was one of the foreign defendants here, MSIL.  This Court granted plaintiffs' motion to remand the action to state court, holding that "[b]ecause the plaintiffs here include both United States citizens and foreigners, and the defendant is a foreigner, there is no diversity jurisdiction over this action."  Id. at *2.

Here, the complaint alleges that plaintiff is "a bank headquartered in Abu Dhabi, United Arab Emirates" (Compl. ¶ 7) and is "a citizen of Abu Dhabi" (Compl. ¶ 22).  It is undisputed that each of the foreign defendants is an alien.  Indeed, plaintiff was aware of these facts from this action's inception, as the Summons listed the London addresses of the foreign defendants, and plaintiff has referred to them as "foreign." (Summons, Attach. A; Rouhandeh Decl. Ex E (Drosman Letter).)  Plainly, "aliens [are] on both sides of the case, and the requisite diversity [is] therefore absent."  Grupo Dataflux, 541 U.S. at 569.

Defendants brought the jurisdictional defect to plaintiff's attention more than six weeks ago, yet plaintiff has refused to amend the complaint in an attempt to cure this defect.  Because the sole basis for jurisdiction asserted in the complaint – diversity jurisdiction under 28 U.S.C. § 1332(a)(2) – does not apply to this action, the Court should dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**II.     Plaintiff Cannot Cure the Facial Defect by Dropping the Foreign Defendants**

The issue of the indispensability of the foreign defendants under Rule 19 of the Federal Rules of Civil Procedure is not yet ripe, because the indispensable foreign defendants remain parties to this action, and plaintiff has not sought, and does not require, leave of Court to amend the complaint to drop the foreign defendants.  Nonetheless, the complaint itself suggests, and the documents produced as part of the limited jurisdictional discovery permitted by the Court confirm, that several foreign parties are indispensable to plaintiff's contract claims.  Thus,

7

plaintiff could not cure the facial defect in diversity jurisdiction even if it dropped the foreign defendants, absent a willingness to drop all contract claims as well.[5]

It is axiomatic that "[c]ourts may not drop a non-diverse party from a case to cure a jurisdictional defect if that party is indispensable." Rubler v. Unum Provident Corp., No. 04 Civ. 7102, 2007 WL 188024, at *1 (S.D.N.Y. Jan. 25, 2007); Samaha v. Presbyterian Hosp., 757 F.2d 529, 531 (2d Cir. 1985). It is likewise well-established that a party to a contract is indispensable to an action concerning that contract. See Ryan v. Volpone Stamp Co., Inc., 107 F. Supp. 2d 369, 387-89 (S.D.N.Y. 2000); Global Disc. Travel Servs., LLC v. Trans World Airlines, Inc., 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997); Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991) ("[A] contracting party is the paradigm of an indispensable party."). Indeed, this Court has rejected as a "blatant attempt at forum shopping" a party's apparent effort to engineer diversity jurisdiction by dropping a non-diverse contract party. See Global Disc., 960 F. Supp. at 709-10 (citing Envirotech Corp. v. Bethlehem Steel Corp., 729 F.2d 70, 76 (2d Cir. 1984)) (stating "[e]quity and good conscience" require the Court to reject a party's effort "to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal forum").

The complaint asserts various contract claims against the defendants. (Compl. ¶¶ 155-206, 244-95, 337-87.) Each of those claims is premised on an alleged contract between ADCB

---

[5] Plaintiff's contract-related claims are Counts 1-B through 1-H, 2-B through 2-H, and 3-B through 3-H. Although plaintiff's claims for tortious interference with contract (Counts 1-F, 1-H, 2-G, 2-H, 3-G, and 3-H) sound in tort, courts have determined that this type of tort "is so entangled with and, in fact, derived from the contractual relationship that [the court] would be compelled to adjudicate the breach of contract claim while deciding the tort claim." Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc., 744 F. Supp. 450, 460 (S.D.N.Y. 1990).

and the various defendants. As to each defendant, plaintiff has identified the source of the alleged contractual obligations identically as follows:

> "The terms of the contract are included in substantially identical written materials distributed to each Class member. These documents include substantially identical presentations to prospective investors and substantially identical offering memoranda." (Compl. ¶¶ 157, 166, 246, 255, 340, 347.)

Based on these allegations, the Morgan Stanley defendants (MS&Co and MSIL) produced to plaintiff the information memorandum and investor presentations for the Capital Notes purchased by ADCB – the very documents ADCB identifies in the complaint as setting forth the terms of the alleged contract with defendants. Specifically, on October 10, 2008, the Morgan Stanley defendants produced to plaintiff the final information memorandum dated July 29, 2005 for Capital Notes issued by Cheyne-Ireland and purchased by ADCB (Rouhandeh Decl. Ex. A (Info. Mem.)), as well as investor presentations dated October 2004 and September 2005 with respect to those Notes (Rouhandeh Decl. Exs. B-C). The complaint specifically references presentations on each of those dates. (Compl. ¶¶ 65(a), 65(e).)

These documents clearly demonstrate that, to the extent that any Morgan Stanley entity was a party to an alleged contract with ADCB (a premise that defendants dispute[6]), the contracting party could only be the foreign defendant MSIL. Indeed, the first page of the information memorandum states that the term "Morgan Stanley" as used throughout that

---

[6] In fact, defendants believe that, to the extent that plaintiff entered into any contract "for the sale of the Capital Notes" (Compl. ¶ 157), that contract was not with defendants but with Cheyne-Ireland, the issuer of the Notes purchased by ADCB – another indispensable foreign party. See infra p. 12.

9

document refers to MSIL.[7]  (Rouhandeh Decl. Ex. A (Info. Mem.) at 1.)  The information memorandum also establishes that MSIL acted as placement agent for the Capital Notes issued by Cheyne-Ireland and purchased by the plaintiff.  (Id. at 1, 3.)  The investor presentations reinforce the indispensability of MSIL.  Throughout these presentations, the limited information attributed to any "Morgan Stanley" entity is consistently attributed to MSIL.  (See, e.g., Rouhandeh Decl. Ex. B (Oct. 2004 Pres.) at 4-8; Ex. C (Sept. 2005 Pres.) at 4-7.)

In addition, even a cursory review of the information memorandum makes clear that additional foreign parties would be indispensable to any contract claim based thereon, including existing foreign defendants and foreign parties not named as defendants.  (See, e.g., Rouhandeh Decl. Ex. A (Info. Mem.) at 142.)  For instance, ADCB has inexplicably failed to join Cheyne-Ireland, which, as the issuer of the Capital Notes purchased by ADCB, would surely be a party to ADCB's alleged contract "for the sale of the Capital Notes." (Compl. ¶ 157.)  Indeed, the structure of the note offering demonstrates the indispensability of multiple foreign parties: a foreign plaintiff purchased notes from a foreign issuer through a foreign placement agent, involving a foreign auditor, a foreign listing agent, a foreign calculation agent, a foreign trustee, two foreign paying agents, and two foreign legal advisers.  (See, e.g., Rouhandeh Decl. Ex. A (Info. Mem.) at 142.)  In fact, the only U.S. entity involved in the transaction was a U.S. law firm that advised the foreign manager as to English and U.S. law.  (Id.)

---

[7] Moreover, the corporate relationship between MS&Co and MSIL does not permit plaintiff to avoid this jurisdictional defect.  Because MS&Co is not a direct or indirect parent of MSIL, but rather a corporate "sibling," any indispensability argument based on a parent/subsidiary relationship would be irrelevant to the analysis here.  (Rouhandeh Decl. Ex. F (Form 10-K) at 2, 108.)

Plaintiff's response to the obvious indispensability of foreign defendants to plaintiff's contract claims is two-fold. First, ADCB argues that additional discovery is needed to determine whether foreign parties are indispensable to plaintiff's <u>non-contract</u> claims. This inquiry is irrelevant at this time, however, because as long as the complaint includes contract claims, the indispensable foreign entities destroy diversity jurisdiction. Second, plaintiff argues that <u>other</u> members of the putative class (but not plaintiff) bought Capital Notes issued by Cheyne-U.S. through MS&Co. But even if MS&Co were a party to an alleged contract with such potential class members, that would not vitiate the indispensability of MSIL to the contract claims of this plaintiff, ADCB.

For all of these reasons, plaintiff does not – and cannot – meet the jurisdictional diversity requirements of 28 U.S.C. § 1332(a)(2). Accordingly, the complaint should be dismissed and additional jurisdictional discovery should not be permitted.

## III. Plaintiff Has Not Pled CAFA Jurisdiction and There Is No Factual Basis for CAFA Jurisdiction

Unable to dispute the facial defect of the complaint as to diversity jurisdiction, plaintiff speculated at the September 22 conference that jurisdiction could alternatively exist under CAFA. The complaint, however, neither pleads CAFA jurisdiction nor alleges the key factual predicate supporting it: the existence of at least 100 potential class members. Moreover, the information already made available to plaintiff – showing that the Capital Notes were placed with only 33 investors – demonstrates that plaintiff has no factual basis to allege that the class contains 100 or more investors.

### A. The Complaint Does Not Plead CAFA Jurisdiction and Fails to Allege the Necessary Factual Predicate

CAFA provides that "[t]he district courts shall have original jurisdiction of . . . class action[s]" satisfying certain specific requirements. 28 U.S.C. § 1332(d). For purposes of this action, the critical requirement is set forth in § 1332(d)(5): "[T]he number of members of all proposed plaintiff classes" must be 100 or more. "[S]atisfaction of § 1332(d)(5) serves as a prerequisite . . . to jurisdiction under [CAFA]." Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1020 n.3 (9th Cir. 2007); see also Frederico v. Home Depot, 507 F.3d 188, 195 n.4 (3d Cir. 2007) (holding that CAFA "requires a minimum of 100 persons for a diversity class action"); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 680 (7th Cir. 2006) ("Subsection (d)(5) also contains mandatory language making CAFA inapplicable to . . . class actions involving less than 100 members."); Lowery v. Ala. Power Co., 483 F.3d 1184, 1221 (11th Cir. 2007).

Because it is a jurisdictional requirement, the existence of 100 or more putative class members must be alleged in the complaint. See Fed. R. Civ. P. 8(a)(1); McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir. 1998) (holding that "federal subject-matter jurisdiction based on diversity is unavailable unless [plaintiff's] pleadings demonstrate that" the diversity requirements are satisfied). At the very least, the proponent of diversity jurisdiction must provide "some indication" that its requirements have been met. Woodley v. Mass. Mutual, No. 08 Civ. 0949, 2008 WL 2191767, at *1 (S.D.N.Y. May 23, 2008).

Here, the complaint neither mentions CAFA jurisdiction nor avers the existence of 100 class members. The complaint thus fails to plead facts meeting the jurisdictional prerequisite of

§ 1332(d)(5).[8]  Because ADCB has not "allege[d] . . . the facts essential to show jurisdiction," McNutt, 298 U.S. at 189, the complaint fails to state a basis for CAFA jurisdiction and, having failed to plead any other basis of subject matter jurisdiction, should be dismissed pursuant to Rule 12(b)(1).

        **B.**      **Plaintiff Has No Basis to Assert CAFA Jurisdiction**

Not only is the complaint facially defective as to CAFA jurisdiction, but there is also no evidence that would support an allegation that the Capital Notes were acquired by the required 100 persons.  In fact, the evidence is to the contrary.

At the September 22 conference, the Court directed defendants to provide to plaintiff the number and location of investors who purchased the Capital Notes.  Defendants promptly complied with this instruction and on September 25, 2008, provided plaintiff with a list showing that the Capital Notes were placed with only 33 investors.[9]  Plaintiff also has received this information through documents produced in response to plaintiff's formal discovery requests.  (Rouhandeh Decl. Ex. D (Redacted Investor List) at 2.)  In light of this evidence, plaintiff has no basis to assert subject matter jurisdiction under CAFA.

Courts have held that the jurisdictional requirements must not only be alleged, but also established by the party asserting CAFA jurisdiction.  See Murphy v. Capital One Bank, No. 08 C. 801, 2008 WL 2357641, at *2 (N.D. Ill. June 5, 2008) ("[CAFA] requires the removing party to establish each of the jurisdictional facts . . . . "); Palisades Collections LLC v. Shorts, No.

---

[8] Instead, the complaint carefully and cautiously states only that "plaintiff believes that there are numerous members in the proposed Class," addressing this point not in stating the basis of jurisdiction, but rather only on its class allegations."  (Compl. ¶ 143.)

[9] Defendants know of only three investors of the initial 33 investors that sold the Notes after the initial placement.

5:07CV098, 2008 WL 249083, at *7 (N.D. W. Va. Jan. 29, 2008) ("[CAFA] requires the removing party to establish that (1) there are 100 or more class members . . . .").

In this case, it is clear that plaintiff has not met, and cannot meet, its burden of pleading (let alone establishing) that there are at least 100 members of the proposed class of Capital Notes investors. The complaint should therefore be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Cf. Serrano, 478 F.3d at 1020; Gladstone Florist, LLC v. TTP, Inc., No. 06-0713-CV-W-DW, 2006 WL 3827518, at *1-2 (W.D. Mo. Dec. 28, 2006) (remanding case to state court because party asserting federal jurisdiction could not show 100 class members); Duruaku v. BB & T Bank, No. 05-5285, 2006 WL 1805887, at *6 (D. N.J. June 29, 2006) ("[B]efore the Court can find that it has subject matter jurisdiction pursuant to [CAFA], BB & T must provide the Court with evidence sufficient to meet its burden that there are more than 100 plaintiffs in all proposed plaintiff classes.").

## CONCLUSION

For the reasons set forth herein, defendants respectfully request that the Court dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Dated: November 5, 2008
       New York, New York

                                            DAVIS POLK & WARDWELL

                                            By:  /s/ James P. Rouhandeh
                                                  James P. Rouhandeh
                                                  james.rouhandeh@dpw.com
                                                Antonio J. Perez-Marques
                                                antonio.perez@dpw.com

                                        450 Lexington Avenue
                                        New York, New York 10017
                                        (212) 450-4000

                                        *Counsel to Defendants Morgan Stanley &*
                                        *Co. Incorporated and Morgan Stanley &*
                                        *Co. International Limited*

                                        CAHILL GORDON & REINDEL LLP

                                        By:  /s/ Dean Ringel
                                                  Floyd Abrams
                                                  fabrams@cahill.com
                                                  Dean Ringel
                                                  dringel@cahill.com
                                                  Adam Zurofsky
                                                  azurofsky@cahill.com

                                        80 Pine Street
                                        New York, New York  10005
                                        (212) 701-3000

                                        *Counsel to Defendants Standard & Poor's*
                                        *Ratings Services and The McGraw Hill*
                                        *Companies, Inc.*

        SATTERLEE STEPHENS
BURKE & BURKE LLP

By: /s/ Joshua M. Rubins
     Joshua M. Rubins
     jrubins@ssbb.com
     James J. Coster
     jcoster@ssbb.com

230 Park Avenue
11th Floor
New York, New York  10169
(212) 818-9200

*Counsel to Defendants Moody's Investors Service, Inc. and Moody's Investors Service Ltd.*


BOIES SCHILLER & FLEXNER LLP

By: /s/ Jonathan Sherman
     Jonathan Sherman
     jsherman@bsfllp.com

5301 Wisconsin Avenue NW
Washington, DC  20015
(202) 237-2727

*Counsel to Defendants The Bank of New York Mellon and QSR Management Limited*