**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ABU DHABI COMMERCIAL BANK, KING
COUNTY, WASHINGTON, TOGETHER AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs,*

v.

MORGAN STANLEY & CO. INC., MORGAN
STANLEY & CO. INTERNATIONAL LTD., THE
BANK OF NEW YORK MELLON, QSR
MANAGEMENT LTD., MOODY'S INVESTORS
SERVICE, INC. AND MOODY'S INVESTORS
SERVICE LTD., STANDARD & POOR'S RATING
SERVICES AND THE MCGRAW-HILL
COMPANIES, INC.,

*Defendants.*

No. 08 Civ. 7508 (SAS) (ECF Case)

---

## JOINT MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE RATING AGENCY DEFENDANTS TO DISMISS THE FIRST AMENDED COMPLAINT

Joshua M. Rubins
James J. Coster
Glenn C. Edwards
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, New York 10169
(212) 818-9200

*Attorneys for Defendants Moody's Investors Service, Inc. and Moody's Investors Service Ltd.*

Floyd Abrams
Dean Ringel
Adam Zurofsky
Andrea R. Butler
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Defendants Standard & Poor's Rating Services and The McGraw-Hill Companies, Inc.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................1

THE FACTS ALLEGED ...........................................................................................3

ARGUMENT ...........................................................................................................4

I.     THE MARTIN ACT PREEMPTS PLAINTIFFS' NON-FRAUD TORT
CLAIMS (COUNTS 2-B–D, 2-I–K) ..................................................................4

II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD (COUNT 2-A)......................6

    A.   The Complaint Fails to Allege Any Material Misrepresentation by
Either Rating Agency.....................................................................................7

    B.   The Complaint Fails to Allege Scienter ..................................................9

    C.   Plaintiffs Fail to Allege Justifiable Reliance on Any Rating................................10

III.   PLAINTIFFS FAIL TO ALLEGE A SPECIAL RELATIONSHIP TO
SUPPORT CLAIMS FOR NEGLIGENCE, NEGLIGENT
MISREPRESENTATION OR BREACH OF FIDUCIARY DUTY
(COUNTS 2-B, 2-C AND 2-D) .................................................................12

    A.   The Negligence-Based Claims Should Be Dismissed ...........................13

    B.   The Breach of Fiduciary Claim Should Be Dismissed .........................15

IV.   PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM
(COUNT 2-B) ALSO MUST BE DISMISSED BECAUSE PLAINTIFFS
FAIL TO ALLEGE THAT ANY RELIANCE ON THE RATING
AGENCIES' OPINIONS WAS REASONABLE ............................................17

V.    PLAINTIFFS' DIRECT CONTRACT CLAIMS FAIL BECAUSE
PLAINTIFFS DO NOT PLEAD A CONTRACTUAL RELATIONSHIP
WITH ANY RATING AGENCY (COUNTS 2-E, 2-F, 2-H) ...........................18

VI.   PLAINTIFFS FAIL TO STATE A CLAIM FOR  BREACH OF
CONTRACT AS A THIRD-PARTY BENEFICIARY (COUNT 2-G) ...........................19

VII.  PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST
ENRICHMENT (COUNT 2-I) ...................................................................22

VIII. PLAINTIFFS FAIL TO STATE A CLAIM FOR  TORTIOUS
INTERFERENCE WITH CONTRACT (COUNT 2-J).....................................23

IX.   PLAINTIFFS FAIL TO STATE ANY AIDING AND ABETTING
CLAIM (COUNT 2-K).............................................................................24

X.      THE FIRST AMENDMENT BARS PLAINTIFFS' RATING AGENCY
        CLAIMS ......................................................................................................26

CONCLUSION..................................................................................................................26

## TABLE OF AUTHORITIES

| Cases | Page |
|---|---|
| *AG Capital Funding Partners, L.P.* v. *State Street Bank & Trust Co.*, 808 N.Y.S.2d 573 (Ct. App. 2005) .......................................................... | 13 |
| *AG Capital Funding Partners, L.P.* v. *State Street Bank & Trust Co.*, 866 N.Y.S.2d 578 (Ct. App. 2008) .......................................................... | 15, 16 |
| *In re Alphastar Insurance Group Ltd.*, 383 B.R. 231 (S.D.N.Y. Bankr. 2008) ............................................................................................... | 6 |
| *Alvord & Swift* v. *Stewart M. Muller Construction Co.*, 413 N.Y.S.2d 309 (Ct. App. 1978) ...................................................................... | 24 |
| *In re Amaranth Natural Gas Commodities Litigation*, 587 F. Supp. 2d 513 (S.D.N.Y. 2008) .................................................................... | 9, 22 |
| *In re Amaranth Natural Gas Commodities Litigation*, 2009 WL 1138716 (S.D.N.Y. Apr. 27, 2009) .................................................................. | 10n |
| *ATSI Communications, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................................................................................... | 7 |
| *Banco Espirito Santo de Investimento, S.A.* v. *Citibank, N.A.*, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ...................................... | 19 |
| *In re Bayou Hedge Fund Litigation*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) ........................................................................................... | 5-6 |
| *Berman* v. *Sugo LLC*, 580 F. Supp. 2d 191 (S.D.N.Y. 2008) ................................ | 18-19 |
| *BHC Interim Funding, L.P.* v. *Finantra Capital, Inc.*, 283 F. Supp. 2d 968 (S.D.N.Y. 2003) .................................................................... | 14 |
| *Bloor* v. *Carro, Spanbock, Londin, Rodmin & Fass*, 754 F.2d 57 (2d. Cir. 1985) ......................................................................................... | 25 |
| *Bose Corp.* v. *Consumer Union of United States, Inc.*, 466 U.S. 485 (1984) ..................................................................................... | 27-28 |

| Cases | Page |
|---|---|
| *Caboara* v. *Babylon Cove Development, LLC*, 862 N.Y.S.2d 535 (2d Dep't 2008) ................................................................ | 5n |
| *Castellano* v. *Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001)..................... | 5 |
| *Catskill Development LLC* v. *Park Place Entertainment Corp.*, 547 F.3d 115 (2d Cir. 2008) ........................................... | 7-8 |
| *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002).............................. | 6n |
| *Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520 (6th Cir. 2007)............................................................ | 7n, 26, 27, 28 |
| *County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 151 (C.D. Cal. 1999)............. | 28 |
| *CPC International Inc.* v. *McKesson Corp.*, 519 N.Y.S.2d 804 (Ct. App. 1987) ................................................................. | 4 |
| *Cromer Finance Ltd.* v. *Berger*, 2001 WL 1112548 (S.D.N.Y. Sept. 19, 2001) ................................................................ | 5n |
| *In re Crude Oil Commodities Litigation*, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................................................... | 7, 10n |
| *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003) ................ | 13 |
| *DeMarco* v. *Robertson Stephens, Inc.*, 318 F. Supp. 2d 110 (S.D.N.Y. 2004) ................................................................ | 8 |
| *Dover Ltd.* v. *A.B. Watley, Inc.*, 423 F. Supp. 2d 303 (S.D.N.Y. 2006) ................ | 5n |
| *In re Enron Corp. Securities Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742 (S.D. Tex. 2005) ......................................... | 15, 26, 27, 28 |
| *In re Enron Corp. Securities Derivative & "ERISA" Litigation*, 2007 WL 1662658 (S.D. Tex. June 5, 2007) ................................. | 15 |
| *Eternity Global Master Fund Ltd.* v. *Morgan Guaranty Trust Co.*, 375 F.3d 168 (2d Cir. 2004)......................................... | 7n, 14, 17 |
| *First Equity Corp.* v. *Standard & Poor's Corp.*, 690 F. Supp. 256 (S.D.N.Y. 1988) ........................................... | 26, 28, 28n |

| Cases | Page |
|---|---|
| *First Equity Corp.* v. *Standard & Poor's Corp.*, 869 F.2d 175 (2d Cir. 1989) ................................................................................................ | 12, 14, 15, 26, 28 |
| *Flag Wharf, Inc.* v. *Merrill Lynch Capital Corp.*, 836 N.Y.S.2d 406 (1st Dep't 2007) ................................................................................... | 22 |
| *Fourth Ocean Putnam Corp.* v. *Interstate Wrecking Co.*, 495 N.Y.S.2d (Ct. App. 1985) ................................................................................. | 20-21 |
| *Glidepath Holding B.V.* v. *Spherion Corp.*, 590 F. Supp. 2d 435 (S.D.N.Y. 2007) ..................................................................................... | 10n |
| *Granite Partners, L.P.* v. *Bear, Stearns & Co.*, 17 F. Supp. 2d 275 (S.D.N.Y. 1998) ..................................................................................... | 10n |
| *Hamlet on Olde Oyster Bay Home Owners Ass'n* v. *Holiday Organization, Inc.*, 874 N.Y.S.2d 508 (2d Dep't 2009) ......................... | 5n |
| *Health-Chem Corp.* v. *Baker*, 915 F.2d 805 (2d Cir. 1990) ..................... | 24 |
| *Heller* v. *Goldin Restructuring Corp.*, 590 F. Supp. 2d 603 (S.D.N.Y. 2008) ......................................................................................................... | 5 |
| *Horn* v. *440 East 57th Co.*, 547 N.Y.S.2d 1 (1st Dep't 1989) .................... | 4, 5, 5n |
| *In re Houbigant, Inc.*, 914 F. Supp. 964 (S.D.N.Y. 1995) ........................... | 20, 21 |
| *Housing Works, Inc.* v. *Turner*, 179 F. Supp. 2d 177 (S.D.N.Y. 2001) ...... | 14 |
| *Hustler Magazine* v. *Falwell*, 485 U.S. 46 (1988) ...................................... | 27 |
| *Hydro Investors, Inc.* v. *Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000) .......... | 7n |
| *Immuno AG* v. *Moor-Jankowski*, 566 N.Y.S.2d 906 (Ct. App. 1991) ............... | 26n-27n |
| *Independent Asset Mgmt. LLC* v. *Zanger*, 538 F. Supp. 2d 704 (S.D.N.Y. 2008) ......................................................................................................... | 17 |
| *Jaillet* v. *Cashman*, 189 N.Y.S. 743 (Sup. Ct. N.Y. Co. 1921) .................. | 15 |
| *Jana Master Fund, Ltd.* v. *JP Morgan Chase & Co.*, 859 N.Y.S.2d 903 (Table), 2008 WL 746540 (Sup. Ct. N.Y. Co. 2008) ......................... | 5 |

| Cases | Page |
|---|---|
| *Jefferson County School District* v. *Moody's Investor's Service*, 175 F.3d 848 (10th Cir. 1999)................................................................ | 26, 27 |
| *Kassover* v. *UBS AG*, 2008 WL 5331812 (S.D.N.Y. Dec. 19, 2008).................... | 5 |
| *Kaufman* v. *Cohen*, 760 N.Y.S.2d 157 (1st Dep't 2003) ............................. | 25 |
| *Kolbeck* v. *LIT America, Inc.*, 939 F. Supp. 240 (S.D.N.Y. 1996)....................... | 25 |
| *Krinos Foods, Inc.* v. *Vintage Food Corp.*, 818 N.Y.S.2d 67 (1st Dep't 2006) ............................................................................... | 22 |
| *Lama Holding Co.* v. *Smith Barney Inc.*, 646 N.Y.S.2d 76 (Ct. App. 1996) ............................................................................... | 23, 24 |
| *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ....................................... | 25n |
| *Maalouf* v. *Salomon Smith Barney, Inc.*, 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003) ......................................................................... | 16 |
| *Marmelstein* v. *Kehillat New Hempstead*, 862 N.Y.S.2d 311 (Ct. App. 2008) ............................................................................... | 15 |
| *Matsumura* v. *Benihana National Corp.*, 542 F. Supp. 2d 245 (S.D.N.Y. 2008) ............................................................................... | 7n |
| *Morin* v. *Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989)............................................. | 24-25 |
| *Nathel* v. *Siegal*, 592 F. Supp. 2d 452 (S.D.N.Y. 2008)........................................ | 5 |
| *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964)............................................. | 27, 28n |
| *Northwestern Mutual Life Insurance Co.* v. *Banc of America Securities LLC*, 254 F. Supp. 2d 390 (S.D.N.Y. 2003) ....................................... | 13n |
| *Ossining Union Free School District* v. *Anderson LaRocca Anderson*, 541 N.Y.S.2d 335 (Ct. App. 1989) ................................................. | 13 |
| *Parrott* v. *Coopers & Lybrand, LLP*, 718 N.Y.S.2d 709 (Ct. App. 2000) ............ | 13-14 |
| *Pension Committee* v. *Banc of America Securities, LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006)..................................................................... | 13 |

| Cases | Page |
|---|---|
| *Pension Committee* v. *Banc of America Securities, LLC*, 592 F. Supp. 2d 608 (S.D.N.Y. 2009) .................................................................................... | 5 |
| *Podany* v. *Robertson Stephens, Inc.*, 318 F. Supp. 2d 146 (S.D.N.Y. 2004) ........................................................................................................... | 8-9 |
| *Pro Bono Investments, Inc.*, v. *Gerry*, 2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005) ................................................................................................ | 6 |
| *Quinn* v. *McGraw-Hill Cos.*, 168 F.3d 331 (7th Cir. 1999) ....................... | 11, 12, 18, 21-22 |
| *Reed* v. *Northwest Publishing Co.*, 530 N.E.2d 474 (Ill. 1988) ................. | 28n |
| *Renner* v. *Chase Manhattan Bank*, 2000 WL 781081 (S.D.N.Y. June 16, 2000) ..................................................................................................... | 25 |
| *Rosenblatt* v. *Christie, Manson & Woods Ltd.*, 2005 WL 2649027 (S.D.N.Y. Oct. 14, 2005) ...................................................................... | 17 |
| *Scalp & Blade, Inc.*, v. *Advest, Inc.*, 722 N.Y.S.2d 639 (4th Dep't 2001) ........... | 5n |
| *SEC* v. *Dunn*, 587 F. Supp. 2d 486 (S.D.N.Y. 2008).................................... | 10n |
| *Securities Investor Protection Corp.* v. *BDO Seidman, LLP*, 222 F.3d 63 (2d Cir. 2000) ...................................................................................... | 13, 14 |
| *S&K Sales Co.* v. *Nike, Inc.*, 816 F.2d 843 (2d Cir. 1987) ......................... | 25n |
| *SNS Bank, N.V.* v. *Citibank, N.A.*, 777 N.Y.S.2d 62 (1st Dep't 2004) ................ | 16 |
| *Sperry* v. *Crompton Corp.*, 831 N.Y.S.2d 760 (Ct. App. 2007) ........................ | 22 |
| *St. Amant* v. *Thompson*, 390 U.S. 727 (1968)........................................... | 27 |
| *Synovus Bank* v. *Valley National Bank*, 487 F. Supp. 2d 360 (S.D.N.Y. 2007) ..................................................................................................... | 20-22 |
| *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)....................... | 9-10, 10n |

| Cases | Page |
|-------|------|
| *Thermal Imaging, Inc.* v. *Sandgrain Securities, Inc.*, 158 F. Supp. 2d 335 (S.D.N.Y. 2001) ................................................................................... | 16 |
| *Time, Inc.* v. *Hill*, 385 U.S. 374 (1967) ................................................ | 27 |
| *United States* v. *Chestman*, 947 F.2d 551 (2d Cir. 1991) ...................................... | 16 |
| *Vanguard Municipal Bond Fund, Inc.* v. *Cantor, Fitzgerald, LP*, 40 F. Supp. 2d 183 (S.D.N.Y. 1999) ......................................................... | 13, 13n, 14 |
| *Virginia Bankshares, Inc.* v. *Sandberg*, 501 U.S. 1083 (1991) ............................ | 8, 9 |
| *White Plains Coat & Apron Co.* v. *Cintas Corp.*, 835 N.Y.S.2d 530 (Ct. App. 2007) ...................................................................................... | 23, 24 |
| *World Wrestling Entertainment, Inc.* v. *Jakks Pacific, Inc.*, 530 F. Supp. 486 (S.D.N.Y. 2007) ............................................................... | 15-17, 17n |
| *Xpedior Creditor Trust* v. *Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004) ....................................................... | 22, 23 |

Page

| Constitutional Provisions | |
|---|---|
| U.S. Const. amend. I ............................................................ | 3, 8, 26-29 |
| Rules | |
| Fed. R. Civ. P.<br>    Rule 9(b) ............................................................ | 2, 7, 9, 10, 25n |
|     Rule 12 (b)(6) ............................................................ | 11, 18, 28 |
| Statutes | |
| N.Y. Gen. Bus. Law | |
|     § 352-c (McKinney 1996) ............................................ | 4 |
|     § 352-c(1) (McKinney 1996) ......................................... | 4 |

Defendants Standard & Poor's Rating Services and The McGraw-Hill Companies, Inc. ("McGraw-Hill"), and Moody's Investors Service, Inc. and Moody's Investors Service Ltd. (collectively, "Moody's" and together with McGraw-Hill, the "Rating Agencies" or the "Rating Agency Defendants"), respectfully submit this joint memorandum in support of their motions to dismiss the First Amended Complaint of Plaintiffs Abu Dhabi Commercial Bank ("ADCB") and King County, Washington ("King County," and with ADCB, "Plaintiffs").[1]

## PRELIMINARY STATEMENT

According to the First Amended Complaint (the "Complaint"), Plaintiffs purchased debt securities issued by a structured investment vehicle, the "Cheyne" SIV. In this lawsuit, they have sued the "Arranger" and "Placement Agent" (¶ 18) for the securities, Morgan Stanley & Co. Inc. and Morgan Stanley Co., International (together, "Morgan Stanley"), and the U.S. Agent and Administrator for the securities, Bank of New York ("BoNY") and its subsidiary, QSR Management Limited ("QSR") (¶¶ 23, 24). They have not sued Cheyne Capital Management (UK) LLP, the manager of the securities, nor the issuer, Cheyne Finance PLC, now known as SIV Portfolio PLC.

Plaintiffs have also sued the Rating Agencies. The Complaint alleges that they issued "top" and "investment grade" ratings to the securities at issue (the "Rated Notes") that failed to accurately reflect their level of risk. The Complaint asserts claims under New York law against the Rating Agencies for breach of fiduciary duty, breaches of contract, unjust enrichment, tortious interference with contract, common law fraud, negligence, negligent misrepresentation, or, in the alternative, aiding and abetting similar causes of action asserted against other defendants.

Most of Plaintiffs' New York tort claims face an insurmountable threshold problem: As this Court and many other courts within this district have repeatedly held, the Martin Act pre-

---

[1]    Since January 1, 2009, Standard & Poor's has been a business unit of "Standard & Poor's Financial Services LLC," a wholly owned subsidiary of McGraw-Hill. It was previously an unincorporated division of McGraw-Hill.

-2-

empts common law tort claims (other than common law fraud) that are based on allegedly deceptive conduct in connection with the purchase or sale of securities. Each of Plaintiffs' tort causes of action against the Rating Agencies (other than fraud) must be dismissed on this basis alone.

This broadly applicable preemption aside, not one of the purported eleven causes of action states a claim, and most are subject to dismissal not only for failure to plead the requisite elements, but because they are barred by New York statutory and federal and New York constitutional law. Plaintiffs have chosen not to plead a federal securities claim, while at the same time invoking federal jurisdiction. As a result, they must satisfy the requirements for the New York torts they attempt to plead as well as the rigorous pleading standards of Rule 9(b). They plainly fail in this effort.

Plaintiffs lard their Complaint with general allegations concerning the demise of the mortgage-backed securities market and the allegedly flawed or outdated nature of the financial and risk models underlying the Cheyne SIV. What is conspicuously missing from the Complaint, however, are factual allegations giving rise to a cognizable claim. Plaintiffs fail to allege the specifics of their purported investments in the SIV at issue — the amount of either Plaintiff's purchase, when they purchased, from whom, or even how much they allegedly lost.[2] Absent, too, are allegations differentiating among the various Defendants. Instead, Plaintiffs improperly rely on vague and general pleading that undifferentiated "defendants" had knowledge, owed purported duties or made alleged representations to Plaintiffs. Nor do Plaintiffs allege what information they actually received, reviewed, or relied upon, let alone that their reliance was justifiable. Indeed, given the absence of any specific allegations going to the heart of Plaintiffs' claims, the Complaint does not come close to meeting the rigorous standards for pleading fraud, negligent misrepresentation or breach of fiduciary duty under Rule 9(b) and New York law.

---

[2]   The Complaint does not even allege whether King County purchased Commercial Paper, Medium Term Notes, or both.

-3-

Equally striking is Plaintiffs' utter failure to plausibly allege the existence of any sort of legal or "special" relationship — contractual, fiduciary, or otherwise — between either Rating Agency and either Plaintiff. The pleading and proof of some such relationship has been consistently recognized, in New York and other jurisdictions as well, to be an essential requirement of claims, like many of those asserted by Plaintiffs, that seek to impose liability for non-intentional errors or failures. The courts have particularly emphasized the necessity of alleging a cognizable legal duty in cases such as this, noting the vital importance of protecting the flow of financial information to the marketplace from entities such as the Rating Agencies, which issue reports to vast audiences concerning hundreds of thousands of ratings a year on trillions of dollars of debt. Here, where Plaintiffs allege no contact at all with the Rating Agencies, or any other facts that could give rise to a duty, dismissal is required on this basis as well.

Finally, although the failure of Plaintiffs to plead *any* viable cause of action against the Rating Agencies obviates the need for the Court to reach the underlying First Amendment issues presented by this case, courts have recognized the risk to information flow protected by the First Amendment and to the public's interest in functioning markets that would result if the Rating Agencies were subject to liability in connection with each of the hundreds of thousands of ratings opinions they issue each year. With this in mind, the courts have held that the First Amendment precludes liability for allegedly false rating opinions or, at the least, requires pleading and proof of "actual malice," *i.e.*, knowing falsity of the rating, or actual, subjectively held, serious doubts as to truth on the part of the individuals involved in providing the allegedly actionable ratings. On this ground as well, given Plaintiffs' failure to plead "actual malice" with respect to any of the credit ratings at issue, the Complaint should be dismissed.

## THE FACTS ALLEGED

The facts set forth in this Memorandum are taken from the allegations in the Complaint, which are assumed true only for purposes of this motion (and many of which will be subject to dispute if this action proceeds), or from documents referred to or incorporated by reference

-4-

therein and attached as Exhibits to the Affirmation of Dean Ringel dated May 18, 2009 ("Ringel Aff'n") and the Declaration of James Rouhandeh dated May 18, 2009 in Support of the Morgan Stanley and Bank of New York Defendants' Motion to Dismiss ( "Rouhandeh Decl.").[3]

## ARGUMENT

### I.
### THE MARTIN ACT PREEMPTS PLAINTIFFS' NON-FRAUD TORT CLAIMS (COUNTS 2-B–D, 2-I–K)[4]

Plaintiffs' tort claims (other than the claim for common law fraud in Count 2-A) must be dismissed because they fall squarely within the purview of New York's Martin Act, N.Y. Gen. Bus. Law § 352-c, which reserves enforcement of claims covered by its terms to the Attorney General. The Martin Act prohibits acts of

> fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale . . . where engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities . . . regardless of whether issuance, distribution, exchange, sale, negotiation or purchase resulted. N.Y. Gen. Bus. Law § 352-c(1).

The New York Court of Appeals has held there is no private right of action under the Martin Act. *CPC International Inc.* v. *McKesson Corp.*, 519 N.Y.S.2d 804, 807 (Ct. App. 1987).[5]

New York courts have recognized that sustaining a private common law claim that arises within the Martin Act's terms would be equivalent to allowing a private cause of action under the Act. *Horn* v. *440 East 57th Co.*, 547 N.Y.S.2d 1, 6 (1st Dep't 1989). Accordingly, they have held that the Martin Act preempts common law claims based on allegations that fall within the subject matter covered by the Act, unless these claims have a scienter element that would distin-

---

[3]   The Rating Agency Defendants also incorporate by reference Section VI of the Morgan Stanley/BoNY brief with respect to the adequacy of Plaintiffs' allegations supporting their assertion that the Court has subject matter jurisdiction over this dispute.

[4]   The counts against the "Rating Agencies" subject to preemption are identified by the Complaint as: "Negligent Misrepresentation" (2-B) (¶¶ 255-64); "Negligence" (2-C) (¶¶ 265-71); "Breaches of Fiduciary Duty" (2-D) (¶¶ 272-278); "Unjust Enrichment" (2-I) (¶¶ 311-17); "Tortious Interference with Contract" (2-J) (¶¶ 318-24) and "Aiding and Abetting" (2-K) (¶¶ 325-29).

[5]   Plaintiffs allege that New York law applies. (Compl. ¶¶ 19-20, 29)

-5-

guish them from a Martin Act claim. *Id.* at 5 (dismissing negligent misrepresentation and breach of fiduciary duty claims because "both these causes of action omit the element of a deceitful intent on defendant's part and substitute therefor the existence of a fiduciary relationship of trust and confidence"); *see also Jana Master Fund, Ltd.* v. *JPMorgan Chase & Co.*, 859 N.Y.S.2d 903 (Table), 2008 WL 746540, at *5 (Sup. Ct. N.Y. Co. 2008) (dismissing claim for aiding and abetting breach of fiduciary duty because "[c]laims for negligent misrepresentation and breach of fiduciary duty in connection with the purchase and sale of securities have been found to be barred by the Martin Act").

The Second Circuit has applied the First Department's rule and has held that the Martin Act preempts common law tort claims in the securities context. *Castellano* v. *Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001). Virtually every federal case to consider the issue similarly has followed the First Department and Second Circuit's lead in finding non-fraud tort claims preempted under the Martin Act.[6] *See, e.g., Pension Committee* v. *Banc of America Securities, LLC*, 592 F. Supp. 2d 608, 623 (S.D.N.Y. 2009) ("*Pension Committee II*"); *Heller* v. *Goldin Restructuring Corp.*, 590 F. Supp. 2d 603, 610-11 (S.D.N.Y. 2008) (breach of fiduciary duty claim preempted); *Kassover* v. *UBS AG*, 2008 WL 5331812, at *10 (S.D.N.Y. Dec. 19, 2008) (breach of fiduciary duty and other claims preempted and collecting cases); *Nathel* v. *Siegal*, 592 F. Supp. 2d 452, 472 (S.D.N.Y. 2008) (breach of fiduciary duty claim preempted); *In re Bayou Hedge Fund Litigation*, 534 F. Supp. 2d 405, 422 (S.D.N.Y. 2007) ("[A] host of other state and federal decisions find[] breach of fiduciary duty claims arising in the securities context

---

[6]    While the *Horn* preemption rule has been followed by most New York and federal courts, some courts — including the Second and Fourth Departments — have diverged from this precedent. *See, e.g., Scalp & Blade, Inc.* v. *Advest, Inc.*, 722 N.Y.S.2d 639 (4th Dep't 2001); *Hamlet on Olde Oyster Bay Home Owners Ass'n* v. *Holiday Organization, Inc.*, 874 N.Y.S.2d 508 (2d Dep't 2009); *Caboara* v. *Babylon Cove Development, LLC*, 862 N.Y.S.2d 535 (2d Dep't 2008); *Cromer Finance Ltd.* v. *Berger*, 2001 WL 1112548, at *4 (S.D.N.Y. Sept. 19, 2001). Decisions like these have been described as "solitary islands in a stream of contrary opinion." *Dover Ltd.* v. *A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 330 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). As a result, the courts of this district have continually reaffirmed the longstanding rule that the Martin Act preempts common law claims based on securities transactions.

-6-

to be preempted by the Martin Act"); *Pro Bono Investments, Inc.* v. *Gerry*, 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (claims for breach of fiduciary duty, conversion, unjust enrichment, negligence, gross negligence, negligent misrepresentation, and constructive trust preempted). This rule should be applied in this case.

Here, Plaintiffs attempt to predicate each of their non-fraud claims on allegations that the Rating Agencies misled investors through their issuance of an "investment grade" or "top" rating (*e.g.*, Compl. ¶¶ 21, 255-329). Plaintiffs specifically allege that their claims arise under New York law (¶¶ 19-20, 29) and that the securities evidencing their investments were held in New York (¶¶ 28-29). The Complaint alleges that the securities purchased by Plaintiffs (to the extent Plaintiffs allege what they purchased at all) were issued by Cheyne Finance PLC, and its wholly owned subsidiaries, Cheyne Finance LLC and Cheyne Capital Notes LLC (¶ 15), entities based in New York (Ringel Aff'n Exh. 1 at 197; Rouhandeh Decl. Exh. C at 104).[7] In short, Plaintiffs' allegations bring their claims squarely within the Martin Act's coverage and satisfy the Martin Act's jurisdictional requirements. (Compl. ¶¶ 19-20, 28-29) Plaintiffs' non-fraud tort claims (Counts 2-B–2-D and 2-I–2-K) are preempted by the Martin Act and must be dismissed for this reason as well as the individual claim-specific pleading flaws described in succeeding sections.

## II.
## PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD (COUNT 2-A)

Plaintiffs have wholly failed to allege, as required under New York law, these essential elements of a fraud claim: (i) any material misrepresentation by either Rating Agency, (ii) either Plaintiff's reasonable reliance on any purported misrepresentation, or (iii) the requisite scienter. *See, e.g., In re Alphastar Insurance Group Ltd.*, 383 B.R. 231 (S.D.N.Y. Bankr. 2008). It follows that Plaintiffs have failed to plead any of those elements with the particularity — i.e., the

---

[7]   Copies of the Information Memoranda for the U.S. Capital Notes and the U.S. Commercial Paper are attached to the Ringel Affirmation as Exh. 1 and the Rouhandeh Declaration as Exh. C, respectively, and are available for use on this motion to dismiss because they are referenced in the Complaint. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

-7-

"who, what, when and where" — required under Rule 9(b). *See, e.g., ATSI Communications, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Indeed, Plaintiffs offer few allegations describing just what allegedly fraudulent conduct the Rating Agencies (let alone individuals at the Rating Agencies) engaged in, or even the specifics of either Plaintiff's purchases. Plaintiffs rely instead on allegations concerning the "Rating Agencies" or "the Defendants" collectively. Such allegations conflating defendants are insufficient for purposes of Rule 9(b). *See, e.g., In re Crude Oil Commodities Litigation*, 2007 WL 1946553, at *7 (S.D.N.Y. June 28, 2007).

## A.  The Complaint Fails to Allege Any Material Misrepresentation by Either Rating Agency

Although the Complaint takes pains to allege that the Rating Agencies played a role in "structuring" the Cheyne SIV, at root the only alleged misrepresentation by the Rating Agencies is the Rating Agencies' ratings themselves. As the Information Memoranda issued in connection with the Cheyne debt, documents relied upon in the Complaint (*e.g.,* ¶ 62(a)), state, a rating is an "opinion," and the courts have expressly recognized the opinion character of a rating.[8]

Setting aside First Amendment considerations (*see* Section X, *infra*), under New York law, "statements of opinion generally cannot constitute fraud." *Catskill Development LLC* v.

---

[8]    The Information Memoranda issued in connection with the Cheyne debt and relied on in the Complaint state explicitly:

> A credit rating represents a Rating Agency's opinion regarding credit quality and is not a guarantee of performance or a recommendation to buy, sell or hold any securities. A credit rating is subject to revision or withdrawal at any time by the assigning Rating Agency. . . . (Ringel Aff'n Exh. 1 at 25; *see also id.* at 18-19, 95-96; Rouhandeh Decl. Exh. C at 21, 5, 12, 20, 39)

The courts' recognition of the opinion character of ratings is equally explicit. *See, e.g., Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) ("A Moody's credit rating is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors."). The opinion nature of the ratings at issue compels dismissal of Plaintiffs' negligent misrepresentation claim as well as the fraud claim. *See Eternity Global Master Fund Ltd.* v. *Morgan Guaranty Trust Co.*, 375 F.3d 168, 187-88 (2d Cir. 2004) (affirming dismissal of negligent misrepresentation claim); *Hydro Investors, Inc.* v. *Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000); *Matsumura* v. *Benihana National Corp.*, 542 F. Supp. 2d 245, 252 (S.D.N.Y. 2008) ("It is axiomatic . . . that predictive or opinion statements about future events, without more, are not misrepresentations.").

-8-

*Park Place Entertainment Corp.*, 547 F.3d 115, 134 (2d Cir. 2008). As this Court has explained, "[t]he sine qua non of a securities fraud claim based on false opinion is that defendants deliberately misrepresented a truly held opinion." *Podany* v. *Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 153-54 (S.D.N.Y. 2004) (citing *Virginia Bankshares, Inc.* v. *Sandberg*, 501 U.S. 1083 (1991)) (granting motions to dismiss); *see also DeMarco* v. *Robertson Stephens, Inc.*, 318 F. Supp. 2d 110, 117-18 (S.D.N.Y. 2004) (acknowledging that a "buy" recommendation was an opinion, but denying motion to dismiss where plaintiffs "set forth facts giving rise to a strong inference that the reports misrepresented defendants' true opinions" by alleging that during the 10-day period between issuance of two "buy" recommendations, defendants advised an internal committee that the stock was valued approximately ten dollars less than its market price).

Plaintiffs' failure to allege that the Rating Agencies' ratings opinions were not truly held when provided is fatal to Plaintiffs' fraud claim. Despite Plaintiffs' extensive allegations suggesting that the Rating Agencies used outdated or inappropriate models and other information, Plaintiffs have not alleged that relevant individuals at either Rating Agency did not hold the opinion reflected in the ratings of the Rated Notes. Instead, Plaintiffs engage in second-guessing by hindsight of those opinions or rely on allegations that the Rating Agencies had access to information that, according to Plaintiffs, *should have* led them to a different conclusion. *See, e.g.*, Complaint ¶¶ 25, 74, 80-90, 99. None of these allegations, however, refers to any words or actions of the Rating Agencies that suggest either Rating Agency did not truly hold its creditworthiness opinion at the time it was issued. Rather, they merely show the possible existence of information suggesting the Rating Agencies could have, or, at most, should have, reached an alternate opinion. Such pleading by hindsight is insufficient to permit an inference of falsity. *See Podany*, 318 F. Supp. 2d 146 at 154 (finding plaintiff's allegations that defendants made "false statements of opinion because defendants lacked a reasonable basis for their recommendations" insufficient to state a claim). "It is not sufficient to allege . . . that it would have been possible to reach a different opinion than that reached by defendant based on information available to defen-

-9-

dant at the time, or even that the defendant's opinion was unreasonable. A securities fraud action may not rest on allegations that amount to second guesses of defendants' opinions . . ." *Id.* at 155 (dismissing claim where plaintiffs did not allege any "inconsistent statements or actions by defendants" from which the court could infer that the published opinions were not truly held). A different rule would involve "precisely the kind of second-guessing with the benefit of hindsight that *Virginia Bankshares* [501 U.S. 1083 (1991)] and its progeny counsel against." *Id.* at 155. Plaintiffs' failure to allege a misrepresentation compels dismissal of their fraud claim.

**B.    The Complaint Fails to Allege Scienter**

Rule 9(b) "imposes a significant burden on allegations of scienter. . . . The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a *strong inference* of scienter." *In re Amaranth Natural Gas Commodities Litigation*, 587 F. Supp. 2d 513, 529 (S.D.N.Y. 2008) (emphasis in original; quotation omitted). Plaintiffs' failure to allege that the Rating Agencies' ratings misrepresented their opinions necessarily means that Plaintiffs also fail to allege scienter. "While in a misstatement of fact case the falsity and scienter requirements present separate inquiries, in false statement of opinion cases such as these, the falsity and scienter requirements are essentially identical." *Podany*, 318 F. Supp. 2d at 154. Even if Plaintiffs had alleged that the Rating Agencies misrepresented their opinions, Plaintiffs have failed to allege "specific facts from which a factfinder can infer that the published opinions in this case were not truly held at the time they were made," as Rule 9(b) requires. *Podany*, 318 F. Supp. 2d at 158. Indeed, there are very few allegations detailing in any way any conduct specifically attributable to S&P or Moody's (as opposed to the "Rating Agencies" generally). To the extent that Plaintiffs rely on allegations of motive or improper intent in an attempt to allege scienter, such allegations must give rise to an inference "more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.* v. *Makor*

-10-

*Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).[9] Nor have Plaintiffs alleged facts constituting strong circumstantial evidence of misbehavior or recklessness. As explained above, Plaintiffs' second-guessing of the Rating Agencies' opinions based on information to which the Rating Agencies allegedly had access is insufficient to state a claim for fraud resting on an alleged misstatement of opinion. Plaintiffs' Complaint fails to plead scienter with particularity.

**C.   Plaintiffs Fail to Allege Justifiable Reliance on Any Rating**

Plaintiffs have not alleged that they were justified in relying on the Rating Agencies' ratings as a substitute for their own exercise of judgment concerning their investment decisions.[10] While Plaintiffs include the general allegation that they, collectively, "necessarily relied on the Rated Notes' high credit ratings" (Compl. ¶ 21), Plaintiffs fail to particularize their allegations as to the individual Plaintiffs or the individual Defendants, choosing instead to allege that certain representations were made by "defendants" to "investors." (*See also, e.g.*, Compl. ¶ 3 (alleging "defendants" distributed selling materials containing ratings to "investors," but not that a particular Plaintiff received or relied on those materials); ¶ 247.) Plaintiffs' failure to particularize their allegations to specify what information *each* actually received and reviewed (and not just what may have been available to investors in general), or even if *they* ever received or relied upon the individual ratings they allege were misleading, dooms their fraud claim under Rule 9(b).

---

[9] As this Court has noted, the Second Circuit has yet to decide whether the *Tellabs* standard for scienter is applicable to cases outside the scope of the PSLRA. *See In re Amaranth Natural Gas Commodities Litigation*, 2009 WL 1138716, at *4 (S.D.N.Y. Apr. 27, 2009). Courts in this district have split on the issue. *Compare Glidepath Holding B.V.* v. *Spherion Corp.*, 590 F. Supp. 2d 435, 451 & n.5 (S.D.N.Y. 2007) (noting that the "Supreme Court's guidance [in *Tellabs*] in how to interpret inferences extended beyond the specific context of the PSLRA" and applying standard to non-PSLRA case) *and In re Crude Oil Commodity Litigation*, 2007 WL 1946553, at *7 n.5 (adoption of *Tellabs* standard comports with the concerns expressed by Supreme Court for the costs imposed by baseless securities fraud litigation) *with SEC* v. *Dunn*, 587 F. Supp. 2d 486, 501-02 (S.D.N.Y. 2008) (declining to apply *Tellabs* in the context of an SEC enforcement action — a concern obviously not present here). *See also* 587 F. Supp. 2d at 501.

[10] "[W]hether a plaintiff has adequately pleaded justifiable reliance is a proper subject for a motion to dismiss." *Granite Partners, L.P.* v. *Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 290 (S.D.N.Y. 1998).

-11-

Even if the Complaint had alleged that either Plaintiff received and relied upon any rating, the fraud claim would fail because any such reliance would be unreasonable as a matter of law. As alleged, Plaintiffs are sophisticated institutional investors — a large commercial bank and a major governmental entity — which chose to invest in complex financial instruments that were, by definition, marketed and sold only to sophisticated investors. The very offering documents allegedly relied upon by "investors" state in so many words that "[a] credit rating represents a Rating Agency's opinion regarding credit quality," not a statement of fact, and is "not a guarantee of performance or recommendations to buy, sell or hold any securities" (Ringel Aff'n Exh. 1 at 25; Rouhandeh Decl. Exh. C at 21) and that purchasers of the Rated Notes should not place reliance on anyone's due diligence but their own (Ringel Aff'n Exh. 1 at 21; Rouhandeh Decl. Exh. C at 20).

In *Quinn* v. *McGraw-Hill Cos.*, 168 F.3d 331, 336 (7th Cir. 1999), the Seventh Circuit affirmed a 12(b)(6) dismissal of a misrepresentation claim brought against S&P by an investor who claimed to have purchased collateralized mortgage obligations in reliance on S&P's allegedly erroneous "A" rating. The Seventh Circuit reasoned that, in light of the caution that S&P's rating was not an investment recommendation, the investor "was responsible for doing his own homework about the risks he was assuming" and his reliance on S&P's rating could not, as a matter of law, be found reasonable. Applying Illinois common law, which, like that of New York, requires proof of "reasonable reliance," the court found that although the plaintiff, an experienced banker, may have lost money and "would not have bought the bonds without the S&P 'A' rating, any reliance he may have placed on that rating to reassure himself about the underlying soundness of the bonds was not reasonable" because, *inter alia*, he had received a letter "informing him that substantial risks were involved in this type of investment . . . . [and that] cautioned that an S&P rating was 'not a recommendation to buy, sell, or hold any such Bonds and may be subject to revision or withdrawal at any time.'" *Quinn*, 168 F.3d at 336. The disclaimers received by Plaintiff were similar, if not identical, to those received by the plaintiff in *Quinn*.

-12-

(*See, e.g.*, Ringel Aff'n Exh. 1 at 18-19, 21, 25; Rouhandeh Decl. Exh. C at 5, 12, 20, 21, 39.) As in *Quinn*, these disclaimers prevent sophisticated investors such as Plaintiffs from claiming that reliance on any allegedly erroneous ratings opinion was reasonable.

Similarly, taking note of the use of disclaimers, and observing the virtually unlimited liability S&P could face if it were subjected to claims by all investors who used their reports as a substitute for their own diligence, the Second Circuit has held with respect to an S&P summary of bond terms that "the user should bear the risk of failing to verify the accuracy of a summary in the absence of proof of a knowing misstatement." *First Equity Corp.* v. *Standard & Poor's Corp.*, 869 F.2d 175, 180 (2d Cir. 1989) (affirming judgment in favor of S&P). If anything, of course, the protection for opinion should be even broader than that afforded a "summary" of facts relating to a bond.

The holdings in *First Equity* and *Quinn* necessitate dismissal of the fraud claim here (as well as Plaintiffs' claims for negligence and negligent misrepresentation discussed below). Plaintiffs could not, as a matter of law, reasonably rely on the Rating Agencies' ratings — which were issued with explicit cautions that they were statements of opinion and not investment recommendations — as a substitute for their own due diligence and investment judgment.

## III.
## PLAINTIFFS FAIL TO ALLEGE A SPECIAL RELATIONSHIP TO SUPPORT CLAIMS FOR NEGLIGENCE, NEGLIGENT MISREPRESENTATION OR BREACH OF FIDUCIARY DUTY (COUNTS 2-B, 2-C & 2-D)

Plaintiffs' negligence, negligent misrepresentation and breach of fiduciary duty claims must be dismissed because, in addition to other deficiencies, Plaintiffs do not — and cannot — allege that any special or confidential relationship existed between Plaintiffs and either Rating Agency. Allegation of such a relationship is a requirement for each of these claims. Here, where Plaintiffs fail to plausibly allege any relationship at all with the Rating Agencies, the applicable law requires dismissal.

-13-

## A.   The Negligence-Based Claims Should Be Dismissed

To plead a claim for negligent misrepresentation a plaintiff must plausibly allege, *inter alia*, that defendant had a duty, as a result of a *special relationship*, to give correct information. *Pension Committee* v. *Banc of America Securities, LLC*, 446 F. Supp. 2d 163, 195-96, 198 (S.D.N.Y. 2006) ("*Pension Committee I*") (citation omitted); *see also, e.g., Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (confirming "the basic requirement of a 'special relationship' for a negligent misrepresentation tort action").[11]

When a plaintiff asserts a negligent representation claim against a professional entity with which it is not in contractual privity, that plaintiff bears an especially heavy burden. *Securities Investor Protection Corp.* v. *BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000).[12]   In such cases, no cause of action may be maintained unless the plaintiff adequately pleads that it was in a special relationship with the defendant that "closely resembles" privity. *AG Capital Funding Partners, L.P.* v. *State Street Bank & Trust Co.*, 808 N.Y.S.2d 573, 580 (Ct. App. 2005) (citing *Ossining Union Free School District* v. *Anderson LaRocca Anderson*, 541 N.Y.S.2d 335 (Ct. App. 1989)); *see also Vanguard Municipal Bond Fund*, 40 F. Supp. 2d at 189.   The New York Court of Appeals has explained that its "decision to circumscribe liability in this area by privity of contract or its equivalent . . . is necessary in order to provide fair and manageable bounds to what otherwise could prove to be limitless liability." *Parrott* v. *Coopers & Lybrand, LLP*, 718

---

[11]   Where, as here, there is no substantial difference between a negligence claim and a negligent misrepresentation claim, it is appropriate to "address them together as a claim for negligent misrepresentation." *See Vanguard Municipal Bond Fund, Inc.* v. *Cantor, Fitzgerald, L.P.*, 40 F. Supp. 2d 183, 188 (S.D.N.Y. 1999); *see also Northwestern Mutual Life Insurance Co.* v. *Banc of America Securities LLC*, 254 F. Supp. 2d 390, 400-01 (S.D.N.Y. 2003).   Both Plaintiffs' negligence and negligent misrepresentation claims are based on allegations that Plaintiffs were injured by allegedly false and misleading ratings. *Compare* Compl. ¶¶ 257, 262(c) and 262(d) *with* ¶¶ 269(a) and 269(b).

[12]   Plaintiffs' conclusory and implausible assertion of some unidentified "contract with the Rating Agencies" that "[e]ach member of the plaintiff Class agreed to" (Compl. ¶ 291) is — as demonstrated in Section V — wholly inadequate to create a claim or satisfy any "relationship" requirement.

-14-

N.Y.S.2d 709, 711 (Ct. App. 2000) (citation and internal quotation marks omitted). The doctrine, first developed in the context of accountant liability, has been found to apply equally in cases involving other professions. *Id.*; *see also First Equity Corp.*, 869 F.2d at 179-80.

To meet this "near privity" standard, a plaintiff must allege, *inter alia*, "some conduct by the defendants linking them to the party or parties and evincing defendants' understanding of their reliance." *Vanguard Municipal Bond Fund*, 40 F. Supp. 2d at 190 (collecting authorities); *see also Eternity Global Master Fund*, 375 F.3d at 187. In order to show linking conduct, "a plaintiff generally must show some form of direct contact between the [defendant] and the plaintiff, such as a face-to-face conversation, the sharing of documents, or other 'substantive communication' between the parties. . . . Where direct contact . . . has been nonexistent or even minimal, however, the plaintiff cannot recover for negligence." *BDO Seidman*, 222 F.3d at 75.

Plaintiffs simply allege no such "linking conduct." Indeed, Plaintiffs allege *no* contact whatsoever between themselves and any representative of the Rating Agencies. Although the Complaint alleges that the Rating Agencies' ratings opinions were "published or otherwise communicated" to investors (Compl. ¶ 274), there are no allegations that any representative of the Rating Agencies ever had any direct contact or communication with either Plaintiff (or any member of the putative plaintiff class). This failure is fatal to Plaintiffs' negligence claims. *See BDO Seidman*, 222 F.3d at 76 (noting the "high standard for establishing linking conduct" and affirming dismissal of negligent misrepresentation claim where only alleged contact between defendant and plaintiff occurred through a third party); *BHC Interim Funding, L.P.* v. *Finantra Capital, Inc.*, 283 F. Supp. 2d 968, 986 (S.D.N.Y. 2003) (noting that "courts have uniformly required more than phone calls, general communications or unacknowledged assertions of reliance in order to establish linking conduct") (quoting *Housing Works, Inc.* v. *Turner*, 179 F. Supp. 2d 177, 219 (S.D.N.Y. 2001)).

Moreover, dismissal in this case comports with the long line of court decisions that have consistently rejected the notion that credit rating agencies and other information providers as-

-15-

sume a duty of care to investors and others who — notwithstanding the absence of any direct contact or special relationship — claim reliance on erroneous information or opinions. *See, e.g.*, *Jaillet* v. *Cashman*, 189 N.Y.S. 743, 744 (Sup. Ct. N.Y. Co. 1921) (no liability for financial data received by plaintiff who was "but one of a public to whom all news is liable to be disseminated"), *aff'd mem.*, 194 N.Y.S. 947 (1st Dep't 1922), *aff'd mem.*, 139 N.E. 714 (N.Y. 1923); *First Equity Corp.*, 869 F.2d at 179-80 (in absence of privity, S&P owed no duty of care to investors who alleged relied on data disseminated by S&P) (noting analogy to law that "carefully avoid[s] exposing accountants to liability to a potentially indeterminate class of persons who, presently or in the future, might . . . rel[y] on a negligently inaccurate audit") (citation and internal quotation marks omitted); *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742, 827 (S.D. Tex. 2005) (rating agencies owed no duty of care to experienced business entity that claimed reliance on allegedly erroneous credit ratings, noting that finding of a duty would threaten the important role played by the credit rating agencies in the "efficient operation of capital markets" by subjecting them to unlimited potential liability), *motion for reconsideration denied*, 2007 WL 1662658 (S.D. Tex. June 5, 2007).

**B.    The Breach of Fiduciary Claim Should Be Dismissed**

Plaintiffs' failure to allege any relationship — let alone a special or confidential relationship — with either Rating Agency also compels dismissal of their claim for breach of fiduciary duty.  The "two essential elements of a fiduciary relation are . . . de facto control and dominance." *Marmelstein* v. *Kehillat New Hempstead*, 862 N.Y.S.2d 311, 314 (Ct. App. 2008) (citations and quotation marks omitted).  Moreover, a fiduciary relationship exists only "when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *AG Capital Funding Partners, L.P.* v. *State Street Bank & Trust Co.*, 866 N.Y.S.2d 578, 585 (Ct. App. 2008) (citations and quotation marks omitted).  No fiduciary relationship will be found unless "confidence is reposed on one side and there is resulting superiority and influence on the other." *World Wrestling Entertainment, Inc.* v. *Jakks Pacific, Inc.*, 530 F.

-16-

Supp. 2d 486, 503 (S.D.N.Y. 2007) (quoting *United States* v. *Chestman*, 947 F.2d 551, 568 (2d Cir. 1991)). "Mere reposal of one's trust or confidence in a party, however, does not automatically create a fiduciary relationship; the trust or confidence must be accepted as well." *Thermal Imaging, Inc.* v. *Sandgrain Securities, Inc.*, 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001).

Accordingly the courts consistently dismiss claims for breach of fiduciary duty when a plaintiff fails to make factual allegations that could plausibly support the existence of such a confidential relationship giving rise to the defendants' control and dominance and a fiduciary duty. *See, e.g.*, *Maalouf* v. *Salomon Smith Barney, Inc.*, 2003 WL 1858153, at *5 (S.D.N.Y. Apr. 10, 2003) (dismissing breach of fiduciary claim because allegations that defendant "was in a dominant position as it possessed knowledge and expertise" and that a "relationship of trust and confidence" existed were insufficient to plead the existence of a fiduciary relationship); *Jakks Pacific*, 530 F. Supp. 2d at 504 ("[A]llegations that a plaintiff relied on a defendant's expertise in a particular field are insufficient by themselves to survive dismissal."); *SNS Bank, N.V.* v. *Citibank, N.A.*, 777 N.Y.S.2d 62, 65 (1st Dep't 2004) ("[P]laintiff's subjective claims of reliance on defendants' expertise did not give rise to a confidential relationship whose requisite high degree of dominance and reliance was not in existence prior to the transaction giving rise to the alleged wrong.") (citation and internal quotation marks omitted).

As demonstrated above, the Complaint is devoid of any factual allegations sufficient to establish even an arm's-length business relationship, let alone a fiduciary relationship. Instead, Plaintiffs merely assert that the Rating Agencies owed them heightened duties because investors "necessarily reposed confidence in the Rating Agencies' knowledge, expertise and skill in structuring, rating and monitoring the Cheyne SIV because important information concerning the structuring, rating, and quality of assets underlying the Rated Notes was not provided to Rated Notes investors." (Compl. ¶¶ 274, 275) Such bare assertions fall well short of what is required to plead a fiduciary relationship. *Jakks Pacific*, 530 F. Supp. 2d at 504 ("[T]he Court is not required to credit mere legal conclusions that are dressed up as factual allegations that a defendant

-17-

was in a fiduciary relationship with a plaintiff."); *Rosenblatt* v. *Christie, Manson & Woods Ltd.*, 2005 WL 2649027, at *10 (S.D.N.Y. Oct. 14, 2005) (repeated conclusory assertion of a relationship of "trust and confidence" insufficient) (citation omitted). Moreover, there is no allegation that any trust or confidence allegedly reposed in the Rating Agencies was understood and accepted by them. *See Independent Asset Mgmt. LLC* v. *Zanger*, 538 F. Supp. 2d 704, 710-11 (S.D.N.Y. 2008) (dismissing breach of fiduciary duty claim where there was no allegation, except a "wholly conclusory" one, that defendant accepted the trust and confidence of plaintiff).[13]

In sum, Plaintiffs' complete failure to allege facts that support the existence of a special or confidential relationship requires dismissal of Counts 2-B, 2-C, and 2-D.

## IV.
## PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM (COUNT 2-B) ALSO MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT ANY RELIANCE ON THE RATING AGENCIES' OPINIONS WAS REASONABLE

Even if Plaintiffs had alleged the requisite relationship between any Plaintiff and any Rating Agency — and they have not — the negligent representation claim still fails because Plaintiffs cannot demonstrate that their reliance on the alleged misrepresentations would have been reasonable. The Second Circuit has sustained dismissal of negligent misrepresentation claims on this ground pursuant to Rule 12(b)(6). *Eternity Global Master Fund*, 375 F.3d at 188-90 (citation omitted). As noted in n.13, the documents alleged to have been provided to investors explicitly provided that investors were to conduct their own diligence and not rely on the ratings opinions provided in the Information Memorandum, and that the ratings opinions were not a rec-

---

[13]     In fact, the documents that Plaintiffs rely upon as constituting indirect communications from the Rating Agencies negate the notion of a fiduciary relationship, explicitly stating that purchasers of notes should not place reliance on anyone but themselves. *See* Ringel Aff'n Exh. 1 at 21; Rouhandeh Decl. Exh. C at 20. Plaintiffs expressly acknowledged as much in their original complaint, which alleged that information supposedly communicated by the Rating Agencies and other Defendants contained voluminous "risk factor descriptions and other disclaimers and non-reliance provisions." (Original Compl. ¶ 5) Plaintiffs' allegation that they nonetheless chose to rely exclusively on Defendants' perceived expertise hardly suffices to create a fiduciary relationship. *Jakks Pacific*, 530 F. Supp. 2d at 504.

-18-

ommendation to buy or sell.  Under the circumstances, and as a matter of law, Plaintiffs cannot

claim that any reliance was reasonable.  *See Quinn*, 168 F.3d 331; *see also* Section II.C, above.

Plaintiffs' negligent misrepresentation claim must be dismissed for this reason as well.

**V.**

**PLAINTIFFS' DIRECT CONTRACT CLAIMS FAIL BECAUSE PLAINTIFFS DO NOT
PLEAD A CONTRACTUAL RELATIONSHIP WITH ANY RATING AGENCY
(COUNTS 2-E, 2-F, 2-H)**

Plaintiffs' contract-based claims (Counts 2-E, 2-F, 2-H) are marred by one insurmount-

able defect: a complete failure to specify the alleged contracts on which their claims are suppos-

edly based or the parties to those alleged contracts.  As the Complaint itself highlights, a number

of parties were involved with the organization, operation, marketing, rating and monitoring of

the Cheyne SIV.  (Compl. ¶¶ 18-20, 23-24)  Some of these parties may have had a contractual

relationship with Plaintiffs.  But Plaintiffs have alleged no contractual relationship whatsoever

with the Rating Agency Defendants; nor have they even identified the agreement purportedly

giving rise to any such relationship.

A breach of contract claim "that fails 'to allege facts sufficient to show that an enforce-

able contract existed' between the parties is subject to dismissal."  *Berman* v. *Sugo LLC*, 580 F.

Supp. 2d 191, 202 (S.D.N.Y. 2008).  The present Complaint fails to plead any facts supporting

the existence of any enforceable contract between either Rating Agency and either Plaintiff:

there are no allegations regarding the formation of the contract, its significant terms, the date on

which it was formed, or the parties assenting to the contract on behalf of the each of the Rating

Agencies.  Plaintiffs instead offer only conclusory and unsupported assertions concerning the

existence of "various documents" provided to Plaintiffs.  *See, e.g.*, ¶¶ 3, 62, 281, 291.  And the

only written materials alleged to have been distributed or available to any Class member — the

Information Memoranda — are not alleged to have been created or distributed by the Rating

Agencies, or received by either Plaintiff.  (Compl. ¶ 3; *see also id.* ¶ 62.)  Such allegations are

insufficient to support any contract claim against the Rating Agencies.  *See Berman*, 580 F.

Supp. 2d at 202 (dismissing a breach of contract claim where counterclaim plaintiff failed  to

-19-

"set forth a single fact relating to the formation of the contract, the date it took place, the con-

tract's major terms, the parties to the contract, or [counter-defendant's] assent to its terms. . . .

Where, as here, the pleadings are conclusory or frame legal conclusions as factual allegations,

the Court is not bound to accept them.") (citations omitted).[14]  For this reason, Plaintiffs' claim

for breach of an implied covenant must also be dismissed.  *See Banco Espirito Santo de Investi-*

*mento, S.A.* v. *Citibank, N.A.*, 2003 WL 23018888, at *5-*6 (S.D.N.Y. Dec. 22, 2003) (dismiss-

ing plaintiff's claim for breach of implied covenant because "there can be no breach of the duty

of good faith and fair dealing when there is no 'valid and binding contract from which such a

duty would arise'") (citation omitted), *aff'd*, 110 Fed. Appx. 191 (2d Cir. 2004).[15]

## VI.
## PLAINTIFFS FAIL TO STATE A CLAIM FOR
## BREACH OF CONTRACT AS A THIRD-PARTY BENEFICIARY (COUNT 2-G)

New York law allows a third party to enforce a contract only if the parties to the contract

expressed an intent to benefit the third party.  The goal of this narrow rule is to allow the in-

---

[14]    The only allegation that attempts to specify the purported contract between Plaintiffs and "the Rating Agencies" appears as part of the claim for contract failure of condition against the Rating Agencies.  *See* Compl. ¶ 291 ("Each member of the plaintiff Class agreed to a contract with the Rating Agencies for the sale of structuring, monitoring and rating services.  The terms of the contract are included in substantially identical written materials distributed to each Class member.").  Even if the Court were to consider this allegation — which is not incorporated by reference into Plaintiffs' breach of contract claim — in evaluating Plaintiffs' breach of contract claim, such a conclusory allegation is wholly inadequate to survive a motion to dismiss.

[15]    Plaintiffs' claim for failure of condition either is duplicative of the breach of contract claim or wholly lacking in coherence.  *See* Compl. ¶ 289 ("This is a claim for contract breaches against the Rating Agencies."); Compl. ¶ 291 ("Each member of the plaintiff Class agreed to a contract with the Rating Agencies for the sale of structuring, monitoring and rating services.").  As such, the claim should be dismissed for the reasons discussed in the text.  Even if Plaintiffs had alleged the existence of any valid contract with either Rating Agency, the failure of condition claim should be dismissed.  The only possible alleged conditions precedent (to a non-existent contract) are that the Rating Agency assign a given rating to the Rated Notes and that the assets included in the SIV have "investment grade" ratings.  (Compl. ¶¶ 292, 294)  No other condition to the purported contract is alleged.  It is undisputed that the Rating Agencies did assign the eligible ratings to the Rated Notes, and that the underlying assets had the required ratings.  (Compl. ¶¶ 37-38)  While Plaintiffs assert that these ratings were defective or improper, they have failed to allege that any alleged condition to their purported contract was not met.  And it certainly would not follow in any event that a failure to satisfy a condition precedent that had to be met before the securities could issue gave rise to a claim against defendants that did not issue the security.

-20-

tended beneficiary to enforce the contractual obligations. Thus, New York law requires that one seeking to enforce a contract as a third-party beneficiary "establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his or her benefit, and (3) that the benefit to him or her is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Synovus Bank* v. *Valley National Bank*, 487 F. Supp. 2d 360, 368 (S.D.N.Y. 2007) (citation and internal quotation marks omitted).[16] Plaintiffs have not even specified the contract to which they purport to be a third-party beneficiary; their third-party beneficiary claim should fail for this reason alone. Even if Plaintiffs had alleged the existence of such a contract, they have not provided specific allegations demonstrating that they were the intended beneficiaries of the purported contract.

"While the third-party beneficiary does not have to establish that it is explicitly mentioned in the contract, New York law requires that the parties' intent to benefit a third party *be shown on the face of the contract.*" *Synovus*, 487 F. Supp. 2d at 368 (emphasis added) (citation omitted). The parties' intent to benefit a third party is established if the third party has "'a right to enforce the contract' or 'the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party.'" *In re Houbigant, Inc.*, 914 F. Supp. 964, 985 (S.D.N.Y. 1995) (quoting *Fourth Ocean Putnam Corp.* v. *Interstate Wrecking Co.*, 495 N.Y.S.2d 1, 5 (Ct. App. 1985)). In *Fourth Ocean*, the New York Court of Appeals summarized the factors governing whether to allow a third-party beneficiary claim to proceed.

> [W]e have emphasized when upholding the third party's right to enforce the contract that *no one other than the third party* can recover if the promisor breaches the contract or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party as by fixing the rate or price at which the third party can obtain services or goods . . . .

---

[16]   And, of course, to allege a *breach* of the obligation plaintiffs must allege a breach of the underlying contract. No such breach is alleged here and this provides yet another basis for dismissal here.

*Fourth Ocean*, 495 N.Y.S.2d at 5 (emphasis added) (citations omitted).

Plaintiffs' entire third-party beneficiary claim is based on a single conclusory sentence from a pleading that spans over 100 pages and almost 400 paragraphs: "The Rating Agencies entered into the contractual obligations referenced herein with Morgan Stanley for the purpose and intent to benefit directly the plaintiff Class." (Compl. ¶ 300) Not only do Plaintiffs fail to specify which "contractual obligations" underlie their claim, Plaintiffs identify no meetings, correspondence, or other indications of an intent on the part of the Rating Agencies to benefit Plaintiff. Nor do Plaintiffs cite to any language from the alleged agreements demonstrating an intent to benefit Plaintiff. *See In re Houbigant*, 914 F. Supp. at 986; *see also Quinn*, 168 F.3d at 334 ("[Plaintiff] has not referred us to any text at all in the contract that would indicate, either explicitly or implicitly, the necessary intent to benefit."). "While it is not required that intent to confer a third-party beneficiary right be proved on the pleadings, there must be some facts beyond a conclusory allegation that a party is a third party beneficiary, to survive a motion to dismiss." *In re Houbigant*, 914 F. Supp. at 986. Plaintiffs have not met this standard.

Plaintiffs attempt to cure this patent flaw by asserting that "Morgan Stanley repeatedly represented the benefits that would accrue to Rated Notes investors as a result of the Rating Agencies' rating, structuring and monitoring products and services." (Compl. ¶ 301) Even if accepted as true, this allegation could not save Plaintiffs' defective claim. Morgan Stanley's supposed communication with third parties such as Plaintiffs is immaterial — it is the intent of the parties to the contract *as evidenced by that contract* that is dispositive and must be alleged. *See Synovus Bank*, 487 F. Supp. 2d at 368 ("While the third-party beneficiary does not have to establish that it is explicitly mentioned in the contract, New York law requires that the parties' intent to benefit a third-party be shown on the face of the contract.") (citation omitted); *See also Quinn*, 168 F.3d at 334 (rejecting a third-party beneficiary claim against S&P, stating: "We do not doubt that investors derive valuable information from an S&P bond rating . . . . The pertinent question, however, is whether the actual . . . contract contains either express language identifying

-22-

purchasers like [plaintiff] by name or its functional equivalent."). At best, Plaintiffs have alleged no more than they were incidental beneficiaries of any purported contract concerning the Rating Agencies' rating. A mere incidental beneficiary of a contract, however, does not have standing to assert a claim as a third-party beneficiary of that contract. *See Synovus Bank*, 487 F. Supp. 2d at 368; *cf. Quinn*, 168 F.3d at 334-35 (dismissing investor's third-party beneficiary claim based on a contract between S&P and an issuer where it was "a perfectly reasonable — perhaps indispensable — contract for [the issuer] to have entered for its own purposes"). Plaintiffs' third-party beneficiary claim must be dismissed.

## VII.
## PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT 2-I)

At a threshold level, Plaintiffs' claim for unjust enrichment must be dismissed because such a claim requires the existence of *some* relationship between each Plaintiff and the Rating Agency Defendants. *Sperry* v. *Crompton Corp.*, 831 N.Y.S.2d 760, 766 (Ct. App. 2007); *In re Amaranth Natural Gas Commodities Litigation*, 587 F. Supp. 2d at 532 ("[T]o state a claim for unjust enrichment, there must be some relationship between the parties, though it need not be as close as privity of contract."). None is alleged here between Plaintiffs and the Rating Agencies. *See* Section III, *supra*.

A separate basis for dismissal exists because Plaintiffs have not alleged that any enrichment received by the Rating Agencies — whether just or otherwise — was at Plaintiffs' expense. "It is well settled that '[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'" *Sperry*, 831 N.Y.S.2d at 766. The central inquiry is whether a defendant was enriched at the plaintiff's expense — enrichment of a defendant by a party other than the plaintiff is insufficient. *Xpedior Creditor Trust* v. *Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 273 (S.D.N.Y. 2004); *see also Flag Wharf, Inc.* v. *Merrill Lynch Capital Corp.*, 836 N.Y.S.2d 406, 406 (1st Dep't 2007) (a party may not enrich itself "at the expense of another"); *Krinos Foods, Inc.* v. *Vintage Food Corp.*, 818 N.Y.S.2d 67 (1st Dep't 2006).

-23-

The Complaint fails to include any allegation that Plaintiffs or any other member of the purported Class compensated the Rating Agencies for the rating services provided, or that the amounts purportedly paid to the agencies were in any way "at plaintiff's expense." (Compl. ¶ 313 (failing to identify *Plaintiffs* as having paid the Rating Agencies "millions of dollars in compensation for the services they provided in connection with the sale of Rated Notes to investors."); Complaint ¶ 313(b) ("The Rating Agencies received an ongoing monitoring fee *from the Cheyne SIV*.") (emphasis added)). It is immaterial that the monies used by the Cheyne SIV to allegedly enrich the Rating Agencies may have been generated through the sale of Rated Notes to investors. *See Xpedior Creditor Trust*, 341 F. Supp. 2d at 273 (dismissing a claim for unjust enrichment on grounds of standing because "[plaintiff] does not allege that [defendant] was enriched at its expense. To the contrary, [defendant] allegedly received excess compensation from its own customers."). Plaintiffs allege that the Cheyne SIV, not Plaintiffs, was the Rating Agencies' customer — and source of compensation — for purposes of the ratings provided. (Compl. ¶ 313(b)) Because Plaintiffs do not allege that the Rating Agencies were enriched at Plaintiffs' expense, the claim for unjust enrichment must be dismissed.

## VIII.
## PLAINTIFFS FAIL TO STATE A CLAIM FOR
## TORTIOUS INTERFERENCE WITH CONTRACT (COUNT 2-J)

Assuming, *arguendo*, that Plaintiffs had alleged the existence of any valid contract between them and the Cheyne SIV or between the Cheyne SIV and Cheyne Capital, Plaintiffs nevertheless have failed to allege that the Rating Agencies intended to cause a breach of any such contract. *White Plains Coat & Apron Co.* v. *Cintas Corp.*, 835 N.Y.S.2d 530 (Ct. App. 2007); *see also Lama Holding Co.* v. *Smith Barney Inc.*, 646 N.Y.S.2d 76 (Ct. App. 1996). Plaintiffs instead attempt to rest their tortious interference claim on allegations that:

> The Rating Agencies caused Cheyne Capital and the Cheyne SIV to breach the terms of such agreements by, *inter alia*: (a) failing to inform Cheyne Capital that the assets selected for inclusion in the Cheyne SIV did not merit the 'investment' grade ratings assigned to them; (b) 'grandfathering' inaccurate ratings and permitting the Cheyne SIV to continue using such ratings with respect to each purchaser,

-24-

*inter alia*; and (c) facilitating the sale of and permitting the Cheyne SIV to continue purchasing impaired assets. (Compl. ¶ 322)

Such allegations, at most, describe allegedly negligent conduct that may have incidentally affected contracts to which Plaintiffs may have been a party, and in no way suggest any intent on the part of any Rating Agency to procure a breach of contract.

As the New York Court of Appeals has made clear, actionable interference with contract "must be intentional, not merely negligent or incidental to some other, lawful, purpose." *Alvord & Swift* v. *Stewart M. Muller Construction Co.*, 413 N.Y.S.2d 309, 312 (Ct. App. 1978) (affirming award of summary judgment on ground that "[t]here has never been any indication that an intentional tort was committed in the sense of an intention to harm plaintiff without economic or other lawful excuse or justification"); *see also White Plains Coat*, 833 N.Y.S.2d 530; *Health-Chem Corp.* v. *Baker*, 915 F.2d 805, 809 (2d Cir. 1990) ("[T]o be actionable, the interference must be intentional and not incidental to some other lawful purpose. Proof of such tortious intent is completely lacking in the instant case.") (citation omitted). Plaintiffs' failure to allege intentional interference with any contract requires dismissal of its tortious interference claim. *Lama Holding Co.*, 646 N.Y.S.2d at 82 (dismissal proper where "[t]here is . . . no allegation that [defendant] intentionally procured Bankers Trust's breach of its contract with Lama").

## IX.
## PLAINTIFFS FAIL TO STATE ANY AIDING AND ABETTING CLAIM (COUNT 2-K)

No purported claim better illustrates the legal inadequacy of Plaintiffs' effort to find an actionable claim than their assertion of a generalized cause of action of "aiding and abetting" against the Rating Agencies. Here, Plaintiffs allege — in the event none of their direct claims against the Rating Agencies survives — that the Rating Agencies aided and abetted *all* of the alleged tortious conduct of the other Defendants. (Compl. ¶ 326) Plaintiffs fail to establish the elements of these 20 secondary liability claims. In order to establish aiding and abetting liability under New York law, Plaintiffs must allege: (1) the existence of a violation by the primary wrongdoer; (2) "knowledge" of this violation on the part of the aider and abettor; and (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation. *Morin*

-25-

v. *Trupin*, 711 F. Supp. 97, 112 (S.D.N.Y. 1989).  In addition, Plaintiffs must also sufficiently allege that their injury was "a direct or reasonably foreseeable result" of the conduct complained of.  *Bloor* v. *Carro, Spanbock, Londin, Rodmin & Fass*, 754 F.2d 57, 63 (2d Cir. 1985).[17]

For the reasons set forth in the motions to dismiss of the Morgan Stanley, Bank of New York and QSR Defendants, Plaintiffs have failed to allege the existence of any underlying primary liability (under any law) for which aiding and abetting liability may attach.  Thus, the first element of aiding and abetting liability against the Rating Agencies is missing, providing a complete basis for dismissal.

Even if Plaintiffs had adequately alleged a basis for claim of primary liability, Plaintiffs fail to allege adequately the Rating Agencies' "knowing participation."  Plaintiffs must plead facts demonstrating that the Rating Agencies had "actual knowledge" of the primary liability and that the Rating Agencies "provided substantial assistance to [the primary violator]."  *Kaufman* v. *Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003); *Kolbeck* v. *LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998).  Under New York law, only *actual knowledge* will suffice.  New York "has not adopted a constructive knowledge standard for imposing aiding and abetting liability."  *Kolbeck*, 939 F. Supp. at 246; *Renner* v. *Chase Manhattan Bank*, 2000 WL 781081, at *12 (S.D.N.Y. June 16, 2000) (no liability for defendant bank in absence of particularized allegations that it "actually knew" fraud was occurring), *aff'd*, 85 Fed. Appx. 782 (2d Cir. 2002).  Plaintiffs, however, do not even attempt to allege specific facts indicating that the Rating Agencies knew that any Defendant was breaching any duty owed to Plaintiffs, relying instead on the conclusory assertion that "the Rating Agencies knew of the defendants' violations of laws and substantially assisted in such violations."  (Compl. ¶ 328)  As a result, Plaintiffs' claims for aiding and abetting must be dismissed.

---

[17]    Claims for aiding and abetting common law fraud and negligent misrepresentation also must meet the particularity requirements of Rule 9(b).  *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006); *S&K Sales Co.* v. *Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987).

-26-

## X.
## THE FIRST AMENDMENT BARS PLAINTIFFS' RATING AGENCY CLAIMS

Each of Plaintiffs' purported claims against the Rating Agencies also is barred by fundamental principles of constitutional law. This Court need not reach the constitutional issue in light of the host of defects that require dismissal of the Complaint, but if it does consider the issue, First Amendment precedents provide an independent basis for granting this motion.

Rating Agencies gather and analyze information about issuers, form opinions about that information and disseminate their forward-looking opinions to the public.[18] The agencies provide such analysis for hundreds of thousands of instruments relating to trillions of dollars of debt each year. The potential for inhibition of the free flow of information inherent in imposing virtually unlimited liability for an arguably "erroneous" or "mistaken" assessment is plain. As a result, courts have afforded substantial constitutional protection to Rating Agency statements.

The First Amendment protections afforded credit rating opinions have been applied in a variety of contexts. *See, e.g., Compuware Corp.*, 499 F.3d at 529 (applying First Amendment to dismiss both contract and defamation claims); *Jefferson County School District* v. *Moody's Investor's Services*, 175 F.3d 848, 856 (10th Cir. 1999) (dismissing injurious falsehood, tortious interference, and antitrust claims brought against Moody's in connection with a bond rating report on the grounds that analysis of creditworthiness constitutes a "protected expression of opinion"); *In re Enron Corp.*, 511 F. Supp. 2d 742 (applying First Amendment to negligent misrepresentation claims). *See also, e.g., First Equity Corp.* v. *Standard & Poor's Corp.*, 690 F. Supp. 256 (S.D.N.Y. 1988), *aff'd on other grounds*, 869 F.2d 175 (2d Cir. 1989) (dismissing negligence claim with respect to report on bond).[19]

---

[18]    The very offering documents that Plaintiffs rely upon explicitly state that any ratings on the Rated Notes reflect only the opinion of the Rating Agencies. *See* n.8, *supra*. The Complaint acknowledges that the Ratings Agencies "published" information concerning the "Rated Notes" (¶ 174(b)) and makes reference to a Rating Agency "pre-sale" report and an article concerning SIVs, each published on a Rating Agency website. (*See* ¶¶ 62(c) and 62(f))

[19]    The cases in the text have focused on federal constitutional protection for Rating Agency speech, but the New York Constitution free speech clause extends even broader protection to speech and thus provides a separate basis for protection — and dismissal — here. *See Immuno*

*Footnote continued on next page.*

-27-

Some courts have held that the Rating Agencies' opinions enjoy absolute constitutional protection. *See Compuware*, 499 F.3d at 529 (recognizing that a credit rating itself "is a predictive opinion, dependent on a subjective weighing of complex factors"); *Jefferson County*, 175 F.3d at 856 (same). Even in cases where ratings have not been afforded absolute protection, courts have repeatedly required that in order to state a claim for issuing allegedly "false" credit rating opinions a plaintiff must allege that those ratings were published with "actual malice," that is, with actual knowledge that the rating was false or, at a minimum, with serious doubts on the part of the individual issuing the rating as to the truth of the rating. *See, e.g., In re Enron*, 511 F. Supp. 2d at 825. This Plaintiffs clearly have not done.

The actual malice standard, first enunciated by the Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), supplies the "breathing-space" the First Amendment requires. *Id.* at 272; *see also In re Enron*, 511 F. Supp. 2d at 822. Under this standard, there can be no liability for an allegedly false statement unless the statement is made "with knowledge that the statement was false or with reckless disregard for whether or not it was true." *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988). The actual malice standard protects from liability for "either innocent or negligent misstatement." *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967). Recklessness under the actual malice standard "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Instead, the standard is a subjective one, requiring the plaintiff to establish that "the defendant in fact entertained serious doubts as to the truth" of his statement. *Id.; see also Bose Corp. v. Consumer Union of United States, Inc.*, 466 U.S. 485, 511 n.30 (1984) (there is no "actual malice" unless "the defendant realized that his statement was false or [] *subjectively* entertained serious doubt as to the truth of his statement") (emphasis added).[20]

---

*Footnote continued from previous page.*

*AG v. Moor-Jankowski*, 566 N.Y.S.2d 906 (Ct. App. 1991).

[20]    While at the pleading stage, one need not identify by name the particular individual with the requisite knowledge, it must be clear that Plaintiff is alleging that *some individual* at S&P and/or

*Footnote continued on next page.*

In *In re Enron Corp, supra*, S&P and Moody's moved under Rule 12(b)(6) to dismiss a negligent misrepresentation claim alleging reliance on the Rating Agencies' ratings of Enron bonds, and the court applied the actual malice standard. The claim was defective, the Court found, because the plaintiff "ha[d] not identified factual statements that are provably false, and it ha[d] not alleged facts showing that the Rating Agencies were at fault because they knew or had significant suspicions that their statements were false and thus acted with actual malice." 511 F. Supp. 2d at 825. Likewise, in *County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 151, 156 & n.4 (C.D. Cal. 1999), the Court applied the actual malice standard to claims against S&P for breach of contract and professional negligence arising out of purportedly "false" ratings of Orange County's debt: "Because the County alleges harm arising from S&P's expressive activity," *i.e.*, its credit ratings, "the County must . . . satisfy the heightened pleading standards of the First Amendment." *Id.* at 156 (internal quotation marks omitted). *See also First Equity Corp.*, *supra*, (applying actual malice standard to claim that S&P disseminated a false bond description); *Compuware Corp.*, 499 F.3d at 526-29 (affirming district court's application of actual malice standard to claims arising from an allegedly "defective" Moody's credit rating).

Here, Plaintiffs do not allege that either of the Rating Agencies issued their ratings of the Rated Notes with actual malice. With respect to the ratings of the Cheyne notes, the Complaint alleges that the "defendants knew that the models used to generate the high ratings were inherently flawed and utterly unreliable," and that "as a result *the defendants* knew that the SIV's

*Footnote continued from previous page.*

Moody's had such knowledge. It is simply not sufficient to allege that a corporate entity purportedly had knowledge in various places within the institution that, if cumulated, could have given rise to the requisite state of mind. *First Equity Corp.*, 690 F. Supp. at 259-60 (combined knowledge of several employees insufficient to charge corporation with requisite state of mind); *Reed* v. *Northwest Publishing Co.*, 530 N.E.2d 474, 484 (Ill. 1988) ("We cannot . . . circumvent the actual-malice requirement in this case by pooling all of the information arguably within the knowledge of various employees and imputing all of that knowledge to the corporate defendant to establish that the corporate defendant acted with actual malice."); *see also New York Times Co.*, 376 U.S. at 287 (presence of information in defendant's files did not establish actual malice because "the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication").

credit ratings were false and misleading because they were based not on reliable models and assumptions, but on mere guesswork." (Compl. ¶ 7, emphasis added)  Apart from the failure of such allegation to identify specifically *either* S&P or Moody's (as opposed to "defendants" generally), let alone those who were actually responsible for issuing any ratings, the allegation amounts to no more than the oft repeated refrain that the "Rating Agencies" failed to "observe care," that the Rating Agencies failed to conduct an "adequate" analysis or relied on "obsolete" or "untested" assumptions and models, or otherwise did not do a good job. (*E.g.*, Compl. ¶¶ 102, 105, 144)  Throughout, the focus is not on knowledge of falsity of the actual ratings at issue, but on knowledge of alleged failings in general approaches or other ratings, *e.g.*, that "the Rating Agencies seriously doubted the validity of their own rating, monitoring and structuring *services*"[21] or "had discovered errors in their models for *other* complex securities during the relevant time" (Compl. ¶¶ 292(e), 293(e), 308(a)(iii), 308(a)(iv) (emphases added)).  Even when Plaintiffs do offer language about alleged knowledge or reckless disregard by the "Rating Agencies" (*e.g.* ¶ 245), their conclusory statements do not assert that those responsible for the Cheyne ratings knew those ratings to be false or harbored serious doubts as to them, but refer instead to a range of other generalized alleged flaws purportedly known by the "Rating Agencies" relating to a variety of rating actions affecting mortgage backed securities.  This is not an allegation of actual malice as to the alleged falsity of the Cheyne ratings, which are the only ratings at issue in this case.  Such allegations do not satisfy the stringent actual malice standard, and Plaintiffs' Complaint must be dismissed on this ground as well.

---

[21]    While this allegation parrots the "serious doubt" language, it fails to satisfy the actual malice requirement since, *inter alia*, (a) it does *not* allege that those who issued the Cheyne ratings had "serious doubts" as to the truth of the *ratings at issue*; and (b) it does not address separately Moody's or S&P, let alone the state of mind of the individuals responsible for the ratings.

-30-

## CONCLUSION

For the foregoing reasons, the Complaint fails to state any claim against Moody's Investors Service, Inc., Moody's Investors Service, Ltd., Standard & Poor's Rating Services or The McGraw-Hill Companies, Inc. and should be dismissed.


Dated:   New York, New York
         May 18, 2009

                                        Respectfully submitted,


Joshua M. Rubins                        Floyd Abrams
James J. Coster                         Dean Ringel
Glenn C. Edwards                        Adam Zurofsky
                                        Andrea R. Butler
SATTERLEE STEPHENS BURKE & BURKE LLP     CAHILL GORDON & REINDEL LLP


By: _____               By: _____

230 Park Avenue, 11th Floor             80 Pine Street
New York, New York 10169                New York, New York  10005
(212) 818-9200                          (212) 701-3000

*Attorneys for Defendants Moody's Investors*     *Attorneys for Defendant*
*Service, Inc. and Moody's Investors Service*    *The McGraw-Hill Companies, Inc.*
*Ltd.*