UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ABU DHABI COMMERCIAL BANK    :
AND KING COUNTY, WASHINGTON,    :
Together and on Behalf of All Others    :
Similarly Situated,    :
   :
         Plaintiffs,    :     08 Civ. No 7508 (SAS)
   :
      - against -    :     **ECF Case**
   :
MORGAN STANLEY & CO.    :
INCORPORATED, ET AL.,    :
   :
         Defendants.    :
   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MORGAN STANLEY &
CO. INCORPORATED, MORGAN STANLEY & CO. INTERNATIONAL LIMITED,
THE BANK OF NEW YORK MELLON, AND QSR MANAGEMENT LIMITED'S
MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 8(a), 9(b) AND 12(b)(6)**

James P. Rouhandeh
Antonio J. Perez-Marques
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York  10017
(212) 450-4000
*Counsel to Defendants Morgan Stanley &
     Co. Incorporated and Morgan Stanley &
     Co. International Limited*

Jonathan Sherman
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC  20015
(202) 237-2727

Damien Marshall
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
(954) 356-0011
*Counsel to Defendants The Bank of New
     York Mellon and QSR Management Ltd.*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................. i

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

    A.    Background ................................................................................................ 3

    B.    The Allegations ........................................................................................ 6

ARGUMENT .................................................................................................................... 8

I.    Plaintiffs Fail to State a Claim for Fraud or Negligent Misrepresentation ............. 8

    A.    Plaintiffs Fail to Plead the Role of Each Defendant ................................... 9

    B.    Plaintiffs Fail to Plead the Time or Place of Any Alleged Misstatement . 11

    C.    Plaintiffs Do Not Allege a Purchase of One of the Financial Instruments 12

    D.    Plaintiffs Fail to Plead Reasonable Reliance ........................................... 13

II.    Plaintiffs' Negligence Claim Against the BoNYM Entities Fails ........................ 15

III.    Plaintiffs Fail to Allege Adequately Any Contract-Based Claims ...................... 16

    A.    Plaintiffs Fail to State a Claim for Breach of Contract, Contract Failure of Condition, or Breach of the Covenant of Good Faith and Fair Dealing ... 16

        1.    Plaintiffs Do Not Identify a Contract with Morgan Stanley or the BoNYM Entities .................................................................. 17

        2.    Plaintiffs' Contract Allegations Against the BoNYM Entities Fail Under the Statute of Frauds .................................................... 18

    B.    Plaintiffs Fail to State a Claim for Tortious Interference ......................... 19

    C.    Plaintiffs' Third-Party Beneficiary Claims Fail........................................ 21

    D.    Plaintiffs Fail to State a Claim for Unjust Enrichment ............................. 24

IV.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ............................. 25

V.      Plaintiffs' Aiding and Abetting Claims Fail Under Rules 8(a) and 9(b) .............. 28

VI.     Diversity Jurisdiction Does Not Exist Under 28 U.S.C. § 1332(a)(3), Leaving the
        Class Action Fairness Act As the Only Possible Basis for the Court's Jurisdiction29

CONCLUSION............................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

<u>P</u>AGE

### CASES

<u>Abercrombie v. Andrew Coll.</u>, 438 F. Supp. 2d 243 (S.D.N.Y. 2006)........................................ 27

<u>Alvord & Swift v. Stewart M. Muller Constr. Co., Inc.</u>, 413 N.Y.S.2d 309 (1978).................... 20

<u>Atuahene v. City of Hartford</u>, 10 F. App'x 33, 2001 WL 604902 (2d Cir. May 31, 2001) ......... 11

<u>Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.</u>, No. 03 Civ. 1537(MBM),
    2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003), <u>aff'd</u>, 110 F. App'x 191, 2004 WL
    2278573 (2d Cir. Oct. 6, 2004) ............................................................................................ 25

<u>Barry & Sons, Inc. v. Instinct Prods. LLC</u>, 788 N.Y.S.2d 71 (App. Div. 2005) ......................... 21

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).......................................................... 10, 28

<u>Bellis v. Tokio Marine & Fire Ins. Co., Ltd.</u>, No. 93 Civ. 6549(DAB), 2002 WL 193149
    (S.D.N.Y. Feb. 7, 2002) ........................................................................................................ 24

<u>Boykin v. Keycorp</u>, 521 F.3d 202 (2d Cir. 2008) ........................................................................ 10

<u>Bristol & W. Bldg. Soc'y v. Mothew</u>, 1996 WL 1092374, [1996] 1998 Ch. 1 ............................ 21

<u>Computech Int'l, Inc. v. Compaq Computer Corp.</u>, No. 02 Civ. 2628(RWS), 2002 WL
    31398933 (S.D.N.Y. Oct. 24, 2002) ..................................................................................... 19

<u>Crigger v. Fahnestock & Co., Inc.</u>, 443 F.3d 230 (2d Cir. 2006) .................................................. 8

<u>Degraziano v. Verizon Commc'ns, Inc.</u>, 325 F. Supp. 2d 238 (E.D.N.Y. 2004) ......................... 11

<u>DiVittorio v. Equidyne Extractive Indus., Inc.</u>, 822 F.2d 1242 (2d Cir. 1987) ....................... 9, 12

<u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336 (2005)..................................................................... 30

<u>Elliott v. Qwest Commc'ns Corp.</u>, 808 N.Y.S.2d 443 (App. Div. 2006) .............................. 26, 27

<u>Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.</u>, 343 F.3d 189 (2d Cir.
    2003). ..................................................................................................................................... 13

<u>Ernest Lawrence Group v. Marketing the Americas, Inc.</u>, No. 03 Civ. 1510 (PKC), 2005
    WL 2811781 (S.D.N.Y. Oct. 27, 2005) ................................................................................ 28

<u>Fagan v. First Sec. Invs., Inc.</u>, No. 04 Civ 1021(LTS), 2006 WL 2671044 (S.D.N.Y. Sept.
    15, 2006). ............................................................................................................................... 15

Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325 (2d Cir. 2005). .......... 22

Flickinger v. Harold C. Brown & Co., 947 F.2d 595 (2d. Cir. 1991)..................................... 25, 27

Golden Pac. Bancorp. v. FDIC, 273 F.3d 509 (2d Cir. 2001) ...................................... 24

Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73 (2d Cir. 2002) ................................ 23

Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523 (S.D.N.Y. 2007)........................ 27

High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420 (S.D.N.Y. 1998) ............................................ 3

Holloway v. King, 361 F. Supp. 2d 351 (S.D.N.Y. 2005)............................................................ 27

In re Houbigant, Inc., 914 F. Supp. 964 (S.D.N.Y. 1995) ........................................................ 24

In re Indep. Energy Holdings PLC Sec. Litig., 154 F. Supp. 2d 741 (S.D.N.Y. 2001)................. 3

J.A.O. Acquisition Corp. v. Stavitsky, 831 N.Y.S.2d 364 (2007)................................................. 13

Jeras v. E. Mfg. Corp., 566 N.Y.S.2d 418 (App. Div. 1990)........................................................ 11

Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. LLC, No. 00 Civ 9214(RWS), 2003
       WL 1751780 (S.D.N.Y. Apr. 1, 2003)........................................................................... 15

Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. LLC, No. 00 Civ. 9214(RWS), 2007
       WL 2948115 (S.D.N.Y. Oct. 3, 2007) ......................................................................... 28

Kalfin v. U.S. Olympic Comm., 618 N.Y.S.2d 724 (App. Div. 1994)......................................... 19

Kronos, Inc. v. AVX Corp., 595 N.Y.S.2d 931 (1993) ............................................................... 20

LaSala v. Bank of Cyprus Pub. Co. Ltd., 510 F. Supp. 2d 246 (S.D.N.Y. 2007)........................ 22

LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071 (S.D.N.Y.
       1996) .................................................................................................................... 15

LaSalle Nat'l Bank v. Ernst & Young LLP, 729 N.Y.S.2d 671 (App. Div. 2001)................ 23, 24

Levy v. Bessemer Trust Co., N.A., No. 97 Civ 1785(JFK), 1997 WL 431079 (S.D.N.Y.
       July 30, 1997).......................................................................................... 17, 20, 23

Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770(SAS), 2003 WL 1858153
       (S.D.N.Y. Apr. 10, 2003) ................................................................. 9, 25, 26, 27

Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d 245 (S.D.N.Y. 2008) .......................... 9, 29

Meadowlands Invs., LLC v. CICB World Mkts. Corp., No. 04 Civ. 7328(DAB), 2005 WL 2347856 (S.D.N.Y. Sept. 22, 2005)............................................................ 12

Medline Indus., Inc. v. Maersk Med. Ltd., 230 F. Supp. 2d 857 (N.D. Ill. 2002)...................... 23

N.Y. Univ. v. Cont'l Ins. Co., 639 N.Y.S.2d 283 (1995) ............................................... 8

Newton v. City of N.Y., 566 F. Supp. 2d 256 (S.D.N.Y. 2008).......................................... 9

Nicholson v. Aesthetique, Ltd., No. 18042-03, 2009 WL 348293 (N.Y. Sup. Ct. Jan. 26, 2009) ........................................................................................................ 26, 27

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., 592 F. Supp. 2d 608 (S.D.N.Y. 2009)........................................................................... 29

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, No. 05 Civ. 9016(SAS), 2007 WL 528703 (S.D.N.Y. Feb. 20, 2007)............................. 27

Polar Int'l Brokerage Corp. v. Reeve, 108 F. Supp. 2d 225 (S.D.N.Y. 2000)...................... 9, 10

Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64 (2d Cir. 2003) ........................ 22

Randolph Equities LLC v. Carbon Capital, Inc., No. Civ. 10889(PAC), 2007 WL 914234 (S.D.N.Y. Mar. 26, 2007) ....................................................................... 16

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)........................................................ 3

Ruggerio v. Compania Peruana de Vapores, 639 F.2d 872 (2d Cir. 1981) ............................ 30

Scheck v. Francis, 311 N.Y.S.2d 841 (1970)........................................................... 19

Scone Invs., L.P. v. Am. Third Mkt. Corp., No. 97 Civ. 3802(SAS), 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998)....................................................................... 9, 10

Sec. Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63 (2d Cir. 2000) ...................... 15

Sedona Corp. v. Ladenburg Thalmann & Co., Inc., No. 03 Civ. 3120(LTS)(THK), 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005)....................................................... 17, 18

Skylon Corp. v. Guilford Mills Inc., No. 93 Civ. 5581 (LAP), 1997 WL 88894 (S.D.N.Y. Mar. 3, 1997)....................................................................................... 12

Tuosto v. Philip Morris USA Inc., No. 05 Civ. 9384(PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ................................................................................... 12

Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 155 F. Supp. 2d 1 (S.D.N.Y. 2001) .......................................................................................... 20

UniCredito Italiano SpA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485 (S.D.N.Y. 2003)13, 14, 15

Vanguard Mun. Bond Fund, Inc. v. Cantor, Fitzgerald L.P., 40 F. Supp. 2d 183 (S.D.N.Y. 1999) ................................................................................................................... 15

Vazquez v. Salomon Smith Barney Inc., No. 01 Civ. 2895(JSM), 2002 WL 10493 (S.D.N.Y. Jan. 4, 2002).................................................................................. 28

Vermeulen v. Renault, U.S.A., 985 F.2d 1534 (11th Cir. 1993) ................................ 29

Woolwich Equitable Bldg. Soc'y v. Inland Revenue Comm'rs, [1993] A.C. 70 ........................ 21

## STATUTES AND RULES

28 U.S.C. § 1332 ....................................................................................................... 29, 30

28 U.S.C. § 1603 ............................................................................................................ 29

Fed. R. Civ. P. 8(a) ............................................................................................. 1, 10, 30

Fed. R. Civ. P. 9(b). ................................................................................................. passim

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 30

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 30

N.Y. Gen. Oblig. Law § 5-701(a) ................................................................................ 19

## OTHER AUTHORITIES

15 Moore's Federal Practice § 102.74 (2009) ............................................................. 29

Restatement (Second) of Torts § 874 cmt. a (1977) ................................................... 25

Contracts (Rights of Third Parties) Act 1999 ............................................................. 22

Defendants Morgan Stanley & Co. Incorporated ("MS&Co"), Morgan Stanley & Co. International Limited ("MSIL" and, together with MS&Co, "Morgan Stanley"), The Bank of New York Mellon ("BNYM"), and QSR Management Limited ("QSR" and, together with BNYM, "the BoNYM entities") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs are sophisticated, institutional investors who allege claims against Morgan Stanley and the BoNYM entities predicated on representations they did not make, contracts they did not enter into, and fiduciary duties they did not owe.  Plaintiffs seek to represent all investors who purchased notes and commercial paper issued by non-party Cheyne Finance PLC (and its subsidiaries) between October 2004 and October 2007.  The complaint clumps together all "defendants," claiming that they misrepresented that plaintiffs' investments were worthy of the credit ratings assigned to plaintiffs' investments by the rating agency defendants.  Plaintiffs seek to recover for financial losses allegedly suffered when those ratings were ultimately downgraded beginning in August 2007.  Critical to the resolution of this motion is an analysis of the roles of each of the defendants in contrast to the roles of both the issuer and plaintiffs themselves. Plaintiffs assert thirty-two causes of action against eight defendants.  Eleven causes of action are asserted against Morgan Stanley (which acted as a placement agent for the notes and commercial paper), including common-law fraud, negligent misrepresentation, six contract-related claims, unjust enrichment and a claim for breach of fiduciary duty.  Ten causes of action are asserted against the BoNYM entities, which provided administrative and operations support to the issuer. The remaining eleven claims are brought against the rating agencies.

Despite the length of their complaint, plaintiffs fail to allege the most basic facts to support their claims against Morgan Stanley and the BoNYM entities.  They do not allege a single false or misleading statement by any of these defendants.  In fact, the information memoranda that described the investments (and are referenced in the complaint) state that Morgan Stanley and the BoNYM entities did not make any of the statements in the information memoranda, did not independently verify those statements, and did not have a duty to update them.  To the contrary, plaintiffs themselves acknowledged at the time they made their investments that they had conducted their own investigation and evaluation of the risks of investing in the notes and commercial paper.  Plaintiffs' fraud and negligent misrepresentation claims therefore fail because plaintiffs have not alleged the existence of a false or misleading statement by Morgan Stanley or the BoNYM entities, let alone reliance on any such statement.

Plaintiffs' contract-based, fiduciary duty and negligence claims must be dismissed for similar reasons.  Nowhere do plaintiffs plead any facts that would demonstrate the existence of a contract between plaintiffs and Morgan Stanley or the BoNYM entities.  Nor can plaintiffs allege the existence of a fiduciary relationship between plaintiffs and Morgan Stanley on the basis of, at most, an arm's-length transaction.  Because plaintiffs do not allege that they were in privity with the BoNYM entities, plaintiffs have not alleged facts giving rise to any duty owed to them.

Before bringing suit, plaintiffs should have had knowledge of the facts needed to plead their claims.  If a misrepresentation had been made, plaintiffs ought to have been able to plead it.  If a contract had been formed, plaintiffs should have been able to identify it.  And, if a fiduciary relationship had existed, they ought to have been able to allege the facts establishing it.  The failure to come forward with any of this information—and the fact that plaintiffs have already amended their complaint once—strongly militates in favor of a dismissal with prejudice.

2

**STATEMENT OF FACTS**

**A.      Background**

Plaintiffs are purchasers of notes and commercial paper issued by Cheyne Finance PLC

and its wholly owned U.S. subsidiary, Cheyne Finance LLC (collectively, "Cheyne Finance").

(Am. Compl. ¶¶ 2, 15.)  The notes and commercial paper were privately placed pursuant to

several different information memoranda.  (Id. ¶¶ 3, 62.)  Cheyne Finance's investment portfolio,

which is alleged to have been critical to the ratings assigned to the notes and commercial paper,

consisted of long-term securities, including asset-backed securities.  (Id. ¶¶ 1-3.)  Non-party

Cheyne Capital Management LLP ("CCML") managed the portfolio and made investment

decisions on behalf of Cheyne Finance.  (Id. ¶ 15.)  CCML was responsible for, among other

things, selecting and purchasing assets for Cheyne Finance, testing the quality of prospective

investments for compliance with the issuer's purchase guidelines, advising the issuer regarding

capital and liquidity risks associated with the portfolio, testing the portfolio for compliance with

liquidity and other operating limits, and acting as the agent of the issuer when dealing with rating

agencies.  (See Rouhandeh Decl. in Supp. Mot. Dismiss, May 18, 2009 ("Rouhandeh Decl."),

Ex. A at 74, 87-90.)[1]  Plaintiffs have not sued Cheyne Finance or CCML.

The notes and commercial paper issued by Cheyne Finance were "complex financial

instruments" intended for "sophisticated institutional investors."  (See id. Ex. A at 18; Ex. B at

---

[1] In ruling on this motion, the Court may consider documents incorporated by reference
into the complaint, and any documents "plaintiffs either possessed or knew about and upon
which they relied in bringing the suit."  In re Indep. Energy Holdings PLC Sec. Litig., 154 F.
Supp. 2d 741, 748 (S.D.N.Y. 2001) (Scheindlin, J.) (citing Rothman v. Gregor, 220 F.3d 81, 88
(2d Cir. 2000)); see also High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420, 426 n.1 (S.D.N.Y.
1998) (Scheindlin, J.) (considering offering memorandum not attached to complaint but "integral
to plaintiffs' . . . common law fraud claims").  The relevant information memoranda (see Am.
Compl. ¶¶ 3, 16, 17, 62) are attached as Exhibits A-C to the Rouhandeh Declaration.

24; Ex. C at 20.)  The information memoranda explicitly cautioned potential investors that they should not invest unless they have the "expertise" to properly evaluate the investment, and that any decision to invest in the notes or commercial paper "shall be deemed to be an acknowledgement by the purchaser that it has made such investigation and evaluation of the creditworthiness of the Issuer as it deems appropriate."  (See id. Ex. A at 2, 18; Ex. B at 3, 24; Ex. C at 4, 20.)  These documents expressly state that "[n]either Morgan Stanley (as a Placement Agent or in any other capacity) nor any of the Placement Agents have independently verified the information contained [t]herein."  (See id. Ex. A at 2; Ex. B at 4; Ex. C at 4.)

Plaintiffs are two sophisticated, institutional investors that invested in notes and commercial paper issued by Cheyne Finance.  Abu Dhabi Commercial Bank ("ADCB") purchased mezzanine capital notes ("MCNs") issued by Cheyne Finance PLC.  (See Am. Compl. ¶¶ 2, 17.)  Cheyne Finance also issued medium term notes ("MTNs") and shorter-term commercial paper.  (Rouhandeh Decl. Ex. A at 1.)  The original complaint in this matter was brought exclusively on behalf of purchasers of MCNs such as ADCB.  Plaintiffs amended the complaint in March 2009 to add plaintiff King County, Washington ("King County").  The case now purports to also be brought on behalf of purchasers of MTNs and commercial paper.  (Am. Compl. ¶¶ 2, 149.)  King County alleges only that it acquired either MTNs or commercial paper, without specifying which instrument it purchased.  (Id. ¶ 2, 16.)  Plaintiffs purport to represent a class of investors who made their purchases at various points in time between October 2004 and October 2007 pursuant to various information memoranda.  (Id. ¶ 149.)  The investments at issue were separately rated by the rating agencies, who are also defendants.  (Id. ¶ 59.)

Morgan Stanley acted as one of several placement agents for the MCNs, MTNs and commercial paper.  (See id. ¶ 18; Rouhandeh Decl. Ex. B at 181; Ex. C at 104.)  As placement

agent, Morgan Stanley placed these instruments with investors pursuant to information

memoranda, but the contents of those documents were explicitly the responsibility of the issuer,

Cheyne Finance.  The information memoranda expressly state that Morgan Stanley was not

responsible for:  (1) "independently verify[ing] the information contained" in them; (2) ensuring

the "accuracy or completeness at any time of the information contained or incorporated in [the]

Information Memorand[a] or any other information provided by the Issuer"; (3) "updating" the

information memoranda; (4) "review[ing] the financial condition or affairs of the Issuer" during

the life of the program; or (5) "advis[ing] any investor . . . of any information coming to [the

placement agent's] attention."  (Rouhandeh Decl. Ex. A at 2-3; Ex. B at 4; Ex. C at 4.)  The

information memoranda state that the notes and commercial paper were the obligations solely of

the issuer, which "accept[ed] responsibility for the information contained in th[e] Information

Memorand[a]."  (Id. Ex. A at 1-2; Ex. B at cover, 3; Ex. C at 3, 18.)

 BNYM was the U.S. Agent, Principal Paying Agent, Calculation Agent, Depositary, and

Registrar U.S. Security Agent for the Rated Notes.  (Am. Compl. ¶ 23.)  Plaintiffs do not allege

any wrongdoing by BNYM in these capacities.[2]  QSR is alleged to have provided various

"administrative services" as Administrator for the portfolio.  (Id. ¶ 24.)  The information

memoranda make clear that CCML, not QSR, was responsible for investment decisions and for

providing information to investors.  (Rouhandeh Decl. Ex. A at 74, 87-92; Ex. B at 96.)

 Beginning in August 2007, certain ratings assigned to the investments at issue were

downgraded by the rating agencies.  (Am. Compl. ¶¶ 14, 54.)  On September 5, 2007, Cheyne

Finance PLC entered into receivership.  (Id. ¶ 145.)  A restructuring occurred in June 2008 and

---

[2] The complaint references the BoNYM entities specifically in nine out of 154 paragraphs of factual allegations, with none specific to BNYM in any of its alleged capacities.

an auction process was instituted for the purchase of Cheyne Finance's portfolio.  (Id. ¶¶ 14, 148.)  Plaintiffs allege that the MCNs "are now worthless," and that holders of commercial paper and MTNs "recovered a fraction of their investments."  (Id. ¶ 14.)

### B.      The Allegations

At the core of the complaint is plaintiffs' allegation that the ratings assigned to the notes and commercial paper were false and misleading and that plaintiffs were damaged when the ratings were "abruptly" downgraded.  (Id. ¶¶ 66, 72, 143.)  Plaintiffs claim that "[d]efendants repeatedly communicated, or authorized the communication of, materially false and misleading information" relating to the various financial instruments, as well as regarding Cheyne Finance itself.  (Id. ¶ 59.)  The complaint does not specify any statements made by Morgan Stanley or the BoNYM defendants, but rather asserts three general categories of allegedly false statements made by undifferentiated "defendants," without specifying what those statements were, which defendants made them, when they were made or where they were made.  (Id.)

The complaint also claims that Morgan Stanley breached fiduciary duties it purportedly owed to investors by, *inter alia*, concealing the allegedly false and misleading nature of the ratings and "permitting low quality assets to be included in the [portfolio]."  (Id. ¶ 181.) Plaintiffs claim that a fiduciary relationship arose because Morgan Stanley allegedly held itself out as an expert, controlled the flow of information about the financial instruments and possessed non-public information about Cheyne Finance.  (Id. ¶ 179.)

Plaintiffs further assert the existence of numerous contracts between plaintiffs, Morgan Stanley, and/or various other parties, and that Morgan Stanley breached, or caused to be breached, several such contracts.  The complaint enumerates several breaches allegedly committed or caused by Morgan Stanley related to, *inter alia*, the ratings assigned to MCNs,

6

MTNs and commercial paper, and the composition of Cheyne Finance's portfolio.  (Id. ¶¶ 189, 197, 199, 212, 232.)  Plaintiffs do not identify the contracts, nor the specific provisions therein that were allegedly breached.  The complaint asserts that the contents of the putative contracts are set forth in "various documents," including "preliminary and final Information Memoranda" and "numerous Pricing Supplements."  (Id. ¶ 62.)  Plaintiffs also allege that Morgan Stanley tortiously interfered with unidentified contracts between plaintiffs and Cheyne Finance, and between Cheyne Finance and other defendants, to the detriment of plaintiffs as purported third-party beneficiaries.  (Id. ¶¶ 222-34.)  Finally, plaintiffs assert that the compensation Morgan Stanley earned by virtue of serving as a placement agent for Cheyne Finance was unjust and should be disgorged in favor of the plaintiff class.  (Id. ¶¶ 215-21.)

As for the BoNYM entities, plaintiffs contend that they were negligent in "failing to properly investigate and monitor the assets included in the Cheyne SIV," which led to the "inclusion of low quality, risky assets" in the portfolio, and that they made "misleading statements and omissions" concerning the ratings of the notes and the quality of the Cheyne Finance portfolio assets.  (Id. ¶¶ 334-35, 339.)  Plaintiffs never identify the source of these alleged misrepresentations, and the information memoranda provide that CCML, not the BoNYM entities, was responsible for selecting the assets and providing information about the portfolio to investors.  (Rouhandeh Decl. Ex. A at 74, 87-92; Ex. B at 96.)  Plaintiffs also allege a fiduciary duty between themselves and the BoNYM entities, which the BoNYM entities allegedly breached.  Plaintiffs make this allegation notwithstanding their failure to allege a direct relationship, or even direct contact, between themselves and the BoNYM entities.  Finally, plaintiffs allege that the BoNYM entities breached or interfered with unidentified contracts.

Based on the allegations above, plaintiffs assert claims against Morgan Stanley for common-law fraud, the BoNYM entities for negligence, and against both parties for negligent misrepresentation, breach of fiduciary duty, breach of contract, contract failure of condition, breach of contract (third-party beneficiary), breach of the covenant of good faith and fair dealing, unjust enrichment, tortious interference with contract (including, as against Morgan Stanley, a contract to which plaintiffs were purportedly third-party beneficiaries), and aiding and abetting. (Am. Compl. ¶¶ 155-239; 330-96.)

## ARGUMENT

## I. Plaintiffs Fail to State a Claim for Fraud or Negligent Misrepresentation

Plaintiffs' common-law fraud and negligent misrepresentation claims against Morgan Stanley, and their negligent misrepresentation claim against the BoNYM entities, should be dismissed because they fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and because plaintiffs do not adequately allege reasonable reliance.

To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) scienter; (4) reasonable reliance by plaintiff; and (5) resulting injury to plaintiff.  See Crigger v. Fahnestock & Co., Inc., 443 F.3d 230, 234 (2d Cir. 2006); N.Y. Univ. v. Cont'l Ins. Co., 639 N.Y.S.2d 283, 289 (1995).  To state a claim for negligent misrepresentation, a plaintiff must allege that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the defendant knew that the plaintiff desired the information supplied in the representation for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the

plaintiff reasonably relied on it to his or her detriment.  See Newton v. City of N.Y., 566 F. Supp. 2d 256, 274-75 (S.D.N.Y. 2008) (Scheindlin, J.).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) demands that a plaintiff asserting a fraud or negligent misrepresentation claim (1) detail the allegedly false and misleading statements; (2) identify the speaker; (3) specify where and when the statements were made; and (4) explain why the statements were false and misleading.  See Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008); Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770(SAS), 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003) (Scheindlin, J.).  As this Court has held, "[n]egligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard."  Maalouf, 2003 WL 1858153, at *4.

### A.    Plaintiffs Fail to Plead the Role of Each Defendant

This Court has held that Rule 9(b) is "not satisfied by a complaint in which defendants are clumped together in vague allegations."  Polar Int'l Brokerage Corp. v. Reeve, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (Scheindlin, J.).  Indeed, it is "well-settled" that when fraud is alleged against multiple defendants, the complaint must "inform each defendant of the nature of [its] alleged participation."  See id. at 237 (quoting DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)); see also Scone Invs., L.P. v. Am. Third Mkt. Corp., No. 97 Civ. 3802(SAS), 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998) (Scheindlin, J.) ("Courts are especially vigilant in applying Rule 9(b) where a complaint is made against multiple defendants.").  Thus, a complaint that merely "rel[ies] upon blanket references to the acts of all of the defendants" fails to satisfy Rule 9(b).  See Scone, 1998 WL 205338, at *4.

In <u>Polar</u>, this Court considered a complaint alleging misrepresentations against multiple defendants in connection with a tender offer. 108 F. Supp. 2d at 229. Finding that the complaint "[did] not differentiate in any way between defendants, nor . . . attempt to link any of the defendants with the alleged fraudulent statements," but rather "clumped together [defendants] as a single entity," this Court dismissed plaintiffs' claims for failure to satisfy Rule 9(b). <u>Id.</u> at 237-38. Similarly, in <u>Scone</u>, this Court dismissed a complaint asserting common-law fraud claims against multiple defendants for allegedly inducing plaintiffs to purchase securities, because the defendant was "most often mentioned in averments which impermissibly lump together the conduct of all the defendants." 1998 WL 205338, at *1, 3, 7.

The complaint does not allege a single misstatement by Morgan Stanley or the BoNYM entities, but rather clumps these defendants together with the rating agency defendants and asserts that "defendants" made misleading statements. Plaintiffs' sweeping, undifferentiated references to all "defendants" fall woefully short of satisfying Rule 9(b).[3]  (<u>See, e.g.</u>, Am. Compl. ¶¶ 2-7, 11-13, 15, 59, 60-61, 71-73, 76.) Plaintiffs allege, for example, that:

---

[3] Plaintiffs' claims against the BoNYM entities do not satisfy even the minimal pleading standards of Fed. R. Civ. P. 8(a). The Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u> clarified the pleading requirements imposed by Rule 8(a): "a plaintiff's obligation [under Rule 8(a)] to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." 550 U.S. 544, 555 (2007). The Second Circuit has applied <u>Twombly</u> to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations . . . where such amplification is needed to render the claim plausible." <u>Boykin v. Keycorp</u>, 521 F.3d 202, 213 (2d Cir. 2008). The nine paragraphs of the complaint referring to conduct by the BoNYM entities do not satisfy the Second Circuit's "plausibility standard." To hold the BoNYM entities liable for the ratings issued by others, plaintiffs must allege that (1) the BoNYM entities knew or should have known that the ratings were false; *and* (2) that the BoNYM entities had a duty to communicate this knowledge to investors. The only purported basis provided by plaintiffs is QSR's alleged responsibility to "determine and report the market values of the Cheyne SIV's collateral assets." (Am. Compl. ¶ 24.) Plaintiffs neither explain how this alleged responsibility

- "*defendants* misrepresented that investments in the Cheyne SIV were safe and worthy of such high ratings";

- "*defendants* represent[ed] that the SIV was a safe, highly-rated and secure financial instrument";

- "*defendants* unequivocally represented that the Cheyne SIV was risk-free";

- "*defendants* assured investors that the SIV's underlying investment portfolio would be acquired and managed in a way that legitimately justified the high credit ratings";

- "*defendants* made substantially similar representations to all members of the plaintiff Class"; and

- "*[d]efendants* repeatedly communicated . . . false and misleading information . . . to all members of the Class."

(Id. ¶¶ 2, 5-6, 11, 59, 63 (emphasis added).)  Plaintiffs take this approach even in the section of the complaint entitled "Factual Allegations With Particularity."  (See id. ¶ 59.)[4]

## B.      Plaintiffs Fail to Plead the Time or Place of Any Alleged Misstatement

Even if plaintiffs had not failed to differentiate among the defendants, plaintiffs' fraud and negligent misrepresentation claims against Morgan Stanley and the BoNYM entities would fail for the additional reason that the complaint does not satisfy Rule 9(b)'s requirement of

---

obligated QSR to investigate the risk or underlying quality of such assets, nor assert that the BoNYM entities were required to inform investors about those assets in the first place.

[4] All claims against BNYM should be dismissed because, apart from a single paragraph purportedly listing BNYM's alleged various roles (Am. Compl. ¶ 23), there are no allegations regarding BNYM.  The only possible basis for a claim against BNYM is that it is liable for the actions of its subsidiary, QSR.  "Under New York law, a parent company is not automatically liable for the acts of its wholly owned subsidiary."  Degraziano v. Verizon Commc'ns, Inc., 325 F. Supp. 2d 238, 245 (E.D.N.Y. 2004) (internal quotations omitted).  Nor has plaintiff alleged a basis for piercing the corporate veil.  See Jeras v. E. Mfg. Corp., 566 N.Y.S.2d 418, 420 (App. Div. 1990).  But plaintiffs do not allege that the corporate form is to be disregarded; rather, the complaint simply lumps BNYM and QSR together as the "BoNY" defendant.  This grouping of different defendants with distinct roles is contrary to the requirements of Rule 8.  See Atuahene v. City of Hartford, 10 F. App'x 33, 2001 WL 604902, at *1 (2d Cir. May 31, 2001).

11

specifying "the time, place, speaker, and content of the alleged misrepresentations."  See DiVittorio, 822 F.2d at 1247.  By clumping defendants together, the complaint fails to identify Morgan Stanley or the BoNYM entities as the "speaker" of any alleged misstatements.  See, e.g., Meadowlands Invs., LLC v. CICB World Mkts. Corp., No. 04 Civ. 7328(DAB), 2005 WL 2347856, at *7 (S.D.N.Y. Sept. 22, 2005).  In addition, plaintiffs fail to specify "where" Morgan Stanley or the BoNYM entities made any purported misrepresentations.  Plaintiffs claim only that the alleged misrepresentations were "disseminated by defendants . . . by various private information services."  (Am. Compl. ¶ 60.)  This falls far short of alleging the "place" of the misrepresentation.  See, e.g., Tuosto v. Philip Morris USA Inc., No. 05 Civ. 9384(PKL), 2007 WL 2398507, at *8-9 (S.D.N.Y. Aug. 21, 2007).

Plaintiffs also fail to specify "when" Morgan Stanley or the BoNYM entities made any purported misrepresentations.  The complaint alleges only that "defendants" collectively "repeatedly communicated" false and misleading information to class members "throughout the [three-year] Class Period."  (Am. Compl. ¶¶ 59-60, 63.)  If misrepresentations were in fact made by Morgan Stanley or the BoNYM entities, plaintiffs plainly could have alleged when they were made.  Moreover, plaintiffs cannot cure this defect by alleging that unspecified misrepresentations were made to the class "on each day" of the three-year period.  (Id. ¶¶ 158, 172); see, e.g., Skylon Corp. v. Guilford Mills Inc., No. 93 Civ. 5581 (LAP), 1997 WL 88894, at *2 (S.D.N.Y. Mar. 3, 1997) ("[O]utlin[ing] a four-month window during which all of the misrepresentations occurred . . . does not satisfy the pleading standard of Rule 9(b).").

### C.      Plaintiffs Do Not Allege a Purchase of One of the Financial Instruments

The complaint is also deficient under Rule 9(b) because plaintiffs do not even allege that they purchased all three of the financial instruments underlying their claims.  Plaintiff ADCB

alleges that it purchased MCNs.  (Am. Compl. ¶ 17.)  King County, however, fails to identify the financial instrument it purchased.  Instead, it alleges that it purchased "Senior Notes," which are defined to include commercial paper and MTNs (id. ¶¶ 2, 16), but nowhere claims that it purchased *both* commercial paper and MTNs.  Assuming King County purchased commercial paper alone, as plaintiffs' counsel suggested to the Court, any claims based on the purchase of MTNs must be dismissed because neither plaintiff purchased them.

### D.  Plaintiffs Fail to Plead Reasonable Reliance

Plaintiffs' claims for fraud and negligent misrepresentation must be dismissed for the independent reason that the information memoranda incorporated by reference in the complaint explicitly state that the representations therein are those of the issuer, not of Morgan Stanley or the BoNYM entities.  The information memoranda also expressly disclaim liability for Morgan Stanley and the BoNYM entities, with the exception of a single paragraph describing QSR's business.  (See Rouhandeh Decl. Ex. A at 2-3, 76; Ex. B at 3-4, 70; Ex. C at 3-4, 28.)

In New York, a plaintiff asserting a claim for fraud or negligent misrepresentation must plead not only that it relied on the false and misleading statements of a particular defendant, but that such reliance was reasonable.  See J.A.O. Acquisition Corp. v. Stavitsky, 831 N.Y.S.2d 364, 366 (2007).  A disclaimer of liability precludes the plaintiff from adequately pleading reasonable reliance, especially where the plaintiff is a sophisticated investor.  See, e.g., Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195-96 (2d Cir. 2003); UniCredito Italiano SpA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 498-99 (S.D.N.Y. 2003).

As in UniCredito, the relevant claims here are brought against a non-issuer and each of the information memoranda explicitly disclaims any liability for Morgan Stanley:

> The Issuer accepts responsibility for the information contained in
> this Information Memorandum . . . .  Neither Morgan Stanley . . .

> nor any of the Placement Agents have independently verified the
> information contained herein.  Accordingly, no representation,
> warranty or undertaking, express or implied, is made and no
> responsibility or liability is accepted by Morgan Stanley . . . as to
> the accuracy or completeness at any time of the information
> contained or incorporated in this Information Memorandum or any
> other information provided by the Issuer, CCML or QSR in
> connection with the [financial instruments] . . . or their distribution.

(Rouhandeh Decl. Ex. A at 2-3; Ex. B at 3-4; Ex. C at 3-4.)  Similar disclaimers applied to the

BoNYM entities.  (Id. Ex. A at 2; Ex. B at 3; Ex. C at 3.)  These disclaimers (as well as the

additional disclaimers noted supra at 5) make clear that the contents of the information

memoranda are the representations of the *issuer*, not Morgan Stanley or the BoNYM entities.

Accordingly, the relevant documents "on their face" preclude plaintiffs from claiming that they

could have reasonably relied on anything Morgan Stanley or the BoNYM entities allegedly said.

See UniCredito, 288 F. Supp. 2d at 499.

Moreover, as in UniCredito, plaintiffs here were sophisticated investors, and were

explicitly instructed to perform their own due diligence before investing (see Rouhandeh Decl.

Ex. A at 1-2, 18; Ex. B at 3, 24; Ex. C at 4, 20).  Plaintiffs cannot now claim that Morgan

Stanley, the BoNYM entities or anyone else was responsible for conducting due diligence, let

alone that they relied on Morgan Stanley or the BoNYM entities to conduct due diligence for

their benefit.  This is especially true where, as the information memoranda plainly establish,

plaintiffs purchased privately placed "complex financial instruments" intended solely for

"[s]ophisticated, institutional investors."  (See id. Ex. A at 1, 18; Ex. B at 23-24, 111; Ex. C at

20, 56.)  ADCB is a state-owned, full-service commercial bank with a market capitalization of

more than $16 billion, see Abu Dhabi Commercial Bank, http://www.adcb.com/aboutus/

mediacenter/presskit/presskit.asp (last visited May 18, 2009), and King County is a publicly

incorporated government entity representing the city of Seattle and a population of 1.8 million, see King County, Washington, http://www.kingcounty.gov/About.aspx (last visited May 18, 2009).  As such, the express disclaimers clearly preclude these sophisticated investors from asserting reliance.  See UniCredito, 288 F. Supp. 2d at 499.

## II.     Plaintiffs' Negligence Claim Against the BoNYM Entities Fails

Plaintiffs also assert a claim for negligence against the BoNYM entities.  (Am. Compl. ¶¶ 330-36.)  Under New York law, the elements of a negligence claim are:  "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach."  Fagan v. First Sec. Invs., Inc., No. 04 Civ. 1021(LTS), 2006 WL 2671044, at *5 (S.D.N.Y. Sept. 15, 2006).  This claim must be dismissed because the complaint does not allege privity (or a relationship approaching privity) between the BoNYM entities and plaintiffs.  See Sec. Inv. Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 75 (2d Cir. 2000) (privity generally requires "direct contact" between the parties).  For there to be "a relationship so close as to approach that of privity," plaintiffs must show:  (i) awareness by defendant that the statements were to be used for a particular purpose; (ii) reliance by a known party in furtherance of that purpose; and (iii) conduct by defendants linking them to the known party and evincing an understanding of the party's reliance.  Vanguard Mun. Bond Fund, Inc. v. Cantor, Fitzgerald L.P., 40 F. Supp. 2d 183, 190 (S.D.N.Y. 1999) (quoting LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1093 (S.D.N.Y. 1996)).  Plaintiffs here fail to identify any conduct or contract "linking" plaintiffs to the BoNYM entities; indeed, they fail to allege any direct contact between the BoNYM entities and any investor.  As Vanguard makes clear, the failure to allege a relationship of privity requires dismissal of both plaintiffs' negligence and negligent misrepresentation claims.  40 F. Supp. 2d at 193-94; see also Jordan (Bermuda) Inv.

Co. v. Hunter Green Invs. LLC, No. 00 Civ. 9214(RWS), 2003 WL 1751780, at *12-13

(S.D.N.Y. Apr. 1, 2003) (dismissing negligence claim against administrator for lack of privity).[5]

## III.     Plaintiffs Fail to Allege Adequately Any Contract-Based Claims

No less than eleven claims asserted against Morgan Stanley and the BoNYM entities

allege the existence of putative contracts that Morgan Stanley or the BoNYM entities supposedly

breached or with which they supposedly interfered.  Morgan Stanley and the BoNYM entities are

each alleged to have breached a contract between themselves and plaintiffs; breached certain

contracts with co-defendants and/or Cheyne Finance as to which plaintiffs were third-party

beneficiaries; and tortiously interfered with a contract between plaintiffs and Cheyne Finance.

Additionally, Morgan Stanley is alleged to have tortiously interfered with a contract between

Cheyne Finance and either the rating agencies or the BoNYM entities, as to which plaintiffs were

not parties but were allegedly third-party beneficiaries.  Despite the thicket of alleged contracts

to which plaintiffs refer, the complaint does not identify a single contract, let alone one that

Morgan Stanley or the BoNYM entities breached or with which they interfered.

### A.     Plaintiffs Fail to State a Claim for Breach of Contract, Contract Failure of Condition, or Breach of the Covenant of Good Faith and Fair Dealing

In order to properly plead a claim for breach of contract, a plaintiff must allege facts

sufficient to show that defendants and plaintiffs entered into an agreement.  See Randolph

Equities LLC v. Carbon Capital, Inc., No. Civ. 10889(PAC), 2007 WL 914234, at *4 (S.D.N.Y.

Mar. 26, 2007).  "For a breach of contract claim, Plaintiff must provide specific allegations as to

---

[5] The BoNYM entities join in those portions of the rating agencies' joint memorandum (i) setting forth additional arguments regarding privity; and (ii) arguing that the unjust enrichment claim fails because there is no relationship between plaintiffs and the BoNYM entities.

an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." Levy v. Bessemer Trust Co., N.A., No. 97 Civ. 1785(JFK), 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997); see also Sedona Corp. v. Ladenburg Thalmann & Co., Inc., No. 03 Civ. 3120(LTS)(THK), 2005 WL 1902780, at *20 (S.D.N.Y. Aug. 9, 2005) ("laundry list of alleged breaches" of "myriad alleged oral and written agreements" insufficient to provide defendants with notice of the breach of contract claim).

### 1.    Plaintiffs Do Not Identify a Contract with Morgan Stanley or the BoNYM Entities

Six of plaintiffs' claims—three each against Morgan Stanley and the BoNYM entities— refer to unidentified contracts between plaintiffs and either Morgan Stanley or the BoNYM entities:  breach of contract (Am. Compl. ¶¶ 184-92 (Morgan Stanley); 351-58 (the BoNYM entities)); contract failure of condition (id. ¶¶ 193-203 (Morgan Stanley); 359-69 (the BoNYM entities)); and breach of the covenant of good faith and fair dealing (id. ¶¶ 209-14 (Morgan Stanley); 375-79 (the BoNYM entities)).  As set forth below, these claims should be dismissed.

Plaintiffs have not identified a contract between themselves and Morgan Stanley or the BoNYM entities.  With respect to Morgan Stanley, paragraph 189 of the complaint sets forth a list of twelve supposed contract terms that were breached, but does not allege the formation of a contract embodying these or any other provisions.  (Id. ¶ 189.)  With respect to the BoNYM entities, plaintiffs only allege that they "agreed to pay [the BoNYM entities] out of their Rated Notes principal and interest for the [BoNYM entities'] reporting and valuation services."  (Id. ¶ 353.)  Plaintiffs do not identify any contracts, let alone the provisions of any such purported contracts, other than to assert only that terms "were included in substantially identical materials distributed to each Class member."  (Id. ¶ 354.)  Elsewhere in the complaint, plaintiffs identify various categories of documents, including the information memoranda, pricing supplements,

and reports issued by the rating agency defendants, that are among those comprising the many alleged contracts underlying plaintiffs' claims against the defendants to this action.  (Id. ¶ 62.)

Setting forth a "laundry list" of twelve supposed breaches—unaccompanied by either an identification of the contract in which the breached terms were contained or the provisions thereof—does not satisfy plaintiffs' pleading obligations.  See Sedona, 2005 WL 1902780, at *20.  Nor does a buckshot pleading approach of identifying "myriad . . . agreements" that supposedly form the contract at issue cure this defect.  See id.  Because Morgan Stanley and the BoNYM entities cannot defend a claim for breach of contract without being confronted with the contract that was allegedly breached, plaintiffs' claims for breach of contract, contract failure of condition, and breach of the covenant of good faith and fair dealing should be dismissed.[6]

### 2.      Plaintiffs' Contract Allegations Against the BoNYM Entities Fail Under the Statute of Frauds

To the extent New York law governs plaintiffs' contract claims against the BoNYM entities, those claims fail to satisfy New York's Statute of Frauds, which requires a written agreement between the parties.[7]  Plaintiffs allege only open-ended, ongoing obligations of the

---

[6] Plaintiffs' claim for "contract failure of condition" also should be dismissed because there is no such cause of action.  Nor does the cause of action as alleged make sense:  plaintiffs claim that, because conditions precedent to the alleged contracts were unfulfilled, Morgan Stanley and the BoNYM entities breached those contracts.  (Am. Compl. ¶¶ 194-203, 360-69.) By definition, however, a condition precedent must be satisfied before a contract is formed, and there cannot be a breach of an unformed contract.  Plaintiffs' claims for breach of the covenant of good faith and fair dealing (id. ¶¶ 209-14, 375-79), which are governed by English law, should also be dismissed for failure to allege the underlying contract, and for the additional reasons addressed infra at note 9.

[7] New York's Statute of Frauds provides, in relevant part:

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . .

18

BoNYM entities.  (See, e.g., Am. Compl. ¶¶ 353, 355, 357.)  As such, those obligations are subject to the Statute of Frauds.  See Kalfin v. U.S. Olympic Comm., 618 N.Y.S.2d 724, 725 (App. Div. 1994).  Because plaintiffs allege no writing that the BoNYM entities subscribed to with the intent of being bound, see Scheck v. Francis, 311 N.Y.S.2d 841, 843-44 (1970), their breach of contract claims fail.

### B.      Plaintiffs Fail to State a Claim for Tortious Interference

Plaintiffs allege that Morgan Stanley tortiously interfered with two contracts:  a contract between plaintiffs and Cheyne Finance (Am. Compl. ¶¶ 222-28), and a contract between Cheyne Finance and/or the rating agencies or the BoNYM entities (id. ¶¶ 229-34).  Plaintiffs also allege that the BoNYM entities tortiously interfered with a contract between plaintiffs and Cheyne Finance.  (Id. ¶¶ 389.)  These claims fail for several reasons.

First, "the existence of a contract between plaintiff and a third party" is an element of a tortious interference claim, Kronos, Inc. v. AVX Corp., 595 N.Y.S.2d 931, 934 (1993), and plaintiffs have not identified any such contract.  Plaintiffs' tortious interference claims assert only that "[a] valid contract exists between [plaintiffs] and the Cheyne SIV governing their investments (Am. Compl. ¶¶ 224, 389), and plaintiffs' third-party beneficiary tortious interference claim asserts only that "[a] valid contract exists between the Cheyne SIV *and/or* the Ratings Agencies *and/or* [the BoNYM entities]" governing the management of the SIV's assets (id. ¶ 231) (emphasis added).  Plaintiffs do not specify anything more about these supposed

---

   [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

N.Y. Gen. Oblig. Law § 5-701(a)(1) (2009).  Further, "contracts of indefinite duration are deemed to be incapable of being performed within a year, and thus fall within the ambit of the Statute of Frauds."  Computech Int'l, Inc. v. Compaq Computer Corp., No. 02 Civ. 2628(RWS), 2002 WL 31398933, at *3 (S.D.N.Y. Oct. 24, 2002) (collecting cases).

contracts, and, as for their third-party beneficiary claim, are evidently not even aware of the parties that executed it.  Plainly, plaintiffs have not met their pleading burden to specify the relevant agreement and the provisions that were allegedly breached.  See Levy, 1997 WL 431079, at *5.

Second, plaintiffs fail to plead any interference, let alone intentional interference.  Mere knowledge of a contract is insufficient to constitute tortious interference with that contract.  See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc., 155 F. Supp. 2d 1 (S.D.N.Y. 2001); see also Kronos, 595 N.Y.S.2d at 934.  Moreover, in order to state a claim for tortious interference with contract, a plaintiff must allege that "the interference [was] intentional, not merely negligent or incidental to some other, lawful, purpose."  See Alvord & Swift v. Stewart M. Muller Constr. Co., Inc., 413 N.Y.S.2d 309, 312 (1978).

With respect to Morgan Stanley's alleged interference with the purported contract between plaintiffs and Cheyne Finance, plaintiffs allege only that Morgan Stanley "was aware" of the contract and "caused the Cheyne SIV to breach [it] by selling to the Cheyne SIV low quality assets backed by nonprime mortgages."  (Am. Compl. ¶¶ 225-26.)  With respect to Morgan Stanley's interference with the purported contract between Cheyne Finance and either the rating agencies or the BoNYM entities, plaintiffs similarly allege that Morgan Stanley was "aware" of the contract and "caused the parties to this contract to breach their contractual obligations by selling to the Cheyne SIV and/or [CCML] low quality assets backed by problematic mortgage loans."  (Id. ¶¶ 231-32.)  Yet plaintiffs nowhere explain how Morgan Stanley's alleged conduct prevented others from fulfilling their alleged contractual obligations.  Nor do they assert—not even generally—that Morgan Stanley intended to interfere with the contractual obligations of others.  See Alvord, 413 N.Y.S.2d at 309.

With respect to the BoNYM entities' alleged interference with a contract between plaintiffs and Cheyne Finance, plaintiffs assert only that the BoNYM entities were aware of this contract and interfered with it by "failing to inform the Cheyne SIV that the assets . . . did not merit . . . 'investment' grade ratings," by "facilitating the sale of, and permitting the Cheyne SIV to continue purchasing, impaired assets," and by "reporting inaccurate information."  (Am. Compl. ¶ 391.)   Plaintiffs do not allege the BoNYM entities' interference was intentional, and New York law does not recognize a cause of action for "negligent" interference.  Barry & Sons, Inc. v. Instinct Prods. LLC, 788 N.Y.S.2d 71, 75 (App. Div. 2005).

### C.    Plaintiffs' Third-Party Beneficiary Claims Fail

Plaintiffs allege that Morgan Stanley breached and tortiously interfered with contracts as to which plaintiffs were third-party beneficiaries, and that the BoNYM entities breached a contract as to which plaintiffs were third-party beneficiaries.  (Am. Compl. ¶¶ 204-08, 229-34, 387-93.)  The Court should apply English law and dismiss these claims.  Unlike plaintiffs' other contract claims, which do not differ across jurisdictions and therefore need not undergo a choice-of-law analysis, English third-party beneficiary law differs materially from that of New York.  Because the U.K. has a greater connection to these claims and substantively differs from New York law, its law should apply here.[8]

---

[8] Plaintiffs should be required to plead facts establishing which law applies to their non-contract claims; as it stands, the complaint does no more than assert that the "violations of law . . . occurred in part in this district."  (Am. Compl. ¶ 28.)  While plaintiffs' deficient pleading precludes a choice-of-law analysis, even if plaintiffs were permitted to amend, English law may apply and many of plaintiffs' non-contract law claims would fail under that jurisdiction's substantive law.  See, e.g., Bristol & W. Bldg. Soc'y v. Mothew, 1996 WL 1092374, [1996] 1998 Ch. 1, 18 (noting that a breach of a duty of care and skill, even if owed by a fiduciary, does not constitute a breach of a fiduciary duty); Woolwich Equitable Bldg. Soc'y v. Inland Revenue Comm'rs, [1993] A.C. 70, 196-97 (English law recognizes unjust enrichment in certain circumstances, but there is "no general rule giving the plaintiff a right of recovery from a defendant who has been unjustly enriched at the plaintiffs' expense").

As an initial matter, this Court applies the "center of gravity" or "grouping of contacts" test to determine whether New York or the U.K. has "the most significant relationship to the transaction and the parties." See LaSala v. Bank of Cyprus Pub. Co. Ltd., 510 F. Supp. 2d 246, 266 (S.D.N.Y. 2007) (identifying relevant factors in choice of law analysis for contract claims) (internal quotations omitted). Under this test, the alleged contracts in this case mandate application of English law. MSIL—which was a placement agent for the notes issued to ADCB—is a U.K. entity, as is the manager, CCML. (Rouhandeh Decl. Ex. A at 74, 142.) The information memorandum pursuant to which ADCB purchased its MCNs establishes that those notes are governed by English law, and that English courts have jurisdiction to settle disputes arising out of those notes. (Id. Ex. A at 62); see Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 69, 76 (2d Cir. 2003) (concluding that English law would apply to plaintiffs' contract claims largely because the notes purchased were specifically governed by English law). The U.K., therefore, has a more significant relationship to the relevant transactions and parties.

Further, because English law provides "different substantive rules" than does New York law, this Court should apply the former. See Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 331 (2d Cir. 2005). Specifically, under English law, third-party beneficiary claims are permitted only in circumstances narrowly circumscribed by statute. Pursuant to the Contracts (Rights of Third Parties) Act 1999, a third-party beneficiary may sue for breach of contract in two distinct situations: where the contract specifically states that the third party may enforce it, or where the contract expressly identifies the third party and purports to convey a benefit upon it. See Contracts (Rights of Third Parties) Act 1999, § (1)(a)-(b), (2) (Rouhandeh Decl. Ex. D.) Here, the complaint alleges neither. Additionally, each of the information memoranda explicitly states that "[n]o rights are conferred on any person under the

22

Contracts (Rights of Third Parties) Act 1999 to enforce any term of" the relevant financial instrument.  (Rouhandeh Decl. Ex. A at 61; Ex. B at 179; Ex. C at 102.)  Thus, plaintiffs' third-party beneficiary claims fail under English law.[9]

Even if this Court applies New York law, however, plaintiffs' third-party beneficiary claims fail for two reasons.  First, as with plaintiffs' other contract-based claims, it is axiomatic that in order to proceed on a third-party beneficiary claim for breach of contract, a plaintiff must identify the contract that was supposedly breached.  See LaSalle Nat'l Bank v. Ernst & Young LLP, 729 N.Y.S.2d 671, 676-77 (App. Div. 2001).  Plaintiffs fail to identify any particular contract that would support their claims for breach of contract as third-party beneficiaries, instead alleging vaguely that:  (i) "on information and belief, written agreements [existed] among and between the various defendants, to which plaintiffs were not a party, but which were intended for the direct benefit of the plaintiff Class" (Am. Compl. ¶ 62); and (ii) "[a] valid contract exists between the Cheyne SIV and/or the Ratings Agencies and/or [the BoNYM entities] governing the manner in which the Class's investment capital may be managed" (id. ¶ 231).  Without identifying the actual agreements or contract provisions, plaintiffs have not properly alleged a valid contract which Morgan Stanley or the BoNYM entities breached or with which they could have interfered.  See Levy, 1997 WL 431079, at *5.

---

[9] Given a similar conflict of applicable law, plaintiffs' claims for breach of the covenant of good faith and fair dealing are likewise governed by English law, under which they unquestionably fail, because "[t]here is no claim under English law for breach of an implied duty of good faith and fair dealing."  See Medline Indus., Inc. v. Maersk Med. Ltd., 230 F. Supp. 2d 857, 864-65  (N.D. Ill. 2002) (collecting English authority).  Further, although the cause of action exists under New York law, it fails here because it is duplicative of plaintiffs' breach of contract claims.  See Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002); (Am. Compl. ¶¶ 210, 212 (alleging that the covenant supposedly breached was "implied in the agreements set forth above" in plaintiffs' claims for breach of contract)).

Second, plaintiffs fail to allege "*facts* demonstrating that they were *intended* beneficiaries*" of the contracts.  See, e.g., Bellis v. Tokio Marine & Fire Ins. Co., Ltd., No. 93 Civ. 6549(DAB), 2002 WL 193149, at *21 (S.D.N.Y. Feb. 7, 2002); see also, e.g., LaSalle, 729 N.Y.S.2d at 676-77 (dismissing third-party beneficiary claim where retention letter did not contain "clear contractual language evincing such intent").  "There must be some facts beyond a conclusory allegation that a party is a third party beneficiary, to survive a motion to dismiss."  In re Houbigant, Inc., 914 F. Supp. 964, 986 (S.D.N.Y. 1995).   By doing no more than asserting that "the purpose and intent" of the putative contracts was "to benefit directly the plaintiff Class" (Am. Compl. ¶¶ 206, 231), plaintiffs fail to meet this standard.

### D.    Plaintiffs Fail to State a Claim for Unjust Enrichment

Plaintiffs assert that Morgan Stanley was unjustly enriched by "receiv[ing] millions of dollars in compensation for selling" the notes and commercial paper, and that "[h]aving destroyed billions of dollars in investment capital . . . it is against equity and good conscience to permit Morgan Stanley to retain any profits or remuneration."  (Id. ¶¶ 215-21.)  Plaintiffs allege that the BoNYM entities were unjustly enriched because they "received substantial compensation for the services [they] provided," which was "derived from the market value of the assets included in the Cheyne SIV."  (Id. ¶¶ 380-86.)

Under New York law, to plead a claim for unjust enrichment or quasi-contract, a plaintiff must allege that (1) the defendant was enriched; (2) the enrichment occurred at the plaintiff's expense; and (3) the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff.  See Golden Pac. Bancorp. v. FDIC, 273 F.3d 509, 519 (2d Cir. 2001).  Under the second element, "the mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for

24

unjust enrichment." Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537(MBM), 2003 WL 23018888, at *17 (S.D.N.Y. Dec. 22, 2003) (internal quotations omitted) (treating unjust enrichment as a "quasi-contractual" remedy), aff'd, 110 F. App'x 191, 2004 WL 2278573 (2d Cir. Oct. 6, 2004).  In particular, fees paid to a defendant cannot be recovered unless it was the plaintiff who paid those fees.  See id. at *17-18.

Plaintiffs' claims fail because plaintiffs cannot allege that they paid the "millions of dollars in compensation" to Morgan Stanley or "substantial compensation" to the BoNYM entities.  Plaintiffs did not confer any benefit, financial or otherwise, directly upon these defendants.  Indeed, plaintiffs fail to identify who compensated the BoNYM entities (see Am. Compl. ¶ 382), and allege that Morgan Stanley's fees were paid by Cheyne Finance (see id. ¶ 218).  Because no direct benefit was conferred by plaintiffs on Morgan Stanley or the BoNYM entities, plaintiffs' claims for unjust enrichment or quasi-contract should be dismissed.

## IV.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

To plead a breach of fiduciary duty under New York law, a plaintiff must allege (1) the existence of a fiduciary relationship between the parties; (2) the defendant's knowing breach of its fiduciary obligations; and (3) damages as a result of the breach.  See Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770(SAS), 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003) (Scheindlin, J.).  A fiduciary relationship exists when one party "is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d. Cir. 1991) (quoting Restatement (Second) of Torts § 874 cmt. a (1977)).  More specifically, a plaintiff must plead that (1) "the relationship existed before the transaction that is the subject of the action"; (2) "reliance was not merely subjective"; and (3) "the nature of the relationship imposed a duty upon the fiduciary to act in the

principal's interest, even if such action were to the detriment of the fiduciary." Maalouf, 2003 WL 1858153, at *5. If the facts as pled do not support such a relationship, the claim must be dismissed. See id. at *4-5. In Maalouf, the Court dismissed the claim because "an arm's length business transaction, even those where one party has superior bargaining power[,] is not enough to give rise to a fiduciary relationship." Id. at *5 (internal quotations omitted). The Court specifically found the complaint's vague averments that the defendant "was in a dominant position as it possessed knowledge and expertise" and that a "relationship of trust and confidence [existed] between" the parties were insufficient to plead a fiduciary relationship. Id.; see also Elliott v. Qwest Commc'ns Corp., 808 N.Y.S.2d 443, 445 (App. Div. 2006) (holding that "a simple business transaction between a potential investor and a company soliciting such investors" does not give rise to a fiduciary relationship); Nicholson v. Aesthetique, Ltd., No. 18042-03, 2009 WL 348293, at *8 (N.Y. Sup. Ct. Jan. 26, 2009).

As to Morgan Stanley, plaintiffs allege that it breached fiduciary duties purportedly owed to plaintiffs by, *inter alia*, "engaging in self-dealing" by "selling assets or permitting assets to be sold to the Cheyne SIV that were extremely risky," and by "pricing the securities in a manner that did not fully capture the risks." (Am. Compl. ¶ 181.) These allegations are insufficient to establish a breach of fiduciary duty because they demonstrate that plaintiffs and Morgan Stanley were on *opposite* ends of a transaction and fail to allege any facts supporting the existence of a fiduciary relationship. The complaint makes clear that plaintiffs and Morgan Stanley were in the positions of "potential investor[s] and a company soliciting such investors." Elliott, 808 N.Y.S.2d at 445; (see Am. Compl. ¶ 18 (alleging Morgan Stanley "sold assets to the Cheyne SIV investors"); id. ¶ 160 (alleging Morgan Stanley attempted to "induc[e] members of the plaintiff Class to buy . . . the Rated Notes"); id. ¶ 186 (alleging plaintiffs executed sales contract with

Morgan Stanley)).  This type of arm's length transaction does not give rise to a fiduciary relationship under New York law.  See Maalouf, 2003 WL 1858153, at *5; Elliott, 808 N.Y.S.2d at 445; Nicholson, 2009 WL 348293, at *8.  Further, the complaint nowhere alleges that Morgan Stanley was obliged "to give advice for the benefit" of plaintiffs.  See Flickinger, 947 F.2d at 599.  Indeed, as noted supra at 4, 14-15, plaintiffs were sophisticated investors who were capable of evaluating the risks of their investments and acknowledged that they had done so.

In the face of these patent deficiencies, the complaint offers only generic allegations.  It alleges that a fiduciary duty existed because Morgan Stanley "held [itself] out as having knowledge, expertise and skill"; "controlled the flow of information"; possessed "material non-public information" about Cheyne Finance and the assets in its portfolio; and "was in a unique position to prevent losses."  (Am. Compl. ¶ 179.)  The complaint's allegations against the BoNYM entities are similarly vague, stating only that they "held themselves out as having knowledge, expertise and skill in the area of the valuation of complex securities comprising SIV collateral assets."  (Id. ¶ 346.)  As this Court found in Maalouf, such pro forma allegations of "a dominant position," "knowledge and expertise," and "a relationship of trust and confidence" do not, absent more, give rise to a fiduciary duty.  See 2003 WL 1858153, at *5; see also Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 272-75 (S.D.N.Y. 2006) ("[C]ourts routinely have held that 'conclusory allegations of a 'special relationship,' [and] 'complete trust and confidence'' are insufficient to state a claim of a fiduciary duty." (quoting Holloway v. King, 361 F. Supp. 2d 351, 360-61 (S.D.N.Y. 2005))).[10]

_____

[10] Additionally, breach of fiduciary duty claims premised on allegations of fraud are subject to the heightened standard of Rule 9(b).  Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 550-51, 555 (S.D.N.Y. 2007); Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, No. 05 Civ. 9016(SAS), 2007 WL 528703, at *6 (S.D.N.Y. Feb. 20,

As to the BoNYM entities, the breach of fiduciary duty claim fails for the additional reason that plaintiffs allege no direct contact or transactions with the BoNYM entities. Nor could they. As the information memoranda make clear, the BoNYM entities provided services only to, and had a direct relationship only with, various Cheyne entities. (Rouhandeh Decl. Ex. A at 76.) Thus, plaintiffs were, at most, "client[s] of [the BoNYM entities'] client," and the relationship between plaintiffs and the BoNYM entities was "far too attenuated to give rise to a fiduciary duty." Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. LLC, No. 00 Civ. 9214(RWS), 2007 WL 2948115, at *23-24 (S.D.N.Y. Oct. 3, 2007) (holding that administrator had no fiduciary duty to investors in hedge fund) (internal quotations omitted). "At a minimum, a plaintiff must plead or prove facts demonstrating a 'relationship approaching privity.'" Ernest Lawrence Group v. Marketing the Americas, Inc., No. 03 Civ 1510(PKC), 2005 WL 2811781, at *8-9 (S.D.N.Y. Oct. 27, 2005). Plaintiffs do not even allege such a relationship.

## V.      Plaintiffs' Aiding and Abetting Claims Fail Under Rules 8(a) and 9(b)

In five paragraphs spanning less than eighty words against each defendant, plaintiffs attempt to plead that Morgan Stanley and the BoNYM entities aided and abetted each of the forty-three causes of action asserted against their co-defendants. (See Am. Compl. ¶¶ 235-39, 394-98.) This formulaic recitation fails to satisfy the pleading standard even of Rule 8(a), as defined in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).[11] With respect to aiding and

---

2007) (Scheindlin, J.). Plaintiffs' fiduciary duty claim against Morgan Stanley "repeat[s] and realleges" all prior allegations of fraud, and is plainly based on the same facts that underlie plaintiffs' fraud claim. (See Am. Compl. ¶¶ 177-83.) Plaintiffs' breach of fiduciary duty claim fails because plaintiffs plead the purported basis for a fiduciary relationship—allegedly superior positioning—in purely conclusory fashion. (See id. ¶ 179.)

[11] Nor is aiding and abetting liability typically applied in the contract, as opposed to tort, context. See Vazquez v. Salomon Smith Barney Inc., No. 01 Civ. 2895(JSM), 2002 WL 10493, at *6 n.3 (S.D.N.Y. Jan. 4, 2002).

abetting fraud, negligent misrepresentation, or breach of fiduciary duty, it also fails to meet the

heightened pleading standards of Rule 9(b).  See Matsumura v. Benihana Nat'l Corp., 542 F.

Supp. 2d 245, 252 (S.D.N.Y. 2008) (Rule 9(b) applies to claims that "sound in fraud," including

aiding and abetting).  Plaintiffs fail to allege, for example, that Morgan Stanley or the BoNYM

entities had "actual knowledge" of any underlying fraud or breach of fiduciary duty, "provided

substantial assistance" to advance the commission of any fraud, or "knowingly induced or

participated" in any breach of fiduciary duty.  See Pension Comm. of Univ. of Montreal Pension

Plan v. Banc of Am. Sec., LLC, 592 F. Supp. 2d 608, 625, 642 (S.D.N.Y. 2009) (Scheindlin, J.).

Plaintiffs' aiding and abetting claims also fail because the underlying causes of action against

other defendants fail to state claims upon which relief can be granted.[12]

## VI.   Diversity Jurisdiction Does Not Exist Under 28 U.S.C. § 1332(a)(3), Leaving the Class Action Fairness Act As the Only Possible Basis for the Court's Jurisdiction

Plaintiffs allege two possible bases of federal subject-matter jurisdiction:  diversity

jurisdiction under 28 U.S.C. § 1332(a)(3), and jurisdiction under the Class Action Fairness Act

of 2005, 28 U.S.C. § 1332(d) ("CAFA").  (Am. Compl. ¶¶ 26-27.)  Section 1332(a)(3) provides

for federal jurisdiction when the amount-in-controversy requirement is met and the action is

between "citizens of different States and in which citizens or subjects of a foreign state are

additional parties."  Under 28 U.S.C. § 1603, a "foreign state" is defined to include "any entity

 . . . a majority of whose shares or other ownership interest is owned by a foreign state."  It is

well established that a "foreign state" is not considered a "citizen" or "subject" of a foreign state

for purposes of section 1332(a).  See 15 Moore's Federal Practice § 102.74; Vermeulen v.

---

[12] Morgan Stanley and the BoNYM entities join in and incorporate the rating agency defendants' joint memorandum, explaining that the Martin Act precludes plaintiffs' non-fraud tort claims—negligent misrepresentation, negligence (as to the BoNYM entities), tortious interference with contract, unjust enrichment, breach of fiduciary duty and aiding and abetting.

Renault, U.S.A, 985 F.2d 1534, 1542-43 (11th Cir. 1993); see also Ruggiero v. Compania Peruana de Vapores, 639 F.2d 872, 875 (2d Cir. 1981).  Here, plaintiff ADCB is 64.8%-owned by the government of Abu Dhabi.  (See Pl.'s R. 7.1 Disclosure Stmt., at 1, Aug. 25, 2008)).  Thus, because ADCB—one of the "additional parties" in this action—is a "foreign state," *not* a "citizen" or "subject" of a foreign state, section 1332(a)(3) is plainly inapplicable.

The only possible jurisdictional basis for this action is CAFA, which requires that the putative class consists of at least 100 members.  The purported class here consists only of investors "who were damaged."  (Am. Compl. ¶ 149.)  Investors who sold their investments before the ratings downgrades alleged in the complaint (id. ¶¶ 143-46) cannot claim to have been "damaged."  See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342-44 (2005).  Because diversity jurisdiction is lacking and because plaintiffs do not set forth a factual basis for believing that there are 100 investors who fit the class definition, there presently does not appear to be a basis for subject-matter jurisdiction.  Unless plaintiffs can demonstrate the requisite number of class members through ongoing class discovery, this action should be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

## CONCLUSION

For the reasons set forth above, Morgan Stanley and the BoNYM entities respectfully request that the Court dismiss the complaint with prejudice pursuant to Rules 8(a), 9(b) and 12(b)(6).

Dated: May 18, 2009
New York, New York

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
James P. Rouhandeh
james.rouhandeh@dpw.com
Antonio J. Perez-Marques
antonio.perez@dpw.com
Russell Capone
russell.capone@dpw.com

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Counsel to Defendants Morgan Stanley &
Co. Incorporated and Morgan Stanley &
Co. International Limited*

BOIES, SCHILLER & FLEXNER

By:   /s/ Jonathan Sherman
Jonathan Sherman
jsherman@bsfllp.com
Damien Marshall
dmarshall@bsfllp.com

5301 Wisconsin Avenue, N.W.
Washington, D.C.  20015
(202) 237-2727

-and-

401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
(954) 356-0011

*Counsel to Defendants The Bank of New
York Mellon and QSR Management Limited*

31