# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

ABU DHABI COMMERCIAL BANK, KING
COUNTY, WASHINGTON, TOGETHER AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs,*

v.

No. 08 Civ. 7508 (SAS) (ECF Case)

MORGAN STANLEY & CO. INC., MORGAN
STANLEY & CO. INTERNATIONAL LTD., THE
BANK OF NEW YORK MELLON, QSR
MANAGEMENT LTD., MOODY'S INVESTORS
SERVICE, INC. AND MOODY'S INVESTORS
SERVICE LTD., STANDARD & POOR'S RATING
SERVICES AND THE MCGRAW-HILL
COMPANIES, INC.,

*Defendants.*

## JOINT REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THE MOTION OF
## THE RATING AGENCY DEFENDANTS
## TO DISMISS THE FIRST AMENDED COMPLAINT

Joshua M. Rubins
James J. Coster
Glenn C. Edwards
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, New York 10169
(212) 818-9200

*Attorneys for Defendants Moody's Investors
Service, Inc. and Moody's Investors Service
Ltd.*

Floyd Abrams
Dean Ringel
Adam Zurofsky
Andrea R. Butler
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Defendants Standard & Poor's
Rating Services and The McGraw-Hill Compa-
nies, Inc.*

# TABLE OF CONTENTS

<u>Page</u>

I.     THE MARTIN ACT PREEMPTS PLAINTIFFS' NON-FRAUD TORT
CLAIMS ...................................................................................................................1

II.    PLAINTIFFS' ALLEGATIONS OF FRAUD FAIL TO STATE A
CLAIM......................................................................................................................3

III.   PLAINTIFFS FAIL TO ALLEGE THE SPECIAL RELATIONSHIP
REQUIRED FOR CLAIMS SOUNDING IN NEGLIGENCE OR
FIDUCIARY DUTY..................................................................................................7

IV.   PLAINTIFFS' CONTRACT-BASED CLAIMS MUST BE DISMISSED ....................10

V.    PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED
(COUNTS 2 I-K) .....................................................................................................12

VI.   THE FIRST AMENDMENT BARS PLAINTIFFS' RATING AGENCY
CLAIMS ..................................................................................................................13

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

| Cases | Page |
| --- | --- |
| *Abbott* v. *Herzfeld & Rubin, P.C.*, 609 N.Y.S.2d 230 (1st Dep't 1994) .............. | 8n |
| *Alpert* v. *Shea Gould Climenko & Casey*, 559 N.Y.S.2d 312 (1st Dep't 1990) ............................................................................................... | 9 |
| *In re AlphaStar Ins. Group Ltd.*, 383 B.R. 231 (Bankr. S.D.N.Y. 2008) ............. | 5n |
| *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009) ............................................ | 9n, 10n, 12 |
| *Banco Espirito Santo de Investimento, S.A.* v. *Citibank, N.A.*, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ................................................. | 12 |
| *Bankers Life Ins. Co.* v. *Credit Suisse First Boston Corp.*, 2008 WL 4372847 (M.D. Fla. Sept. 24, 2008) ..................................................... | 3n |
| *Bay Harbour Mgmt. LLC* v. *Carothers*, 282 F. App'x 71 (2d Cir. 2008) ............ | 5 |
| *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) .............. | 2n |
| *Bear Stearns Inv. Prods., Inc.* v. *Hitachi Automotive Prods. (USA), Inc.*, 401 B.R. 598 (S.D.N.Y. 2009) ........................................................ | 10 |
| *Beecher* v. *Feldstein*, 780 N.Y.S.2d 153 (2d Dep't 2004) ........................... | 12 |
| *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) ............................... | 9n, 12 |
| *Bergstein* v. *Jordache Enters., Inc.*, 1995 WL 453358 (S.D.N.Y. Aug. 1, 1995) ......................................................................................... | 11n |
| *Berman* v. *Sugo LLC*, 580 F. Supp. 2d 191 (S.D.N.Y. 2008) ...................... | 10 |
| *BHC Interim Funding, L.P.* v. *Finantra Capital, Inc.*, 283 F. Supp. 2d 968 (S.D.N.Y. 2003) ..................................................................... | 9 |
| *Caboara* v. *Babylon Cove Dev., LLC*, 862 N.Y.S.2d 535 (2d Dep't 2008) .......... | 1, 2 |
| *In re Cenvill Communities, Inc.*, 372 N.Y.S.2d 381 (Sup. Ct. N.Y. Co. 1975) ..................................................................................... | 3n |

| Cases | Page |
|---|---|
| *Clark* v. *Nevis Capital Mgmt., LLC*, 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) ................. | 6, 6n |
| *Commercial Fin. Servs., Inc.* v. *Arthur Andersen LLP*, 94 P.3d 106 (Okla. Civ. App. 2004) ................. | 14n |
| *Compuware Corp.* v. *Moody's Investors Servs., Inc.*, 499 F.3d 520 (6th Cir. 2007) ................. | 13, 14, 15 |
| *County of Orange* v. *McGraw-Hill Cos.*, 245 B.R. 138 (C.D. Cal. 1997) ........... | 14n |
| *CreditSights, Inc.* v. *Ciasullo*, 2008 WL 4185737 (S.D.N.Y. Sept. 5, 2008) ................. | 6n |
| *Dover Ltd.* v. *A.B. Watley, Inc.*, 423 F. Supp. 2d 303 (S.D.N.Y. 2006) .............. | 2n |
| *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)......... | 13-14 |
| *E*Trade Fin. Corp.* v. *Deutsche Bank AG*, 2008 WL 2428225 (S.D.N.Y. June 13, 2008) ................. | 7 |
| *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742 (S.D. Tex. 2005) ................. | 6n-7n, 14n, 15 |
| *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 2007 WL 1662658 (S.D. Tex. June 5, 2007) ................. | 10n |
| *Express Indus. & Terminal Corp.* v. *New York State Dep't of Transp.*, 693 N.Y.S.2d 857 (Ct. App. 1999) ................. | 10 |
| *Faulkner* v. *Beer*, 2007 WL 4639458 (Sup. Ct. N.Y. Co. Dec. 21, 2007) ........... | 2n |
| *Faulkner* v. *Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384 (S.D.N.Y. 2001) ................. | 4 |
| *Fishoff* v. *Coty Inc.*,  2009 WL 1585769 (S.D.N.Y. June 8, 2009) .................... | 5, 5n |
| *Fitch, Inc.* v. *UBS PaineWebber, Inc.*, 330 F.3d 104 (2d Cir. 2003) .................... | 15n |
| *Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385 (S.D.N.Y. 2005) ................. | 3, 3n, 4 |

| Cases | Page |
|---|---|
| *Green* v. *Beer*, 2009 WL 911015 (S.D.N.Y. Mar. 31, 2009) ............................ | 12n |
| *Hamlet on Olde Oyster Bay Home Owners Ass'n. Inc.* v. *Holiday Org., Inc.*, 874 N.Y.S.2d 508 (2d Dep't 2009) ........................ | 1, 2 |
| *Heller* v. *Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603 (S.D.N.Y. 2008) ........................ | 1, 2 |
| *Horn* v. *440 East 57th Co.*, 547 N.Y.S.2d 1 (1st Dep't 1989) ............................ | 2 |
| *In re Houbigant, Inc.*, 914 F. Supp. 985 (S.D.N.Y. 1995) ........................ | 11 |
| *Jefferson County Sch. Dist.* v. *Moody's Investor's Servs., Inc.*, 175 F.3d 848 (10th Cir. 1999) ........................ | 13 |
| *Kassover* v. *UBS AG*, 2008 WL 5331812 (S.D.N.Y. Dec. 19, 2008) ................. | 1, 2 |
| *Kerusa Co.* v. *W10Z/515 Real Estate Ltd. P'ship*, 879 N.Y.S.2d 17 (Ct. App. 2009) ........................ | 2n |
| *Kramer* v. *W10Z/515 Real Estate Ltd. P'ship*, 844 N.Y.S.2d 18 (1st Dep't 2007) ........................ | 2n |
| *LaSalle Nat'l Bank* v. *Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071 (S.D.N.Y. 1996) ........................ | 8n, 14n |
| *Nathel* v. *Siegal*, 592 F. Supp. 2d 452 (S.D.N.Y. 2008) ........................ | 1 |
| *In re Nat'l Century Fin. Enters., Inv. Litig.*, 580 F. Supp. 2d 630 (S.D. Ohio 2008) ........................ | 8n, 14n |
| *In re New York City Asbestos Litig.*, 806 N.Y.S.2d 146 (Ct. App. 2005) ............ | 8 |
| *Parrott* v. *Coopers & Lybrand, L.L.P.*, 718 N.Y.S.2d 709 (Ct. App. 2000) ........................ | 7, 8 |
| *Pension Comm.* v. *Banc of America Secs., LLC*, 592 F. Supp. 2d 608 (S.D.N.Y. 2009) ........................ | 1, 3n, 9n |
| *In re Pfizer Inc. Secs. Litig.*, 584 F. Supp. 2d 621 (S.D.N.Y. 2008) ................. | 6n |
| *Quinn* v. *McGraw Hill Cos.*, 168 F.3d 331 (7th Cir. 1999) ........................ | 6, 6n, 11 |

| Cases | Page |
|---|---|
| *In re Refco, Inc. Secs. Litig.*, 609 F. Supp. 2d 304 (S.D.N.Y. 2009) ................... | 6n |
| *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477 (S.D.N.Y. 2004) ..................................................... | 4 |
| *Sanders* v. *Bressler, Amery & Ross, P.C.*, 2006 WL 319303 (E.D.N.Y. Feb. 10. 2006) ..................................... | 9n |
| *Schick* v. *Ernst & Young*, 808 F. Supp. 1097 (S.D.N.Y. 1992) ............................ | 9 |
| *Sergeants Benevolent Ass'n Annuity Fund* v. *Renck*, 796 N.Y.S.2d 77 (1st Dep't 2005) ..................................... | 9n |
| *Secs. Inv. Prot. Corp.* v. *BDO Seidman, L.L.P.*, 723 N.Y.S.2d 750 (Ct. App. 2001) ........................................ | 7, 8 |
| *Sedona Corp.* v. *Ladenburg Thalmann & Co.*, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ................................ | 2n |
| *State* v. *Samaritan Asset Mgmt. Servs., Inc.*, 874 N.Y.S.2d 698 (Sup. Ct. N.Y. Co. 2008) .................................. | 3n |
| *Synovus Bank* v. *Valley Nat'l Bank*, 487 F. Supp. 2d 360 (S.D.N.Y. 2007) ........................................ | 11 |
| *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ..................... | 5n |
| *Thermal Imaging, Inc.* v. *Sandgrain Secs., Inc.*, 158 F. Supp. 2d 335 (S.D.N.Y. 2001) ...................................... | 10n |
| *Thomas H. Lee Equity Fund V, L.P.* v. *Grant Thornton LLP*, 586 F. Supp. 2d 119 (S.D.N.Y. 2008) ......................... | 8-9 |
| *In re Warnaco Group, Inc. Secs. Litig. (II)*, 388 F. Supp. 2d 307 (S.D.N.Y. 2005) ...................................... | 9n |
| *White* v. *Guarente*, 401 N.Y.S.2d 474 (Ct. App. 1977) ......................................... | 9n |
| *Wiener* v. *Lazard Freres & Co.*, 672 N.Y.S.2d 8 (1st Dep't 1988) ..................... | 12 |

| Constitutional Provisions | Page |
|---|---|
| U.S. Const. amend. I ........................................................................... | 13, 14 |
| Rules | |
| Fed. R. Civ. P.<br>    Rule 9(b) ................................................................................ | 4, 5, 6n, 13 |
|     Rule 12(b)(6) ....................................................................... | 4 |
| Statutes | |
| 15 U.S.C. § 78j(b) ............................................................................ | 5 |
| N.Y. Gen. Bus. Law<br>    § 352-c (McKinney 1996) ..................................................... | 1, 2, 3, 3n, 7 |
| Other Authorities | |
| *Statement of Eugene Volokh to the Subcomm. on Capital Markets, Ins.,*<br>    *& Gov't Sponsored Enters. Hearing of the House Fin. Servs. Comm.,*<br>    111th Cong. (May 15, 2009), *available at*<br>    http://www.house.gov/apps/list/hearing/financialsvcs_dem/volokh.pdf............ | 13n |

Plaintiffs' Opposition Memorandum ("Opp.") does not cure, or in some cases even address, the deficiencies in their Amended Complaint (the "Complaint") identified in the Rating Agencies' Memorandum in Support of their Motion to Dismiss ("RA Br.")

## I. THE MARTIN ACT PREEMPTS PLAINTIFFS' NON-FRAUD TORT CLAIMS

Plaintiffs seek to avoid the preemptive effect of New York's Martin Act by: (1) asking the Court to overlook the many preemption decisions of the Southern District cited by the Rating Agencies, relying instead cases from two New York appellate departments that have previously been considered and rejected in this District and (2) claiming that, notwithstanding Plaintiffs' admissions that "New York has 'the most significant relationship to the transaction'" and that "the majority of the conduct alleged in the AC occurred in New York" (Opp at 12 and n.74), the Martin Act is inapplicable. Both propositions collapse upon examination.

Plaintiffs suggest that the Second Department's decision in *Hamlet on Olde Oyster Bay Home Owners Ass'n Inc.* v. *Holiday Org., Inc.*, 874 N.Y.S.2d 508 (2d Dep't 2009) changes the precedential landscape. But that decision, which declined to recognize preemption under the Martin Act, simply applied the earlier Second Department decision in *Caboara* v. *Babylon Cove Dev., LLC*, 862 N.Y.S.2d 535 (2d Dep't 2008). As noted in our opening brief, the Second and Fourth Departments have followed an approach that diverges from that of the First Department, and the Southern District has repeatedly adopted the First Department approach and rejected that relied upon by Plaintiffs. (*See* RA at n.6) Indeed, every decision in this District that has considered the issue since the Second Department's decision in *Caboara* has rejected its approach in favor of the First Department's recognition that sustaining a private common law claim that arises within the Martin Act's terms would be equivalent to allowing a private cause of action under the Act, and therefore the Martin Act preempts common law claims based on allegations that fall within the subject matter covered by the Act. *See Pension Comm.* v. *Banc of America Secs., LLC*, 592 F. Supp. 2d 608, 623 (S.D.N.Y. 2009); *Heller* v. *Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 610-11 (S.D.N.Y. 2008); *Kassover* v. *UBS AG*, 2008 WL 5331812, at *10 (S.D.N.Y. Dec. 19, 2008); *Nathel* v. *Siegal*, 592 F. Supp. 2d 452, 472 (S.D.N.Y. 2008).

-2-

As one court has noted, *Caboara* and related decisions (and by extension, *Hamlet*) "over-look a long-standing distinction between courts' treatment of common law fraud claims and that of other state law claims based on deceptive practices." *Kassover*, 2008 WL 5331812, at *10; *see also Horn* v. *440 East 57th Co.*, 547 N.Y.S.2d 1, 5-6 (1st Dep't 1989) (affirming dismissal of negligent misrepresentation and breach of fiduciary duty claims). Plaintiffs make no attempt to distinguish any of the cases in this District finding Martin Act preemption of non-fraud claims.[1]

Plaintiffs also argue that if *any* aspect of a transaction may have occurred outside of New York, a preemption motion to dismiss is unavailable. (Opp. at 35-6) But the vast majority of cases within the Southern District have held that a preemption motion to dismiss lies when a plaintiff alleges — as Plaintiffs have done here — that "a substantial part" of the events or omis-sions giving rise to its claim occurred in New York. *Heller*, 590 F. Supp. 2d at 611 n.9 ("There is consensus in this District that a transaction is 'within or from' New York for purposes of the Martin Act if a plaintiff alleges that a 'substantial portion of the events' giving rise to a claim occurred in New York.").[2] Here, Plaintiffs allege that a "majority of the conduct alleged in the AC occurred in New York" (Opp. at n.74), that New York has the "most significant contacts with the matter in dispute" (Opp. at 12) and that the register of the certificateless deposit interests was maintained in New York (¶ 29; Opp. at n.23). The "substantial part" test is met.

---

[1]   *Faulkner* v. *Beer*, 2007 WL 4639458 (Sup. Ct. N.Y. Co. Dec. 21, 2007) (Opp. at 35), ignores *Horn* and the longstanding distinction between fraud and non-fraud claims, and is premised on its reading of *Kramer* v. *W10Z/515 Real Estate Ltd. P'ship*, 844 N.Y.S.2d 18 (1st Dep't 2007), which was recently unanimously reversed by the New York Court of Appeals, *sub nom. Kerusa Co.* v. *W10Z/515 Real Estate Ltd. P'ship*, 879 N.Y.S.2d 17 (Ct. App. 2009).

[2]   *See also In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 422 (S.D.N.Y. 2007) (dismiss-ing based on preemption where the complaint alleged that a substantial part of the events or omissions giving rise to the claim occurred in New York); *Dover Ltd.* v. *A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 331 (S.D.N.Y. 2006) (dismissing based on Martin Act where complaint stated that its claims arose under New York law); *Sedona Corp.* v. *Ladenburg Thalmann & Co.*, 2005 WL 1902780, at *21-*22 (S.D.N.Y. Aug. 9, 2005) (stating that "[t]he scope of the Martin Act . . . includes more [than] the actual purchase or sale of securities within or from New York" and dismissing where the defendant conducted transactions from New York with a plaintiff outside New York and, in alleging venue, the plaintiff stated that a substantial part of the relevant events occurred within the Southern District of New York).

-3-

Plaintiffs' approach would vitiate the point of preemption. New York wants to maintain control of its common law as it relates to regulation of securities. The development and enforcement of that law is left to the Attorney General. That approach would be undermined if a private plaintiff, in particular a plaintiff purporting to represent a class, could come to New York, invoke the very New York causes of action held preempted, but assert that because *some* acts occurred outside New York, the developmental control of New York law provided by preemption may be thwarted.

*Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385 (S.D.N.Y. 2005), is not to the contrary. While Plaintiffs suggest that *Fraternity Fund* holds that preemption applies only to acts or transactions that are entirely confined to New York (*see* Opp. at 36), at most that case stands for the proposition that the Martin Act may not apply to transactions that lack any Martin Act jurisdictional requisite (*i.e.*, where the transaction could not be linked in any way to New York). On the facts alleged by Plaintiffs themselves here, *Fraternity Fund* and similar cases are simply inapposite.[3] Plaintiffs' non-fraud tort claims (Counts 2-B–2-D and 2-I–2-K) are preempted by the Martin Act and must be dismissed.[4]

## II. PLAINTIFFS' ALLEGATIONS OF FRAUD FAIL TO STATE A CLAIM

Plaintiffs offer no authority for their assertion that the ratings on the Rated Notes "were not opinions, but were instead false statements of fact" (Opp. at 17), an assertion that flies in the

---

[3] In *Pension Committee*, for example, this Court declined to apply Martin Act preemption to a case in which "most" of the relevant events occurred abroad. 592 F. Supp. 2d at 639-40. Plaintiffs' other citations (Opp. at n.72), are similarly inapplicable. *In re Cenvill Communities, Inc.*, 372 N.Y.S.2d 381 (Sup. Ct. N.Y. Co. 1975), emphasizes that the Act applies "equally to property located within and without the State provided it is offered for sale in New York." *See id.* at 419. In contrast to the allegations at issue in *State* v. *Samaritan Asset Mgmt. Servs., Inc.*, 874 N.Y.S.2d 698 (Sup. Ct. N.Y. Co. 2008), in which the wrongdoing alleged was entirely outside New York (*id.* at 702), here *Plaintiffs allege* wrongdoing in New York. And of course, whether New York may punish conduct that has out-of-state components is a very different issue than that raised here, where a civil plaintiff chooses to invoke New York common law. In *Bankers Life Ins. Co.* v. *Credit Suisse First Boston Corp.*, 2008 WL 4372847, at *3 (M.D. Fla. Sept. 24, 2008), the Florida District Court relied on an erroneous reading of *Fraternity Fund* for its statement that activities must be entirely confined to New York in order for Martin Act preemption to attach. This is not New York law.

[4] Not one of the cases cited in Opp. n.75, dealing with the invocation of preemption on a motion to dismiss, deals with the Martin Act at all.

-4-

face of both the explicit description of the ratings in the documents cited by Plaintiffs, and substantial legal authority holding that the precise form of credit rating at issue in this case is a non-actionable opinion. *See* RA Br. at n.8. As even a case cited by Plaintiffs recognizes, the general New York rule is that a "common law fraud claim is defined as a representation of *fact*, which is untrue. . . ." *Fraternity Fund*, 376 F. Supp. 2d at 407 (emphasis added) (citations and internal quotation marks omitted). No fraud claim can be stated based on an allegedly "false" opinion, at least absent allegations of "objectively verifiable" facts that demonstrate that the provider of the opinion did not genuinely hold the opinion. *Faulkner* v. *Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 399-400 (S.D.N.Y. 2001) (citation omitted). In the fraud context generally, it is not enough "to allege that an opinion was unreasonable, irrational, excessively optimistic, not borne out by subsequent events, or any other characterization that relies on hindsight or falls short of an identifiable gap between the opinion publicly expressed and the opinion truly held." *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 489, 492-93 (S.D.N.Y. 2004) (dismissing claims under Rule 12(b)(6)) for failure to allege that "buy" recommendations were not truly held, requiring require specific allegations of contemporaneous, specific facts demonstrating that the holder of the opinion "held a private opinion different from his public opinions," even where the holder of the opinion was compensated for the opinion and allegedly biased as a result); *see also* RA Br. at 8.

Plaintiffs do not meet this standard. None of the factual allegations relied upon (Opp. at n.36) to support Plaintiffs' assertion of falsity, even if assumed true, could provide a basis for concluding that those responsible for rating the Rated Notes did not genuinely hold their opinions as to those notes. Conclusory allegations that the Rating Agencies knew the ratings at issue were false (*e.g.*, Compl. ¶ 245) or used models, data and assumptions that were "unreasonable" (Opp. at 3) or had access to information allegedly inconsistent with the opinions of those responsible for rating the Rated Notes (Opp. at n.36) are insufficient.[5]

---

[5]   Plaintiffs' cases (Opp. at 17) do not suggest that allegations of mere access to information, as opposed to allegations that an opinion was not genuinely held, can sustain a claim that an opinion was known to be false.

Similarly, Plaintiffs fail to identify allegations sufficient to plead scienter under Rule 9(b), contending instead that they need not do so with *any* particularity.  (Opp. at 16, 19-20)  But as the Second Circuit held in *Bay Harbour Mgmt. LLC* v. *Carothers*, allegations of scienter "lacking particularized facts . . . [cannot] survive a motion to dismiss."  282 F. App'x 71, 76 (2d Cir. 2008) (affirming dismissal of 10(b) and fraud claims for lack of particularity under Rule 9(b)).  *See also Fishoff* v. *Coty Inc.*, 2009 WL 1585769, at *4, *5 (S.D.N.Y. June 8, 2009); RA Br. 9.  This attempt to circumvent Rule 9(b) is unsurprising, since Plaintiffs have not pleaded facts supporting "a strong inference of fraudulent intent."  Allegations of facts that *should* have led the Rating Agencies to know that their opinions were false (*see* Opp. at n.36) are plainly in-sufficient, as are allegations that "defendants" "had access" to information that supposedly "con-tradicted" the ratings on the Rated Notes (*id.* at 21), *see supra* p. 4, or conclusory allegations that the Rating Agencies "were aware of the false factual information the ratings conveyed" (Opp. at 21).  Plaintiffs assert that the Rating Agencies allegedly received compensation "in excess of three times their normal fees," but there is no allegation that either Rating Agency received higher fees for rating Cheyne than were typical for rating an SIV.  That the Rating Agencies had a different fee schedule for SIVs than for less complex securities raises no inference at all of sci-enter, less alone a strong one, and it is well-settled that "general allegations of economic self-interest" are insufficient to allege scienter.  *See, e.g.*, *Bay Harbour*, 282 F. App'x at 76.[6]

Finally, although Plaintiffs baldly assert that "[t]here is no dispute *investors* actually and justifiably relied on the materially false and misleading credit ratings," in fact there is *no* allega-tion that King County or Abu Dhabi Commercial Bank, the *named plaintiffs*, relied at all — let

---

[6] Indeed, Plaintiffs acknowledge that "SIV ratings were materially different from other ratings, including corporate bond ratings" (Compl. ¶ 68) and describe at length the extensive analysis conducted by the Rating Agencies when rating Cheyne (¶¶ 45, 47, 50, 51, 53).  Thus, even if Plaintiffs' allegations concerning fees could support an inference of fraudulent motive (which they cannot), more plausible and compelling explanations — devoid of any fraudu-lent intent — can certainly be inferred.  *See Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-16 (2007); *Fishoff*, 2009 WL 1585769, at *3; *In re Alphastar Ins. Group Ltd.*, 383 B.R. 231, 263 (Bankr. S.D.N.Y. 2008) (dismissing common law fraud claim where plaintiffs' "allegations suggest[ed] more plausible, innocent explanations").

-6-

alone that any reliance was reasonable.[7]  (Opp. at 22 (emphasis added), citing Compl. ¶¶ 7, 21, 162; Opp. at 30)  Allegations as to investors generally are insufficient to plead the reliance required to state a common law fraud (or negligent misrepresentation) claim.  *See, e.g., Clark* v. *Nevis Capital Mgmt., LLC*, 2005 WL 488641, at *18 (S.D.N.Y. Mar. 2, 2005) (dismissing common law fraud claim where plaintiff "made only conclusory, non-specific allegations of reliance" and "alleged no facts to demonstrate reliance or that any such reliance was direct, as opposed to indirect or based solely upon 'the integrity of the market'").[8]

Nor do Plaintiffs refute the Rating Agencies' showing that the disclaimers contained in the Information Memoranda rendered any alleged reliance unreasonable.  Plaintiffs try to dismiss this cautionary language as "boilerplate."  (Opp. at n.50)  But the disclaimers here are precisely the kind of specific and explicit warnings that have provided grounds for dismissal in other cases, *see, e.g., Quinn* v. *McGraw Hill Cos.*, 168 F.3d 331, 336 (7th Cir. 1999) (addressing rating of structured finance product), warning of the need to conduct independent due diligence and expressly stating that the very ratings upon which Plaintiffs base their fraud claim were opinions that should *not* be relied upon for investment decisions.[9]  (RA Br. at n.8 & n.13)

---

[7]  Plaintiffs' brief refers once to reliance by "plaintiffs" (Opp. at 30), but the section referenced (IV.C.4) refers only to "investors," and references to the Complaint in that section (¶¶ 7, 21, 162) allege only reliance by "investors," or constructive reliance ("plaintiffs necessarily relied").  In short, Plaintiffs have not pleaded actual reliance by Abu Dhabi or King County.

[8]  "As 'an essential element of a cause of action for fraud . . . justifiable reliance must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b).'"  *CreditSights, Inc.* v. *Ciasullo*, 2008 WL 4185737, at *13 (S.D.N.Y. Sept. 5, 2008) (collecting cases) (citation omitted).  The "fraud created the market" theory invoked by Plaintiffs (Opp. at 23) has never been adopted by the Second Circuit, "and it has been criticized by at least two other Courts of Appeals." *See, e.g., In re Refco, Inc. Secs. Litig.*, 609 F. Supp. 2d 304, 318 (S.D.N.Y. 2009).  In any event, like the fraud on the market presumption, it does not apply to New York common law fraud claims.  *In re Pfizer Inc. Secs. Litig.*, 584 F. Supp. 2d 621, 644 (S.D.N.Y. 2008) (New York "has not yet recognized the fraud-on-the-market theory and continues to require that fraud claims allege reliance and be stated in detail."); *Clark*, 2005 WL 488641, at *18.

[9]  Plaintiffs assert that here, unlike in *Quinn,* there were no "warning signs" about the reliability of the ratings.  (Opp. at n.52)  But the "conflicts of interest" Plaintiffs allege affected the ratings are based entirely on allegations that the Rating Agencies were compensated by issuers (Compl. ¶¶ 110 *et seq.*), something widely disclosed prior to the sale of the Rated Notes, including in the publicly-available NRSRO applications upon which Plaintiffs rely (Opp. at 26; *see also* Compl. ¶ 117 (quoting Chairman Cox's testimony that "it was well understood that certain conflicts of interest were hardwired into the rating agency business model")); *see also In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 823 n.81 (S.D.

*Footnote continued on next page.*

## III. PLAINTIFFS FAIL TO ALLEGE THE SPECIAL RELATIONSHIP REQUIRED FOR CLAIMS SOUNDING IN NEGLIGENCE OR FIDUCIARY DUTY

Even if Plaintiffs' non-fraud tort claims were not preempted by the Martin Act, they fail because Plaintiffs simply do not, and cannot, allege the kind of "special relationship," with linking conduct, required to establish the essential element of duty.  (RA Br. at 13-14)[10]

**Negligent Misrepresentation**.  Absent contractual privity (which is nonexistent here, *see* Point IV, *infra*), the duty of care essential to a negligent misrepresentation claim can only arise by showing a "special relationship" approaching privity.  New York courts have stressed that to allege such a relationship, multiple factors must be pleaded, including, *inter alia*, that plaintiff was a "known party" that the defendant intended should rely on the statement for a particular purpose *and* that "there was some linking conduct which evinced the [defendant's] understanding of that party's reliance."  *Secs. Inv. Prot. Corp.* v. *BDO Seidman, L.L.P.*, 723 N.Y.S.2d 750, 756 (Ct. App. 2001); *see also Parrott* v. *Coopers & Lybrand, L.L.P.*, 718 N.Y.S.2d 709 (Ct. App. 2000).  Even where "the reliant party or class of parties was actually known or foreseen but the individual defendant's conduct did not link it" to the plaintiff, recovery is denied.  *Parrott*, 718 N.Y.S.2d at 712 (citation and internal quotes omitted).

As previously shown, the Complaint fails to allege any facts demonstrating "linking conduct"; indeed, *no contact at all* between Plaintiffs and the Rating Agencies is pleaded.  In response, Plaintiffs identify no such allegations and instead, ignoring the long line of authority requiring "linking conduct," rely on a case that supposedly holds that it is sufficient merely to allege "unique or specialized expertise" or "a special position of confidence and trust."  *See* Opp. at 28 (citing *E*Trade Fin. Corp.* v. *Deutsche Bank AG*, 2008 WL 2428225, at *24 (S.D.N.Y. June 13, 2008)).  In fact, however, *E*Trade* involved two parties *in contractual privity*.  2008 WL 2428225, at *1-*2.  Moreover, the notion that "unique or specialized expertise" is sufficient

---

*Footnote continued from previous page.*

Tex. 2005) (citing 1996 publication describing potential conflicts).

[10]  As discussed in Point II, Plaintiffs also fail to allege that either of them — as opposed to "investors" generally — actually and reasonably relied upon any statement by the Rating Agencies.  Their negligent misrepresentation notion fails on these grounds as well.

-8-

to impose a duty of care cannot be squared with *BDO Seidman, Parrott,* and numerous other cases requiring "linking conduct" on the part of accountants, who obviously have the "expertise" that Plaintiffs claim is sufficient in itself.[11]   Plaintiffs also fail to allege a "special relationship" because they do not, and cannot, allege that they were parties "known" to the Rating Agencies, who intended their particular reliance.[12]

**Negligence**.   Plaintiffs insist that they have also alleged a distinct and separate "negligence" claim, purportedly based on the Rating Agencies' alleged activities in "structuring and monitoring" the SIV portfolio.  (Opp. at 30)  These activities were, however, only for the purpose of formulating and monitoring the *ratings themselves*, and Plaintiffs do not allege otherwise.  Any suggestion that the Rating Agencies actually exercised selection or control over the SIV portfolio is both implausible and contradicted by the Complaint's allegations that, *e.g.*, "*the Cheyne SIV* selected a potential investment to be acquired" (Compl. ¶ 47) (emphasis added). Thus, the claim that the Rating Agencies failed to accurately assess the SIV portfolio is the same as the negligent misrepresentation claim.  Even were the claims distinct, however, Plaintiffs' failure to allege linking conduct dooms *both* claims — since a negligence claim requires identification of a duty of care running from defendant to plaintiff, *see, e.g., In re New York City Asbestos Litig.*, 806 N.Y.S.2d 146, 150 (Ct. App. 2005), and, as Plaintiffs acknowledge, the same linking conduct.  *See* Opp. at 31 (there must be "'some contact between defendant and plaintiff' sufficient to give rise to a duty'") (quoting *BDO Seidman*); *see Thomas H. Lee Equity Fund V, L.P.*

---

[11]   *LaSalle Nat'l Bank* v. *Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071 (S.D.N.Y. 1996), is inapposite (see Opp. at 29 n.61), because, *inter alia*, in that case (unlike here) there were allegations of linking conduct: the defendant "was in direct contact with at least some of the plaintiffs, and with the broker dealers selling the Bonds." *Id.* at 1094. As for *In re Nat'l Century Fin. Enters., Inv. Litig.*, 580 F. Supp. 2d 630 (S.D. Ohio 2008), the court there applied Ohio law, which does not have a "linking conduct" requirement. *See id.* at 647.

[12]   Although Plaintiffs now suggest that the ratings were disseminated to a "select group of investors" (Opp. at 29), the Complaint contains no factual or plausible allegation of limited dissemination and, in fact, specifically alleges that the Rating Agencies "*published . . .* information concerning the Rated Notes to investors." ¶ 274(b) (emphasis added). *See Abbott* v. *Herzfeld & Rubin, P.C.*, 609 N.Y.S.2d 230, 231-32 (1st Dep't 1994) (dismissing negligent misrepresentation claim where complaint "states no facts that would give rise to an inference that the professional defendants were even aware of these particular investors as opposed to a more amorphous class of potential investors").

v. *Grant Thornton LLP*, 586 F. Supp. 2d 119, 126-30 (S.D.N.Y. 2008) (claim for professional negligence required linking conduct).[13]

**Breach of Fiduciary Duty**.  While negligent misrepresentation requires a "special relationship" so as to impose a duty of care, a fiduciary duty claim "is predicated on a stricter standard of care" and thus it follows *a fortiori* that Plaintiffs' failure to allege a "special relationship" requires dismissal of their fiduciary duty claim as well.  *See BHC Interim Funding, L.P.* v. *Finantra Capital, Inc.*, 283 F. Supp. 2d 968, 986 (S.D.N.Y. 2003) (citation omitted); *see also Schick* v. *Ernst & Young*, 808 F. Supp. 1097, 1104-06 (S.D.N.Y 1992) (noting requirement that linking conduct be alleged to support claims for negligence and breach of fiduciary duty).  Indeed, New York courts have held that such a duty normally requires some form of contractual privity, which (*see* Point IV, *infra*) is utterly lacking in this case.[14]  *See id.*; *see also Alpert* v. *Shea Gould Climenko & Casey*, 559 N.Y.S.2d 312, 315 (1st Dep't 1990) ("[T]here is no support for the conclusion that a fiduciary relationship exists between plaintiffs and defendants in the absence of a contractual relationship between them.").[15]

---

[13]  Plaintiffs' suggestion that they need only do no more than "recite the elements of negligence" (Opp. at 30) is plainly inconsistent with the requirements of *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009), and Plaintiffs' reliance on *White* v. *Guarente*, 401 N.Y.S.2d 474 (Ct. App. 1977), is misplaced, as that case has long been superseded.  *See, e.g., Sanders* v. *Bressler, Amery & Ross, P.C.*, 2006 WL 319303, at *5 (E.D.N.Y. Feb. 10, 2006) (to the extent *White* held direct contact not required, "it is no longer good law").

[14]  All of the cases cited by Plaintiffs (Opp. at n.53) involve contractual relationships.  While *Sergeants Benevolent Ass'n Annuity Fund* v. *Renck*, 796 N.Y.S.2d 77 (1st Dep't 2005), stated that a fiduciary duty "is not dependent solely upon an agreement or contractual relation," *id.* at 79, that was in answer to the defendant's contention that the contract between plaintiffs and defendants did not "expressly impose fiduciary obligations."  Nor does this Court's opinion in *Pension Committee* require a different conclusion.  The defendant administrator there was not only contractually obligated to communicate directly with the plaintiff investors, but in doing so had represented to investors the quality of its services, thus "invit[ing] this duty."  592 F. Supp. 2d at 640.  No such direct contact is alleged here.

[15]  Wholly unable to allege a relationship that could give rise to a fiduciary duty, Plaintiffs assert that the Rating Agencies' status as NRSROs somehow imposes upon them a fiduciary duty to every investor who reads, or becomes aware of, a security rating, i.e., more or less the entire investing public. (Opp. at 26)  Unsurprisingly, no authority is cited for this proposition, which flies in the face of public policy, common sense, and well-settled law.  *See, e.g., In re Warnaco Group, Inc. Secs. Litig. (II)*, 388 F. Supp. 2d 307, 318 (S.D.N.Y. 2005) (accountant or auditor for corporation owes no fiduciary duty to shareholders, even ones alleging reliance upon auditor's statements), *aff'd*, 476 F.3d 147 (2d Cir. 2007).  Particularly meritless is the

*Footnote continued on next page.*

-10-

## IV. PLAINTIFFS' CONTRACT-BASED CLAIMS MUST BE DISMISSED

Plaintiffs have done nothing to address the basic deficiency of their contract claims — namely, that they have failed "to allege facts sufficient to show that an enforceable contract existed between the parties." *Berman* v. *Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citation and internal quotes omitted).[16] "To create a binding contract, there must be a *manifestation of mutual assent* sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp.* v. *New York State Dep't of Transp.*, 693 N.Y.S.2d 857, 860 (Ct. App. 1999) (emphasis added); *see also Bear Stearns Inv. Prods., Inc.* v. *Hitachi Automotive Prods. (USA), Inc.*, 401 B.R. 598, 616 (S.D.N.Y. 2009) (for valid contract claim, "[t]he assent of the person to be charged is necessary . . .").

Given the complete lack of any alleged contact between the Plaintiffs and the Rating Agencies, the notion that there could have been not only a meeting of minds as to terms but a mutual manifestation of assent certainly defies plausibility absent some specific facts to explain how such a contract could have arisen. Plaintiffs plead no such facts. Plaintiffs claim that "the Rating Agencies made written promises in the Selling Documents," apparently referring to the list of documents in Paragraph 62. But although Plaintiffs (on their own theory) must have actually received these documents — and the only two alleged to have been written or issued by either of the Rating Agencies were and are publicly available[17] — it is notable that Plaintiffs do

---

*Footnote continued from previous page.*

notion that the Rating Agencies have accepted the special trust or confidence allegedly reposed in them by a limitless population of unknown potential investors. *See Thermal Imaging, Inc.* v. *Sandgrain Secs., Inc.*, 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001); *cf. In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 2007 WL 1662658, at *4 (S.D. Tex. June 5, 2007) (rejecting duty that could "impose unlimited liability" on rating agencies).

[16] Plaintiffs suggest that "general averments" as to the existence of a contract suffice, but in the cases they cite (Opp. at n.14) the existence of specific agreements signed by the parties (*e.g.*, insurance contracts) is not at issue (or the existence of the pleaded contract is assumed arguendo by a defendant asserting a counterclaim). Here, given the absence of any identified contract with the Rating Agencies, the applicable cases are those cited in our briefs. *Cf. Iqbal*, 129 S. Ct. at 1949.

[17] The two alleged documents are a 2005 S&P pre-sale report and a 2007 Moody's article on the SIV market. (Compl. ¶ 62(c),(f)) Each was "published" and therefore available to Plaintiffs' counsel. In light of the Court's admonition regarding unnecessary submissions — and the basic deficiency of Plaintiffs' pleading — the Rating Agencies have not submitted copies of these documents but can do so if it would aid the Court.

not cite to any specific language in these (or any other) documents from which a manifestation of assent by the Rating Agencies can be inferred.[18]

Plaintiffs' third-party beneficiary theory is similarly deficient. The intent to allow contract enforcement by a third party must be shown on the face of the contract itself. *See Synovus Bank* v. *Valley Nat'l Bank*, 487 F. Supp. 2d 360, 368 (S.D.N.Y. 2007). Plaintiffs have failed to allege the contract which purports to evidence an intent to allow Plaintiffs' enforcement. Plaintiffs allege only that "[d]efendants contracted with members of the Class and/or other defendants" (Opp. at n.21; Compl. ¶ 61) — a wholly conclusory assertion that cannot satisfy Plaintiffs' pleading obligation.[19] Plaintiffs have not raised any plausible inference that they were the intended beneficiary of any contract, nor offered any *factual* allegation that any contract to which the Rating Agencies are a party reflects the intent to allow enforcement by Plaintiffs, who were not even known to the Rating Agencies. This failure requires dismissal. *See In re Houbigant, Inc.*, 914 F. Supp. 964, 986 (S.D.N.Y. 1995).

Plaintiffs attempt to create plausibility for third-party beneficiary status by stating, incorrectly, that "[t]here was no other purpose for defendants' contracts than to generate revenue for themselves by providing service to the SIV and its investors." (Opp. at 11) This very "structural" argument about the purpose of ratings was rejected by the Seventh Circuit in *Quinn*, 168 F.3d at 334-35. The benefit to investors of ratings cannot support third-party beneficiary status to those investors. *See id.* at 335. Indeed, it would be absurd to imagine that the Rating Agencies — which publish their ratings to the world — actually intend that every investor who obtains those ratings be able to enforce a Rating Agencies' contract with an issuer.[20]

---

[18] This Court's decision in *Bergstein* v. *Jordache Enters., Inc.*, 1995 WL 453358 (S.D.N.Y. Aug. 1, 1995), is not to the contrary. There, the Court determined that various "writings and oral exchanges" were sufficient to support a finding that the defendant assented to the claimed contract. *Id.* at *5-*6. In this case, however, Plaintiffs have failed to allege *any* writing or conduct by the Rating Agencies that plausibly manifests consent to a contract.

[19] The other allegations pointed to by Plaintiffs (Opp. at n.21), paragraphs 51-53, do not allege any contractual relationship between or among any of the defendants.

[20] Plaintiffs have also failed to allege any breach of the supposed contract for which they assert third-party beneficiary status. RA Br. n.16.

-12-

## V.  PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED (COUNTS 2 I-K)

Plaintiffs' remaining claims should also be dismissed

**Unjust Enrichment**.  The unjust enrichment claim is predicated on the fees the Rating Agencies earned from the Cheyne SIV — fees which the Plaintiffs claim came from their purchase of the Rated Notes.  A claim for unjust enrichment, however, requires an allegation that "a benefit *was bestowed . . . by plaintiffs*."  *Wiener* v. *Lazard Freres & Co.*, 672 N.Y.S.2d 8, 12 (1st Dep't 1988) (emphasis added) (citations and internal quotation marks omitted).  Any payment to the Rating Agencies of fees for rating the Cheyne SIV was not a benefit bestowed by Plaintiffs; it was a fee paid by Cheyne SIV for services rendered.  Courts have rejected precisely this "indirect" basis for finding a benefit bestowed upon defendants.  *See Banco Espirito Santo de Investimento, S.A.* v. *Citibank, N.A.*, 2003 WL 23018888, at *17-*18 (S.D.N.Y. Dec. 22, 2003) (fees paid by structured finance fund to defendant could not be basis for unjust enrichment claim by investors), *aff'd*, 110 F. App'x 191 (2d Cir. 2004); *Wiener*, 672 N.Y.S.2d at 13 (money flowing to defendant from third parties not unjust enrichment).[21]

**Tortious Interference**.  Plaintiffs have done nothing to alleviate their failure to allege, as they acknowledge they must (Opp. at 13), facts sufficient to set forth a plausible claim that the Rating Agencies "induce[d] or intentionally procure[d]" the Cheyne SIV to breach a contract with Plaintiffs (even assuming such a contract, and breach, have been adequately alleged).  *See Beecher* v. *Feldstein*, 780 N.Y.S.2d 153, 154 (2d Dep't 2004).  None of the allegations cited (Opp. at 14) suggests an intentional procurement of a breach of contract.

**Aiding and Abetting**.  Despite the Supreme Court's recent directives that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949, Plaintiffs make the implausible assertion that a single paragraph of allegations directed to the Rating Agencies and housed in a different count of the Complaint

---

[21]   *Green* v. *Beer*, 2009 WL 911015 (S.D.N.Y. Mar. 31, 2009) (Opp. at n.31), is not to the contrary.  Plaintiffs there alleged that they had paid fees directly to the defendants.  *See id.* at *4.  Moreover, the management agreements which plaintiffs entered into with those partnerships expressly stated that a portion of plaintiffs' fees would go to the defendants.  *Id.* at *2.

(¶ 322) "is sufficient to plead knowledge and substantial assistance at the pleading stage" (Opp. at 33) for each of the 21 separate aiding and abetting claims asserted against the Rating Agencies. The allegations specified (Opp. 33) do not even speak to any conduct of the Rating Agencies that assisted any action by the Morgan Stanley or Bank of New York defendants. To the extent that fraud or similar claims are involved, Rule 9(b) comes into play, but even the most elementary principles of notice pleading require some effort to allege the facts on which the conclusory allegations as to each of the 21 supposedly distinct claims of *actual* (not constructive) knowledge and assistance are based. This the Complaint entirely fails to do.

## VI. THE FIRST AMENDMENT BARS PLAINTIFFS' RATING AGENCY CLAIMS

As noted, credit rating opinions have explicitly been afforded First Amendment protection by the courts. *See, e.g.*, RA Br. at 26; *Compuware Corp.* v. *Moody's Investors Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007); *Jefferson County Sch. Dist.* v. *Moody's Investor's Servs., Inc.*, 175 F.3d 848, 850 (10th Cir. 1999).[22] Seeking to avoid these constitutional safeguards, Plaintiffs, relying primarily on *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.*, 472 U.S. 749, 751 (1985) ("*D&B*"), argue that the Cheyne SIV rating opinions are excluded from this protection because they involve purely "private" concerns and "private dissemination." (Opp. at 37-40)

In fact, the wholly inapposite *D&B* decision underscores precisely why the ratings at issue here are constitutionally protected. *D&B* involved a credit report falsely reporting on the "fact" of a local Vermont construction company filing for bankruptcy, *privately* circulated to *five* customers, who were *contractually forbidden* to share the information with anyone else. *Id.* at

---

[22] Since our opening brief was filed, Eugene Volokh, the holder of an endowed chair at UCLA Law School, submitted, at the request of Congress, "an objective First Amendment analysis of whether and how credit rating agencies can be regulated, and whether and how they can be held liable for allegedly erroneous ratings." In a written statement, Professor Volokh concluded that "[a] rating agency's bare prediction about a company's creditworthiness, captured in the rating itself, will likely be seen as pure opinion" and "the speech of ratings agencies is generally fully protected" if the agencies are (i) not paid to provide positive reviews (as opposed to paid for their opinion generally) and (ii) are communicating to the public and not merely a few paid subscribers or the hiring entity. *Statement of Eugene Volokh to the Subcomm. on Capital Markets, Ins., & Gov't Sponsored Enters. Hearing of the House Fin. Servs.*, 111th Cong. (May 15, 2009), *available at* http://www.house.gov/apps/list/hearing/financialsvcs_dem/volokh.pdf.

-14-

751, 762. Based on all these factors, and carefully limiting its finding to the specific "content, form, and context" of the speech at issue, the Court found insufficient interest in the "free flow of information" but explicitly warned that its decision was not applicable to "all credit reporting" let alone financial opinions or commentary. *Id.* at 762 n.8.[23]

In contrast, the ratings at issue here are *opinions* on creditworthiness, involving what Plaintiffs allege to be many billions of dollars of securities purchased by institutional investors around the world. Moreover, these ratings were *published* — as Plaintiffs explicitly allege — *i.e.*, publicly disseminated. *See* Compl ¶ 274(b) ("The Rating Agencies *published* . . . information concerning the Rated Notes to investors.") (emphasis added); *see also* ¶¶ 62(c) and 62(f) (references to Plaintiffs' receipt of information from published reports by Moody's and S&P).[24] Given the heightened protection for opinion, and Plaintiffs' own allegations as to the Rating Agencies' published information, this case plainly implicates a public concern absent in *D&B* and a "strong interest in the free flow of information."[25]

Plaintiffs, in short, fail to meaningfully distinguish this case from the federal court decisions that have found that the First Amendment limits potential liability for the issuance of credit rating opinions. Most recently, in *Compuware*, the Sixth Circuit confirmed that a credit rating "is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors," incapable of being proven false "because of the inherently subjective nature of Moody's ratings calculation," and therefore not subject to a claim based on alleged falsity. *Compuware*, 499 F.3d at 529. Plaintiffs assert, without basis, that First Amendment protection should be de-

---

[23]   *See County of Orange* v. *McGraw-Hill Cos.*, 245 B.R. 138, 144 & n.2 (C.D. Cal. 1997) (limiting *D&B* to its unique facts); *Enron*, 511 F. Supp. 2d at 822 n.80 (same).

[24]   In *Nat'l Century* and *LaSalle*, there was, in striking contrast, *no* allegation of publication whatsoever, and both courts placed heavy reliance on that fact. *See* 580 F. Supp. 2d at 640; 951 F. Supp. at 1096 (emphasizing that ratings were entirely private in nature, and *not* intended for "publication in a general publication"). Moreover, *LaSalle* has been criticized for its erroneous, mechanical application of *D&B*. *See County of Orange*, 245 B.R. at 144 n.2; *Enron*, 511 F. Supp. 2d at 822 n.80.

[25]   *Commercial Fin. Servs., Inc.* v. *Arthur Andersen LLP*, 94 P.3d 106 (Okla. Civ. App. 2004), is wholly inapposite, given, *inter alia*, that the plaintiff was not, as Plaintiffs' bracketed reference (Opp. at 39) to "investor" would suggest, an investor at all, but an issuer that had a contract with the rating agency.

-15-

nied here because the Rating Agencies received fees for their rating services (Opp. at 37, 38),[26] but Plaintiffs ignore the fact that the Rating Agencies (which routinely receive such fees) were also paid in connection with the ratings at issue in *Compuware*, *Enron*, and other cases in which the ratings have been found to be constitutionally protected.[27]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint fails to state any claim against Moody's Investors Service, Inc., Moody's Investors Service, Ltd., Standard & Poor's Rating Services or The McGraw-Hill Companies, Inc. and should be dismissed.

Dated:   New York, New York
         June 29, 2009

Respectfully submitted,

Floyd Abrams
Dean Ringel
Adam Zurofsky
Andrea R. Butler
CAHILL GORDON & REINDEL LLP

Joshua M. Rubins
James J. Coster
Glenn C. Edwards
SATTERLEE STEPHENS BURKE & BURKE LLP

By: /s/ JOSHUA M. RUBINS

By: /s/ DEAN RINGEL

230 Park Avenue, 11th Floor
New York, New York 10169
(212) 818-9200

80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Defendants Moody's Investors Service, Inc. and Moody's Investors Service Ltd.*

*Attorneys for Defendants Standard & Poor's Rating Services and The McGraw-Hill Companies, Inc.*

---

[26] *Fitch, Inc.* v. *UBS PaineWebber, Inc.*, 330 F.3d 104 (2d Cir. 2003) (Opp. at 37-38), does not involve any kind of liability claim against a rating agency but, rather, Fitch, Inc.'s contention that, with respect to a third party subpoena, it should be deemed a "journalist" under New York's *statutory shield law*. Moreover, the decision specifically distinguishes *by name* S&P's ratings and practices from those of Fitch (*id.* at 109, 110-11), and explicitly limits its holding to the specific facts of the statutory construction issue.

[27] As to actual malice, Plaintiffs fail to address the cases that require allegations that *some individual* at each Rating Agency had knowledge of alleged falsity, and not merely, as Plaintiffs assert (Opp. at 18-20), that a corporate entity purportedly had knowledge in various different places within the institution that, if cumulated, could have given rise to the requisite state of mind. Moreover, the allegations cited by Plaintiffs as purportedly satisfying the actual malice standard (*see* Opp at 37-38, n.77) are plainly insufficient.