UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ABU DHABI COMMERCIAL BANK          :
AND KING COUNTY, WASHINGTON,       :
Together and on Behalf of All Others   :
Similarly Situated,                :
                                   :
                    Plaintiffs,    :     08 Civ. No 7508 (SAS)
                                   :
         - against -               :     **ECF Case**
                                   :
MORGAN STANLEY & CO.               :
INCORPORATED, ET AL.,              :
                                   :
                    Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY & CO.
INTERNATIONAL LIMITED, THE BANK OF NEW YORK MELLON, AND QSR
MANAGEMENT LIMITED'S MOTION TO DISMISS THE AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 8(a), 9(b) AND 12(b)(6)**

James P. Rouhandeh
Antonio J. Perez-Marques
Russell Capone
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4000
*Counsel to Defendants Morgan Stanley &
     Co. Incorporated and Morgan Stanley &
     Co. International Limited*

Jonathan Sherman
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC  20015
(202) 237-2727

Damien Marshall
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
(954) 356-0011
*Counsel to Defendants The Bank of New
     York Mellon and QSR Management Ltd.*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .....................................................................................................................2

I.    Plaintiffs Fail to State a Claim for Fraud or Negligent Misrepresentation .........................2

      A.    Plaintiffs Fail to Plead an Actionable Misstatement by MS or BoNYM.................2

      B.    Plaintiffs Fail to Plead When or Where the Allegedly False Ratings Were
            Communicated by MS or BoNYM .....................................................................3

      C.    Plaintiffs Fail to Plead That MS or BoNYM Knew of the Alleged Falsity of
            the Ratings ........................................................................................................4

      D.    Plaintiffs Fail to Plead Reasonable Reliance as to MS or BoNYM.......................5

II.   Plaintiffs Fail to Plead Their Contract-Based Claims.......................................................7

      A.    Plaintiffs Have Not Identified the Contracts That MS and BoNYM Allegedly
            Entered Into, Much Less the Provisions That They Allegedly Breached...............7

      B.    Plaintiffs Fail to Plead Tortious Interference.........................................................9

      C.    Plaintiffs Fail to Plead Their Third-Party Beneficiary Claims .............................10

      D.    Plaintiffs' "But For" Theory of Unjust Enrichment Has No Basis in Law ..........11

III.  Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty .........................................12

IV.   Plaintiffs' Negligence and Negligent Misrepresentation Claims Against BoNYM Fail...13

V.    Plaintiffs' Aiding and Abetting Claims Fail ...................................................................14

VI.   CAFA Is Plaintiffs' Sole Potential Basis for Jurisdiction................................................15

CONCLUSION................................................................................................................15

## TABLE OF AUTHORITIES

CASES PAGE

Acito v. IMCERA Group, Inc., 47 F.3d 47 (2d Cir. 1995).............................................................. 5

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)...................................................................... 2, 7, 11, 13

Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537(MBM),
    2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003), aff'd, 110 F. App'x 191 (2d Cir.
    2004) ................................................................................................................................ 6, 11

Bay Harbour Mgmt. LLC v. Carothers, 282 F. App'x 71 (2d Cir. 2008)...................................... 4

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).................................................................. 7

Bellis v. Tokio Marine & Fire Ins. Co., Ltd., No. 93 Civ 6549(DAB), 2002 WL 193149
    (S.D.N.Y. Feb. 7, 2002)......................................................................................................... 10

Binkowski v. Hartford Accident & Indem. Co., 876 N.Y.S.2d 295 (App. Div. 2009) ................. 8

B.W.P. Distribs. v. OE Plus, Ltd., No. 07-CV-9588 (KMK), 2009 WL 1154102 (S.D.N.Y. Mar.
    31, 2009) ...................................................................................................................................8

Contractual Obligation Prods., LLC v. AMC Networks, Inc., No. 04 Civ. 2867(BSJ)(HBP),
    2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) ........................................................................8

Credit Alliance Corp. v. Arthur Andersen & Co., 493 N.Y.S.2d 435 (1985) ............................. 14

E*Trade v. Deutsche Bank AG, No. 05 Civ. 0902, 2008 WL 2428225 (S.D.N.Y. June 13,
    2008) ....................................................................................................................................... 14

Eurycleia Partners, LP v. Seward & Kissel LLP, 2009 WL 1543689 (N.Y. June 4, 2009) ......... 13

Excellus Health Plan, Inc. v. Tran, 287 F. Supp. 2d 167 (W.D.N.Y. 2003)............................. 9, 11

Fisher v. Offerman & Co., Inc., No. 95 Civ. 2566(JGK), 1996 WL 563141 (S.D.N.Y.
    Oct. 2, 1996) ............................................................................................................................. 5

Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007).............................................................. 15

Green v. Beer, No. 06 Civ. 4156 (KMW)(JCF), 2009 WL 911015 (S.D.N.Y. Mar. 31, 2009) ....11

Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 428 N.Y.S.2d 628 (1980).......................... 9

Guilbert v. Gardner, 480 F.3d 140 (2d Cir. 2007) ........................................................................8

Harmelin v. Man Financial Inc., No. 06-1944, 2007 WL 2769675 (E.D. Pa. Sept. 20, 2007)......13

i

Hart v. FedEx Ground Package Sys., Inc., 457 F.3d 675 (7th Cir. 2006) ................................... 15

Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523 (S.D.N.Y. 2007)......................... 12

IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132 (2009) ................................. 11

In re Amaranth Natural Gas Commodities Litig., No. 07 Civ. 6377(SAS), 2009 WL
    1138716 (S.D.N.Y. Apr. 27, 2009)........................................................................................ 5

In re Parmalat Securities Litig., 477 F. Supp. 2d 602 (S.D.N.Y. 2007) ..................................... 3

In re Houbigant, Inc., 914 F. Supp. 964 (S.D.N.Y. 1995) .................................................. 10, 11

In re Refco, Inc. Sec. Litig., 609 F. Supp. 2d 304 (S.D.N.Y. 2009)............................................7

In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247 (S.D.N.Y. 2008)............................ 2

Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. LLC, No. 00 Civ. 9214(RWS), 2003
    WL 1751780 (S.D.N.Y. Apr. 1, 2003).................................................................................. 14

LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071 (S.D.N.Y.
    1996) ..................................................................................................................................... 13

Lowery v. Ala. Power Co., 483 F.3d 1184 (11th Cir. 2007). ...................................................... 15

Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770(SAS), 2003 WL 1858153
    (S.D.N.Y. Apr. 10, 2003).................................................................................................. 9, 12

Morin v. Trupin, 711 F. Supp. 97 (S.D.N.Y. 1989)..................................................................... 15

Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979) ........................................................................... 10

Pension Comm. of Univ. of Montreal v. Banc of Am. Sec. LLC, 446 F. Supp. 2d 163
    (S.D.N.Y. 2006).............................................................................................................. 12, 13

Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157 (S.D.N.Y. 1998)..................... 10

Polar Int'l Brokerage Corp. v. Reeve, 108 F. Supp. 2d 225 (S.D.N.Y. 2000)......................... 2, 3

Sergeants Benevolent Ass'n Annuity Fund v. Renck, 796 N.Y.S.2d 77 (App. Div. 2005) ..........12

Serrano v. 180 Connect, Inc., 478 F.3d 1018 (9th Cir. 2007)..................................................... 15

SIPC v. BDO Seidman, 222 F.3d 63 (2d Cir. 2000)..................................................................... 13

Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd., 383 F. Supp. 2d 428 (S.D.N.Y.
    2003) .....................................................................................................................................11

Strauss v. Belle Realty Co., 492 N.Y.S.2d 555 (1985)................................................. 14

UniCredito Italiano SpA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485 (S.D.N.Y. 2003)...... 5, 6

United States ex rel. Monda v. Sikorsky Aircraft Corp., No. 05-4977, 2006 WL 3456526
    (2d Cir. Nov. 30, 2006)............................................................................ 4

Vanguard Mun. Bond Fund, Inc. v. Cantor, Fitzgerald L.P., 40 F. Supp. 2d 183 (S.D.N.Y.
    1999) ........................................................................................... 14

Vinas v. Chubb Corp., 499 F. Supp. 2d 427 (S.D.N.Y. 2007)........................................ 9

Walrus Master Fund Ltd. v. Citigroup Global Mkts., Inc., No. 08 Civ. 2404(DAB), 2009
    WL 928289 (S.D.N.Y. Mar. 30, 2009) ............................................................ 6

Weiss v. La Suisse, 69 F. Supp. 2d 449 (S.D.N.Y. 1999) ........................................... 8

Wiener v. Lazard Freres & Co., 672 N.Y.S.2d 8, 13 (App. Div. 1998) ................................ 11, 12

Window Headquarters, Inc. v. MAI Basic Four, Inc., Nos. 91 Civ. 1816, 5283 (MBM), 1993 WL
    312899 (S.D.N.Y. Aug. 12, 1993) .................................................................8

### STATUTES AND RULES

28 U.S.C. § 1332(a)(3)............................................................................ 15

28 U.S.C. § 1332(d)(5)(B). ....................................................................... 15

Fed. R. Civ. P. 8(a) .............................................................................2, 7

Fed. R. Civ. P. 9(b) .............................................................................5, 12

New York UCC § 8-113 ..........................................................................8

## PRELIMINARY STATEMENT

In their opposition brief, plaintiffs concede that the only alleged misrepresentations are the credit ratings issued by the rating agency defendants—not any statement made by Morgan Stanley or the BoNYM entities ("MS and BoNYM"). (Pls.' Br. 17.) Plaintiffs themselves allege—and the offering memoranda make clear—that those ratings were "produced" and "provided" by the rating agencies (Am. Compl. ¶ 8). The only legal basis advanced by plaintiffs in an attempt to attribute the ratings to MS or BoNYM, the "group pleading" doctrine, has no application here and cannot overcome plaintiffs' failure to plead the role of each defendant with particularity. The concession that the ratings are the only statements at issue is, therefore, fatal to plaintiffs' fraud and negligent misrepresentation claims against MS and BoNYM. Even if the ratings could be attributed to MS and BoNYM, plaintiffs have not otherwise satisfied Rule 9(b) or adequately alleged reasonable reliance and scienter as to any defendant.

Plaintiffs also remain unable to identify any specific contract between themselves and MS or BoNYM, much less the provisions that were allegedly breached. Indeed, plaintiffs now effectively admit that "no written contract is readily identifiable" and, instead, pursue a new theory (not alleged in the complaint) that the contract arose from the conduct of the parties. (Pls.' Br. 9.) But this theory likewise fails because plaintiffs do not and cannot identify the existence or terms of any contract, or how and when the purported contract was breached. Moreover, plaintiffs' failure to identify any agreement with MS or BoNYM precludes plaintiffs from alleging either defendant owed any contractual duty to plaintiffs.

Finally, plaintiffs fail to identify any factual basis for the assertion that MS or BoNYM owed plaintiffs fiduciary duties. MS was on the opposite side of an arm's length transaction with plaintiffs, and BoNYM never had any direct contact with plaintiffs. The only basis alleged—

superior knowledge—has been expressly rejected by this Court as insufficient on its own to give rise to such duties.

## ARGUMENT

### I.     Plaintiffs Fail to State a Claim for Fraud or Negligent Misrepresentation

#### A.     Plaintiffs Fail to Plead an Actionable Misstatement by MS or BoNYM

Plaintiffs freely concede that the "actionable misstatements" alleged are limited to the allegedly "false credit ratings." (Pls.' Br. 17-23.)[1] Plaintiffs further concede that the rating agency defendants, not MS or BoNYM, "produced" and "provided" those ratings. (Am. Compl. ¶ 8.) The same was made clear to all purchasers of the Rated Notes in the offering materials. (See, e.g., Perez-Marques Decl. in Supp. Mot. Dismiss, June 29, 2009 ("Perez-Marques Decl."), Ex. A at 22; Ex. B at 5 ("A rating reflects only the views of S&P and Moody's . . . .").) Because plaintiffs do not and cannot allege that MS or BoNYM assigned the credit ratings to the Rated Notes, their fraud and negligent misrepresentation claims must fail.

Plaintiffs advance only one legal theory as to why MS and BoNYM should be held responsible for the ratings issued by unaffiliated co-defendants: the group pleading doctrine. (Pls.' Br. 18.) But, as this Court has held, "the group pleading doctrine is extremely limited in scope," Polar Int'l Brokerage Corp. v. Reeve, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (Scheindlin, J.), and, as plaintiffs themselves acknowledge, it is almost always invoked in the context of attributing a company's statement to individual insiders in federal securities actions (see Pls.' Br. 18 n.39). See, e.g., In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 266-68 (S.D.N.Y. 2008). Applying the group pleading doctrine to unaffiliated co-defendants

---

[1] Plaintiffs claim BNYM is directly liable (as opposed to vicariously liable for the alleged conduct of QSR) (Pls.' Br. 10 n.19), but do not provide any factual basis for alleging wrongdoing by BNYM in any of its alleged roles; such "naked assertions devoid of further factual enhancement" do not satisfy Rule 8. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

would eviscerate the well-settled law precluding a complaint from clumping together the conduct of those co-defendants.  (See MS/BoNYM Br. 9-11 (citing cases).)[2]  Plaintiffs do not dispute that the complaint fails to plead the role of each defendant—indeed, plaintiffs' brief (like their complaint) fails to differentiate among the seven defendants.  (See, e.g., Pls.' Br. 3-4.)

> **B.** **Plaintiffs Fail to Plead When or Where the Allegedly False Ratings Were Communicated by MS or BoNYM**

In their opening brief, MS and BoNYM also demonstrated that the complaint fails to specify the time and place of any misstatement and thus that plaintiffs' fraud and negligent misrepresentation claims fail under Rule 9(b).  (MS/BoNYM Br. 11-12.)  Far from specifying a time and place that a particular defendant communicated a misstatement, plaintiffs' brief asserts that the alleged misstatements were "effectively repeated" by *all defendants* "*on each day* throughout the Class Period," supposedly because by failing to correct the alleged misstatements of others, they "effectively repeated" them.  (Pls.' Br. 18 n. 40 (emphasis added).)[3]

Plaintiffs do not and cannot argue that these allegations meet the heightened pleading requirements of Rule 9(b), which they concede applies to both claims (see Pls.' Br. 29); instead, plaintiffs assert that those pleading requirements should be "relaxed" to accommodate their defective complaint (see id. at 16)  In support of this proposition, plaintiffs cite two cases applying Rule 9(b) in the unique—and entirely inapposite—context of pleading *False Claims Act*

---

[2] In Polar, this Court applied the group pleading doctrine to bank defendants that did "not seriously dispute" they could be held collectively responsible for alleged misstatements in certain tender offer documents, and had authored letters in those documents to plaintiffs soliciting the allegedly fraudulent offer.  108 F. Supp. 2d at 238 n.21.  Here, the offering documents do not contain any statements by MS, and BoNYM is not alleged to have contacted the plaintiffs.

[3] Plaintiffs cite In re Parmalat Securities Litigation, but that case confirms that "minimal allegations" with "almost no specifics" as to the identity of the speaker or the time and place of the misstatements fail to satisfy Rule 9(b).  See 477 F. Supp. 2d 602, 611-12 (S.D.N.Y. 2007).

violations.  (Pls.' Br. 16 n.34.)  The Second Circuit has not even adopted a relaxed pleading standard in the False Claims context, <u>United States ex rel. Monda v. Sikorsky Aircraft Corp.</u>, No. 05-4977, 2006 WL 3456526, at *1 (2d Cir. Nov. 30, 2006), much less suggested it would be appropriate to temper Rule 9(b)'s requirements for a common-law fraud claim such as this.

### C.      Plaintiffs Fail to Plead That MS or BoNYM Knew of the Alleged Falsity of the Ratings

Even if the ratings could be imputed to MS or BoNYM, plaintiffs do not adequately plead that they *knew* the ratings were false or misleading or that they acted with the requisite intent.  In support of plaintiffs' scienter allegation as to MS, plaintiffs allege only that MS "received due diligence reports from Clayton Holdings"; provided banking services to subprime loan originators; and had access to the rating agencies' models—but not how or why any information from these alleged sources could have, much less did, undercut the ratings to such an extent that it gave rise to actual knowledge that the ratings were "false."  (Pls.' Br. 19.)[4]  Plaintiffs do not even allege what information MS personnel involved in the Cheyne SIV knew, or how and when that information rose to the level of actual knowledge of falsity.  Plaintiffs' allegation of BoNYM's purported knowledge is equally insufficient.  According to plaintiffs, the factual basis for BoNYM's knowledge is that QSR (not BNYM) had a duty to "report the market values" of the SIV's assets.  (Am. Compl. ¶¶ 23-24; <u>see</u> Pls.' Br. 25.)  Plaintiffs nowhere explain how or why the duty to report market values means BoNYM would know the ratings were false.[5]

---

[4] Indeed, plaintiffs support the allegation that the ratings were false with little more than the sophistry that certain risks ultimately materialized, and thus must have been greater than disclosed.  (<u>See</u> Am. Compl. ¶ 41.)  Such allegations of "fraud by hindsight" are insufficient to state a claim.  <u>Bay Harbour Mgmt. LLC v. Carothers</u>, 282 F. App'x 71, 75 (2d Cir. 2008).

[5] Plaintiffs also assert that BoNYM reviewed "statistical information on the loan pools" as a consequence of weekly reports it provided to the rating agencies.  (Pls.' Br. 25 n.57.)  Plaintiffs' only basis for this assertion—which is not in the complaint (<u>see</u> Am. Compl. ¶ 90)—is

Nor do these vague allegations come close to "alleg[ing] facts that give rise to a *strong inference* of fraudulent intent," as Rule 9(b) requires.  See Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir.1995) (emphasis added); see also In re Amaranth Natural Gas Commodities Litig., No. 07 Civ. 6377(SAS), 2009 WL 1138716, at *8 (S.D.N.Y. Apr. 27, 2009) (Scheindlin, J.) (noting that "Rule 9(b) imposes a significant burden on allegations of scienter" and finding failure to plead scienter of CEO despite allegations he had "access to all relevant facts and information" regarding his company's alleged fraud).  Similarly, alleging that MS was paid for its work as a placement agent is far from enough and would not suffice even if MS had acted as an underwriter.  See Fisher v. Offerman & Co., Inc., No. 95 Civ. 2566, 1996 WL 563141 (JGK), at *6-7 (S.D.N.Y. Oct. 2, 1996) (Rule 9(b) would be "wholly meaningless" if "an underwriter's alleged motive to earn its underwriting fees [were] alone sufficient" to plead scienter).

**D.** **Plaintiffs Fail to Plead Reasonable Reliance as to MS or BoNYM**

Plaintiffs also do not, and cannot, plead reasonable reliance.  Plaintiffs do not dispute that they are sophisticated, institutional investors; that the Rated Notes were privately placed, complex financial instruments intended solely for such investors; and that plaintiffs represented that they would perform their own due diligence before investing.  Moreover, the express disclaimers in the information memoranda (Rouhandeh Decl. Ex. A at 2-3, 18; Ex. B at 3-4; Ex. C at 3-4)—all of which contained the allegedly fraudulent ratings—"on their face" preclude plaintiffs from pleading reasonable reliance with respect to MS and BoNYM.  See UniCredito Italiano SpA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 498-99 (S.D.N.Y. 2003); see, e.g.,

---

that BoNYM was required to do so "under the terms of the Selling Documents."  (Pls.' Br. 25 n.57.)  Plaintiffs never identify documents containing such terms, let alone specific language or provisions in any document.  Moreover, this allegation is contrary to the information memoranda, which describe the Administrator's duties and make no reference to any obligation to review such information.  (See Perez-Marques Decl. Ex. A at 76-78; Ex. B at 70-72.)

<u>Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.</u>, No. 03 Civ. 1537(MBM), 2003 WL 23018888, at *14-15 (S.D.N.Y. Dec. 22, 2003), <u>aff'd</u>, 110 F. App'x 191 (2d Cir. 2004).[6] Every case plaintiffs cite in support of the contention that the Court should not give effect to the disclaimers involved a dispute between *counterparties*. (<u>See</u> Pls.' Br. 22 n.50-51.) Here, the disclaimers in the information memoranda protect various *third parties*—including MS and BoNYM—from claims relating to statements made by others. Indeed, MS and BoNYM did not disclaim responsibility for statements *they* made; rather, Cheyne Finance made clear in the offering documents that the statements therein—including the allegedly false ratings—were *not* made by MS and BoNYM. As one would expect, the *issuer* of the financial instruments, Cheyne Finance, "accept[ed] responsibility for the information contained in the Information Memorand[a]." (Rouhandeh Decl. Ex. A at 1-3; Ex. B at 1, 3-4; Ex. C at 3-4, 18.)

Plaintiffs' failure to sue the issuer of the financial instruments also precludes their argument that the "peculiar knowledge" doctrine establishes reliance, because that doctrine applies in the context of fraud by transactional *counterparties*, and not their advisors or other third parties. <u>See</u> <u>UniCredito</u>, 288 F. Supp. 2d at 500-01, 505-06 (where, as here, "all of the . . . peculiar knowledge cases cited by plaintiffs involved alleged concealment or misrepresentation of material information by counterparties in the transactions at issue," the court "decline[d] to extend the peculiar knowledge doctrine . . . to make third parties guarantors of the integrity of such counterparties"). Moreover, not only did the offering memoranda expressly instruct plaintiffs to perform their own investigation of the Rated Notes, they also provided plaintiffs with information on how to do so. (<u>See, e.g.</u>, Perez-Marques Decl. Ex. A at 113 (listing

_____

[6] Whether plaintiffs have adequately pled reasonable reliance in the context of a fraud claim "can be a proper subject for a motion to dismiss." <u>Walrus Master Fund Ltd. v. Citigroup Global Mkts., Inc.</u>, No. 08 Civ. 2404(DAB), 2009 WL 928289, at *3 (S.D.N.Y. Mar. 30, 2009).

numerous "Documents Available" for investors to inspect), 87 ("An explanation of the significance of [the] credit ratings may be obtained from the Rating Agencies furnishing the same.").)  Thus, the peculiar knowledge doctrine is wholly inapplicable.  Plaintiffs' attempt to establish reliance by invoking the so-called "fraud-created-the-market" presumption also plainly fails.  (Pls.' Br. 23); see In re Refco, Inc. Sec. Litig., 609 F. Supp. 2d 304, 318 (S.D.N.Y. 2009).

## II.   Plaintiffs Fail to Plead Their Contract-Based Claims

### A.   Plaintiffs Have Not Identified the Contracts That MS and BoNYM Allegedly Entered Into, Much Less the Provisions That They Allegedly Breached

As the Supreme Court clarified only last month, a claim that is not supported by "factual content that allows the court to draw the reasonable inference [of liability]" must be dismissed under Rule 8(a).  Ashcroft, 129 S. Ct. at 1949-53 (applying Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), to all claims under Rule 8(a)).  Plaintiffs' claims for breach of contract fail under Rule 8(a) because, as set forth in MS and BoNYM's opening brief, plaintiffs have not identified the "factual content"—in this case, the relevant contracts or contract provisions— underlying their claims.  (See MS/BoNYM Br. 16-18.)

Rather than identify any specific contract, plaintiffs only repeat the complaint's deficient allegation that various categories of documents, including unidentified "written agreements," all of which are denominated the "Selling Documents," should be treated collectively as the relevant contract.  (Pls.' Br. 8.)  Plaintiffs do not even allege that MS or BoNYM are counterparties to any of these unidentified "Selling Documents," although MS is alleged to have "provided" some of them.  (Am. Compl. ¶¶ 62-64.)  The law is clear, however—and was clear, even prior to Twombly and Ashcroft—that such vague, scattershot pleading does not suffice to state a claim.

(MS/BoNYM Br. 16-17.)[7]  Even aside from Rule 8, plaintiffs' contract claims fail because MS

and BoNYM cannot owe contractual duties based upon agreements to which they are not even

alleged to have been parties.  See Window Headquarters, Inc. v. MAI Basic Four, Inc., Nos. 91

Civ. 1816, 5283 (MBM), 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993).

      Plaintiffs in effect concede that "no written contract is readily identifiable," but argue as

an alternative theory that a contract may be established by the parties' conduct:  in this case, by

plaintiffs' investment in notes issued by a non-party based on "promises" made by "defendants."

(Pls.' Br. 9.)  But this theory, which is identical to plaintiffs' fraud theory, does not suffice to

plead the formation or the terms (much less the breach) of any contract with MS or BoNYM.

      Plaintiffs are also incorrect that invocation of the statute of frauds imposes any burden on

BoNYM beyond what was established in its opening brief.  A defendant moving to dismiss based

on the statute may rely on the purported terms of the contracts as alleged in the complaint.  See

Binkowski v. Hartford Accident & Indem. Co., 876 N.Y.S.2d 295, 296-97 (App. Div. 2009).[8]

As plaintiffs do not dispute that the alleged contractual obligations were of indefinite duration,

and they have not been reduced to writing, plaintiffs' claim is barred by the statute.[9]

---

     [7] Plaintiffs' cases do not hold otherwise.  (Pls.' Br. 8); see, e.g., Contractual Obligation
Prods., LLC v. AMC Networks, Inc., No. 04 Civ. 2867(BSJ)(HBP), 2006 WL 6217754, at *5-6
(S.D.N.Y. Mar. 31, 2006) (contract claim survived because it identified specific agreement
between plaintiffs and defendants with promises running both ways); Weiss v. La Suisse, 69 F.
Supp. 2d 449, 462-63 (S.D.N.Y. 1999) (contract claim survived because it was based on
allegations of specific breaches of specific provisions in specific life insurance policies).

     [8] Plaintiffs' citation to B.W.P. Distributors, Inc. v. OE Plus, Ltd. (Pls.' Br. 10) is
inapposite because it applies the requirements of Massachusetts law, not New York law.
Plaintiffs' reliance on Guilbert v. Gardner (Pls.' Br. 10) is also misplaced because that case
involved an at-will employment contract, a type of contract not typically subject to the statute.

     [9] Section 8-113 of New York's UCC is also inapposite because it applies to "contract[s]
for the sale or purchase of a security," not to any contract that "involved" the sale or purchase of
securities.  (See Pls.' Br. 10 & n.20 (citing a case brought by purchasers against *issuers*).)  Here,

**B.      Plaintiffs Fail to Plead Tortious Interference**

In their opening brief, MS and BoNYM established that the complaint neither identifies

contracts with which MS and BoNYM interfered, nor articulates a coherent theory of intentional

interference.  (MS/BoNYM Br. 19-21.)  Plaintiffs fail to overcome either argument.

First, plaintiffs' brief does no more than repeat that "valid contract[s]" exist between

plaintiffs and "the SIV" and that MS and BoNYM caused these contracts to be breached.  (Pls.'

Br. 13-14.)  As discussed supra, more is required to plead the existence of a contract.  See

Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770(SAS), 2003 WL 1858153, at *8

(S.D.N.Y. Apr. 10, 2003) (Scheindlin, J.).  The lone case that plaintiffs cite on this point only

demonstrates the deficiency of their claims.  See Excellus Health Plan, Inc. v. Tran, 287 F. Supp.

2d 167, 176-77 (W.D.N.Y. 2003) (finding tortious interference claim failed because "general

reference to 'numerous contracts' with various unidentified third parties, without specification of

any valid, existing contract, the parties thereto, or the terms thereof . . . is insufficient").

Second, plaintiffs do not argue—and did not plead—that MS and BoNYM intentionally

procured the relevant breaches.  Plaintiffs defend this defect by asserting that the complaint

generally avers that MS and BoNYM engaged in "improper conduct"—namely, selling risky

assets to the SIV—which "caused" Cheyne Finance to breach its contracts with plaintiffs.  (Pls.'

Br. 14.)  But plaintiffs' own cases make clear that defendants must *intentionally and* improperly

procure[] the breach."  See Vinas v. Chubb Corp., 499 F. Supp. 2d 427, 429-32 (S.D.N.Y. 2007)

(defendant allegedly threatened to stop doing business with plaintiff's contractual counterparty

unless that counterparty ended its relationship with plaintiff) (emphasis added); Guard-Life Corp.

---

BoNYM allegedly violated a contract to "accurately 'mark to market' the collateral assets," not
to purchase or sell securities.  (Am. Compl. ¶ 355.)

v. S. Parker Hardware Mfg. Corp., 428 N.Y.S.2d 628, 630-32, 635 (1980) (defendant purposefully lured contracted-for-business away from plaintiff).  Here, plaintiffs conspicuously do not allege that MS and BoNYM *intended* Cheyne Finance's breach.

### C.      Plaintiffs Fail to Plead Their Third-Party Beneficiary Claims

Plaintiffs do not dispute that their third-party beneficiary claims fail under English law, as MS and BoNYM demonstrated in their opening brief.  (MS/BoNYM Br. 22-23.)  Instead, plaintiffs respond by misstating MS and BoNYM's position and by asserting that English law should not apply.  (Pls.' Br. 12-13.)  However, as England clearly has the most significant relationship to the transaction and the parties, English law applies.  (MS/BoNYM Br. 21-22.)[10]

Regardless, plaintiffs' allegations also fail to state a claim under New York law because plaintiffs have neither identified the contracts at issue nor "*facts* demonstrating that they were *intended* beneficiaries" of the contracts.  See, e.g., Bellis v. Tokio Marine & Fire Ins. Co., Ltd., No. 93 Civ. 6549(DAB), 2002 WL 193149, at *21 (S.D.N.Y. Feb. 7, 2002).  "There must be some facts beyond a conclusory allegation that a party is a third party beneficiary, to survive a motion to dismiss."  In re Houbigant, Inc., 914 F. Supp. 964, 986 (S.D.N.Y. 1995).  Plaintiffs' own cases underscore this requirement.  (Pls.' Br. 11); see, e.g., Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 163 (S.D.N.Y. 1998) (granting motion to dismiss because a pleading must "*demonstrat[e]* an intent to benefit [plaintiffs]") (emphasis added); Owens v. Haas, 601 F.2d 1242, 1250 (2d Cir. 1979) (noting one way of deciding third-party beneficiary issue is to examine the contract itself, as a whole).

---

[10] Plaintiffs mischaracterize MS and BoNYM's argument regarding English law.  (See Pls.' Br. 13 n.24.)  MS and BoNYM's position is that English law may apply to a wider spectrum of allegations in the complaint.  However, as to these other claims, the deficiencies of plaintiffs' pleading precludes a full choice-of-law analysis at this time.  (MS/BoNYM Br. 21 n.8.)

Plaintiffs respond only by repeating the conclusory allegation lodged in their complaint: that contracts exist "between and among" various defendants and the Cheyne SIV, and that those contracts were created "for the purpose and intent to benefit directly the plaintiff Class." (Pls.' Br. 12.) This "[t]hreadbare recital[] of the elements of [the] cause of action" does not suffice. Ashcroft, 129 S. Ct. at 1949; see In re Houbigant, 914 F. Supp. at 986. Plaintiffs also state that "[t]here was no other purpose for defendants' contracts than to generate revenue for themselves by providing service to the SIV and its investors." (Pls.' Br. 11.) But this assertion is inaccurate and irrelevant. The complaint *does not allege* that the contracts were entered into for the purpose of generating revenue by providing services to SIV investors, and, even if it did, that would not amount to an allegation that the *purpose* of the contract was to benefit those investors.

### D.    Plaintiffs' "But For" Theory of Unjust Enrichment Has No Basis in Law

According to plaintiffs, "[b]ut for the investments made by the SIV investors defendants would not have received their substantial fees," and, as such, those fees should be disgorged. (Id. at 15.) Plaintiffs misstate the law. An unjust enrichment claim cannot proceed on the theory that defendants would not have been enriched "but for" plaintiffs' actions. Instead, plaintiffs must allege that a benefit was bestowed *by* plaintiffs *on* defendants. See IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (2009) (plaintiff "does not, and cannot, allege that [defendant-bank] has been unjustly enriched at [plaintiff's] expense, because [plaintiff] did not pay the alleged fees" earned on the transaction); see also Banco Espirito, 2003 WL 23018888, at *17; Wiener v. Lazard Freres & Co., 672 N.Y.S.2d 8, 13 (App. Div. 1998).[11]

---

[11] Plaintiffs' cases do not suggest otherwise. (Pls.' Br. 15); see Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd., 383 F. Supp. 2d 428, 437, 448-49 (S.D.N.Y. 2003) (plaintiff invested $500,000 *in* defendant); Excellus, 287 F. Supp. 2d at 180 (claimant-doctors provided services *to* medical center operator); Green v. Beer, No. 06 Civ. 4156(KMW)(JCF), 2009 WL 911015, at *4 (S.D.N.Y. Mar. 31, 2009) (fees paid directly *by* plaintiff *to* defendant).

Because neither MS nor BoNYM was paid or otherwise directly enriched *by* plaintiffs, their unjust enrichment claims fail.

**III.     Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty**

As this Court has held, allegations that a defendant "was in a dominant position as it possessed knowledge and expertise" and that a "relationship of trust and confidence [existed] between" the parties are insufficient to plead a fiduciary relationship.  Maalouf, 2003 WL 1858153, at *5.  Yet plaintiffs defend their fiduciary duty claims against MS and BoNYM merely by asserting that "[a] fiduciary relationship existed due to MS's [and BoNYM's] superior access to confidential information."  (Pls.' Br. 24.)  Such conclusory allegations are insufficient (MS/BoNYM Br. 27), particularly because plaintiffs' fiduciary duty claims are subject to Rule 9(b).  See Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 550-51, 555 (S.D.N.Y. 2007).  Nor do any of plaintiffs' cases support the proposition that parties on opposite sides of an arm's length transaction can, absent more, be fiduciaries.  The plaintiffs in those cases alleged a fiduciary relationship with their *own advisors*.[12]  Here, MS was hired by CCML to perform services for plaintiffs' *counterparty*, Cheyne Finance, in an arm's length transaction.  Such a transaction, "even [one] where one party has superior bargaining power[,] is not enough to give rise to a fiduciary relationship."  Maalouf, 2003 WL 1858153, at *5 (internal quotation omitted).

Plaintiffs also fail to establish any relationship between themselves and BoNYM, let alone a fiduciary one.  Plaintiffs rely heavily on Pension Committee, but that case is distinguishable.  There, plaintiffs alleged a direct relationship with direct contact between the

---

[12] See Sergeants Benevolent Ass'n Annuity Fund v. Renck, 796 N.Y.S.2d 77, 78 (App. Div. 2005) (trust fund and its *advisors*); Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 173, 196 (S.D.N.Y. 2006) (Scheindlin, J.) (hedge fund's *administrators* that, unlike BoNYM, had direct relationship with plaintiffs); Wiener, 672 N.Y.S.2d at 11-14 (defendant hired by plaintiffs to *assist plaintiffs* in financial transaction).

administrator and investors.  446 F. Supp. 2d at 173, 196 (administrator allegedly provided

marketing materials and reports directly to investors and "held itself out to investors as having

policies and procedures to ensure that the Fund's valuations would be accurate and fair").[13]

Here, plaintiffs fail to identify any direct contact with BoNYM.  A fund administrator does not

*automatically* owe fiduciary duties to investors; as plaintiffs emphasize, when determining

whether such a duty exists, "the ongoing conduct between the parties must be considered" (Pls.'

Br. 25 n.56 (quoting Pension Comm., 446 F. Supp. 2d at 196)), and that conduct clearly

demonstrates the lack of a fiduciary relationship.  See Eurycleia Partners, LP v. Seward & Kissel

LLP, 2009 WL 1543689 (N.Y. June 4, 2009) (no fiduciary relationship because plaintiffs did not

allege any "direct contact or any relationship—contractual or otherwise—with [defendants]").

**IV.    Plaintiffs' Negligence and Negligent Misrepresentation Claims Against BoNYM Fail**

        The lack of allegations showing that the BoNYM entities were in privity, or a

relationship approaching privity, with plaintiffs means that they owed plaintiffs no duties of care

and requires dismissal of plaintiffs' negligence and negligent misrepresentation claims.[14]  Privity

generally requires plaintiffs to allege some type of direct contact with defendants.  See SIPC v.

BDO Seidman, LLP, 222 F.3d 63, 75 (2d Cir. 2000).[15]  Plaintiffs do not even attempt to allege

---

[13] Harmelin v. Man Financial Inc., No. 06-1944, 2007 WL 2769675, at *1 (E.D. Pa. Sept. 20, 2007) (Pls.' Br. 25 n.56), is also inapposite.  Harmelin involved cross-claims against a fund administrator for indemnification.  The administrator affirmatively argued the claims were really contract claims, and none of the parties disputed they were "contracting parties."  Id.  Here, no contractual relationship, or any other relationship, existed between plaintiffs and BoNYM.

[14] Plaintiffs' assertion that they "are only required to recite the elements of negligence" (Pls.' Br. 30) completely ignores the Supreme Court's decision in Ashcroft, 129 S. Ct. at 1949.

[15] Plaintiffs' own cases confirm that direct contact is required.  See, e.g., LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1095 (S.D.N.Y. 1996) (negligent misrepresentation claim survived because, *inter alia*, defendant communicated with several of the plaintiffs and allegedly solicited some plaintiffs to invest in the partnerships).

direct contact with BoNYM, and instead cite Strauss v. Belle Realty Co., 492 N.Y.S.2d 555, 557

(1985) (Pls.' Br. 32), for the proposition that privity or a relationship approaching privity is not

required to state a claim for negligence.  But Strauss involved duties owed to the general public

by a public utility, not the provision of professional services to investors.  Thus, the Court should

look not to Strauss but to Credit Alliance Corp. v. Arthur Andersen & Co., 493 N.Y.S.2d 435

(1985), which sets forth a three-part test for *professional* negligence and negligent

misrepresentation and indicates that privity or a relationship approaching privity is required to

give rise to a duty of care.  Id. at 443; see Vanguard Mun. Bond Fund, Inc. v. Cantor, Fitzgerald

L.P., 40 F. Supp. 2d 183, 190 (S.D.N.Y. 1999) (dismissing negligent misrepresentation claim);

Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. LLC, No. 00 Civ. 9214(RWS), 2003 WL

1751780, at *12-13 (S.D.N.Y. Apr. 1, 2003) (dismissing negligence claim).

        Plaintiffs' contention that they had a "special relationship" with BoNYM because

BoNYM possessed specialized expertise "focused on monitoring the market values of the SIV's

assets" should also be rejected.  (See Pls.' Br. 28.)  Plaintiffs rely heavily on E*Trade Financial

Corp. v. Deutsche Bank AG, No. 05 Civ. 0902, 2008 WL 2428225 (S.D.N.Y. June 13, 2008), but

that case involved litigation over a purchase agreement between *plaintiff and defendant*.  Here, as

explained supra, plaintiffs are unable to allege such a contractual relationship.[16]

**V.      Plaintiffs' Aiding and Abetting Claims Fail**

        Plaintiffs' aiding and abetting allegations against MS and BoNYM consist of the same

sentence:  "Morgan Stanley [or BoNYM] knew of each [of the] defendants' violations of laws

and substantially assisted in such violations."  (Am. Compl. ¶¶ 238, 397.)  Remarkably, for

---

[16] Plaintiffs' assertion that only the rating agencies, not BoNYM, challenge the existence
of a "special relationship" (Pls.' Br. 28 n.60) is simply wrong.  (MS/BoNYM Br. 15-16 & n.5.)
MS and BoNYM also joined in the rating agencies' Martin Act argument.  (Id. at 29 & n.12.)

14

aiding and abetting, plaintiffs cite <u>Morin v. Trupin</u>, 711 F. Supp. 97, 112 (S.D.N.Y. 1989) (Pls.'
Br. 33), which makes clear that such "conclusory assertions of aider-abettor liability which refer
to the general charges of wrongdoing are insufficient."

## VI.    CAFA Is Plaintiffs' Sole Potential Basis for Jurisdiction

Plaintiffs argue that § 1332(a)(3) applies because an entity owned by a state agency or
instrumentality, rather than a state itself, is not a "foreign state."  (Pls.' Br. 5.)  But plaintiff
ADCB's own website makes clear that "[t]he *Government of Abu Dhabi*, through Abu Dhabi
Investment Authority (ADIA), holds 65% of [ADCB's] capital," <u>see</u> www.adcb.com/aboutus/
mediacenter/press kit/presskit.asp (last visited June 29, 2009) (emphasis added).  As such,
ADCB is a "foreign state," and § 1332(a)(3) is inapplicable.

Plaintiffs thus can proceed if and only if they carry their burden of establishing that there
are at least 100 class members such that CAFA jurisdiction exists.  <u>See</u> 28 U.S.C.
§ 1332(d)(5)(B); <u>Serrano v. 180 Connect, Inc.</u>, 478 F.3d 1018, 1021 & n.3 (9th Cir. 2007)
(treating § 1332(d)(5)(B) as threshold jurisdictional requirement not exception); <u>Lowery v. Ala.
Power Co.</u>, 483 F.3d 1184, 1221 (11th Cir. 2007) (same); <u>Frederico v. Home Depot</u>, 507 F.3d
188, 195 (3d Cir. 2007) (same); <u>Hart v. FedEx Ground Package Sys., Inc.</u>, 457 F.3d 675 (7th Cir.
2006) (same).  Nor, contrary to plaintiffs' assertion (Pls.' Br. 4-5), does MS—which was not the
issuer of, and was only one of several placement agents for, the Rated Notes—"control" the
evidence such that it would be appropriate to allocate the burden to MS.

## CONCLUSION

For the reasons set forth above, Morgan Stanley and the BoNYM entities respectfully
request that the Court dismiss the complaint with prejudice.

Dated: New York, New York
       June 29, 2009

                                  DAVIS POLK & WARDWELL LLP

                                  By:   /s/ Antonio J. Perez-Marques
                                         James P. Rouhandeh
                                         james.rouhandeh@davispolk.com
                                         Antonio J. Perez-Marques
                                         antonio.perez@davispolk.com
                                         Russell Capone
                                         russell.capone@davispolk.com

                                  450 Lexington Avenue
                                  New York, New York 10017
                                  (212) 450-4000

                                  *Counsel to Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited*

                                  BOIES, SCHILLER & FLEXNER LLP

                                  By:   /s/ Damien Marshall
                                         Jonathan Sherman
                                         jsherman@bsfllp.com
                                         Damien Marshall
                                         dmarshall@bsfllp.com

                                  5301 Wisconsin Avenue, N.W.
                                  Washington, D.C.  20015
                                  (202) 237-2727

                                  -and-

                                  401 East Las Olas Boulevard, Suite 1200
                                  Fort Lauderdale, Florida 33301
                                  (954) 356-0011

                                  *Counsel to Defendants The Bank of New York Mellon and QSR Management Limited*

16