UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

ABU DHABI COMMERCIAL BANK, et al., :   Civil Action No. 1:08-cv-07508
Individually and On Behalf of All Others :
Similarly Situated, :   <u>CLASS ACTION</u>
                                  :
                  Plaintiffs, :   MEMORANDUM OF LAW IN SUPPORT
                                  :   OF PLAINTIFFS' MOTION FOR CLASS
        vs. :   CERTIFICATION
                                  :
MORGAN STANLEY & CO. :
INCORPORATED, et al., :
                                  :
                  Defendants. :

———————————————————— x

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................1

II.    ARGUMENT .....................................................................2

    A.    Plaintiffs Meet the Requirements of Fed. R. Civ. P. 23(a) ......................3

        1.    The Proposed Class Is So Numerous that Joinder of All Members Is Impracticable ............................................................3

        2.    There Are Questions of Law and Fact Common to the Class ......................4

        3.    The Proposed Class Representatives' Claims Are Typical of the Members of the Class ..........................................................6

        4.    The Proposed Class Representatives and Their Counsel Will Fairly and Adequately Prosecute the Case on Behalf of the Class ......................8

            a.    There Are No Conflicts of Interest Between Any Class Representative and Members of the Class ......................8

            b.    Plaintiffs' Counsel Are Well-Qualified, Experienced and Able to Conduct the Litigation ............................9

        5.    The Proposed Class Is Ascertainable by Reference to Objective Criteria ..................................................................10

    B.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3) ..........................11

        1.    Common Questions of Law or Fact Predominate ......................11

            a.    The Element of Reliance Poses No Obstacle to Class Certification ..........................................13

                (1)    Reliance Will Be Established Through Common, Class-Wide Evidence ..........................13

                (2)    Plaintiffs Are Entitled to the "Fraud-Created-the-Market" Presumption of Reliance ......................18

            b.    State Law Issues Do Not Predominate ..........................21

                (1)    New York State Law Applies to All Claims ......................22

                (2)    The Doctrines of Implied Consent and Judicial Estoppel Require Application of New York Law ..............24

**Page**

    (3)  The Elements of Fraud Are Subject to Generalized Proof ............................................................................26

  2.  A Class Action Is the Superior Method of Adjudication ..........................27

III.  CONCLUSION ..................................................................................................30

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   No. 08 Civ. 7508 (SAS), 2009 U.S. Dist. LEXIS 79607
   (S.D.N.Y. Sept. 2, 2009) ......................................................................................... *passim*

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)................................................................................8, 12, 27

*Baffa v. Donaldson*,
   222 F.3d 52 (2d Cir. 2000)................................................................................8

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ..............................................................10

*Casale v. Kelly*,
   257 F.R.D. 396 (S.D.N.Y. 2009) ..............................................................4

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
*Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007)................................................................................4, 6

*Chisolm v. TranSouth Fin. Corp.*,
   194 F.R.D. 538 (E.D. Va. 2000) ..............................................................14

*Chris-Craft Indus. v. Piper Aircraft Corp.*,
   480 F.2d 341 (2d Cir. 1973)................................................................................17

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)................................................................................4

*Cromer Fin., Ltd. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001)..........................................................24, 28

*Curiale v. Peat, Marwick, Mitchell & Co.*,
   214 A.D.2d 16 (N.Y. App. Div. 1995) ..............................................................15

*Cutler v. Perales*,
   128 F.R.D. 39 (S.D.N.Y. 1989) ..............................................................5

*DeMarco v. Nat'l Collector's Mint, Inc.*,
   229 F.R.D. 73 (S.D.N.Y. 2005) ..............................................................4, 5

Page

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).................................................................................3, 5

*Ellenburg v. JA Solar Holdings Co.*,
  No. 08 Civ. 10475 (JGK), 2009 U.S. Dist. LEXIS 33046
  (S.D.N.Y. Apr. 17, 2009)...........................................................................10

*Ersler v. Toshiba Am., Inc.*,
  No. CV-07-2304 (SMG), 2009 U.S. Dist. LEXIS 14374
  (E.D.N.Y. Feb. 24, 2009)......................................................................12, 15

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*,
  414 F.3d 325 (2d Cir. 2005)......................................................................23

*Fogarazzo v. Lehman Bros.*,
  No. 03 Civ. 5194 (SAS), 2009 U.S. Dist. LEXIS 67555
  (S.D.N.Y. Aug. 4, 2009) ...................................................................*passim*

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)..........................................................................3

*In re Alstom SA Sec. Litig.*,
  253 F.R.D. 266 (S.D.N.Y. 2008) ................................................................10

*In re AMF Bowling Sec. Litig.*,
  No. 99 Civ. 3023 (DC), 2002 U.S. Dist. LEXIS 4949
  (S.D.N.Y. Mar. 26, 2002) ...........................................................................29

*In re Arakis Energy Corp. Sec. Litig.*,
  No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246
  (E.D.N.Y. Apr. 30, 1999).............................................................................29

*In re Baldwin-United Corp. Litig.*,
  122 F.R.D. 424 (S.D.N.Y. 1986) ..................................................................7

*In re Blech Sec. Litig.*,
  187 F.R.D. 97 (S.D.N.Y. 1999) ..........................................................4, 5, 28

*In re Cordis Corp. Pacemaker Prod. Liab. Litig.*,
  No. MDL 850, C-3-86-543, 1992 WL 754061
  (S.D. Ohio Dec. 23, 1992) ..........................................................................26

*In re Fitch, Inc.*,
  330 F.3d 104 (2d Cir. 2003).........................................................................17

**Page**

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  574 F.3d 29 (2d Cir. 2009).................................................................................6, 8

*In re Fosamax Prods. Liab. Litig.,*
  248 F.R.D. 389 (S.D.N.Y. 2008) ...........................................................................11

*In re HealthSouth Corp. Sec. Litig.,*
  No. CV-03-BE-1500-S, 2009 U.S. Dist. LEXIS 90607
  (N.D. Ga. Sept. 30, 2009) ...............................................................19, 20, 21

*In re Initial Pub. Offering Sec. Litig.,*
  471 F.3d 24 (2d Cir. 2006)...............................................................................3, 10

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
  241 F.R.D. 435 (S.D.N.Y. 2007) ...........................................................................28

*In re NASDAQ Market-Makers Antitrust Litig.,*
  172 F.R.D. 119 (S.D.N.Y. 1997) .............................................................................6

*In re Nassau County Strip Search Cases,*
  461 F.3d 219 (2d Cir. 2006)...................................................................................12

*In re NYSE Specialists Sec. Litig.,*
  260 F.R.D. 55 (S.D.N.Y. 2009) .............................................................................10

*In re Orion Sec. Litig.,*
  No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368
  (S.D.N.Y. July 8, 2008) ...................................................................................10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998)...................................................................................26

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
  163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................................12

*In re Veeco Instruments, Inc., Sec. Litig.,*
  235 F.R.D. 220 (S.D.N.Y. 2006) .........................................................................6, 7

*In re Visa Check/MasterMoney Antitrust Litig.,*
  280 F.3d 124 (2d Cir. 2001).............................................................................8, 12

*In re Vivendi Universal, S.A. Sec. Litig.,*
  242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................5, 7, 9, 28

**Page**

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ...................................................................................29

*Kelleher v. ADVO, Inc.*,
   No. 3:06CV01422(AVC), 2009 U.S. Dist. LEXIS 68914
   (D. Conn. Mar. 30, 2009)...................................................................................10

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. Ga. 1987)...........................................................19, 20

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ...................................................................14, 17

*Lee v. Bankers Trust Co.*,
   166 F.3d 540 (2d Cir. 1999)........................................................................24

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)....................................................................2, 4, 6

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008)..............................................................13, 14, 15

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)............................................................12, 13, 14

*Motorola Credit Corp. v. Uzan*,
   388 F.3d 39 (2d Cir. 2004)...........................................................................25

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)........................................................................................25

*Open Hous. Ctr. v. Samson Mgmt. Corp.*,
   152 F.R.D. 472 (S.D.N.Y. 1993) .................................................................4

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).....................................................................3, 4, 7

*Ross v. Bank South, N.A.*,
   885 F.2d 723 (11th Cir. 1989) ..................................................................19, 20

*Shores v. Sklar*,
   647 F.2d 462 (5th Cir. 1981) ......................................................................18, 19

Page

*Spencer v. Hartford Fin. Servs. Group, Inc.*,
   256 F.R.D. 284 (D. Conn. 2009).................................................................*passim*

*State St. Trust Co. v. Ernst*,
   278 N.Y. 104 (1938) ...............................................................................15

*Stichting v. Schreiber*,
   407 F.3d 34 (2d Cir. 2005).......................................................................25

*T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.*,
   717 F.2d 1330 (10th Cir. 1983) ...............................................................19

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
   546 F.3d 196 (2d Cir. 2008)........................................................................3

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
   612 F. Supp. 2d 267 (S.D.N.Y. 2009)................................................23, 24

*Vanamringe v. Royal Group Techs., Ltd.*,
   237 F.R.D. 55 (S.D.N.Y. 2006) ...............................................................10

*Westways World Travel, Inc. v. AMR Corp.*,
   218 F.R.D. 223 (C.D. Cal. 2003) .............................................................15

*White Plains Coat & Apron Co. v. Cintas Corp.*,
   460 F.3d 281 (2d Cir. 2006).....................................................................23

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 ..............................................................................................*passim*
   Rule 23(a)..................................................................................................3
   Rule 23(a)(1)..............................................................................................3
   Rule 23(a)(2)..............................................................................................4
   Rule 23(a)(3)..............................................................................................6
   Rule 23(a)(4)..............................................................................................8
   Rule 23(b)..................................................................................................3
   Rule 23(b)(3)......................................................................................11, 27
   Rule 30(b)(6)......................................................................................10, 17

**Page**

**SECONDARY AUTHORITIES**

1 Herbert B. Newberg
*Newberg on Class Actions* (2d ed. 1985)
     §3.05.................................................................................................................4

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure* (3d ed. 2008)
     §1760...............................................................................................................11

I.     **INTRODUCTION**

Plaintiffs King County, Washington ("King County"), SEI Investments Company ("SEI") and Abu Dhabi Commercial Bank ("ADCB") (collectively, "plaintiffs") bring this motion seeking to certify this securities fraud litigation as a class action brought on behalf of all persons or entities who acquired Commercial Paper, Medium Term Notes (together, "Senior Notes") or Mezzanine Capital Notes ("Capital Notes") (collectively, the "Rated Notes") issued by Cheyne Finance PLC and its wholly owned subsidiaries Cheyne Finance LLC and Cheyne Capital Notes LLC (collectively, the "Cheyne SIV") during the period October 2004 to October 2007 (the "Class Period") and who were damaged thereby.   In addition, plaintiffs request that the Court appoint plaintiffs as class representatives.   During the Class Period, King County acquired Commercial Paper, money market funds managed by a wholly-owned SEI subsidiary acquired Medium Term Notes, and ADCB acquired Capital Notes.

During the Class Period, defendants designed, structured and marketed the Cheyne SIV, generating millions of dollars in fees.[1]   Defendants knew or recklessly disregarded that the credit ratings assigned to the Rated Notes were false and misleading.   *See, e.g.*, ¶¶66-136.[2]   Defendants were also aware that the Rating Agencies operated under extreme conflicts of interest, as the Rating Agencies were told what ratings were desired for the Cheyne SIV and knew that their retention was

---

[1]      The term "defendants" collectively refers to Morgan Stanley & Co. Incorporated and Morgan Stanley International Limited and their affiliates (together, "Morgan Stanley"), Moody's Investors Service, Inc. and its affiliates, including wholly-owned subsidiary Moody's Investors Service Ltd. (together, "Moody's") and The McGraw Hill Companies, Inc. and its affiliates, including its wholly-owned business division Standard & Poor's Ratings Services (together, "S&P"). S&P and Moody's together are referred to as the "Rating Agencies."

[2]      Paragraph references ("¶" or "¶¶") are to the Second Amended Complaint for Common Law Fraud, Breach of Contract and Aiding and Abetting, filed on September 22, 2009 (the "Complaint"). Emphasis is added and citations are omitted throughout unless otherwise indicated.

contingent on the delivery of those ratings.  ¶¶111-136.  Moreover, defendants received specific information throughout the Class Period demonstrating that a large percentage of assets underlying the Cheyne SIV were risky, subprime residential mortgage-backed securities ("RMBS"), which made the Rated Notes much more likely to default than the investment grade ratings would indicate. ¶¶74-102.  Finally, defendants knew or recklessly disregarded that the "risk free" and "investment grade" ratings assigned to the Rated Notes did not adequately capture the risk embedded in these notes, and, contrary to defendants' representations, the Rated Notes were not as safe, secure and reliable as high quality corporate or government bonds.  ¶¶68-102.[3]

This action satisfies all of the requirements of Fed. R. Civ. P. 23.  The proposed Class is so numerous that joinder of all members is impracticable; there are questions of fact and law common to the Class which predominate; the claims or defenses of the representative parties are typical of the claims or defenses of the Class; the representatives will fairly and adequately protect the interests of the Class; questions of law or fact common to the members of the Class predominate over any questions affecting only individual members; and a class action is the superior means to resolve the issues raised by this case.  Accordingly, this case should be certified as a class action.

## II.    ARGUMENT

Class certification is governed by Fed. R. Civ. P. 23.  *Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2009 U.S. Dist. LEXIS 67555, at *3 (S.D.N.Y. Aug. 4, 2009) (Scheindlin, J.).  In the Second Circuit, "'"Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility."'"  *Id.* at *3-*4 (quoting *Marisol A. by Forbes v. Giuliani*, 126 F.3d

---

[3]    The Complaint provides a detailed description of the alleged fraud and defendants' involvement therein.  For the sake of brevity, plaintiffs will not repeat the allegations contained in the Complaint, but hereby incorporate them by reference.

372, 378 (2d Cir. 1997)); *see also Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968) ("'"If there is to be an error made, let it be made in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require."'").

To be certified, a putative class must demonstrate that it satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements and also meets the requirements of at least one of Rule 23(b)'s subsections. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008); *see also Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *11-*12.

To determine whether a class should be certified, courts remain mindful that "'"the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."'" *See In re Initial Pub. Offering Sec. Litig. ("IPO")*, 471 F.3d 24, 33-34 (2d Cir. 2006); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Accordingly, "'in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement.'" *Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *12 (quoting *IPO*, 471 F.3d at 41).

**A.     Plaintiffs Meet the Requirements of Fed. R. Civ. P. 23(a)**

**1.     The Proposed Class Is So Numerous that Joinder of All Members Is Impracticable**

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) (holding that the district court erred in requiring class to establish that joinder was "impossible"). Rather, joinder may be "impracticable" when it is merely "difficult or inconvenient, rendering use of a class action the most efficient method to resolve

plaintiffs' claims." *Casale v. Kelly*, 257 F.R.D. 396, 405 (S.D.N.Y. 2009) (citing *Cent. States Se. &*
*Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45
(2d Cir. 2007)).

In the Second Circuit, the numerosity requirement is presumptively satisfied where there are
40 or more class members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.
1995) (citing 1 Herbert B. Newberg, *Newberg on Class Actions* §3.05 (2d ed. 1985)); *Fogarazzo*,
2009 U.S. Dist. LEXIS 67555, at *4; *Casale*, 257 F.R.D. at 405; *DeMarco v. Nat'l Collector's Mint,*
*Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005). Moreover, in demonstrating that numerosity is satisfied,
plaintiffs may rely on reasonable inferences drawn from available facts to estimate the size of the
proposed class. *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999); *Open Hous. Ctr. v.*
*Samson Mgmt. Corp.*, 152 F.R.D. 472, 475 (S.D.N.Y. 1993) (noting that reasonable estimates of
class size can be sufficient to establish numerosity). Here, the numerosity requirement is easily
satisfied, as plaintiffs can conclusively establish that there are more than 40 Class members, and
reasonably believe, █████████████████████████████████████████████████
███████████████████████.[4] ██████████████████████████████.[5]

##     2.     There Are Questions of Law and Fact Common to the Class

In order to satisfy Rule 23(a)(2)'s commonality requirement, plaintiffs' grievances must
share a common question of law or fact. *See Marisol A.*, 126 F.3d at 376; *see also* Fed. R. Civ. P.
23(a)(2). In determining whether plaintiffs satisfy Rule 23(a)(2), the court must refrain from

---

[4]     Plaintiffs need not specify the exact number of Class members to satisfy the numerosity
requirement. *See Robidoux*, 987 F.2d at 935; *Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *4;
*Blech*, 187 F.R.D. at 103.

[5]     Unless otherwise noted, all "Ex." references are to the Appendix of Exhibits attached hereto.

considering the merits of substantive claims and focus on verifying the existence of common questions of law and fact.  *See Blech*, 187 F.R.D. at 104 (citing *Eisen*, 417 U.S. 156).

Importantly, "[i]t is not necessary that all of the questions raised by arguments are identical; it is sufficient if a single common issue is shared by the class."  *DeMarco*, 229 F.R.D. at 80.  Nor will commonality be defeated by slight differences in class members' positions.  *Blech*, 187 F.R.D. at 104; *see also Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *5 (when common questions predominate, differences among questions raised by individual members will not defeat commonality).  In short, to satisfy the commonality requirement, plaintiff need only identify "'some unifying thread'" among class members' claims that warrants class treatment.  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (quoting *Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y. 1989)).

Here, there are several issues of law and fact that are common to all members of the Class. The Complaint alleges that defendants, who colluded in designing, structuring, maintaining and marketing the Cheyne SIV, knowingly issued and disseminated false and misleading credit ratings for the Cheyne SIV and its Rated Notes, upon which plaintiffs relied to their financial detriment.  *See* ¶¶1-15, 44-59, 66-141, 156-168.  As such, numerous questions of law and fact are common to the Class, including, *inter alia*, whether: (1) the ratings assigned to the Rated Notes constituted misrepresentations or omissions of material fact, (2) defendants knew these ratings were false, (3) defendants issued and/or disseminated the ratings with the intention of inducing reliance, (4) plaintiffs reasonably relied on defendants' misrepresentations, and (5) defendants' misrepresentations caused injury to the Class members.  *See* ¶¶60, 154; *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS), 2009 U.S. Dist. LEXIS 79607,

at *23 (S.D.N.Y. Sept. 2, 2009) (Scheindlin, J.).  Based on these common questions of law and fact, the Class satisfies the commonality requirement.

> ### 3.      The Proposed Class Representatives' Claims Are Typical of the Members of the Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  The purpose of this requirement "is to ensure that class representatives 'have the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'"  *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997)).  As such, typicality is satisfied "'"when each class member's claim arises from the same course of events [] and each class member makes similar legal arguments to prove the defendant's liability."'"  *Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *6 (quoting *Cent. States*, 504 F.3d at 245); *accord In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

The typicality prerequisite, however, "'does ***not*** require that the situations of the named representatives and the class members be identical.'"  *Veeco*, 235 F.R.D. at 238.  Rather, instead of focusing on the precise nature of each plaintiff's claim, "the typicality requirement may be satisfied where 'injuries derive from a unitary course of conduct by a single system.'"  *Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *6 (quoting *Marisol A.*, 126 F.3d at 377).  Thus, courts have routinely held that "'the existence of varying fact patterns to support the claims of individual class members does

*not* mandate a finding of lack of typicality, as long as the claims arise out of the same legal or remedial theory.'" *Veeco*, 235 F.R.D. at 238.[6]

Here, typicality is easily satisfied because the claims of all Class members, including those of the named plaintiffs and proposed class representatives, are based on the same legal theory and derive from the exact same course of misconduct by defendants – *i.e.*, defendants' fraudulent scheme to market and sell the Rated Notes using false and misleading credit ratings. *See Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *20-*21; *see also* ¶¶1-15, 45-59, 66-143, 156-168. In prosecuting this action, plaintiffs will necessarily seek to develop facts regarding defendants' knowledge of the false and misleading credit ratings, the materiality of the credit ratings, defendants' fraudulent intent in soliciting Class members' purchases of the Rated Notes and the damages incurred when the truth about defendants' misrepresentations was revealed. *See Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *23. These are facts that would be necessary "'to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'" *See Veeco*, 235 F.R.D. at 238. As such, plaintiffs' claims satisfy the typicality requirement.

---

[6]     *Accord Vivendi*, 242 F.R.D. at 85 ("'When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'") (quoting *Robidoux*, 987 F.2d at 936); *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986) ("Because [the typicality] inquiry focuses on the nature of the claims asserted, factual differences involving the date, type and manner of the purchase, the investor's perception of the transaction, or even the information furnished to him at the time will not destroy typicality if each class member was the victim of the same material omissions and the same consistent course of conduct.").

4.   **The Proposed Class Representatives and Their Counsel Will Fairly and Adequately Prosecute the Case on Behalf of the Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Generally, this determination "'entails inquiry as to whether: 1) plaintiff[s'] interests are antagonistic to the interest of other members of the class and 2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the litigation.'"  *Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *7 (quoting *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000)). Here, both elements are easily satisfied.

a.   **There Are No Conflicts of Interest Between Any Class Representative and Members of the Class**

The purpose of the first prong of the adequacy analysis is to uncover "'conflicts of interest between named parties and the class they seek to represent.'" *Flag Telecom*, 574 F.3d at 35 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)).  "In order to defeat a motion for certification, however, the conflict 'must be fundamental.'" *Id.*; *see In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (some conflict is permissible: "'[t]he conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental'").

The proposed class representatives here have no interests in conflict with any absent members of the Class, let alone any "fundamental" conflicts that would prevent the proposed class representatives from fairly and adequately representing the interests of the Class.  To the contrary, the proposed class representatives' interests are closely aligned with those of the other Class members.  Each member of the Class was injured, like the proposed class representatives, by defendants' fraudulent misrepresentations regarding the false credit ratings assigned to the Rated Notes and to the Cheyne SIV.  *See* ¶¶1-15, 45-59, 66-143, 156-168; *see also Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *23.  Accordingly, as detailed above, the proposed class representatives and

- 8 -

all members of the Class have an interest in establishing defendants' knowledge and fraudulent intent in disseminating the false credit ratings and demonstrating that these misrepresentations caused damages to Rated Notes purchasers. *See Vivendi*, 242 F.R.D. at 85 ("issues of typicality and adequacy tend to merge because they 'serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence'").

Moreover, there is no doubt that King County, ADCB and SEI have vigorously prosecuted this action, and will continue to advance the interests of the Class through qualified counsel. *See* Declaration of Peggy Pahl in Support of Plaintiffs' Motion for Class Certification ("Pahl Declaration"); Declaration of Simon Copleston in Support of Plaintiffs' Motion for Class Certification ("Copleston Declaration"); Declaration of Timothy D. Barto in Support of Plaintiffs' Motion for Class Certification ("Barto Declaration"). The proposed class representatives have a significant financial incentive to achieve positive results for the Class. *Id*. The proposed class representatives also have demonstrated a willingness and ability to take an active role in the litigation to protect the interests of absent Class members. As set forth in the Pahl, Copleston and Barto Declarations, the proposed class representatives have actively participated in the prosecution of this litigation by: (1) receiving regular status reports from counsel; (2) participating in discussions with counsel concerning significant developments in this litigation; (3) participating in telephone conferences with counsel and co-plaintiffs concerning the litigation; (4) reviewing pleadings submitted in this matter; and (5) responding to defendants' discovery. *Id*.

**b.    Plaintiffs' Counsel Are Well-Qualified, Experienced and Able to Conduct the Litigation**

Plaintiffs' counsel, Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia" or "Class Counsel"), are extremely well-qualified and have extensive experience prosecuting class

action suits on behalf of aggrieved investors.[7]  Indeed, courts within this Circuit have repeatedly found Coughlin Stoia to be adequate and well-qualified for the purposes of litigating securities class action lawsuits.[8]   Moreover, Class Counsel has already demonstrated its competency and commitment to protecting the interests of the Class by: (1) conducting substantial factual investigation into the circumstances underlying plaintiffs' claims, which involved travel to foreign countries; (2) filing a comprehensive amended complaint, which "painstakingly detail[ed]" defendants' alleged fraud (*Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *45); (3) successfully opposing defendants' motions to dismiss; (4) conducting multiple Fed. R. Civ. P. 30(b)(6) depositions in both New York and London; and (5) obtaining over 2.4 million pages of documents from defendants and third parties pursuant to discovery requests and/or third party subpoenas.  The fact that plaintiffs' attorneys "'are qualified, experienced and able to conduct the litigation'" cannot reasonably be disputed.  *See Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *7.

### 5.      The Proposed Class Is Ascertainable by Reference to Objective Criteria

Finally, courts in the Second Circuit have added an "'implied requirement of ascertainability'" to Rule 23's class certification requirements.  *See Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *8 (quoting *IPO*, 471 F.3d at 30).  This additional element requires that the class be

---

[7]      Coughlin Stoia's firm resumé exceeds the page limitations for exhibits set forth in the Court's Individual Rules and Procedures.  Coughlin Stoia's resumé will be provided to the Court upon request.

[8]      *See, e.g.*, *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 278 (S.D.N.Y. 2008); *Ellenburg v. JA Solar Holdings Co.*, No. 08 Civ. 10475 (JGK), 2009 U.S. Dist. LEXIS 33046, at *16 (S.D.N.Y. Apr. 17, 2009); *Kelleher v. ADVO, Inc.*, No. 3:06CV01422(AVC), 2009 U.S. Dist. LEXIS 68914, at *15 (D. Conn. Mar. 30, 2009); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 74 (S.D.N.Y. 2009); *Vanamringe v. Royal Group Techs., Ltd.*, 237 F.R.D. 55, 58 (S.D.N.Y. 2006); *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *17-*18 (S.D.N.Y. July 8, 2008); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008).

"'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1760 (3d ed. 2008)). The ascertainability requirement is satisfied when proposed class members "'"can be ascertained by reference to objective criteria."'" *Id.* (quoting *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008)).

Here, the Class is defined to include:

> All persons or entities who acquired Commercial Paper, Medium Term Notes or Mezzanine Capital Notes (collectively, the "Rated Notes") issued by Cheyne Finance PLC (now known as SIV Portfolio PLC) ("Cheyne PLC") and its wholly-owned subsidiaries Cheyne Finance LLC and Cheyne Capital Notes LLC (together, "Cheyne LLC") (collectively, the "Cheyne SIV") during the period October 2004 to October 2007 ("Class Period") and who were damaged thereby (the "Class").

*See generally* ¶¶150-155.[9] This definition is "ascertainable using objective criteria," as Rated Notes purchasers can be readily identified by defendants' records and books, as well as records maintained by the applicable transfer agents. *See Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *22.

### B.       Plaintiffs Satisfy the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification where common questions of law or fact predominate over individual questions and the class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy both the "predominance" and "superiority" requirements of Rule 23(b)(3). *Id.*

### 1.       Common Questions of Law or Fact Predominate

"Generally, the 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at

---

[9]       Excluded from the Class are defendants, the officers and directors of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.  ¶150.

*9 (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006)).  In this Circuit, "[c]lass-wide issues predominate if resolution of ***some*** of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  In other words, "'[t]he predominance requirement calls only for predominance, ***not exclusivity***, of common questions.'" *Visa*, 280 F.3d at 140.  Moreover, as the Supreme Court has noted, "[p]redominance is a test readily met in certain cases alleging consumer or ***securities fraud*** or violations of the antitrust laws." *Amchem*, 521 U.S. at 625; *see also Ersler v. Toshiba Am., Inc.*, No. CV-07-2304 (SMG), 2009 U.S. Dist. LEXIS 14374, at *12 (E.D.N.Y. Feb. 24, 2009).  At least two district courts within this Circuit have recently certified classes alleging common law fraud, holding that the issues common to the class predominate over any individual issues.  *See Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284, 299-303 (D. Conn. 2009); *Ersler*, 2009 U.S. Dist. LEXIS 14374, at *12-*16.

"'Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions.'" *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 206 (S.D.N.Y. 1995); *see also Spencer*, 256 F.R.D. at 294 ("If common issues predominate as to liability, the court should ordinarily find predominance . . . .").

Here, as discussed in Section II.A.2, *supra*, the critical issues in establishing defendants' liability include whether: (1) the ratings assigned to the Rated Notes constituted "misrepresentation[s] or omission[s] of material fact"; (2) defendants knew or recklessly disregarded these ratings were false; (3) defendants issued and/or disseminated the ratings "with the intention of inducing reliance"; (4) plaintiffs "reasonably relied" on defendants' misrepresentations; and (5)

defendants' misrepresentations caused "injury" to the class members.  *See Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *23 (listing elements for a fraud claim under New York law).  Because these issues are common to each member of the Class and will be established with similar evidence, common issues predominate over individual ones.  *Spencer*, 256 F.R.D. at 294.

**a.      The Element of Reliance Poses No Obstacle to Class Certification**

**(1)      Reliance Will Be Established Through Common, Class-Wide Evidence**

The Second Circuit has expressly declined to adopt a blanket rule that a class cannot be certified when individual reliance is an issue.  Rather, class certification is appropriate in cases like this one, when (1) defendants' misrepresentations were "materially uniform," and (2) plaintiffs' reliance on these misrepresentations can be established class-wide through common evidence.  *See Moore*, 306 F.3d at 1252; *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 225 (2d Cir. 2008).  Issues relating to reliance do not predominate over other issues common to the Class because defendants' misrepresentations – *i.e.*, the false credit ratings – were materially uniform and plaintiffs are able to establish reliance on these misrepresentations through common evidence.

In *Moore*, the Second Circuit addressed the issue of when certification of a class alleging common law fraud is appropriate:

> Fraud actions must . . . be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations.  ***The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof***.

306 F.3d at 1253.  The Second Circuit further opined that "if class members received materially uniform misrepresentations," then "generalized proof [can] be used to establish any element of the

- 13 -

fraud." *Id.* at 1255.[10]  In this case, defendants' misrepresentations were materially uniform – they issued false and misleading ratings on each of the Cheyne SIV Rated Notes to every single plaintiff.

The misrepresentations at issue are the false credit ratings that defendants assigned to the Rated Notes and the Cheyne SIV, which they disseminated to plaintiffs. *Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *23.  Specifically, defendants misrepresented that the Commercial Paper and Medium Term Notes were "top rated" notes deserving the highest possible credit ratings of A-1+/P-1 and AAA/Aaa, respectively, and that the Senior Notes were "investment grade" notes deserving high credit ratings of A/A3.  ¶¶2, 8, 36, 38, 103.  Defendants further misrepresented that the entire Cheyne SIV was "AAA" or "risk-free." ¶¶6, 38.  Because the misrepresentations that defendants disseminated to the entire Class, *i.e.*, the false credit ratings, were not just "materially uniform," but were, in fact, ***identical***, individualized issues regarding which misrepresentations were made to each plaintiff and the nature of those misrepresentations do not arise. *See Moore*, 306 F.3d at 1254.  As the Second Circuit acknowledged in *Moore*, once plaintiffs have established that the misrepresentations were materially uniform, the second issue – "reliance upon the misrepresentation" – "may then be [a] simpler matter[] to determine." *Id.* at 1255.

Here, plaintiffs' reliance on the false credit ratings can be established class-wide through common, circumstantial proof. *McLaughlin*, 522 F.3d at 225 ("proof of reliance by circumstantial evidence may be sufficient under certain conditions"); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) ("[W]hile each plaintiff must prove his own reliance in this case . . . the circumstantial evidence that can be used to show reliance is common to the whole class."); *Chisolm*

---

[10]     In *Moore*, the Second Circuit held that, "in the present case," the district court did not abuse its discretion in denying plaintiffs' motion for class certification because the "various" oral sales pitches and presentations used by defendants' insurance brokers were not "materially uniform." 306 F.3d at 1253-56.

*v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 560 n.24 (E.D. Va. 2000) ("Fraud cannot be presumed, but reliance may be demonstrated by circumstantial or direct evidence."); *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223 (C.D. Cal. 2003) (same).   Importantly, as one court in this Circuit recently explained in certifying a class alleging common law fraud: "*McLaughlin* explicitly declined to adopt the rule of some other circuits that a requirement to provide individual reliance necessarily defeats certification in a proposed fraud class action" and "made clear that 'proof of reliance by circumstantial evidence may be sufficient under certain conditions.'"   *Spencer*, 256 F.R.D. at 302 (quoting *McLaughlin*, 522 F.3d at 225).   Following *McLaughlin*, district courts in this Circuit have certified common law fraud classes where, as here, class-wide reliance can be proven through generalized circumstantial evidence.   *Id.*; *see also Ersler*, 2009 U.S. Dist. LEXIS 14374, at *16-*17 (certifying a settlement class alleging common law fraud and specifically noting that "[i]n *McLaughlin*, the Second Circuit declined 'to adopt the Fifth Circuit's blanket rule that "a fraud class action cannot be certified when individual reliance will be an issue"'").

Under the particular facts of this case, common, circumstantial evidence establishes – on a class-wide basis – that plaintiffs relied on the false credit ratings.   First, under New York law, to establish reliance at trial, plaintiffs need not establish that the credit ratings were the "***exclusive*** cause" – or even the most important cause – of their decision to purchase the Rated Notes; "it is sufficient that [the credit ratings] were a ***substantial factor*** in inducing the plaintiff[s] to act the way [they] did."   *Curiale v. Peat, Marwick, Mitchell & Co.*, 214 A.D.2d 16, 27 (N.Y. App. Div. 1995) (emphasis in original and added) (citing *State St. Trust Co. v. Ernst*, 278 N.Y. 104, 122 (1938)).   As plaintiffs' economic expert, former SEC Chairman Charles Cox, concluded, the credit ratings that nationally recognized statistical ratings organizations ("NRSROs") Moody's and S&P assigned to the Cheyne SIV and Rated Notes were "***a critical part of the total mix of information available to***

*investors and a substantial factor in the decisions they made to invest in and remain invested in*

*the Cheyne SIV.*"  Declaration of Charles C. Cox ("Cox Decl."), ¶13.

In the Court's Order granting in part and denying in part defendants' motions to dismiss, the Court explicitly acknowledged the importance of credit ratings, stating: "A credit rating is important to both issuers and investors." *Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *6; *see also* Cox Decl., ¶¶13-18.  The Court further explained that credit ratings are particularly important in the context of structured investment vehicle purchases, such as the one at issue here:

> A credit rating also provides important information to potential investors in an SIV because an SIV's success depends on the credit quality of the assets acquired by the SIV.  If stable instruments comprise the SIV, then SIV investors are much less likely to suffer a loss.  These stable instruments are typically assigned high ratings of "top rated" or "investment grade" and are commonly understood in the marketplace to be stable, secure, and safe.

2009 U.S. Dist. LEXIS 79607, at *7; *see also* Cox Decl., Ex. C (Report on the Role and Function of Credit Rating Agencies in the Operation of the Securities Markets stating: "Credit ratings can play a significant role in the investment decisions of investors, and the value investors place on such ratings is evident from, among other things, the impact ratings have on an issuer's ability to access capital.").  In its Order, the Court also noted that credit ratings issued by NRSROs, such as Moody's and S&P, are given particular weight by investors because NRSROs are recognized as issuing "credible and reliable ratings."  2009 U.S. Dist. LEXIS 79607, at *6.

Moreover, as both this Court and the Second Circuit have recognized, inducing investor reliance is one of the key reasons companies have their securities rated in the first place:

> "Clients have their securities rated for two reasons.  First, once the security or debt has received a favorable rating, that rating makes it easier to sell the security to investors, who ***rely*** upon Fitch's analysis and evaluation.  The second reason is that a favorable rating carries with it a regulatory benefit as well.  Fitch, along with its direct competitors Amici Moody's Investors Service, Inc. ('Moody's') and Standard & Poor's ('S&P'), has been designated by the Securities and Exchange Commission ('SEC') as a 'nationally recognized statistical rating organization' ('NRSRO') whose endorsement of a given security has regulatory significance, as many regulated

institutional investors are limited in what types of securities they may invest based on the securities' NRSRO ratings."

*Id.* at *6-*7 (quoting *In re Fitch, Inc.*, 330 F.3d 104 (2d Cir. 2003)).

Second,



Cox Decl.,

Given the obvious importance of the ratings that defendants, as NRSROs, assigned to the Rated Notes, as well as the purpose for which the ratings were disseminated to investors, *i.e.*, to induce their reliance, "[i]t does not strain credulity" to conclude that the false ratings were a substantial factor in plaintiffs' decisions to purchase the Rated Notes. *Klay*, 382 F.3d at 1259 (holding that individualized issues of reliance did not predominate where "[i]t d[id] not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon defendants' representations"); *Spencer*, 256 F.R.D. 284 (same). Put more simply, where, as here, "it is logical to presume that reliance in fact existed," the court may do so. *Chris-Craft Indus. v. Piper*

- 17 -

*Aircraft Corp.*, 480 F.2d 341, 375 (2d Cir. 1973). Indeed, this is precisely what this Court has already done:

> [T]he market at large, including sophisticated investors, have come to rely on the accuracy of credit ratings and the independence of rating agencies because of their NRSRO status . . . . Plaintiffs accordingly have adequately pled their reasonable reliance on the ratings.

*Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *52.

The credit ratings assigned to the Cheyne SIV were especially important here because investors had access to very little other information about the Cheyne SIV at the time they made their investment decisions. In holding that plaintiffs had sufficiently alleged reasonable reliance in its motion to dismiss Order, the Court took note of this fact, explaining: "[T]he market at large, including sophisticated investors, have come to rely on the accuracy of credit ratings and the independence of rating agencies because of their NRSRO status and, at least in this case, the Rating Agencies' access to non-public information that even sophisticated investors cannot obtain." *Id.*

Further, as set forth in the Cox Decl., plaintiffs could not independently ascertain the validity and bases for the credit ratings assigned to the Rated Notes for themselves because the models used to generate the credit ratings at issue were not available to them. *See* Cox Decl., ¶¶16-18; *see also id.*, Ex. G ("It is currently impossible for members of the public . . . to obtain the basic data needed to evaluate rating quality without the rating agencies' sufferance."). Thus, as Dr. Cox concluded, plaintiffs "had to depend on the reliability of the Rating Agencies assessments when making investment decisions regarding the Rated Notes." *Id.*, ¶18.

### (2) Plaintiffs Are Entitled to the "Fraud-Created-the-Market" Presumption of Reliance

Issues relating to reliance do not predominate over other issues common to the Class for the additional reason that plaintiffs are entitled to a presumption of reliance under the "fraud-created-the-market" doctrine. In *Shores v. Sklar*, the Fifth Circuit established the "fraud-created-the-market"

presumption of reliance, which specifically applies to securities, like the Rated Notes, that were not traded on an open, efficient market. *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981) (en banc). Under the fraud-created-the-market theory, which the Fifth, Tenth and Eleventh Circuits have all adopted in some form, investors are entitled to a presumption of reliance where they are able to show that defendants brought securities onto the market that, but for defendants' deceptive conduct, misrepresentations or non-disclosures, would not otherwise have been marketed and sold. *Id.* at 470; *see also Ross v. Bank South, N.A.*, 885 F.2d 723, 729-30 (11th Cir. 1989) (en banc) ("When the fraud alleged is so pervasive that absent the fraud the bond could not have been marketed, the reliance element is established by the buyer's reliance on the integrity of the market, i.e., the action of the market to furnish only securities that are entitled to be marketed."); *T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.*, 717 F.2d 1330 (10th Cir. 1983) (adopting *Shores*' fraud-created-the-market presumption of reliance).

Under circumstances similar to those in this case, by applying the fraud-created-the-market presumption of reliance, courts throughout the United States have certified classes consisting of investors who purchased securities not traded on the open market. *See In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S, 2009 U.S. Dist. LEXIS 90607 (N.D. Ga. Sept. 30, 2009) (certifying a class of bond purchasers using the fraud-created-the-market presumption of reliance); *Ross*, 885 F.2d at 995 (affirming certification of a class of bond purchasers, finding that because they were entitled to the fraud-created-the-market presumption of reliance, individual issues did not predominate over issues common to the class); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. Ga. 1987) (reversing the district court's denial of class certification on grounds that plaintiffs were entitled to fraud-created-the-market presumption, and therefore, individual issues concerning reliance did not predominate).

Here, as in *HealthSouth*, *Ross* and *Kirkpatrick*, but for defendants' fraudulent conduct, the Rated Notes would not have been marketable; *i.e.*, they never would have been issued, much less purchased. For example, plaintiffs allege: "In sum, without the 'top ratings for the Senior Notes and the 'investment grade' ratings for the Capital Notes, the Cheyne SIV would not have existed in the first place and could not have operated on an ongoing basis." ¶55; *see also* ¶¶9, 71, 163, 197, 203.

In addition, the Cox Decl. establishes the unmarketability of the Rated Notes absent the ratings assigned.[11] Specifically, Dr. Cox opines that "[h]ad the ratings assigned to the Rated Notes been lower, that is, had the expected risk to investing in these securities been higher, then all else being equal, investors would have required a higher return." Cox Decl., ¶19. Dr. Cox then performs an economic analysis of the financial structure of the Cheyne SIV and concludes, based on both his analysis of the financial structure and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that without the credit ratings received, "the Cheyne SIV would have been uneconomic and unmarketable to investors." Cox Decl., ¶¶20-21.

Plaintiffs are also entitled to the "fraud-created-the-market" presumption of reliance because the Cheyne SIV's own operating covenants make clear that, but for the top ratings S&P and Moody's provided to the Rated Notes, the Rated Notes could never have been issued. The Cheyne SIV's operating covenants included various capital tests, which would have been breached had S&P or Moody's downgraded their ratings for the Rated Notes. *See, e.g.*, Ex. 2. For example, the SIV contained a "Senior Note Rating Test," which would have been breached if the credit ratings for the

---

[11]     Importantly, at the class certification stage, plaintiffs need not "show definitively" the unmarketability of the Rated Notes. *Fogarazzo*, 2009 U.S. Dist. LEXIS 67555, at *39, *45 (holding that at the class certification stage, plaintiff "need only prove by the preponderance of the evidence that loss causation can be proved on a class-wide basis"). Rather, plaintiffs need only propose a "suitable methodology" for demonstrating unmarketability, which could be applied class-wide. *Id.* at *39. The Cox Decl. does precisely that.

Senior Notes had been downgraded by even a single notch. *Id.* at 110 ("Cheyne Finance PLC shall breach the Senior Note Rating Test if the Moody's public ratings of the Euro Senior Notes are downgraded below the Top Rating . . . ."). As set forth in the Cheyne SIV Information Memorandum, if the operating covenants are breached, *e.g.*, by a ratings downgrade, then the SIV enters into a "Restricted Investment" phase, under which the SIV could "not purchase new [i]nvestments," with limited exceptions. *Id.* at 92. In short, without the top ratings provided by Moody's and S&P, the Cheyne SIV could not have purchased assets,[12] which was the sole reason the Cheyne SIV existed in the first place. *Id.* Because the Cheyne SIV would never had existed – and, consequently, the Rated Notes would never have been issued – but for the false credit ratings, plaintiffs are entitled to the fraud-created-the-market presumption of reliance.

This conclusion is supported by the recent decision in *HealthSouth*, 2009 U.S. Dist. LEXIS 90607, at *86-*97. In *HealthSouth*, the court applied the fraud-created-the-market presumption in certifying a class of bond purchasers, finding that, had defendants not perpetrated the fraud at issue, HealthSouth "would have been in default of its financial covenants" and the bonds at issue would never have been issued. *Id.* at *90. Here, as in *HealthSouth*, plaintiffs are entitled to the fraud-created-the-market presumption of reliance because, but for defendants' fraudulent conduct, the Rated Notes would never have been issued.

### b.    State Law Issues Do Not Predominate

The geographic diversity of the proposed class does not defeat predominance. This case presents no conflict-of-law concerns because New York law applies to ***all*** of the plaintiffs' claims

---

[12]     Nor could the Cheyne SIV have entered into a variety of derivative contracts, redeemed any capital notes, paid interest on the capital notes, paid performance fees to the managers of the Cheyne SIV or made various other payments. Ex. 2 at 92.

regardless of where they reside.  Defendants argued in their motions to dismiss that New York law applies to plaintiffs' common law claims – and the Court agreed, holding that "'"a substantial portion of the events" giving rise to [plaintiffs' claims] occurred in New York.'"  *Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *53.  As discussed below, this conclusion is in accord with New York choice-of-law principles which require application of the law of the jurisdiction that has the most interest in the dispute.  Separately, the doctrines of judicial estoppel and implied consent provide additional, independent bases for applying New York law.  Even if this Court were to apply the law of the jurisdiction where each plaintiff resides, any state-to-state variations in the law governing common-law fraud are immaterial and would not predominate.  *See* Martin Decl., Ex. A (Fifty-State Survey); *Spencer*, 256 F.R.D. at 298 (requirements of common law fraud are substantially the same from state to state and immaterial variances do not "'swamp common issues and defeat predominance'").  Accordingly, any attempt by the defendants to manufacture an issue based on the nationwide residence of Senior Note purchasers and worldwide residence of Capital Note purchasers should be rejected.

### (1)  New York State Law Applies to All Claims

In its Order dated September 2, 2009, the Court held that New York law applies to plaintiffs' common-law claims and dismissed all non-fraud claims because they were preempted by New York's Martin Act.  *Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *53-*56.  The Court cited a number of facts that establish New York's strong interest in, and relationship to, defendants' fraud:

> (1) both Morgan Stanley and BoNY are headquartered in this District; (2) the register of certificateless depository interests was to be maintained in New York; (3) the Senior Note Purchase agreement, the U.S. Senior Note Security Documents, the U.S. Senior Notes Agency Agreement, the Capital Notes, the Capital Notes Purchase Agreement, the U.S. Capital Notes Security Documents and the U.S. Capital Notes Agency agreement are governed by and construed in accordance with the laws of New York; (4) New York has a public policy interest in fostering the integrity and transparency of financial markets since it is one of the leading financial centers in the world; and (5) "the violations of law complained of [in the First Amended

> Complaint] occurred in part in this District, including the dissemination of the
> materially false and misleading credit ratings and other statements complained of [in
> the First Amended Complaint].”

*Id*. at \*55-\*56.  Based on these facts, the Court held that “‘“*a substantial portion of the events giving rise to [plaintiffs' claims] occurred in New York*.”’”[13]  *Id.* at \*53.  This holding is dispositive on the choice-of-law question with respect to plaintiffs' common law fraud claims, which arise from the exact same series of events as the dismissed non-fraud claims.  Consequently, the fraud claims are governed by New York law regardless of where the plaintiffs reside.

This Court's conclusion that New York law applies is consistent with New York's choice-of-law principles requiring application of the law of the jurisdiction with the greatest interest in, or relationship to, the dispute.[14]  *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006).  The location of the loss – often where plaintiffs reside – “is not conclusive and does not trump a full interest analysis.”  *Thomas H. Lee Equity Fund*, 612 F. Supp. 2d at 284.  Instead, the analysis is “‘flexible’ and ‘intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern in the specific issue raised in the litigation.’”  *Id*. (quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005)).  The Court's holding that “‘“a substantial portion of the events giving rise to [plaintiffs' claims] occurred in New York”’” (2009 U.S. Dist. LEXIS 79607, at

---

[13]    Additional facts bolster the Court's conclusion.  For example, the issuer, Cheyne Finance Capital Notes LLC is headquartered in Melville, New York and the placement agents, Morgan Stanley & Co., Inc., Lehman Brothers Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated are all headquartered in New York, New York.  *See* Affirmation of Dean Ringel in Support of the Rating Agency Defendants' Joint Motion to Dismiss the First Amended Complaint (Dkt. #48), Ex. 1 at 197.

[14]    In diversity cases, the court must apply the choice-of-law analysis of the state in which the court sits.  *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 284 (S.D.N.Y. 2009).

*53) combined with the Rating Agencies' status as publicly-sanctioned institutions whose ratings have regulatory significance and New York's status as a leading financial center leave no room for dispute that New York has the greatest concern in the primary issue here – defendants' fraudulent assignment of false and misleading ratings to the Rated Notes.

Additionally, "[i]n weighing interests, New York distinguishes between 'conduct regulating' and 'loss allocating' rules." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). In cases where the applicable rule is conduct regulating, "New York law usually applies the law of the place of the tort ('*lex loci delicti*')." *Id.* Discouraging fraud is a conduct regulating rule, thus further increasing New York's connection to and interest in application of its law to this action. *Thomas H. Lee Equity Fund*, 612 F. Supp. 2d at 284 (observing that common-law fraud claim is "'conduct regulating'" and applying New York law to common-law fraud claims despite fact that plaintiff was headquartered in Massachusetts); *Cromer Fin., Ltd. v. Berger*, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001) (holding that in the context of fraud, forum where the loss was suffered was not dispositive where a single state was overwhelmingly the center of gravity of the events at issue and that state's interest in regulating the conduct of work performed there was strong).

**(2)    The Doctrines of Implied Consent and Judicial
Estoppel Require Application of New York Law**

The parties' implied consent and the doctrine of judicial estoppel provide additional, independent bases for application of New York law.

The parties have consented to the application of New York law to plaintiffs' fraud claims. At the motion to dismiss stage, both the parties and the Court assumed New York law applied to plaintiffs' fraud claims. Defendants sought dismissal for failure to state a claim for fraud under New York law. *See* Morgan Stanley's Memorandum in Support of Motion to Dismiss at 8-15, Dkt. #52, filed May 18, 2009; Rating Agency Defendants' Joint Memorandum in Support of Motion to

Dismiss at 6-12, Dkt. #49, filed May 18, 2009 ("Defs.' Mem."). Plaintiffs defended their allegations under New York law, and the Court analyzed and upheld plaintiffs' fraud claims under New York law. *See Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *23-*26, *35-*53. Where "the parties' briefs assume that New York law controls this issue . . . such 'implied consent . . . is sufficient to establish choice of law.'" *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004). At no point during the motion to dismiss briefing did any party question the application of New York law to the fraud claims or argue that choice-of-law principles required analysis of the law from plaintiffs' respective home forums. Instead, all parties assumed New York law controls notwithstanding that all plaintiffs named in the Complaint reside outside New York. Accordingly, pursuant to the doctrine of implied consent – long recognized by the Second Circuit – New York law applies to plaintiffs' fraud claims. *Id.*

Defendants also are estopped from arguing that New York law does not apply to plaintiffs' common-law claims, having previously argued the contrary. A party cannot adopt a certain position in a legal proceeding and after succeeding in persuading the court to accept that position, later assume a contrary position simply because its interests have changed. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). In their motion to dismiss, defendants argued that New York law, specifically the Martin Act, applied to plaintiffs' tort claims. Defs.' Mem. at 4-6. Having won dismissal of plaintiffs' non-fraud tort claims as preempted by the Martin Act, defendants cannot reverse their position at class certification to argue that New York law does not apply to plaintiffs' claims. "[W]here a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced" judicial estoppel operates to bar the inconsistent position. *Stichting v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005).

(3)    **The Elements of Fraud Are Subject to Generalized Proof**

Even if the Court were to apply the law of each plaintiff's residence, common questions of law and fact predominate for plaintiffs' fraud claims.  This case is a straightforward affirmative misrepresentation action and would not be treated differently in different states.  Indeed, the elements of fraud are substantially similar from jurisdiction to jurisdiction and can be established for all Class members by generalized proof.  In order to prevail on their fraud claims, plaintiffs must prove "'(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.'"  *Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *23.  These elements are the same throughout the United States, thus obviating the need to do a conflict-of-law analysis for each plaintiff.  *See* Martin Decl., ¶¶3-13 & Ex. A.

Recognizing that state-to-state variations in the law on fraud are immaterial where nationwide deceptive conduct is at issue, numerous courts have certified nationwide classes pursuing fraud claims.  *See Spencer*, 256 F.R.D. at 300-01; *see also, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) (affirming district court's decision to certify nationwide settlement class action for fraud); *In re Cordis Corp. Pacemaker Prod. Liab. Litig.*, No. MDL 850, C-3-86-543, 1992 WL 754061, at *14 (S.D. Ohio Dec. 23, 1992) (certifying nationwide class action for fraud, noting "the similarities outweigh the differences" on the elements of fraud in each state).  In *Spencer*, the court rejected defendants' argument that variations in state law predominated because "the fundamental elements of fraud are substantially similar from state to state."  256 F.R.D. at 300.  Indeed, "[v]irtually every state requires that there be a misrepresentation made by the defendant, that the defendant had knowledge that it was false, the defendant intended to

induce the reliance of the plaintiff, the plaintiff relied on the statement, and the plaintiff was injured as a result." *Id*. at 301.

Plaintiffs' expert Professor Shaun Martin's 50-state analysis of state law fraud bolsters this conclusion. Martin Decl., Ex. A. Professor Martin conducted an in-depth comparative analysis of the elements of fraud in all 50 states and concluded: "There are no material or substantive differences between the law of New York with regard to common law fraud and the law of every other American jurisdiction relevant to this action." *Id*., ¶13. Indeed, "[t]here is in every single American jurisdiction a cause of action that is substantively identical to, and has the same elements as, common law fraud under New York law. The elements in each of these jurisdictions are substantively identical to those established by New York law, and each follows the identical elements established under the longstanding common law of England, from which these elements were derived." *Id*., ¶7.

### 2.    A Class Action Is the Superior Method of Adjudication

Not only do common questions predominate in the present litigation, but, as further required by Rule 23(b)(3), "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority is established when "'a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (quoting Advisory Committee Note to Fed. R. Civ. P. 23). A class action is particularly appropriate for addressing the claims at issue in this case.

Rule 23(b)(3) specifies four factors that a court should consider in determining whether a class action is "superior" to other methods of adjudication: (1) the interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability or

- 27 -

undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Here, each of these factors weighs in favor of class certification.

The interest of members of the Class in individually controlling the prosecution of separate actions is minimal.  The costs and expenses of such individual actions, when weighed against the individual recoveries potentially obtainable, likely would prohibit numerous investors from pursuing claims.  Further, the potential class members are significant in number and geographically dispersed. Forcing each investor to litigate separately "would be a particularly inefficient use of judicial resources" – it would invite disparate results and exponentially increase the costs of litigation for all parties and the courts.  *Cromer*, 205 F.R.D. at 133; *see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 450 (S.D.N.Y. 2007) (class action superior where "trying each individual plaintiff's action separately would only lead to wasteful repetition"); *Blech*, 187 F.R.D. at 107 (superiority requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient").  Thus, the interest of the class as a whole in litigating the numerous common questions substantially outweighs any interest in prosecuting separate actions, as class certification would result in significant cost savings for the parties and the courts.

The second factor also weighs in favor of certification.  The proposed class representatives are aware of few individual suits pending against the Rating Agencies arising out of the Cheyne SIV, and none against Morgan Stanley.  This dearth of additional lawsuits further confirms that whatever interests individual class members may have in controlling the prosecution of separate actions, such interests are heavily outweighed by the benefits to be achieved by allowing this case to proceed as a class action.  *See, e.g.*, *Vivendi*, 242 F.R.D. at 92 (noting that even the filing of several individual actions against *Vivendi* in French courts did not render individual interests strong enough to defeat

class certification); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 309 (S.D.N.Y. 2003) (certifying class in a securities case despite the existence of hundreds of pending individual claims, noting "[i]ndividual investors, small entities, and the many large investors who have not filed individual actions should not be deprived of their opportunity to pursue this action simply because some larger litigants with greater financial resources are presently pursuing parallel actions").

Concentrating all litigation in a single forum plainly has a number of benefits, including eliminating the risk of inconsistent adjudication and promoting the fair and efficient use of the judicial system. *See In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023 (DC), 2002 U.S. Dist. LEXIS 4949, at *26 (S.D.N.Y. Mar. 26, 2002) ("For each investor to litigate individually 'would risk disparate results among those seeking redress, . . . would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources.'"); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *38 (E.D.N.Y. Apr. 30, 1999) ("In addition, were plaintiffs required to bring individual actions, the potential for duplicative litigation and consequent waste of judicial and party resources would be significant."). Moreover, as discussed *supra*, this particular forum has a strong connection to this dispute and possesses a significant interest in the dispute. Not only did the fraud emanate from this District, but its widespread reverberations dramatically impacted Wall Street and threatened New York's primacy as the world's leading financial center. There is no question that the orderly, efficient resolution of this action is of great interest to New York and proceeding as a class action in this District is the superior method for achieving this result.

Finally, the proposed class representatives do not envision any significant difficulties likely to be encountered in the management of this case as a class action. This action is appropriate for class treatment, embodying all the hallmarks, both in form and in substance, of actions certified in

this Circuit and elsewhere.   Thus, the class action is superior to other available methods –
particularly, duplicative individual lawsuits – for the fair and efficient adjudication of this
controversy.

## III.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request entry of an order certifying this
action as a class action pursuant to Federal Rule of Civil Procedure 23 and appointing plaintiffs as
class representatives.

DATED:  December 22, 2009                 Respectfully submitted,

                                          COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          PATRICK J. COUGHLIN
                                          DANIEL S. DROSMAN
                                          JESSICA T. SHINNEFIELD
                                          MICHAEL F. GHOZLAND
                                          NATHAN R. LINDELL
                                          CHRISTINA A. ROYCE
                                          DARRYL J. ALVARADO


                                                  s/ DANIEL S. DROSMAN
                                                 DANIEL S. DROSMAN

                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101-3301
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)

                                          COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          SAMUEL H. RUDMAN
                                          JARRETT S. CHARO
                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
LUKE O. BROOKS
JASON C. DAVIS
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone:  415/288-4545
415/288-4534 (fax)

Attorneys for Plaintiffs

S:\CasesSD\Morgan Stanley SIV\secy\BRF00063578_CC.doc

CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 22, 2009.

s/ DANIEL S. DROSMAN
DANIEL S. DROSMAN

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  ddrosman@csgrr.com

# Mailing Information for a Case 1:08-cv-07508-SAS-DCF

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Darryl J. Alvarado**
  dalvarado@csgrr.com

- **Anne L. Box**
  anneb@csgrr.com

- **Luke Orion Brooks**
  lukeb@csgrr.com

- **Andrea Rose Butler**
  abutler@cahill.com

- **Jarrett Scott Charo**
  jcharo@csgrr.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com,jrubins@ssbb.com

- **Patrick Joseph Coughlin**
  patc@csgrr.com

- **Jason Cassidy Davis**
  jdavis@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Daniel S. Drosman**
  ddrosman@csgrr.com,jillk@csgrr.com,E_File_SD@csgrr.com,tholindrake@csgrr.com,nlindell@csgrr.com,jcharo@csgrr.com

- **Michael Fred Ghozland**
  mghozland@csgrr.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Nathan R. Lindell**
  nlindell@csgrr.com

- **Damien Jerome Marshall**
  dmarshall@bsfllp.com,NYC_Managing_Clerk@bsfllp.com

- **Antonio Jorge Perez-Marques**
  antonio.perez@dpw.com,ecf.ct.papers@dpw.com

- **Dean I. Ringel**
  DRingel@Cahill.com,JHall@cahill.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **Jonathan Henry Sherman**
  jsherman@bsfllp.com,NYC_Managing_Clerk@bsfllp.com

- **Jessica T. Shinnefield**
  jshinnefield@csgrr.com

- **Aaron Mark Zeisler**
  azeisler@ssbb.com,managingclerk@ssbb.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**David C. Walton**
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301