UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ABU DHABI COMMERCIAL BANK          :
KING COUNTY, WASHINGTON, AND       :
SEI INVESTMENTS COMPANY,           :
Together and on Behalf of All Others   :
Similarly Situated,                :
                                   :      08 Civ. No 7508 (SAS)
                                   :
                     Plaintiffs,   :
                                   :    **ECF Case**
        - against -                :
                                   :
MORGAN STANLEY & CO.               :
INCORPORATED, ET AL.,              :
                                   :
                     Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

James P. Rouhandeh
Antonio J. Perez-Marques
Russell Capone
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
*Counsel to Defendants Morgan
Stanley & Co. Inc. and Morgan
Stanley & Co. International Limited*

Floyd Abrams
Dean Ringel
Andrea R. Butler
Jason M. Hall
CAHILL GORDON & REINDEL
LLP
80 Pine Street
New York, New York 10005
(212) 701-3000
*Counsel to Defendants The McGraw-
Hill Companies, Inc. and Standard &
Poor's Rating Services*

Joshua M. Rubins
James J. Coster
Aaron Zeisler
SATTERLEE STEPHENS BURKE &
BURKE LLP
230 Park Avenue, 11th Floor
New York, New York 10169
(212) 818-9200
*Counsel to Defendants Moody's
Investors Service, Inc. and Moody's
Investors Service Ltd.*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT ...................................................................................................... 13

I.   Plaintiffs Cannot Establish Predominance Under Rule 23(b)(3) ................... 13

     A.   Individualized Issues of Reliance Predominate .................................... 13

     B.   The Reasonableness of Reliance is an Individualized Issue ................ 21

     C.   Falsity and Loss Causation Are Individualized Issues ........................ 22

II.  A Class Action Is Not Superior to Individual Actions ..................................... 23

III. Plaintiffs Have Not Carried Their Burden As To Any of The Rule 23(a)
     Factors .................................................................................................................. 25

     A.   Plaintiffs Have Not Established That the Class is Sufficiently
          Numerous ...................................................................................................... 25

     B.   Plaintiffs Have Not Identified Common Questions of Liability ........... 27

     C.   Plaintiffs' Claims Are Subject to Unique Defenses and Are Not
          Typical ........................................................................................................... 27

     D.   Plaintiffs Fail the Adequacy Requirement ............................................. 30

CONCLUSION .................................................................................................... 30

## TABLE OF AUTHORITIES

PAGE

Abu Dhabi Com. Bank v. Morgan Stanley & Co.,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009)........................................................................... 26

Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997) .................................................. 13, 23, 25

Ansari v. New York Univ., 179 F.R.D. 112 (S.D.N.Y. 1998)............................................. 25, 27

In re Assicurazioni Generali, S.p.A. Holocaust Ins. Litig.,
    228 F. Supp. 2d 348 (S.D.N.Y. 2002)........................................................................... 25

Bayridge Volvo Am., Inc. v. Volvo Cars of N. Am., Inc.,
    No. 01 Civ. 1890, 2004 WL 1824379 (S.D.N.Y. Aug. 13, 2004) ......................... 26

Bear v. Oglebay, 142 F.R.D. 129 (N.D.W.Va. 1992) ..................................................... 14

Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2d Cir. 1975)........................................ 25

Block v. First Blood Assocs., 125 F.R.D. 39 (S.D.N.Y. 1989) ........................................ 27

CL-Alexanders Laing & Cruickshank v. Goldfeld, 127 F.R.D. 454 (S.D.N.Y. 1989)................ 27

Casale v. Kelly, 257 F.R.D. 396 (S.D.N.Y. 2009)........................................................... 26

Chisolm v. Transouth Fin. Corp., 194 F.R.D. 538 (E.D. Va. 2000) ................................ 14

Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2d Cir. 1995)............................ 25

Crigger v. Fahnestock & Co., 443 F.3d 230 (2d Cir. 2006) ........................................... 21

Curiale v. Peat, Marwick, Mitchell & Co., 214 A.D.2d 16 (1st Dep't 1995)............................. 16

Deen v. New Sch. Univ.,
    No. 05 Civ. 7174, 2008 WL 331366  (S.D.N.Y. Feb. 4, 2008) ............................. 26

Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005)........................................................ 23, 28

Eastman Kodak Co. v. Camarata,
    No. 05 Civ. 6384L, 2006 WL 3538944 (W.D.N.Y. Dec. 6, 2006)................................. 29, 30

Elliott Assocs. v. J. Henry Schroder Bank & Trust, 655 F. Supp. 1281 (S.D.N.Y. 1987) ........... 27

Elliott Assocs., L.P. v. Hayes, 141 F. Supp. 2d 344 (S.D.N.Y. 2000)......................................... 29

Ersler v. Toshiba Am., Inc.,
      No. Cv-07-2304, 2009 WL 454354 (E.D.N.Y. Feb. 24, 2009) .............................. 14

Gary Plastic Packaging Corp. v. Merrill Lynch, 903 F.3d 176 (2d Cir. 1985)........................... 27

Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147 (1982) ................................. 27

Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729 (2d Cir. 1984) ....................... 21

Gunnells v. Healthplan Servs., Inc., 348 F.3d 417 (4th Cir. 2003) .............................. 14

Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219 (2d Cir. 2006)................................... 25

In re Initial Pub. Offering Sec. Litig., 471 F.3d 24 (2d Cir. 2006)................................13

In re Initial Pub. Offering Sec. Litig.,
      No. 21 MC 92,  2008 WL 2050781 (S.D.N.Y. May 13, 2008) ................................... 27

Joseph v. Wiles, 223 F.3d 1155 (10th Cir. 2000) ........................................... 21

Kamerman v. Steinberg, 113 F.R.D. 511 (S.D.N.Y. 1986) ........................................ 30

Klay v. Humana, Inc, 382 F.2d 1241 (11th Cir. 2004)................................. 14

In re Lehman Bros. Sec. and ERISA Litig.,
      No. 08 Civ 6762, 2010 WL 545992 (S.D.N.Y. Feb. 17, 2010) ..................................... 13, 23

Liberty Mut. Inc. Co. v. Tribco Constr. Co., 185 F.R.D. 533 (N.D. Ill. 1999) ......................... 24

In re Livent, Inc. Noteholders Sec. Litig., 211 F.R.D. 219 (S.D.N.Y. 2002) .........................15, 29

Marisol A. by Forbes v. Giuliani, 126 F.3d 372 (2d Cir. 1997) .................................. 26

Matthews v. Schusheim, 42 A.D.2d 217 (2d Dep't 1973)........................................... 16

McLaughlin v. Am. Tobacco Co., 522 F.3d 215 (2d Cir. 2008) ......................................... passim

McManus v. Fleetwood Enters., Inc., 320 F.3d 545 (5th Cir. 2003) .............................. 14

Mowbray v. Waste Mgmt. Holdings Inc., 189 F.R.D. 194 (D. Mass. 1999)............................... 16

In re NYSE Specialists Sec. Litig., 260 F.R.D. 55 (S.D.N.Y. 2009)................................... 19

Primavera Familienstiftung v. Askin, 178 F.R.D. 405 (S.D.N.Y. 1998)..................................... 27

Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876 (2d Cir. 1972)........................................ 28

In re Refco, Inc. Sec. Litig., 609 F. Supp. 2d 304 (S.D.N.Y. 2009)............................................ 20

_Ross v. Bank South, N.A._, 885 F.2d 723 (11th Cir. 1989) ........................................... 21

_Sachs v. Adeli_,
    No. 603930/2003, 2006 N.Y. Misc. LEXIS 2615 (N.Y. Sup. Ct. Aug. 21, 2006) ................ 29

_Sec. Investor Prot. Corp. v. BDO Seidman, LLP_, 222 F.3d 63 (2d Cir. 2000) ........................... 21

_Shores v. Sklar_, 647 F.2d 462 (5th Cir. 1981) ............................................................. 21

_Small v. Lorillard Tobacco Co._, 252 A.D.2d 1, 8 (1st Dep't 1998) ............................................ 14

_Spencer v. The Hartford Fin. Servs. Group, Inc._, 256 F.R.D. 284 (D. Conn. 2009) .................... 14

_In re St. Jude Med., Inc._, 522 F.3d 836 (8th Cir. 2008) ..................................................... 16

_Steinmetz v. Bache & Co._, 71 F.R.D. 202 (S.D.N.Y. 1976) ............................................... 24

_Stoudt v. E.F. Hutton & Co._, 121 F.R.D. 36 (S.D.N.Y. 1988) ............................................... 23, 24

_In re TJX Cos. Retail Sec. Breach Litig._, 246 F.R.D. 389 (D. Mass. 2008) ............................... 16

_Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc._,
    546 F.3d 196 (2d Cir. 2008) ................................................................................... 13, 17

_Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc._,
    No. 05 Civ. 1898, 2006 WL 216887 (S.D.N.Y. Aug. 1, 2006) ....................................... 13, 14

_United States Fid. & Guar. Co. v. Madison Fin. Corp._,
    No. 01 Civ. 3008, 2002 WL 31731020 (S.D.N.Y. Dec. 4, 2002) ........................................ 26

_Westways World Travel, Inc. v. AMR Corp._, 218 F.R.D. 223 (C.D. Cal. 2003) ........................ 14

_Wynn v. AC Rochester_, 273 F.3d 153 (2d Cir. 2001) ........................................................ 13

STATUTES & RULES

17 C.F.R. § 270.2a-7(a)(2) ............................................................................................ 28

Fed. R. Civ. P. 23 ................................................................................................... _passim_

Fed. R. Evid. 702 .................................................................................................... 19

## PRELIMINARY STATEMENT

Plaintiffs seek class certification of a claim for common law fraud, alleging that the credit ratings assigned to the Cheyne SIV constituted misstatements on which each and every investor justifiably relied.  This is precisely the type of claim that this Court and the Second Circuit have consistently refused to certify on the basis that reliance is an individual issue.  The Second Circuit has made clear that reliance requires a showing of "but for" transaction causation.  To prevail on their motion, plaintiffs must come forward with common, class-wide proof that but for the challenged ratings, none of the investors would have invested in the Cheyne SIV.  Clearly, that question can be answered only with evidence from each investor.  ██████████████████ ████████████████████████████████████ ████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████  But even if plaintiffs had common proof of reliance, the law would still permit defendants to rebut plaintiffs' proof with evidence that individual investors did not rely.  Defendants can, and should be permitted to, offer such evidence.  The question is not how plaintiffs intend to prove their case, but how the claims will be litigated, and what evidence will require consideration by the trier of fact to adjudicate them. The issues requiring adjudication in this case quite simply make certification impossible.

The purported class, consisting of a small number of institutional investors that made multi-million dollar investments, is precisely the type of class that courts have refused to certify on grounds of both numerosity and superiority.  Morgan Stanley sold to only 39 potential class members, all of whom are sophisticated institutional investors that invested on average more than $30 million dollars in Cheyne Notes, with senior investors averaging $85 million.  There is

no precedent for the certification of a class of so few investors (including some of the largest banks in the world), with such substantial claims.  Nor are the purported class representatives typical or adequate; to the contrary, each is subject to a host of individual defenses. 

## STATEMENT OF FACTS[1]

The putative class consists of purchasers of three notes issued by a structured investment vehicle (the "Cheyne SIV" or "SIV") managed by Cheyne Capital Management Limited ("Cheyne Capital")—mezzanine capital notes ("MCNs"), medium term notes ("MTNs") and commercial paper ("CP") (together, the "Cheyne Notes").  (SAC ¶ 150.)  Plaintiffs seek to certify a class of all investors who acquired the Cheyne Notes "on the basis of false and misleading representations, including false investment-grade credit ratings and/or other false and misleading information" and "who were damaged thereby."  (Id.)  Nowhere do plaintiffs identify the "other false and misleading information" on which investors allegedly relied.

*The Cheyne Notes differed.*  Plaintiffs seek to include the three different categories of Cheyne Notes in a single putative class, despite substantial differences in the risks, returns and

---

[1] Exhibit numbers refer to the exhibits to the Declaration of James Rouhandeh ("Rouhandeh Decl.") submitted herewith.  Documents cited by bates number are available upon request.

ratings of these notes.  ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  The MCNs, on the other

hand, were highly leveraged in their exposure to those assets (MS_000221699, 708) and were

priced to return up to five times the expected spread on the SIV's assets, but their value would be

wiped out if the portfolio declined by 10%.  Given these very different risk and return profiles,

the CP, MTNs and MCNs received different ratings using different methodologies.  (Compare

MS_000082287, 292 with id. at 293.)  The Cheyne Notes were sold pursuant to different

information memoranda (e.g., Ex. 1; MS_000662696; MS_000646545) and marketing materials

(e.g., MS_000221699; MS_000679884) that were revised at various points in time (e.g.,

MS_000024317).

   *Investors purchased at different times, pursuant to different information.*  The Cheyne

Notes were not issued in a single transaction, but rather were purchased at various times from

2005 to 2007 in individually negotiated and priced transactions.  (Ex. 2; Ex. 3; Ex. 1  at -538,

-641.)  ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  Furthermore, the assets underlying the Cheyne Notes—which

plaintiffs allege were riskier than represented and undermined the ratings of the Cheyne Notes

(SAC ¶¶ 73-74)—changed substantially during the class period.  Indeed, approximately three-

quarters of the assets underlying the SIV in July 2007 were not part of the portfolio at the time of

the first closing in August 2005.  (Compare BNYM00352957 with MS_000597928, 29.)

Information concerning the SIV's assets was frequently disclosed to investors, before and after their purchases.  (MS_000342386-92; MS_000162195-212.) 

Some investors also requested and obtained the specific asset-by-asset contents of the Cheyne portfolio, in order to analyze those assets.  (MS_000598865-86; MS_000476156-160; MS_000342388-92; MS_000016327; MS_000413810-12; MS_000171654, 68-89.)

*The investor base was small and the investments were large.*  Only 31 different investors purchased MCNs from Morgan Stanley.  (Ex. 2.)  Although Morgan Stanley placed Senior Notes with approximately 66 investors, only <u>eight</u> of those investors held Cheyne Notes on or after October 17, 2007, ; all others were paid in full and thus are not members of the class as defined. (Ex. 3.)  In total, Morgan Stanley sold to only 39 potential class members.  The average MCN investment was approximately $20 million and the average Senior Note investment was over $85 million.  (Ex. 2; Ex. 3.)

*Investors' due diligence differed.*  The Cheyne Notes were marketed to and purchased by sophisticated institutional investors.  (Ex. 1 at -538, -555.)  Each investor was instructed to "make its own independent investigation of the financial condition and affairs, and its own appraisal of the creditworthiness, of the Issuer" and required to have "sufficient knowledge and

experience to make a meaningful evaluation" of the risks of its investment.  (Id.) ██████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Investors also differed in their investment processes and portfolio guidelines.  ████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

*Communications with investors were highly individualized.*  Some investors conducted

on-site due diligence of Cheyne, while others participated in road shows with Cheyne and

Morgan Stanley.  (MS_000398638, 39; MS_000273678-79; MS_000202491, 93;

MS_000217903, 04.) ████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████  Investors sent hundreds of e-

mails to Morgan Stanley containing many questions.  (MS_000561645-46; MS_000598834-35;

MS_000599104-06.)  Investors' analyses of the investment varied broadly.[3]  During the class

---

[2] For example, as "a first step of its due diligence," ████████ submitted a due diligence
questionnaire with more than 100 questions on many topics, but did not ask a single question
about ratings.  (Ex. 4.)  Another investor, ██████, developed its own credit model and indicated
that it could not invest without sufficient information to run its model.  (MS_000407817-20;
MS_000213061; MS_000171654-55.)

[3] Different investors asked different questions regarding some, but not all, of the following
issues:  the underlying portfolio of assets (MS_000413810, 11; MS_000233794); the inclusion of
home equity loans in the portfolio (MS_000236811, 20; MS_000423497-98); Cheyne's
experience and track record (MS_000423501); Cheyne's incentive structure and commitment to
the SIV (MS_000305787); Cheyne's financial strength (MS_000259751-52); the administrator

period, more than 50 single-topic and investor-specific memoranda were delivered to individual investors.  (Ex. 5.)

*The information memoranda were the statements of the SIV and not the defendants.* 

In addition to instructing investors to conduct their own diligence, the information memoranda disclosed numerous risk factors, including market and liquidity risks.  (Ex. 1 at -555 to -556.)

*The credit ratings were opinions of the rating agencies.*  The information memoranda made clear that the ratings were the opinions of the ratings agencies and not recommendations. (Id. at -559.)

**The Proposed Class Representatives**

**A.    Abu Dhabi Commercial Bank ("ADCB")**

ADCB is a state-owned, full-service commercial bank,

---

of the SIV (MS_000546493; MS_000234223, 25); the capital structure (MS_000187497-98); the market risks (MS_000244426, 27-28); the modeling that Cheyne would perform to comply with capital tests (MS_000599104, 05.)  And, some, but not all, investors asked about the ratings and the methodology employed by the rating agencies.  (MS_000462324, 25; MS_000430907, 08.)

6

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

██████████████████ At that time, Moody's had published no ratings on the MCNs; it did not do

so until August 2, 2005.  (MS_000082286-2310.) ██████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

Contrary to plaintiffs' allegation that "the quality of the mortgages that secured the

[Cheyne Notes]" was not disclosed until 2007 (SAC ¶ 14), ███████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

    █████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████   The information memoranda also specified that the SIV would not

have a liquidity provider and that liquidity problems were a risk factor.  (Ex. 1 at -555 to -556.)

### B.    SEI Investments Company ("SEI")

██████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████   ███████   ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

      Compounding the problem that neither SEI nor the SEI Funds are class members, these entities have instituted their own individual action in connection with the Cheyne SIV in Pennsylvania state court and have neither withdrawn nor indicated any intent to discontinue that action.  (Summons, <u>SEI Invs. Co. v. Moody's Investors Serv., Inc. et al.</u>, No. 2009-25367 (Pa. Ct. Com. Pl. Aug. 14, 2009); Ex. 9 368:8-13; 375:13-376:4.)  Notably, in that lawsuit, SEI and the SEI Funds assert claims against parties not named here, █████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

██████████████

████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

**C. King      County**

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

11

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████

An expert advisory panel found King County's investment processes so deficient that it advocated "emergency" legislative action to strip King County's personnel of their advisory duties as soon as possible. ████████████████████████████ Finding a "significant gap" between the county's practices and industry standards, the panel cautioned as to King County's use of credit ratings, which "alone [do] not provide sufficient information to evaluate the marginal benefit of each security." ████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

**ARGUMENT**

Plaintiffs bear the burden of showing by a preponderance of the evidence that the class meets all four requirements of Rule 23(a) and fits within one of the categories of Rule 23(b). See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614-15 (1997); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201-02 (2d Cir. 2008). Courts must "assess all of the relevant evidence admitted at the class certification stage [to] resolve factual disputes relevant to each Rule 23 requirement" and to "find[] that whatever underlying facts are relevant to a particular Rule 23 requirement have been established," even where an issue overlaps with the merits. In re Initial Public Offering Sec. Litig., 471 F.3d 24, 41-42 (2d Cir. 2006). Mere allegations are not relevant in determining whether plaintiffs have carried their burden. Teamsters v. Bombardier, Inc., 2006 WL 2161887, at *3 (S.D.N.Y. Aug. 1, 2006).

Common law fraud requires proof of "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which [injured] the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001). A rating is an opinion and is false only if "the ratings agencies did not truly hold th[e] opinion[] at the time they were made public." In re Lehman Bros. Sec. and ERISA Litig., 2010 WL 545992, at *6 (S.D.N.Y. Feb. 17, 2010).

## I. Plaintiffs Cannot Establish Predominance Under Rule 23(b)(3)

### A. Individualized Issues of Reliance Predominate

#### 1. Reliance Is An Individual Issue

Both this Court and the Second Circuit have made clear that "when plaintiffs must individually prove reliance . . . the putative class action fails the predominance requirement."

13

Teamsters, 2006 WL 2161887, at *12; accord McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 223 (2d Cir. 2008).  Here, plaintiffs have elected not to bring a federal securities claim and are not seeking to apply the fraud-on-the-market presumption of reliance.  Instead, their claim is for common law fraud—a claim that "[g]enerally…require[s] proof of reliance by each class member."  Small v. Lorillard Tobacco Co., 252 A.D.2d 1, 8 (1st Dep't 1998); see also Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 434 (4th Cir. 2003) ("Indisputably, . . . fraud require[s] proof of reliance.  . . .  Almost inevitably, establishing [the] elements [of fraud] requires an individualized inquiry."); McManus v. Fleetwood Enters., Inc., 320 F.3d 545, 549 (5th Cir. 2003) (claims in which reliance is an element are poor candidates for class treatment); Bear v. Oglebay, 142 F.R.D. 129, 132 (N.D.W. Va. 1992) (claims of common law fraud are "not generally amenable to class certification due to the requirement of proving individual reliance").[5]

        The evidence in this case reveals precisely the kind of idiosyncratic decision-making that courts have found necessitates individualized proof of reliance.  ████████████

---

[5] Plaintiffs point to a few cases in which courts held that common proof sufficed to establish reliance.  These cases are inapposite—and in some cases were distinguished by McLaughlin itself—because they involve class members who signed a contract or made a payment demonstrating their reliance on the alleged misstatement.  For example, in Klay v. Humana, Inc, defendant HMOs allegedly misrepresented in uniform contracts that they would pay plaintiff doctors certain rates.  382 F.3d 1241, 1259 (11th Cir. 2004).  In Westways World Travel, Inc. v. AMR Corp., plaintiff travel agencies made payments to defendant airlines in connection with allegedly fraudulent bills; the fact that the agencies paid the fraudulent bills was proof that they relied on them.  218 F.R.D. 223, 237-38 (C.D. Cal. 2003).  And in Spencer v. The Hartford Fin. Servs. Group, Inc., the parties to a settlement agreement with insurance companies relied on the dollar figure that they settled for.  256 F.R.D. 284, 302-03 (D. Conn. 2009).  See also Chisolm v. Transouth Fin. Corp., 194 F.R.D. 538, 561 (E.D. Va. 2000) (individuals who made payments to obtain repossessed cars relied on representations in standard form regarding repossession/sale process and on the process complying with their legal rights); Ersler v. Toshiba Am., Inc., 2009 WL 454354, at *5 (E.D.N.Y. Feb. 24, 2009) (finding it reasonable to assume that purchasers of high-end television sets rely on the representation that the bulbs required for those sets to function will not be defective).

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Indeed, the

evidence shows that various investors considered various factors before investing, including the

results of their proprietary credit models, their opinion of Cheyne Capital, their own conclusion

that the SIV's overcollateralization was sufficient, their desire to increase exposure to specific

asset classes or geographic regions, or the SIV's predicted performance under hypothetical

market stresses. ██████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████ Plainly, "[i]ndividualized proof is needed to overcome the

possibility that a member of the purported class purchased . . . for some reason other than" the

ratings. <u>McLaughlin</u>, 522 F.3d at 223.  The dramatic variation in the due diligence conducted by

investors and the information available to them (depending on when they purchased as well as

the questions they asked) further demonstrates the need for individual proof.  <u>See</u> <u>infra</u> Section

I.A.4; <u>McLaughlin</u>, 522 F.3d at 226 ("differences in plaintiffs' knowledge and levels of

awareness" defeat a finding of class-wide reliance); <u>In re Livent, Inc. Noteholders Secs. Litig.</u>,

211 F.R.D. 219, 223-24 (S.D.N.Y. 2002) (finding differences in reliance where some plaintiffs

spent no time investigating, whereas others conducted their own substantial diligence).[6]

---

[6] Further demonstrating the individual nature of reliance is plaintiffs' claim that investors drew
eight specific inferences from the credit ratings.  (SAC ¶ 60(a).)  Individual evidence is
necessary to determine whether, as plaintiffs allege, the ratings were "understood by [<u>all</u>]

The question is not how plaintiffs intend to prove their case, but how the claims will be litigated, and what evidence will require consideration by the trier of fact.  Defendants have the right to introduce as to each investor the type of individualized evidence cited herein.  See In re St. Jude Med., Inc., 522 F.3d 836, 840 (8th Cir. 2008).  Even where plaintiffs present common proof, the law "does not prohibit [defendant] from presenting direct evidence that an individual plaintiff . . . did not rely."  Id.  This ability "to rebut the [plaintiffs'] assertion of reliance, creat[es] precisely the type of 'individualized evidentiary issue [that is] a persuasive reason for denying certification.'"  In re TJX Cos. Retail Sec. Breach Litig., 246 F.R.D. 389, 396 (D. Mass. 2007) (quoting Mowbray v. Waste Mgmt. Holdings, Inc., 189 F.R.D. 194, 198 (D. Mass. 1999) (denying class certification).

Finally, even if plaintiffs could establish that every investor considered the ratings, they must go further and establish that "but for" each rating, every investor would have declined to purchase Cheyne Notes.  McLaughlin, 522 F.3d at 222 (reliance is another word for transaction causation and requires a showing of "but for" causation); see also Matthews v. Schusheim, 42 A.D.2d 217, 221 (2d Dep't 1973).  Plaintiffs cite a case for the proposition that the alleged misstatement need have been a "substantial factor" in investors' decisions, but even this case makes clear plaintiffs must show that the transaction at issue would not have occurred "except for" the alleged misstatement.  Curiale v. Peat, Marwick, Mitchell & Co., 214 A.D.2d 16, 27 (1st Dep't 1995).  ██████████████████████████████████████████

---

investors to represent" that "the Rated Notes were nearly 'risk free,'" "had a low probability of default," or were "as safe, secure and reliable as high quality corporate or government bonds." (Id.) ██████████████████████████████████████████ Each investor's understanding and interpretation of the ratings (assuming it considered them) is critical to the issue of reliance.

16

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ For other

investors, it would be impossible to determine whether a particular investor would have made the

same decision <u>but for</u> the ratings unless one were to know the other factors that motivated that

investor's purchase decision, and the weight that investor gave each such factor.[7]

## 2.    Plaintiffs Fail to Offer Common Proof of Reliance

Plaintiffs' only purported proof of reliance—the opinion of their expert and the testimony

of one Morgan Stanley witness—is neither common nor probative.[8]

First, the opinion of plaintiffs' expert that "[i]n making their decisions to invest in the

Cheyne SIV, investors relied on the Rating Agencies' ratings" (Cox Decl. ¶ 12) lacks any

evidentiary or methodological basis and should be given no weight.  (Grenadier Decl. ¶¶ 4-15)

---

[7] Because the Moody's and S&P ratings were issued at different times, based on distinct
methodologies, each rating must be considered a distinct alleged misrepresentation, as to which
reliance must be established separately.  The evidence as to whether the investors would have
purchased the Cheyne Notes with a split rating, or if only one of the two agencies had offered a
rating, is an individual issue. ██████████████████████████████████████████████████
██████████████████████████████████

[8] In addition to these, plaintiffs attempt to rely on the allegations of their complaint and the ruling
on defendants' motion to dismiss (accepting those allegations as true), neither of which is
evidence that can be used to meet plaintiffs' burden.  <u>See</u> <u>Teamsters,</u> 546 F.3d 196.  And
plaintiffs assert, without any supporting evidence at all, that the ratings were especially important
because "investors had access to very little other information about the Cheyne SIV."  (Pls. Br.
18)  That assertion, however, is demonstrably false (see supra), ██████████████████████
█████████████████████████████████████████  As noted above, many investors
were able to and did perform independent assessments of credit risk.  (Decl. of Steven R.
Grenadier ("Grenadier Decl.") ¶¶ 14-15)

██████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

████████████

    Dr. Cox's opinion as to reliance is reached without the application of any scientific (or otherwise coherent) methodology derived from any discipline. █████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████ To the contrary, those articles state only that ratings "<u>can</u> play a significant role in the investment decisions of investors," and imply that the extent of reliance may depend on individual issues such as the sophistication of particular investors and whether such investors' guidelines prescribe minimum

ratings—questions Dr. Cox has not assessed.  (Grenadier Decl. ¶¶ 6, 7-9.) ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

    Second, plaintiffs' selective quotation from the deposition of one of Morgan Stanley's four 30(b)(6) depositions fails to support their position.  Plaintiffs and Dr. Cox deliberately omit the critical portion of the testimony, which unequivocally supports the variety of investors' considerations, and the consequent need for individual evidence of reliance.  The exchange cited by plaintiffs, with the portion omitted by Dr. Cox underlined, was as follows:

Q.  [D]id [Morgan Stanley and Cheyne] need ratings for the SIV? …

A.  The – it was investors requested ratings on the capital notes.  Obviously, as I said, Morgan Stanley was also placement agent on the structure, so we were gauging the needs of the investors.  And because most of the investors asked for our ratings on these notes, that's why you have to work with the rating agencies to actually try to get these ratings.

---

[9] Indeed, Dr. Cox's testimony fails FRE 702, which allows a qualified expert to testify as to his or her "scientific, technical, or other specialized knowledge" only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702; cf. In re NYSE Specialists Sec. Litig., 260 F.R.D. 55, 65-66 (S.D.N.Y. 2009) (courts must conduct an inquiry into the admissibility of any proffered expert opinions "as far as they bear on the Rule 23 determination") (internal quotations omitted).  Defendants have not filed a Daubert motion so as to avoid burdening the Court with another motion, but request permission to do so if the Court is inclined to rely on Dr. Cox in deciding this motion.

> Q.  What investors asked for ratings?
>
> A.  All investors you talked to, so both the capital note investors and the senior note investors asked for ratings.  <u>But then again, it depends on the guidelines, on the investment guidelines of every single investors.  Some of them ask for ratings. Some of them don't care about ratings.  So it's really, like, various investors asking various rating requirements.</u>

(Ex. E to Cox Decl., 87:19-88:18.)  Neither plaintiffs nor Dr. Cox cite to or attempt to explain the underlined testimony, which, of course, directly undercuts both Dr. Cox's conclusion and plaintiffs' position.  Mr. Moubarak states in the clearest possible terms that "[s]ome [investors] don't care about ratings" and that "it depends … on the investment guidelines of every single investor."  It is equally clear that the reference to "all investors" was intended to indicate investors in each tranche of rated notes, and not every investor in each category.  But, in any event, a statement that one or more investors "asked for ratings" would not establish that the ratings were the "but for" cause of those investors' purchases.

### 3.    The Fraud-Created-the-Market Doctrine Does Not Apply

Perhaps recognizing their inability to come forward with evidence of class-wide reliance, plaintiffs assert that reliance should be presumed based on a fraud-created-the-market theory, arguing that the Cheyne Notes could not have been sold without the allegedly false ratings.[10] (Pls. Br. 18-21.)  As a matter of law, the fraud-created-the-market presumption does not apply here.  It has not been adopted by the Second Circuit or any district court therein.  <u>See</u> <u>In re Refco, Inc. Sec. Litig.</u>, 609 F. Supp. 2d 304, 318 (S.D.N.Y. 2009) ("This Circuit has never adopted this presumption and it has been criticized by at least two other Courts of Appeals.").  Even in those Circuits that do apply the presumption, it has been applied only to claims under

---

[10] Notably, plaintiffs concede that the market for Cheyne Notes was inefficient (Pls. Br. 19), and therefore that the fraud-on-the-market theory is inapplicable here.

Rule 10b-5 and not to common law fraud claims.  Joseph v. Wiles, 223 F.3d 1155 (10th Cir.

2000); Shores v. Sklar, 647 F.2d 462 (5th Cir. 1981).  Because the Second Circuit does not apply

the fraud-on-the market presumption to common law fraud claims, Sec. Investor Prot. Corp. v.

BDO Seidman, LLP, 222 F.3d 63, 73 (2d Cir. 2000), there is no reason to believe it would apply

the related fraud-created-the-market presumption to such claims.[11]

   **B.      The Reasonableness of Reliance is an Individualized Issue**

        Even if plaintiffs could establish through common evidence that every investor relied on

the ratings, individual evidence would still be necessary to establish that each investor's reliance

was justifiable, again causing individual issues to predominate over common issues.  As an

initial matter, "'[w]here sophisticated businessmen engaged in major transactions enjoy access to

critical information but fail to take advantage of the access, New York courts are particularly

disinclined to entertain claims of justifiable reliance.'"  Crigger v. Fahnestock & Co., 443 F.3d

230, 235 (2d Cir. 2006) (quoting Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729

(2d Cir. 1984)).  The information memoranda made clear that each investor should "make its

own independent investigation of the financial condition and affairs, and its own appraisal of the

creditworthiness, of the Issuer."  (Ex. 1 at -555.)

---

[11] Moreover, the fraud-created-the-market has been applied only where the securities would have
been unmarketable or virtually worthless absent the alleged fraud.  See Wiles, 223 F.3d at 1164-
65; Ross v. Bank South, N.A., 885 F.2d 723, 729 (11th Cir. 1989).  Plaintiffs rely on Dr. Cox's
testimony in this respect, but as more fully set forth in the attached declaration of Dr. Steven R.
Grenadier, Dr. Cox's conclusion that different ratings would "likely" have made the SIV
infeasible is flawed in several respects that render his conclusions invalid.  Among those flaws
are that Dr. Cox's analysis (i) holds constant the rate of return on the SIV's assets, contrary to
plaintiffs' allegation that those assets were riskier than represented (and therefore should have
returned more); (ii) ignores the possibility that the SIV could have invested in assets with higher
returns or could have altered its liability structure and/or operating costs to remain profitable; and
(iii) applies the wrong spreads to the Senior Notes.  (Grenadier Decl. ¶¶ 16-18.)

21

Determining whether reliance by any particular investor is justifiable will require evidence as to a host of individual questions including the extent of the investor's due diligence and analysis, the investor's guidelines, the sophistication of the investor, and the information available to the investor (including disclosures concerning the underlying assets).[12]  Class discovery has made clear that there is substantial variation among the investors. ████████

██████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

█████████████████████████████████ The reasonableness of reliance will present individualized issues because investors had different knowledge and performed different levels of diligence.  McLaughlin, 522 F.3d at 223.  Given this heterogeneity, investors should not be bound by a determination as to the reasonableness of the class representatives' alleged reliance.

### C.    Falsity and Loss Causation Are Individualized Issues

Plaintiffs allege that the SIV made "risky investments that did not legitimately support [its] high ratings" (SAC ¶ 11) and that "[t]he SIV's assets undermined its high credit ratings" (SAC ¶ 74).  Yet there is no question that those assets changed substantially over time.  Accordingly, the alleged falsity of the ratings as to investors who purchased in 2007 would by no

---

[12] ████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████

means establish the falsity of the ratings for investors that purchased two years earlier.  (Ex. 2; Ex. 3) (showing dates of purchase); (BNYM003529572; MS_000597928-29) (showing changes in composition of asset portfolio.)  Likewise, because ratings are opinions, assessing falsity will require inquiry into the knowledge and beliefs at various points in time of the relevant rating agency personnel responsible for the ratings.  In re Lehman Bros., 2010 WL 545992, at *6.

Loss causation is similarly not subject to common proof because the first step of a loss causation analysis is whether the alleged misrepresentation caused each investor to invest—a question as to which investors differed.  McLaughlin, 522 F.3d at 223.  Moreover, an alleged misstatement cannot have caused an investor's losses if that investor knew the information before incurring any loss.  Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 345 (2005).  This requires individualized inquiry into the knowledge of each investor.

## II.     A Class Action Is Not Superior to Individual Actions

Rule 23(b)(3) requires the Court to find that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  As the Supreme Court has recognized, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997) (internal quotations omitted).  "When the size of each claim is significant, and each proposed class member therefore possesses the ability to assert an individual claim, the goal of obtaining redress can be accomplished without the use of the class action device."  Stoudt v. E.F. Hutton & Co., 121 F.R.D. 36, 38 (S.D.N.Y. 1988).  In Stoudt, the court denied certification on superiority grounds where each class member had claims in the tens of thousands of dollars.  Id.; see also

23

Liberty Mut. Ins. Co. v. Tribco Constr. Co., 185 F.R.D. 533, 541-42 (N.D. Ill. 1999).  Indeed, certification is improper on both superiority and numerosity grounds where, as here, the class consists of sophisticated investors with substantial claims that have ample means to bring or join an action.  Stoudt, 121 F.R.D. at 38; cases cited infra pp. 26-27.

Rule 23 also directs courts to consider "the class members' interests in individually controlling the prosecution or defense of separate actions . . . [and] the extent and nature of any litigation concerning the controversy already begun by or against class members."  Rule 23(b)(3)(A)-(B).  Here, two investors have filed other lawsuits with respect to their Cheyne Notes, and have tailored these litigations to suit their own, distinct legal theories.  See Steinmetz v. Bache & Co., 71 F.R.D. 202, 205 (S.D.N.Y. 1976) (refusing to certify class where class members had already filed related individual actions, "especially since these actions, except for one, are not grounded upon plaintiffs' theory").  SEI and the SEI Funds have filed a lawsuit in Pennsylvania state court in which they named not only the defendants here, but also Merrill Lynch, ███████████████████████████  In addition, Calpers, the California pension fund, filed its own action, suing only the rating agencies and combining claims relating to its purchase of Cheyne Notes with claims regarding other SIV notes.  Complaint, Cal. Pub. Emp. Ret. Sys. v. Moody's Corp., CGC No.-09-490241 (filed July 9,2009, Superior Court, State of California, County of San Francisco).  These cases—adjusted to fit the specific theories of individual investors—demonstrate why these claims are best left to individual investors.

The superiority requirement is also not met because plaintiffs cannot show that non-U.S. class members will be precluded from suing in their home countries if they are dissatisfied with the results of this suit. ██████████████████████████  (Ex. 2,

24

MS_000102482-83.)  Pursuant to the Second Circuit's decision in <u>Bersch v. Drexel Firestone, Inc.</u>, 519 F.2d 974, 996-97 (2d Cir. 1975), plaintiffs must show that foreign purchasers will be precluded from suing in their home countries if a class judgment is entered.  Courts in this district, however, have held that many of these investors' home countries permit subsequent suits.  <u>See, e.g.</u>, <u>Ansari v. New York Univ.</u>, 179 F.R.D. 112, 116-17 (S.D.N.Y. 1998) (denying certification of class with members from 11 countries); <u>In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.</u>, 228 F. Supp. 2d 348, 364 (S.D.N.Y. 2002).[13]  Because they cannot show that a judgment would be preclusive as to foreign investors, plaintiffs fail the superiority test.

**III.   Plaintiffs Have Not Carried Their Burden As To Any of The Rule 23(a) Factors**

   **A.   Plaintiffs Have Not Established That the Class is Sufficiently Numerous**

Under Rule 23(a)(1), the party seeking certification must prove that the proposed class is so numerous as to make joinder impracticable.  <u>See</u> <u>Amchem</u>, 521 U.S. at 614.  Courts in the Second Circuit have generally found that there is a rebuttable presumption of numerosity where the putative class exceeds 40 members.  <u>See</u> <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995).  None of the three categories of Cheyne noteholders contains 40 or more members.  To establish numerosity, plaintiffs offer a lone exhibit, not authenticated or otherwise explained, that purports to identify the number of <u>sales</u> of Cheyne Notes, not the number of <u>investors</u> in those notes.  (Pl. Ex. 1.)  Moreover, that document does not even demonstrate the existence of 40 or more sales of MCNs or CP with a potential loss, instead revealing 32 MCN sales and 36 CP sales with maturity dates on or after the October 17, 2007 default.  Although the

---

[13] Before the 2003 amendments to Rule 23 and the decision in <u>Heerwagen v. Clear Channel Commc'ns</u>, 435 F.3d 219 (2d Cir. 2006), a few courts certified classes comprised of foreign plaintiffs despite evidence that any judgment would not preclude future litigation in foreign jurisdictions.  Such cases are now inconsistent with <u>Heerwagen's</u> requirement that plaintiffs demonstrate Rule 23 requirements by a preponderance of the evidence.

document purports to identify 64 sales of MTNs with maturity dates on or after the default, it is highly likely that many of these sales—as well as the 36 identified CP sales—were made to the same investors.  Indeed, Morgan Stanley's records demonstrate an average of over seven sales to each Senior Note investor, implying that there were as few as <u>five</u> CP and <u>nine</u> MTN investors who were not paid in full.  (Ex. 3.)  Plaintiffs' evidence of numerosity is thus sorely deficient.

Nor can plaintiffs aggregate investors in all three securities to establish numerosity.  As this Court has held, purchasers of one security lack standing to sue on behalf of purchasers of a different security.  <u>Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc., et al.</u>, 651 F. Supp. 2d 155, 174-75 (S.D.N.Y. 2009).[14]  Therefore, subclasses—which must independently meet the numerosity requirement—would be necessary to ensure the representatives' adequacy. <u>United States Fid. & Guar. Co. v. Madison Fin. Corp.</u>, 2002 WL 31731020, at *5 (S.D.N.Y. Dec. 4, 2002) (numerosity applies to subclasses).

Further, even if the class exceeds 40 members, where a small class of sophisticated parties possesses substantial claims, joinder is practicable and the presumption of numerosity is rebutted.  <u>See Deen v. New Sch. Univ.</u>, 2008 WL 331366, at *3 (S.D.N.Y. Feb. 4, 2008); <u>Bayridge Volvo Am., Inc. v. Volvo Cars of N. Am., Inc.</u>, 2004 WL 1824379, at *2-3 (S.D.N.Y.

---

[14] Although the Court noted, without deciding, the question whether purchasers of different securities might be adequate to represent each other, this would require an identical course of conduct not present here.  <u>Id.</u>  The notes at issue (1) were sold pursuant to different information memoranda and marketing materials; (2) differed in their risks and returns; (3) differed in their exposure to the underlying assets; (4) received different credit ratings; (5) were rated using different methodologies; and (6) had competing payment priorities.  Moreover, in its original complaint, plaintiff ADCB revealed a conflict between MCN and Senior Note investors, alleging that among the reasons for the collapse of the SIV was that "senior debt investors in the Cheyne SIV refused to provide liquidity."  (Orig. Compl. ¶ 21.)  Given these substantial differences, subclasses will be required.  <u>See Marisol A. by Forbes v. Giuliani</u>, 126 F.3d 372, 378-79 (2d Cir. 1997); <u>Casale v. Kelly</u>, 257 F.R.D. 396, 408-09 (S.D.N.Y. 2009).

Aug. 13, 2004); <u>Primavera Famielienstiftung v. Askin</u>, 178 F.R.D. 405, 410-11 (S.D.N.Y. 1998);

<u>Ansari v. New York Univ.</u>, 179 F.R.D. 112, 116 (S.D.N.Y. 1998); <u>CL-Alexanders Laing &</u>

<u>Cruickshank v. Goldfeld</u>, 127 F.R.D. 454, 457-58 (S.D.N.Y. 1989); <u>Block v. First Blood</u>

<u>Assocs.</u>, 125 F.R.D. 39, 42-43 (S.D.N.Y. 1989); <u>Elliott Assocs. v. J. Henry Schroder Bank &</u>

<u>Trust,</u> 655 F. Supp. 1281, 1285 (S.D.N.Y. 1987).

**B.     Plaintiffs Have Not Identified Common Questions of Liability**

Rule 23(a)(2) requires that plaintiffs provide a "specific presentation identifying the

questions of law or fact that were common."  <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S.

147, 158 (1982).  Plaintiffs' complaint identifies only one common liability question: "whether

defendants falsely misrepresented the ratings of the . . . SIV and the Notes issued therefrom."

(SAC ¶ 154.)  But even this issue is not common, because the proof relating to the "falsity" of

the ratings depends on the timing of each investors' purchase.  Plaintiffs allege that the ratings

were disseminated on a daily basis (SAC ¶ 61), such that their falsity depends on the facts and

circumstances present on each date a class member invested.  On each such date, the portfolio of

assets underlying the SIV—which plaintiffs say "undermined" the ratings (<u>id.</u> ¶ 74)—differed.

Indeed, three-quarters of the assets in the portfolio in July 2007 were not there in August 2005.

**C.     Plaintiffs' Claims Are Subject to Unique Defenses and Are Not Typical**

Pursuant to Fed. R. Civ. P. 23(a)(3), a representative is atypical if it will be preoccupied

with unique defenses, <u>Gary Plastic Packaging Corp. v. Merrill Lynch</u>, 903 F.2d 176, 180 (2d Cir.

1990), or if it is not a member of the class it seeks to represent, <u>Falcon</u>, 457 U.S. at 156; <u>In re</u>

<u>IPO Sec. Litig.</u>, 2008 WL 2050781, at *2-3 (S.D.N.Y. May 13, 2008).

███████████████████████████████████

███████████████████████████████████





Finally, all three plaintiffs are subject to the unique defense that they have no claim against Morgan Stanley.  To the extent plaintiffs argue that Morgan Stanley allegedly participated in the process that produced the allegedly false ratings, this is insufficient to establish direct fraud.  See Eastman Kodak Co. v. Camarata, 2006 WL 3538944, at *12-13 (W.D.N.Y. Dec. 6, 2006) (assistance in the making of a misstatement does not establish liability for direct fraud); Sachs v. Adeli, 2006 N.Y. Misc. LEXIS 2615, at *27 (N.Y. Sup. Ct. 2006).[17]

███████████████████████████████████████████████████████████████

███████████████████████████████████████████  Therefore, they cannot establish a misstatement by Morgan Stanley to them.  Eastman, 2006 WL 3538944, at *12-13.

███████████████████████████████████████████████████████████

[16] See Livent, 211 F.R.D. at 224 (plaintiff that did not do adequate due diligence atypical).

[17] Although this Court previously applied the group pleading doctrine to allow plaintiffs' claims against Morgan Stanley to proceed, that doctrine applies only at the motion to dismiss stage, Elliott Assocs., L.P. v. Hayes, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000), and was based on the now discredited allegation that Morgan Stanley provided the ratings to the class representatives. Moreover, the aiding and abetting claim has been dismissed with prejudice.

██████████████████████████████████████████

██████████████████████████████████████████

### D.       Plaintiffs Fail the Adequacy Requirement

Pursuant to Fed. R. Civ. P. 23(a)(4), the Court must find that "the representative parties will fairly and adequately protect the interests of the class."  ADCB is inadequate because it has expressly reserved the right to withdraw from this case.  All class representatives have submitted declarations stating that they will "continue to supervise, monitor and participate in the ongoing prosecution of this action," but ADCB is the only one of the three class representatives that has qualified and limited that commitment by indicating that it is made "[a]s of this date, and subject to ADCB's Board of Directors' overriding right to govern and control ADCB."  (Copleston Decl. ¶ 5.)  If ADCB cannot commit to remaining in this case, it cannot possibly be an adequate class representative.  Moreover, ADCB is inadequate because it does not possess any evidence with respect to its decision to invest in Cheyne Notes.  ████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████  ADCB cannot possibly protect the interests of absent MCN investors if it does not possess the evidence to succeed on its own claim.  SEI is also inadequate because it has brought a separate lawsuit against these same defendants and others in connection with its Cheyne investment.  Kamerman v. Steinberg, 113 F.R.D. 511, 516 (S.D.N.Y. 1986).

### CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for class certification should be denied.

Dated: March 12, 2010
      New York, NY

DAVIS POLK & WARDWELL LLP

By: _____

James P. Rouhandeh
james.rouhandeh@davispolk.com
Antonio J. Perez-Marques
antonio.perez@davispolk.com
Russell Capone
russell.capone@davispolk.com

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Counsel to Defendants Morgan Stanley &
Co. Incorporated and Morgan Stanley &
Co. International Limited*

CAHILL GORDON & REINDEL LLP

By: _____

Floyd Abrams
fabrams@cahill.com
Dean Ringel
dringel@cahill.com
Andrea R. Butler
abutler@cahill.com
Jason M. Hall
jhall@cahill.com

80 Pine Street
New York, New York  10005
(212) 701-3000

*Counsel to Defendants The McGraw-Hill
Companies, Inc. and Standard & Poor's
Ratings Services[18]*

---

[18] Since January 1, 2009, Standard & Poor's has been a business unit of "Standard & Poor's Financial Services LLC," a wholly owned subsidiary of defendant McGraw-Hill.  It was previously an unincorporated division of McGraw-Hill.

31

Dated: March 12, 2010
      New York, NY

                       DAVIS POLK & WARDWELL LLP

                       By: _____

                            James P. Rouhandeh
                            james.rouhandeh@davispolk.com
                            Antonio J. Perez-Marques
                            antonio.perez@davispolk.com
                            Russell Capone
                            russell.capone@davispolk.com

                       450 Lexington Avenue
                       New York, New York 10017
                       (212) 450-4000

                       *Counsel to Defendants Morgan Stanley &*
                       *Co. Incorporated and Morgan Stanley &*
                       *Co. International Limited*

                       CAHILL GORDON & REINDEL LLP

                       By: _____

                            Floyd Abrams
                            fabrams@cahill.com
                            Dean Ringel
                            dringel@cahill.com
                            Andrea R. Butler
                            abutler@cahill.com
                            Jason M. Hall
                            jhall@cahill.com

                       80 Pine Street
                       New York, New York  10005
                       (212) 701-3000

                       *Counsel to Defendants The McGraw-Hill*
                       *Companies, Inc. and Standard & Poor's*
                       *Ratings Services*[18]

---

[18] Since January 1, 2009, Standard & Poor's has been a business unit of "Standard & Poor's Financial Services LLC," a wholly owned subsidiary of defendant McGraw-Hill.  It was previously an unincorporated division of McGraw-Hill.

SATTERLEE STEPHENS
BURKE & BURKE LLP

By: _____
Joshua M. Rubins
jrubins@ssbb.com
James J..Coster
jcoster@ssbb.com
Aaron Zeisler
azeisler@ssbb.com

230 Park Avenue
11th Floor
New York, New York  10169
(212) 818-9200

*Counsel to Defendants Moody's Investors
Service, Inc. and Moody's Investors
Service Ltd.*

32