UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x

ABU DHABI COMMERCIAL BANK, et al.,
Individually and On Behalf of All Others
Similarly Situated,

                         Plaintiffs,

      vs.

MORGAN STANLEY & CO.
INCORPORATED, et al.,

                     Defendants.

---------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:08-cv-07508

CLASS ACTION

REPLY MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

[REDACTED]

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................1

II.     ARGUMENT ..................................................................................................2

        A.      Issues Subject to Common Proof Predominate.........................................2

                1.      Plaintiffs Have Established that Class-Wide Reliance Can Be
                        Proven Through Common Evidence.......................................................3

                2.      Even if the Court Finds that the Reliance Inquiry Is More
                        Individualized, Common Issues Still Predominate..................................10

        B.      A Class Action Is the Superior Method of Adjudicating This Case .....................11

        C.      The Class Satisfies the Requirements of Fed. R. Civ. P. 23(a)...........................13

III.    CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

Page

## CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009)......................................................................13, 15

*Ballan v. Wilfred Am. Educa. Corp.*,
    No. 88 C 3921, 1990 U.S. Dist. LEXIS 16602
    (E.D.N.Y. Nov. 20, 1990).............................................................................................10

*Bersch v. Drexel Firestone, Inc.*,
    519 F.2d 974 (2d Cir. 1975).........................................................................................12

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) .........................................................................................11

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)...........................................................................................13

*Cromer Fin. Ltd. v. Berger*,
    205 F.R.D. 113 (S.D.N.Y. 2001) .............................................................................12, 13

*DeMarco v. Nat'l Collector's Mint, Inc.*,
    229 F.R.D. 73 (S.D.N.Y. 2005) ...................................................................................13

*Fogarazzo v. Lehman Bros.*,
    263 F.R.D. 90 (S.D.N.Y. 2009) ...................................................................3, 9, 11, 13

*Heerwagen v. Clear Channel Commc'ns*,
    435 F.3d 219 (2d Cir. 2006).....................................................................................2, 3, 10

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    No. 98 CIV. 4318 (HB), 2000 WL 1357509
    (S.D.N.Y. Sept. 20, 2000)............................................................................................13

*In re HealthSouth Corp. Sec. Litig.*,
    261 F.R.D. 616 (N.D. Ala. 2009)..............................................................................3, 4

*In re Initial Pub. Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ...................................................................................10

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 Civ. 1262 (RWS), 1998 U.S. Dist. LEXIS 1199
    (S.D.N.Y. Feb. 4, 1998)...............................................................................................13

**Page**

*In re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)...........................................................................11

*In re St. Jude Med., Inc.*,
    522 F.3d 836 (8th Cir. 2008) .......................................................................11

*In re TJX Cos. Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007)....................................................................11

*In re U.S. Fin. Sec. Litig.*,
    69 F.R.D. 24 (S.D. Cal. 1975) ......................................................................13

*In re Visa Check/Master Money Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)...........................................................................9

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................13

*King v. Club Med, Inc.*,
    76 A.D.2d 123, 430 N.Y.S.2d 65
    (N.Y. App. Div. 1980) ...................................................................................9

*LaSala v. Needham & Co., Inc.*,
    No. 04-Civ-9237(SAS), 2006 WL 452024
    (S.D.N.Y. Feb. 24, 2006) .............................................................................14

*Matthews v. Schusheim*,
    42 A.D.2d 217, 346 N.Y.S. 386
    (N.Y. App. Div. 1973),
    *aff'd*, 35 N.Y.2d 686, 361 N.Y.S.2d 160 (1974)........................................8, 9

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008)...........................................................1, 3, 10, 11

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)..............................................................2, 3, 10

*Mowbray v. Waste Mgmt. Holdings, Inc.*,
    189 F.R.D. 194 (D. Mass. 1999),
    *aff'd*, 208 F.3d 288 (1st Cir. 2000) ..............................................................11

**Page**

**RULES**

Federal Rules of Civil Procedure
     Rule 23 ....................................................................................................2, 10, 11, 15
     Rule 23(a)........................................................................................................13
     Rule 23(c)(4)....................................................................................................11
     Rule 30(b)(6)....................................................................................................9

516234_1

## I.   INTRODUCTION

The putative class should be certified because defendants perpetrated their financial fraud on numerous persons through ***uniform misrepresentations*** and because, in the Second Circuit, financial frauds – unlike consumer frauds – are better candidates for class treatment.  *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 225 n.7 (2d Cir. 2008) ("payment may constitute circumstantial proof of reliance upon a financial representation" because "a financial transaction does not usually implicate the same type or degree of personal idiosyncratic choice as does a consumer purchase").  Plaintiffs have proposed several suitable methodologies that demonstrate that reliance on defendants' uniform misrepresentations can be proven class-wide.  Compelling evidence also establishes that the Cheyne SIV's false ratings were a substantial factor in each investor's decision to purchase the Rated Notes.[1] Plaintiffs have shown that: (1) because the rating and yield were inextricably intertwined, investors necessarily relied on the false ratings; (2) the Rated Notes would not have existed but for the false ratings; (3) the SIV would not have been economically viable without the false ratings; (4) the Rated Notes would not have been marketable without the false ratings; (5) investors had to rely on the false ratings because there was insufficient data to accurately assess the risk of investing in the Cheyne SIV; and (6) defendants in this case admit that all investors needed the ratings.  Any one of these methods, by itself, is enough to satisfy the relevant standards.  When viewed together, the evidence is overwhelming that common issues predominate.

The crux of defendants' opposition is that because investors may have had different levels of sophistication, investment guidelines, and due diligence inquiries, reliance must be proven on an investor-by-investor basis.  However, as Raymond W. McDaniel, CEO of defendant Moody's,

---

[1]     All capitalized terms herein have the same meaning as in the Second Amended Complaint for Common Law Fraud, Breach of Contract and Aiding and Abetting.

explained in an April 15, 2009 statement to the SEC, such differences, even if they exist, do not matter in the context of structured finance investments such as the Cheyne SIV: "In the absence of sufficient data, investors are *unable to conduct their own analysis* and develop their own independent views about potential or existing investments." Cox Reply Decl., Ex. 1 at 9. Instead, investors had to rely on the ratings.

Plaintiffs' evidence and defendants' admissions make clear that reliance can be proven on a class-wide basis. Moreover, plaintiffs have satisfied each of the other elements of Rule 23. Accordingly, the Court should certify a class of all persons or entities who acquired Cheyne Rated Notes during the period October 2004 to October 2007 and who were damaged thereby, and appoint plaintiffs as class representatives.

## II.    ARGUMENT

### A.    Issues Subject to Common Proof Predominate

It is well-established Second Circuit law that "[c]lass-wide issues predominate if resolution of *some* of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are *more substantial* than the issues subject only to individualized proof."[2] *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (Sotomayor, J.); *see Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006) ("[A] plaintiff must show that those issues in the proposed action that are subject to generalized proof *outweigh* those issues that are subject to individualized proof.").

Yet, in opposition to class certification, defendants insist that the question of reliance "can be answered *only* with evidence from each investor," which "quite simply make[s] certification

---

[2]    All emphasis is added and citations are omitted, unless otherwise noted.

impossible."  Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class
Certification ("Opp.") at 1, 17-22.  Defendants are wrong.  Plaintiffs have put forth ample evidence
establishing that reliance can be proven on a class-wide basis.  Even if the Court is persuaded that a
more individualized inquiry of reliance is advisable, the predominance requirement is nevertheless
satisfied because this lone issue is not "more substantial" (*Moore*, 306 F.3d at 1252), and therefore,
does not "outweigh" (*Heerwagen*, 435 F.3d at 226), all of the other issues in the case subject to
common proof.

> **1.      Plaintiffs Have Established that Class-Wide Reliance Can Be
> Proven Through Common Evidence**

In *McLaughlin*, the Second Circuit held that class-wide reliance may be established through
"common proof."  522 F.3d at 225.  As this Court acknowledged in *Fogarazzo v. Lehman Bros.*, to
meet their burden, plaintiffs "need not show definitively that they will be able to demonstrate [each
element of their claim]; ***rather, they must demonstrate that the element . . . may be proven class-
wide***, which may be shown by proposing a suitable methodology." *Fogarazzo v. Lehman Bros.*, 263
F.R.D. 90, 106-07 (S.D.N.Y. 2009).  Plaintiffs have exceeded this standard by providing suitable
methodologies for class-wide proof of reliance ***and*** considerable common proof establishing class-
wide reliance.

***First***, because each Rated Note's price or "yield" was directly tied to its rating, investors who
purchased the Rated Notes necessarily relied on the ratings.  It is axiomatic ███████████████
███████████████ – that all investors rely on the yield when purchasing a bond.  *See* Grenadier Tr. at
63:2-7 (attached hereto as Ex. 1).  It is also a truism that the rating assigned to a security impacts the
yield: the lower the rating, the higher the yield.  *See, e.g.*, Ex. 2 hereto at ████████████████
████████████████████████████████████████████; Cox Reply
Decl., ¶9; *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 637 (N.D. Ala. 2009)

- 3 -

("HealthSouth's financial condition impacted the credit ratings for the notes, which then affected the

price."). ███████████████████████████████████ *See* Ex. 1 at 119:15-19, 120:12-23.

Because the ratings were inextricably linked to the price of the Rated Notes, investors necessarily

relied on the ratings.  *See* Cox Reply Decl., ¶9.

  **Second**, the Rated Notes could never have been issued without the fraudulent ratings.  *See*

Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Mot.") at 20-21.

Had the ratings on the Senior Notes been lower, the Cheyne SIV would have breached its operating

covenants.  *Id.*  That breach would have required the SIV to enter a "Restricted Investments" phase,

which would have prevented the SIV from purchasing assets.  Mot., Ex. 2 at 92.  Without the ability

to purchase assets, the Cheyne SIV could not have issued liabilities, such as the Rated Notes.  *Id.*

Defendants and their expert do not dispute or even address these facts.  Because the Rated Notes

would not have existed without the assigned ratings, plaintiffs necessarily relied on the ratings when

purchasing the Rated Notes.

  This is precisely what the court held in *HealthSouth*, 261 F.R.D. at 643, which defendants

also fail to address.  In *HealthSouth*, the court certified a class of bond purchasers, finding class-wide

reliance because plaintiffs put forth evidence HealthSouth "would have been in default of its

financial covenants" and "the bonds [at issue] could not have been issued" had the defendants not

defrauded investors.  *Id*.  Here, too, plaintiffs have submitted uncontroverted evidence that the Rated

Notes would not have been issued if the ratings were lower because the Cheyne SIV would have

breached its operating covenants.

  **Third**, plaintiffs' expert, former SEC Chairman Dr. Charles Cox, performed an economic

analysis to determine whether the Cheyne SIV would have been economically viable without the

assigned ratings.  *See* Cox Decl., ¶¶19-22 & Ex. K.  Based on this analysis, Dr. Cox concluded that,

without the assigned ratings, "the Cheyne SIV would have been uneconomic and unmarketable to investors." Cox Decl., ¶¶21-22 & Ex. K. Dr. Cox's analysis establishes that reliance can be proven on a class-wide basis, by showing that the SIV could not have existed without the assigned ratings.

Although defendants' expert, Prof. Grenadier, criticizes Dr. Cox, ████████████████

████████████████████████████████████████████████████████

████ *See* Grenadier Decl., ¶¶16-18; *see also* Ex. 1 at 34:25-39:7. In fact,

████████████████████████████████████████████████████████

████████████████████████████ *See* Ex. 1 at 35:22-36:16.

Prof. Grenadier's unsupported criticisms are simply invalid. Dr. Cox's analysis is a suitable methodology for proving class-wide reliance through common proof. Cox Reply Decl., ¶10; Mordecai Decl., ¶15.

***Fourth***, defendants' own internal documents and a study of all other rated SIVs establish that the Rated Notes would not have been marketable without the assigned ratings. For example, ████████

████████████████████████████████████████████████████████

Cox Reply Decl., Ex. 7 a ████████████ Likewise, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Ex. 3 hereto a ████████████ Dr.

Cox's study of all rated SIVs confirms that there was no market for Senior Notes initially rated lower

than A-1+/P-1 or AAA/Aaa. Cox Decl., Ex. I & n.3; Cox Reply Decl., ¶13. Dr. Cox's study found

that *not a single SIV* issued Senior Notes with an initial rating that was lower than the highest

available rating. *Id.* Defendants did not dispute the results of this study, and their expert presented

no evidence or opinion that a market for such lower rated Senior Notes did exist.[3] Ex. 1 at 122:18-

124:18, 125:12-126:1.

      *Fifth*, plaintiffs have put forth additional common evidence showing that investors relied on

the ratings because there was insufficient data for investors to conduct their own analyses and

develop their own independent views about structured finance products, such as the Rated Notes.

*See* Mot. at 18; Cox Decl., ¶17; Cox Reply Decl., ¶¶5-8; Mordecai Decl., ¶¶8-9, 12. Moody's own

CEO and President, McDaniel, admitted in his April 15, 2009 statement to the SEC that "*in the

structured finance market, there is insufficient public information*" *for investors to* "*reasonably

develop their own informed [investment] opinions*." Cox Reply Decl., Ex. 1 at 9. Accordingly,

McDaniel concluded that "[i]n the absence of sufficient data, investors are unable to conduct their

own analysis and develop their own independent views about potential or existing investments." *Id.*

This devastating admission undermines completely defendants' principal argument that reliance

cannot be proven class-wide because the Cheyne SIV investors may have had various levels of

sophistication and engaged in different investment processes. *See, e.g.*, Opp. at 22. Further eroding

defendants' position, an ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

---

[3]    This is hardly surprising, since money market funds and other investors whose investment
guidelines required top ratings, including proposed class representatives King County and SEI,
comprise the vast majority of Senior Note purchasers in this litigation. *See* Mordecai Decl., ¶15; *see
also* Smigiel Tr. at 34:10-21, 84:25-85:5; Guy Tr. at 65:2-7.

█████████████████████████████████████████████████████████

████████     Cox Reply Decl., Ex. 2 at ████████████  *see also* Cox Decl., ¶¶16-18; Cox Reply

Decl., ¶7; Mordecai Decl., ¶8.

Similarly, JP Morgan issued a report dated September 6, 2007, explaining that SIV investors

necessarily "***rely heavily on the rating agencies***" because "the rating agencies have access to a wider

variety and more frequent supply of program information than do investors."  Cox Reply Decl., Ex.

3 at MS_000120365; *see* Cox Reply Decl., ¶8.  Regardless of any differences among them, Cheyne

SIV investors were unable to independently evaluate the validity of the ratings assigned to the Rated

Notes and had to "rely heavily" on the ratings themselves when making their investment decisions.

*Id.*; Mordecai Decl., ¶9.

Relying on two inapplicable academic surveys and so-called "Investor Memoranda" cherry-

picked for him by defendants, Prof. Grenadier opines that conclusions regarding class-wide reliance

cannot be drawn from common evidence because "there exists variation in the nature and degree of

investors' consideration of credit ratings."  *See* Grenadier Decl., ¶7.  As plaintiffs' rebuttal expert Dr.

Mordecai, an economist and practitioner with more than 25 years of experience in financial markets,

including extensive work with SIVs, explains in his Declaration, the information conveyed in the

"Investor Memoranda" Prof. Grenadier relies on was woefully insufficient to adequately assess the

risk in the Cheyne notes.  Mordecai Decl., Ex. B & ¶9.[4]  Instead, investors had to rely on the ratings.

*Id*.  This fact is consistent with the SEC's observation in its 2003 "Report on the Role and Function

---

[4]     Furthermore, ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████     Ex. 1 at 77:19-20, 84:23-85:4, 87:6-9.████████████████

████████████████████████████████████████████████████████

█████████████████████████████████     *Id*. at 155:14-23.

of Credit Rating Agencies in the Operation of the Securities Markets":

> Most of the large buy-side firms active in the fixed income markets *are substantial users of information from credit rating agencies, even though they* typically conduct their own credit analysis for risk management purposes, *or to identify pricing discrepancies for their trading operations. Buy-side firms use credit ratings as one of several important inputs to their own internal credit assessments and investment analyses*.

Mot., Ex. C at 28.[5]

As Dr. Cox and Dr. Mordecai explain, moreover, the surveys that Prof. Grenadier relied on are irrelevant. Corporate debt investors can more thoroughly evaluate their investments independent of the rating agencies because they have access to far more data on the underlying assets and operations of the companies they are analyzing than investors do when analyzing SIVs and their asset portfolios. Cox Reply Decl., ¶6; Mordecai Decl., ¶12. Further, more than 98% of these corporate bond investors – who possessed significantly greater information relevant to their investments and performed a far simpler analysis than the Cheyne SIV investors – relied on the credit ratings.[6] It follows that SIV investors, who had "insufficient public information" to "develop their own informed opinions" did so too, and to a much greater degree. Cox Reply Decl., Ex. 1 at 9.

Prof. Grenadier's opinions should be disregarded for the additional reason that he used an incorrect and impermissibly narrow definition of reliance to reach his conclusions. While defendants cite *Matthews v. Schusheim*, 42 A.D.2d 217, 221, 346 N.Y.S. 386, 391 (N.Y. App. Div.

---

[5]    In his declaration, Prof. Grenadier misleadingly omits the bold portion of the above quotation to leave the incorrect impression that investors conduct their own analysis and thus have no use for the ratings. Grenadier Decl., ¶8.

[6]    Although Prof. Grenadier implies in his declaration that 6% of 387 investors in the Baker & Mansi survey reported they do not rely on ratings, in reality only 100 investors actually responded to that survey. Out of another 205 investors that responded to the Ellis survey – again a single mailed question – *not a single investor* "was willing to say that he or she do not use their agencies' ratings at all." Thus, 299 out of 305 corporate bond investors who actually responded – or 98% – stated they relied to some degree on the ratings.

1973), *aff'd*, 35 N.Y.2d 686, 361 N.Y.S.2d 160 (1974), for the proposition that reliance in a common law fraud action requires a showing of "'but for'" causation (*see* Opp. at 16), *Matthews* specifically held: "[i]t is not necessary that the representation has been the exclusive cause of plaintiff's action or non-action; it is sufficient that but for the representation plaintiff would not have acted or refrained from acting, that is, that the representation was a ***substantial factor*** in inducing him to act or refrain from acting." *Id.*; *accord King v. Club Med, Inc.*, 76 A.D.2d 123, 128, 430 N.Y.S.2d 65, 68 (N.Y. App. Div. 1980). Despite the "substantial factor" language in *Matthews*, ██████████

████████████████████████████████████████████████████████████

████ Ex. 1 at 112:19-116:2.

**Sixth**, ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ Mot., Ex. E at 88:10-12. While defendants attempt to divine Moubarak's "intent" in their opposition brief, stating: ████████████████████

████████████████████████████████████████████████████████████

████████ (*see* Opp. at 20), this far-fetched rendering of Moubarak's testimony is neither evidence nor even plausible.

By proposing "a suitable methodology," plaintiffs have demonstrated that reliance "may be proven class-wide." *See Fogarazzo*, 263 F.R.D. at 106-07. Nothing more is required. Nonetheless, plaintiffs also have adduced considerable common evidence of class-wide reliance. Because each element of plaintiffs' common law fraud claim – including reliance – will be established through common proof, issues common to the class predominate. *See In re Visa Check/Master Money*

- 9 -

*Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001).

### 2. Even if the Court Finds that the Reliance Inquiry Is More Individualized, Common Issues Still Predominate

Even if the Court were to find that the reliance inquiry is more individualized, Rule 23's predominance requirement is still met because this lone individualized issue is not "more substantial" (*Moore*, 306 F.3d at 1252), and therefore does not "outweigh" (*Heerwagen*, 435 F.3d at 226), all of the other common issues. In *McLaughlin*, the Second Circuit explicitly declined to adopt the bright-line rule advocated by defendants that Rule 23's predominance requirement cannot be met where reliance requires a more individualized inquiry. 522 F.3d at 224-25. Rather, the court in *McLaughlin* held that because "**numerous issues**" in that consumer action – including reliance, loss causation, damages and unique statute of limitations defenses – were "not susceptible to generalized proof," those issues predominated over issues subject to generalized proof. *Id.* at 234. Here, unlike in *McLaughlin*, there is at most **one** individualized inquiry, and this lone issue does not predominate over all of the other issues common to the class.[7]

Moreover, in *McLaughlin*, the Second Circuit concluded that establishing reliance on an individual basis for tens of millions of unidentified cigarette purchasers over a sprawling 30-year time frame would predominate over other issues common to the class. *Id.* at 219-21, 225. The situation here is very different. With a proposed class of just hundreds of members, all of whom are

---

[7]      Defendants' contention that loss causation and falsity also require individualized inquiries is meritless. Changes to the SIV's underlying assets during the Class Period do not mean that falsity is subject to individualized inquiry. Where, as here, "defendants engaged in a scheme of misrepresenting, throughout the class period . . . [t]hat the misrepresentations occurred over a period of time and in various documents and that the facts may have fluctuated during the class period does not defeat class certification." *Ballan v. Wilfred Am. Educa. Corp.*, No. 88 C 3921, 1990 U.S. Dist. LEXIS 16602, at *5-*6 (E.D.N.Y. Nov. 20, 1990). Nor will proof of loss causation require "individualized inquiry" into the knowledge of each investor because, in this case, there is no "significant question as to whether a substantial proportion of class members knew of the scheme." *See In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 114 (S.D.N.Y. 2009) (Scheindlin, J.).

- 10 -

ascertainable, even if each investor's reliance had to be established individually at trial, issues common to the class – *i.e.*, falsity, scienter, loss causation and damages – would still predominate.[8] Because the proposed class is relatively small, moreover, proving individualized reliance would not present manageability problems.  In fact, determination of reliance could be as simple as mailing a single question to each class member asking: "Did you substantially rely on the credit ratings when you purchased the Cheyne notes?"  This methodology was employed by the studies defendants' expert Prof. Grenadier relies on in his declaration and has been used by courts in federal securities fraud class actions.  *See*, *e.g.*, *Knapp v. Gomez*, No. 87-0067 H(M), Proof of Claim and Release (S.D. Cal. June 1993) (Ex. 4 hereto).[9]  Accordingly, Rule 23's predominance requirement is satisfied.

**B.     A Class Action Is the Superior Method of Adjudicating This Case**

The balance of factors to be considered in the superiority analysis demonstrates that "the class action mechanism is the most 'fair and efficient' method of resolving [this] case." *Fogarazzo*, 263 F.R.D. at 97-98; *see also* Mot. at 27-30.  Defendants' assertion that a class action is not superior

---

[8]     Moreover, even if the Court were to find that plaintiffs' common law fraud claim as a whole does not satisfy Rule 23's predominance requirement due to individualized reliance issues, class certification is nevertheless appropriate under Rule 23(c)(4) for all of the other issues common to the class, including falsity, scienter, causation and damages. *See* Fed. R. Civ. P. 23(c)(4); *In re Nassau County Strip Search Cases*, 461 F.3d 219, 226-27 (2d Cir. 2006).

[9]     The fact that defendants may in the future attempt to rebut each investor's reliance does not cause individualized issues to predominate over common ones.  Opp. at 16.  In support of this contention, defendants rely upon an Eighth Circuit opinion, *In re St. Jude Med., Inc.*, 522 F.3d 836, 838 (8th Cir. 2008), and two district court opinions from the First Circuit, *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000), and *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 396 (D. Mass. 2007).  Each of these opinions specifically quotes from and relies upon the blanket rule created by the Fifth Circuit in *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) that "a fraud class action cannot be certified when individual reliance will be an issue."  But, the Second Circuit in *McLaughlin* expressly rejected the Fifth Circuit's "blanket rule" regarding individualized reliance.  522 F.3d at 224-25.

- 11 -

because "the class consists of sophisticated investors with substantial claims" is incorrect.   In complex cases such as this, the fact that some members may have relatively substantial claims does not outweigh the class action's significant advantages with regard to judicial economy and consistency.  *See, e.g.*, *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 134 (S.D.N.Y. 2001); Mot. at 27-30.

Equally unpersuasive is defendants' contention that additional investor lawsuits defeat superiority.  Defendants' assertion that SEI has "filed a lawsuit in Pennsylvania State Court" is misleading.  SEI has merely filed a Praecipe to Issue Writ of Summons with regard to several SIVs held by SEI for the purpose of tolling the Pennsylvania statutes of limitations.  No complaint has been filed.  This leaves a single complaint filed in California by one of the world's largest pension funds, which hardly demonstrates that plaintiffs' "claims are best left to the individual investors." *See* Opp. at 24.  In fact, this dearth of individual actions demonstrates the exact opposite – that investors in the Cheyne SIV are relying heavily on this action to resolve their claims fairly and efficiently.

Defendants' final argument that plaintiffs have failed to demonstrate the preclusive effect of this Court's rulings on possible future claims in unidentified foreign jurisdictions is based on pure speculation.  First, plaintiffs are not aware of (and defendants did not identify) any foreign Senior Note investors, so this argument applies only to Mezzanine Capital Note investors.  *See* Opp. at 24-25.  Second, defendants have made no showing that a judgment by this Court would not be given preclusive effect against foreign investors, or that defendants are even subject to suit in any relevant foreign jurisdiction.  *See, e.g.*, *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996-97 (2d Cir. 1975) (recognizing that "an American court ***need not*** abstain from entering judgment simply because of a ***possibility*** that a foreign court may not recognize or enforce it," but ultimately eliminating foreign

- 12 -

purchasers from the proposed class on the basis of "***uncontradicted affidavits*** that [specific countries] would not recognize a United States judgment"); *see also Cromer*, 205 F.R.D. at 135; *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 106-07 (S.D.N.Y. 2007); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1998 U.S. Dist. LEXIS 1199, at *42-*47 (S.D.N.Y. Feb. 4, 1998); *In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24, 49-52 (S.D. Cal. 1975).

### C.     The Class Satisfies the Requirements of Fed. R. Civ. P. 23(a)

In the Second Circuit, numerosity is presumptively satisfied where the proposed class consists of 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Fogarazzo*, 263 F.R.D. at 95. Here, the evidence indisputably shows there were more than 100 separate Rated Notes investors who held notes on October 17, 2007, when the SIV defaulted, and it is likely the actual number is significantly higher. *See* Ex. 5 hereto. There is no basis for creating subclasses for different kinds of securities where, as here, "plaintiffs have alleged ***a single course of wrongful conduct*** with regard to each security." *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CIV. 4318 (HB), 2000 WL 1357509, at *3 (S.D.N.Y. Sept. 20, 2000).[10] Even if there were subclasses, there are ***at least*** 40 class members who purchased Commercial Paper and Medium Term Notes ("MTNs") and at least 39 who purchased Mezzanine Capital Notes, with at least 25 class members unaccounted for (12 unknown Senior Note holders, 5 unaccounted for CUSIPs and 8 "unknown entities"). *See* Ex. 5. Thus, even with subclasses, numerosity is satisfied.

Commonality is established "if a ***single*** common issue is shared by the class." *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005). Here there are ***several*** common issues shared by the class, as set forth in plaintiffs' opening motion. *See* Mot. at 5-6.

---

[10]     *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 175 (S.D.N.Y. 2009) ("plaintiffs are correct that they may be deemed adequate class representatives for claims based on securities they did not purchase").

- 13 -

Defendants' contention that SEI is not a member of the proposed class is incorrect.  Opp. at 28.  The SEI Funds acquired Cheyne MTNs in October 2006 and March 2007, and continued to hold those Notes when they were abruptly downgraded in August 2007, and when they subsequently defaulted in October 2007.  As such, the SEI Funds clearly **did** suffer damages related to their purchase of Cheyne MTNs.  In September 2008 and March 2009, the SEI Funds transferred the MTNs to SEI, **along with** the right to enforce any claims related to the Notes, in exchange for consideration equal to the Notes' ***full par value***.[11]  Accordingly, SEI, which took on the SEI Funds' loss and was assigned the SEI Funds' claims, now stands in the shoes of the SEI Funds with regard to the Cheyne MTNs purchased in October 2006 and March 2007.  Thus, SEI is a typical member of the proposed class.[12]

Defendants' contention that ADCB and King County will each be subject to unique defenses regarding the reasonableness of their reliance on the Ratings is premised on gross mischaracterizations of the relevant evidence.  Opp. at 27-29.  ADCB testified that it "[w]ould . . . not have invested in [notes] had they not been rated."  Birchall Tr. at 289:6-15.  King County's investment guidelines required the assigned ratings in order for King County to invest.  Guy Tr. at 64:16-65:7.[13]  Nor do the deposition excerpts on which defendants rely (Opp. at 28-29) contain any

---

[11]    *LaSala v. Needham & Co., Inc.*, No. 04-Civ-9237(SAS), 2006 WL 452024, at *4 (S.D.N.Y. Feb. 24, 2006) (Scheindlin, J.) ("The typical scenario for a valid assignment creating standing is when 'the assignee, obtaining the assignment in exchange for some consideration running from it to the assignor, replaces the assignor with respect to the claim or the portion of the claim assigned, and thus stands in the assignor's stead with respect to both injury and remedy.'").

[12]    The SEI Funds relied on the false Ratings.  The MTNs would not have been eligible for inclusion in the Funds without their top-tier Ratings.  Smigiel Tr. at 34:16-21.  Per the Court's Individual Rules limiting the number of exhibits, plaintiffs are unable to attach the Birchall Tr., the Guy Tr. and the Smigiel Tr. as exhibits, but will provide these transcripts to the Court upon request.

[13]    Defendants' contention (repeated several times) that King County may have spent less than five minutes analyzing its Cheyne investment (Opp. at 2, 12, 22) is simply incorrect.  King County's corporate designee, Ken Guy, testified repeatedly that he did not know how long it took King

- 14 -

factual inconsistencies that would create unique defenses with regard to plaintiffs' class-wide theory of loss causation – namely, that all members of the class suffered damages when the falsity of the Ratings was revealed.  *See* ¶¶14, 42, 55, 164-168, 198, 202-204.

Defendants' final argument – that all three plaintiffs are subject to unique defenses because they did not purchase their Notes directly from Morgan Stanley – is completely without merit.  Opp. at 29.  As this Court has already held, Morgan Stanley, through its collaborative efforts with the Ratings Agencies to "'design[], structure[], market[] and maintain[] the Cheyne SIV,'" is liable to all members of the proposed class regardless of whether it actually sold all of the Rated Notes.  *Abu Dhabi*, 651 F. Supp. 2d at 176-77.

## III.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request entry of an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23 and appointing plaintiffs as class representatives.

DATED:  April 9, 2010                         Respectfully submitted,

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              PATRICK J. COUGHLIN
                                              DANIEL S. DROSMAN
                                              JESSICA T. SHINNEFIELD
                                              MICHAEL F. GHOZLAND
                                              NATHAN R. LINDELL
                                              CHRISTINA A. ROYCE
                                              DARRYL J. ALVARADO


                                              s/ DANIEL S. DROSMAN
                                              DANIEL S. DROSMAN

---

County to consider the ratings and decide to purchase Rated Notes.  *See, e.g.*, Guy Tr. at 87:16-25, 87:25.  He also testified that King County "relied on the credit ratings [and] had the expectation that the collateral in Cheyne had the quality that would match with the top credit rating."  *See* 352:8-12; *see also* 127:6-14.

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
JARRETT S. CHARO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
LUKE O. BROOKS
JASON C. DAVIS
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone:  415/288-4545
415/288-4534 (fax)

Attorneys for Plaintiffs

- 16 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 9, 2010.

s/ DANIEL S. DROSMAN
DANIEL S. DROSMAN

ROBBINS GELLER RUDMAN
     & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  ddrosman@rgrdlaw.com

516234_1

## Mailing Information for a Case 1:08-cv-07508-SAS-DCF

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com

- **Anne L. Box**
  anneb@rgrdlaw.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Andrea Rose Butler**
  abutler@cahill.com

- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com,jrubins@ssbb.com

- **Patrick Joseph Coughlin**
  patc@rgrdlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,jillk@rgrdlaw.com,E_File_SD@rgrdlaw.com,nlindell@rgrdlaw.com,tholindrake@rgrdlaw.com,jcharo@rgrdlaw.com

- **Michael Fred Ghozland**
  mghozland@rgrdlaw.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com

- **Damien Jerome Marshall**
  dmarshall@bsfllp.com,NYC_Managing_Clerk@bsfllp.com

- **Antonio Jorge Perez-Marques**
  antonio.perez@dpw.com,ecf.ct.papers@dpw.com

- **Dean I. Ringel**
  DRingel@Cahill.com,JHall@cahill.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Jonathan Henry Sherman**
  jsherman@bsfllp.com,NYC_Managing_Clerk@bsfllp.com

- **Jessica T. Shinnefield**
  jshinnefield@rgrdlaw.com

- **Aaron Mark Zeisler**
  azeisler@ssbb.com,managingclerk@ssbb.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**David C. Walton**
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301