UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ABU DHABI COMMERCIAL BANK, KING
COUNTY, WASHINGTON, SEI
INVESTMENTS COMPANY, Together and
On Behalf of All Others Similarly Situated,

                Plaintiffs,

vs.

MORGAN STANLEY & CO.
INCORPORATED, MORGAN STANLEY &
CO. INTERNATIONAL LIMITED, THE
BANK OF NEW YORK MELLON (f/k/a THE
BANK OF NEW YORK), QSR
MANAGEMENT LIMITED, MOODY'S
INVESTORS SERVICE, INC., MOODY'S
INVESTORS SERVICE LTD., STANDARD
& POOR'S RATINGS SERVICES, THE
McGRAW HILL COMPANIES, INC.,
CHEYNE CAPITAL MANAGEMENT
LIMITED, CHEYNE CAPITAL
MANAGEMENT (UK) LLP, CHEYNE
CAPITAL INTERNATIONAL LIMITED,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

:    08 Civ. No. 7508 (SAS)

:    **ECF CASE**

:    **REDACTED**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
THE THIRD AMENDED COMPLAINT BY DEFENDANTS
CHEYNE CAPITAL MANAGEMENT LIMITED, CHEYNE CAPITAL
MANAGEMENT (UK) LLP AND CHEYNE CAPITAL INTERNATIONAL LIMITED**

Tariq Mundiya
Jeffrey B. Korn
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Attorneys for Defendants Cheyne Capital
Management Limited, Cheyne Capital
Management (UK) LLP and Cheyne Capital
International Limited

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND FACTS ................................................................................................. 4

ARGUMENT ................................................................................................................... 8

I.   PLAINTIFFS HAVE DESTROYED THE COURT'S SUBJECT-MATTER
JURISDICTION BY ADDING CHEYNE LLP AS A DEFENDANT............................ 8

    A.  Cheyne LLP Is A "Stateless" Entity That Cannot Be Sued In Diversity...................... 8

    B.  Federal Jurisdiction Does Not Exist Under CAFA......................................................... 9

II.  THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER CCML,
CHEYNE LLP OR CCIL................................................................................................ 9

    A.  This Court Does Not Have General Jurisdiction Over CCML, Cheyne LLP
Or CCIL. ................................................................................................................ 10

    B.  This Court Does Not Have Specific Jurisdiction Over CCML, Cheyne
LLP Or CCIL. ....................................................................................................... 11

        1.  This Court Does Not Have Personal Jurisdiction Under CPLR 302(a)(1). .......... 12

        2.  This Court Does Not Have Personal Jurisdiction Under CPLR 302(a)(2). .......... 14

        3.  This Court Does Not Have Personal Jurisdiction Under CPLR 302(a)(3). .......... 15

III.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR FRAUD AGAINST CCML,
CHEYNE LLP OR CCIL................................................................................................ 16

    A.  The TAC Does Not Allege With Particularity That CCML, Cheyne LLP And
CCIL Made Any Misstatements Regarding The Rated Notes................................... 16

    B.  Plaintiffs Have Not Adequately Alleged That The Cheyne Defendants Knew That
Any Statements About The Credit Ratings Were False Or Misleading. .................... 19

        1.  Plaintiffs Have Failed To Adequately Allege Conscious Misbehavior Or
Recklessness By CCML, Cheyne LLP and CCIL. ............................................... 19

        2.  Plaintiffs Have Failed To Adequately Allege Motive And Opportunity.............. 24

IV.  PLAINTIFFS' AIDING AND ABETTING CLAIM SHOULD BE DISMISSED.......... 25

CONCLUSION................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Case**                                                                                      **Page(s)**

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999)..................................................................................14

*Beacon Enters., Inc. v. Menzies,*
    715 F.2d 757 (2d Cir. 1983)..................................................................................13

*Bialek v. Racal-Milgo, Inc.,*
    545 F. Supp. 25 (S.D.N.Y. 1982) ........................................................................14

*Best Van Lines, Inc. v. Walker,*
    490 F.3d 239 (2d Cir. 2007).............................................................................. 12-13

*Calder v. Jones,*
    465 U.S. 783 (1984)..............................................................................................12

*Carden v. Arkoma Assocs.,*
    494 U.S. 185 (1990)................................................................................................8

*Communications Partners Worldwide, Inc. v. Main St. Res.,*
    2005 WL 1765712 (S.D.N.Y. July 26, 2005) ....................................................14

*County of Nassau v. Hotels.com, LP,*
    577 F.3d 89 (2d Cir. 2009).................................................................................3, 9

*Cresswell v. Sullivan & Cromwell,*
    922 F.2d 60 (2d Cir. 1990)..................................................................................8, 9

*Crigger v. Fahnestock & Co.,*
    443 F.3d 230 (2d Cir. 2006)................................................................................16

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,*
    551 F. Supp. 2d 210 (S.D.N.Y. 2008).................................................................24

*Ehrenfeld v. Bin Mahfouz,*
    851 N.Y.S.2d 643 (2007) ....................................................................................13

*Epirus Capital Mgmt., LLC v. Citigroup Inc.,*
    2010 WL 1779348 (S.D.N.Y. Apr. 28, 2010)....................................................22

*Falcon v. Philips Elecs. N. Am. Corp.,*
    489 F. Supp. 2d 367 (S.D.N.Y. 2007)..................................................................9

*Girl Scouts of the U.S. v. Steir,*
    102 Fed. Appx. 217 (2d Cir. 2004).....................................................................13

*Global Fin. Corp. v. Triarc Corp.*,
   693 N.Y.S.2d 479 (1999) ...................................................................15

*Granat v. Bochner*,
   702 N.Y.S.2d 262 (N.Y. App. Div. 2000) ........................................14

*Herrick Co., Inc. v. SCS Commc'ns, Inc.*,
   251 F.3d 315 (2d Cir. 2001) ........................................................3, 8, 9

*Holness v. Maritime Overseas Corp.*,
   676 N.Y.S.2d 540 (N.Y. App. Div. 1998) ...................................10, 13

*In re IBM Sec. Litig.*,
   163 F.3d 102 (2d Cir. 1998) ...............................................................20

*Ingraham v. Carroll*,
   665 N.Y.S.2d 10 (1997) ......................................................................16

*King Cnty., Washington v. IKB Deutsche Industriebank AG*,
   2010 WL 1790051 (S.D.N.Y. May 4, 2010) .....................................11

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
   563 N.YS.2d 739 (1990) .............................................................10, 13

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007) ...............................................................18

*Laufer v. Ostrow*,
   449 N.Y.S.2d 456 (1982) ....................................................................10

*In re Lehman Bros. Sec. & ERISA Litig.*,
   684 F. Supp. 2d. 485 (S.D.N.Y. 2010) .........................................23, 24

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ...............................................................25

*McGaughey v. Treistman*,
   2007 WL 24935 (S.D.N.Y. Jan. 4, 2007) ............................................9

*McGowan v. Smith*,
   437 N.Y.S.2d 643 (1981) ....................................................................13

*Miller v. Lazard, Ltd.*,
   473 F. Supp. 2d 571 (S.D.N.Y. 2007) ................................................22

*Navaera Scis., LLC v. Acuity Forensic Inc.*,
   667 F. Supp. 2d 369 (S.D.N.Y. 2009) ................................................12

*New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   2010 WL 1473288 (S.D.N.Y. March 29, 2010) ........................................................20

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,
   2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ...........................................................20

*Newman v. RCN Telecom Servs., Inc.*,
   238 F.R.D. 57 (S.D.N.Y. 2006) ..................................................................................9

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
   No. 109547/08, slip op. (Sup. Ct. N.Y. Cnty. Apr. 21, 2010) ................................3, 11, 16

*Ouaknine v. MacFarlane*,
   897 F.2d 75 (2d Cir. 1990)........................................................................................19

*Pacific Inv. Mgmt. Co. LLC. v. Mayer Brown LLP*,
   603 F.3d 144 (2d Cir. 2010)..............................................................................2, 18, 19

*In re Parmalat Sec. Litig.*,
   479 F. Supp. 2d 332 (S.D.N.Y. 2007).......................................................................19

*Proforma Partners v. Skadden Arps Slate Meagher & Flom, LLP*,
   720 N.Y.S.2d 139 (N.Y. App. Div. 2001) ..............................................................15

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co.*,
   75 F.3d 801 (2d Cir. 1996)........................................................................................24

*Schenker v. Assicurazoni Generali S.P.A.*,
   2002 WL 1560788 (S.D.N.Y. July 15, 2002) ..........................................................11

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994)......................................................................................20

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
   2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ..........................................................18

*Spiegel v. Schulmann*,
   604 F.3d 72 (2d Cir. 2010)..................................................................................12, 13

*Steed Fin. LDC v. Laser Advisers, Inc.*,
   258 F. Supp. 2d 272 (S.D.N.Y. 2003).......................................................................25

*Swiger v. Allegheny Energy, Inc.*,
   540 F.3d 179 (3d Cir. 2008)........................................................................................8

*Tamam v. Fransabank Sal*,
   677 F. Supp. 2d 720 (S.D.N.Y. 2010).......................................................................14

*Tsereteli v. Residential Asset Securitization Trust,*
   692 F. Supp. 2d 387 (S.D.N.Y. 2010) ........................................................ 19-20

*Virginia Bankshares, Inc. v. Sandberg,*
   501 U.S. 1083 (1991) ................................................................................ 20

*Wynn v. AC Rochester,*
   273 F.3d 153 (2d Cir. 2001) ...................................................................... 16

*Yung v. Lee,*
   160 Fed. Appx. 37 (2d Cir. 2005) ............................................................. 19

## **Other Authorities**

28 U.S.C. § 1332 ........................................................................................... 9

## INTRODUCTION

Plaintiffs seek to hold three new parties responsible for statements they did not make, for credit ratings they did not issue, on securities they did not sell, and in a jurisdiction in which they were never present. After eighteen months of litigation, and two million pages of document discovery, plaintiffs – three institutional investors – cannot identify any statement made to them by the newly added defendants – Cheyne Capital Management Limited (an English company headquartered in London ("CCML")), Cheyne Capital Management (UK) LLP (an English limited liability partnership headquartered in London ("Cheyne LLP")), and Cheyne Capital International Limited (a Bermuda corporation located in Hamilton, Bermuda ("CCIL")). Nor can plaintiffs establish that this Court has subject-matter or personal jurisdiction, or that CCML, Cheyne LLP or CCIL are responsible for credit ratings issued by the Rating Agencies[1] for securities issued by non-parties Cheyne Finance PLC and its subsidiaries (the "SIV").

The sole alleged misrepresentations at issue in this case are the credit ratings issued by S&P and Moody's upon which plaintiffs allegedly relied in purchasing their securities. (TAC ¶ 15 ("false and misleading credit ratings" are basis of action); Mem. of Law In Support of Pls.' Mot. for Class Cert. 14 ("The misrepresentations at issue are the false credit ratings that defendants assigned to the Rated Notes and the . . . SIV.").) Despite access to a vast amount of discovery, plaintiffs cannot identify a single statement made to them by CCML, Cheyne LLP or CCIL, let alone a statement constituting a credit rating on any of the securities issued by the SIV or even an endorsement of such a rating. Nor is there any allegation to support the claim that any

---

[1] Unless otherwise stated, the capitalized terms used herein have the meaning attributed to them in the Third Amended Complaint or "TAC." Accompanying this memorandum are the declarations of Tariq Mundiya ("Mundiya Decl."), Stuart Fiertz ("Fiertz Decl."), Cynthia Cox ("Cox Decl.") and Jeffrey Bronheim ("Bronheim Decl."). Pursuant to Rule III(B) of the Court's Individual Rules and Procedures, defendants hereby certify that they have complied with the Court's pre-motion procedures.

of CCML, Cheyne LLP or CCIL *knew* that the ratings issued by S&P and Moody's on securities issued by the non-party SIV were allegedly false or unsupportable, or that S&P and Moody's did not in fact hold their credit rating opinions.  At best, the Third Amended Complaint cites a handful of emails showing that individuals at CCML were involved in the creation and management of the SIV.  But, despite the Third Amended Complaint's attempt to obfuscate the issue, this litigation is about the alleged falsity of credit ratings on securities issued by the SIV, not about the creation of, or management services provided to, the SIV.

The Second Circuit stated in a securities fraud action just eight weeks ago that, "[t]o be cognizable, a plaintiff's claim against a secondary actor must be based on that actor's own 'articulated statement,' or on statements made by another that have been *explicitly* adopted by the secondary actor." *Pacific Inv. Mgmt. Co., LLC v. Mayer Brown LLP*, 603 F.3d 144, 155 (2d Cir. 2010) ("*PIMCO*") (citation omitted).  Here, the plaintiffs cannot identify a single statement about the SIV's credit ratings articulated by any of CCML, Cheyne LLP or CCIL, or one that was explicitly adopted by any of CCML, Cheyne LLP or CCIL.  To the contrary, the Information Memoranda at issue clearly and unambiguously state that CCML, Cheyne LLP and CCIL did *not verify*, and were *not responsible* for, any statements concerning the SIV's ratings.  Significantly, CCML, Cheyne LLP and CCIL limited their responsibility by *explicitly accepting responsibility for only four paragraphs in the entire document* – none of which addressed the SIV's ratings.  (Moreover, CCIL, while mentioned in the Information Memoranda, ultimately was never involved in the SIV's operations in any respect.)  As a matter of law, CCML, Cheyne LLP and CCIL cannot be primarily liable for fraud.

Independent of its substantive deficiencies, the Third Amended Complaint suffers from two fatal jurisdictional defects requiring dismissal.  *First*, by filing claims against Cheyne

LLP, plaintiffs have deprived this Court of subject-matter jurisdiction. Cheyne LLP is a partnership with two members who are United States citizens domiciled in England. That makes Cheyne LLP a "stateless" entity that cannot be sued in diversity under clear Second Circuit precedent. *See Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). Because plaintiffs have not satisfied their burden of showing that the prerequisites of the Class Action Fairness Act ("CAFA") have been satisfied – most fundamentally because this Court has held that this is not a class action, which is a threshold requirement for CAFA jurisdiction – the entire action must be dismissed. *See, e.g., Cnty. of Nassau v. Hotels.com, LP*, 577 F.3d 89, 92-93 (2d Cir. 2009) (remanding for district court to determine "whether class certification would be appropriate" because, if not, district court would lack CAFA jurisdiction).

       *Second*, this Court also lacks personal jurisdiction over CCML, Cheyne LLP and CCIL. None of these foreign entities does business in New York, has an office or employees in New York, maintains a New York bank account, owns property in New York, or otherwise has availed itself of the privileges of this forum. General jurisdiction therefore does not exist. Similarly, plaintiffs' attempt to assert "specific" jurisdiction fails because not the slightest link is alleged, or exists, between plaintiffs' claims and New York. All three plaintiffs are sophisticated institutional investors from outside New York, and none of them alleges that it was "defrauded" in New York. Even if the non-party SIV consented to jurisdiction in New York, CCML, Cheyne LLP or CCIL – the newly added defendants in *this* action – clearly and unambiguously did not in any of the relevant agreements (which, in any event, contemplated lawsuits in England, not New York). Plaintiffs have fallen woefully short of satisfying their burden to establish personal jurisdiction here. *See, e.g., Oddo Asset Mgmt. v. Barclays Bank PLC*, No. 109547/08, slip op. at 7-12 (Sup. Ct. N.Y. Cnty Apr. 21, 2010) (finding no personal jurisdiction over UK-based SIV

manager even though investors were based in the United States) (Mundiya Decl. Ex. 1).

## BACKGROUND FACTS

Because the Court previously recited plaintiffs' allegations in the Opinion and Order dated September 2, 2009 (the "September 2 decision"), we will review below only those aspects of the Third Amended Complaint relevant to this motion. The allegations are assumed to be true solely for the purposes of this motion.

Plaintiffs

None of the plaintiffs is from New York. Abu Dhabi Commercial Bank ("ADCB") is a "bank headquartered in Abu Dhabi, United Arab Emirates." (TAC ¶ 17.) King County, Washington ("King County") is a "public entity organized under the laws of the State of Washington." (*Id.* ¶ 16.) SEI Investment Company ("SEI") is headquartered in Pennsylvania. (*Id.* ¶ 18.) These three non-New York plaintiffs are the only plaintiffs in this action.

CCML, Cheyne LLP and CCIL

CCML, Cheyne LLP and CCIL are all foreign entities. (Fiertz Decl. ¶¶ 1, 6, 9; Cox Decl. ¶ 1.) CCML is an English company headquartered in London (Fiertz Decl. ¶ 16), Cheyne LLP is a limited liability partnership also headquartered in London (*id.* ¶ 9), and CCIL is a Bermuda company headquartered in Hamilton, Bermuda (Cox Decl. ¶ 1). None of them is, or ever was, present in New York. (Fiertz Decl. ¶¶ 12-13; Cox Decl. ¶ 5.)

The SIV was launched in August 2005. (TAC ¶¶ 174-75.) At that time, CCML was appointed as investment manager, with responsibility for providing investment and funding management services. (TAC ¶ 27; Cheyne Finance Capital Notes LLC Info. Mem. ("Capital Notes Info. Mem.") at 84 (Mundiya Decl. Ex. 2).) CCML performed those duties through December 31, 2006, when its obligations under its management agreement with the SIV were

transferred to Cheyne LLP. (Fiertz Decl. ¶ 10.)[2] CCIL was appointed CCML's and Cheyne LLP's "Manager Delegate," and, at the SIV's inception, it was contemplated that CCIL would perform certain management-related services. (TAC ¶ 27.) However, CCIL performed no SIV-related services, much less any that involved contacts with New York, nor received any fees from the SIV. (Cox Decl. ¶ 4.)

At no time have CCML, Cheyne LLP or CCIL done business in New York. None of them has an office in New York or transacted business in New York. (Fiertz Decl. ¶¶ 12-13; Cox Decl. ¶ 5.) All employees of CCML and Cheyne LLP were (and are) resident in England. The work done by CCML and Cheyne LLP concerning the SIV was principally done in London, with the vast bulk of communications occurring with London-based employees of Morgan Stanley and the Rating Agencies. (Fiertz Decl. ¶ 24.) Indeed, the individuals from Morgan Stanley and the Rating Agencies with whom CCML or Cheyne LLP allegedly communicated about the SIV – as confirmed by even the few emails identified in the Third Amended Complaint (TAC ¶¶ 158-79) – were overwhelmingly based in London. (Id.) The Third Amended Complaint does not identify a single communication between ADCB, King County or SEI and any of CCML, Cheyne LLP or CCIL, let alone any in New York.

### CCML, Cheyne LLP and CCIL Are Separate And Distinct From The SIV

According to the Third Amended Complaint, the "Cheyne SIV" was comprised of three entities – non-party Cheyne Finance PLC and its two wholly owned subsidiaries, non-parties Cheyne Finance LLC and Cheyne Finance Capital Notes LLC. (TAC ¶ 15.) CCML, Cheyne LLP and CCIL are distinct entities from, and have (and had) no corporate relationship

---

[2] The SIV was only one of several investment vehicles that were managed by CCML and Cheyne LLP. Indeed, in 2005, when the SIV was launched, CCML and CCIL, collectively, had over 70 employees, only approximately 8 of whom did SIV-related work. (Fiertz Decl. ¶ 7.)

with, the "Cheyne SIV." (Fiertz Decl. ¶ 22.) Their relationship was solely contractual. (*Id.*)

The SIV, Cheyne Finance PLC was organized as a public limited company under the laws of Ireland with three share trustees, all of which were Irish charitable trusts unaffiliated with CCML, Cheyne LLP or CCIL. (Mundiya Decl. Ex. 2 (Capital Notes Info. Mem. at 81-82).) Cheyne Finance PLC had three directors, all of whom were based in Ireland. (*Id.*) None of CCML, Cheyne LLP or CCIL chose, or had any role in appointing, the share trustees. (Fiertz Decl. ¶¶ 20-22.) None of CCML, Cheyne LLP or CCIL is or was the parent or a subsidiary of the SIV, had any ownership interest in the SIV, nor shared any trustees, directors, officers or employees with the SIV. (Fiertz Decl. ¶ 22.) In addition, no officer, director, member or employee of CCML, Cheyne LLP or CCIL was affiliated with, or otherwise employed by, any of the three SIV entities. (*Id.*) None of the directors or officers of CCML, Cheyne LLP or CCIL is or was a director, officer or share trustee of the SIV. (*Id.*) In short, the SIV is not, and was not, a subsidiary or division of any of CCML, Cheyne LLP and CCIL, and it never had any other corporate relationship with CCML, Cheyne LLP or CCIL. (*Id.*)

The SIV ceased active operations in September 2007, and is currently in receivership as SIV Portfolio PLC. (Fiertz Decl. ¶ 27.) CCML, Cheyne LLP and CCIL have no ongoing relationship with, or interest in, SIV Portfolio PLC. (Fiertz Decl. ¶ 22; Cox Decl. ¶ 4.)

<u>Summary of Plaintiffs' Allegations Against CCML, Cheyne LLP and CCIL</u>

Plaintiffs allege that CCML, Cheyne LLP and CCIL, together with Morgan Stanley and the Rating Agencies, "designed, structured, marketed and maintained the Cheyne SIV." (TAC ¶ 156.) In particular, plaintiffs allege that CCML, Cheyne LLP and CCIL (with Morgan Stanley) "engaged the Rating Agencies to rate the Cheyne SIV Rated Notes," and that they all worked together "to structure the Rated Notes in such a way that qualified the Rated

Notes for the Rating Agencies' highest ratings." (TAC ¶ 155.) While recognizing that those ratings were in fact "issued by the Rating Agencies," plaintiffs claim that CCML, Cheyne LLP, CCIL and Morgan Stanley "assist[ed] and influence[d]" the credit rating process. (TAC ¶ 154.)

In addition, plaintiffs allege that CCML, Cheyne LLP and CCIL "knew or recklessly disregarded that the ratings assigned to the Rated Notes were false and misleading." (TAC ¶ 157.) The source of CCML's, Cheyne LLP's and CCIL's supposed knowledge of the ratings' asserted falsity is their management of the allegedly "extremely risky assets" that were included in the SIV's portfolio. (TAC ¶¶ 158-66.) Plaintiffs fail to mention, however, that the assets within the SIV's portfolio were highly rated securities when purchased by the SIV, and that they maintained those high ratings for months *after* the SIV defaulted. (*See infra* at 21-22.) Moreover, all of the SIV's assets were purchased in conformity with strict guidelines disclosed to investors. (TAC ¶ 157; Medium Term Note Info. Mem. at 75 (Mundiya Decl. Ex. 3).) The Third Amended Complaint, now pled with the benefit of millions of pages of discovery, fails to allege any violation of those guidelines, or any facts that support a claim for fraud against CCML, Cheyne LLP or CCIL. Plaintiffs simply do not explain how or why CCML, Cheyne LLP and CCIL – admittedly not issuers of credit ratings – would suspect that the initial ratings process (TAC ¶¶ 167-70), ongoing monitoring by the Rating Agencies (*id.* ¶¶ 171-79) or even their widely known alleged conflicts of interest (*id.* ¶ 182) would produce the so-called "false" ratings, particularly in light of the high ratings assigned to the SIV's assets.

Nonetheless, plaintiffs claim that they were defrauded by CCML, Cheyne LLP and CCIL because they allegedly repeated the SIV's supposedly "false ratings" to plaintiffs "via private information services . . . and in the Cheyne SIV's Information Memoranda and other Selling Documents." (TAC ¶ 154.) According to plaintiffs, by merely reporting those allegedly

false ratings, CCML, Cheyne LLP and CCIL either committed fraud (Count 4-A) or aided and abetted fraud (Count 4-B), and subjected themselves to this Court's specific jurisdiction (TAC ¶¶ 36-37). The claims are without merit and should be dismissed.

## ARGUMENT

## I. PLAINTIFFS HAVE DESTROYED THE COURT'S SUBJECT-MATTER JURISDICTION BY ADDING CHEYNE LLP AS A DEFENDANT.

The Court premised its subject-matter jurisdiction in this case on diversity under Section 1332(a). (September 2 decision at 29 n.111.) Plaintiffs' addition of Cheyne LLP as a defendant destroyed complete diversity. Cheyne LLP is a partnership with at least two members who are United States citizens domiciled in England, and therefore cannot sue or be sued in diversity. Because plaintiffs assert no federal claims and CAFA jurisdiction does not exist, this case must be dismissed for lack of subject-matter jurisdiction.

### A.    Cheyne LLP Is A "Stateless" Entity That Cannot Be Sued In Diversity.

Two well-settled principles are relevant to the diversity analysis here. *First*, a limited partnership "has the citizenship of each of its partners." *Herrick*, 251 F.3d at 322; *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 192-95 (1990); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69 (2d Cir. 1990). *Second*, "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Cresswell*, 922 F.2d at 68. Thus, if a partnership has among its partners any United States citizen domiciled abroad, the partnership is "stateless" and cannot sue or be sued in diversity. *See Herrick*, 251 F.3d at 322 (finding diversity lacking because law partnership had one partner who is a United States citizen domiciled in a foreign country); *Cresswell*, 922 F.2d at 69 (same); *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 181 (3d Cir. 2008) (same).

- 8 -

Cheyne LLP has two members who are United States citizens domiciled in England.  (*See* Bronheim Decl. ¶¶ 1-6; Fiertz Decl. ¶¶ 1, 3-5.)  As such, Cheyne LLP is a "stateless" entity and jurisdiction "may not be premised on diversity." *Cresswell*, 922 F.2d at 68; *see also Herrick*, 251 F.3d at 322.  Thus, this action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**B.      Federal Jurisdiction Does Not Exist Under CAFA.**

The only other potential basis for subject-matter jurisdiction in this action is under the "Class Action Fairness Act" or "CAFA," which creates federal jurisdiction over certain "class actions."  28 U.S.C. § 1332(d)(2).  This is not a class action.  On June 15, 2010, this Court denied class certification.  (Opinion and Order, dated June 15, 2010, at 36-37.)

Accordingly, plaintiffs may not avail themselves of subject-matter jurisdiction under CAFA.  *See, e.g., Cnty. of Nassau*, 577 F.3d at 92-93 (remanding for district court to determine "whether class certification would be appropriate" because, if not, the court would lack CAFA jurisdiction); *Falcon v. Philips Elecs. N. Am. Corp.*, 489 F. Supp. 2d 367, 369 (S.D.N.Y. 2007) (dismissing for lack of CAFA jurisdiction because "a class cannot be certified either now or in the foreseeable future of this case."); *McGaughey v. Treistman*, 2007 WL 24935, at *3 (S.D.N.Y. Jan. 4, 2007) ("Because Plaintiff's motion for class certification must be denied, Plaintiff's action is no longer a class action, and this Court cannot retain subject matter jurisdiction in diversity over Plaintiff's action pursuant to the Class Action Fairness Act."); *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 64, 81 (S.D.N.Y. 2006) (denying class certification and, as a result, holding that CAFA jurisdiction did not exist).

**II.      THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER CCML, CHEYNE LLP OR CCIL.**

Plaintiffs assert claims against three Cheyne entities – CCML, Cheyne LLP and

CCIL.  All three are foreign entities that have never done business in New York.  Moreover, plaintiffs – none of whom is from New York – do not claim that they were defrauded or suffered injury in New York.  The required nexus between *plaintiffs' fraud claims* and CCML's, Cheyne LLP's, and CCIL's *alleged contacts with New York* is wholly missing.  Therefore, this Court does not have general or specific jurisdiction over CCML, Cheyne LLP or CCIL.

A.    **This Court Does Not Have General Jurisdiction Over CCML, Cheyne LLP Or CCIL.**

Under CPLR 301, courts have general jurisdiction only over defendants that are "doing business" in New York.  *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 563 N.YS.2d 739, 741 (1990).  To exercise jurisdiction, the Court "must be able to say from the facts that the [defendant is] 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity.'"  *Id.*  "New York has no jurisdiction over a foreign company whose only contacts with New York are advertising and marketing activities plus occasional visits to New York."  *Holness v. Maritime Overseas Corp.*, 676 N.Y.S.2d 540, 543 (N.Y. App. Div. 1998); *accord Laufer v. Ostrow*, 449 N.Y.S.2d 456, 458-59 (1982).

Plaintiffs do not contend that CCML, Cheyne LLP and CCIL are subject to general jurisdiction under CPLR 301.  Rather, they assert in a footnote, and as an apparent afterthought, that "Cheyne Capital does business in New York."  (TAC ¶ 37 n.2.)  That bald (and inaccurate) allegation is not sufficient to confer general jurisdiction.  Plaintiffs do not allege that CCML, Cheyne LLP or CCIL engaged in systematic or continuous activity in New York.  Nor could they.  All are foreign entities.  None of them conducts business in New York, has an office or employees in New York, maintains a New York bank account, owns or leases property or other assets in New York, has a New York mailing address or telephone number, or otherwise

- 10 -

avails itself of the privileges of the State of New York.  Nor have they ever done any of these things.  (Fiertz Decl. ¶¶ 12-13; Cox Decl. ¶ 5.)

Accordingly, CCML, Cheyne LLP and CCIL do not have continuous and systematic contacts with New York and, thus, general jurisdiction does not exist.  Notably, on similar facts, Justice Kapnick in New York Supreme Court recently concluded that personal jurisdiction was lacking over another UK-based manager of a SIV.  *See Oddo Asset Mgmt.*, slip op. at 7-12 ("Solent's contacts with New York, which occurred essentially for the purpose of soliciting investors, are not sufficiently systematic or continuous so as to create the 'presence' necessary for a finding that those defendants are 'doing business' in New York.") (Mundiya Decl. Ex. 1.)  This case is no different and the result should be the same.[3]

### B.     This Court Does Not Have Specific Jurisdiction Over CCML, Cheyne LLP Or CCIL.

Plaintiffs allege that this Court has specific jurisdiction over "Cheyne Capital" under CPLR 302(a)(1), (2) and (3).  But plaintiffs are not from New York, do not identify a single contact between CCML, Cheyne LLP or CCIL and themselves that occurred in New York, and do not (and cannot) allege that they were defrauded *in* New York.  New York's long-arm

---

[3] Plaintiffs also assert that personal jurisdiction exists over the "three Cheyne SIV entities" – non-parties Cheyne Finance PLC, Cheyne Finance LLC and Cheyne Capital Notes LLC – which consented to jurisdiction in New York.  (TAC ¶¶ 38-40.)  But none of those entities is a defendant.  As discussed above, the SIV never was a subsidiary or department of, or otherwise related to, CCML, Cheyne LLP and CCIL.  (Fiertz Decl. ¶ 22.)  Personal jurisdiction over CCML, Cheyne LLP and CCIL thus cannot be based on the forum contacts of the SIV entities, which had their own shareholders, directors and trustees.  This case thus presents a very different question from that addressed in *King Cnty., Washington v. IKB Deutsche Industriebank AG*, in which general jurisdiction over IKB was asserted because the SIV entity, "IKB Capital," was a **wholly owned** subsidiary of defendant IKB.  *King Cnty.*, 2010 WL 1790051, at *5-6 (S.D.N.Y. May 4, 2010).  In any event, any contractual relationship that CCML, Cheyne LLP or CCIL had with the SIV ended long before they were added to this action (Fiertz Decl. ¶ 27), which is another reason why general jurisdiction cannot be asserted.  *See, e.g., Schenker v. Assicurazioni Generali S.P.A.*, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002) (no general jurisdiction where relationship to forum state terminated before lawsuit was filed).

statute thus does not confer specific jurisdiction over any of CCML, Cheyne LLP or CCIL.

### 1.   This Court Does Not Have Personal Jurisdiction Under CPLR 302(a)(1).

Plaintiffs assert that "Cheyne Capital" is subject to the Court's specific jurisdiction under CPLR 302(a)(1) because "it transacted business within New York and contracted to provide services in this state." (TAC ¶ 36.) That is wrong for several reasons.

*First*, plaintiffs have impermissibly clumped CCML, Cheyne LLP and CCIL together as "Cheyne Capital" in their jurisdictional allegations. (*See* TAC ¶¶ 33-37.) The Court, however, must "assess[] personal jurisdiction as to each defendant separately." *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 374 (S.D.N.Y. 2009); *see also Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum [s]tate must be assessed individually."). This pleading defect is particularly important where, as here, plaintiffs must assert specific jurisdiction based on particular contacts between *each* defendant and the forum state. Indeed, Cheyne LLP only came into existence long after the SIV was created, marketed and launched. (*See* Fiertz Decl. ¶¶ 10-11.) Moreover, even though it was initially designated as the SIV's "Manager Delegate," CCIL received no compensation from the SIV and performed no services at all in connection with the SIV, let alone services related to New York. (Cox Decl. ¶ 4.) Only by failing to differentiate among defendants can plaintiffs even assert that any of CCML, Cheyne LLP and CCIL is subject to personal jurisdiction here.

*Second*, Section 302(a)(1) "provides for personal jurisdiction only with respect to causes of action arising out of the transaction of business conducted in New York." *Spiegel v. Schulmann*, 604 F.3d 72, 77 (2d Cir. 2010). To establish jurisdiction, plaintiffs must demonstrate "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d

Cir. 2007). That required nexus is utterly lacking here. Plaintiffs are from Washington, Pennsylvania and the United Arab Emirates. They do not plead a single contact *in New York* between any of CCML, Cheyne LLP and CCIL, on the one hand, and themselves, on the other. Nor do they claim that they were defrauded *in New York*.[4] Put simply, ADCB, King County and SEI – three foreign plaintiffs – cannot use CPLR 302(a)(1) to establish specific jurisdiction over CCML, Cheyne LLP and CCIL – three foreign defendants – for fraud claims that do not arise from contacts in New York. *See Spiegel*, 604 F.3d at 77; *Best Van Lines*, 490 F.3d at 246; *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764-65 (2d Cir. 1983); *McGowan v. Smith*, 437 N.Y.S.2d 643, 645 (1981).

   *Third*, "a nondomiciliary 'transacts business' in New York under § 302(a)(1) only when he ***purposefully avails*** himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of the state's laws." *Girl Scouts of the U.S. v. Steir*, 102 Fed. Appx. 217, 219 (2d Cir. 2004) (emphasis added); *accord Ehrenfeld v. Bin Mahfouz*, 851 N.Y.S.2d 643, 645 (2007). None of CCML, Cheyne LLP or CCIL contracted with any entity to provide services in this state, and plaintiffs do not and cannot so allege.

   *Fourth*, CCML's, Cheyne LLP's and CCIL's alleged interactions with "New York-based entities" (TAC ¶ 34) do not establish that they transacted business here. Even though Morgan Stanley and the Rating Agencies are headquartered in New York, the SIV was conceived and structured in London, and ***CCML and Cheyne LLP dealt with Morgan Stanley's***

---

[4] That "Cheyne Capital executives" allegedly "communicated with New York investors" and traveled to New York for "road shows" – even if true – is irrelevant. (TAC ¶ 35.) Now that the Court has denied class certification, the potential claims of "New York investors" are not a part of this action and cannot be used to establish specific jurisdiction. Moreover, as noted above, these allegations do not come close to establishing general jurisdiction, which requires "a fair measure of permanence and continuity" in New York. *Landoil Res. Corp.*, 563 N.Y.S.2d at 741; *Holness*, 676 N.Y.S.2d at 543.

*and the Rating Agencies' personnel in London*. (Fiertz Decl. ¶ 24.) That CCML and Cheyne LLP allegedly might have communicated with New York personnel of Morgan Stanley or the Rating Agencies – and no such communications are even identified – is not enough to establish that they "transacted business" here. *Commc'ns Partners Worldwide, Inc. v. Main St. Res.*, 2005 WL 1765712, at *4 (S.D.N.Y. July 26, 2005) ("telephone calls and correspondence sent into New York . . . generally are insufficient to establish personal jurisdiction") (internal quotation marks and citation omitted); *Granat v. Bochner*, 702 N.Y.S.2d 262, 262 (N.Y. App. Div. 2000).[5]

> **2.      This Court Does Not Have Personal Jurisdiction Under CPLR 302(a)(2).**

Specific jurisdiction under CPLR 302(a)(2) is very limited. To establish personal jurisdiction under that provision, plaintiffs must show "not only that the plaintiff suffered the injury complained of in New York, but also that New York was where the defendant performed the act that caused the injury." *See Bialek v. Racal-Milgo, Inc.*, 545 F. Supp. 25, 35 (S.D.N.Y. 1982); *see also Tamam v. Fransabank Sal*, 677 F. Supp. 2d, 720 730 (S.D.N.Y. 2010). Courts employ the "situs-of-injury" test to determine where a plaintiff has suffered injury. In the fraud context, the injury occurs where the "first effect" of the tort is felt. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 771-72, 792 (2d Cir. 1999). "'[W]hen an alleged

---



[5] In their zeal to establish New York jurisdiction where none exists, plaintiffs

injury is purely economic, the place of injury usually is where the plaintiff resides and sustains

the economic impact of the loss.'"  *Proforma Partners v. Skadden Arps Slate Meagher & Flom,*

*LLP*, 720 N.Y.S.2d 139, 140 (N.Y. App. Div. 2001) (quoting *Global Fin. Corp. v. Triarc Corp.,*

693 N.Y.S.2d 479 (1999)).

  ADCB, King County and SEI, to the extent they have suffered any injury by

anyone, were respectively injured in the United Arab Emirates, Washington and Pennsylvania,

not New York.  *Global*, 715 N.E.2d at 485.



In any event, plaintiffs' pleading does not identify a single alleged

misstatement made by CCML, Cheyne LLP or CCIL while they (or their unidentified "agents")

were present in New York.  In these circumstances, CPLR 302(a)(2) cannot apply.

### 3. This Court Does Not Have Personal Jurisdiction Under CPLR 302(a)(3).

  CPLR 302(a)(3) provides that specific jurisdiction may be exercised over a

foreign entity that commits a tortious act outside of New York, causing injury in New York, if

the defendant either (1) regularly does or solicits business in New York or (2) should reasonably

expect the act to have consequences in New York and derives substantial revenue from

international commerce. *See, e.g.*, *Ingraham v. Carroll*, 665 N.Y.S.2d 10, 11 (1997).

Again, none of ADCB, King County or SEI was allegedly injured in New York. Thus, CPLR 302(a)(3) does not provide a basis for personal jurisdiction. *See, e.g.*, *Oddo*, slip op. at 12 (holding that CPLR 302(a)(3) did not apply because "Plaintiff is a French company operating in France, and thus France is the place where it would have sustained any economic impact of the decrease in value of [its] securities.") (Mundiya Decl. Ex. 1.)

## III.   PLAINTIFFS HAVE NOT STATED A CLAIM FOR FRAUD AGAINST CCML, CHEYNE LLP OR CCIL.

Plaintiffs seek to hold CCML, Cheyne LLP and CCIL liable for credit ratings they did not issue, that were reported in information memoranda issued by the SIV and not attributed to them, and that they had no reason to doubt were the actual opinions held by the Rating Agencies at the time.  Because plaintiffs do not and cannot allege that CCML, Cheyne LLP or CCIL knowingly made an actionable misstatement, plaintiffs' fraud claim should be dismissed.

### A.   The TAC Does Not Allege With Particularity That CCML, Cheyne LLP And CCIL Made Any Misstatements Regarding The Rated Notes.

The most fundamental element of a claim for fraud is that the defendant must have made "a misrepresentation or omission of material fact" to a plaintiff. *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001); *see also Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).  Astonishingly, none of the three plaintiffs – each of whom is asserting a claim for common law fraud – can identify a single communication or statement, much less an actionable one, made to them by CCML, Cheyne LLP or CCIL.  This is hardly surprising because none of CCML, Cheyne LLP and CCIL issued the credit ratings that are alleged to constitute the only misrepresentations in this case.  Nor have plaintiffs identified with particularity a single statement about the ratings that was actually made by or attributed to CCML, Cheyne LLP or CCIL.  Under Second Circuit precedent, and most recently the *PIMCO*

- 16 -

decision, they cannot be held primarily liable for fraud as a matter of law.

Plaintiffs allege that CCML, Cheyne LLP and CCIL "communicated the false ratings" to investors "in the Cheyne SIV's Information Memoranda" and made other unidentified statements. (TAC ¶ 154; *see also id.* ¶ 156.) It is undisputed that the SIV's Information Memoranda were issued by the non-party SIV entities, none of which is a subsidiary of, or has (or had) a corporate relationship with, any of CCML, Cheyne LLP or CCIL. (*See supra* at 6.) The SIV, not CCML, Cheyne LLP or CCIL, repeated the the SIV's credit ratings (by including them in the Information Memoranda). (*See, e.g.*, Capital Notes Info. Mem. at 3 ("The Issuer [Cheyne Finance Capital Notes LLC] accepts responsibility for the information contained in this Information Memorandum.") (Mundiya Decl. Ex. 2).)

The only statements in the Information Memoranda for which CCML, Cheyne LLP and CCIL assumed responsibility were "contained in the first four paragraphs of the section of [the] document entitled '*The Manager*' (the '*Cheyne Information*')." (*Id.* at 3.) Those paragraphs describe the business of CCML, Cheyne LLP and CCIL. (*Id.* at 84-85.) CCML, Cheyne LLP and CCIL represented that those four paragraphs – and only those four paragraphs – were "in accordance with the facts and do[] not omit anything likely to affect the import of the Cheyne Information." (*Id.* at 3) Aside from those four paragraphs, the Information Memoranda stated expressly that CCML, Cheyne LLP and CCIL made "**[n]o representation, warranty or undertaking, express or implied**" and accepted "**no responsibility or liability**" for any other statements in the Information Memoranda. (*Id.* at 3 (emphasis added); *see also* Medium Term Note Info. Mem. at 3; Commercial Paper Info. Mem. at 3 (Mundiya Decl. Exs. 3, 9).)

Simply put, CCML, Cheyne LLP and CCIL did not make *any* statements in the Information Memoranda (or anywhere else) regarding the SIV's credit ratings, and none was

attributed to CCML, Cheyne LLP or CCIL. The law is clear that CCML, Cheyne LLP and CCIL cannot be primarily liable for fraud based on statements that they did not make. *See PIMCO*, 603 F.3d at 161("Secondary actors, such as defendants, can be held liable [for securities fraud] only for false statements attributed to the secondary actor at the time of dissemination."); *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 155 (2d Cir. 2007) (same); *In re Sotheby's Holdings, Inc. Sec. Litig*, 2000 WL 1234601, at *5-6 (S.D.N.Y. Aug. 31, 2000) (dismissing fraud claims asserted against defendant based on statements by its parent).

The Second Circuit's recent *PIMCO* decision is instructive. In *PIMCO,* plaintiffs alleged that a law firm, Mayer Brown LLP, "facilitated fraudulent transactions" and "drafted portions of Refco's security offering documents that contained false information." *PIMCO*, 603 F.3d at 148. The Second Circuit addressed whether Mayer Brown could be held primarily liable for securities fraud or had merely aided and abetted Refco's fraud. The Second Circuit concluded: "To be cognizable, a plaintiff's claim against a secondary actor must be based on that actor's own 'articulated statement,' or on statements made by another that have been *explicitly* adopted by the secondary actor." *Id.* at 155. Thus, even though Mayer Brown allegedly (i) wrote the very statements challenged by plaintiffs and (ii) facilitated the underlying transactions that rendered those statements false, the Second Circuit held that Mayer Brown could not be primarily liable for securities fraud because those statements were not attributed to Mayer Brown in Refco's offering documents. *See id.* at 158.

The Second Circuit's decision in *PIMCO* compels dismissal of plaintiffs' fraud claim against CCML, Cheyne LLP and CCIL. No statement regarding the SIV's credit ratings was expressly attributed to CCML, Cheyne LLP or CCIL. Quite the opposite. The Information Memoranda expressly state that CCML, Cheyne LLP and CCIL are *not* responsible for any

statements about the ratings. Absent the required attribution, plaintiffs' allegations that CCML, Cheyne LLP and CCIL helped "design" or "structure" the SIV, or that they "assisted" or "influenced" the ratings process, are legally insufficient to give rise to primary liability for fraud. *See PIMCO*, 603 F.3d 144 at 154-158 (rejecting SEC's proposed "creator standard").[6]

### B.   Plaintiffs Have Not Adequately Alleged That The Cheyne Defendants Knew That Any Statements About The Credit Ratings Were False Or Misleading.

Plaintiffs do not, and cannot, allege sufficient facts to support the conclusion that CCML, Cheyne LLP and CCIL acted with "an 'intent to deceive, manipulate or defraud.'" (September 2 decision at 22). At most, plaintiffs allege, with the benefit of hindsight, that CCML, Cheyne LLP and CCIL should have known that the SIV did not deserve the top ratings assigned to it by the Rating Agencies. That cannot support a claim for fraud or aiding and abetting fraud.

### 1.   Plaintiffs Have Failed To Adequately Allege Conscious Misbehavior Or Recklessness By CCML, Cheyne LLP and CCIL.

As this Court noted in the *IKB* litigation, whether "ratings are actionable misstatements depends on whether plaintiffs have adequately alleged scienter." (Hr'g Tr., 5:10-12, May 18, 2010 (Mundiya Decl. Ex. 10).) Other recent decisions by Judges Kaplan, Baer and Crotty have recognized that a credit rating is "a statement of opinion by each agency that it believed, based on the models it used and the factors it considered, that the credit quality of the [assets] underlying each [security] was sufficient to support the assigned rating." *Tsereteli v.*

---

[6] Nor does the group pleading doctrine rescue plaintiffs' defective fraud claim. The Information Memoranda themselves make clear which portions were attributable to CCML, Cheyne LLP or CCIL, and which were not. Having been told that CCML, Cheyne LLP and CCIL did not verify any statements about credit ratings, plaintiffs should not be permitted to presume through the group pleading doctrine that they did. *See PIMCO*, 603 F.3d 144 at 158; *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 340-41 (S.D.N.Y. 2007); *see also Yung v. Lee*, 160 Fed. Appx. 37, 42 (2d Cir. 2005); *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990).

*Residential Asset Securitization Trust*, 692 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (dismissing claims based on credit ratings); *see also N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, 2010 WL 1172694, at *14 (S.D.N.Y. Mar. 26, 2010) (dismissing claims based on credit ratings; *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2010 WL 1473288, at *7-8 (S.D.N.Y. March 29, 2010) (dismissing claims based on credit ratings). Such opinions are actionable *only* if "the ratings agencies did *not* truly hold those opinions at the time they were made public." *Tsereteli*, 692 F. Supp. 2d at 394-95 (emphasis added); *see also DLJ Mortgage Capital, Inc.*, 2010 WL 1473288, at *7 (stating that credit ratings "are not actionable where plaintiffs failed to allege knowing falsity at the time of publication"). Only where the Rating Agencies' rating opinions were not truly held by the Rating Agencies are such statements false and misleading. *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090-95 (1991) ("A statement of belief may be open to objection . . . solely as a misstatement of the psychological fact of the speaker's belief in what he says."); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1131 (2d Cir. 1994) ("A statement of reasons, opinion or belief . . . can be actionable under the securities laws if the speaker knows the statement to be false.").[7]

Accordingly, the SIV's credit ratings were actionable misstatements only if they were not the truly held opinions of the Rating Agencies. CCML, Cheyne LLP and CCIL, in turn, would have known that those ratings were false statements only if they were aware that the Rating Agencies did not believe that the top ratings were justified. Plaintiffs do not even attempt to allege that CCML, Cheyne LLP and CCIL knew (or were informed) that the Rating Agencies

---

[7] *In re IBM Sec. Litig.*, 163 F.3d 102 (2d Cir. 1998), is not to the contrary. In that case, the Second Circuit articulated when "[s]tatements regarding projections of future performance may be actionable." *Id.* at 107. Unlike the statements "regarding the future payment of dividends" at issue in *In re IBM*, here plaintiffs allege that the top ratings assigned to the SIV's notes conveyed the opinion that the Rated Notes were "safe, secure and stable" investments. (TAC ¶ 154.)

did not truly hold the rating opinions assigned to the SIV. Put differently, plaintiffs have not alleged that CCML, Cheyne LLP and CCIL *knew* that a *misstatement* had been made. At best, plaintiffs allege that, if CCML, Cheyne LLP and CCIL had independently rated the SIV, they would have come to a result different from the Rating Agencies. (TAC ¶¶ 158-82.) That does not establish that CCML, Cheyne LLP and CCIL knew that the ratings actually assigned by the Rating Agencies were "false." We address each allegation in turn.

*First*, plaintiffs allege that "Cheyne Capital caused the Cheyne SIV to buy risky assets in its portfolio that were not a true representation of their investment grade rating." (TAC ¶ 161; *see also id.* ¶¶ 158-66.) In particular, plaintiffs cite paragraphs 84 through 112 of the Third Amended Complaint, in which nine SIV assets are discussed. (TAC ¶ 161.) Plaintiffs do not mention that those nine assets were highly rated by the Rating Agencies *at the time they were purchased by the SIV* – a fact directly at odds with plaintiffs' allegations. Even months after the receiver took control of the SIV in September 2007, each of those nine assets continued to have double or triple-A ratings, casting yet further doubt on the conclusory allegations that those assets were "risky":

| Investment Listed In TAC ¶ 85 | S&P Credit Rating as of November 2007 | Moody's Credit Rating as of November 2007 |
| --- | --- | --- |
| ARS1 2006-M1 | AA+ | Aa1 |
| ARS1 2006-W2 | AA+ | Aa1 |
| CMLTI 2007-AHL3 | AA+ | Aa1 |
| CARR 2005-NC3 | AA | Aa2 |
| FFMER 2007-3 | AA- | Aa2 |
| FHLT 2006-C | AAA | Aaa |
| LBMLT 2006-2 | AA | Aa2 |
| AHM 2006-a | AAA | Aaa |
| BCAP 2007-AA1 | AAA | Aaa |

(Mundiya Decl. Ex. 11.)[8]  Plaintiffs identify no information that would have caused CCML,

Cheyne LLP and CCIL to question the credit ratings assigned by the Rating Agencies to these

assets.  Thus, plaintiffs do not plead any *facts* from which to infer that CCML, Cheyne LLP or

CCIL *knew* that the SIV's assets were "risky" at the time they were purchased.  That those assets

may have been subsequently downgraded months after the SIV ceased operations – and later

dubbed "subprime" – are precisely the type of "fraud by hindsight" allegations that have been

rejected in this Circuit.  *See, e.g., Epirus Capital Mgmt., LLC v. Citigroup Inc.*, 2010 WL

1779348, at *5 (S.D.N.Y. Apr. 28, 2010).

        In addition, plaintiffs cite a number of documents (only one of which was sent to

CCML, Cheyne LLP or CCIL) to show that CCML may have sought "approval" of the Rating

Agencies before investing in securities backed by home equity loans.  (TAC ¶¶ 158-65.)  If

anything, that allegation simply shows that CCML consulted the Rating Agencies to determine

whether including certain asset types would impact the Rating Agency's credit ratings.  Indeed,

there is not a specific allegation that, despite their communications with the Rating Agencies,

CCML, Cheyne LLP or CCIL had formed a view, or held an opinion, that the credit ratings

issued by the Rating Agencies for the SIV's securities were false, inaccurate or unjustified.

        *Second*, plaintiffs allege that "Cheyne Capital" (without identifying any specific

entity) knew that the SIV's credit ratings were not supported because "flawed data and

assumptions were being used in the model."  (TAC ¶ 170; *see also id.* ¶¶ 167-69.)  Plaintiffs

quote a Moody's email from May 2005 (months before the SIV was launched and issued its first

---

[8] The Court may properly consider on this motion the ratings published by the Rating Agencies
for the securities identified in the TAC.  *See* Order at 3, *King Cnty, WA v. IKB Deutsche
Industriebank AG, et al.*, No. 09 Civ. 8387 (SAS) (S.D.N.Y. Apr. 1, 2010) (taking judicial notice
of ratings action by Fitch); *Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007)
("the Court may take such judicial notice of . . . historical stock prices").

security) discussing the absence of "spread data" supporting the model's assumptions about spread volatility. (*Id.* ¶ 170.) Plaintiffs do not explain why this assumption would invalidate (or was relevant to) the Rating Agencies' credit rating, much less why CCML (as Cheyne LLP was not even in existence) should have been aware this was the case, or even if such data was not publicly available by the time the SIV was actually launched. Judge Kaplan recently rejected similar allegations that "Moody's and S & P used out-of-date models based on assumptions that did not reflect the realities of the mortgage market." *In re Lehman Bros. Sec. & Erisa Litig.*, 684 F. Supp. 2d 485, 495 (S.D.N.Y. 2010) ("At best, [such allegations] support an inference . . . that the ratings agencies could have used methods that better would have informed their opinions.").

      *Third*, plaintiffs cite a few emails in which CCML requested alleged investment "exceptions" and a so-called "significant reduction in the Cheyne SIV's capital buffer." (TAC ¶¶ 171-79.) None of those emails support the conclusion that CCML knew that the ratings assigned to the SIV were too high. Indeed, as the Third Amended Complaint admits (*id.* ¶ 174), each of the emails in which an "exception" was sought or obtained is dated *before* the SIV was even launched, and thus even before a single credit rating was issued. Plaintiffs supply no link between those isolated emails and the credit ratings themselves, and none exists.

      Plaintiffs' "capital buffer" allegations are equally unavailing. According to plaintiffs, in February 2006, the Rating Agencies agreed to amend the "Junior Capital Note buffer requirement" from 1% to .75%. (TAC ¶¶ 178-79.) The email on which plaintiffs rely – which was not even sent to CCML – states that this change was to be "temporary" and approved only if the proceeds of certain "prefunded senior notes" are "kept in cash." (*Id.*) With those conditions, the Rating Agencies approved the capital buffer without changing their credit ratings. (*Id.* ¶ 179.) Plaintiffs offer no basis whatsoever to infer from those alleged facts that CCML

- 23 -

knew the SIV no longer deserved the ratings it was assigned by the Rating Agencies.

        *Fourth*, plaintiffs' allegation that "Cheyne Capital had no experience in creating or managing an SIV" (TAC ¶ 180) is misplaced. The Information Memoranda described CCML's extensive relevant investment management experience. (Capital Note Info. Mem. at 84; Medium Term Note Info. Mem. at 68; Commercial Paper Info Mem. at 26 (Mundiya Decl. Exs. 2, 3, and 9).) Plaintiffs have not alleged that any of that information was false or misleading. Moreover, plaintiffs do not allege how or why that allegation, even if true, would support an inference that CCML, Cheyne LLP and CCIL knew that the Rating Agencies' opinions were inaccurate.

        *Fifth*, plaintiffs allege that "Cheyne Capital" knew of "debilitating conflicts of interest the Rating Agencies labored under in rating the Cheyne SIV." (TAC ¶ 182.) As Judge Kaplan recently recognized, "the risk that the ratings agencies operated under a conflict of interest because they were paid by the issuers had been known publicly for years." *Lehman Bros.*, 684 F. Supp. 2d at 492. That CCML, Cheyne LLP and CCIL – like everyone else – were aware of the potential conflict of interest cannot support an inference of fraud.

        2.      **<u>Plaintiffs Have Failed To Adequately Allege Motive And Opportunity.</u>**

        Plaintiffs allege that CCML, Cheyne LLP and CCIL were motivated to "acquire and maintain the false ratings" because they received higher fees based on the success of the SIV. (TAC ¶¶ 183-86.) That general motive has been rejected as insufficient to plead scienter as a matter of law. *See, e.g., San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 814 (2d Cir. 1996) (desire to maintain high bond or credit rating, and maximize the marketability of debt securities, does not qualify as a sufficient motive); *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 228 (S.D.N.Y. 2008) (motive to "continue to obtain high management fees, [is] the type of generalized motive[] that the Court of

Appeals has concluded do[es] not suffice to establish scienter, because [it can] be imputed to any

for-profit endeavor."); *Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 278

(S.D.N.Y. 2003) ("motive to commit the fraud because the better the funds' performance, the

higher [the] fees, is analogous to the argument previously rejected that an executive has a motive

to commit fraud merely because his compensation is tied to stock price").[9]

## IV.    PLAINTIFFS' AIDING AND ABETTING CLAIM SHOULD BE DISMISSED.

In order to make out a claim for aiding and abetting a fraud, plaintiffs must allege

that CCML, Cheyne LLP and CCIL *knew* of the alleged fraud of others and that they "provided

substantial assistance to advance the fraud's commission." *See, e.g., Lerner v. Fleet Bank, N.A.*,

459 F.3d 273, 292 (2d Cir. 2006) (citation omitted).  Plaintiffs have not come close to alleging

that CCML, Cheyne LLP and CCIL knew that the SIV's ratings were false or that they took steps

to "substantially assist" others in fraudulent conduct.  (*See supra* Part III.B.)  Plaintiffs thus have

not stated a claim for aiding and abetting fraud.

## CONCLUSION

For the reasons set forth above, CCML, Cheyne LLP and CCIL respectfully

submit that plaintiffs' claims against them should be dismissed, with prejudice.

Dated: July 2, 2010

WILLKIE FARR & GALLAGHER LLP

By: _____

Tariq Mundiya
Jeffrey B. Korn
787 Seventh Avenue
New York, New York  10019
(212) 728-8000 (phone)
(212) 728-8111 (facsimile)
tmundiya@willkie.com

---

[9] The alleged motive here is very different than that alleged in the *IKB* action, where the SIV at issue was allegedly used as a receptacle into which troubled assets would be transferred from IKB's balance sheet.  No such allegation is, or can be, made here.

- 25 -

*Attorneys for Cheyne Capital Management Limited,*
*Cheyne Capital Management (UK) LLP, and*
*Cheyne Capital International Limited*

5618791