

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABU DHABI COMMERCIAL BANK, KING COUNTY, WASHINGTON Together and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY & CO. INTERNATIONAL PLC, MOODY'S INVESTORS SERVICE, INC., MOODY'S INVESTORS SERVICE LTD., STANDARD AND POOR'S RATINGS SERVICES and THE McGRAW HILL COMPANIES, INC.,<br><br>　　　　　　　　　Defendants. | **REPORT AND RECOMMENDATION NO. 15**<br>PLAINTIFFS' REQUEST FOR AUTHORIZATION TO DEPOSE ANDREW KIMBALL AND RICHARD CANTOR<br><br>Case No. 08 Civ. 7508 (SAS)<br><br> |

JONATHAN M. REDGRAVE, SPECIAL MASTER:

　　　　This Report and Recommendation addresses the issue of Plaintiffs' Request for authorization to depose Andrew Kimball and Richard Cantor. Defendants Moody's Investors Service, Inc. and Moody's Investors Service Ltd. (collectively, "Moody's") object to Plaintiffs' Request. Plaintiffs and Moody's have been unable to resolve the dispute. Plaintiffs and Moody's have provided their respective positions in Submissions to the Special Master, and this issue is now ripe for decision.

1

## I.   BACKGROUND

1. On June 22, 2011, Plaintiffs submitted their Request for authorization to depose Andrew Kimball and Richard Cantor, "Moody's executives working in New York." Plaintiffs' Submission was made pursuant to "the Special Master's Report and Recommendation No. 2 and Judge Scheindlin's May 11, 2011 Order," wherein Judge Scheindlin "adopted the 'good cause' standard recommended" by the Special Master in Report and Recommendation No. 2. Plaintiffs argued that each of the two proposed depositions met all four requirements of the "good cause" standard.[1]

2. Moody's replied on July 1, 2011 (in a letter dated June 30, 2011), unsurprisingly arguing that Plaintiffs' Request did not meet the "good cause" standard set forth in the Special Master's Report and Recommendation No. 2 for either Mr. Kimball's or Mr. Cantor's depositions.[2]

3. On July 7, 2011, Plaintiffs submitted their reply to Moody's Opposition.[3]

## II.   PLAINTIFFS AND MOODY'S POSITIONS REGARDING THE DEPOSITION OF ANDREW KIMBALL

4. Plaintiffs contend that they have good cause to take Andrew Kimball's deposition because Mr. Kimball "possess[es] important, relevant information that is neither cumulative nor duplicative and cannot be obtained from more convenient sources."[4] That contention relies on several assertions:

   a. Plaintiffs assert that Mr. Kimball was Moody's "Chief Credit Officer during the relevant time period," where Mr. Kimball would have been "responsible for

---

[1] Pls.' June 22, 2011 Submission Regarding Authorization to Depose Andrew Kimball and Richard Cantor ("Pls.' Kimball and Cantor Submission") at 1.
[2] Letter from J. Coster to Special Master Redgrave re *Abu Dhabi Comm'l Bank, et al. v. Morgan Stanley & Co., et al.* (June 30, 2011) ("Moody's Opposition") at 1.
[3] Pls.' July 7, 2011 Reply Submission in Response to Moody's July 1, 2011 Letter Regarding Plaintiffs' Request for Leave to Depose Andrew Kimball and Richard Cantor ("Pls.' Kimball and Cantor Reply Submission").
[4] Pls.' Kimball and Cantor Submission, at 1.

      overseeing and aligning credit policy within the company" including business with "SIVs and the assets they held." Plaintiffs also discuss Mr. Kimball's work as "chairman of the credit policy committee" and "member of Moody's subprime working group."[5]

    b. Plaintiffs assert that Mr. Kimball directly "questioned Moody's decision to maintain Moody's investment grade rating on Cheyne after the SIV went into enforcement," that Mr. Kimball "observed serious flaws in Moody's structured finance ratings methodologies," and that Mr. Kimball performed a September 2007 assessment of Moody's structured finance ratings models and methodologies, subsequently communicating to Moody's senior management "that Moody's lacked the required historical data on structured finance products 'to allow for reasonable predictions of performance.'"[6]

    c. Plaintiffs assert that Mr. Kimball "questioned Moody's use of grandfathering," and "crafted and edited communications to investors regarding the collapse of SIVs, including Cheyne."[7]

5. Moody's does not disagree that Mr. Kimball held the positions Plaintiffs outlined in their Submission, but contends that Mr. Kimball's positions were known to Plaintiffs well in advance of Plaintiffs' current deposition request. Moody's contends that the two documents Plaintiffs cite to demonstrate Mr. Kimball's involvement with the Cheyne SIV – documents that specifically name Cheyne SIV – were produced in July of 2009. Finally, Moody's contends that Mr. Kimball's positions did not make Mr. Kimball more knowledgeable about the specific matters at issue in this case, including the Cheyne SIV ratings process.

---

[5] Pls.' Kimball and Cantor Submission, at 4.
[6] *Id.* at 4-5.
[7] *Id.* at 5.

6. Instead, Moody's asserts that Plaintiffs claim only one instance of "unique" knowledge: a statement made by Mr. Kimball in a document, produced in July 2009, which states that Mr. Kimball has only an "outsider's view" on the Cheyne SIV.[8]

7. Moody's also makes the point that, if there are specific issues Plaintiffs have identified as worthy of additional examination (such as "Markovian transitions"), Plaintiffs have the opportunity to take a second 30(b)(6) deposition of Moody's to explore those issues.[9]

8. Moody's further states that it "believes that 'the use of Markovian transitions in the rating of the Cheyne SIV' and 'the preparation of the SIV Event Review' are sufficiently narrow topics, consistent with [the Special Master's] guidance in Report and Recommendation No. 13."[10] In Report and Recommendation No. 13, the Special Master recommended giving Plaintiffs the opportunity to take an additional one-day Rule 30(b)(6) deposition of Moody's, which would follow a meet-and-confer discussion between the Parties to reach agreement on the scope of the topics to be addressed at the deposition.[11] Thus, Moody's appears to represent that the topic of "Markovian transitions" "in the rating of the Cheyne SIV" and "the preparation of the SIV Event Review" would be an appropriate topic for the additional one-day Rule 30(b)(6) deposition of Moody's.

9. Finally, Moody's asserts that Plaintiffs have had ample opportunity to depose Mr. Kimball, but that Plaintiffs have "prioritized the deposition[s] of [Moody's] witnesses – which was, of course, [Plaintiffs'] choice to make" and opted to leave Mr. Kimball off their priority list.[12]

---

[8] Moody's Opposition, at 1.
[9] *Id.* at 5.
[10] *Id.* at 5, fn. 5.
[11] Report and Recommendation No. 13, at ¶¶ 63-70 (Dkt. No. 275) (adopted by the Court on July 12, 2011 (Dkt. No. 281)).
[12] Moody's Opposition, at 6.

4

**III.     PLAINTIFFS AND MOODY'S POSITIONS REGARDING THE DEPOSITION OF RICHARD CANTOR**

10. Plaintiffs contend that they have good cause to take Richard Cantor's deposition. Plaintiffs' contention also relies on several assertions:

   a. Plaintiffs assert that Mr. Cantor possesses "unique and highly relevant information" due to Mr. Cantor's positions within Moody's. Plaintiffs state that, from June 2001 through July 2008, Mr. Cantor served as the "Managing Director of Moody's Credit Policy Research Group," served on "Moody's Structured Finance Credit Committee, Moody's Credit Policy Committee," was co-chair for Moody's Academic Advisory Panel, and was a "member of the Fundamental Credit Committee."[13]

   b. Plaintiffs assert that the "vast majority" of Mr. Cantor's custodial documents were produced after March, 2011.[14]

   c. Plaintiffs indicate that Mr. Cantor has unique information because, in January 2005, Mr. Cantor expressed a "concern"[15] (later posited as a "warning"[16]) about a ratings model. Following his 2005 concern/warning, Mr. Cantor was then part of a team that conducted an "SIV Event Review" which contained a number of comments on Moody's practices.[17]

   d. Plaintiffs state that Mr. Cantor has information relevant to the case, due to his participation in the Cheyne Monitoring Committee, although Plaintiffs do not point out specific statements by Mr. Cantor in this regard.[18]

---

[13] Pls.' Kimball and Cantor Submission, at 1.
[14] *Id.* at 2.
[15] *Id.* at 2.
[16] *Id.* at 1.
[17] *Id.* at 2-3.
[18] *Id.* at 4.

11. Moody's asserts that the basis for Plaintiff's deposition request for Mr. Cantor centers on Mr. Cantor's roles within the company, and "five documents in which Mr. Cantor's name appears."[19]

12. Moody's asserts that Plaintiffs have had ample opportunity to depose Mr. Cantor, and that if Mr. Cantor's testimony was necessary following Mr. Tabe's March 3, 2011 deposition, Plaintiff's current pursuit of that testimony is tardy.[20] This combines with Moody's assertion above that Plaintiffs have "prioritized the deposition[s] of [Moody's] witnesses – which was, of course, [Plaintiffs'] choice to make."[21]

## IV.  STANDARD

13. In relevant part in the Court's May 11, 2011 Order, Judge Scheindlin adopted the standard set forth in the Special Master's Report and Recommendation No. 2, Limitations on Number of Depositions.[22]

14. This standard, set forth specifically in Paragraph 19 of Report and Recommendation No. 2, requires the following:

    a. A good-faith basis by counsel for seeking the additional deposition;

    b. The proposed deposition is not unreasonably cumulative, duplicative, or obtainable from a more convenient source;

    c. The Part(y)(ies) seeking the deposition did not previously have ample opportunity to obtain the information sought; and

    d. Any burden or expense of the deposition is not outweighed by its likely benefit, given the needs of the case.

---

[19] Moody's Opposition, at 2.
[20] *Id.* at 2.
[21] *Id.* at 6.
[22] Order dated May 11, 2011 (Dkt. No. 249).

15. Plaintiffs have specifically referenced the "good cause" standard in their June 22, 2011 Submission.[23]  The Special Master, therefore, is called upon to interpret that standard in this instance for the proposed depositions.

16. The requirement for a "good-faith" basis under section (a) of the "good cause" standard is not unique in federal practice, and the Special Master takes general direction in this regard from Fed.R.Civ.P. 11, which requires a good-faith basis for factual and legal contentions contained in a pleading.  As in *Campo v. Sears Holding Corp.*,[24] discretion is left to the fact finder – here, the Special Master.

17. The final three requirements of the "good cause" standard are likewise left to the discretion of the Special Master.

18. In evaluating these requirements, the Special Master is also mindful of the additional Court guidance provided in the Court's May 11, 2011 Discovery Order.  That guidance provided that:

> Discovery must be managed and focused so that it does not become abusive.  There is no reason that a single 30(b)(6) deposition of each plaintiff should not be sufficient to provide defendants with the information [they need] to prepare for a dispositive motion.  Should the case proceed to trial, I intend to impose the following rule:  if in its pretrial order a party lists a witness who has not been deposed, both parties have the right to depose that witness prior to trial.  To avoid over-designation of witnesses in the pretrial order, the court will carefully review the witness list with the parties to ensure that there is no redundancy and no gamesmanship in selecting witnesses solely because they have not been deposed. Once the list is finalized the pretrial deposition rule will be triggered.[25]

---

[23] Pls.' Kimball and Cantor Submission, at 1.
[24] *Campo v. Sears Holding Corp.*, 371 Fed.Appx. 212, 2010 WL 1292329, at *216, fn. 4 (C.A.2. N.Y.)
[25] Order dated May 11, 2011, at 3 (Dkt. No. 249).  Although the Court's statements focus on Defendants' depositions of Plaintiffs' witnesses, the Special Master believes that they apply equally to Plaintiffs' depositions of Defendants' witnesses.

### V.      FINDINGS

**The Requested Deposition of Andrew Kimball**

19. Plaintiffs have met the required burden of "good faith" in seeking Mr. Kimball's deposition. There is ample evidence from Plaintiffs' Submissions that Mr. Kimball has a colorable connection to the subject matter of this litigation, and could indeed possess some relevant information.

20. However, it seems as though testimony or facts adduced from Mr. Kimball's deposition would be "cumulative, duplicative, or obtainable from a more convenient source." While Mr. Kimball may have had oversight over Moody's credit policy, it is unclear how relevant or unique any Cheyne SIV information Mr. Kimball possesses might be. The Special Master believes this is, in part, due to a lack of evidence presented by Plaintiffs which would demonstrate a close involvement by Mr. Kimball to the facts of this case.

21. In this context, the Special Master finds one of Moody's arguments especially compelling: of the documents cited by Plaintiffs to support their request for Mr. Kimball's deposition, the document Plaintiffs claims supports Mr. Kimball's "unique" knowledge is itself facially clear that Mr. Kimball represents <u>himself</u> as an "outsider" when providing his opinion.[26]

22. Additionally, a number of the documents Plaintiffs cite to in support of their deposition request for Mr. Kimball are not "new," even in the specific context of this litigation's production, and Plaintiffs have already had the opportunity to name Mr. Kimball as one of their numerous deponents from Moody's.[27] They did not.

---

[26] Moody's Opposition, at 3.
[27] The Special Master recognizes that Moody's production was not completed until May, 2011, but that fact does not undercut the argument and conclusion that Plaintiffs knew about Mr. Kimball—and many of the documents—yet chose to pick other individuals for deposition ahead of, or instead of, Mr. Kimball.

23. Indeed, the fact that Plaintiffs did not include Mr. Kimball as one of their primary deponents is unsurprising, given the tangential relationship Mr. Kimball appears to have with the matters at issue in this case.  And while it seems that Plaintiffs passed up their opportunity to obtain the information sought from Mr. Kimball once, Plaintiffs will <u>still</u> have at least one additional opportunity to seek information as to what a particular statement by Mr. Kimball meant (as well as address all of the cited documents if they choose) – through Plaintiffs' second 30(b)(6) deposition of Moody's.

24. As Moody's correctly notes, "the burden of a deposition is not, of course, limited to travel time."[28]  Therefore, despite Plaintiffs' point that Mr. Kimball would not have to travel for a deposition, the Special Master is unconvinced that the burden associated with a deposition of Mr. Kimball would be outweighed by its benefit.

25. Finally, according to the Court's May 11, 2011 Discovery Order, should the case proceed to trial and Mr. Kimball is listed by a Party as a witness in the Pretrial Order, the Parties will have the right to depose Mr. Kimball prior to trial.

26. Therefore, in sum and on the record presented, the Special Master finds, with respect to Plaintiffs' request for leave to depose Mr. Kimball under the "good cause" standard recommended by the Special Master in Report and Recommendation No. 2 and adopted in the Court's May 11, 2011 Order, that:

    a. Plaintiffs have established a good-faith basis for seeking the additional deposition;

    b. The proposed deposition would likely be unreasonably cumulative and duplicative and is likely obtainable from a more convenient source;

    c. Plaintiffs previously have had ample opportunity to obtain the information sought; and

---

[28] Moody's Opposition, at 6, fn. 7.

9

    d.   The burden and expense of the deposition is outweighed by its likely benefit, given the needs of the case.

**The Requested Deposition of Richard Cantor**

27. Plaintiffs have met the required burden of "good faith" in seeking Mr. Cantor's deposition; as with Mr. Kimball, there is evidence from Plaintiffs' Submissions that Mr. Cantor has a colorable connection to the subject matter of this litigation.

28. Also as with Mr. Kimball, however, it appears that Mr. Cantor's deposition likely would be unreasonably "cumulative, duplicative, or obtainable from a more convenient source." Mr. Cantor belonged to quite a few Moody's committees, and was likely privy to information that could be related to the Cheyne SIV. Beyond this, the information submitted by the Parties indicates that other sources of testimony exist. For example, while Plaintiffs correctly note that Mr. Cantor did e-mail Mr. Tabe regarding Mr. Tabe's paper, that e-mail was facially predicated on what Mr. Cantor presented as his "[g]lance…at [Mr. Tabe's] paper, motivated by a reference to the credit rating change correlation analysis…"[29] Where Plaintiffs are pursuing testimony about a "glance" by Mr. Cantor, or a decidedly "outsider" view by Mr. Kimball, this does not appear to be "core" fact witness testimony necessary for this case.

29. As with Mr. Kimball, a number of the documents regarding Mr. Cantor were apparently known to Plaintiffs for some time,[30] and Mr. Cantor's position was not a secret. Plaintiffs had ample opportunity to name Mr. Cantor as one of their numerous Moody's deponents. Again, as with Mr. Kimball, they did not.

---

[29] Pls.' Kimball and Cantor Submission, Exh. 5.
[30] Again, the Special Master recognizes that Moody's production was not completed until May, 2011, but that fact does not undercut the argument and conclusion that Plaintiffs knew about Mr. Cantor—and many of the documents—yet chose to pick other individuals for deposition ahead of, or instead of, Mr. Cantor.

30. Here too, the fact that Plaintiffs did not include Mr. Cantor as one of their primary deponents is unsurprising given the tangential relationship Mr. Cantor appears to have with the matters at issue in this case. For the same burden reasons discussed above in the context of Mr. Kimball's deposition, and despite Plaintiffs' point that Mr. Cantor would not have to travel for a deposition, the Special Master is unconvinced that the burden associated with a deposition of Mr. Cantor would be outweighed by its benefit.

31. Finally, according to the Court's May 11, 2011 Discovery Order, should the case proceed to trial and Mr. Cantor is listed by a Party as a witness in the Pretrial Order, the Parties will have the right to depose Mr. Cantor prior to trial.

32. Therefore, in sum and on the record presented, the Special Master finds, with respect to Plaintiffs' request for leave to depose Mr. Cantor under the "good cause" standard recommended by the Special Master in Report and Recommendation No. 2 and adopted in the Court's May 11, 2011 Order, that:

    a. Plaintiffs have established a good-faith basis for seeking the additional deposition;

    b. The proposed deposition would likely be unreasonably cumulative and duplicative and is likely obtainable from a more convenient source;

    c. Plaintiffs previously have had ample opportunity to obtain the information sought; and

    d. The burden and expense of the deposition is outweighed by its likely benefit, given the needs of the case.

## VI. RECOMMENDATION

33. The Special Master recommends that the Court deny Plaintiffs' Request, under the "good cause" standard recommended by the Special Master in Report and Recommendation No. 2 and adopted in the Court's May 11, 2011 Order, for authorization to depose Andrew Kimball and Richard Cantor.

_____
Jonathan M. Redgrave
Special Master

Dated: August 11, 2011

The clerk of the court is directed to docket this Report + Recommendation of the Special Master. So ordered.

_____
Shira A. Scheindlin
U.S.D.J.
8/12/11