UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ABU DHABI COMMERCIAL BANK, et al., Individually and On Behalf of All Others Similarly Situated, | : | Civil Action No. 1:08-cv-07508 |
|  | : | |
|  | : | CLASS ACTION |
|  | : | |
| Plaintiffs, | : | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR |
|  | : | RECONSIDERATION OF THE COURT'S |
| vs. | : | AUGUST 26, 2011 ORDER ON |
|  | : | TRANSLATED SEARCH TERMS |
| MORGAN STANLEY & CO. INCORPORATED, et al., | : | |
|  | : | |
| Defendants. | : | |

647458_1

Plaintiffs Abu Dhabi Commercial Bank, King County, Washington, SEI Investments Company, SEI Investment Strategies, LLC, The Bank of N.T. Butterfield & Son Limited, SFT Collective Investment Fund, Deutsche Postbank AG, Global Investment Services Limited, Gulf International Bank B.S.C., Bank Hapoalim B.M., Bank SinoPac, National Agricultural Cooperative Federation, State Board of Administration of Florida, Commonwealth of Pennsylvania Public School Employees' Retirement System and Commerzbank AG, respectfully request that, pursuant to Local Civil Rule 6.3, the Court reconsider its August 26, 2011 Order (Dkt. No. 302) ("Order") on translated search terms.

I.    PRELIMINARY STATEMENT

Given that the Court issued its Order without a submission from plaintiffs, it appears that the Court did not have the opportunity to consider, and therefore overlooked, information that is highly relevant to the Court's Order.  Based on defendants' representation, the Court found that "on May 5, 2011, during a teleconference with plaintiffs and the Special Master, defendants raised the need to translate the R&R 10 search terms once those terms were agreed upon."  Order at 3-4.  We now know this representation was incorrect – the parties did not even have a conference call with the Special Master on May 5, 2011, let alone discuss the need for translated search terms.  The Court's conclusion that "when defendants raised the issue before the Special Master, plaintiffs did not object" is predicated on this factual error.  Order at 4.  Further, as evidenced by the parties' correspondence and the absence of a single written reference to translation of the Amended Report and Recommendation No. 10 ("R&R 10" or "Amended R&R 10") search terms in any of the ten submissions by defendants concerning R&R 10, the defendants did not raise the issue of translating the R&R 10 search terms at any point prior to July 5, 2011, almost a month after R&R 10 was issued.

- 1 -

647458_1

As the Court is aware, R&R 10 required application of more than 4,000 searches to the data of eleven plaintiffs.  Plaintiffs' national vendor – Encore Discovery Solutions ("Encore"), who performs more electronic discovery searches on more data than almost anyone else in the United States – stated that the number of R&R 10 search terms is extraordinary and these searches involved the application of more search terms to a client's data than almost any other set of searches that Encore's project manager could recall.  These massive searches and subsequent productions required plaintiffs to expend hundreds of thousands of dollars and required months to complete.  Now, due to defendants' mistake, plaintiffs have been required to assume the unthinkable burden of repeating these massive searches for their foreign plaintiffs.  This burden is especially troubling given the Court's comments that it would be "*[un]fair to start a new collection.  You can't go back to all custodians and start digging all over; that's not fair.  It's too late.  It's essentially waived*." Ex. 1 at 40:8-11.[1]  Indeed, defendants' belated request that plaintiffs re-collect and re-search the data of foreign plaintiffs by translating the more than 4,000 search terms required by R&R 10 appears to be little more than a calculated ploy to impose tremendous expense and burden on plaintiffs and would needlessly extend fact discovery yet again.  Defendants should not be rewarded (nor should plaintiffs be punished) for defendants' delay in asking for translations of the R&R 10 terms, and discovery in this case should not be continued any further.

---

[1]     Unless otherwise noted, all emphasis is added.

647458_1

II.     **PLAINTIFFS SHOULD NOT HAVE TO REPEAT THE MASSIVE AND BURDENSOME R&R 10 SEARCHES DUE TO DEFENDANTS' DELAY**

A.      **Contrary to Defendants' Claims, Defendants Did Not Request Translations of the R&R 10 Search Terms Until July 5, 2011**

Defendants have known since at least January of 2011 that some of the plaintiffs subject to R&R 10 communicate in languages other than English.[2]  Yet, they *never* raised this issue until July 5, 2011, *after* plaintiffs had already spent hundreds of thousands of dollars running the R&R 10 search terms.  Defendants claim that they raised this issue on a single telephone call on May 5, 2011: "[a]ll the defendants know that." Ex. 1 at 36:13.  Unfortunately for defendants, there was neither a call with the Special Master on May 5th nor was there a call among the parties on that date. *See* Ex. 4 at 1.[3]  Indeed, plaintiffs do not recall defendants ever requesting that plaintiffs run translations of the R&R 10 search terms before July 5, 2011.  Nor do plaintiffs' notes of the various calls with defendants and the Special Master reflect that defendants ever raised the search term issue before that date.  Simply put, defendants never raised this issue before plaintiffs had already spent hundreds of thousands of dollars on the R&R 10 searches.

The conclusion that defendants never requested that plaintiffs run translations of the R&R 10 search terms until July 5, 2011 is further strengthened by a review of the hundreds of pages of correspondence on the search term issue.  In particular, *defendants provided no fewer than ten*

---

[2]     On January 11, 2011, defendants requested that plaintiffs run translated versions of the December 7, 2010 searches for plaintiff Deutsche Postbank, A.G. ("Postbank").  In the spirit of cooperation, plaintiffs agreed to do so. *See* Exs. 2-3.

[3]     While, at the August 10 hearing, plaintiffs believed that defendants did not raise the issue of translating the R&R 10 terms on May 5 or at any other time before July 5, 2011, out of an abundance of caution, plaintiffs merely said "I don't recall them raising" the issue. Ex. 1 at 38:15-17.  Since that hearing, plaintiffs have been able to consult their notes, calendars and invoices from Special Master Redgrave, as well as correspondence between the parties.  After such review, it is clear that defendants did not raise the issue until July of 2011.

647458_1

***written submissions on the search terms called for by R&R 10.   Not a single submission referenced a request to translate such search terms***.[4]   As the Court may recall, the parties first discussed the issue of search terms with the Special Master almost seven months ago on February 2, 2011.  *See* Report and Recommendation No. 3, Discovery Relating to Search Terms to Be Used by Certain Plaintiffs ("R&R 3"), ¶3 (Dkt. No. 225).  On February 7, 2011, defendants presented the first of ten written submissions on the issue of the R&R 10 search terms.  *See* Ex. 5.  While this submission (and the nine submissions that followed it) contained defendants' detailed descriptions of the search terms they argued plaintiffs should run, the submission was utterly silent as to the need to run translations of those search terms.  *See id.*

On February 14, 2011, plaintiffs provided their search term proposal (which, like defendants' search term proposals, did not provide for the use of translated search terms) to defendants and the Special Master.  *See* Ex. 15.  Defendants addressed plaintiffs' proposal in a February 16, 2011 submission to the Special Master.  *See* Ex. 6.  While defendants' submission contained an exceedingly detailed request as to the protocol plaintiffs use to conduct their search terms – *e.g.*, providing that "[p]laintiffs must run all searches over all text searchable fields" and "plaintiffs must run all searches [so that] . . . commas are to be read as 'or' for the purposes of constructing searches" – defendants' submission was again utterly silent as to the issue of plaintiffs running translated search terms.  *See, e.g., id.* at 2.  On February 24, 2011, defendants provided another detailed submission regarding the search terms.  *See* Ex. 7.  This submission made no reference to translating the search terms either.

---

4       *See* Defendants' submissions of February 7, 2011, Ex. 5; February 16, 2011, Ex. 6; February 24, 2011, Ex. 7; March 23, 2011, Ex. 8; April 28, 2011, Ex. 9; May 20, 2011, Ex. 10; May 23, 2011, Ex. 11; May 26, 2011, Ex. 12; June 3, 2011, Ex. 13; and June 10, 2011, Ex. 14.

647458_1

On March 21, 2011, the Special Master e-mailed a draft R&R 3 on the search term issue.  In his cover e-mail, the Special Master invited the parties to comment on the draft, explaining he was providing a draft version of R&R 3 "to avoid any ***unanticipated consequences*** with respect to the proposed resolution suggested by the Special Master.  ***Importantly I want to make sure that any easily addressed errors (such as . . .  misstatement of an agreed-upon scope of search, or misunderstanding of a party's position) can be corrected*** before the documents are . . . filed with the Court . . . ." *See* Ex. 16.  Neither the draft R&R 3, defendants' March 23, 2011 comments on the draft, nor the April 1, 2011 "final" R&R 3 contained a reference to translations of the search terms. *See* Ex. 8; *see also* R&R 3.  Plaintiffs timely objected to R&R 3 on April 22, 2011, and the Court remanded the issue back to the Special Master on April 27, 2011.  *See* Plaintiffs' Objections to the Special Master's March 21, 2011 Report and Recommendation No. 2,  April 1, 2011 Report and Recommendation No. 3 and April 1, 2011 Report and Recommendation No. 5 (Dkt. No. 233) and Order (Dkt. No. 237).[5]

On May 27, 2011, the Special Master issued Report and Recommendation No. 10 ("Original R&R 10") on the search term issue.  *See* Ex. 17.  Original R&R 10 did not require plaintiffs to run translations of the search terms.  *See id.*[6]  The Special Master then invited further conferences and submissions from the parties on Original R&R 10.  Defendants provided a June 3, 2011 submission

---

[5]    On April 28, 2011, defendants filed a belated response to plaintiffs' objections to R&R 3, which again never referenced translations of the search terms. *See* Ex. 22.  After remand, defendants provided written submissions on the search term issue on May 20, May 23, and May 26, 2011 (all after defendants' alleged raising of the translation issue on May 5, 2011).  *See* Exs. 10-12.  While these submissions contained detailed comments on the proposed search terms, they were entirely silent on the issue of running translations of the search terms.

[6]    Due to the burden associated with Original R&R 10, plaintiffs indicated that they would file objections to it.  *See* Ex. 18.

647458_1

on Original R&R 10 which contained, in the form of two redline markups, defendants' suggested

revisions to it. *See* Ex. 13. This submission, too, was utterly silent as to running translations of the

search terms. *Id*. The Special Master ultimately issued Amended Report and Recommendation No.

10 on June 7, 2011 (Dkt. No. 258). Like the draft R&R 3, the final R&R 3, and the Original R&R

10 before it, Amended R&R 10 did not require the use of translated search terms. While defendants

filed a 19-page written objection to Amended R&R 10 on June 10, 2011, their objection said

***nothing*** about the absence of a requirement that the Amended R&R 10 search terms be translated.

*See* Ex. 14. The Court overruled defendants' objections to Amended R&R 10 on June 15, 2011.

Surely, had defendants raised the search term issue on May 5, defendants' June 3 and June 10

submissions would have pointed out the absence of a translation provision in Original R&R 10 and

Amended R&R 10, respectively. Moreover, defendants' first written request for translation of the

R&R 10 search terms does not reference a prior oral request. *See* Ex. 19. It merely states that "as

we noted with Deutsche Postbank [regarding the December 7, 2010 mortgage market searches],

plaintiffs with custodians located outside of the United States occasionally communicate in a foreign

language." *Id*. at 1. When plaintiffs responded to Mr. Miller's e-mail on July 7, 2011, plaintiffs

explicitly told defendants that they were "very surprised that ***defendants are now, for the first time,***

***suggesting that plaintiffs undertake keyword searches beyond***" those provided for in R&R 10, that

"over the past six months, the parties have spent countless hours discussing and preparing

submissions on the issue of search terms with each other, Special Master Redgrave and the Court"

but "***[n]ever once in the course of these various discussions, submissions, objections or hearings***

***did defendants ever suggest that searches in foreign languages were appropriate***" and that

"***[d]efendants' decision to wait until after the search term order was finalized to suggest foreign***

*language searches [wa]s shocking*." Ex. 20.  Defendants never responded to this e-mail and did not

raise the issue of translated R&R 10 searches again for weeks.

Additionally, defendants' attempts to cloud the issue by reference to document requests to

plaintiffs that requested production in native languages are unpersuasive.  Requesting that plaintiffs

produce responsive documents regardless of what language they are in (which plaintiffs have done in

their manual – *i.e.*, non-search term collections of documents) is a far cry from requesting that

plaintiffs translate the more than 4,000 searches into various foreign languages.[7]  Indeed, *plaintiffs*

*have produced thousands of foreign language documents and have taken steps to collect*

*documents related to Cheyne and to categories of documents (whether in English or another*

*language) described in defendants' document requests without the use of search terms*.

The Court's conclusion that the foreign plaintiffs' production to date "indicates that the

application of English search terms, is unsurprisingly, not working" is based on incomplete

---

[7]      The Court's Order as to the production of "(translated) responsive documents" is unclear to
plaintiffs.  Order at 6.  Plaintiffs cannot tell whether the Order requires the production of foreign
language documents in their native language, or requires translation of those documents into English.
If it is the former, plaintiffs have not withheld foreign language documents on the basis that they are
in a foreign language (and already have produced thousands of such documents).  However, if it is
the latter, there is no authority for the proposition that plaintiffs must translate foreign language
documents into English.  *See Briese Lichttechnik Vertriebs GmbH v. Langton*, 272 F.R.D. 369, 374
n.4 (S.D.N.Y. 2011) ("plaintiffs have no obligation to provide translations of the German language
documents"); *In re Puerto Rico Elec. Power Authority*, 687 F.2d 501, 509 (1st Cir. 1982) (reversing
district court order requiring party to translate foreign language documents it produced to opposing
party).  Further, such a requirement is contrary to what the parties have done in this case and the
related *King County, Washington, et al. v. IKB Deutsche Industriebank AG, et al.* ("*IKB*") case
(where defendants have produced thousands of German documents without translation).
Additionally, if plaintiffs were required to translate all foreign language documents, such a
requirement would be outrageously expensive given that such translation services cost *20 to 30 cents*
*per word* to translate documents into English.  Such a requirement would also require weeks of work
given that, in the *IKB* case, counsel for IKB represented to the Court that it would take *five weeks* to
review, translate and produce a single document.  *See* Ex. 21 at 1-2.

647458_1

information provided by defendants.  Order at 4-5.  Although defendants cherry-picked data regarding the productions of NACF and SinoPac – two of the smallest claimants in the litigation – as evidence that the English searches are not sufficient, they failed to provide any data for the remaining foreign plaintiffs.  The other foreign plaintiffs made substantial productions, including thousands of foreign language documents: Commerzbank (*103,458* documents), Postbank (*19,804* documents), Bank Hapoalim (*17,689* documents), and GIB (*30,225* documents).  When the complete picture is considered, it is clear the R&R 10 searches did work, and, in fact, resulted in voluminous productions far beyond what defendants need to defend this action.

**B.      The Burden of Re-Collecting Data Is Tremendous and Unwarranted Given Defendants' Delay**

The burden involved in re-collecting data from plaintiffs who communicated in foreign languages is tremendous.  Plaintiffs have spent hundreds of thousands of dollars collecting data and performing the searches required pursuant to the R&R 10 search terms.  These searches involved collecting and indexing *terabytes* of data, applying the R&R 10 search terms, obtaining reports detailing how many hits each of the 4,000 search terms yielded, modifying those search terms that yielded 3,000 or more documents, re-running the modified search terms, reviewing the results and producing the data to defendants.  Due to the tremendous volume of data collected and the numerous and complex search terms, this process required weeks of computer time just to index the data for searching and the entire process took more than two months to complete.  Plaintiffs expect that re-collecting, re-indexing and re-searching the data (with the foreign search terms) will result in similar expenditures, could require the review of massive amounts of documents in foreign languages, and significantly delay discovery in this case.

647458_1

## III.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court reconsider its

August 26, 2011 Order and not require plaintiffs to perform searches beyond those contained in

Amended R&R 10.

DATED:  August 30, 2011                              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS
JASON C. DAVIS


                                     s/ LUKE O. BROOKS
                                     LUKE O. BROOKS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
lukeb@rgrdlaw.com
jdavis@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
DANIEL S. DROSMAN
JESSICA T. SHINNEFIELD
JARRETT S. CHARO
DARRYL J. ALVARADO
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
dand@rgrdlaw.com
jshinnefield@rgrdlaw.com
jcharo@rgrdlaw.com
dalvarado@rgrdlaw.com

647458_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Attorneys for Plaintiffs

POMERANTZ HAUDEK GROSSMAN
 & GROSS LLP
MARC I. GROSS
TAMAR A. WEINRIB
100 Park Avenue
New York, NY  10017-5516
Telephone:  212/661-1100
212/661-8665 (fax)
migross@pomlaw.com
taweinrib@pomlaw.com

Additional Attorneys for Plaintiff State Board of
Administration of Florida

647458_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2011, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on August 30, 2011.

<div style="margin-left: 50%;">

s/ LUKE O. BROOKS
_____
LUKE O. BROOKS

ROBBINS GELLER RUDMAN
     & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

E-mail:  lukeb@rgrdlaw.com

</div>

Case 1:08-cv-07508-SAS-DCF    Document 304    Filed 08/30/11    Page 13 of 14

## Mailing Information for a Case 1:08-cv-07508-SAS-DCF

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Mario Aieta**
  maieta@ssbb.com,managingclerk@ssbb.com,marioaieta@gmail.com,dgerard@ssbb.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Anne L. Box**
  anneb@rgrdlaw.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Andrea Rose Butler**
  abutler@cahill.com

- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com,stremblay@rgrdlaw.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com,jrubins@ssbb.com

- **Patrick Joseph Coughlin**
  patc@rgrdlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,jillk@rgrdlaw.com,E_File_SD@rgrdlaw.com,nlindell@rgrdlaw.com,tholindrake@rgrdlaw.com,jcharo@rgrdlaw.com

- **Michael Fred Ghozland**
  mghozland@rgrdlaw.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Jeffrey B. Korn**
  jkorn@willkie.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com

- **William Ross Miller , Jr**
  william.miller@dpw.com,ecf.ct.papers@dpw.com

- **Tariq Mundiya**
  maosdny@willkie.com,jsim@willkie.com,tmundiya@willkie.com,msorensen@willkie.com

- **David Owen**
  dowen@cahill.com

- **Antonio Jorge Perez-Marques**
  antonio.perez@dpw.com,ecf.ct.papers@dpw.com

- **Dean I. Ringel**
  DRingel@Cahill.com,JHall@cahill.com

- **Christopher Joseph Roche**
  christopher.roche@davispolk.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com,ecf.ct.papers@davispolk.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Andrew Dickens Schlichter**
  andrew.schlichter@dpw.com

- **Jessica T. Shinnefield**
  jshinnefield@rgrdlaw.com

- **Aaron Mark Zeisler**
  azeisler@ssbb.com,managingclerk@ssbb.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**KBL European Private Bankers S.A.**
,

**David C. Walton**
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301