UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABU DHABI COMMERCIAL BANK, KING COUNTY, WASHINGTON Together and On Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>                v.<br><br>MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY & CO. INTERNATIONAL PLC, MOODY'S INVESTORS SERVICE, INC., MOODY'S INVESTORS SERVICE LTD., STANDARD AND POOR'S RATINGS SERVICES and THE McGRAW HILL COMPANIES, INC.,<br><br>              Defendants. | **REPORT AND RECOMMENDATION NO. 17**<br>PLAINTIFFS' MOTION TO RESUME THE DEPOSITION OF WARREN KORNFELD<br><br>Case No. 08 Civ. 7508 (SAS)<br><br> |

JONATHAN M. REDGRAVE, SPECIAL MASTER:

    This Report and Recommendation addresses the issue of Plaintiffs' Motion to Resume the Deposition of Warren Kornfeld. The Parties have been unable to resolve the dispute. Each side has provided its respective position in Submissions to the Special Master, and this issue is now ripe for decision.

## I.    BACKGROUND

1. Sometime in June 2011, Plaintiffs served an Amended Notice of Deposition on Moody's Investors Service, Inc. and Moody's Investors Service LTD. (together, "Moody's") seeking to take a two-day deposition of Moody's employee, Warren Kornfeld, on June 28-29, 2011.

2. Based on e-mail correspondence between Plaintiffs' counsel and Moody's counsel between June 6, 2011 and June 16, 2011, the Parties had a looming dispute regarding the length of Mr. Kornfeld's deposition.

3. On June 6, 2011, Plaintiffs' counsel indicated that "[P]laintiffs [would] try to finish [Mr. Kornfeld's] deposition on June 28, but may need to continue the deposition on June 29th depending on how quickly it progresses."[1]

4. Based on the materials provided by the Parties, it appears that Moody's counsel informed Plaintiffs' counsel on June 6, 2011, and again on June 16, 2011, that Moody's did not believe it was appropriate for Plaintiffs to take two days of deposition testimony from Mr. Kornfeld.

5. On June 6, 2011, counsel for Moody's informed Plaintiffs' counsel that "[Moody's] offered Mr. Kornfeld for a deposition on June 28 and asked if you intend to finish in one day. You indicated that you 'aspired' to do so, but could not agree, at [that] time, to limit the deposition of Mr. Kornfeld to a single day. We do not think that it is appropriate to take more than 7 hours for Mr. Kornfeld's deposition."[2]

6. On June 16, 2011, Moody's counsel communicated with Plaintiffs' counsel and stated, "[y]ou have noticed the depositions of Mr. Kirnon and Mr. Kornfeld for two days. We do not think that two day depositions are warranted for either witness, neither of whom was involved in any substantive way with the ratings of the Cheyne SIV products. While we are amenable to some degree of flexibility with regard to the seven hour limit imposed by Rule 30(d)(1)... we object to a notice contemplating that either deposition will extend to a second day of testimony. Therefore, we do not intend to schedule either witness for a second day. We are happy to discuss any questions or suggestions that you may have in this regard."[3]

---

[1] E-mail from D. Drosman to M. Aieta re ADCB (June 6, 2011).
[2] E-mail from M. Aieta to D. Drosman re ADCB (June 6, 2011).
[3] E-mail from M. Aieta to D. Drosman re ADCB (June 16, 2011).

7. The Parties have not submitted any further communications regarding the length of Mr. Kornfeld's deposition after Moody's counsel's June 16, 2011 e-mail.

8. In addition, neither side has provided the Amended Notice of Deposition to the Special Master (which appears to have been served sometime before June 16, 2011).

9. Similarly, if Moody's served any formal objections to the Amended Notice of Deposition on Plaintiffs, such objections were not provided to the Special Master.

10. Nevertheless, based on the e-mail exchanges between the Parties that have been provided to the Special Master, it seems reasonable to conclude that Plaintiffs and Moody's were aware that a disagreement existed regarding the length of Mr. Kornfeld's deposition, and that such disagreement would likely crystalize if Mr. Kornfeld's deposition was not completed on June 28.

11. In the same vein, however, prior to the deposition, Moody's did not seek a protective order regarding the length of Mr. Kornfeld's deposition, and Plaintiffs did not submit a motion to compel a two-day appearance for Mr. Kornfeld at his deposition.

12. Based on the deposition transcript from Mr. Kornfeld's deposition, it appears that the first day of Mr. Kornfeld's deposition began at 9:08 a.m. and finished at 6:55 p.m.[4] On June 29, Moody's made Mr. Kornfeld available for a limited amount of time for the second day of deposition, which began around 9:30 a.m. and was terminated at nearly 2:00 p.m.[5]

13. Approximately four and one-half hours into the first day of Mr. Kornfeld's deposition, or at about 1:30 p.m., the Parties reached an impasse when counsel for Moody's instructed Mr. Kornfeld to not answer a question Plaintiffs' counsel posed to Mr. Kornfeld after Plaintiffs' counsel asked Mr. Kornfeld no fewer than three times whether Mr. Kornfeld understood a sentence in an e-mail Mr. Kornfeld had apparently received in April 2007.[6]

---

[4] Deposition of Warren Kornfeld, at 3:3; 404:14 (June 28, 2011).
[5] Deposition of Warren Kornfeld, at 412:1-3; 590:18-19 (June 29, 2011).
[6] *Id.* at 216:9 through 218:4.

14. Specifically, the following exchange occurred between counsel:

> MR. DROSMAN: I didn't ask you what you understood it to mean; I just asked whether you understood it.
> MR. COSTER: Objection, he answered the question.
> MR. LINKEN: Same objection.
> MR. DROSMAN: Can you answer that question, sir?
> MR. COSTER: Don't answer the question, move on.
> MR. DROSMAN: Are you instructing him not to answer the question, do you understand that question?
> MR. COSTER: Yes.
> MR. DROSMAN: Then we're going to call the court, that's ridiculous, let's take a break and we will call Judge Scheindlin.
> MR. COSTER: You want to read her that portion of the transcript, great.
> MR. DROSMAN: Yes, where you instruct him not to answer.[7]

15. The Special Master was first made aware of this dispute on June 28, 2011, when the Parties contacted him after the above exchange occurred during Mr. Kornfeld's deposition.

16. After spending nearly twenty-five minutes off the record (during which a discussion was held with the Special Master), the Parties resumed the deposition. Plaintiffs' counsel then proceeded to ask the witness an additional three times whether he understood a sentence in an e-mail he received in April 2007.[8]

17. At 3:47 p.m., Plaintiffs' counsel asked Mr. Kornfeld to identify any statements in a three-page exhibit that the witness believed were "inaccurate."[9] This line of questioning lasted for approximately twenty minutes and elicited numerous objections from counsel for each of the Defendants. At that time, at the insistence of Plaintiffs' counsel, Moody's counsel instructed the witness not to answer the pending question. Plaintiffs' counsel then agreed to go off the record and contact the Special Master to discuss the Parties' dispute: whether Plaintiffs' counsel's line

---

[7] *Id.* at 217:7 – 218:4. Mr. Drosman is counsel for Plaintiffs; Mr. Coster is counsel for Moody's; and Mr. Linken is counsel for The McGraw Hill Companies.
[8] *Id.* at 219:3 – 220:12.
[9] *Id.* at 268:9 – 287:17.

4

of questioning and deposition tactics were an improper waste of time or otherwise harassing to

Mr. Kornfeld.[10]

18. Specifically, the following exchange occurred between counsel over eight pages of the transcript:

> MR. DROSMAN: What I asked you, sir, is I asked you to identify the portions of the document that you disagreed with, I didn't ask you to tell me why you disagreed with them. So if you could just tell me the sentences that you disagree with, I would appreciate that.
> MR. COSTER: Object to form, this is a waste of time, this is abusive to the witness, this is harassment. If you have a section, I am inviting you, if there is a sentence, a line, a paragraph in this document that you want to show to this witness and ask him whether he agrees or disagrees with it, please do so. I am inviting you to do that, but stop wasting time.
> MR. DROSMAN: Go ahead and answer my question.
> MR. COSTER: No, no, you have answered the question.
> MR. DROSMAN: Are you instructing him not to answer my question?
> MR. COSTER: I am inviting you --
> MR. DROSMAN: I decline your invitation, thank you very much.
> MR. DROSMAN: Answer my question.
> MR. COSTER: He answered your question, he has answered.
> MR. DROSMAN: No, he has gone through the first four paragraphs. He told me he needed to go line-by-line -- he said he needed to go line-by-line to make a determination as to which of these statements in this three-page attachment he agreed or disagreed with and I have asked him to just identify the statements in this three-page attachment that you disagree with.
> MR. DROSMAN: Please do that.
> THE WITNESS: Okay, let's continue then.
> MR. COSTER: He answered your question, he told you these are not factual matters, these are matters of opinion and --
> MR. DROSMAN: You can stop your speaking objections.
> MR. COSTER: And I invite you --
> MR. DROSMAN: I decline your invitation, thank you, though.
> MR. COSTER: -- to direct him and stop wasting this witness' time.
> THE WITNESS: Fifth paragraph, first page, and this is the only way that I see, this is a long document, there is a lot of things said in this particular document, it is not factual one plus one equal two document.
> MR. DROSMAN: I am just asking you to identify the statements that you disagree with, sir.
> MR. COSTER: Let's get the special master on the phone.
> MR. DROSMAN: No.
> MR. COSTER: Waste of time. We are taking a break to get the master on the phone; you're intentionally wasting time, why you're doing it I don't know, I guess you don't have anything else to ask the witness.

---

[10] *Id.* at 283:14 – 287:17.

MR. DROSMAN: Apparently you're very sensitive to this because you realize it is very damaging testimony and you would like to stop--
MR. COSTER: Damaging; I am inviting you, sir, to ask him a question.
MR. DROSMAN: Lower your voice, lower your voice, you're almost yelling and turning red, it is inappropriate.
MR. COSTER: If you can figure out how to examine a witness, I invite you, point to any piece of this document --
MR. DROSMAN: Lower your voice, stop yelling.
MR. COSTER: Are you incapable of pointing to a piece of this document, which paragraph are you concerned about, which line, he told you he needs to read the line -- let me finish, he told you he needs to read the paragraph. Point him to where you want to know whether he agrees with it or disagrees with it and he will tell you, I will let him answer that question.
MR. DROSMAN: Some day when you conduct your own deposition you get to ask the questions, Mr. Coster, but this is my deposition, I am the one who chooses which questions to ask, not you.
MR. DROSMAN: I am asking you the question, please identify which statements in this three-page attachment you disagree with.
MR. COSTER: Let's take a break, we will get the special master on the phone, this is a waste of time and abusive to the witness.
MR. DROSMAN: If you're instructing him not to answer -- are you
MR. COSTER: No --
MR. DROSMAN: I see no reason to take a break --
MR. COSTER: Because the special master said if something like this happened to get him on the phone before I instruct him not to answer, so that's what I am doing.
MR. DROSMAN: No. I am not going off until you instruct him not to answer, otherwise he can answer the question.
MR. DROSMAN: Go ahead and answer the question, sir.
THE WITNESS: May I take a break?
MR. DROSMAN: No, go ahead and answer the question, there is a question pending, we agreed earlier that you wouldn't take a break until after you answered the pending question, right?
MR. COSTER: We're getting the special master on the phone, we're taking a break.
MR. DROSMAN: Go ahead and answer the question, sir, unless your attorney instructs you not to answer; you may answer the question and you should answer the question and your attorney hasn't instructed you not to answer.
MR. COSTER: The special master indicated that if we had a problem to get him on the phone and not to direct not to answer.
MR. DROSMAN: Go ahead and answer my question, sir.
MR. COSTER: Let's go, we're taking a break.
MR. DROSMAN: We're not going off the record until he answers the question.
MR. COSTER: We're taking a break.
MR. DROSMAN: We're not going off the record -- let the record reflect that Mr. Coster is standing up, he has taken off his microphone and he is leaving the room.
MR. COSTER: Let the record reflect, and we will do it on the record, we're going to get the special master on the phone on the record.
MR. DROSMAN: I have no desire to get the special master on the phone.
MR. COSTER: I don't care what your desire is.

>MR. DROSMAN: I asked a question and he can answer the question.
>MR. DROSMAN: Go ahead and answer the question, sir.
>MR. COSTER: He answered the question.
>MR. DROSMAN: You can answer the question; you can identify which portions of this document you disagree with.
>MR. COSTER: He already told you it is a matter of opinion, we invite you to point him to --
>MR. DROSMAN: I decline your invitation.
>MR. COSTER: Then we will get the special master on the phone.
>THE WITNESS: Okay, as I said, the only way to do that is to go line-by-line.
>MR. DROSMAN: Fair enough.
>MR. COSTER: We're not going line-by-line, we're getting the special master on the phone because we can save an hour of your time if he can direct you to the sentence he is concerned about, but he wants to play games instead.
>MR. DROSMAN: I am not playing games.
>MR. DROSMAN: Your attorney is obstructing this deposition -
>MR. COSTER: Let's make it easy then; I invited you to get the special master on the phone before direction, you wouldn't do it, I invited you to get the special master on the phone on the record, you wouldn't do it. Don't answer the question.
>MR. DROSMAN: Why don't we call the special master now.[11]

19. The Parties conferred again via telephone with the Special Master. After hearing from the Parties, the Special Master provided additional guidance regarding the scope of examination and line of questioning and instructed the Parties to resume with the pending line of questioning.

20. This second conference with the Special Master took approximately twenty-two minutes. Afterwards, the deposition resumed, with Plaintiffs' counsel continuing his line of questioning with Mr. Kornfeld, asking Mr. Kornfeld to identify any statements in the three-page exhibit with which Mr. Kornfeld disagreed.[12]

21. At about 6:52 p.m., Plaintiffs' counsel indicated that he had "gone seven hours" and that he was "happy to continue going."[13] There was a thirty-second pause before Plaintiffs' counsel stated, "[j]ust for the record, I indicated that I am more than happy to continue with the deposition

---

[11] *Id.* at 279:3-287:17
[12] *Id.* at 288:13 – 296:19.
[13] *Id.* at 401:9-10.

7

today, the court reporter has indicated that she is unable to continue and so we will not be able to continue longer."[14]

22. Moody's counsel responded, "[t]he witness is offering to stay here to continue the deposition, we told you in a letter, we said we could only do one day. The witness can do a couple of hours tomorrow; if you can't finish in two hours tomorrow, I suggest you continue tonight. . . . If you don't then let's start again tomorrow at 9:30 and get it done."[15]

23. After some discussion with the court reporter, it appears that the court reporter indicated that she was "tired" and stated that she would be unable to stay and transcribe the deposition if it were to continue that evening.[16]

24. Recognizing that the deposition would resume on June 29, Moody's counsel stated, "I suggest you figure out a way to finish your examination in two hours tomorrow because we told you very clearly that it was one day and we gave you a couple extra hours if you needed it and you have done nothing but waste time."[17]

25. Plaintiffs' counsel responded, "[t]he court will make that determination[.] I disagree with the characterization and we plan on going seven hours tomorrow."[18]

26. As detailed above, the Parties continued with the second day of Mr. Kornfeld's deposition on June 29, 2011, which began around 9:30 a.m. and was terminated at nearly 2:00 p.m.[19]

27. In all, without accounting for time spent on or off the record to take breaks, have lunch, or address the Parties' disputes during the deposition, Plaintiffs have spent approximately 10.5 hours examining Mr. Kornfeld.[20]

---

[14] *Id.* at 401:12-17.
[15] *Id.* at 401:20 – 402:10.
[16] *Id.* at 402:11 – 403:25.
[17] *Id.* at 404:2-8.
[18] *Id.* at 404:9-12.
[19] Deposition of Warren Kornfeld, at 412:1-3; 590:18-19 (June 29, 2011).
[20] It appears that the Parties agree that Mr. Kornfeld was deposed for 10.5 hours over two days.

8

28. The Special Master invited the Parties to submit the transcript and video from Mr. Kornfeld's deposition to evaluate the Parties' competing claims regarding improper conduct at the deposition. In addition, the Parties have provided Submissions in support of their respective positions, which are provided below.

## II. THE PARTIES' POSITIONS

29. Plaintiffs request that the Special Master recommend that Mr. Kornfeld sit for "the remaining three and one-half hours of his deposition."[21]

30. Plaintiffs contend that they were not able to complete their examination of Mr. Kornfeld because Moody's improperly terminated the deposition before fourteen hours had expired.[22]

31. Plaintiffs further argue that they need additional time with Mr. Kornfeld because Moody's counsel "repeatedly and improperly disrupted the deposition by making improper speaking objections, coaching the witness, screaming at counsel for plaintiffs, and abruptly interrupting the deposition to take a break before counsel for plaintiffs was finished with a line of questioning."[23]

32. Plaintiffs also contend that "a letter by Moody's to plaintiffs that Moody's objects to a second days of deposition does not excuse the witness from complying with the deposition notice absent a pending motion for a protective order, which Moody's never filed."[24]

33. Moody's opposes Plaintiffs' request for additional time to depose Mr. Kornfeld, reasoning that: (1) based on the Court's statements regarding two-day depositions, Plaintiffs have not made an adequate showing that additional time is appropriate; (2) "Mr. Kornfeld had absolutely no role in rating or monitoring of the Cheyne SIV[;]" and (3) Plaintiffs' counsel's questioning of Mr.

---

[21] Letter from D. Drosman to Special Master Redgrave, at 2 (July 1, 2011) ("Plaintiffs' Submission").
[22] *Id.* at 1-2.
[23] *Id.* at 1.
[24] *Id.* at 1.

9

Kornfeld "was larded with queries that were irrelevant, repetitive, and downright harassing and inane."[25]

34. Moody's provides several citations to exchanges in Mr. Kornfeld's deposition that purportedly fall into the categories of questioning that Moody's characterizes as "irrelevant," "repetitive," and "harassing and inane."[26]

## III. LEGAL STANDARD

35. There are at least five sources of authority that are pertinent to this dispute: the Federal Rules, the Court's Suggested Rules of Discovery Practice, case law describing proper objections at depositions, a recognized secondary source on civil litigation in federal courts, and Judge Scheindlin's statements regarding deposition length during the May 16, 2011 Conference before the Court.

36. Rule 30 of the Federal Rules of Civil Procedure governs the conduct of parties, counsel, and deponents at depositions. The rule provides that "examination and cross-examination of a deponent [should] proceed as they would at trial under the Federal Rules of Evidence."[27]

37. The rule permits objections by counsel under the following circumstances: "[a]n objection, at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[28]

---

[25] Letter from J. Coster to Special Master Redgrave, at 1-2 (July 8, 2011) ("Moody's Submission").
[26] *Id.* at 2-3.
[27] Fed. R. Civ. P. 30(c)(1).
[28] Fed. R. Civ. P. 30(c)(2).

38. If "a deponent fails to answer a question asked under Rule 30," or provides an answer that is "evasive or incomplete," then a motion to compel the deposition testimony may be filed.[29] "If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."[30]

39. If a person's conduct is so egregious that it "impedes, delays, or frustrates the fair examination of the deponent," the Court may impose an additional "appropriate sanction" on that person, "including the reasonable expenses and attorney's fees incurred by any party."[31]

40. As at least one court has described it,

> A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness—not the lawyer—who is the witness.[32]

41. As the *Hall v. Clifton Precision* court stated, "[c]ounsel should never forget that even though the deposition may be taking place far from a real courtroom, with no black-robed overseer peering down upon them, as long as the deposition is conducted under the caption of this court and proceeding under the authority of the rules of this court, counsel are operating as officers of this court. They should comport themselves accordingly[.]"[33]

42. Judge Scheindlin has developed and published Suggested Rules of Discovery Practice that also govern witnesses' and attorneys' conduct at depositions and are helpful in analyzing the Parties'

---

[29] Fed. R. Civ. P. 37(a)(3)(B)(i), (a)(4).
[30] Fed. R. Civ. P. 37(a)(5)(A).
[31] Fed. R. Civ. P. 30(d)(2).
[32] *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993).
[33] *Id.* at 531.

11

positions in the present dispute. Specifically, the following provisions of Judge Scheindlin's Suggested Rules provide guidance on resolution of this dispute:

> 3. Length and Number of Depositions
>
> Each deposition shall be limited to no more than two working days for direct examination, plus a reasonable amount of time for cross-examination, unless the parties stipulate otherwise or a party obtains leave of the court. The number of depositions taken may be limited by stipulation or at a discovery conference called pursuant to Fed. R. Civ. P. 26(f).
>
> 4. Directions Not To Answer
>
> Directions to a witness not to answer questions should be limited to four instances: (1) The question seeks privileged information; (2) the question is posed for the purpose of harassment; (3) the question is clearly irrelevant and there is the likelihood of substantial prejudice to the witness or a party; or (4) the question seeks confidential business information or trade secrets. Directions not to answer are presumptively improper and any misuse or overuse should result in sanctions.
>
> 5. Suggestive Objections
>
> Suggestive objections should not be made and continued suggestive objections are grounds for sanctions by the court. Objections should generally be limited to the statement "objection as to form and the basis for such objection, *i.e.*, compound question" or a direction not to answer as set forth in Rule 4 above.
>
> 6. Conferences Between Deponent and Defending Attorney
>
> Attorney-witness conferences should be kept to a minimum. The defending attorney should not initiate a conference during the pendency of a question except to determine whether a privilege should be asserted. Attorney-initiated conferences for any other purpose during the pendency of a question are presumptively improper and continued conferences are sanctionable. A deponent may seek the counsel of his or her attorney at any time.[34]

43. At least one secondary source has identified eleven grounds upon which a party or its counsel may state an objection to the form of a question posed at a deposition. Those grounds are: (1) compound; (2) asked and answered; (3) overbroad/calls for a narrative; (4) calls for speculation; (5) argumentative; (6) vague or unintelligible; (7) assumes facts not in evidence;

---

[34] Honorable Shira A. Scheindlin Suggested Rules of Discovery Practice, ¶¶ 3-6 (available at http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=80).

12

(8) misstates the record; (9) calls for an opinion from an unqualified witness; (10) leading where not permitted; and (11) lack of foundation.[35]

44. In addition, the Court's May 11, 2011 Discovery Order in this case provides additional guidance that is helpful for the present dispute:

> Discovery must be managed and focused so that it does not become abusive. There is no reason that a single 30(b)(6) deposition of each plaintiff should not be sufficient to provide defendants with the information [they need] to prepare for a dispositive motion. Should the case proceed to trial, I intend to impose the following rule: if in its pretrial order a party lists a witness who has not been deposed, both parties have the right to depose that witness prior to trial. To avoid over-designation of witnesses in the pretrial order, the court will carefully review the witness list with the parties to ensure that there is no redundancy and no gamesmanship in selecting witnesses solely because they have not been deposed. Once the list is finalized the pretrial deposition rule will be triggered.[36]

45. Finally, during a May 16, 2011 Conference with the Parties, Judge Scheindlin expressed her views on the appropriate length of depositions, which, at least for this case, appear to override the Court's direction on the appropriate length of depositions as stated in the Suggested Rules of Discovery Practice:

> THE COURT: I think two-day depositions are ridiculous all around. . . . There is nothing good lawyers can't get done in seven hours. That's why the federal rules said so. . . . So, you agree to be limited to one day on the people you are deposing for the second time. . . . That's one day. Now, about you with this guy, Clarkson. . . . [A]ll witnesses are not the same that's why I have a special master. Because you might have to evaluate one witness as different than another witness. . . . I really do think good lawyers can get whatever they need during one day, as long as there is not wasted objections and waste of time and defense lawyer making sure you don't really get to use your time. . . . It's all silliness as to whether it is one day or two days. It should be no more than two days, obviously, with best efforts for one day. But if at the end of seven hours he is tired and doesn't want to keep going, I guess they can have a part of the second day until they're done. But I would ask everybody to try hard to finish it in one day. So I would treat it as aspirational, not a ruling. . . . I would ask you try to get it done one day. Even be an eight hour day, or even a nine hour day. If you can't get it done, I'll let you go into a

---

[35] 2 Bus. & Com. Litig. Fed. Cts. § 20:59 (2d ed. 2005) (citing *Boyd v. Univ. of Maryland Med. Sys.*, 173 F.R.D. 143, 147 n. 8 (D. Md. 1997)).
[36] Order dated May 11, 2011, at 3 (Dkt. No. 249). Although the Court's statements focus on Defendants' depositions of Plaintiffs' witnesses, the Special Master believes that they apply equally to Plaintiffs' depositions of Defendants' witnesses.

second day, as long as you don't abuse it."[37]

## IV. FINDINGS

46. Although the above referenced authorities set forth the rules and guidance to be followed in connection with depositions, the rules are largely self-executing.

47. Even though depositions may seem less formal than court proceedings, and usually occur outside the view of the public and without judicial supervision, they are an integral part of the Court's procedures and a staple of modern litigation.

48. A successful process requires Parties, attorneys, and witnesses participating in depositions to conduct themselves with civility and decency.

49. Upon reviewing the Parties' Submissions and the deposition transcripts, as well as watching the video of Mr. Kornfeld's deposition, the Special Master finds that each side has presented valid points.

50. Plaintiffs' counsel's questions were, at times, repetitive and even arguably harassing. There were times when Plaintiffs' counsel appeared to be dismissive and disrespectful of the witness.

51. It appears to the Special Master that some questions posed to the witness did not attempt to elicit relevant testimony. Moreover, looking at the examination as a whole, Plaintiffs' counsel did not reflect a sense of obligation or aspiration to complete Mr. Kornfeld's deposition in a single day despite the clear and stern direction provided by the Court in hearings and Orders regarding the need to limit depositions to the time required to elicit relevant testimony.

---

[37] Hrg. Tr. 36:2-40:21 (May 16, 2011).

52. At the same time, there were several instances where, in stating objections, defense counsel improperly went beyond the general limitations set forth in Judge Scheindlin's Suggested Rules of Discovery Practice and the generally recognized bases for objecting to the form of a question. There appear to be several examples where Mr. Kornfeld's attorney asserted objections and added certain unnecessary statements that may have reached the level of an improper strategic interruption of Plaintiffs' counsel's questioning, or otherwise could be interpreted as an effort to influence the witness's response.

53. Importantly, however, it appears to the Special Master that Plaintiffs had ample time to conduct an extensive examination of the witness notwithstanding the number of objections raised or the extraneous statements made. Counsel for Moody's made clear their position regarding the length of the deposition at the outset and Plaintiffs' counsel had the opportunity to adjust the examination to cover any important topics in the more than 10 hours that the witness was made available for examination.

54. Further, on the record presented, the Special Master does not find that there is a need for continued examination of this witness unless he is identified by Defendants as a trial witness.

## V.     RECOMMENDATION

55. Based on the materials submitted by the Parties, the Special Master recommends that the Court deny Plaintiffs' Motion to Resume Mr. Kornfeld's deposition without prejudice.

56. If Defendants list Mr. Kornfeld as a trial witness, the Special Master recommends that Plaintiffs be permitted to reopen Mr. Kornfeld's deposition for no more than three and one-half hours of additional examination by Plaintiffs.

57. If Mr. Kornfeld's deposition is reopened, Plaintiffs should avoid retreading ground that was addressed in Mr. Kornfeld's June 28-29, 2011 deposition. However, to the extent Plaintiffs wish

to ask questions related to exhibits that were used during or shown to Mr. Kornfeld in his June 28-29, 2011 deposition, Plaintiffs should not be prohibited from doing so.

58. Neither side has requested that sanctions be imposed in this dispute, nor, given these facts, does the Special Master believe that sanctions are necessary. However, the Parties and their counsel should be mindful of (1) what conduct, objections and instructions are appropriate at depositions (for both examining and defending counsel), (2) the fact that two-day fact witness depositions should be considered exceptional in this case, and (3) the Court's instructions to the Parties to not "waste time" in the limited number of depositions that remain in this case.

59. In particular, the Special Master recommends that all Parties heed the Court's May 2011 admonition to the Parties to use their best efforts to complete fact witness depositions in a single day.

60. In addition, the Parties should also be directed to comply with the guidance sent forth in Judge Scheindlin's Suggested Rules of Discovery Practice ¶¶ 4-6. Moreover, the Parties specifically should be reminded that coaching a witness is strictly prohibited and that, when making an objection, counsel should be "succinct and verbally economical"[38] by stating the permissible basis(es) of the objection (as set forth above) and no more.

61. Finally, the Special Master recommends that the Court instruct the Parties to contact the Special Master in the event of similar disputes during depositions. The Parties need not reach the point where one counsel is "held hostage" to remain on the record until such time as counsel instructs a witness to not answer a question for any reason other than privilege or work product protection. Rather, if the Parties stray from the direction set forth above or otherwise reach an impasse during a deposition, the Special Master is available to address such disputes. The Special Master may recommend adjourning a deposition to allow a Party to meaningfully submit

---

[38] *Hall v. Clifton Precision*, 150 F.R.D. at 531.

a Motion for Protective Order, or otherwise provide direction to the Parties to allow a deposition to resume and continue in a civil, decent and efficient manner.

*[signature]*

Jonathan M. Redgrave
Special Master

Dated: September, 9, 2011

The Clerk of the Court is directed to docket this Report and Recommendation. Objections are due by September 26, 2011. So Ordered.

9/20/11   *[signature]*

Shira A. Scheindlin
U.S.D.J.

17