**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABU DHABI COMMERCIAL BANK, KING COUNTY, WASHINGTON Together and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY & CO. INTERNATIONAL PLC, MOODY'S INVESTORS SERVICE, INC., MOODY'S INVESTORS SERVICE LTD., STANDARD AND POOR'S RATINGS SERVICES and THE McGRAW HILL COMPANIES, INC., <br><br> Defendants. | **REPORT AND RECOMMENDATION NO. 14** <br> DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS ON PLAINTIFF SEI INVESTMENT COMPANY'S PRIVILEGE LOG THAT REFLECT COMMUNICATIONS WITH COLUMBIA MANAGEMENT ADVISERS <br><br> Case No.  08   Civ. 7508 (SAS) <br><br>  |

JONATHAN M. REDGRAVE, SPECIAL MASTER:

This Report and Recommendation addresses the issue of Defendants' motion to compel the production of documents from Plaintiff SEI Investments Company ("SEI") reflecting communications with various employees of Columbia Management Advisers ("CMA") that SEI has withheld from production based on its assertion that such communications are protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Defendants and SEI have been unable to resolve the dispute. Defendants and SEI have provided their respective positions in Submissions to the Special Master, and this issue is now ripe for decision.

## I.      BACKGROUND

1.  The background to this dispute, including the Parties' respective legal arguments, is set forth more fully in Appendix A.

2.  In short, on June 1, 2010, SEI produced a 295-page privilege log listing documents SEI withheld from production (the "SEI Privilege Log") on the basis of asserted attorney-client privilege and/or attorney work product protections.[1] Defendants assert, and SEI has not rebutted, that this is the only privilege log SEI has produced in this case.[2]

3.  On March 28, 2011, long after their receipt of the SEI Privilege Log, Defendants wrote to SEI and alleged that the SEI Privilege Log "improperly contained entries for communications with a third-party, CMA."[3]

4.  In that March 28, 2011 letter, Defendants asserted that there was "no basis for SEI's assertion of privilege over [the CMA] communications,"[4] and "requested that SEI produce the withheld communications between SEI and employees of CMA."[5]

5.  The Parties continued to dispute the allegedly privileged nature of the documents, which ultimately resulted in the submission of the current motion to the Special Master.

6.  On July 1, 2011, the Special Master issued a draft version of this Report and Recommendation to the Parties. The draft version set forth preliminary findings and recommended procedures for the submission of additional materials to the Special Master to allow for an *in camera* review of a subset of documents at issue. The draft version also afforded SEI the opportunity to

---

[1] Defs.' Submission Regarding SEI's Improper Assertion of Privilege, at 1 (May 31, 2011) ("Defs.' Initial Submission").

[2] *Id.* at 1, n. 3.

[3] *Id.* at 1.

[4] *Id.* (citing Exh. B, at 4) (Letter from C. Roche to L. Brooks regarding *Abu Dhabi Commercial Bank, et al. v. Morgan Stanley & Co. Incorporated, et al.* (March 28, 2011)).

[5] *Id.* at 1.

submit additional proof to support its claims of privilege, and provided Defendants with an opportunity to respond to SEI's supplemental Submissions.

7.  Thereafter, further Submissions were made by the Parties.  The dispute, being fully submitted, is ripe for determination.

## II.     LEGAL STANDARD

8.  Because the Court's subject matter jurisdiction in this matter is based upon diversity,[6] state law provides the rule of decision concerning the claim of attorney-client privilege.[7]

9.  Under New York Law, the party asserting either the attorney-client privilege or attorney work product protection has the "heavy burden" of proving that privilege or protection applies to the documents or communications at issue.[8]

10.  "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."[9]  In New York, the statutory codification of the privilege is as follows:

> Unless the client waives the privilege, an attorney or his or her employee, or any person who obtains, without the knowledge of the client, evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication. . . .[10]

11.  In terms of defining the necessary facts to establish that a communication is protected from disclosure by the attorney-client privilege, at least one court in the Southern District of New York has stated, "[t]he elements of the attorney-client privilege under New York law are the existence of an attorney-client relationship, a communication made within the context of that

---

[6] *See* Seventh Am. Compl. ¶ 28 (Docket No. 212).
[7] *See* Fed.R.Evid. 501; *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975).
[8] *Fifty-Six Hope Road Music Ltd. v. UMG Recordings, Inc.*, No. 08 Civ. 06143, 2010 WL 343490, at *3 (S.D.N.Y. Feb. 1, 2010); *People v. Osorio*, 549 N.E.2d 1183, 1185 (N.Y. 1989).
[9] *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)(citation omitted).
[10] N.Y.C.P.L.R. 4503(a)(1).

relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication."[11]

12. New York courts have held that, for the privilege to apply, the communication between attorney and client must be made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship."[12] The communication itself must be "primarily or predominantly of a legal character."[13]

13. "The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client."[14]

14. In addition, the proponent of the privilege has the burden of establishing that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and it was made in order to assist in obtaining or providing legal advice or services to the client.[15]

15. The party claiming the privilege also bears the burden of establishing that it has not been waived.[16] "Generally, communications made between a defendant and counsel in the known

[11] *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 264 (S.D.N.Y. 1995) (citing *People v. Osorio*, 549 N.E.2d 1183, 1185 (N.Y. 1989)).

[12] *Rossi v. Blue Cross & Blue Shield*, 73 N.Y.2d 588, 542 N.Y.S.2d 508, 540 N.E.2d 703 (1989).

[13] *Id.* at 594, 542 N.Y.S.2d 508, 540 N.E.2d 703; *accord Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 378-380, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991).

[14] *Spectrum Sys. Int'l. Corp.*, 78 N.Y.2d at 379, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991).

[15] *See, e.g., Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.*, 191 Misc.2d 154, 738 N.Y.S.2d 179 (2002); *accord People v. Mitchell*, 58 N.Y.2d 368, 373, 461 N.Y.S.2d 267, 448 N.E.2d 121 (1983) (citing cases); *see also In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973)("subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as in indication that confidentiality is no longer intended or as a waiver of the privilege."); *CSC Recovery Corp. v. Daido Steel Co., Ltd.*, No. 94 CIV. 9214 (LAP)(THK), 1997 WL 661122, at *3 (S.D.N.Y. Oct. 22, 1997).

[16] *See, e.g., John Blair Commc'ns, Inc. v. Reliance Capital Group*, 182 A.D.2d 578, 579, 582 N.Y.S.2d 720 (1st Dep't 1992).

presence of a third party are not privileged."[17]  Rather, "[d]isclosure of attorney-client communication to a third party, who is not an agent or employee of counsel, or communications with an attorney in the presence of a third party vitiates the confidentiality required for asserting the privilege."[18]

16. A communication between an attorney and the agent or employee of a corporation may be privileged where the agent "was involved in the activities which were the subject matter of the ensuing litigation [and where the agent] possessed the information needed by the corporation's attorneys in order to render informed legal advice."[19]

17. Another exception to this general rule of waiver also exists where, "communications [are] made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication."[20]

18. In addition, "[u]nder a doctrine adopted by the Eighth Circuit Court of Appeals and some district courts in the Second Circuit, communications between a company's lawyers and its independent contractor merit protection if, by virtue of assuming the functions and duties of full-time employee, the contractor is a *de facto* employee of the company."[21]

[17] *Osorio,* 549 N.E.2d at 1185 (citing cases); *see also United States v. Ackert,* 169 F.3d 136 (2d Cir. 1999); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.* 160 F.R.D. 437, 448 (S.D.N.Y. 1995); *In re FTC,* No. M18-304, 2001 WL 396522, at *2 (S.D.N.Y. Apr. 21, 2001).

[18] *Delta Fin. Corp. v. Morrison,* 13 Misc.3d 441, 820 N.Y.S.2d 745 (2006).

[19] *In re Copper Mkt. Antitrust Litig.,* 200 F.R.D. 213, 218 (S.D.N.Y. 2001)(citing *Upjohn,* 449 U.S. at 391, 101 S.Ct. 677); *see also In re Bieter Co.,* 16 F.3d 929, 937 (8th Cir. 1994).

[20] *Osorio,* 549 N.E.2d at 1186 (also noting that communications shared among parties also may retain their privileged status if the parties are mounting a joint defense or otherwise have a "common interest" and the communications are made for that purpose); *see also United States v. Kovel,* 296 918 (2d. Cir. 1961); *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir. 1989); *Export-Import Bank of the United States,* 232 F.R.D. at 113-14; *In re FTC,* No. M18-304, 2001 WL 396522, at *2-3 (S.D.N.Y. Apr. 21, 2001).

[21] *Export-Import Bank of the United States v. Asia Pulp & Paper Co.,* 232 F.R.D. 103, 113 (S.D.N.Y. 2005)(citing *In re Bieter Co.,* 16 F.3d at 936-37 ; *In re Copper Market Antitrust Litigation,* 200 F.R.D. at 218-19; *Ross v. UKI Ltd.,* No. 02 Civ. 9297, 2004 WL 67221, at *4 (S.D.N.Y. Jan. 15, 2004); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,* No. 01 Civ. 3016, 2002 WL 31556383, at *2 (S.D.N.Y. Nov. 15, 2002)).

19. "The scope of the privilege is not defined by the third parties' employment or function, however; it depends on whether the client had a reasonable expectation of confidentiality under the circumstances."[22]

20. In determining whether the "functional equivalent" exception applies, "courts look to whether the consultant had primary responsibility for a key corporate job, [] whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation, [] and whether the consultant is likely to possess information possessed by no one else at the company."[23]

21. For such third party disclosures to receive continued protection, "disclosure to [the] third party … [must be] necessary for the client to obtain informed legal advice."[24] "The available case law indicates that the 'necessity' element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications."[25] Thus, where the third party's presence is merely "useful" but not "necessary," the privilege is lost.[26]

22. While state law governs the question of attorney-client privilege in a diversity action, federal law governs the applicability of the work product doctrine.[27] The work product doctrine is codified

---

[22] *Id.; see also SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC.,* No. 01-Civ-9291 (JSM), 2002 WL 1334821, at *2-3 (S.D.N.Y. June 19, 2002).

[23] *Export-Import Bank of the United States,* 232 F.R.D. at 113 (internal citations omitted).

[24] *Nat'l Educ. Training Group, Inc. v. Skillsoft Corp.,* 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999) (citing cases).

[25] *Id.; see also United States v. Ackert,* 169 F.3d 136, 139 (2d Cir. 1999) ("the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client."); *SR Int'l Bus. Ins. Co.,* 2007 WL 1334821, *2 ("while it is obvious that any competent lawyer desires to be 'fully informed of all of the facts of the matter he is handling' for a client, that interest does not extend the attorney-client privilege to all those who may have relevant information") (citation omitted).

[26] *Nat'l Educ. Training Group, Inc.,* 1999 WL 378337, at *5; *see also Ackert,* 169 F.3d at 139 ("a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client.").

[27] *See, e.g., Weber v. Paduano,* No. 02 Civ 3392 (GEL), 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003) (citing cases).

in Fed.R.Civ.P. 26(b)(3), which provides that a party is not entitled to obtain discovery of "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" unless a showing of substantial need and lack of undue hardship is made.

23. The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye towards litigation,' free from unnecessary intrusion by his adversaries."[28] Though the work product doctrine protects both factual and opinion work product, the latter—defined as "the attorney's mental process"[29]—is considered to be "[a]t [the] core" of the doctrine[30] and "receive[s] special protection not accorded to factual material."[31]

24. As with the attorney-client privilege, the party asserting work product protection "bears the burden of establishing its applicability to the case at hand."[32] The determination as to whether materials are protected under this definition is necessarily fact-specific.[33] This includes demonstrating that the doctrine applies and that it has not been waived.[34]

---

[28] *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); *accord In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 383-84 (2d Cir. 2003); *MSF Hold LTD. v. Fiduciary Trust Co. Int'l*, No. 03 Civ. 1818, 2005 WL 3046287, at *1 (S.D.N.Y. Nov. 10, 2005).

[29] *Adlman*, 134 F.3d at 1197.

[30] *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

[31] *Adlman*, 134 F.3d at 1197.

[32] *In re Grand Jury Subpoenas*, 318 F.3d at 384 (citing cases).

[33] *Weber*, 2003 WL 161340, at *4.

[34] *See, e.g., RLS Assocs., LLC v. United Bank of Kuwait, PLC*, 2003 WL 1563330, at *3 (S.D.N.Y. Mar. 26, 2003); *Bank of America, N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002); *Resolution Trust Corp. v. Mass. Mut. Life Ins. Co.*, 200 F.R.D. 183, 188 (W.D.N.Y. 2001).

25. "[T]hree conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative."[35]

26. A document is prepared in anticipation of litigation if, "in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained *because of* the prospect of litigation."[36] In order for the doctrine to apply, however, there must be more than a "remote possibility" of litigation.[37]

27. *Adlman* established that documents prepared both for litigation and business purposes may be protected under Rule 26(b)(3).[38] Whether there is work product protection turns on whether the material "would have been prepared irrespective of the expected litigation. . . ."[39]

28. Indeed, even where "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of the [document]. . . . ,"[40] or that "such documents might [also] help in preparation for litigation,"[41] work product protection is not available for documents "that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation."[42]

---

[35] *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 31556382, at *4 (S.D.N.Y. Nov. 15, 2002) (quoting *In re Grand Jury Subpoenas Dated December 18, 1981 & January 4, 1982*, 561 F.Supp. 1247, 1257 (E.D.N.Y.1982)) (citations omitted); *accord SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC*, 2002 WL 1455346, at *2 (S.D.N.Y. July 3, 2002) (citation omitted).

[36] *Adlman*, 134 F.3d at 1202 (emphasis in original) (quoting 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure* § 2024, at 343 (1994)).

[37] *Litton Sys., Inc. v. Am. Tel. & Tel. Co.*, 700 F.2d 785, 827 n. 53 (2d Cir. 1983)(citing *Garfinkle v. Arcata Nat'l Corp.*, 64 F.R.D. 688, 690 (S.D.N.Y. 1994)).

[38] *Adlman*, 134 F.3d at 1195.

[39] *Id.* at 1204.

[40] *Id.*

[41] *Id.* at 1202.

[42] *Id.; accord Int'l Design Concepts v. Saks Inc.*, 2006 WL 1564684, at *1 (S.D.N.Y. June 6, 2006); *MSF Holding Ltd.*, 2005 WL 3046287, at *1; *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 474-75 (S.D.N.Y. 2003); *Stephenson Equity Co. v. Credit Bancorp, Ltd.*, 2002 WL 59418, at *2 (S.D.N.Y. Jan. 16, 2002).

29. While it is well-established that voluntary disclosure of confidential material to a third party typically waives any applicable attorney-client privilege,[43] protection under the work product doctrine, however, is not automatically waived by a third party disclosure. Rather, work product protection is waived only when documents are used in a manner contrary to the doctrine's purpose, or when disclosure "substantially increases the opportunity for potential adversaries to obtain the information."[44] Protection is thus forfeited "when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary."[45]

## III.    FINDINGS

30. While many of the Requests for Production of Documents that Defendants have served on Plaintiffs, including Plaintiff SEI, have explicitly defined the timeframe from which documents should be produced as January 1, 2004 through October 31, 2007,[46] other Requests have sought documents post-dating October 31, 2007. These include at least one instance where SEI agreed to produce documents concerning the Cheyne SIV that were generated or received as late as June 30, 2009.[47]

31. Based upon a review of the Parties' supplemental Submissions, the Special Master finds that it is appropriate to apply the recommendations in this Report and Recommendation to all withheld

---

[43] *See United States v. Jacobs*, 117 F.3d 82, 91 (2d. Cir.1997).

[44] *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004)(quoting *In Re Pfizer, Inc. Securities Litigation*, 1993 WL 561125, at *6 (S.D.N.Y. December 23, 1993)).

[45] *Bank of America, N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002).

[46] E-mail from D. Alvarado to Special Master Redgrave re *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.* (June 9, 2011), Exhs. 1-4 (Morgan Stanley's First Request for Production of Documents From Plaintiff SEI Investments Company, Ex. 1, ¶14 (indicating that "unless otherwise specifically indicated," the document requests cover the "period from January 1, 2004 through October 31, 2007"); Morgan Stanley's Second Request for Production of Documents From Plaintiffs, including SEI, Ex. 2, ¶14 (same); Defendants' Third Request for Production of Documents From Plaintiff SEI Investments Company, Ex. 3, ¶14 (same); The Rating Agency Defendants' Second Request for Production of Documents From Plaintiffs Abu Dhabi Commercial Bank, King County, Washington and SEI Investments Company, Ex. 6, ¶1 (same).

[47] Plaintiff SEI Investments Company's Responses to Defendant The McGraw-Hill Companies, Inc.'s First Request for Production of Documents General Objection No. 10 (dated Nov. 2, 2009) (indicating that SEI "will produce documents concerning the time period from January 1, 2004 to June 30, 2009."); *see also id.* at Request No. 3 ("All documents concerning the Cheyne SIV.").

SEI documents and any attachments that were received or generated documents through June 30, 2009.  Any documents that post-date June 30, 2009 are non-responsive and are not otherwise subject to any of the recommendations herein.[48]

32. As to the claims of attorney-client privilege for the documents at issue, SEI identified five different categories of the withheld documents submitted for *in camera* review:

(1) communications between lawyers at SEI and CMA concerning certain disclosures SEI was required to make to the SEC in relation to its holdings of Cheyne SIV notes;

(2) communications between SEI and CMA counsel concerning certain required, non-disclosure agreements relating to the collapse of the Cheyne SIV; (3) communications between SEI and CMA regarding the application of SEC Rule 2a-7, under which the SEI money market funds sub-managed by CMA were operated; (4) communications between SEI and CMA counsel regarding the "default" of the Cheyne SIV, a term with legal significance under SEC Rule 2a-7; and (5) communications between SEI and CMA relating to the SEI parent corporation's purchase of Cheyne SIV notes from managed accounts in order to stave off a rating agency downgrade.[49]

33. Setting aside any assessment of whether the withheld documents and communications are properly withheld under the attorney-client privilege under applicable law, the Special Master finds that any such privilege has been waived as to this set of documents shared by SEI with CMA.

---

[48] In other words, the Special Master finds that SEI should not be punished for "overlogging" (if it has done so).  The Special Master further finds that the fact that SEI logged post-June 30, 2009 documents on its privilege log does not transform documents that are otherwise non-responsive into responsive documents simply by listing such documents on its privilege log.

[49] Plaintiffs' Supplemental Submission Regarding SEI's Privilege and Work Product Designation, at 3-4 (July 26, 2011) (Pls. Supp. Submission").

34. In particular, the Special Master finds that SEI has not provided evidence sufficient to support the proposition that CMA was, in fact, the "functional equivalent of an in-house investing department"[50] for the purpose of applying any exception to the application of the waiver doctrine when privileged communications are shared with a third party not within the scope of the privilege.

35. No affidavits were filed regarding the alleged "functional equivalent" relationship, despite the Special Master's express invitation to do so. While certainly not determinative standing alone, the absence of an evidentiary submission on this topic is problematic to any effort to support the "functional equivalent" argument. And, the Special Master's *in camera* review of the documents at issue did not provide any independent proof of the existence of any purported "functional equivalent" relationship between CMA and SEI.

36. Furthermore, the Sub-Advisory Agreement between CMA and SEI does not reflect a "functional equivalent" role as other cases have viewed the narrow exception. Instead, the agreement reflects that CMA provides the same standard trade service to a multitude of clients.[51]

37. The Sub-Advisory Agreement also does not contain any confidentiality provisions or restrictions similar to those to which an employee is typically subject. This substantially affects the reasonability of any expectation of privacy that SEI now tries to assert.

38. Notably, CMA has independently produced a number of communications that appear to have the very same participants and conversations as those communications (a) at issue in this motion and (b) currently withheld from production by SEI.[52]

---

[50] *Id.*, at 3.

[51] The Special Master also notes that the Sub-Advisory Agreement's non-solicitation clause is a one-sided clause prohibiting the sub-advisor from soliciting employees of the advisor for a year after the engagement termination—which does not provide any protection for the advisor and undercuts any analogy that the sub-advisor is the "functional equivalent" of an in-house employee.

39. The Special Master further believes that the position of CMA in the subject communications and documents is far different from the "interpreter" or "translator" role that some courts have recognized as a means to extend the cloak of privilege.[53]

40. Also, the present facts are far different from the *Copper Antitrust* case, which involved federal common law (not New York law), and where the communications at issue involved a "crisis management" public relations firm that was hired specifically for high-profile litigation. Here, CMA's sub-advisor role had nothing to do with litigation assistance and there is nothing to support a finding that CMA was retained to assist in the rendition of legal services.

41. With respect to the attorney work product claims, the Special Master is not convinced that the documents at issue were prepared in anticipation of litigation or due to the prospect of litigation. Indeed, with respect to the documents submitted for *in camera* review (which date through October 31, 2007), the Special Master is not convinced that the documents reflect information that should be protected from disclosure under the attorney work product doctrine. In short, there is nothing that demonstrates that the withheld documents would have been prepared in substantially similar form "but for" the prospect of litigation.

42. Moreover, no affidavits or other competent evidence have been submitted to the Special Master that weigh in favor of finding that SEI has met its burden of proof demonstrating that the documents in question meet the threshold requirements for protection from disclosure based on work product protection.

---

[52] *Compare* CMA-0025167 with SEIe03068822 (log entry no. 2344); CMA0024983 with SEIe03065940 (log entry no. 2252).

[53] *See, e.g., United States v. Kovel,* 296 F.2d 918, 921-922 (2d Cir. 1961) (presence of an accountant retained by counsel at meetings with client's counsel did not waive privilege); *see also People v. Osorio,* 75 N.Y.2d 80, 84 ("communications made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication, generally will be privileged.").

43. With respect to the sharing of purported work product materials of SEI with CMA, the Special
    Master also finds that the manner in which documents were freely shared between SEI and
    CMA does not seem consistent with the doctrine's purpose; instead, this behavior increased the
    opportunity for potential adversaries to obtain the information.  Indeed, in this litigation, a
    number of the types of documents at issue in this motion appeared to have been produced
    directly by CMA in response to a Rule 45 subpoena.   Accordingly, even if SEI could
    demonstrate that any of the documents withheld on the basis of work product protection from
    January 1, 2004 through June 30, 2009 are properly subject to those claims, the Special Master
    believes that such claims have been waived.

## IV.        RECOMMENDATION

44. SEI's claims of attorney-client privilege for those withheld documents subject to Defendants'
    motion should be overruled because any asserted privilege was waived by including any CMA
    employees in the communications.  SEI did not have a reasonable expectation of confidentiality
    under the circumstances, and disclosures to or communications with CMA employees reflected
    in the documents reviewed *in camera* do not appear to have been necessary for SEI to obtain
    informed legal advice.

45. SEI's claims of work product protection for those withheld documents subject to Defendants'
    motion should be overruled because SEI has not demonstrated that any of the documents were
    prepared in anticipation of litigation.  Furthermore, the documents at issue would likely have
    been created in essentially similar form irrespective of litigation.

46. The documents subject to production as a result of the overruling of the attorney-client privilege
    and work product claims in this Report and Recommendation are those that were created or
    received between January 1, 2004 and June 30, 2009.  This recommendation is intended to
    include those documents listed on the SEI privilege log that was submitted to the Special

Master, as well as all attachments to such e-mail communications that have been withheld on the basis of privilege or work product claims.

_____
Jonathan M. Redgrave
Special Master

Dated: September 30, 2011

*The Clerk of the Court is directed to docket this Report and Recommendation. Objections are due by October 6, 2011. So ordered.*

_____
Shira A. Scheindlin
U.S.D.J.

14

## APPENDIX A
### DEFENDANTS' AND SEI'S POSITIONS REGARDING COMMUNICATIONS BETWEEN SEI AND CMA WITHHELD BY SEI ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT PROTECTION

1. Defendants contend that CMA, "a subsidiary of Bank of America and a non-party to this action, is undeniably a third party to communications involving SEI's counsel and/or SEI employees."[54]

2. Defendants further assert that attorney-client privilege is destroyed with any "voluntary disclosure of the communication to a party outside the attorney-client relationship."[55] Defendants reason that, because CMA is a third party and is present on relevant communications listed on the excerpt from SEI's Privilege Log ("Exhibit A"), an "assertion of privilege over [these] communications…is plainly improper."[56]

3. In addition to citing to cases where courts have held that disclosure of a privileged communication to "a party outside the attorney-client relationship destroys the confidentiality of the communication and thus waives the privilege[,]"[57] Defendants also point out that Plaintiffs have "recently invoked" this third party waiver principle by challenging Morgan Stanley's request to claw back an inadvertently produced e-mail, and arguing that the document does not appear to be privileged because it was shared with third parties.[58]

---

[54] Defs.' Initial Submission at 1-2.

[55] *Id.* at 1.

[56] *Id.* at 2.

[57] *Id.* at 1 (citing *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 448 (S.D.N.Y. 1995); *In re FTC*, No. M18-304, 2001 WL 396522, at *2 (S.D.N.Y. Apr. 21, 2001); *United States v. Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999)).

[58] *Id.* at 1 (citing Exh. C, at 1 (Letter from D. Drosman to J. Freese regarding *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, at 1 (Apr. 5, 2011))("You have redacted e-mail communications between Morgan Stanley, Cheyne and Deloitte. It is black-letter law that the presence of a third party on these communications destroys any privilege that might otherwise apply. Please explain why you believe that these communications are 'protected by the attorney-client privilege,' as you assert.").

4. Defendants also assert that, where SEI has withheld communications with CMA based on "attorney work product protection," such withholding of documents from production is "no better supported" and "equally improper" as SEI's claims of attorney-client privilege. Defendants contend that SEI's privilege log entries "do not provide sufficient detail to raise the presumption" that the withheld communications meet the requirements of attorney work product protection that would allow SEI to properly withhold the documents from production.[59]

5. Defendants further challenge SEI's assertion of attorney work product protection where the dates of certain communications were prepared "as early as September 2007, a month *prior* to the date that the Cheyne SIV defaulted on its payments" or "before the initial complaint was filed in this litigation in August 2008, and over a year before SEI joined the litigation in September 2009."[60]

6. Defendants also challenge SEI's withholding of the documents listed on its privilege log in their entirety, and question why such "documents could not be redacted to remove any privileged or protected information, as opposed to withheld entirely."[61]

7. Naturally, SEI disagrees that the documents at issue are not privileged or otherwise protected from production. In support of its privilege claims, SEI argues that CMA is "SEI's agent" and that the communications withheld from production "are privileged communications."[62] Further, SEI asserts that, "CMA...was delegated with the authority to make investment decisions on behalf of SEI during the relevant time period" and that the documents listed on Exhibit A, "post-date the downgrade and in most instances the complete collapse of the Cheyne SIV and

---

[59] *Id.* at 2.
[60] *Id.* (emphasis in original).
[61] *Id.*
[62] SEI's Response to Defs.' Submission Regarding SEI's Privilege Designation, at 1 (June 3, 2011) ("SEI's Initial Submission").

reflect communications regarding SEI's legal strategy with respect to pursuing recovery of its losses stemming from investment in the fraudulently-rated Cheyne SIV."[63]

8. SEI also argues that the documents in Exhibit A "are properly withheld from SEI's production because it is well-settled that the attorney-client privilege attaches where agents of a company – whether salaried employees or paid consultants – communicate with the company's counsel for purposes of seeking or assisting with the provision of legal advice."[64]

9. Further to its assertion that "the general rule that disclosure of otherwise privileged communications to parties outside of the attorney-client relationship destroys the privilege"[65] does not apply to the circumstances at issue here, SEI argues that "CMA (i) was the '*functional equivalent of an in-house*' investing department, (ii) had the '*authority to make decisions and statements on [SEI's] behalf*,' and (iii) sought and received 'legal advice from [SEI's] counsel with respect to the performance of its duties.'"[66] SEI believes this asserted relationship affords an attorney-client relationship and its associated privilege to "communications between counsel for SEI and CMA."[67]

10. SEI contends that its relationship with CMA is distinguishable from the relationships described in the *Copper Antitrust*, *Bank Brussels*, and *Ackert* opinions cited by Defendants. SEI argues that, in those cases, "the third parties to whom otherwise privileged communications were disclosed were not agents of the disclosing party but instead were other banks with which the disclosing party had business relationships but which did not act on the disclosing party's behalf, [were] not

---

[63] *Id.* at 1, 3.

[64] *Id.* (citing *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. at 216).

[65] *Id.* at 1.

[66] *Id.* (emphasis and brackets in original) (citing *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. at 216; *In re Bieter Co.*, 16 F.3d at 939-40; *United States v. Schwimmer*, 892 F.2d at 243; *CSC Recovery Corp. v. Daido Steel Co., Ltd.*, No. 94 CIV. 9214 (LAP)(THK), 1997 WL 661122, at *3 (S.D.N.Y. Oct. 22, 1997); *H.W. Carter & Sons, Inc. v. The William Carter Co.*, No. 95 Civ. 1274 (DC), 1995 WL 301351, at *3 (S.D.N.Y. May 16, 1995); Supreme Court Standard 503(b)).

[67] *Id.* at 1.

the 'functional equivalent' of an in-house department of the disclosing party [], and did not have the authority to make decisions or speak for the disclosing party."[68]

11. Finally, SEI argues that a number of the "documents listed on Exhibit A are also protected by the attorney work product doctrine" because those documents "post-date the downgrade and in most instances the complete collapse of the Cheyne SIV and reflect communications regarding SEI's legal strategy with respect to pursuing recovery of its losses stemming from investment in the fraudulently-rated Cheyne SIV."[69]

12. SEI further notes that many of the documents withheld from production and listed on its privilege log "are non-responsive as they are outside the relevant time period. Accordingly, defendants' motion to compel should be denied on these grounds as well."[70]

13. Shortly after receiving the Parties' initial Submissions regarding this dispute, the Special Master posed the following substantive questions to the Parties:

   1. Have the Parties established or otherwise agreed upon the definition of the "relevant time period" for all purposes in this case as used in the submissions here? If so, what is it?

   2. Does Exhibit A to Defendants' submission reflect all of the information about those documents provided in SEI's privilege log for the documents that have been withheld from production? If not, can Defendants please provide a revised Exhibit A that includes all of the information provided in SEI's privilege log regarding the withheld documents that are the subject of the present dispute? Also, is there a glossary of names that further identifies each individual by entity and title/role that [can] be provided?

   3. Is there a[] written agreement between SEI and CMA that sets forth the scope of the relationship and responsibilities between the parties in the relevant time period that is readily available for review? If so, has that document been produced or can it be produced to the Special Master?[71]

---

[68] *Id.* at 2 (citations omitted).
[69] *Id.* at 2.
[70] *Id.*
[71] E-mail from Special Master Redgrave to all Parties re *Abu Dhabi Commercial Bank, et al. v. Morgan Stanley & Co. Incorporated, et al.* (June 9, 2011).

14. In their respective responses, the Parties disputed whether they have agreed upon the definition of "the relevant time period," but both Defendants and SEI acknowledged that SEI has agreed to produce responsive, non-privileged documents dated between January 1, 2004 and October 31, 2007.[72] Defendants also indicated that they have "sought and received discovery from SEI post-dating October 31, 2007."[73]

15. In addition, SEI provided the Special Master with various sets of Requests for Production of Documents, served on Plaintiffs or SEI by one or more Defendants, that (unless otherwise specified in a particular request) define the relevant time period as January 1, 2004 through October 31, 2007.[74]

16. SEI reiterated its position that most of the documents on its privilege log and at issue in the present dispute are non-responsive because they are dated after October 31, 2007.[75] Defendants dispute this contention on the basis that "the predicate for including a document on a privilege log is a conclusion that the document is in fact responsive, but may be withheld from production because of an applicable privilege."[76]

17. With respect to the completeness of Exhibit A, the Parties agreed that the excerpt of SEI's privilege log entries (submitted in Exhibit A to Defendants' May 31, 2011 Submission) reflects all of the information provided in SEI's privilege log regarding the documents at issue.[77]

18. SEI provided a list of "each of the individuals noted in defendants' Exhibit A [along with] a description for each" individual.[78] Defendants also provided two "schedules" that were included

---

[72] *Id.*; E-mail from D. Alvarado to Special Master Redgrave re *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.* (June 9, 2011) ("Pls.' June 9, 2011 e-mail response").

[73] Defs.' June 10, 2011 e-mail response.

[74] Pls.' June 9, 2011 e-mail response, Exhs. 1-4, 6.

[75] *Id.*

[76] Defs.' June 10, 2011 e-mail response.

[77] *Id.*; Pls.' June 9, 2011 e-mail response.

[78] Pls.' June 9, 2011 e-mail response, Exh. 8.

with SEI's privilege log and "identify any attorneys and SEI employees listed . . ." on SEI's privilege log.[79]

19. Finally, in response to the Special Master's question regarding the existence of a written agreement between SEI and CMA that sets forth the scope of the relationship and responsibilities between SEI and CMA, both sides provided a copy of the March 17, 2003 Investment Sub-Advisory Agreement (SEI-e00112191-SEI-e00112201).[80]

20. SEI contends that the Sub-Advisory Agreement "clearly shows that CMA had the authority to make all investment decisions on SEI's behalf."[81]

21. Defendants contend that SEI's "functional equivalent" argument "has no application here"[82] for at least three reasons:  (1) the doctrine has not been adopted by New York courts; (2) SEI had no reasonable expectation that its communications with CMA would be kept confidential; and (3) it appears that CMA has already produced documents that SEI now seeks to withhold as privileged.

22. First, Defendants argue that the "functional equivalent" doctrine, "which originates in the Eighth Circuit and has never been adopted by the Second Circuit, is contrary to New York law. . . ."[83]  In support of this contention, Defendants provide the following quote from the *People v. Osorio* case:  "[t]he scope of the [attorney-client] privilege is *not* defined by the third parties' employment or function . . . [but] depends on whether the client had a reasonable expectation of confidentiality under the circumstances."[84]

---

[79] Defs.' June 10, 2011 e-mail response.
[80] *Id.*; Pls.' June 9, 2011 e-mail response, Exh. 9.
[81] Pls.' June 9, 2011 e-mail response.
[82] Defs.' Reply Submission Regarding SEI's Improper Assertion of Privilege (June 13, 2011) ("Defs.' June 13, 2011 Reply Submission").
[83] *Id.*
[84] *Id.* (citing *People v. Osorio*, 549 N.Ed.2d 1183, 1186 (N.Y. 1989)) (emphasis and brackets in original).

23. Defendants claim that "SEI had no reason to expect that its communications with CMA would be kept confidential; as such, it cannot now claim privilege over those communications under New York law."[85]  In support of this statement, Defendants point out that "noticeably absent from SEI and CMA's Sub-Advisory Agreement . . . is *any* reference to confidentiality."[86]

24. Furthermore, according to Defendants, it appears that confidentiality has not been maintained over certain documents withheld from production by SEI because, as Defendants contend, "CMA *has already produced* several dozen communications between its employees and the SEI attorneys identified on [SEI's] privilege logs – some of which appear to be similar to, if not the same as, conversations that SEI now seeks to withhold."[87]

25. Further in support of their argument that the "functional equivalent" exception does not apply in these circumstances, Defendants contend that, "[w]hen discussed at all, the functional equivalent doctrine has been narrowly construed by New York federal courts."[88]

26. Defendants argue that the one case SEI cites that actually addresses the "functional equivalent" doctrine – as opposed to the "translator" or "conduit" exception to finding waiver of privilege over communications with third parties – was "rendered by a court invoking federal question jurisdiction, and explicitly applying federal common law, *not* New York law."[89]

27. Defendants further argue that the facts in *Copper Antitrust* are "easily distinguishable" from the facts found here because the communications at issue in *Copper Antitrust* were those "made to a 'crisis management' public relations firm that was hired *because* of high profile litigation."[90]

---

[85] *Id.* (citing *Osorio*, 549 N.Ed.2d at 1186).
[86] *Id.* (emphasis in original).
[87] *Id.* at 1-2 (emphasis in original).
[88] *Id.* at 1 (citing *Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113-14 (S.D.N.Y. 2005); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC.*, No. 01-Civ-9291 (JSM), 2002 U.S. Dist. Lexis 10919, at *8-11 (S.D.N.Y. June 19, 2002); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973)).
[89] *Id.* at 2 (citing *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213) (emphasis in original).
[90] *Id.* (citing *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. at 215, 220) (emphasis in original).

28. Defendants also contend that several cases decided after *Copper Antitrust* that have examined whether financial consultants may be considered the functional equivalent of an in-house investing department "have found that third parties similar to CMA do not meet the criteria for the application of the 'functional equivalent' test."[91]

29. If it is determined that the "functional equivalent" exception is applicable in the circumstances present here, Defendants argue that the exception "only applies to communications between SEI's attorneys and CMA's non-attorney employees," and to no other communications between anyone at SEI and CMA.[92]

30. With respect to SEI's claims of attorney work product protection over the documents at issue, Defendants largely echo their contentions set forth in their May 31, 2011 Submission regarding the timing of the communications. Defendants further contend that SEI's claim that these documents "'reflect communications regarding SEI's legal strategy with respect to pursuing recovery of its losses stemming from investment in the fraudulently-rated Cheyne SIV. . .' is "facially implausible."[93]

31. In support of this argument, Defendants note that the Cheyne SIV did not default until October 2007, that in mid-October 2007, SEI "was still expecting a full recovery on its investments,"[94] and that, in November 2007, SEI "told its investors that it '[had] not seen any dramatic change in the critical performance of the collateral underlying the SIVs [in which SEI had invested] that would account for dramatic changes in the value of the SIVs themselves.'"[95]

---

[91] *Id.* at 1 (citing *Export-Import Bank of the United States,* 232 F.R.D. at 113-14; *In re Currency Conversion Fee Antitrust Litig.,* MDL No. 1409, M 21-95, 2003 U.S. Dist. Lexis 18636, at *7-8 (S.D.N.Y. Oct. 21, 2003)).

[92] *Id.* at 2-3.

[93] *Id.* at 3 (citing SEI's June 3, 2011 Submission, at 2).

[94] *Id.* (citing Exh. E, SEI-e00713555)).

[95] *Id.* (citing Exh. E, SEI-e00713546)).

32. Defendants also argue that SEI has failed to meet its "heavy burden" in demonstrating that the attorney work product protection applies to the documents at issue because SEI "has not provided any remotely sufficient detail, affidavits, or other cognizable evidence to support its claims that the documents withheld were prepared in anticipation of litigation or would not have otherwise been prepared in substantially similar form."[96]

33. Defendants reiterate their request that "the Special Master direct SEI to produce all communications with CMA that have been improperly withheld from production."[97]  In the alternative, Defendants "request that the Special Master conduct an *in camera* review of the documents at issue"[98] to ultimately determine the producible status of the documents.

34. As indicated above, on July 1, 2011, the Special Master issued a draft version of this Report and Recommendation which set forth preliminary findings and recommended procedures for the submission of additional materials to the Special Master to allow for an *in camera* review of a sub-set of documents at issue, afford SEI another opportunity to submit additional proof to support its claims of privilege, and provide Defendants with an opportunity to respond to SEI's further supplemental Submissions.

35. Specifically, the July 1, 2011 draft version of this Report and Recommendation that was provided to the Parties provided the following recommendations:

    a.   The Special Master recommends that the Court hold Defendants' motion to compel in abeyance until (a) the Special Master conducts an *ex parte*, *in camera* review of the documents described below; (b) SEI is permitted the opportunity to submit additional materials (by affidavit or otherwise) that demonstrate by specific and competent evidence the legal and factual bases upon which SEI believes the

---

[96] *Id.* at 3.
[97] *Id.*
[98] *Id.*

documents it has withheld from production are protected from disclosure by the attorney-client privilege and/or work product protection; and (c) Defendants are afforded an opportunity to respond to SEI's further Submission.

b. The Special Master recommends that SEI be required to provide unredacted copies of those documents on Exhibit A that fall within the January 1, 2004 through October 31, 2007 timeframe to the Special Master *ex parte* for *in camera* review no later than ten (10) days of the date of this Report and Recommendation, <u>or</u> within three (3) days of the entry of the accompanying Proposed Order – whichever is sooner.[99]

c. Such production should include the documents in either pdf or TIFF format on a CD-ROM sent to the Special Master's attention at the Minneapolis office of Redgrave LLP, 100 North 6th Street, Suite 630-B, Minneapolis, MN 55403. The CD-ROM should be labeled as follows: ***"Abu Dhabi v. Morgan Stanley & Co. – Documents Produced by SEI Investments Company for in camera review as Compelled by the Special Master's Report & Recommendation No. 14."***

d. With respect to any further Submission from SEI, the Special Master recommends that, no later than fourteen (14) days of the date of this Report and Recommendation, <u>or</u> within five (5) days of the entry of the accompanying Proposed Order – whichever is sooner – SEI should provide an unredacted Submission to the Special Master *ex parte* (and as needed, a redacted version to Defendants) that includes additional materials (by affidavit or otherwise) that demonstrate, by specific and competent evidence, the factual and legal bases upon which SEI believes it may

---

[99] Such documents, as listed on Exhibit A, are the following "lines": 738, 748, 750-754, 757, 759-764, 801, 1702, 1855, 2241, 2250, 2252, 2254, 2270-2271, 2274, 2277-2279, 2282, 2322, 2329, 2339, 2344, 2476, 2478, 2480, 2483, 3281, and 3353.

properly withhold from production the documents listed on Exhibit A that fall within the January 1, 2004 through October 31, 2007 timeframe, because those documents are protected from disclosure by the attorney-client privilege and/or work product protection.

e.  The Special Master also recommends that, no later than five (5) days of the date of receipt of SEI's further Submission, Defendants may respond to SEI's further Submission by providing a written response of no more than ten (10) pages to the Special Master and Plaintiffs.

f.  The Special Master recommends that additional guidance be provided to SEI with respect to its further Submission of affidavits or other materials in support of its assertions of attorney-client privilege and work product protection.

g.  Specifically, SEI's further Submission in support of its assertions that the attorney-client privilege protects such documents from disclosure should provide support for the following requirements of the privilege: (a) an attorney-client relationship existed at the time the communication was made; (b) the communication was made for the purpose of facilitating or rendering legal advice or services (as opposed to business advice or strategy); (c) the communication was intended to be and was kept confidential; (d) the privilege was not waived by including any CMA employees in the communications; (e) the client had a reasonable expectation of confidentiality under the circumstances; and (f) disclosure to or communications with CMA employees were necessary for SEI to obtain informed legal advice.[100]

---

[100] This guidance is intended to assist SEI in its preparation of additional materials supporting its claims of privilege and protection.  It is not intended to be – and should not be interpreted as being – a complete list of the relevant information that SEI may need to provide in order to adequately support its claims of privilege

h.  With respect to its claims of work product protection, SEI's further Submission should provide support that: (a) that the document was prepared in anticipation of litigation; (b) the document was prepared or obtained for SEI *because of* the prospect of litigation; (c) the document would not have been created in essentially similar form irrespective of litigation; and (d) the protection has not been waived upon sharing it with CMA employees.

i.  The Special Master further recommends that SEI be required to confirm that any document listed on Exhibit A that post-dates October 31, 2007 is not responsive to a particular request by any Defendant that specifies a time period other than January 1, 2004 through October 31, 2007. Such confirmation (or non-confirmation) should be included with SEI's further Submission related to this motion. If certain documents on Exhibit A are responsive to requests seeking the production of documents dated outside of the January 1, 2004 through October 31, 2007 timeframe, SEI should identify the specific requests, and if needed, the Special Master will evaluate any objections to production (including relevance or privilege) at a later time.

36. On July 6, 2011 the Special Master conducted a conference call with the Parties to discuss the draft version of Report and Recommendation No. 14. Thereafter, the Special Master confirmed that the Parties would agree to follow the procedural instructions set forth above and hold in abeyance any substantive objections to the draft Report and Recommendation until such time

---

or protection, depending on which exception(s) may apply to the general rule regarding communications that include third parties.

that a final version of this Report and Recommendation was served on the Parties and filed with the Court.[101]

37. As directed by the Special Master and agreed to by the Parties, on July 20, 2011 SEI provided thirty-eight documents listed on its privilege log for *in camera* review by the Special Master.

38. On July 26, 2011, Plaintiffs provided their Supplemental Submission Regarding SEI's Privilege and Work-Product Designations.[102]

39. On August 1, 2011, Defendants provided their Response to SEI's Supplemental Privilege Submission.[103]

40. Appended to their Supplemental Submission, Plaintiffs provided a revised privilege log that provided more descriptive information for the documents withheld from production and dated between January 1, 2004 and October 31, 2007.[104]

41. In support of their contention that an attorney-client relationship existed at the time the communication was made, Plaintiffs reiterate their contention that CMA is the "functional equivalent" of an in-house investing department at SEI.  Plaintiffs provide citations to depositions from a Rule 30(b)(6) deposition of SEI's corporate representative and a Rule 30(b)(6) deposition of CMA,[105] which essentially confirm that CMA was SEI's subadvisor with respect to the Cheyne SIV, as set forth in the Sub-Advisory Agreement that was provided in Plaintiffs' initial Opposition to Defendants' Motion to Compel.

42. To support their argument that the communications submitted for *in camera* review were "made for the purpose of facilitating or rendering legal advice or services (as opposed to business

---

[101] Draft Report and Recommendation No. 14 (July 1, 2011) at ¶¶ 71-78.

[102] Plaintiffs' Supplemental Submission Regarding SEI's Privilege and Work Product Designation (July 26, 2011) ("Pls.' Supp. Submission").

[103] Defendants' Response to SEI's Supplemental Privilege Submission (Aug. 1, 2011) ("Defs.' Supp. Submission").

[104] Pls.' Supp. Submission, Ex. 5.

[105] Pls.' Supp. Submission, at 1-3, Exs. 1-3.

advice or strategy)," Plaintiffs did not provide any affidavits or declarations. Rather, Plaintiffs indicate, for the first time, that the thirty-eight documents provided for *in camera* review fall into one of five categories, defined as: (1) communications between lawyers at SEI and CMA concerning certain disclosures SEI was required to make to the SEC in relation to its holdings of Cheyne SIV notes; (2) communications between SEI and CMA counsel concerning certain required non-disclosure agreements relating to the collapse of the Cheyne SIV; (3) communications between SEI and CMA regarding the application of SEC Rule 2a-7, under which the SEI money market funds sub-managed by CMA operated; (4) communications between SEI and CMA counsel regarding "default" of the Cheyne SIV, a term with legal significance under SEC Rule 2a-7; and (5) communications between SEI and CMA relating to the SEI parent corporation's purchase of Cheyne SIV notes from managed accounts in order to stave off a rating agency downgrade.[106]

43. According to Plaintiffs, by classifying the communications in question as falling into one or more of the above-described categories, "the communications concern inherently attorney-client privileged topics and are properly withheld from SEI's production."[107]

44. Plaintiffs do not provide any affidavits or other competent evidence to meet their burden of proof for additional element of the privilege (e.g., the communications were intended to be and were kept confidential, the privilege was not waived by including any CMA employees in the communications, the client had a reasonable expectation of confidentiality under the circumstances, and disclosure to or communications with CMA employees were necessary for SEI to obtain informed legal advice).

---

[106] Pls' Supp. Submission, at 3–4.
[107] Pls' Supp. Submission, at 4.

45. Rather, Plaintiffs sum up their argument on these required showings by stating, "these communications were intended to remain confidential and were necessary for SEI to obtain legal advice. First, the communications concern legal matters and are transmitted between SEI's and CMA's attorneys. Many of the communications are clearly marked as confidential and attorney-client privileged . . . . And, . . . the subject matters of these communications are inherently legal in nature and concern confidential topics about which only legal counsel are discussing. In addition, the documents concern SEI's counsels' request and provision of legal advice in the context of SEI's and CMA's 'close working relationship' on issues that were largely 'possessed by no one else at the company' other than CMA since it was CMA that made the relevant investment decisions on SEI's behalf. . . . Due to the close agency relationship between SEI and CMA and to the fact that CMA made the relevant purchase decisions on CMA's behalf, these communications were necessary for SEI to obtain legal advice about its investments in and eventual losses stemming from the collapse of the Cheyne SIV."[108]

46. With respect to SEI's claims of work product protection, in their Supplemental Submission, Plaintiffs state that the documents listed on SEI's privilege log and at issue in the present motion "post-date the downgrade and in most instances the complete collapse of the Chyene SIV and reflect communications regarding SEI's legal strategy with respect to pursuing recovery of its losses stemming from investment in the fraudulently-rated Cheyne SIV."[109]

47. Plaintiffs further argue that "[t]he prospect of litigation concerning SEI's losses existed and the documents were created because of SEI's attempt to maximize its recovery of losses stemming

---

[108] Pls' Supp. Submission, at 4.
[109] *Id.* at 5 (citing to Ex. 5, SEI's revised privilege log).

from the Cheyne SIV's collapse. . . . The documents would not have been created in essentially the same fashion had the Cheyne SIV not collapsed."[110]

48. In support of these contentions, Plaintiffs again cite to the deposition testimony of SEI's Rule 30(b)(6) witness who stated that "SEI regularly communicated with CMA '[d]uring the *crisis period*, 2007.'"[111]

49. In their response to SEI's Supplemental Submission, Defendants argue that SEI has failed to carry its "'heavy burden' to establish that the withheld documents are protected from disclosure."[112]

50. Defendants contend that Plaintiffs failed to prove that the requirements set forth in the Draft Report & Recommendation No. 14 were fulfilled, such that the documents at issue are protected from disclosure by either the attorney-client privilege or attorney work product.

51. Defendants further argue that the evidence submitted by Plaintiffs in their Supplemental Submission, by way of deposition testimony and the re-submission of the Sub-Advisory Agreement, fundamentally fails to establish that the necessary elements of the attorney-client privilege and attorney work product protection apply to the documents in question, and that SEI has not waived the application of the privilege or protection by sharing such communications or documents with CMA.[113]

---

[110] *Id.*

[111] *Id.* (citing Ex. 1).

[112] Defs.' Supp. Submission, at 1.

[113] *Id.,* at 1-2 ("SEI's unsworn and unsupported assertions relating to its relationship with CMA do not constitute competent evidence" to meet SEI's burden of proving that the necessary elements of the attorney-client privilege or work product protection have been met.).