UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| ABU DHABI COMMERCIAL BANK, KING COUNTY, WASHINGTON Together and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>            v.<br><br>MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY & CO. INTERNATIONAL PLC, MOODY'S INVESTORS SERVICE, INC., MOODY'S INVESTORS SERVICE LTD., STANDARD AND POOR'S RATINGS SERVICES and THE McGRAW HILL COMPANIES, INC.,<br><br>                    Defendants. | **REPORT AND RECOMMENDATION NO. 21**<br>DEFENDANTS' MOTION TO COMPEL PRODUCTION OF RULE 30(b)(6) CORPORATE DESIGNEE'S WRITTEN ANSWERS<br><br>Case No. 08  Civ. 7508 (SAS) |

JONATHAN M. REDGRAVE, SPECIAL MASTER:

      This Report and Recommendation addresses the issue of Defendants' Motion to Compel the Production of written answers created by NACF's Rule 30(b)(6) corporate designee, Mr. Byung-Gyu Pahk, prior to the date of his scheduled Rule 30(b)(6) deposition. The Parties contacted the Special Master to discuss their dispute during the October 13, 2011 deposition. They have been unable to resolve the dispute, and have provided their respective positions in Submissions to the Special Master. This issue is now ripe for decision.[1]

---

[1] The Special Master determined that it was best to issue a written Report and Recommendation on this subject so that Plaintiffs would have a direct avenue to quickly object to the District Court in the event that Plaintiffs disagree with this ruling regarding a document subject to a claim of privilege.

1

I.   **BACKGROUND**

1. During the course of this litigation, Defendants served a Rule 30(b)(6) Deposition Notice on Plaintiff National Agricultural Cooperative Federation ("NACF"). Such deposition occurred on October 12 and 13, 2011.

2. NACF designated Mr. Byung-Gyu Pahk as the corporate representative who would provide testimony with respect to twenty-nine topics identified in the Rule 30(b)(6) Notice.

3. According to his testimony, Mr. Pahk does not have personal knowledge relating to NACF's decision to purchase Cheyne notes, and relied on discussions with Mr. In-Sup Soh to obtain information that is responsive to the identified twenty-nine topics.[2]

4. Following his meetings with Mr. Soh, Mr. Pahk prepared written notes that contained answers to the twenty-nine topics and indicated in his deposition that he prepared the answers for his own reference to enable him to provide such answers in his deposition.[3]

5. That Mr. Pahk had prepared written answers was first revealed during the second day of his deposition.[4]

6. Mr. Pahk testified that he did not take notes during his meetings with Mr. Soh, but that he began compiling his answers to the twenty-nine topics the day after his meetings with Mr. Soh concluded and that he attempted to memorialize his discussions with Mr. Soh in his answers to the twenty-nine topics.[5]

7. Mr. Pahk testified that when he prepared his written answers he intended to provide such answers as his testimony during his deposition.[6]

---

[2] NACF Rule 30(b)(6) Dep. Tr. at 4:15-17, 32:14-18 (Oct. 12, 2011).
[3] NACF Rule 30(b)(6) Dep. Tr. at 26:16-27:3, 27:15-19, 36:25-37:4 (Oct. 13, 2011). For sake of simplicity, the Special Master will refer to this document as :Mr. Pahk's "written answers."
[4] *Id.* at 26:16-18.
[5] *Id.* at 52:16-25.
[6] *Id.* at 36:25-37:4.

8. Mr. Pahk further indicated that he reviewed the answers he compiled on Friday, October 7 before he traveled from Korea to the United States, and on Monday, October 10, as part of a preparation session with his attorneys.[7]

9. Mr. Pahk indicated that he has not reviewed the answers since Monday, October 10 because he gave the answers to his attorneys.[8]

10. Mr. Pahk appears to have provided some inconsistent testimony regarding whether his written answers would refresh his recollection of his conversations with Mr. Soh.[9]

11. Shortly after learning that Mr. Pahk prepared written answers to the twenty-nine topics, Defendants requested that NACF produce Mr. Pahk's notes to them.[10]

12. NACF's counsel objected on the grounds that the written answers are privileged.[11]

13. The Parties then agreed to contact the Special Master seeking a ruling as to whether production of Mr. Pahk's written answers was appropriate or required and the issue was raised during a telephone conference with the Special Master on the morning of October 13, 2011.

14. The Special Master instructed the Parties to continue the deposition and to submit the deposition transcript and any argument or legal authority later that day.

15. The Parties provided such submissions to the Special Master and the issue of Defendants' Motion to Compel the Production of Mr. Pahk's written answers is ripe for determination.

---

[7] *Id.* at 55:22 – 56:3.
[8] *Id.* at 56:4-5.
[9] *Compare id.* at 19:18-20 ("Okay, as far as 29 questions are concerned, if you ask the questions I can give answer immediately, because I prepared.") *with id.* at 31:22-25 and 32:2-6 ("Okay, since I don't have the written answers I prepared with me right now, what I can say is that when we were in a meeting with Mr. Soh and Ms. Kim we prepared for answers decide to give you an answer that is so we will let this one go communication between NACF and Morgan Stanley and through Morgan Stanley. But I feel that the answers we prepared at the time were slightly off the point."); and *id.* at 56:12-14 ("You know, the notes were not very important to [me] because everything was in my head already.").
[10] *Id.* at 36:12-15.
[11] *Id.* at 36:16-37:12.

3

## II.  LEGAL STANDARD

16. In every discovery context, a motion to compel is entrusted to the sound discretion of the district court.[12]

17. The Second Circuit has noted that a "trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion."[13]

18. Federal Rule of Evidence 612 provides in pertinent part:

    [I]f a witness uses a writing to refresh memory for the purpose of testifying, either-

    (1) while testifying, or

    (2) before testifying, if the court in its discretion determines it necessary in the interests of justice,

    an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto.[14]

19. However, "nothing in the Rule [should] be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory."[15]

20. As one court has noted, "courts have been grappling with the scope of Rule 612 with varying degrees of clarity."[16]

---

[12] *See Am. Sav. Bank, FSB v. UBS Paine Webber, Inc., (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000).
[13] *In re DG Acquisition Corp.*, 151 F.3d 75, 79 (2d Cir. 1998) (citing *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992)).
[14] Fed.R.Evid. 612.
[15] *Id.*, Advisory Committee's Note (*citing* House Report No. 93-650).
[16] *Suss v. MSX International Engineering Services, Inc.*, 212 F.R.D. 159, 163 (S.D.N.Y. 2002).

4

21. Some cases, exemplified by *Ehrlich v. Howe*, 848 F.Supp. 482 (S.D.N.Y. 1994), take the position that Rule 612 trumps the privilege, such that a document that is reviewed by a witness prior to deposition must always be produced.

22. According to the court in *Ehrlich*, "when '[c]onfronted with the conflict between the command of Rule 612 to disclose materials used to refresh recollection and the protection provided by the attorney-client privilege ... the weight of authority holds that the privilege ... is waived.'"[17]

23. As recognized by one Court in the Southern District of New York, "While such a rule has the virtue of simplicity, it appears inconsistent with the advisory committee note indicating that Rule 612 does not bar the assertion of privilege with respect to documents used to refresh a witness' recollection."[18]

24. Citing with approval to *Suss*, the *In re Rivastigmine* Court stated that:

> "the relevant inquiry is not simply whether the documents were used to refresh the witness's recollection, but rather whether the documents were used in a manner which waived the attorney-client privilege. This could happen, for example, if privileged communications were disclosed to an individual outside the privileged relationship. On the other hand, the privilege would not be lost if an individual were to review his own already privileged documents."[19]

25. The *In re Rivastigmine* Court further stated:

> "[a] better approach is the functional analysis described in *Bank Hapoalim, B.M. v. American Home Assurance Co.*, No. 92 Civ. 3561, 1994 WL 119575 (S.D.N.Y. April 6, 1994). There, the court found that "[b]efore ordering production of privileged documents, courts require that the documents 'can be said to have had sufficient "impact" on the [witness'] testimony to trigger the application of Rule 612.' . . . . If this threshold is met, courts then engage in a balancing test considering such factors as whether production is necessary for fair cross-examination or whether the examining party is simply engaged in a 'fishing expedition.'"[20]

---

[17] *Id.* at 493 (quoting *S & A Painting Co. v. O.W.B. Corp.*, 103 F.R.D. 407, 408 (W.D. Pa. 1984)).

[18] *In re Rivastigmine Patent Litigation*, 486 F.Supp.2d 241, 243 (S.D.N.Y.2007).

[19] *Id.* (citing *Suss*, 212 F.R.D at 164) (citations omitted).

[20] *Id.* (citations omitted); *see also Thomas v. Euro RSCG Life*, 264 F.R.D. 120, 122 (S.D.N.Y. 2010) (holding that attorney-client privilege was waived with respect to notes prepared by a witness and sent to counsel for legal advice because the witness relied upon the notes in connection with her deposition testimony sufficiently close in time to the testimony to provide accurate testimony; further, the court noted that nature of the notes

## III.     FINDINGS

26. The Special Master assumes that Mr. Pahk's written answers are initially protected by the attorney-client privilege and attorney work product protection for the purposes of this analysis.[21]

27. The Special Master further finds that Defendants have shown that Mr. Pahk relied upon his written answers to the twenty-seven topics prior to providing his testimony as a corporate representative for NACF.

28. The Special Master also finds that Mr. Pahk used his written answers for the purposes of refreshing his recollection of his discussions with Mr. Soh sufficiently close in time to Mr. Pahk's Rule 30(b)(6) deposition to satisfy Fed.R.Evid. 612.

29. The Special Master further finds that Mr. Pahk's written answers had sufficient "impact" on his testimony to trigger the application of Fed.R.Evid. 612.

30. As such, the Special Master must determine whether production of Mr. Pahk's written answers is necessary for fair cross-examination or whether Defendants are engaged in a fishing expedition.

31. Here, in light of the fact that Mr. Pahk's written answers reflect his recollection of his discussions with Mr. Soh (which occurred outside of the presence of any attorney), and that Mr. Pahk indicated that he prepared his written answers to provide such answers in response to the questions that he anticipated would be posed to him at his deposition, the Special Master finds that production of Mr. Pahk's written answers are necessary to provide Defendants with a fair opportunity to cross-examine NACF, through the testimony of Mr. Pahk.

---

reflected facts important to resolution of issues in the case and thus the "interests of justice" compelled production).

[21] While, for the purposes of this argument, the Special Master is making the assumption that the document is privileged, it is unclear that it would qualify for work product protection and, even if it was work product, it would be fact work product that could be overcome by a showing of need. As for the claim of attorney-client privilege, the testimony provided to the Special Master indicates that the facts reflected in the document are non-privileged and the inclusion of those facts in the document that was later shared with attorneys should not cloak such facts as privileged. The Special Master has not reviewed the document in question (which has been represented as written in Korean).

6

32. The Special Master further finds that Defendants' request for the production of Mr. Pahk's written answers do not appear to be a fishing expedition. Rather, in addition to providing Defendants the ability to properly prepare to cross-examine Mr. Pahk, the Special Master believes that production of Mr. Pahk's written answers will also lead to efficiencies in completing the examination of NACF.[22]

## IV.     RECOMMENDATION

33. Based on the foregoing, the Special Master recommends that the Court grant Defendants' Motion to Compel the Production of Mr. Pahk's written answers.

34. The Special Master further recommends that such production be made within twenty-four hours of entry of the Court's Order adopting this Report and Recommendation and that the Parties agree upon an date to complete the deposition of NACF within three days of entry of the Court's Order.

Jonathan M. Redgrave
Special Master

Dated: October 14, 2011

*The Clerk of the Court is directed to docket this Report and Recommendation. Objections are due by October 19, 2011. So ordered.*

10/14/11
Shira A. Scheindlin
U.S.D.J.

---

[22] Indeed, the language barriers that are reflected in the rough transcript indicate to the Special Master that the production of the document may be able to aid all of the parties in efficiently eliciting factual testimony by the Rule 30(b)(6) witness.