**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABU DHABI COMMERCIAL BANK, KING COUNTY, WASHINGTON Together and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br><br>v.<br><br>MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY & CO. INTERNATIONAL PLC, MOODY'S INVESTORS SERVICE, INC., MOODY'S INVESTORS SERVICE LTD., STANDARD AND POOR'S RATINGS SERVICES and THE McGRAW HILL COMPANIES, INC.,<br><br>Defendants. | **REPORT AND RECOMMENDATION NO. 23**<br>DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO DEFENDANTS' THIRD REQUEST FOR PRODUCTION FROM PLAINTIFF SEI INVESTMENTS COMPANY AND THE MORGAN STANLEY DEFENDANTS' MARCH 31, 2011 REQUEST FOR PRODUCTION FROM ALL PLAINTIFFS<br><br>Case No.  08   Civ. 7508 (SAS) |



JONATHAN M. REDGRAVE, SPECIAL MASTER:

This Report and Recommendation addresses the issues of Defendants' Motion to Compel

the Production of Documents related to Defendants' Third Request for Production of Documents

from Plaintiff SEI Investments Company and the Morgan Stanley Defendants'[1] March 31, 2011

Request for Production from All Plaintiffs.  The Parties have been unable to resolve these disputes,

and have provided their respective positions in Submissions to the Special Master.  These issues are

now ripe for decision.

---

[1] The "Morgan Stanley Defendants" are Morgan Stanley & Co. Inc. and Morgan Stanley & Co. International.

## I.      BACKGROUND

1. On March 28, 2011, Defendants served their Third Request for Production of Documents from Plaintiff SEI Investments Company ("Third Request to SEI").[2]

2. On March 31, 2011, the Morgan Stanley Defendants served their March 31, 2011 Request for Production of Documents on all Plaintiffs ("Morgan Stanley's March 2011 Request").[3]

3. From March 2011 through August 2011, the Parties exchanged objections, responses, and positions regarding these requests in correspondence and during meet-and-confers.

4. The Parties' final positions for the purpose of this Report and Recommendation are set forth in Appendix A.

## II.     LEGAL STANDARD

5. In every discovery context, a motion to compel is entrusted to the sound discretion of the district court.[4] The Second Circuit has noted that a "trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion."[5]

6. Rule 26(b)(1) provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

---

[2] Defendants' Submission Regarding Plaintiffs' Refusal to Provide Requested Discovery, Ex. A (Aug. 30, 2011) ("Defs.' Submission").

[3] Defs.' Submission, Ex. B.

[4] *See Am. Sav. Bank, FSB v. UBS Paine Webber, Inc., (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000).

[5] *In re DG Acquisition Corp.*, 151 F.3d 75, 79 (2d Cir. 1998) (citing *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992)).

7. "The key phrase in this definition—'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[6]

8. Rule 26(c) also "confers broad powers upon the court to limit or prevent discovery even though the information sought is relevant and within the scope of Rule 26(b)."[7] Rule 26(c)(1) provides that the court may forbid discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."

9. Where a party objects to a discovery request, the objecting party "bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'"[8]

10. Finally, Rule 26(b)(2)(C) requires that the court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines" any one of the following three factors exists: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

---

[6] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citations omitted).
[7] *Coyne v. Houss*, 584 F.Supp. 1105, 1109 (E.D.N.Y. 1984).
[8] *McKissick v. Three Deer Ass'n Ltd. P'ship*, 265 F.R.D. 55, 56–57 (D. Conn. 2010) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y.1984)).

11. Pursuant to both that discretion and his appointment, the Special Master makes this Report and Recommendation in accordance with Fed. R. Civ. P. 53 and the Order Appointing the Special Master.[9]

### III.   FINDINGS

#### A. DEFENDANTS' THIRD REQUEST FOR PRODUCTION OF DOCUMENTS TO SEI INVESTMENTS COMPANY

##### i. Requests Nos. 1-6, Regarding "SEI Commentaries," "Columbia Management Advisors Reports" and "SEI Fixed Income Forum Documents"

12. The Special Master finds that there is sufficient indication of relevance that warrants SEI Investments Company to take some additional reasonable efforts to identify additional documents identified by Defendants in Requests Nos. 1-6, and that Rule 26(b)(2)(C)'s factors do not completely preclude further discovery regarding the documents requested by Defendants in Requests Nos. 1-6.

13. In particular, limitations should be applied to adequately balance the competing interests of providing the requesting party access to relevant evidence while avoiding the imposition of undue burden on the producing party, as well as avoiding the unnecessary depletion of the parties' resources on pursuing what may become cumulative or duplicative evidence, or evidence that may prove to be relatively insignificant to the merits of the case.

14. Accordingly, in an attempt to strike the appropriate balance in this case, the Special Master believes that, to the extent SEI is aware of an existing collection or collections of documents that contain documents that are responsive to Requests Nos. 1-5, it is appropriate to require SEI to review such collection or collections for the purpose of producing documents responsive to

---

[9] Order dated Feb. 3, 2011 ("Mr. Redgrave is appointed to resolve such discovery disputes that may arise, and which have been specifically referred to him by the Court, including electronic discovery disputes, questions of privilege, work product, relevancy, scope, and burden.").

such requests if they have not already been produced.  Following this review, SEI (a) should produce to Defendants any responsive documents that have not been previously produced, (b) inform Defendants that SEI is unaware of any existing collection or collections (and therefore, there is nothing to review), or (c) inform Defendants that, through its review, SEI has confirmed that all responsive documents from its previously collected documents have been produced to Defendants.

15. SEI should not be obligated to investigate, locate, identify, or produce such documents that have not otherwise been collected previously in response to Requests Nos. 1-5.

16. Regarding Request No. 6, SEI should review any existing collections of documents to determine if SEI possesses any documents related to the annual Fixed Income Forums ("FIFs") from January 1, 2005 through July 31, 2008.  Following this review, SEI (a) should produce to Defendants any responsive documents that have not been previously produced, (b) inform Defendants that SEI is unaware of any existing collection or collections (and therefore, there is nothing to review), or (c) inform Defendants that, through its review, SEI has confirmed that all responsive documents from its previously collected documents have been produced to Defendants.

17. Outside of reviewing any existing collections of documents, SEI should not be required to make additional collections to fulfill its obligations regarding Request No. 6.

### ii.  Requests Nos. 7-11 Regarding Columbia Management Advisors

18. With respect to Requests Nos. 7-9, the Special Master notes that SEI previously agreed to produce "relevant, non-privileged, responsive documents, if any, concerning SEI's retention of Columbia Management Advisors. . . with respect to SEI's investments in the Cheyne Notes that form the basis of SEI's claims in this action."

5

19. The Special Master further notes that, in response to Request No. 11, SEI previously agreed to produce "relevant, non-privileged, responsive documents, if any, concerning the ratings, if any, that Columbia assigned to the Cheyne Notes that form the basis of SEI's claims in this action."

20. The Special Master finds the limitations set by SEI for its production of documents to be appropriate under Rule 26(b)(2)(C), and believes that SEI should be required to produce that which it said it would produce, if it has not done so already.

21. The Special Master further finds that Defendants' requests—that SEI identify by Bates number those documents that SEI has already produced in response to each of these requests, and to confirm that SEI has completed its production in response to these requests—are neither improper nor unreasonable.

22. Accordingly, the Special Master believes that SEI should identify such documents by Bates number, confirm that production is complete, and/or complete the production as SEI agreed to do in its responses to Defendants' requests.

23. With respect to Request No. 10, which seeks production of "[a]ny evaluations, reviews or assessments of the performance of CMA with respect to its management of the Money Market Funds. . .," the Special Master notes that these materials are responsive and should be produced subject to the limitations set forth below.

24. In this regard, the Special Master notes that, although not raised by the Parties in the context of this dispute, non-party CMA has produced documents in this case in response to a Rule 45 subpoena, and has had one, if not more, of its employees sit for depositions in the case. In addition, the Special Master is aware of several depositions of the SEI Plaintiffs, noticed by Defendants, which explored the SEI Plaintiffs' relationship with CMA, including CMA's authority, abilities and objectives with respect to its role of sub-advisor to the SEI Plaintiffs.

25. As such, and consistent with Rule 26(b)(2)(C) and the findings set forth above regarding Requests Nos. 1-6, the Special Master believes that, to the extent SEI is aware of an existing collection or collections of documents that are responsive to Request No. 10, it is appropriate to require SEI to review such existing collection or collections for the purpose of producing documents responsive to Request No. 10 if they have not already been produced.

26. Following this review, SEI (a) should produce to Defendants any responsive documents that have not been previously produced, (b) inform Defendants that SEI is unaware of any existing collection or collections (and therefore, there is nothing to review), or (c) inform Defendants that, through its review, SEI has confirmed that all responsive documents from its previously collected documents have been produced to Defendants.

27. SEI should not be obligated to investigate, locate, identify, or produce such documents that have not otherwise been collected previously.

### iii.  Request No. 12 Regarding Single Email Communication

28. The Special Master believes that Defendants' narrow request for the production of a single email that appears to be responsive but not produced is neither inappropriate nor unreasonable.

29. The Special Master further finds that requiring SEI to attempt to locate such email is neither overbroad nor unduly burdensome.

30. SEI should produce the email, log the email, or confirm to Defendants that SEI has attempted to locate the email but has not been able to locate it.

7

#### iv.  Request No. 13 Regarding "SEC Requests for Information"

31. The Special Master finds that Request No. 13 seeks relevant information, but that it also seeks information that would be captured by the search terms identified in Report and Recommendation No. 3's Search Table 1.

32. As Defendants argue, "[b]ased on documents SEI has already produced, the SEC's investigation appears to have implicated SEI's investments in Cheyne and documents relating to that investigation therefore bear on the very investment at issue in this case."[10]

33. Plaintiffs' arguments on this point indicate a willingness to produce responsive information, but only if an additional process is followed—one that mirrors the process used when Plaintiffs requested certain documents from Defendants.

34. In light of the fact that Report and Recommendation No. 3's Search Table 1 includes the term "Cheyne," and because Defendants have received documents produced from CMA and SEI, the Special Master does not believe there is sufficient need to require SEI to do anything further in response to these requests, either to locate documents within SEI corpus or collected documents or elsewhere.

35. If, however, Defendants choose to follow the same procedures that Plaintiffs followed in order to obtain documents produced by Defendants to various government agencies,[11] then, based on what the Special Master interprets as Plaintiffs' intent to cooperate in that process, the Special

---

[10] Defs.' Submission, at 4.

[11] The Special Master interprets Plaintiffs' description of these procedures as follows:  (1) Defendants must obtain consent from the SEC to allow SEI Investments Company to provide to Defendants any document requests served on SEI Investments Company by the SEC, (2) assuming such consent is provided, SEI Investments Company must produce to Defendants the document requests it received from the SEC, (3) Defendants would review the requests and identify those requests for which they request SEI Investments Company produce documents, (4) the Special Master would provide recommendations (or the Court would rule upon) which of the requests SEI Investments Company must produce documents to Defendants, and (5) SEI Investments Company would produce such documents to Defendants as recommended by the Special Master or ordered by the Court.

Master finds that Defendants are not precluded from obtaining discovery related to any SEC requests for information from SEI Investments Company, and that, assuming the SEC consents to providing any document requests served on SEI Investments Company to Defendants, the Special Master is available to address and provide recommendations on any identified requests to determine which documents SEI Investments Company must produce to Defendants under this previously established procedure.

### B. THE MORGAN STANLEY DEFENDANTS' MARCH 31, 2011 REQUEST FOR PRODUCTION FROM ALL PLAINTIFFS

#### i. Request No. 1

36. The Special Master finds this Request to be both overbroad and duplicative.

37. To the extent this request seeks production of documents related to Plaintiffs' determinations and Submissions related to 207.2a-7, it is overbroad and relates to information that was created beyond the relevant time frame associated with this litigation.

38. The request is also duplicative in that the search terms mandated by Report and Recommendation No. 10 were broad, and were intended to capture a large spectrum of documents within the appropriate time frame. The Special Master agrees with Plaintiffs that the search terms of Report and Recommendation No. 10 would likely capture, to the extent they exist, "documents discussing the rating agency defendants and their ratings or methodologies from the relevant time period."[12]

39. Accordingly, the Special Master does not believe there is sufficient need to require Plaintiffs to do anything further in response to these requests.

---

[12] Pls.' Opposition, at 3.

### ii. Requests Nos. 2 and 3

40. The Special Master finds that Requests Nos. 2 and 3 seek relevant information, but that the Requests are duplicative.

41. The search terms mandated by Report and Recommendation No. 10 were broad, and were intended to capture a large spectrum of documents. Although Defendants' requests seek documents related to "HELOC" and "CDO" (which were not specified in the search queries recommended by Report and Recommendation No. 10), the Special Master agrees with Plaintiffs that the documents requested by these requests would likely "be detected by the broad searches mandated by [Report and Recommendation No. 10]."[13]

42. Accordingly, the Special Master does not believe there is sufficient need to require Plaintiffs to do anything further in response to these requests.

## IV.    RECOMMENDATION

43. The Motion to Compel regarding the Defendants' Third Request for Production to SEI Investments Company should be granted in part and denied in part as set forth below.

44. To comply with Requests Nos. 1-5 of Defendants' Third Request for Production of Documents to SEI Investments Company,

    a.  To the extent SEI is aware of an existing collection or collections of documents that are responsive to these requests, SEI should review such collection or collections for the purpose of producing documents responsive to such requests.

    b.  SEI should not be obligated to investigate, locate, identify, or produce such documents that have not otherwise been collected previously.

---

[13] *Id.*

  c. Within ten (10) days of the entry of the Court's Order regarding this Report and Recommendation, SEI (a) should produce to Defendants any responsive documents that have not been previously produced in response to Requests Nos. 1-5, (b) inform Defendants that SEI is unaware of any existing collection or collections (and therefore, there is nothing to review), or (c) inform Defendants that, through its review, SEI has confirmed that all responsive documents from its previously collected documents have been produced to Defendants.

45. To comply with Request No. 6 of Defendants' Third Request for Production of Documents to SEI Investments Company,

  a. SEI should review any existing collections of documents to determine if SEI possesses any documents related to the annual Fixed Income Forums ("FIFs") from January 1, 2005 through July 31, 2008, including documents related to the presentations identified in any FIF agenda from that time period.

  b. SEI should not be obligated to investigate, locate, identify, or produce such documents that have not otherwise been collected previously.

  c. Within ten (10) days of the entry of the Court's Order regarding this Report and Recommendation, SEI (a) should produce to Defendants any responsive documents that have not been previously produced in response to Request No. 6, (b) inform Defendants that SEI is unaware of any existing collection or collections (and therefore, there is nothing to review), or (c) inform Defendants that, through its review, SEI has confirmed that all responsive documents from its previously collected documents have been produced to Defendants.

46. To comply with Requests Nos. 7-9 of Defendants' Third Request for Production of Documents to SEI Investments Company,

    a.  Within ten (10) days of the entry of the Court's Order regarding this Report and Recommendation, SEI should identify such documents requested in Requests Nos. 7-9 by Bates number, confirm that production is complete, and/or complete the production as SEI agreed to do in its responses to Defendants' requests.

47. To comply with Request No. 10 of Defendants' Third Request for Production of Documents to SEI Investments Company,

    a.  To the extent SEI is aware of an existing collection or collections of documents that are responsive to this request, SEI should review such existing collection or collections of documents, for the purpose of producing documents responsive to such request.

    b.  SEI should not be obligated to investigate, locate, identify, or produce such documents that have not otherwise been collected previously.

    c.  Within ten (10) days of the entry of the Court's Order regarding this Report and Recommendation, SEI (a) should produce to Defendants any responsive documents that have not been previously produced in response to Request No. 10, (b) inform Defendants that SEI is unaware of any existing collection or collections (and therefore, there is nothing to review), or (c) inform Defendants that, through its review, SEI has confirmed that all responsive documents from its previously collected documents have been produced to Defendants.

48. To comply with Request No. 12 of Defendants' Third Request for Production of Documents to SEI Investments Company,

    a.  Within ten (10) days of the entry of the Court's Order regarding this Report and Recommendation, SEI should produce the email, log the email, or confirm to

Defendants that SEI has attempted to locate the email but has not been able to locate it.

49. To comply with Request No. 13 of Defendants' Third Request for Production of Documents to SEI Investments Company, SEI should not be required to undertake any additional actions unless Defendants seek to invoke the procedures that Plaintiffs undertook in order to obtain documents produced by Defendants to various government agencies.  Should Defendants choose to invoke such a process, pursuant to its willingness to do, SEI Investments Company should cooperate in such process.

50. The Motion to Compel regarding the Morgan Stanley Defendants' March 31, 2011 Request for Production from all Plaintiffs should be denied.


_____
Jonathan M. Redgrave
Special Master

Dated: October 21, 2011

*The Clerk of the Court is directed to docket this Report and Recommendation. Objections are due by October 27, 2011. So ordered.*

10/24/11

_____
Shira A. Scheindlin
U.S.D.J.

## Appendix A

1. In their Third Request to SEI, Defendants request production of documents based on the following thirteen requests:

1. All quarterly money market commentaries published, disseminated, drafted or generated by SEI from January 1, 2005 through July 31, 2008, similar to those documents produced by SEI and bearing bates numbers SEI_MM_0018546-47, SEI_MM_0037515-6, and SEI_MM_0038278-9.

2. All documents concerning or relating to the quarterly money market commentaries described in Request 1 above, including any drafts, comments, or discussions thereof.

3. All periodic reports from CMA to SEI during the period between January 1, 2005 and July 31, 2008, including but not limited to: (i) quarterly reports from CMA to the trustees of the SEI Daily Income Trust, similar to the document produced by SEI and bearing bates number SEI-e00108923-29; and (ii) quarterly reports from CMA to the trustees of the SEI Liquid Asset Trust, similar to the documents produced by SEI and bearing bates number SECMM_0038337.

4. All responses to periodic questionnaires from CMA to SEI during the period between January 1, 2005 and July 31, 2008, similar to those documents produced by SEI and bearing bates numbers SEI_MM_0002772, SECMM_0000034, and SECMM_0025333.

5. All publications or reports by SEI titled "SEI Commentary" that mention or discuss the mortgage market, structured finance market, or structured finance products, including HELs, SIVs, CDOs, RMBS, and CMBS, during the period from January 1, 2005 through July 31, 2008.

6. All documents concerning or relating to the annual Fixed Income Forums held by SEI during the period from January 1, 2005 through July 31, 2008, including but not limited to: (i) any agendas; (ii) any attendee lists; (iii) any summaries, outlines, notes, or drafts of any of the presentations or discussions identified in the document produced by SEI and bearing bates number SEI_MM_0000076; and (iv) any recordings, transcripts, minutes or other documentation of the presentations or discussions identified in the document produced by SEI and bearing bates number SEI_MM_0000076.

7. All documents defining the scope of responsibilities, authority or work of CMA with respect to SEI's Money Market Funds, including any investment management or similar agreements governing the relationship between CMA and SEI.

8. All documents concerning or reflecting the selection, approval, and/or monitoring of CMA by SEI, including but not limited to (i) any board or committee minutes and materials considered in connection with such selection and/or approval, and (ii) any documents concerning or reflecting the manager selection and monitoring process described in the document produced by SEI and bearing bates number SEI-e01418177-180.

14

9. All documents concerning instructions, objectives or criteria given by or on behalf of SEI to CMA with respect to structured finance or mortgage-backed investments including any particular categories of structured finance or mortgage-backed investments.

10. Any evaluations, reviews or assessments of the performance of CMA with respect to its management of the Money Market Funds, including but not limited to any analyses conducted by SEI with regard to the renewal of CMA's position similar to those documents produced by SEI and bearing bates numbers SEI_MM_0025637 or SEI_MM_0027077.

11. All documents concerning, constituting or relating to communications between or among SEI Investments Company and CMA regarding CMA's credit analysis capacities, procedures, or processes, including but not limited to any documents discussing or describing CMA's internal credit rating system.

12. The e-mail sent between Dina Welch and Gregg Soeder (possibly among others) referred to in the document produced by SEI and bearing bates number SEI_MM_0018027.

13. All documents concerning, constituting or relating to the SEC requests described in the document produced by SEI and bearing bates number SEI-e01065504, including any responses provided by or on behalf of SEI in connection with those requests.

2. SEI objected to Requests Nos. 1-6, 10, and 12-13, and has refused to produce any documents to Defendants in response to these Requests.[14]

3. In addition to its general objections, and specifically with respect to Requests Nos. 7-9, SEI stated objections on various grounds, including that the requests were vague, ambiguous, unintelligible, overbroad, irrelevant, and subjected SEI to a burden and expense "not commensurate with defendants' legitimate discovery needs."[15] Subject to those objections, SEI agreed to produce "relevant, non-privileged, responsive documents, if any, concerning SEI's retention of Columbia Management Advisors. . . with respect to SEI's investments in the Cheyne Notes that form the basis of SEI's claims in this action."[16]

4. Similarly, SEI objected to Request No. 11 on various grounds, including those set forth above. Subject to those objections, however, SEI agreed to produce "relevant, non-privileged,

---

[14] Plaintiff SEI Investments Company's Responses to Defendants' Third Request for Production, at 5-9, 13, 14-16 (May 2, 2011) ("SEI's Responses").

[15] *Id.* at 10-12.

[16] *Id.*

responsive documents, if any, concerning the ratings, if any, that Columbia assigned to the Cheyne Notes that form the basis of SEI's claims in this action."[17]

5.  In their Motion to Compel, Defendants characterize Requests Nos. 1 and 2 as seeking "'money market commentaries' prepared by SEI between January 1, 2005 through July 31, 2008."[18] Defendants characterize Request No. 5 as seeking "'SEI Commentary' publications that 'mention or discuss the mortgage market, structured finance market, or structured finance products, including HELs, SIVs, CDOs, RMBS, and CMBS, during the period from January 1, 2005 through July 31, 2008.'"[19]

6.  Defendants move to compel responses to these requests, and contend that "[b]ased on files previously produced by SEI, defendants believe these commentaries will contain highly relevant statements by SEI that reflect SEI's own opinions and predictions concerning the mortgage market and relevant financial products."[20]

7.  Defendants characterize Requests Nos. 3 and 4 as requesting "all periodic reports from [Columbia Management Advisors or "CMA"] to SEI during the period between January 1, 2005 and July 31, 2008,' [for which Defendants] provided several specific examples of reports that defendants believe likely exist, including reports to the Trustees of the two SEI-funds managed by CMA that allegedly bought the Cheyne notes."[21]

8.  Defendants contend that these periodic reports "will contain highly relevant analysis and forward-looking statements to SEI by CMA, which allegedly invested in the Cheyne notes on behalf of SEI Money Market Funds."[22] According to Defendants, "these documents are likely

---

[17] *Id.* at 14.
[18] Defs.' Submission, at 1.
[19] *Id.* at 1-2.
[20] *Id.* at 2.
[21] *Id.*
[22] *Id.*

to include CMA's stated objectives and strategies in making investment decisions on behalf of the SEI funds, and thus bear directly on the reasonableness of SEI's alleged reliance on the Cheyne SIV's credit ratings, among other issues."[23]

9. With respect to Request No. 6, Defendants indicate that the request "seeks various documents related to the annual 'Fixed Income Forums' ("FIFV") that SEI apparently held during the period from January 1, 2005 through July 31, 2008, including any documents related to the presentations identified in an agenda for the 2007 FIFV that SEI previously produced."[24]

10. Defendants argue that "[m]aterials relating to the SEI Fixed Income Forums are likely to relate to SEI's sophistication and knowledge regarding the mortgage and CDO market and bear on, among other things, the reasonableness of SEI's alleged reliance on the Cheyne ratings."[25]

11. Defendants group Requests Nos. 7 through 11 together and describe them as requests seeking "documents related to various aspects of SEI's engagement of CMA."[26] Defendants contend that documents responsive to these requests "will contain highly relevant information, detailing at the very least (i) the nature of the relationship between CMA and SEI, (ii) SEI's knowledge and opinion regarding CMA's investment decision-making and credit analysis, and (iii) CMA's obligations, representations and commitments to SEI regarding its investment decision making and credit analysis efforts."[27]

12. Defendants further allege that, in light of SEI's claim that CMA was responsible for SEI's money market fund purchase, "these materials will directly relate to the reasonableness of SEI's

---

[23] *Id.*
[24] *Id.* at 3.
[25] *Id.*
[26] *Id.*
[27] *Id.* at 3-4.

alleged reliance on the Cheyne SIV's credit ratings, as well as to issues of transaction – and loss–causation."[28]

13. Furthermore, Defendants state that, "[d]uring the May 18 meet and confer, SEI represented that it had already produced all documents responsive to Requests 7 and 8."[29]  Nevertheless, Defendants have identified several agreements that seemed to be missing from SEI's productions and have "asked plaintiffs to identify the agreements' corresponding Bates numbers to the extent SEI believed it had already produced" such agreements.[30]  To date, Plaintiffs have "refused to identify responsive documents by Bates number. . . . Defendants have not located these documents and SEI has neither identified them nor confirmed that they" have been produced.[31]

14. Defendants indicate that Request No. 12 "seeks a single internal SEI email sent February 13, 2007 . . . bearing the subject line 'FW:  Will Subprime Weakness Spillover to Credit?'"[32]  Defendants contend that "SEI has previously produced a 'read receipt' of this email. . . but has refused to produce the email itself, claiming, among other things, that defendants' request for this single document was 'overly broad as to time and scope' and 'unduly burdensome.'"[33]

15. Defendants argue that "[t]he missing email message, sent prior to the majority of SEI's alleged investments in this case, is plainly relevant on its face, bears directly on SEI's understanding of events in the subprime sector, and should be produced."[34]

---

[28] *Id.* at 4.
[29] *Id.* at n.5.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

16. With respect to Request No. 13, Defendants indicate that the request "seeks documents relating to SEC Requests for information from SEI. . . including responses provided by or on behalf of SEI in connection with those Requests."[35]

17. According to Defendants, "[b]ased on documents SEI has already produced, the SEC's investigation appears to have implicated SEI's investments in Cheyne[,] and documents relating to that investigation therefore bear on the very investment at issue in this case.  SEI cannot credibly dispute the relevance of defendants' request, yet it has refused to produce any documents responsive" to this request.[36]

18. In its Opposition to Defendants' Motion to Compel, SEI contends that Defendants' Motion to Compel should be denied with respect to Requests Nos. 1-6 and 12 because those requests seek the production of documents that were already the subject of Request No. 2 in Morgan Stanley's Second Request for Production of Documents.[37]

19. SEI argues that the Court required Plaintiffs to run what have now become known as the "December 7" searches in order to resolve the Parties' dispute regarding Request No. 2 in Morgan Stanley's Second Request for Production of Documents.[38]

20. SEI further contends that it "produced more than 45,000 pages of documents in response to the December 7 searches, [which] concerned the mortgage market and structured finance assets generally and resolved Request No. 2 of [Morgan Stanley's] Second Request for Production."[39]

21. SEI claims that, by serving their Third Requests of Production on SEI, Defendants "have attempted to get a second bite at the apple . . . that address[es] the very subjects that Request

---

[35] *Id.*

[36] *Id.*

[37] Pls.' Opposition, at 1.

[38] *Id.*

[39] *Id.* at 2.

No. 2 of the Second Request for Production did[, and that] each of [the Requests at issue here] explicitly references documents produced in response to the December 7 searches."[40]

22. SEI argues that "Defendants cannot now, after receiving the benefit of the 'December 7' searches, be permitted to seek the same discovery on the subject of SEI's knowledge of the mortgage market beyond those searches[, because] such a tactic is aimed at harassing plaintiffs, [and would] require SEI to recollect additional documents on subjects already addressed by the Court via the 'December 7' searches."[41]

23. With respect to Requests Nos. 7-11, SEI points out that it and its related entity, SEI Investment Strategies (which is also a named Plaintiff in this action), "share custodians and data sources."[42]

24. SEI indicates that, in October 2010, Defendants served requests for production on SEI Investment Strategies, which were addressed by a negotiated compromise of the Parties "in the first half of February 2010 [sic]."[43]

25. According to SEI, "[i]n order to produce documents responsive to that February compromise, plaintiffs had to collect numerous documents from SEI Investment Strategies[, and that] in order for SEI to produce documents responsive to Requests Nos. 7-11, plaintiffs would have to recollect documents from many of the same custodians and data sources it did when it collected documents on behalf of SEI Investment Strategies to satisfy the February compromise for SEI Investment Strategies."[44]

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.* The Special Master believes that SEI intended to indicate that the compromise between the Parties was reached in the first-half of February 2011.
[44] *Id.*

26. SEI argues that requiring it to recollect documents now to respond to Requests Nos. 7-11 would

"be inefficient [and] unfair,"[45] and further argues that "defendants' failure to include SEI in the

February compromise should not be rewarded."[46]

27. With respect to Request No. 13, SEI contends that Plaintiffs served similar requests upon

Defendants that sought production of documents that the Defendants produced previously to

government agencies.  SEI further contends that Defendants refused to produce any documents

responsive to such requests, and Plaintiffs were forced to take numerous steps in order to obtain

the requested documents from the government agencies themselves.[47]  Accordingly, SEI

contends that Defendants should be required to follow the same procedures to obtain any

requested documents directly from the SEC, and that SEI should not be forced to produce

documents that Defendants successfully refused to produce.[48]

28. Morgan Stanley's March 2011 Request contains the following three requests for production of

documents from all Plaintiffs:

> 1.  All documents concerning, constituting, or relating to any analysis or determination made
> by You or Your affiliates that the credit ratings issued by any of the Rating Agencies are
> sufficiently reliable for use in your general or specific investment decision-making, including
> any analysis or determination made by any of Your or Your affiliates['] Boards of Directors
> pursuant to, in consideration of, based on, or in compliance with the requirements of
> 17 CFR 270.2a-7(a)(11)(i)(B).  For the avoidance of doubt, this request seeks all documents
> concerning, constituting, or relating to such analysis or determination regardless of whether
> that analysis or determination was undertaken voluntarily or otherwise in technical,
> functional, effective or substantial compliance with any applicable rule or regulation,
> including 17 CFR 270.2a-7.
>
> 2.  Documents sufficient to identify all home equity loan ("HEL"), home equity line of
> credit ("HELOC"), residential mortgage-backed security ("RMBS"), commercial
> mortgage-backed security ("CMBS"), collateralized loan obligation ("CLO"), collateralized
> debt obligation ("CDO"), or structured investment vehicle ("SIV") transactions structured,

---

[45] *Id.* at 3.
[46] *Id.*
[47] *Id.*
[48] *Id.*

arranged, underwritten, placed, sponsored or managed by You or Your affiliates during the period between January 1, 2005, and September 1, 2007.

3.   For each transaction or issuance as to which you provide documents in response to Request Number 2, all documents concerning or relating to the credit ratings, if any, provided by any of the Rating Agencies with respect to those issuances, including communications with S&P, Moody's and/or Fitch with respect to those issuances or transactions.

29. In addition to its general objections and specifically with respect to Request No. 1, Plaintiffs

stated objections on various grounds, including that the requests were vague, ambiguous,

unintelligible, overbroad, and irrelevant.[49] Subject to those objections, Plaintiffs agreed to

produce "relevant, non-privileged, responsive documents, if any, concerning the Cheyne SIV" to

the extent "such documents have already been produced in this litigation."[50]

30. In response to Requests Nos. 2-3, Plaintiffs objected on numerous grounds, including that the

requests were vague, ambiguous, unintelligible, overbroad, and irrelevant,[51] and have refused to

produce any documents to Defendants in response to these requests.[52]

31. In their Motion to Compel, Defendants indicate that Request No. 1 "seeks documents reflecting

any analysis or determination by plaintiffs regarding the reliability of the credit ratings considered

in connection with plaintiffs' investment decision-making, and calls specifically for the

production of any analysis or determination made by plaintiffs' board of directors pursuant to 17

C.F.R. 270.2a-7(a)(11)(i)(B)"[53] or "Rule 2a-7."

32. Defendants continue, stating that, "[b]eginning in December 2010, Rule 2a-7 requires the board

of any fund operating pursuant to 2a-7 . . . to certify annually that it conducted an analysis of the

---

[49] [Plaintiffs'] Responses to Morgan Stanley & Co. Inc.'s and Morgan Stanley & Co. International PLC's March 31, 2011 Requests for Production of Documents, at 6 (May 2, 2011) ("Pls.' Objections to March 31 Requests for Production").
[50] *Id.*
[51] *Id.* at 7-8.
[52] *Id.* at 6-8.
[53] Defs.' Submission, at 4.

credit ratings it intends to consult in connection with its investment decision-making, and that it has found such ratings to be sufficiently reliable for that purpose."[54]

33. Defendants contend that "any subsequent certifications or determinations by plaintiffs that, despite the systemic issues they have alleged, they continue to find credit ratings sufficiently reliable would wholly discredit plaintiffs' allegations."[55] Defendants then state that, despite Plaintiffs' agreement to produce documents in response to Request No. 1 to the extent they concern the Cheyne SIV, "such a limitation is inappropriate and plaintiffs should produce all responsive documents to Request No. 1."[56]

34. In its Opposition to Defendants' Motion to Compel, without referring to the concession made in their Objections to Defendants' Third Requests for Production, Plaintiffs argue that they should not be required to take any additional steps to identify and produce documents responsive to Request No. 1 for the following three reasons: (1) Request No. 1 seeks documents that are "far outside the relevant time period[;]"[57] (2) Request No. 1 seeks documents that are not relevant, and the bases upon which Defendants suggest such documents are relevant are illogical; and (3) by running the search queries set forth in Report & Recommendation No. 10, Plaintiff will have "already searched for such documents."[58]

35. With respect to Requests Nos. 2-3, Defendants indicate that they "seek various documents related to any home equity loan ("HEL"), home equity line of credit ("HELOC"), residential mortgage-backed security ("RMBS"), commercial mortgage-backed security ("CMBS"), collateralized loan obligation ("CLO"), collateralized debt obligation ("CDO"), or structured investment vehicle ("SIV") transactions 'structured, arranged, underwritten, placed, sponsored

---

[54] *Id.* at 4-5.
[55] *Id.* at 5.
[56] *Id.*
[57] Pls.' Opposition, at 3.
[58] *Id.*

or managed by' plaintiffs, including documents related to the credit rating of such products or issuances."[59]

36. Defendants contend that "these documents will contain highly relevant information regarding plaintiffs' knowledge and awareness of market events and practices, and will directly rebut plaintiffs' professed ignorance regarding the securitization process and standard practices in the credit rating industry."[60]

37. In their Opposition to Defendants' Motion to Compel, Plaintiffs initially argue that they should not be required to produce documents that are responsive to Requests Nos. 2 and 3 because Defendants have refused to produce such documents and that requiring Plaintiffs to do so would be unfair.  Plaintiffs also contend that, while "documents concerning plaintiffs' other structured finance transactions are not relevant, to the extent that plaintiffs possess documents concerning (a) SIV transactions generally; or (b) any CDO, RMBS, ABS, CMBS, HEL or other structured finance transaction that Moody's or S&P rated, such documents would presumably be detected by the broad searches mandated by R&R 10."[61]

---

[59] Defs.' Submission, at 5.
[60] Id.
[61] Pls.' Opposition, at 4.