UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ABU DHABI COMMERCIAL BANK, et al.,    :
:
:
:
:
   Plaintiffs,    :
:
- against -    :
:
MORGAN STANLEY & CO. INC., et al.,    :
:
:
:
   Defendants.    :
:
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08 Civ. No 7508 (SAS)

**<u>ECF Case</u>**

# DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(c)

James P. Rouhandeh
Antonio J. Perez-Marques
William R. Miller, Jr.
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4000
*Counsel to Defendants Morgan Stanley &
Co. Incorporated and Morgan Stanley &
Co. International Limited*

Floyd Abrams
Dean Ringel
Tammy L. Roy
Jason M. Hall
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
(212) 701-3000
*Counsel to Defendants The McGraw-Hill
Companies, Inc. and Standard & Poor's
Rating Services*

Joshua M. Rubins
James J. Coster
Mario Aieta
James I. Doty
SATTERLEE STEPHENS BURKE &
BURKE LLP
230 Park Avenue, 11th Floor
New York, New York  10169
(212) 818-9200
*Counsel to Defendants Moody's Investors
Service, Inc. and Moody's Investors Service
Ltd.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ........................................................................................................2

I.  There Is No Evidence of Any Actionable Misstatement .................................3

    A.  There is No Evidence of an Actionable Misstatement by Morgan Stanley ......3

    B.  There Is No Evidence of an Actionable Misstatement by the Rating Agencies ................................................................................................5

II.  There Is No Evidence of Scienter ................................................................9

    A.  Plaintiffs Have No Evidence That Any Defendant Disbelieved the SIV Credit Ratings ................................................................................9

    B.  Disclosure of the Allegedly Concealed Risks Negates Any Theory of Scienter ...................................................................................13

    C.  Fraud Cannot Be Proven by Hindsight ..............................................13

    D.  Allegations of Improper Motive Are Insufficient ..............................14

III.  There Is No Evidence That Plaintiffs Reasonably Relied on the Ratings ...............15

IV.  There Is No Evidence of Loss Causation .....................................................26

    A.  An Unprecedented Market Disruption Caused Investors' Losses .................28

    B.  It Is Undisputed That at the Time of the Ratings Downgrades Investors Had Suffered No Losses at All ........................................................30

    C.  The Risks That Materialized and Caused Investors' Losses Were Disclosed ..................................................................................31

    D.  Summary Judgment Should Be Granted as to the Senior Noteholder Plaintiffs Because They Have No Evidence of Damages .........................32

V.  There Is No Evidence That Defendants Aided and Abetted Fraud .....................32

    A.  There Is No Evidence of Aiding and Abetting by Morgan Stanley ...............33

    B.  There Is No Evidence of Aiding and Abetting by the Rating Agencies ..........35

CONCLUSION .....................................................................................................35

# TABLE OF AUTHORITIES

### CASES

PAGE

380544 Can., Inc. v. Aspen Tech., Inc., 633 F. Supp. 2d 15 (S.D.N.Y. 2009).............................35

Abrahami v. UPC Constr. Co., 638 N.Y.S.2d 11 (1st Dep't 1996).................................2

Abu Dhabi Commercial Bank v. Morgan Stanley & Co.,
    269 F.R.D. 252 (S.D.N.Y. 2010) .......................................................................3, 6, 19

Abu Dhabi Commercial Bank v. Morgan Stanley & Co.,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009).....................................................................3

In re Agape Litig., 773 F. Supp. 2d 298 (E.D.N.Y. 2011).........................................34

Alexander & Alexander of N.Y. v. Fritzen, 114 A.D.2d 814 (1st Dep't 1985) ...........................19

Am. Fin. Servs. Grp. v. Treasure Bay Gaming & Resorts, Inc.,
    2000 WL 815894 (S.D.N.Y. June 23, 2000) ...............................................18

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)..........................................2

Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200 (S.D.N.Y. 2005)..................................19

Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,
    57 F.3d 146 (2d Cir. 1995)..........................................................................19

Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,
    819 F. Supp. 1282 (S.D.N.Y. 1993 ..............................................................35

Banque Franco-Hellenique de Commerce Int'l et Maritime, S.A.  v. Christophides,
    106 F.3d 22 (2d Cir. 1997)..........................................................................18

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .......................................................2, 3

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994) ......5

Century Pac., Inc. v. Hilton Hotels, Corp.,
    528 F. Supp. 2d 206 (S.D.N.Y. 2007), aff'd, 354 F. App'x 496 (2d Cir. 2009)..............2, 3, 10

Chemtex, LLC v. St. Anthony Enters., Inc., 490 F. Supp. 2d 536 (S.D.N.Y. 2007)....................33

In re Citigroup Inc. Sec. Litig., 753 F. Supp. 2d 206 (S.D.N.Y. 2010) ....................................8, 13

ii

City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.,
    2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011)................................................................7

Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.,
    785 F. Supp. 411 (S.D.N.Y. 1992).......................................................................16

Compuware Corp. v. Moody's Investors Servs., Inc., 499 F.3d 520 (6th Cir. 2007)....................6

Crigger v. Fahnestock & Co., 443 F.3d 230 (2d Cir. 2006) ........................................................2

de Abreu v. Bank of Am. Corp.,
    2011 WL 2652188 (S.D.N.Y. June 29, 2011) ....................................................2, 33

Deutsche Bank Nat'l Trust v. Gordon, 922 N.Y.S.2d 66 (1st Dep't 2011)....................................4

Dooner v. Keefe, Bruyette & Woods, Inc., 2003 WL 135706 (S.D.N.Y. Jan. 17, 2003)...............9

E-21 Global, Inc. v. Second Renaissance, LLC, 360 F. App'x 172 (2d Cir. 2009) .....................10

Easton Capital Partners L.P. v. Rush, 2011 WL 3809927 (S.D.N.Y. Aug. 26, 2011) ...................5

Elliott Assocs. v. Hayes, 141 F. Supp. 2d 344 (S.D.N.Y. 2000) ..................................................4

Elliott v. Qwest Commc'ns Corp., 808 N.Y.S.2d 443 (3d Dep't 2006)........................................35

ESBE Holdings, Inc. v. Vanquish Acquisition Partners LLC,
    858 N.Y.S.2d 94 (1st Dep't 2008).........................................................................6

In re Eugenia VI Venture Holdings, Ltd. Litig., 649 F. Supp. 2d 105 (S.D.N.Y. 2008)...............18

Eurycleia Partners, LP v. Seward & Kissel, LLP,
    849 N.Y.S.2d 510 (1st Dep't 2007), aff'd on other grounds, 883 N.Y.S.2d 147 (2009)..........4

Fait v. Regions Fin. Corp., 655 F.3d 105 (2d Cir. 2011)..................................................6, 7, 8

Fed. Home Loan Bank of Pittsburgh v. J.P. Morgan Sec. LLC,
    2010 WL 7928643 (Pa. Ct. Com. Pl. Nov. 29, 2010).................................................6

Footbridge Ltd. v. Countrywide Home Loans, Inc.,
    2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010)......................................................13

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,
    479 F. Supp. 2d 349 (S.D.N.Y. 2007).............................................................19, 33

*Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816 (S.D.N.Y. 2010)................................6

*Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 177 F. Supp. 2d 169 (S.D.N.Y. 2001).....................18

*Gaidon v. Guardian Life Ins. Co. of Am.*, 704 N.Y.S.2d 177 (1999).............................2

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) .....................................14, 15

*Glatzer v. Scappatura*, 470 N.Y.S.2d 675 (2d Dep't 1984) ...................................4

*Heublein, Inc. v. United States*, 996 F.2d 1455 (2d Cir. 1993) ..............................18

*High Tides, LLC v. DeMichele*, 931 N.Y.S.2d 377 (2d Dep't 2011)..............................4

*Hightower v. Cohen*, 2009 U.S. Dist. LEXIS 130847 (E.D.N.Y. Sept. 30, 2009).................34, 35

*Hunt v. Enzo Biochem*, 530 F. Supp. 2d 580 (S.D.N.Y. 2008)....................................5

*Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*,
    333 F. Supp. 2d 131 (S.D.N.Y. 2004)......................................................16

*Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)................................5

*Jaramillo v. Weyerhaeuser*, 536 F.3d 140 (2d Cir. 2008).......................................3

*JSMS Rural LP v. GMG Capital Partners III, LP*,
    2006 WL 1867482 (S.D.N.Y. July 6, 2006) .............................................32

*JSMS Rural LP v. GMG Capital Partners III, LP*,
    2006 WL 2239681 (S.D.N.Y. Aug. 4, 2006) .............................................26

*Kountze v. Kennedy*, 147 N.Y. 124 (1895) ......................................................8, 13

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011)...............................6

*In re Lehman Bros. Sec. & ERISA Litig.*,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010), aff'd, 650 F.3d 167 (2d Cir. 2011).....................8, 15

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)................................26, 31

*Lerner v. Fleet Bank*, 459 F.3d 273 (2d Cir. 2006) ...........................................33, 34

*Lewin v. Lipper Convertibles*, 756 F. Supp. 2d 432 (S.D.N.Y. 2010) ...........................32

*Liu v. Radmin*, 2011 N.Y. Misc. LEXIS 5549 (Sup. Ct. Nov. 17, 2011).........................4

Makor Issues & Rights, Ltd. v. Tellabs Inc., 513 F.3d 702 (7th Cir. 2008)............................10, 11

Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011) ......................6

Mateo v. Akerman Senterfitt, 918 N.Y.S.2d 438 (1st Dep't 2011) ................................................4

Matthews v. Schusheim, 42 A.D.2d 217 (2d Dep't 1973)............................................................19

McLaughlin v. Am. Tobacco Co., 522 F.3d 215 (2d Cir. 2008) ..................................................16

Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171 (2d Cir. 2007)..............................2

In re Merrill Lynch Auction Rate Sec. Litig.,
    2011 WL 536437 (S.D.N.Y. Feb. 9, 2011).......................................................................6, 13

Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank,
    216 F.R.D. 13 (S.D.N.Y. 2009) ..........................................................................................34

Nat'l Westminster Bank USA v. Weksel,
    511 N.Y.S.2d 626 (1st Dep't), appeal denied by 519 N.Y.S.2d 1027 (1987) ..........................4

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) ...........................................................................13

Nw. Nat'l Ins. Co. of Milwaukee, Wis. v. Alberts, 769 F. Supp. 498 (S.D.N.Y. 1991) ..............34

Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC,
    2011 WL 4448847 (S.D. Ohio Sept. 26, 2011) ....................................................................6

In re Optimal U.S. Litig., 2011 WL 1676067 (S.D.N.Y. May 2, 2011) ...................................5, 34

In re Optimal U.S. Litig., 2011 WL 6424988 (S.D.N.Y. Dec. 21, 2011)........................................5

In re Oxford Health Plans, Inc. Sec. Litig., 51 F. Supp. 2d 290 (S.D.N.Y. 1999)........................14

Pa. Ave. Funds v. Inyx, Inc., 2010 WL 743562 (S.D.N.Y. Mar. 1, 2010) ....................................4

In re Parmalat Sec. Litig., 684 F. Supp. 2d 453 (S.D.N.Y. 2010) .................................................13

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC,
    592 F. Supp. 2d 608 (S.D.N.Y. 2009).................................................................5, 18, 33, 34

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC,
    652 F. Supp. 2d 495 (S.D.N.Y. 2009).................................................................................33

Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,
632 F.3d 762 (1st Cir. 2011).........................................................................6, 8

Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146 (S.D.N.Y. 2004)...................................7

Renner v. Chase Manhattan Bank,
2000 WL 781081 (S.D.N.Y. June 16, 2000), aff'd, 85 F. App'x 782, 784 (2d Cir. 2004) .....34

Rizkallah v. Forward Air Inc., 2009 WL 3029309 (S.D.N.Y. Sept. 22, 2009) ...........................16

Rosner v. Bank of China,
2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), aff'd, 349 F. App'x 637 (2d Cir. 2009) ...33, 34

Savitsky v. Mazzella, 210 F. App'x 71 (2d Cir. 2006)...............................................................18

Scheidler v. Nat'l Org. for Women, 537 U.S. 393 (2003).............................................................5

SEC v. Espuelas, 699 F. Supp. 2d 655 (S.D.N.Y. 2010)..............................................................4

Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997) .........................................................................5

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124 (2d Cir. 1994) .........................................12, 13

SNCB Corporate Fin. Ltd. v. Schuster,
877 F. Supp. 820 (S.D.N.Y. 1994), aff'd, 71 F.3d 406 (2d Cir. 1995).................................7, 8

Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.,
883 N.Y.S.2d 486 (1st Dep't 2009) ......................................................................................35

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,
531 F.3d 190 (2d Cir. 2008).................................................................................................10

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) ...........................................10

Tsereteli v. Residential Asset Securitization Trust 2006-A8,
692 F. Supp. 2d 387 (S.D.N.Y. 2010)....................................................................................8

UST Private Equity Investors Fund v. Salomon Smith Barney,
733 N.Y.S.2d 385 (1st Dep't 2001) ......................................................................................18

In re Vivendi Universal, S.A. Sec. Litig., 765 F. Supp. 2d 512 (S.D.N.Y. 2011).................10, 11

In re Wachovia Equity Sec. Litig., 753 F. Supp. 2d 326 (S.D.N.Y. 2011)..................................13

Wright v. Ernst & Young LLP, 152 F.3d 169 (2d Cir. 1998)........................................................5

Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC,
   474 F. Supp. 2d 505 (S.D.N.Y. 2007), aff'd sub nom. Bay Harbour Mgmt. LLC v. Carothers,
   282 F. App'x 71 (2d Cir. 2008) ..................................................................................8, 9, 13

Zormati v. Kreisberg, 2011 N.Y. Misc. LEXIS 3783 (Sup. Ct. Aug. 2, 2011) .............................4

Zutty v. Rye Select Broad Market Prime Fund, L.P.,
   2011 WL 5962804 (N.Y. Sup. Ct. Apr. 15, 2011)................................................................4, 8

STATUTES & RULES

Local Rule 56.1 ...........................................................................................................................3

### PRELIMINARY STATEMENT

Defendants are entitled to summary judgment because, despite years of broad and wide-ranging discovery by plaintiffs, there is simply no evidence whatsoever of any fraud. In fact, plaintiffs' claims suffer from a fatal lack of evidence as to every essential element – each of which requires clear and convincing evidence. There is no evidence of any actionable misstatement by Moody's, S&P, or Morgan Stanley. The Cheyne SIV credit ratings – the only alleged misstatements in this case – are opinions as a matter of law, and can be actionable only if they were not honestly believed by the rating committees that assigned them. Plaintiffs do not have a shred of evidence that the rating committees at either rating agency did not honestly believe the Cheyne SIV ratings they assigned. As to Morgan Stanley, there is no evidence of any statement at all: the only alleged misstatements are the ratings, which, under New York law, are not Morgan Stanley statements and thus are not statements for which Morgan Stanley can be held liable.

Plaintiffs also have no evidence of scienter as to any defendant. Plaintiffs must, and cannot, come forward with evidence of fraudulent intent on the part of those who made the alleged misstatements. Plaintiffs have no evidence that anyone involved in the Cheyne SIV transaction ever believed the ratings were false. Plaintiffs also lack evidence of reliance. Indeed, the testimony of their corporate representatives – either acknowledging that they do not know how the investment decisions were made or affirmatively conceding a lack of reliance – precludes them from meeting their burden on this element. As to loss causation, plaintiffs admitted that their losses were caused by a global liquidity crisis of unprecedented severity that also led to losses on their other investments and to the demise of every other structured investment vehicle that existed at the time. Plaintiffs' aiding and abetting claims fail because

there is no evidence that Morgan Stanley had actual knowledge that the rating agencies did not believe their ratings, and any theory that the rating agencies aided and abetted a fraud by Morgan Stanley (or each other) is nonsensical.  The lack of clear and convincing evidence on any one element entitles defendants to summary judgment.  Here, plaintiffs cannot meet their burden as to any element of their claims.

## ARGUMENT

A plaintiff asserting a fraud claim under New York law must establish: (1) that the defendant made a misrepresentation of existing material fact; (2) knowledge of falsity; (3) an intent to defraud the plaintiff; (4) plaintiff's reasonable reliance; and (5) damages caused by plaintiff's reliance.  Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006).  "The elements of fraud are narrowly defined, requiring proof by clear and convincing evidence." Gaidon v. Guardian Life Ins. Co. of Am., 704 N.Y.S.2d 177, 186 (1999); see also Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007).  The "clear and convincing" standard "forbids the awarding of relief whenever the evidence is loose, equivocal or contradictory."  Abrahami v. UPC Constr. Co., 638 N.Y.S.2d 11, 13 (1st Dep't 1996) (internal quotation marks omitted).  The same standard applies to plaintiffs' aiding and abetting fraud claims.  See de Abreu v. Bank of Am. Corp., 2011 WL 2652188, at *4 (S.D.N.Y. June 29, 2011).

As to each claim, the "clear and convincing" standard must be applied on summary judgment as well.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56 (1986); Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007), aff'd, 354 F. App'x 496 (2d Cir. 2009).  Summary judgment is mandated where plaintiffs fail to identify evidence meeting this burden with respect to *any* individual element of their claim.  See Celotex Corp. v.

<u>Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Jaramillo v. Weyerhaeuser Co.</u>, 536 F.3d 140, 145 (2d Cir. 2008); <u>Century Pac.</u>, 528 F. Supp. 2d at 219.

I.    <u>**There Is No Evidence of Any Actionable Misstatement**</u>

 A. **There is No Evidence of an Actionable Misstatement by Morgan Stanley**

  Plaintiffs' claim of fraud against Morgan Stanley fails because there is no evidence of an actionable misstatement by Morgan Stanley.  The *only* alleged misstatements in this case are the credit rating opinions issued by the rating agencies, <u>see, e.g.</u>, Eighth Am. Compl. ("EAC") ¶ 202; <u>Abu Dhabi Commercial Bank v. Morgan Stanley & Co.</u>, 269 F.R.D. 252, 261 (S.D.N.Y. 2010); <u>Abu Dhabi Commercial Bank v. Morgan Stanley & Co.</u>, 651 F. Supp. 2d 155, 175-81 (S.D.N.Y. 2009), and the only basis for liability as to Morgan Stanley is its alleged participation in the development of those ratings.

  The fact that the credit ratings are opinions only of the rating agencies is undisputed.



And the offering materials explain that each rating reflects only the opinion of the relevant rating agency, and is subject to revision or withdrawal by them at any time.  (<u>Id.</u>)

---

[1] Parenthetical references preceded by "¶" refer to the Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, unless otherwise specified.

[2]

Under New York law, a defendant must actually make a statement to the plaintiff in order to be liable for fraud. Eurycleia Partners, LP v. Seward & Kissel, LLP, 849 N.Y.S.2d 510, 512 (1st Dep't 2007), aff'd on other grounds, 883 N.Y.S.2d 147 (2009). New York courts thus routinely dismiss fraud claims where the defendant did not make a misstatement. See High Tides, LLC v. DeMichele, 931 N.Y.S.2d 377, 382 (2d Dep't 2011); Liu v. Radmin, 2011 N.Y. Misc. LEXIS 5549, at *18-19 (Sup. Ct. Nov. 17, 2011); see also Mateo v. Akerman Senterfitt, 918 N.Y.S.2d 438, 440 (1st Dep't 2011); Nat'l Westminster Bank USA v. Weksel, 511 N.Y.S.2d 626, 628-29 (1st Dep't), appeal denied by 519 N.Y.S.2d 1027 (1987).[3] Assistance to another in the making of an alleged misstatement does not suffice for primary liability, but rather is, at most, aiding and abetting. Mateo, 918 N.Y.S.2d at 440 (incorporation of false statements of another into documents drafted by defendant was insufficient to sustain a fraud claim); see also Glatzer v. Scappatura, 470 N.Y.S.2d 675, 676 (2d Dep't 1984).[4] Aiding and abetting, however, is a distinct cause of action with its own well-established elements. Plaintiffs cannot avoid those elements by cloaking an aiding and abetting theory of liability in a claim for fraud.

The Supreme Court recently considered the distinction between primary violations and aiding and abetting in the federal securities law context, holding that the "maker" of a statement (the only one who may be liable for primary fraud) is the one with "ultimate authority over the statement, including its content and whether and how to communicate it," typically the one to

---

[3] Other recent New York decisions have followed this approach. See, e.g., Deutsche Bank Nat'l Trust v. Gordon, 922 N.Y.S.2d 66, 67 (1st Dep't 2011); Zormati v. Kreisberg, 2011 N.Y. Misc. LEXIS 3783, at *5 (Sup. Ct. Aug. 2, 2011); Zutty v. Rye Select Broad Market Prime Fund, L.P., 2011 WL 5962804, at *13-14 (N.Y. Sup. Ct. Apr. 15, 2011).

[4] The group pleading doctrine on which plaintiffs relied to avoid dismissal does not apply at this stage of the proceedings. See SEC v. Espuelas, 699 F. Supp. 2d 655, 660-61 (S.D.N.Y. 2010); Pa. Ave. Funds v. Inyx, Inc., 2010 WL 743562, at *10 (S.D.N.Y. Mar. 1, 2010); see also Elliott Assocs. v. Hayes, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000) (Scheindlin, J.).

whom it is attributed.  Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2302

(2011).[5]  All others, even those whose participation rises to the level of "speechwriter," can at

most be aiders and abettors.  Id.  To hold otherwise would obliterate the distinction between

primary fraud and aiding and abetting, which exists under New York law as well as federal

securities law.  "If persons or entities without control over the content of a statement could be

considered primary violators who 'made' the statement, then aiders and abettors would be almost

nonexistent."  Id.[6]  Under these standards, the credit ratings at issue in this case are statements of

only the respective rating agencies, not Morgan Stanley.  (See, e.g., ¶¶ 1-4.)

### B.    There Is No Evidence of an Actionable Misstatement by the Rating Agencies

Plaintiffs do not have evidence of any actionable misstatement by *either* Moody's or

S&P.[7]  As a matter of law, the credit ratings at issue in this case are subjective opinions of the

---

[5] Because the elements of common law fraud in New York are "substantially identical to those governing section 10(b), the identical analysis applies," In re Optimal U.S. Litig., 2011 WL 1676067, at *16 (S.D.N.Y. May 2, 2011) (Scheindlin, J.) (citations omitted), and courts therefore routinely look to federal securities law when considering claims of common law fraud in the securities context, see, e.g., Easton Capital Partners, L.P. v. Rush, 2011 WL 3809927, at *11 (S.D.N.Y. Aug. 26, 2011); Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC, 592 F. Supp. 2d 608, 623 (S.D.N.Y. 2009) (Scheindlin, J.); Hunt v. Enzo Biochem, Inc., 530 F. Supp. 2d 580, 592 (S.D.N.Y. 2008) (Scheindlin, J.); see also Scheidler v. Nat'l Org. for Women, 537 U.S. 393, 402 (2003) (recognizing a "general presumption that a statutory term has its common-law meaning").

[6] As the Supreme Court pointed out, the Janus decision "follow[ed] from" the Central Bank decision, 511 U.S. 164 (1994), focusing on the necessary distinction between primary and secondary (*i.e.* aiding and abetting) liability.  131 S.Ct. at 2302; see also Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998) ("Anything short" of "actually mak[ing] a false or misleading statement" "is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger [primary] liability . . . ."); Shapiro v. Cantor, 123 F.3d 717, 720-21 (2d Cir. 1997).  This Court's recent decision in In re Optimal did not address the distinction between primary and aiding-and-abetting liability and does not require a different result.  2011 WL 6424988, at *11-12 (S.D.N.Y. Dec. 21, 2011) (Scheindlin, J.).

[7] The Moody's and S&P ratings were issued by different rating committees, and based on distinct methodologies.  There is no evidence whatsoever that these rating agencies collaborated,

respective rating agencies as to the creditworthiness of the Cheyne notes.  See, e.g., In re Lehman Bros. Mortg.-Backed Sec. Litig., 650 F.3d 167, 183 (2d Cir. 2011) (holding that a credit rating "speaks merely to the Agency's opinion of the creditworthiness of a particular security").[8] ██████████████████████████████████████████  Furthermore, the credit ratings are by their nature opinions because they "vary depending on the particular methodology and assumptions used" and because there is no objective standard by which to evaluate them. See Fait v. Regions Fin. Corp., 655 F.3d 105, 110-12 (2d Cir. 2011); see also Ohio Police, 2011 WL 4448847, at *11 (applying Fait in considering ratings opinions).

Opinions generally cannot provide the basis for a claim of fraud.  See, e.g., Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 179, 919 N.Y.S.2d 465 (2011); ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC, 858 N.Y.S.2d 94, 95 (1st Dep't 2008).  The Second Circuit has recognized a narrow exception to this rule where *both* a speaker privately and fraudulently disbelieves his or her stated opinion *and* such statements are also "false or

---

coordinated or communicated with one another in the rating of the Cheyne SIV.  Each rating agency had separate communications with Cheyne Capital and Morgan Stanley, and there is no evidence that those lines of communications ever crossed.  Accordingly, each rating must be considered a distinct alleged misrepresentation, as to which falsity, scienter, reliance, and loss causation must be established separately.

[8] See also Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 774-76 (1st Cir. 2011); Compuware Corp. v. Moody's Investors Servs., Inc., 499 F.3d 520, 529 (6th Cir. 2007); In re Merrill Lynch Auction Rate Sec. Litig., 2011 WL 536437, at *12-13 (S.D.N.Y. Feb. 9, 2011); Freidus v. ING Groep N.V., 736 F. Supp. 2d 816, 836 (S.D.N.Y. 2010).  Courts have recognized the opinion nature of credit ratings, and the limited basis on which they may be actionable, even in cases where rating agencies were alleged to have been involved in "structuring" the securities at issue.  See, e.g., Fed. Home Loan Bank of Pittsburgh v. J.P. Morgan Sec. LLC, 2010 WL 7928643, at *9-10 (Pa. Ct. Com. Pl., Nov. 29, 2010); see also In re Merrill Lynch, 2011 WL 536437, at *12-13; Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC, 2011 WL 4448847, at *2, *11-13 (S.D. Ohio Sept. 26, 2011) (dismissing misrepresentation claim against rating agencies in case alleging that "the Rating Agencies collaborated with ABS issuers to achieve the targeted ratings").

misleading with respect to the underlying subject matter they address." Fait, 655 F.3d at 111-12; see also SNCB Corporate Fin. Ltd. v. Schuster, 877 F. Supp. 820, 826 (S.D.N.Y. 1994) ("[A] statement of opinion is not fraudulent under New York law unless it is not honestly held at the time it was made."), aff'd, 71 F.3d 406 (2d Cir. 1995); Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146, 153-54 (S.D.N.Y. 2004).  Plaintiffs here do not have evidence, much less clear and convincing evidence, of either element required to establish falsity under Fait.

       To survive summary judgment, plaintiffs must come forward with clear and convincing evidence that the ratings opinions expressed by each rating agency did not reflect the true beliefs of the rating committees that rated the Cheyne notes.  After two years of discovery, plaintiffs cannot adduce any such evidence.  To the contrary, the evidence confirms that the ratings reflected the honestly held opinions of the committees at S&P and Moody's that issued the ratings.  (¶¶ 35, 54.)  Members of the Cheyne rating committees of each rating agency confirmed that the Cheyne SIV ratings expressed their "honest opinion of what the ratings should be" and reflected their "honest opinion about each vehicle and each tranche of the rated vehicle."  (Id.) Plaintiffs can point to no cognizable evidence (let alone clear and convincing evidence) to controvert this testimony.

       Plaintiffs' attempts to call into question the merits of the rating agencies' professional judgments cannot, as a matter of law, prove the falsity of the ratings opinions.  Contentions that "defendants could have reached a different opinion or that, with hindsight, the opinion reached by defendants was unreasonable" are insufficient to sustain a fraud claim.  City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc., 2011 WL 4357368, at *13 (S.D.N.Y. Sept. 19, 2011); see Fait, 655 F.3d at 112; Podany, 318 F. Supp. 2d at 154.  "Defendants are not liable [for fraud] when their opinions, or those they reported, were honestly held when formed but

7

simply turn out later to be inaccurate; nor are they liable only because they could have formed 'better' opinions." <u>Plumbers' Union</u>, 632 F.3d at 775-76.  Even evidence that rating agencies made errors such as "us[ing] out-of-date models" or engaging in insufficient verification would be "insufficient to support an inference that the Ratings Agencies did not actually believe . . . the ratings . . . ." <u>Tsereteli v. Residential Asset Securitization Trust 2006-A8</u>, 692 F. Supp. 2d 387, 395 (S.D.N.Y. 2010); <u>see</u> <u>Kountze v. Kennedy</u>, 147 N.Y. 124, 129 (1895) ("Misjudgment, however gross, or want of caution, however marked, is not fraud.").  Because there is no evidence that the rating committees "did not believe the statements . . . at the time they made them," plaintiffs' claims fail.  <u>Fait</u>, 655 F.3d at 112; <u>see also</u> <u>In re Lehman Bros. Sec. & ERISA Litig.</u>, 684 F. Supp. 2d 485, 494-95 (S.D.N.Y. 2010), <u>aff'd</u>, 650 F.3d 167; <u>SNCB</u>, 877 F. Supp. at 826.

Furthermore, even if the truth or falsity of rating opinions could be evaluated objectively – which it cannot, as a matter of law – plaintiffs' claims fail because there is no evidence that the ratings of the Cheyne SIV notes were "wrong" when issued.  <u>See</u> <u>Zutty</u>, 2011 WL 5962804, at *10.



---

[9] <u>See, e.g.</u>,

[10] <u>See also</u> <u>In re Citigroup Inc. Sec. Litig.</u>, 753 F. Supp. 2d 206, 247 (S.D.N.Y. 2010) ("subsequent writedowns" did not support plaintiffs' claim that the statements were false at the time made); <u>Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC</u>, 474 F. Supp. 2d 505, 518 (S.D.N.Y. 2007) (allegation that the subject matter of statements made changed shortly thereafter

## II.   There Is No Evidence of Scienter

It cannot be disputed that the processes to design, structure and rate the Cheyne SIV were enormously time-consuming and labor-intensive.  It defies common sense that defendants would go to such lengths and expense to, at the end of the day, simply put out a fraudulent rating that had been a foregone conclusion years earlier.  See Dooner v. Keefe, Bruyette & Woods, Inc., 2003 WL 135706, at *4 (S.D.N.Y. Jan. 17, 2003) (dismissing fraud claim where, "[i]f, as the plaintiff alleges, the defendants knew the IPO would fail, then there would be no basis for them to go through the effort and expense of promoting the IPO").  The initial discussions about the Cheyne SIV began in 2003, and the vehicle launched in August 2005.  (¶¶ 27, 34, 51.)  During that time, Cheyne Capital, Morgan Stanley and the individual rating agencies sent and received thousands of emails regarding the transaction.  Throughout this case, plaintiffs have sought to find substantive errors in this year-long activity.  (See, e.g., Pls.' Pre-Motion Ltr. at 2-3; EAC ¶¶ 155–56, 168–75.)  Such criticisms miss the point and attempt to substitute hindsight for actual evidence that the Cheyne SIV rating committees disbelieved their own respective opinions.

### A.   Plaintiffs Have No Evidence That Any Defendant Disbelieved the SIV Credit Ratings

In the millions of pages of documents produced, plaintiffs cannot point to a single instance in which anyone who worked on the Cheyne SIV transaction suggested he or she believed that the SIV ratings were false.  Plaintiffs have simply come up empty.  Nor has any witness in this case – from defendants or plaintiffs or third parties – testified that anyone at the rating agencies expressed any such beliefs concerning the Cheyne SIV.  It is thus unsurprising

---

did not mean that they were false when made), aff'd sub nom. Bay Harbour Mgmt. LLC v. Carothers, 282 F. App'x 71 (2d Cir. 2008).

that plaintiffs abandoned efforts to depose key SIV team members, and instead sought discovery from witnesses who never worked on the transaction.

But plaintiffs must come forward with evidence that those *who made the alleged misstatements* had a "mental state embracing an intent to deceive, manipulate, or defraud." See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 318-19 (2007) (quotation marks omitted). "To prove liability against a corporation, of course, a plaintiff must prove that an agent of the corporation committed a culpable act with the requisite scienter . . . ." Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 195 (2d Cir. 2008). Therefore, to prove liability for fraud, a plaintiff must come forward with evidence that the actual speaker made the alleged misstatement with the requisite state of mind. In re Vivendi Universal, S.A. Sec. Litig., 765 F. Supp. 2d 512, 544-46 (S.D.N.Y. 2011); see also Dynex, 531 F.3d at 194-96; Makor Issues & Rights, Ltd. v. Tellabs Inc., 513 F.3d 702, 707-08 (7th Cir. 2008). Here, there is no evidence, let alone clear and convincing evidence, that anyone involved in this transaction believed that the credit ratings were false. See Century Pac., 528 F. Supp. 2d at 219; see also E-21 Global, Inc. v. Second Renaissance, LLC, 360 F. App'x 172, 175 (2d Cir. 2009) ("[E]vidence 'from which a reasonable jury could infer' scienter, rather than 'clear and convincing evidence,' is insufficient to sustain a claim for fraud.").

Both S&P's and Moody's credit ratings were issued by rating committees, and it is the knowledge and belief of those committees that reviewed and rated the Cheyne notes that are the locus of the scienter inquiry here.  (¶¶ 34-38, 52-53.)  But plaintiffs' exhaustive discovery of the rating process for Cheyne – thousands of internal emails and memoranda, as well as emails between one or the other rating agency and Morgan Stanley or Cheyne, and 33 days of deposition testimony – did not produce evidence that any aspect of the Cheyne ratings opinion

10

was disbelieved by the rating committees that rated the Cheyne SIV.  (¶¶ 35, 54.)  Instead, at every deposition of the rating agencies' respective Cheyne SIV committee members, the testimony was unequivocal that the ratings reflected the honest and independent opinions of the committees, including the specific views of the deponents.  (Id.)

Having failed to find any evidence of scienter as to either rating agency, plaintiffs now point to inflammatory language plucked out of context from disparate emails, irrelevant testimony on matters and ratings not at issue in this case, and hindsight re-evaluations aimed at improving future processes.  (See, e.g., Pls' Pre-Motion Ltr. at 3.)  Plaintiffs apparently hope that the Court will overlook the lack of any record evidence to support the necessary connection between such statements and the Cheyne SIV rating committees whose ratings opinions are at issue in this case.  Even after years of discovery, plaintiffs still cannot make a single factual connection between any of these supposedly damning bits of "evidence" and the actual beliefs held by the rating committees about the Cheyne SIV.  Similarly, there is no evidence that any member of either rating committee disbelieved the ratings of any of the underlying assets in which the Cheyne SIV was permitted to invest.

As to Morgan Stanley, having failed to uncover a shred of evidence that anyone involved in this transaction disbelieved or disagreed with the ratings, plaintiffs now appear to contend that certain assets were put into the Cheyne SIV with Morgan Stanley's knowledge and involvement, and that *others* at Morgan Stanley knew those assets were unsound and destined to fail.  This theory fails for five reasons.  *First*, as described above, scienter cannot be established for a corporate defendant by aggregating the knowledge of its employees; plaintiffs must establish that the individual corporate officer making a statement had the requisite level of scienter.  See In re Vivendi, 765 F. Supp. 2d at 544-45; see also Tellabs, 513 F.3d at 707-08.  Here, there is no

11

evidence that any individuals involved in the review of mortgage pools ever communicated with anyone involved in structuring the Cheyne SIV.  Nor is there any evidence that Morgan Stanley employees involved in the structuring of mortgage-backed securities were even *permitted* to communicate with any Morgan Stanley employees who sold assets to the Cheyne SIV (much less that they actually did so). ███████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████  *Fourth*, because Morgan Stanley typically retained a residual interest in the underlying assets it sponsored – holding on its own books the junior-most and riskiest piece of those securitizations – the notion that Morgan Stanley expected those assets to fail defies all reason: Morgan Stanley had a financial stake in the success of these vehicles. (¶ 31.)  Such economically irrational motives foreclose a reasonable inference of scienter, see Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994) (holding that courts must reject explanations that defy economic reason), and cannot constitute clear and convincing evidence of fraudulent intent.  *Fifth*, Morgan Stanley's own mortgage-related losses demonstrate that Morgan Stanley did not foresee the collapse of the subprime residential mortgage security market.  In the same few months that the Cheyne SIV entered enforcement and defaulted, Morgan Stanley itself recorded $9.4 *billion* of mortgage-related writedowns resulting from its own exposure to the same types of securities that were held by the Cheyne SIV– nearly 10 times the total Cheyne SIV investments made by all plaintiffs combined. (¶ 32.)  Of course, had

Morgan Stanley foreseen the market events that brought down the Cheyne SIV, it would not have incurred its own multi-billion dollar losses. Accordingly, plaintiffs' theory that Morgan Stanley engaged in fraud to earn fees of a few million dollars – while at the same time holding on its own books *billions* of dollars of securities similar to those held by the Cheyne SIV – defies all reason. It thus comes as no surprise that extensive discovery revealed no evidence of fraud.

### B.    Disclosure of the Allegedly Concealed Risks Negates Any Theory of Scienter

Scienter also cannot be proven here because the very risks that plaintiffs now claim were concealed by the ratings were in fact specifically disclosed. See infra IV.C. "The mere fact of that disclosure undermines any credible theory of scienter," In re Wachovia Equity Sec. Litig., 753 F. Supp. 2d 326, 356 (S.D.N.Y. 2011), because such disclosures are "inconsistent with a state of mind going toward 'deliberate illegal behavior,'" Footbridge Ltd. v. Countrywide Home Loans, Inc., 2010 WL 3790810, at *20 (S.D.N.Y. Sept. 28, 2010).

### C.    Fraud Cannot Be Proven by Hindsight

Plaintiffs' case proceeds from the incorrect premise that the ratings *must have been* false – and thus the decisions made by defendants in structuring and rating the SIV, respectively, must have been fraudulent – simply because the SIV ultimately collapsed. (¶¶ 23-26.) The Second Circuit has rejected such claims of fraud by hindsight. Shields, 25 F.3d at 1129. Plaintiffs' after-the-fact allegations about what defendants must have intended cannot defeat summary judgment. See In re Parmalat Sec. Litig., 684 F. Supp. 2d 453, 474-75 (S.D.N.Y. 2010) (granting summary judgment where there was an absence of evidence that defendants "connected the dots that plaintiffs now connect"); see also Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000); In re Merrill Lynch, 2011 WL 536437, at *12; In re Citigroup, 753 F. Supp. 2d at 246; Xerion, 474 F. Supp. 2d at 518; Kountze, 147 N.Y. at 129.

### D.     Allegations of Improper Motive Are Insufficient

There is no evidence that defendants had any motive to commit fraud.  Plaintiffs allege that defendants earned substantial fees, but allegations of motive based on compensation and a desire to continue and build profitable business relationships have been rejected as proof of intent to mislead and are insufficient as a matter of law.  See Ganino v. Citizens Utils. Co., 228 F.3d 154, 170 (2d Cir. 2000); In re Oxford Health Plans, Inc. Sec. Litig., 51 F. Supp. 2d 290, 294 (S.D.N.Y. 1999) ("[G]eneralized economic interests" in protecting and enhancing fees received from customers, increasing market share, and increasing income are insufficient to demonstrate motive to deceive.).

Plaintiffs' theory of scienter based on economic motives is, in any event, not plausible in light of the undisputed facts.  The transaction's fee structure incentivized all parties to ensure the continued success and viability of the SIV.  ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

█████████████████████████████

As to the rating agencies, plaintiffs alleged that the rating agencies "received fees in excess of three times their normal [rating] fees."  (EAC ¶ 7.)  This allegation was a centerpiece of plaintiffs' opposition to the rating agencies' motion to dismiss and the Court cited it in its opinion on that motion.  Such facts, even if true, would fail to provide evidentiary support for scienter at this stage, but discovery unambiguously demonstrated that the claim is untrue.  The

14

fees charged by the rating agencies were consistent with the fees they charged for rating other structured investment vehicles. ████████████████████████████

████████████████████████████████████████ Such normal course compensation for professional services cannot suffice to establish a motive to defraud. See, e.g., Ganino, 228 F.3d at 170.  Plaintiffs' allegations of an undisclosed "conflict of interest" against the rating agencies are also refuted by the record.  Courts have recognized that the market has long been aware of the rating agencies' "issuer pays" model,[12] ████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

## III.    There Is No Evidence That Plaintiffs Reasonably Relied on the Ratings

In denying plaintiffs' motion for class certification in this case, the Court held that "the question of reliance requires hearing from each investor as to *what it did*, *what it relied on* when

---

[11] Moreover, while plaintiffs alleged that the rating agencies were paid a fee amounting to "10 or more basis points" of the vehicle's portfolio size, or $6 million, "at the 'launch' of the SIV" (EAC ¶ 67), the record refutes this contention. 

[12] See, e.g., In re Lehman Bros., 684 F. Supp. 2d at 492 ("[T]he risk that the ratings agencies operated under a conflict of interest because they were paid by the issuers had been known publicly for years.").

deciding to invest in the Cheyne SIV, and *whether it relied* substantially on the credit ratings, minimally on the ratings or did not rely on them at all." Abu Dhabi, 269 F.R.D. at 263.[13] Reliance, the Court ruled, must be assessed "on an investor-by-investor basis." Id. at 261.  Now, after three years of discovery, many of these plaintiffs concede they have no evidence even of "what [they] did" – what analyses were undertaken, documents reviewed or conversations had in deciding to invest in the Cheyne SIV – much less clear and convincing evidence as to the role (if any) of credit ratings in their decisions.  Plaintiffs are bound by their Rule 30(b)(6) designees' testimony and cannot now offer testimony to the contrary to create a material issue of fact.[14] Because there is no evidence, much less clear and convincing evidence, that the ratings were a "substantial factor" in, or a "but for" cause of any plaintiff's investment decisions or that any plaintiff actually and reasonably relied on the ratings,[15] summary judgment should be granted. See Rizkallah v. Forward Air Inc., 2009 WL 3029309 (S.D.N.Y. Sept. 22, 2009).

---

[13] Emphasis has been added throughout unless otherwise noted.

[14] See Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc., 333 F. Supp. 2d 131, 145 (S.D.N.Y. 2004) (Plaintiff "cannot retract [its Rule 30(b)(6)] testimony in opposing [a] motion [for summary judgment]."); see also Disc. Order, (May 11, 2011), ECF No. 249 (limiting the number of defendants' depositions because, in part, "[t]here is no reason that a single 30(b)(6) deposition of each plaintiff should not be sufficient to provide defendants with the information it needs to prepare for a dispositive motion").

[15] See Abu Dhabi, 269 F.R.D. at 261 (credit ratings must have been a "substantial factor in each investor's decision to purchase the Rated Notes") (internal quotation marks omitted); McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 222-23 (2d Cir. 2008) (reliance is another word for transaction causation and requires a showing of "but for" causation); Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co., 785 F. Supp. 411, 419 (S.D.N.Y. 1992) (plaintiff must have been "justified in believing the representation and . . . justified in acting upon it").

None of the plaintiffs can demonstrate reasonable reliance on the ratings: [16]



_____

[16] The fifteen plaintiffs in this action are Abu Dhabi Commercial Bank ("ADCB"); Bank Hapoalim B.M. ("Hapoalim"); The Bank of N.T. Butterfield & Son Limited ("Butterfield"); Bank Sinopac ("Sinopac"); Commerzbank AG ("Commerzbank"); Commonwealth of Pennsylvania Public School Employees' Retirement System ("PSERS"); Deutsche Postbank AG ("Postbank"); Global Investment Services Limited ("GIS"); Gulf International Bank B.S.C. ("GIB"); King County, Washington ("King County"); National Agricultural Cooperative Federation ("NACF"); SEI Investments Company ("SEI"); SEI Investment Strategies, LLC ("SEI Strategies"); SFT Collective Investment Fund ("SFT"); and State Board of Administration of Florida ('FSBA").  Purchasers of Commercial Paper and Medium Term Notes are collectively referred to as senior noteholders.  Purchasers of Mezzanine Capital Notes and Combination Capital Notes are collectively referred to as capital noteholders.

- Two are suing S&P on investments that they admit they understood prior to investing that S&P did not rate.  (*SinoPac and GIS*)

These undisputed facts, one or more of which applies to each of the plaintiffs, are fatal to plaintiffs' allegations of reasonable reliance.  Plaintiffs that have no evidence of how their investment decisions were made cannot prove reasonable reliance on the ratings.  See Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); Savitsky v. Mazzella, 210 F. App'x 71, 73 (2d Cir. 2006).  Conclusory assertions of reliance do not create a genuine issue of fact and will not carry plaintiffs' burden.  Heublein, 996 F.2d at 1461.  Plaintiffs that disagreed with the ratings at the time of their investments cannot have reasonably relied on them.  See In re Eugenia VI Venture Holdings, Ltd. Litig., 649 F. Supp. 2d 105, 118 (S.D.N.Y. 2008).  Plaintiffs that invested in Cheyne before the ratings were even issued likewise necessarily cannot have relied on the ratings.  See, e.g., Gabriel Capital, L.P. v. NatWest Fin., Inc., 177 F. Supp. 2d 169, 174 (S.D.N.Y. 2001) (Scheindlin, J.); see also Pension Comm., 592 F. Supp. 2d at 629 (Scheindlin, J.).  And a plaintiff that, like King County, conducts no investigation, not even the "minimal diligence" necessary to "negat[e] its own recklessness," cannot claim that its alleged reliance was reasonable.  Banque Franco-Hellenique de Commerce Int'l et Maritime, S.A. v. Christophides, 106 F.3d 22, 27 (2d Cir. 1997) (internal quotation marks omitted); see UST Private Equity Investors Fund v. Salomon Smith Barney, 733 N.Y.S.2d 385, 386 (1st Dep't 2001).

Plaintiffs also cannot survive summary judgment by pointing to evidence that the ratings were one among many factors they considered in their own investigations of creditworthiness.  First, plaintiffs are presumed to have relied on their own investigations, not on defendants, in making their investments.  See Am. Fin. Servs. Grp. v. Treasure Bay Gaming & Resorts, Inc., 2000 WL 815894, at *10 (S.D.N.Y. June 23, 2000).  Second, whatever role the ratings may have played in those investigations, there is no evidence that "but for" the "*specific* ratings" plaintiffs

18

would not have invested.  See Matthews v. Schusheim, 346 N.Y.S.2d 286, 391 (2d Dep't 1973);

Abu Dhabi, 269 F.R.D. at 265 (plaintiffs must prove that they relied on "*these specific* ratings

when purchasing *these specific* Rated Notes" (emphasis in original)).

      Finally, those plaintiffs who purport to sue on investments made by non-parties because –

after the ratings downgrades – they either chose to buy out those non-parties' investments or

acquired the non-party that made the investment, cannot meet even the threshold requirements of

standing, let alone demonstrate reliance.  See, e.g., Bank of Am. Corp. v. Lemgruber, 385 F.

Supp. 2d 200, 219-20 (S.D.N.Y. 2005) (denying standing to plaintiffs that "were not parties to

either [stock purchase]" and whose injuries were "wholly derivative" of their corporate affiliates'

damages); Alexander & Alexander of N.Y., Inc. v. Fritzen, 495 N.Y.S.2d 386, 388 (N.Y. 1st

Dep't 1985).  These plaintiffs have not come forth with valid proof, as they must, establishing

any right to prosecute their respective fraud claims.  See Banque Arabe et Internationale

D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 151 (2d Cir. 1995) (mere assignments of

contractual rights does not "entail the right to assert tort claims arising from that contract").

Courts within the Second Circuit have consistently held that nothing short of an "explicit

assignment" will suffice to transfer an underlying fraud claim as only the assigning party, if

anyone, "had the right to rely upon" the allegedly false statements.  Fraternity Fund Ltd. v.

Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 373 (S.D.N.Y. 2007).

      While the evidence differs from plaintiff to plaintiff, the conclusion is the same: none of

the plaintiffs has evidence that it reasonably relied on ratings in deciding to invest.

         **GIB** ████████████████████████████████████████████████

████████  And, there is no evidence of what GIB considered in making its investment decision.

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

**NACF,** ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

**SinoPac** ██████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████

**Butterfield** ████████████████████████████████████████████

████████████████████████████████████████████████████████

20

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████    Butterfield also has no evidence concerning the basis of

BMMF's investment decision.  ███████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

**Hapoalim** ████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████    Hapoalim could not have relied on the ratings in making that

September 2007 decision.  In any event, Hapoalim has no evidence of what the credit committee

that made the investment decision for Venus considered when approving the original investment

in Cheyne.  █████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

21

**Postbank** has no evidence that the ratings were a substantial factor in its investment decision. ███████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

        **Commerzbank** ██████████████████████████████████

██████████████████ ███████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

---

[17] ████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████

████████ neither Commerzbank nor Dresdner could have relied on the ratings and each lacks

standing to pursue any fraud claim. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

**PSERS** ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

**SFT** ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ The undisputed evidence makes clear that whatever SFT based its

investment on, it was not the ratings. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

**FSBA** ████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

**SEI** ████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████   SEI, therefore, both lacks standing to assert a claim that it

was defrauded and could not have relied on the ratings.  In any event, the ratings were not a

factor – let alone a substantial factor – even in CMA's initial investment decision on behalf of

the Funds.  █████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████

**ADCB.**████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████

**GIS**██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████

**SEI Strategies** is the general partner of the SEI Liquidity Fund (the "Liquidity Fund"),

which relied on its own investigation, not the ratings, in investing in Cheyne. ███████████

███████████████████████████ but there is no evidence that the ratings were a

substantial factor in its investment decisions. ██████████████████████████

25

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

**King County** did not conduct any due diligence before investing.   ████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████

IV.     **There Is No Evidence of Loss Causation**

      Summary judgment should be granted because plaintiffs have no evidence, let alone clear

and convincing evidence, that "out of the myriad of factors" that impacted plaintiffs'

investments, "it was the alleged misrepresentations . . . that caused any loss." <u>JSMS Rural LP v.</u>

<u>GMG Capital Partners III, LP</u>, 2006 WL 2239681, at *3 (S.D.N.Y. Aug. 4, 2006) (Scheindlin,

J.).  Nor is there any evidence that the ratings concealed any risk that caused plaintiffs' losses.

<u>See, e.g.</u>, <u>Lentell v. Merrill Lynch & Co.</u>, 396 F.3d 161, 173 (2d Cir. 2005) (risk that caused loss

must be "within the zone of risk concealed by the [alleged] misrepresentations").  Instead, the

risks that materialized and caused any losses were explicitly disclosed and known to plaintiffs.

Investor losses were a result of a decline in market prices, not credit performance. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████

     ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████ And the market for fixed income securities

generally, and asset- and mortgage-backed investments in particular, had never been less

favorable than in 2007 and 2008 when the Cheyne SIV became a forced seller.

Because investors' losses were caused by an undisputed, unprecedented and market-wide

decline in the prices of the types of securities held by the SIV, plaintiffs cannot establish loss

causation. The pertinent risks – the SIV's exposure to the market prices of its holdings and the

fact that the SIV could become a forced seller in an unfavorable market – were disclosed to investors, and such disclosure precludes any claim.

### A.    An Unprecedented Market Disruption Caused Investors' Losses

The unprecedented and market-wide impact of the liquidity crisis that caused investors' losses is undisputed. █████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

Amidst the crisis, market pricing became unrelated to credit performance. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████

---

[18] The effects of the liquidity crisis that began in August 2007 were significantly more severe than those of prior market disruptions including the August 1998 collapse of the Long-Term Capital Management ("LTCM") hedge fund and the events of September 11, 2001. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████

At the time the SIV entered "enforcement" and its ratings were downgraded, the credit performance of its assets was unchanged. ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████

The fact that nothing unique to Cheyne caused its liquidation is further demonstrated by the fact that nearly every one of approximately 30 SIVs in the market in the summer of 2007 had unwound within about a year as a result of the financial crisis.  (¶ 118.) ███████████████

████████████████████████████████████████ Every SIV was negatively impacted by the unprecedented events of 2007 and 2008, despite different structures, portfolios and asset allocations.

To be sure, however, the crisis was not limited to SIVs, much less to the Cheyne SIV specifically. ███████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████ Indeed, between August and October 2007 alone, the asset-backed commercial paper ("ABCP") market shrunk nearly $300 *billion*, dropping from $1.18 trillion in early August 2007 to just under $900 billion.  (¶ 122.)

In the midst of this crisis, plaintiffs suffered losses on other, unrelated securities many times in excess of their Cheyne SIV investments. ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ The notion that the losses of the Cheyne SIV in particular were attributable to anything other than the undisputed liquidity crisis that caused losses across plaintiffs' ABS portfolios is at odds with the evidence, logic and the law. ██████████████████████████████████████

███████████████

**B.      It Is Undisputed That at the Time of the Ratings Downgrades Investors Had Suffered No Losses at All**

Plaintiffs did not suffer any losses when the Cheyne SIV entered enforcement and its notes were downgraded. ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Plaintiffs' own analyses demonstrated the value of the SIV's assets after the downgrades.

███████████████████████████████████████████████

████████████████████████████████████████████████████████████



**C.     The Risks That Materialized and Caused Investors' Losses Were Disclosed**

Summary judgment should also be granted because there is no evidence that the ratings concealed any risk that caused plaintiffs' alleged losses.  <u>See, e.g.</u>, <u>Lentell</u>, 396 F.3d at 173.  To the contrary, the risks that led to plaintiffs' alleged losses were clearly and prominently disclosed.  Indeed, the first risk factor in the information memoranda stated that the SIV was



But for the receiver's decision to declare insolvency when it did, many plaintiffs would have been repaid at maturity and would have suffered no losses.

31

required to mark its assets to market frequently and thus faced "market risk, which could lead to realized losses if it becomes a *forced seller of assets in a declining market environment*." (¶ 135.)  Investors were also warned that the SIV could "be forced to sell its assets at below market value in a fire sale, resulting in losses to investors."  (¶ 136.)

**D.** **Summary Judgment Should Be Granted as to the Senior Noteholder Plaintiffs Because They Have No Evidence of Damages**



Those plaintiffs *continue to hold* and receive payments on those notes, and will do so for the next 10-30 years.  The extent of their losses, if any, is therefore speculative and unknowable,

Where, as here, a plaintiff cannot "fix the loss of value attributable to defendants' alleged fraud with reasonable certainty," summary judgment is proper.  JSMS Rural LP v. GMG Capital Partners III, LP, 2006 WL 1867482, at *3 (S.D.N.Y. July 6, 2006) (Scheindlin, J.); see also Lewin v. Lipper Convertibles, 756 F. Supp. 2d 432, 443 (S.D.N.Y. 2010) (granting summary judgment where plaintiffs failed to indicate "what their true damages" were).

**V.** **There Is No Evidence That Defendants Aided and Abetted Fraud**

Plaintiffs' aiding and abetting claims require clear and convincing evidence of "'(1) the existence of a fraud, (2) [the] defendant[s'] knowledge of the fraud, and (3) that . . . defendant[s]

---

[21] The fact that nearly every senior noteholder plaintiff elected *not* to "cash out" at the July 2008 auction prices underscores plaintiffs' belief that those prices understated the value of the SIV's collateral.

provided substantial assistance to advance the fraud's commission.'" Pension Comm., 592 F. Supp. 2d at 625 (quoting Lerner v. Fleet Bank, 459 F.3d 273, 292 (2d Cir. 2006)); see also de Abreu, 2011 WL 2652188, at *4.  Because plaintiffs' fraud claims fail, see supra §§ I–IV, so too do plaintiffs' aiding and abetting claims.  But those claims also fail because there is no evidence that any defendant knew of, or provided substantial assistance to, any alleged fraud.

### A.    There Is No Evidence of Aiding and Abetting by Morgan Stanley

There is no evidence, let alone clear and convincing evidence, that Morgan Stanley had actual knowledge of any alleged fraud, as required by New York law.  See Lerner, 459 F.3d at 292; Pension Comm., 592 F. Supp. 2d at 625; Chemtex, LLC v. St. Anthony Enters., Inc., 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007).  "New York law requires that the alleged aider and abettor have 'actual,' as opposed to merely constructive, knowledge of the primary wrong." Chemtex, 490 F. Supp. 2d at 546; see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC, 652 F. Supp. 2d 495, 502–03 (S.D.N.Y. 2009) (Scheindlin, J.); Fraternity Fund, 479 F. Supp. 2d at 367.  Indeed, where, as here, "a defendant is under no independent duty [to the plaintiffs], even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege 'actual knowledge.'" Chemtex, 490 F. Supp. 2d at 547; see also Rosner v. Bank of China, 2008 WL 5416380, at *8-10 (S.D.N.Y. Dec. 18, 2008) ("[I]gnorance of 'red flags' or obvious warning signs of fraudulent activity cannot establish a [defendant]'s actual knowledge sufficient to support a claim of aiding and abetting fraud."), aff'd, 349 F. App'x 637 (2d Cir. 2009); de Abreu, 2011 WL 2652188 at *5-6.

Evidence that a defendant knew a statement was inaccurate or mistaken, or even that the defendant knew of some improper conduct, is not enough to defeat a motion for summary judgment.  See Lerner, 459 F.3d at 293 (knowledge of "improper" handling of client accounts

did not show actual knowledge of fraud); In re Agape Litig., 773 F. Supp. 2d 298, 313 (E.D.N.Y. 2011) (knowledge that primary violator "was not dealing in a forthright manner with investors" did not show actual knowledge of fraud); Hightower v. Cohen, 2009 U.S. Dist. LEXIS 130847, at *16 (E.D.N.Y. Sept. 30, 2009) (knowledge of "misleading offering documents [that] formed part of the . . . scheme" did not show actual knowledge of fraud); Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, 261 F.R.D. 13, 25 (S.D.N.Y. 2009) (requiring "actual knowledge of the fraud that occurred"); Renner v. Chase Manhattan Bank, 2000 WL 781081, at *7 (S.D.N.Y. June 16, 2000), aff'd, 85 F. App'x 782, 784 (2d Cir. 2004); see also Pension Comm., 592 F. Supp. 2d at 627-28, 642.  Here, there is no evidence that Morgan Stanley knew the ratings on the Cheyne notes did not reflect the honestly held opinions of the rating agencies – in fact, the uncontroverted evidence establishes the opposite.  (¶¶ 35, 54.)

Plaintiffs' aiding and abetting claim fails for the separate and independent reason that there is no evidence that Morgan Stanley provided substantial assistance to further any alleged fraud by the rating agencies.  First, there is no evidence that any conduct by Morgan Stanley proximately caused plaintiffs' alleged losses, a necessary component to "substantial assistance" under New York law.  See Rosner, 2008 WL 5416380, at *5; see also In re Optimal, 2011 WL 1676067, at *16 ("Whether the assistance is substantial or not is measured by whether the action of the aider and abettor proximately caused the harm on which the primary liability is predicated." (internal quotations and ellipses omitted)).[22]  Second, Morgan Stanley had no fiduciary or other duty to plaintiffs that required it to disclose information to them, and plaintiffs thus cannot base their substantial assistance claims on any alleged failure to disclose.  See

---

[22] Summary judgment on an aiding and abetting claim is also appropriate where, as here, plaintiff failed to show loss causation for the primary fraud.  See Nw. Nat'l Ins. Co. of Milwaukee, Wis. v. Alberts, 769 F. Supp. 498, 511 (S.D.N.Y. 1991).

Hightower, 2009 U.S. Dist. LEXIS 130847, at *19–20; Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co., 883 N.Y.S.2d 486, 489–90 (1st Dep't 2009).[23]

### B.   There Is No Evidence of Aiding and Abetting by the Rating Agencies

Plaintiffs' aiding and abetting claims against the rating agencies likewise fail because plaintiffs have no evidence of fraud perpetrated by Morgan Stanley.  See supra §§ I–IV.  The only allegedly fraudulent statements are the Cheyne notes' ratings.  Those ratings are the independent opinions of the rating agencies.  As a matter of both law and logic, the rating agencies cannot have aided and abetted in the issuance of their own opinions.  See 380544 Can., Inc. v. Aspen Tech., Inc., 633 F. Supp. 2d 15, 36 (S.D.N.Y. 2009) (granting motion to dismiss on aiding and abetting and concluding "[s]ince the purpose of aiding and abetting liability is to draw in defendants who are not liable as principals of the fraud, [defendant] cannot be held liable as an abettor" where the claim is based on his alleged misrepresentation).  And there is no evidence whatsoever that the rating agencies interacted with one another in connection with the Cheyne SIV – let alone that they substantially assisted one another in the issuance of one another's ratings.  Nor is there any evidence that the rating agencies had "actual knowledge" of, or provided "substantial assistance" to further, any fraud by Morgan Stanley or each other.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment should be granted.

---

[23] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ see also Elliott v. Qwest Commc'ns Corp., 808 N.Y.S.2d 443, 445 (3d Dep't 2006); Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 819 F. Supp. 1282, 1296 (S.D.N.Y. 1993).

Dated: January 23, 2012
　　　 New York, NY

DAVIS POLK & WARDWELL LLP

By: _____
　　 James P. Rouhandeh
　　 james.rouhandeh@davispolk.com
　　 Antonio J. Perez-Marques
　　 antonio.perez@davispolk.com
　　 William R. Miller, Jr.
　　 william.miller@davispolk.com

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Counsel to Defendants Morgan Stanley &
Co. Incorporated and Morgan Stanley &
Co. International Limited*

CAHILL GORDON & REINDEL LLP

By: _____
　　 Floyd Abrams
　　 fabrams@cahill.com
　　 Dean Ringel
　　 dringel@cahill.com
　　 Tammy L. Roy
　　 troy@cahill.com
　　 Jason M. Hall
　　 jhall@cahill.com

80 Pine Street
New York, New York  10005
(212) 701-3000

*Counsel to Defendants The McGraw-Hill
Companies, Inc. and Standard & Poor's
Ratings Services*

Dated: January 23, 2012
    New York, NY

DAVIS POLK & WARDWELL LLP

By: _____

    James P. Rouhandeh
    james.rouhandeh@davispolk.com
    Antonio J. Perez-Marques
    antonio.perez@davispolk.com
    William R. Miller, Jr.
    william.miller@davispolk.com

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Counsel to Defendants Morgan Stanley &*
*Co. Incorporated and Morgan Stanley &*
*Co. International Limited*

CAHILL GORDON & REINDEL LLP

By: _____

    Floyd Abrams
    fabrams@cahill.com
    Dean Ringel
    dringel@cahill.com
    Tammy L. Roy
    troy@cahill.com
    Jason M. Hall
    jhall@cahill.com

80 Pine Street
New York, New York  10005
(212) 701-3000

*Counsel to Defendants The McGraw-Hill*
*Companies, Inc. and Standard & Poor's*
*Ratings Services*

SATTERLEE STEPHENS
BURKE & BURKE LLP

By: _____
Joshua M. Rubins
jrubins@ssbb.com
James J. Coster
jcoster@ssbb.com
Mario Aieta
maieta@ssbb.com
James I. Doty
jdoty@ssbb.com

230 Park Avenue
11th Floor
New York, New York  10169
(212) 818-9200

*Counsel to Defendants Moody's Investors*
*Service, Inc. and Moody's Investors*
*Service Ltd.*