UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

KING COUNTY, WASHINGTON,
and IOWA STUDENT LOAN
LIQUIDITY CORPORATION,

          Plaintiffs,

      - against -

IKB DEUTSCHE INDUSTRIEBANK
AG, et al.,

         Defendants.

-------------------------------------------------- X

ABU DHABI COMMERCIAL BANK, et
al.,

         Plaintiffs,

      - against -

MORGAN STANLEY & CO. INC, et al.,

         Defendants.

-------------------------------------------------- X

**OPINION AND ORDER**

09 Civ. 8387 (SAS)

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/7/12__
```

08 Civ. 7508 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

I.      **INTRODUCTION**

        Institutional investors King County, Washington ("King County") and

1

Iowa Student Loan Liquidity Corporation seek to recover losses stemming from the October 2007 collapse of Rhinebridge, a structured investment vehicle ("SIV"). These plaintiffs assert New York common law claims against eight corporate entities:  Deutsche Industriebank AG and IKB Credit Asset Management, GmbH (together, "IKB"); The McGraw Hill Companies, Inc. d/b/a Standard & Poor's Rating Services ("S&P"); Moody's Investors Service, Inc. and Moody's Investors Service Ltd. (together, "Moody's"); Fitch, Inc. ("Fitch," and, with S&P and Moody's, the "Rating Agencies"); Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited (together, "Morgan Stanley," or "MS").  In a separate action, a different set of plaintiffs (including King County) seeks to recover losses stemming from the September 2007 collapse of the Cheyne SIV.  The facts of the two actions are similar, the asserted causes of action are identical, and with the exception of IKB and Fitch, the second action names the same defendants as the first.

After a December 20, 2011 opinion by the New York Court of Appeals clarified that New York's Martin Act does *not* preempt common law claims in the securities context,[1] I granted plaintiffs in both actions leave to amend their complaints to state causes of action for negligence, negligent

---

[1]      *See Assured Guaranty (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.* (*Assured Guaranty II*), 18 N.Y.3d 341, 353 (2011).

2

misrepresentation, and breach of fiduciary duty, as well as aiding and abetting with respect to those claims.  The defendants in both cases promptly moved to dismiss those common law claims.  On May 4, 2012, I issued an opinion in the King County case, dismissing the causes of action for negligence, breach of fiduciary duty, and aiding and abetting, but allowing plaintiffs' negligent misrepresentation claim to proceed.[2]  On the same day, I issued an Order to the same effect in the Abu Dhabi case,[3] adopting my reasoning from *King County*.  Morgan Stanley now moves for reconsideration, and the Rating Agencies move for either reconsideration or, in the alternative, for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  For the reasons set forth below, defendants' motions are denied.

## II.   BACKGROUND

The relevant facts and procedural history are fully set forth in the May 4 Opinion.  Defendants' motions for reconsideration are based primarily — but not entirely — on a May 10, 2012 Second Circuit opinion and a May 18, 2012 Second Circuit summary order.

---

[2]     *See King County, Washington v. IKB Deutsche Industriebank AG*, No. 09 Civ. 8387, ---- F. Supp. 2d ----, 2012 WL 1592193 (S.D.N.Y. May 4, 2012) ("The May 4 Opinion").

[3]     Docket No. 404 in 08 Civ. 7508.

3

## III.   LEGAL STANDARDS

### A.   Reconsideration

Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court.[4]  "A motion for reconsideration is appropriate where 'the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[5]  Further, "[t]ypical grounds for reconsideration include 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"[6]  Yet, because "the purpose of Local Rule 6.3 is to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional

---

[4]     *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

[5]     *Medisim Ltd. v. BestMed LLC*, No. 10 Civ 2463, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (quoting *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003)).

[6]     *Gucci America, Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2011 WL 6326032, at *1 (S.D.N.Y. Dec. 16, 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

4

matters,'"[7] the Rule must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[8]

### B.    Certification Pursuant to 28 U.S.C. § 1292(b)

Appeals of interlocutory district court orders are governed by 28 U.S.C. § 1292(b).  Under section 1292(b), certification should only be granted if the issue appealed "(1) involve[s] a controlling question of law (2) over which there is substantial ground for difference of opinion," and further, that "(3) an immediate appeal would materially advance the ultimate termination of the litigation."[9]  In addition, leave to appeal is warranted only when the movant demonstrates the existence of "exceptional circumstances"[10] sufficient to overcome the "general aversion to piecemeal litigation"[11] and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final

---

[7]    *Medisim*, 2012 WL 1450420, at *1 (quoting *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008)).

[8]    *United States v. Treacy*, No. 08 Cr. 0366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation omitted).

[9]    28 U.S.C. § 1292(b).

[10]    *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006).

[11]    *In re AroChem Corp.*, 176 F.3d 610, 619 (2d Cir. 1999).  *Accord Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 95 (2d Cir. 1997) (describing the "salutary policies that animate the final judgment rule").

judgment."[12]   Interlocutory appeal "is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation,' . . . and is not intended as a vehicle to provide early review of difficult rulings in hard cases."[13] The decision whether to grant an interlocutory appeal from a district court order lies within the district court's discretion.[14]

## IV.   DISCUSSION

Morgan Stanley and the Rating Agencies argue that reconsideration is warranted due to the Second Circuit's May 10, 2012 decision in *City of Omaha, Nebraska Civilian Employees' Retirement System v. CBS Corp.*[15]   The Rating Agencies further argue that reconsideration is warranted because this Court's May

---

[12]     *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (citations omitted).

[13]     *In re Levine*, No. 03 Civ. 7146, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (quoting *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

[14]     *See, e.g.*, *Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995) ("[D]istrict courts [have] first line discretion to allow interlocutory appeals."); *DM Rothman Co., Inc. v. Cohen Mktg. Int'l, Inc.*, No. 98 Civ. 7905, 2006 WL 2128064, at *1 (S.D.N.Y. July 27, 2006) ("[T]he determination of whether § 1292(b) certification is appropriate under these standards lies with the discretion of the district court.") (quoting *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, No. 03 Civ. 7248, 2004 WL 1286806, at *6 (S.D.N.Y. June 10, 2004)).

[15]     No. 11 Civ. 2575, --- F.3d ---, 2012 WL 1624022 (2d Cir. May 10, 2012).

6

4 Opinion is "contrary to all recent New York law,"[16] and Morgan Stanley seeks

reconsideration on the additional ground that the May 4 Opinion is contradicted by

the Second Circuit's May 18, 2012 summary order in *Stephenson v.*

*PricewaterhouseCoopers, LLP*.[17]  For the reasons stated below, these arguments do

not require reconsideration, and the Rating Agencies' request for certification

pursuant to 28 U.S.C. § 1292(b) is denied.

### A.    The Second Circuit's Recent Decision in *CBS*

In their memoranda of law supporting their motions to dismiss,

Morgan Stanley and the Rating Agencies argued that credit ratings are predictive

opinions about future events, and that although they may be actionable in fraud

when they misrepresent a speaker's genuine opinion, they cannot be actionable in a

negligence context.[18]  In the May 4 Opinion, I did not address whether or not credit

---

[16]    The Rating Agencies' Memorandum of Law in Support of Their Motion for Reconsideration or, in the Alternative, for Certification Pursuant to 28 U.S.C. § 1292(b) ("RA Mem."), at 7.

[17]    No. 11 Civ. 1204, 2012 WL 1764191 (2d Cir. May 18, 2012) (summary order).

[18]    *See* The Rating Agencies' Memorandum of Law in Support of Their Joint Motion to Dismiss the Second Amended Consolidated Complaint, at 14; Memorandum of Law in Support of Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited's Motion to Dismiss the Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6), at 13-15.

ratings are "opinions";[19] rather, I held that "under New York negligent

misrepresentation law, 'even statements of opinion are actionable if they are made

in bad faith or are not supported by the available evidence.'"[20]  In their memoranda

of law supporting their motions to dismiss, defendants cited many cases which —

according to them — held that opinions are not actionable under Sections 11 and

---

[19]     There is authority supporting the proposition that credit ratings are not
predictive opinions but statements assessing current value.  *See MBIA Ins. Corp v.
Royal Bank of Canada*, No. 12238/09, 2010 WL 3294302, at *29 (Sup. Ct.
Westchester Co. Aug. 19, 2010) ("The Court rejects Defendants' attempts to cast
[ratings on RMBS and CDOs] as statements/promises of future actions rather than
present facts."); *M&T Bank Corp. v. Gemstone CDO VII, Ltd.*, No. 7064/08, 2009
WL 921381, at *11 (Sup. Ct. Erie Co. Apr. 7, 2009) ("The ratings by Moody's and
S & P are not just predictions of future valuation but a present analysis of current
valuation.").  *Accord* Dodd-Frank Wall Street Reform and Consumer Protection
Act of 2010, Pub. L. No. 111-203, § 933(a); 15 U.S.C. § 78o-7(m)(l) (credit ratings
"shall not be deemed forward looking statements" under the federal securities
laws).  However, because I again hold that even opinions are actionable under New
York negligent misrepresentation law, I need not determine whether credit ratings
are opinions or statements of present value.

[20]     *King County*, 2012 WL 1592193, at *9 (quoting *ADL, LLC v.
Tirakian*, No. 06 Civ. 5076, 2010 WL 3925131, at *12 (E.D.N.Y. Aug. 26, 2010)).
The Rating Agencies and Morgan Stanley both argue that, in *ADL*, Magistrate
Judge Go misstated the New York Court of Appeals' decision in *CPC Int'l Inc. v.
McKesson Corp.*, 70 N.Y.2d 268, 286 (1987), by incorrectly inserting the word
"or" where the Court of Appeals had said "and."  This argument is itself a
mischaracterization of the disputed quote in *CPC* — the Court of Appeals was not
stating the test for negligent misrepresentation in New York; rather, it was reciting
the plaintiffs' allegations in that case.  *See id.* ("Plaintiff alleges that defendants
made the projections knowing that they were false and unreasonable and that they
were not based on Mueller's actual financial condition.").

12 of the Securities Act of 1933.[21]  I addressed those decisions by explaining that,

"[a]lthough cases interpreting Section 10(b) of the Securities Act are helpful to

federal courts applying New York law, the same is not true for Sections 11 and

12."[22]  Following the May 4 Opinion, the Second Circuit in *CBS* clarified that the

reasoning of its recent holding in *Fait v. Regions Fin. Corp.* — which addressed

the actionability of opinions under Sections 11 and 12[23] — applied to Section 10(b)

as well.[24]  *CBS*, however, does not represent a change in controlling authority

warranting reconsideration for the following reasons:  (1) opinions are actionable

under New York negligent misrepresentation law; and (2) *CBS* addresses the

actionability of opinions under federal securities law, not New York common law.

New York courts have repeatedly held that statements of opinion may

form the basis of negligent misrepresentation claims.  In *Credit Alliance Corp. v.

Arthur Andersen & Co.*, the New York Court of Appeals upheld negligent

misrepresentation claims against an auditing firm based on its "professional

---

[21]     *See, e.g., Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011).

[22]     *King County*, 2012 WL 1592193, at *9 (citations omitted).

[23]     *Fait*, 655 F.3d at 110-12.

[24]     *See CBS*, 2012 WL 1624022, at *2-3 ("[A] plaintiff must 'plausibly
allege that defendants did not believe the statements regarding goodwill at the time
they made them' to plead a material misstatement or omission.") (citing *Fait*, 655
F.3d at 112).

9

opinions."[25]  Similarly, in *Kimmell v. Schaefer* — one of the seminal cases interpreting New York negligent misrepresentation law — the New York Court of Appeals upheld negligent misrepresentation claims based on projections as to a utility project's expected return.[26]  As the Appellate Division's ruling in *Kimmell* explained, "where one party does have superior knowledge, the expression of an opinion implies that the declarant knows facts which support that opinion and that he knows nothing which contradicts the statement."[27]  Thus, New York courts have repeatedly held that opinions are actionable in a negligence context.[28]

CBS and *Fait* cannot overturn these precedents.  Although I previously recognized that "the elements of common-law fraud in New York are 'substantially identical to those governing § 10(b),'" and that therefore, "'the

---

[25]     *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 545 n.4 (1985).

[26]     *See Kimmell v. Schaefer*, 89 N.Y.2d 257, 261-62 (1996).

[27]     *Kimmell v. Schaefer*, 637 N.Y.S.2d 147, 149 (1st Dep't 1996), *aff'd*, 89 N.Y.2d 257 (1996).

[28]     *See also Megally v. LaPorta*, 679 N.Y.S.2d 649, 654 (2d Dep't 1998) (noting that "recovery has been permitted to parties who relied upon negligently prepared reports and opinions of, respectively, accountants, architects, and attorneys"); *West Side Fed. Sav. & Loan Ass'n v. Hirschfeld*, 476 N.Y.S.2d 292, 295 (1st Dep't 1984) (noting — in upholding a claim for "innocent misrepresentation" — that "expressions of opinion have long been held to be [actionable] in New York" in situations "where one party does have superior knowledge").

10

identical analysis applies,'"[29] negligent misrepresentation is a distinct cause of action, with different elements than common-law fraud.[30]  Thus, a change in the Second Circuit's interpretation of section 10(b) does not necessarily indicate a corresponding change in the Second Circuit's analysis of negligent misrepresentation claims under New York law.  While *Fait* and *CBS* do seem to represent a trend in the Second Circuit, unless and until the Second Circuit explicitly rules that a New York state law negligent misrepresentation claim cannot be based on an opinion under any circumstances, this Court must follow established state law — particularly when issued by the highest court of the state. If, and when, the Second Circuit explicitly rules that a New York state law claim for negligent misrepresentation may never be based on an opinion, then plaintiffs' claim here must be dismissed.  Until that time, however, defendants have not met the standard for reconsideration of this Court's opinion.

**B.**     **The Second Circuit's Summary Order in *Stephenson***

Under New York law, there can be no negligent misrepresentation

---

[29]     *In re Optimal U.S. Litig.*, No. 10 Civ. 4095, 2011 WL 6424988, at *11 (S.D.N.Y. Dec. 21, 2011).

[30]     *See King County*, 2012 WL 1592193, at *6.

Case 1:08-cv-07508-SAS-DCF   Document 423   Filed 06/07/12   Page 12 of 19


claim unless the parties had some form of "special relationship."[31]  The appropriate

test was articulated in *Credit Alliance*, and it requires — among other things —

that plaintiffs were known parties to defendants.[32]  In the May 4 Opinion, I

conducted an extensive analysis of the relationship between the parties and

determined that plaintiffs were known parties to defendants.[33]  Central to this

determination was my holding that a defendant need not know the identity of each

particular plaintiff to satisfy the *Credit Alliance* test; that rather, "plaintiffs are a

'known party' if they are members of a 'settled and particularized class,' as

opposed to an 'indeterminate class.'"[34]  Morgan Stanley now argues that

reconsideration is warranted due to the Second Circuit's May 18 summary order in

*Stephenson*, in which it said '[t]he words 'known party' . . . in the *Credit Alliance*

test mean what they say,' and where the complaint does not allege that the

defendant knew 'the identity of the specific non-privity party who would be

---

[31]     *See Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788-89
(2d Cir. 2003) (describing the "basic requirement of a 'special relationship'" for
negligent misrepresentation claims as existing when the defendant "'possess[es]
unique or specialized expertise, or [is] in a special position of confidence and trust
with the injured party'") (quoting *Kimmell*, 89 N.Y.2d at 263).

[32]     *See Credit Alliance*, 65 N.Y.2d at 551.

[33]     *See King County*, 2012 WL 1592193, at *10.

[34]     *Id.* (citing *White v. Guarente*, 43 N.Y.2d 356, 363 (1977) and
*Ultramares Corp. v. Touche*, 255 N.Y. 170, 179 (1931)).

12

relying,' a negligence claim fails."[35]  However, *Stephenson* is neither controlling nor contrary to the May 4 Opinion.

Because *Stephenson* is an unpublished summary order, it does not have precedential effect.[36]  A summary order cannot serve as the basis for reconsideration.[37]

Moreover, *Stephenson* is distinguishable from *King County* under *White v. Guarente*.[38]  *White* turned on the difference between a "faceless or unresolved class of persons," and "a known group possessed of vested rights, marked by a definable limit and made up of certain components."[39]  The plaintiff in

---

[35]    *Stephenson*, 2012 WL 1764191, at \*3 (quoting *Sykes v. RFD Third Ave. 1 Assocs., LLC*, 15 N.Y.3d 370, 373 (2010)).

[36]    *See Williams v. City of New York*, No. 05 Civ. 10230, 2007 WL 2214390, at \*12 n.178 (S.D.N.Y. July 26, 2007) (citing Local Rule 32.1 and holding that because a Second Circuit decision was a "summary order, it does not have precedential effect.").

[37]    *See United States v. Hatfield*, 795 F. Supp. 2d 219, 223 (E.D.N.Y. 2011) ("[Authorities such as Second Circuit summary orders] cannot justify reconsideration. For . . . the moving party must point to 'controlling decisions,' to obtain reconsideration. . . . [T]he Second Circuit's own rules declare that its summary orders 'do not have precedential effect.'") (citing Second Circuit Local Rule 32.1.1(a)).

[38]    43 N.Y.2d 356.

[39]    *White,* 43 N.Y.2d at 361.  Interestingly, the Rating Agencies took issue with my reliance on *White* in the May 4 Opinion, arguing that *White* was superceded by *Credit Alliance*.  *See* RA Mem. at 9 n.9.  And yet, in its summary order in *Stephenson*, the Second Circuit relied on *White* as well.

*Stephenson* was not a member of a "'settled and particularized class'"[40]; rather, he was "nothing more than a 'prospective limited partner[], unknown at the time and who might be induced to join [the partnership].'"[41]  In contrast, plaintiffs are "members of a select group of qualified investors," and — for all the reasons set forth in the May 4 Opinion — are part of a "settled and particularized class" such that the known party prong of the *Credit Alliance* test is met.[42]

### C.   The Special Relationship Between the Rating Agencies and Defendants

The Rating Agencies argue that the May 4 Opinion's finding of a "special relationship" between them and the plaintiffs is "contrary to all recent New York law."[43]  In making this argument, the Rating Agencies cite the same cases and make the same arguments as they did in their memoranda of law supporting their motions to dismiss.  The *only* "new" argument they make is that, in the May 4 Opinion, I mischaracterized a pair of district court cases.[44]  Even were

---

[40]   *King County*, 2012 WL 1592193, at *10 (quoting *White,* 43 N.Y.2d at 363).

[41]   *Stephenson*, 2012 WL 1764191, at *3 (quoting *White,* 43 N.Y.2d at 361).

[42]   *King County*, 2012 WL 1592193, at *10.

[43]   RA Mem. at 7.

[44]   *See id.* at 7-8.

they correct, these district court cases are not controlling law, and my

characterization of them was not central to my May 4 Opinion.  Thus, this

argument falls well short of the standard for a motion for reconsideration, and I

need not address it.

> ### D.    Certification Pursuant to 28 U.S.C. § 1292(b)

Regardless of whether an order "involves a controlling question of

law" or whether it presents a question for "which there is substantial ground for

difference of opinion," an interlocutory appeal pursuant to section 1292(b) is not

warranted unless it would "materially advance the ultimate termination of the

litigaiton."[45]  Here, even if plaintiffs' negligent misrepresentation claims were

dismissed, the litigation would proceed on plaintiffs' fraud claims.  Thus, the

standard set forth in section 1292(b) has not been met, and there is no reason to

depart from this circuit's "general aversion"[46] to the piecemeal litigation that

results when certification is granted.

## V.    CONCLUSION

For the foregoing reasons, defendants' motions for reconsideration are

denied.  The Clerk of the Court is directed to close these motions in the following

---

[45]    28 U.S.C. § 1292(b).

[46]    *AroChem*, 176 F.3d at 619.

15

cases:  [Docket Nos. 407, 410, and 419] in 08 Civ. 7508; [Docket Nos. 245, 248,

and 257] in 09 Civ. 8387.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 7, 2012

16

**- Appearances -**

**For Plaintiffs Abu Dhabi Commercial Bank, SEI Investments Company, Bank Hapoalim B.M, Bank Sinopac, Commerzbank AG, Commonwealth of Pennsylvania Public School Employees' Retirement System, Deutsche Postbank AG, Global Investment Services Limited, Gulf International Bank B.S.C., KBL European Private Bankers S.A., National Agricultural Cooperative Federation, SEI Investment Strategies, LLC, SFT Collective Investment Fund, State Board of Administration of Florida, The Bank of N.T. Butterfield & Son Limited, King County, Washington and Iowa Student Loan Liquidity Corporation:**

Daniel S. Drosman, Esq.
Jessica T. Shinnefield, Esq.
Darryl J. Alvarado, Esq.
Anne L. Box, Esq.
Patrick J. Coughlin, Esq.
Nathan R. Lindell, Esq.
David C. Walton, Esq.
X Jay Alvarez, Esq.
Christina A. Royce, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, California 92101
(619) 231-1058

Luke O. Brooks, Esq.
Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111
(415) 288-4545

Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
Post Montgomery Center
1 Montgomery Street, Suite 1800
San Francisco, California 94104
(415) 288-4545

Samuel H. Rudman, Esq.
Jarrett S. Charo, Esq.
David A. Rosenfeld, Esq.
Robert M. Rothman, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, New York 11747
(631) 367-7100

Marc Ian Gross, Esq.
Pomerantz Haudek Block Grossman &
Gross LLP
100 Park Avenue, 26th Floor
New York, NY 10017
(212) 661-1100

**For Defendants Morgan Stanley & Co., Inc. and Morgan Stanley & Co. International Limited:**

James P. Rouhandeh, Esq.
Antonio Jorge Perez-Marques, Esq.
Jessica L. Freese, Esq.
William R. Miller, Jr., Esq.
Christopher J. Roche, Esq.
Andrew D. Schlichter, Esq.
Davis Polk & Wardwell L.L.P.
450 Lexington Avenue
New York, NY 10017
(212) 450-4559

**For Defendants Moody's Investors Service Limited and Moody's Investors Service, Inc.**

James J. Coster, Esq.
Joshua M. Rubins, Esq.
Justin E. Klein, Esq.
James J. Regan, Esq.
Aaron M. Zeisler, Esq.
Mario Aieta, Esq.
Dai Wai Chin Feman, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200

**For Defendant The McGraw Hill Companies, Inc. d/b/a Standard & Poor's Rating Services**

Dean I. Ringel, Esq.
Andrea R. Butler, Esq.
Floyd Abrams, Esq.
Jason M. Hall, Esq.
Brian T Markley, Esq.
Tammy L. Roy, Esq.
Adam N. Zurofsky, Esq.
David Owen, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

**For Defendant Fitch, Inc.**

Andrew J. Ehrlich, Esq.
Martin Flumenbaum, Esq.
Roberta A. Kaplan, Esq.
Mark S. Silver, Esq.
Tobias J. Stern, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3166

18