UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ————————————————— x | |
| ABU DHABI COMMERCIAL BANK, et al., Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 1:08-cv-07508 |
| | CLASS ACTION |
| Plaintiffs, | |
| | PLAINTIFF SEI INVESTMENTS COMPANY'S MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 17, 2012 ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| MORGAN STANLEY & CO. INCORPORATED, et al., | |
| Defendants. | |
| ————————————————— x | |

757641_1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................1

II.     ARGUMENT ..................................................................................................3

      A.      The Court Overlooked Evidence that, but for the False Ratings, CMA
               Could Not Have Purchased Cheyne Notes on Behalf of the SEI Funds.................3

      B.      The Court Overlooked Evidence that CMA's Credit Analysis Relied on
               the Ratings .........................................................................................7

      C.      The Court Overlooked Evidence that CMA Reached the Same Credit
               Conclusion as S&P and Moody's .........................................................9

III.    CONCLUSION................................................................................................10

757641_1

## I.      INTRODUCTION

Plaintiff SEI Investments Company ("SEI") respectfully submits this memorandum of law in support of its motion, pursuant to Southern District of New York Local Rule 6.3 ("Local Rule 6.3"), seeking reconsideration of the Court's dismissal of SEI in the August 17, 2012 Opinion and Order (*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, No. 08 CIV. 7508 SAS, 2012 WL 3584278 (S.D.N.Y. Aug. 17, 2012) (the "Order")).

Motions for reconsideration are governed by Local Rule 6.3 and are left to the sound discretion of the court.  "A motion for reconsideration is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  A motion for reconsideration may also be granted to "'correct a clear error or prevent manifest injustice.'"  *Medisim Ltd. v. BestMed LLC*, No. 10 CIV. 2463, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012).

In the Order, the Court held that "SEI has provided no evidence that the actual ratings issued by Moody's and S&P were a substantial factor in CMA's decision to invest."[1]  Order at *17. Reconsideration should be granted because, in reaching this conclusion, the Court overlooked evidence submitted by SEI and erred by failing to ""construe the facts in the light most favorable to [SEI]"" and ""resolve all ambiguities and draw all reasonable inferences against [defendants].""  Order at *3;[2] February 8, 2012 Hearing Tr. at 14-16, attached hereto as Ex. 1.

---

[1]      "CMA" refers to Columbia Management Advisors, LLC, the sub-advisor that purchased Cheyne Notes on behalf of three SEI money market funds, SEI Liquid Asset Trust Prime Obligation Fund ("SLAT Prime"), the SEI Daily Income Trust Money Market Fund ("SDIT Money Market") and the SEI Daily Income Trust Prime Obligation Fund ("SDIT Prime") (collectively, the "SEI Funds").

[2]      Unless otherwise noted, all internal citations are omitted, all emphasis is added, and all "¶__" references are to Plaintiffs' Response to Defendants' Joint Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (Dkt. No. 385).

First, in holding that CMA's analysis of the Cheyne notes did not rely on the ratings, the Court overlooked CMA's testimony that the AAA/Aaa ratings assigned to Cheyne MTNs were a "substantial factor" and a "big factor" in CMA's purchase decision (¶23(d), (j) (citing Quistberg Depo. at 244:14-15, 255:16-19, 256:16-19)).  Instead, the Court relied on evidence that was not cited by either party to conclude that CMA "[c]ould" have considered the notes if they did not have the assigned ratings (Order at *17 n.243).  The evidence that was cited, however, establishes that without the assigned ratings, the notes "wouldn't have been looked at."  ¶23(d) (citing Quistberg Depo. at 256:16-19).

Second, the Court interpreted SEI's testimony that CMA was required to rely on the ratings to mean "only that 'a rating' – and not necessarily high ratings, or the ratings actually issued by the Rating Agencies – was required before CMA could purchase a note." Order at *17.  This conclusion misapprehended SEI's testimony, which was based on SEI's investment guidelines and the legal requirements of Rule 2a-7 of the Investment Company Act of 1940 ("Rule 2a-7"), which restricted the SEI Funds from purchasing anything other than the highest-rated securities.  The conclusion also overlooked SEI's sworn declaration stating that the investment guidelines governing CMA's purchase required CMA to rely on the *assigned* ratings, and that CMA could not have purchased the MTNs on behalf of SEI without the *assigned* ratings.  ¶23(a) (citing Declaration of Plaintiffs Regarding Reliance in Support of Plaintiffs' Opposition to Defendants' Joint Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(c) (Dkt. No. 381) ("Reliance Decl.")).

Third, the Court overlooked CMA's investment memorandum analyzing Cheyne, which establishes that CMA's analyst did, in fact, substantially rely on Moody's and S&P's ratings (¶23(b) (citing Ex. 294 (Quistberg) ("Cheyne Memo")).

Fourth, the Court resolved conflicting testimony in defendants' favor by accepting

defendants' contention that CMA disagreed with the ratings (Order at *17) and overlooking or rejecting CMA's contrary testimony that its internal analysis resulted in the same credit conclusion as reflected by defendants' false ratings – that Cheyne's notes were "Tier 1."  ¶23(h) (citing Quistberg Depo. at 255:21-25).

When all of the evidence submitted by SEI is considered, and all ambiguities and inferences are drawn in SEI's favor, as required, there is a triable issue of fact that CMA relied on the false ratings in making its decision to purchase Cheyne notes for the SEI Funds.  Accordingly, SEI's motion for reconsideration should be granted.

## II.   ARGUMENT

### A.   The Court Overlooked Evidence that, but for the False Ratings, CMA Could Not Have Purchased Cheyne Notes on Behalf of the SEI Funds

In the Order, the Court did not address CMA's testimony that "[i]n the context of 2a-7, there's a need to have a determined minimum of credit risk, and *formal ratings* from Moody's or the major NRSROs, rating agencies *are important*. . . . So from a 2a-7 perspective, there is – *it is a big factor*."[3] ¶23(j) (citing Quistberg Depo. at 244:14-15, 255:16-19).  Additionally, the Court cited but did not credit testimony from CMA that "if a deal . . . were to come to market and not have a Tier 1 rating from Moody's, S&P or an expectation that it couldn't get a rating like that, then it *wouldn't be looked at*.  As a preliminary screen.  Not the only factor, but a *substantial factor*, in my opinion.  It's a preliminary review."  Order at *17 n.239 (citing Quistberg Depo. at 256:16-19).

The reason "formal ratings" from NRSROs are "important" and "a big factor" is that money market funds governed by Rule 2a-7 can only purchase rated securities that have one of the two

---

[3]    SEI believes the reason the Court overlooked this evidence is because SEI divided its reliance argument into two sections, one on page 26 of the opposition brief and the other on page 29. The Order did not address any of the evidence that was only referenced on page 29, including the foregoing testimony.

highest possible short term ratings.  Rule 2a-7; Motion for Leave to File Declarations in Support of

SEI Investments Company's and Commerzbank AG's Motions for Reconsideration Pursuant to

Local Rule 6.3, Ex. A, filed herewith ("Barto Decl."), ¶¶14, 15.[4]  Of those securities, **95%** were

required to be rated Tier 1, *i.e.*, have the top short term rating (A-1/P-1).  Rule 2a-7.

The investment guidelines governing the SEI Funds were even more restrictive.  Reliance

Decl., ¶3; Barto Decl., ¶¶5-13, Ex. A (SLAT Prospectus) at SEI-e01579671, SEI-e01579688, Ex. B

(SDIT Prospectus) at SEI-e01579933, SEI-e01579316 ("With respect to credit quality and maturity,

these guidelines are more restrictive than the Investment Company Act rules applicable to money

market funds.").  Pursuant to the guidelines, none of the SEI Funds were permitted to invest in rated

securities unless the securities had the highest possible rating.  Barto Decl., ¶¶9, 12.  The SDIT

Prospectus explicitly stated in 2006 and 2007 that "the Fund[s] invest[] only in first-tier securities"

Barto Decl., ¶11.  Furthermore, at the time CMA purchased Cheyne Notes on behalf of SDIT Money

Market and SDIT Prime, both of those funds were rated Aaa by Moody's and SDIT Prime was also

rated AAAm by S&P.  Barto Decl., ¶13.  In order to maintain these ratings, SDIT Money Market

and SDIT Prime could only hold Tier 1 securities.  *Id*.  Finally, at the time of the investments,

Rule 2a-7 prohibited money market funds from holding more than 1% in Tier 2 securities from the

same issuer.  Barto Decl., ¶15.  Pursuant to this rule, ***all but one of CMA's six Cheyne purchases***

***for SEI – or $232 million of the $282 million notes purchased – had to hold top ratings as a***

***matter of law***.  Barto Decl., ¶16.

Accordingly, SEI's deposition testimony that CMA was "'required to rely on the rating

---

[4]     Plaintiffs seek to submit the Barto Decl. to explain in more detail the reasons why, as set
forth in plaintiffs' Reliance Decl., CMA was required "to rely on the ratings assigned to the Rated
Notes" and "could not have purchased the Rated Notes on behalf of . . . SEI without the assigned
ratings."  Reliance Decl., ¶3.

agencies via Rule 2a-7'" does not simply mean that "CMA was not authorized to purchase unrated notes" (Order at *17), but instead that the notes had to have the ***highest possible ratings***, *i.e.*, the same ratings defendants assigned to the Cheyne notes.  Even if there were ambiguity on this point in SEI's deposition testimony, it would properly be construed against defendants.  Order at *3-*4.  In any event, there is no ambiguity at all in SEI's reliance declaration, which the Court overlooked:

> The investment guidelines governing the investment sub-advisors' provision of investment advisory services and governing the purchase of the Rated Notes on behalf of . . . SEI required the investment sub-advisors to rely on the ratings ***assigned*** to the Rated Notes.  The investment sub-advisors [CMA] could not have purchased the Rated Notes on behalf of . . . SEI without the ***assigned*** ratings.  The ratings were a substantial factor in these investment decisions.

Reliance Decl., ¶3.

SEI's reliance declaration by itself is enough to create a triable issue of fact.  On February 8, 2012, the Court held a telephonic hearing to resolve plaintiffs' request for leave to file additional declarations so that each plaintiff could individually address defendants' reliance arguments.  Ex. 1. The Court denied plaintiffs' request and instructed the fifteen plaintiffs to file a joint declaration limited to three pages.  *Id.*  During the hearing, counsel for plaintiffs raised the precise issue on which the Court dismissed SEI, and the Court stated that a single declaration from all plaintiffs stating that the ratings were a factor in the investment decision would be sufficient to survive summary judgment:

> [MR. DROSMAN:]  . . . [I]t is extremely important that we be permitted to provide at least one declaration per plaintiff so that they have an opportunity to explain to the court, provide the court with a proffer of evidence that they would give at trial.
>
> THE COURT:  What do they have to say other than, "I relied on the credit rating when I made this purchase"?
>
> MR. DROSMAN:  They need to discuss their reliance.
>
> THE COURT:  What do they have to say, Mr. Drosman?  "I relied.  That is one of the things I relied on when I made this purchase."  That's their statement.  That could be one affidavit.  The following 15 plaintiffs all state under oath and have signed this

- 5 -

declaration at the end that they relied in part on the rating for this vehicle when they bought it, one sentence, 15 signatures.

MR. DROSMAN:  I am not sure it is that simple.

THE COURT:  I am not sure it is not.  I am not sure it matters what you think if I am satisfied that puts the fact in dispute.  You won, you know?

*      *      *

You said you don't think it is that simple, but I am not trying a case on summary judgment.  I have to draw every inference in favor of the non-moving party if it swears under oath to reliance at least in part.  That is the reliance argument.  It said so.  Who am I to say they're lying?  They say they relied, so they relied.  So reliance isn't going to be easy for the defendant.

Causation is trickier, that is, I admit that is trickier, but what do you want to say about reliance other than if they're willing to swear under oath they relied at least in part on the credit rating in making this purchase, the problem is maybe some of them have said the opposite in deposition, I don't know.  If somebody already said under oath I didn't pay the least bit of attention to the credit rating and it meant nothing to me, you have a hard road to hoe if somebody already said that.

MR. DROSMAN:  Your Honor, this is one example of the distortion.  There was an investment advisor when the plaintiffs who had guidelines that required them to invest in only AAA instruments.

THE COURT:  Right.

MR. DROSMAN:  That is why they would have cited this stuff to you and persuaded you our clients didn't rely on the ratings when, in fact, that is not the case.

THE COURT:  I am still saying on reliance, if they swear so under oath, what is there to say?  It is for another day for somebody to believe them or not.  I can't.

Ex. 1 at 14:9-16:19; *see id.* at 26:24-27:1.

SEI's 30(b)(6) designee, James Smigiel, stated in his declaration that SEI required CMA "to **rely on the ratings** assigned to the Rated Notes" and that CMA "could not have purchased the Rated Notes on behalf of . . . SEI **without the assigned ratings**."  Reliance Decl., ¶3.  Mr. Smigiel's deposition testimony is entirely consistent.  Accordingly, there is a triable issue of fact.

The Court erred further in finding that CMA "**could** consider notes which lacked a 'Tier 1'

rating." Order at *17 (emphasis in original). The testimony relied on by the Court to support this conclusion was not cited or relied on by either party. There was a reason: the statement, which was given by a 30(b)(6) witness who was not involved in CMA's Cheyne purchases (or even employed by CMA at the time those investments were made), does not apply to the SEI Funds or the relevant Cheyne purchases. Although it may be theoretically possible that some money market fund managed by CMA could have purchased a small percentage of Tier 2 notes, as discussed above, the guidelines governing the SEI Funds prohibited such investments.

In light of the Court's February 8, 2012 ruling, and given that the Court overlooked SEI's declaration and other evidence establishing that CMA was required to, and did, rely on the ratings assigned to the Rated Notes, reconsideration is necessary to avoid a manifest injustice. Order at *17 (evidence supporting an inference that an investment advisor "would not have invested in Cheyne if not for the ratings is sufficient to create an issue of fact"); *see also id.* at *16 (evidence that investment guidelines required investment advisor to "rely on ratings" and "'[t]he overall weighted-average rating of the portfolio must be A2/A or better'" is sufficient).

### B.   The Court Overlooked Evidence that CMA's Credit Analysis Relied on the Ratings

Although the Court found that "CMA testified that . . . its own analysts did an extensive analysis which did not rely on and was independent of the ratings" (Order at *17), CMA never testified that its analysts did not rely on the ratings. Instead, the Court drew this inference from CMA's testimony that its analysts "'conduct[] their own independent analysis of *credit factors* that they deem important'" and viewed "'independence'" and "'research'" as strengths. Order at *17 n.242. As the Court correctly held when analyzing the reliance of other plaintiffs, conducting an independent credit assessment does not negate reliance on the ratings. Order at *16, *18.

Furthermore, the Court overlooked evidence submitted by SEI that one of the primary "credit

- 7 -

factors" CMA's analyst considered was, in fact, the false ratings assigned by Moody's and S&P. In the Order, the Court did not address CMA's Cheyne Memo. ¶23(b) (citing Cheyne Memo). When properly considered, the Cheyne Memo establishes that defendants' false ratings were integral to CMA's credit analysis. *Id.* In fact, the first data points set forth in the Cheyne Memo were the short term (A-1+/P-1) and long term (AAA/Aaa) ratings assigned by S&P and Moody's. *Id.* at CMA0024003. CMA also highlighted the top ratings in its "Opinion Summary," noting that Cheyne "currently issues US dollar denominated, 'A-1+/P-1' rated, asset backed commercial paper (ABCP), and 'AAA/Aaa' rated, asset backed, Medium Term Notes (MTN)." *Id.*; *see also* Quistberg Depo. at 267:19-268:16. The Cheyne Memo provides clear evidence that CMA's credit analysis was heavily reliant on defendants' false ratings:

- CMA concluded that Cheyne's "subordination" was "strong" based on defendants' false ratings. *Id.* at CMA002405. ("Cheyne employs a subordinate debt structure to achieve ***high credit ratings from the rating agencies*** and provide credit enhancement to its senior note holders. Cheyne's subordination ***is provided through 'A/A3' rated Mezzanine Capital (MC) Notes*** and unrated Junior Capital (JC) Notes.").

- CMA explicitly relied on the Rating Agencies' models, tests and surveillance to gain comfort that the Senior Notes had adequate loss protection and appropriate leverage. *Id.* ("To maintain appropriate levels of enhancement and leverage, Cheyne performs a series ***of rating agency specified tests*** on a daily basis.").

- In concluding that Cheyne's liquidity was "strong," CMA relied on the rating agencies' assurance that Cheyne was protected by $1.266 in Liquidity Eligible Assets "which ***the rating agencies*** acknowledge to be highly liquid and easily converted to cash in the event of a program liquidity crisis." *Id.*[5]

---

[5]    CMA also noted that, "[t]hese LEA's typically include more traditional collateral such as asset backed securitizations of Student Loans, Credit Cards, and Prime Residential Mortgages." Cheyne Memo at CMA0024005. By the time CMA wrote the Cheyne Memo, however, Morgan Stanley had successfully pressured the rating agencies to change its definition of LEA's for the Cheyne SIV to include subprime HELs – a non-liquid security. ¶3(m)-(n) (citing Ex. 278; Drennan 3/1/11 Depo. at 465:1-466:4; Ex. 51). Defendants actively concealed the change from investors, including CMA. Quistberg Depo. at 290:11-21.

- CMA concluded based on the portfolio's ratings that "Cheyne has very strict eligibility criteria for its investment portfolio." Cheyne Memo at CMA0024006.

- CMA rated Cheyne's "Asset Quality" as "Very Strong" based entirely on the false ratings assigned to Cheyne's underlying assets. *Id*. at CMA0024006, 11.

- CMA's asset diversification analysis noted that "Obligor concentration limits are **determined based on the credit rating of the investment**. *Id*. at CMA 0024006.

The Cheyne Memo does not contain a single statement suggesting that the rating agencies' analysis or methodologies were incorrect or could not be relied on. To the contrary, CMA explicitly stated that the Cheyne Memo "is based upon information or sources **we believe to be reliable**." *Id*. at CMA 0024007. CMA's corporate designee testified that when evaluating securities for 2a-7 funds like the SEI Funds, formal ratings are "important in several respects" and that "Moody's and S&P are the two big guys and certainly a major rating agency to consider, both for 2a-7 and overall credit analysis." Quistberg Depo. at 252:23-253:18. As Mr. Quistberg explained, "**their reports are used as part of a process for an analyst or part of inputs for an analyst to determine his or her ultimate credit rating. . . . I would call that an important part of the analysis**." *Id*. at 259:9-260:11.[6]

### C. The Court Overlooked Evidence that CMA Reached the Same Credit Conclusion as S&P and Moody's

The Court resolved conflicting testimony in defendants' favor that "Defendants provide[d] evidence that CMA expressly disagreed with the ratings." Order at *17. The holding improperly overlooked or rejected contrary testimony submitted by SEI establishing that CMA's internal credit

---

[6]     Although this testimony was not specifically quoted in plaintiffs' opposition due to space limitations and the Court's finding that a declaration would be enough to establish reliance, it was contained in the materials submitted to the Court. In light of the Court's citation to testimony that was contained in the materials submitted to the Court but not cited by either party, SEI believes that citation to this testimony is appropriate for clarification. *See also* Quistberg Depo. at 177:19-178:3 (CMA had various reports prepared by Moody's or S&P with respect to Cheyne in its files); 274:24-275:17 (CMA's asset-backed credit approval check-list included receipt of Moody's and S&P credit reviews); 277:5-25 (adding Cheyne to Moody's and S&P tracking database was a step in the CMA credit review); 299:3-6 (review of rating agency reports was part of CMA evaluation process).

analysis resulted in the same conclusion as the rating agencies – that the notes warranted the highest possible rating:

> Q.  Well, is it your understanding that the Cheyne SIV notes that CMA purchased for the SEI funds had Tier 1 ratings? . . .
>
> A.   MR. [Quistberg]:  Based on the [CMA] credit report there *was conclusion by CMA that they were Tier 1 ratings*.  There's also an indication that Moody's and S&P, at that time or before, had rated Cheyne *Tier 1*.  Quistberg Depo. at 255:17-25.

Plaintiffs believe that the Court either (1) overlooked this evidence because, as discussed above, it was cited on page 29 of the opposition (rather than page 26), or (2) disregarded the evidence as irrelevant based on defendants' false representation that "'Tier 1' encompassed ratings as low as *single* A."  Defs' Reply at 16 (emphasis in original).[7]  In their reply brief, defendants conceded (as they had to) that CMA "[described] the ratings as 'Tier 1'" but misrepresented to the Court what that meant by falsely asserting that "'Tier 1' encompassed ratings as low as *single* A."  *Id*. (citing 56.1 ¶96; CMA at 258:20-259:3) (emphasis in original).  To the contrary, the evidence defendants cited to support that incorrect conclusion actually establishes that "A top tier rating [under 2a-7] is defined as *the top ratings category per Moody's or S&P*.  So, for example, A-1+, A-1, are the top tier short-term ratings for S&P.  P-1 is the top tier rating for Moody's."  Quistberg Depo. at 258:24-259:3.  Defendants' attempt to pass off "A-1+" – the highest possible short term rating – as "single A" is inexcusable.  In any event, if CMA's analysts had disbelieved the ratings, they would not have been permitted to purchase the Cheyne notes.  Reliance Decl., ¶4.

## III.    CONCLUSION

For the foregoing reasons, SEI's motion for reconsideration should be granted.

---

[7]     "Defs' Reply" refers to Defendants' Joint Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(c) (Dkt. No. 395).

DATED:  August 31, 2012   Respectfully submitted,

        ROBBINS GELLER RUDMAN
          & DOWD LLP
        LUKE O. BROOKS
        JASON C. DAVIS


           s/ LUKE O. BROOKS
           LUKE O. BROOKS

        Post Montgomery Center
        One Montgomery Street, Suite 1800
        San Francisco, CA  94104
        Telephone:  415/288-4545
        415/288-4534 (fax)
        lukeb@rgrdlaw.com
        jdavis@rgrdlaw.com

        ROBBINS GELLER RUDMAN
          & DOWD LLP
        MICHAEL J. DOWD
        DANIEL S. DROSMAN
        DARRYL J. ALVARADO
        655 West Broadway, Suite 1900
        San Diego, CA  92101-3301
        Telephone:  619/231-1058
        619/231-7423 (fax)
        miked@rgrdlaw.com
        dand@rgrdlaw.com
        dalvarado@rgrdlaw.com

        ROBBINS GELLER RUDMAN
          & DOWD LLP
        SAMUEL H. RUDMAN
        58 South Service Road, Suite 200
        Melville, NY  11747
        Telephone:  631/367-7100
        631/367-1173 (fax)
        srudman@rgrdlaw.com

        Attorneys for Plaintiffs

757641_1

- 11 -

POMERANTZ GROSSMAN HUFFORD
  DAHLSTROM & GROSS LLP
MARC I. GROSS
TAMAR A. WEINRIB
600 Third Avenue
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
migross@pomlaw.com
taweinrib@pomlaw.com

Additional Attorneys for Plaintiff State Board of
Administration of Florida

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 31, 2012.

s/ LUKE O. BROOKS
LUKE O. BROOKS

ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: lukeb@rgrdlaw.com

757641_1

## Mailing Information for a Case 1:08-cv-07508-SAS-DCF

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Mario Aieta**
  maieta@ssbb.com,managingclerk@ssbb.com,marioaieta@gmail.com,dgerard@ssbb.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Andrea Rose Butler**
  abutler@cahill.com

- **Dai Wai Chin Feman**
  dchinfeman@ssbb.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com

- **Patrick Joseph Coughlin**
  patc@rgrdlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Michael Joseph Dowd**
  miked@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,jillk@rgrdlaw.com,E_File_SD@rgrdlaw.com,nlindell@rgrdlaw.com,tholindrake@rgrdlaw.com,jcharo@rgrdlaw.com

- **Jessica Lynn Freese**
  jessica.freese@davispolk.com

- **Charles Alan Gilman**
  cgilman@cahill.com

- **Marc Ian Gross**
  migross@pomlaw.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Jeffrey B. Korn**
  jkorn@willkie.com

- **William Ross Miller , Jr**
  william.miller@dpw.com,ecf.ct.papers@dpw.com

- **Tariq Mundiya**
  maosdny@willkie.com,jsim@willkie.com,tmundiya@willkie.com

- **David Owen**
  dowen@cahill.com

- **Antonio Jorge Perez-Marques**
  antonio.perez@dpw.com,ecf.ct.papers@dpw.com

- **Dean I. Ringel**
  DRingel@Cahill.com,JHall@cahill.com

- **Christopher Joseph Roche**
  croche@kaplanrice.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com,ecf.ct.papers@davispolk.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com,jdoty@ssbb.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew Dickens Schlichter**
  andrew.schlichter@dpw.com

- **Jessica T. Shinnefield**
  jshinnefield@rgrdlaw.com

- **Aaron Mark Zeisler**
  azeisler@ssbb.com,managingclerk@ssbb.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**David C. Walton**
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301