UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

ABU DHABI COMMERCIAL BANK, et al.,
Individually and On Behalf of All Others
Similarly Situated,

                    Plaintiffs,

    vs.

MORGAN STANLEY & CO.
INCORPORATED, et al.,

                    Defendants.

—————————————————————— x

:  Civil Action No. 1:08-cv-07508
:
:  CLASS ACTION
:
:  PLAINTIFFS THE BANK OF N.T.
:  BUTTERFIELD & SON LIMITED'S AND
:  COMMERZBANK AG'S MOTION FOR
:  RECONSIDERATION OF THE
:  AUGUST 17, 2012 OPINION AND ORDER
:  ON DEFENDANTS' MOTION FOR
:  SUMMARY JUDGMENT
:
:

757626_1

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................1

II.     BUTTERFIELD AND COMMERZBANK HAVE STANDING .....................................2

III.    BMMF HAS RATIFIED BUTTERFIELD'S CLAIMS......................................................6

IV.     CONCLUSION...............................................................................................................10

## I.     INTRODUCTION

The Bank of N.T. Butterfield & Son Limited ("Butterfield") and Commerzbank AG ("Commerzbank") respectfully move pursuant to Southern District of New York Local Rule 6.3 ("Local Rule 6.3") for reconsideration of the Court's August 17, 2012 Opinion and Order (*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, No. 08 CIV. 7508 SAS, 2012 WL 3584278 (S.D.N.Y. Aug. 17, 2012) (the "Order")) finding that each lacked standing to pursue claims in this litigation.

Motions for reconsideration are governed by Local Rule 6.3 and are left to the sound discretion of the court.  "A motion for reconsideration is appropriate where '"the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."'"  *Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463 SAS, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (Scheindlin, J.).[1] For at least three reasons, Butterfield's and Commerzbank's motion for reconsideration should be granted to '"'"correct a clear error [and] prevent manifest injustice."'"' *Id.*

First, the Court, in finding that Butterfield and Commerzbank lack standing to pursue claims in this action, overlooked controlling law holding that the transfer of an entire interest through the purchase at par of an impaired and devalued note by the transferee, resulting in zero losses to the transferor, is sufficient to transfer all causes of action relating to that interest.  Second, the Court overlooked binding precedent holding that where the transferor of an asset is no longer in existence, such as the entity from which Commerzbank purchased the Cheyne notes at par, all claims related to that asset are deemed to have transferred to the transferee.  Finally, the Court clearly erred in holding that the ratification by the real party in interest pursuant to Fed. R. Civ. P. 17 set forth in

---

[1]     Unless otherwise noted, all internal citations are omitted and all emphasis is added.

Butterfield's sworn statement submitted in opposition to summary judgment, cannot be effected after a complaint is filed.

## II.     BUTTERFIELD AND COMMERZBANK HAVE STANDING

Butterfield and Commerzbank have standing to pursue recovery related to the Cheyne notes acquired originally by their affiliated money market funds – Butterfield Money Market Fund ("BMMF") and Allianz Dresdner Daily Asset Fund ("DAF"), respectively – because both Butterfield and Dresdner[2] purchased the notes at 100% of par to ensure that BMMF and DAF, as money market funds, complied with Rule 2a-7 of the Investment Company Act of 1940's prohibition against holding downgraded securities.  *See* Declaration of Plaintiffs Regarding Reliance in Support of Plaintiffs' Opposition to Defendants' Joint Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(c) (Dkt. No. 381) ("Reliance Decl."), ¶¶7-8; *see also* Motion for Leave to File Declarations in Support of SEI Investments Company's and Commerzbank AG's Motions for Reconsideration Pursuant to Local Rule 6.3, Ex. B, filed herewith ("Williams Decl."), ¶4.[3] Butterfield's and Dresdner's overpayment for the notes prevented BMMF and DAF from suffering any losses on the Cheyne notes whatsoever.  *Id*.

In its Order, the Court overlooked cited case law holding that a transfer of "'all assets'" is "broad enough to encompass all causes of action owned by" the transferor.  *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 237 (S.D.N.Y. 2007).  In *Pro Bono Invs., Inc. v. Gerry*, the

---

[2]     Commerzbank, which merged with Dresdner in May 2009, acquired all of Dresdner's rights of action.  Order at *6.

[3]     The Williams declaration, while not submitted in support of Commerzbank's opposition to defendants' motion for summary judgment, explains in more detail the evidence of the transfer of claims from DAF to Dresdner, which evidence was included in plaintiffs' opposition brief and in the Reliance Decl.  Moreover, due to the limitation on the number and length of declarations plaintiffs were permitted to submit with their opposition brief, plaintiffs could not submit this declaration in connection with their opposition brief.  *See* February 8, 2012 Hearing Tr. at 26:24-27:1, attached hereto as Ex. 1 (limiting all 15 plaintiffs to one three-page declaration).

court found a transfer of the entirety of a debt sufficient to transfer "all claims, causes of action, and lawsuits belonging to" the transferor. No. 03 Civ. 4347 (JGK), 2008 WL 4755760, at *10 (S.D.N.Y. Oct. 29, 2008); *see also Coastal Commercial Corp. v. Samuel Kosoff & Sons, Inc.*, 199 N.Y.S.2d 852, 855 (4th Dep't 1960) (claims assigned where "a completed transfer of the entire interest of the assignor in the particular subject of assignment"). Thus, all claims related to the Cheyne notes were transferred to Butterfield and Dresdner when each acquired 100% of BMMF's and DAF's holdings in a "'perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned.'" *Brandoff v. Empire Blue Cross & Blue Shield*, 707 N.Y.S.2d 291, 293 (1999); *see also* Williams Decl., ¶5 (testifying that the intent was that any and all claims "would automatically be transferred from DAF to . . . Dresdner").

The fact that all losses sustained as a result of the collapse of the Cheyne SIV were borne entirely by Butterfield and Dresdner, which ***overpaid*** for the downgraded and devalued Cheyne notes by purchasing those notes from BMMF and DAF at 100% of par, is further evidence that any and all claims related to the Cheyne notes were transferred to Butterfield and Dresdner. *See* Reliance Decl., ¶¶7-8; *see also* Williams Decl., ¶5 ("The transfer of any and all claims related to the Notes from DAF to the Dresdner Grand Cayman Branch is further evidenced by the fact that the losses sustained as a result of the decline in value of the Notes were borne solely by the Dresdner Grand Cayman Branch, which purchased the downgraded and devalued Notes from DAF at par rather than some lesser amount, which would have been appropriate had any rights with respect to the Notes been retained by DAF."). Conversely, in *Advanced Magnetics*, the Second Circuit found testimony that purported assignors intended to cede their tort claims without receiving any value in return to be "'unworthy of belief.'" *Advanced Magnetics v. Bayfront Partners*, 106 F.3d 11, 15 (2d Cir. 1997); *accord* Williams Decl., ¶5 ("a retention of any of the rights normally appurtenant to a

- 3 -

security by the buyer or seller of such security would result in a lower purchase or sale price, as the case may be, of such security").

In these circumstances, "[i]t would make no sense for all of the [Cheyne notes] to have been transferred out of [BMMF and DAF] to [Butterfield and Dresdner] but to have left the right to bring claims and causes of action relating to those [Cheyne notes] in [BMMF and DAF] without any language suggesting that there was such a reservation." *Pro Bono Invs.*, 2008 WL 4755760, at *10; *see also Griffey v. New York Century Ins. Co.*, 100 N.Y. 417, 422 (1885) ("An assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another, and, unless in some way qualified, it is properly the transfer of one whole interest in an estate or chattel or other thing.").[4]

Because Butterfield and Dresdner "'paid [the] entire loss'" that would have otherwise been suffered by BMMF and DAF, they are "'the only real part[ies] in interest and must sue in [their] own name.'" *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116 (2d Cir. 2002) (quoting *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380-81 (1949)); *accord Reliant Airlines, Inc. v. County of Broome*, No. 90-CV-537, 1993 WL 276747, at *2 (N.D.N.Y. July 19, 1993) (noting that "once an insurer has compensated its insured for an entire loss . . . the insurer becomes the only real party in interest in the litigation"). This is true for another, independent reason: BMMF and DAF sustained no damages as a result of Butterfield's and Dresdner's purchases at par; thus, neither BMMF nor DAF would have standing to bring a suit in their own right. *See, e.g.*, *Premium Mortg. Corp. v. Equifax Info. Servs., LLC*, 583 F.3d 103, 108 (2d Cir. 2009) (damages a required element of

---

[4]    With limited exceptions, New York provides that "[a]ny claim or demand can be transferred," including common law fraud claims. New York General Obligation Law ("G.O.L."), §13-101. Moreover, for purposes of G.O.L. §13-101, "the term 'transfer' includes *sale*, assignment, conveyance, deed and gift" of a claim. *Id.* at §13-109. Here, the sale of the entirety of BMMF's and DAF's Cheyne notes at par included any and all claims related to those notes.

- 4 -

common law fraud under New York law); *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (providing that in order to have standing, "a plaintiff must have personally suffered an injury"). Here, the ***only*** parties that suffered damages in connection with BMMF's and DAF's Cheyne notes were Butterfield and Dresdner. *See, e.g.*, Reliance Decl., ¶¶7-8; Williams Decl., ¶5 ("Because DAF did not suffer a loss of any kind as a result of the purchase of the Notes by the Dresdner Grand Cayman Branch, DAF would have had no reason to retain the litigation rights with respect to the Notes and would not have been able to claim any damages with respect to the Notes.").

Furthermore, the Senior Counsel to and Secretary of DAF's investment advisor at the time of the transfer testified that, in connection with Dresdner's purchase of DAF's Cheyne notes, "it was understood and believed by all parties involved in the transaction that ***any and all claims, causes of action, rights, and/or obligations that might exist at the time of the sale or thereafter with respect to the Notes would automatically be transferred from DAF to the Dresdner Grand Cayman Branch*** along with the transfer of the Notes themselves." Williams Decl., ¶5. Such evidence removes all doubt that claims related to the Cheyne notes were transferred to Dresdner.

Finally, the Court overlooked controlling authority compelling the conclusion that Commerzbank has standing by virtue of the fact that DAF is no longer in existence. *See* Reliance Decl., ¶8; Williams Decl., ¶6. "A party about to become defunct has little incentive to reserve transactional rights when transferring its interests to its surviving parent corporation. This conclusion is also consistent with the general trend in New York toward adopting principles of free assignability of claims, including those of fraud." *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l. Bank*, 57 F.3d 146, 153 (2d Cir. 1995). Where, as here, "[a]ll of the [Cheyne notes] of [DAF] were transferred to [Dresdner]," it would "make[] no sense to conclude that the shell

of [DAF] retained any rights to sue." *Pro Bono Invs.*, 2008 WL 4755760, at *18; *see also Int'l Design Concepts, LLC v. Saks, Inc.*, 486 F. Supp. 2d 229, 237 (S.D.N.Y. 2007).

In sum, the acts and transactions surrounding the overpayment by Butterfield and Dresdner for BMMF's and (now-defunct) DAF's Cheyne notes evince """an intention of transferring the chose[s] in action"""" relating to those notes to Butterfield and Dresdner. *Banque Arabe*, 57 F.3d at 152.

## III.    BMMF HAS RATIFIED BUTTERFIELD'S CLAIMS

Rule 17(a) expressly provides for ratification by the "real party in interest" if there is any doubt as to whether a plaintiff is a real party in interest:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.   After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).[5]   The Second Circuit has held it an abuse of discretion to deny Rule 17 relief after a challenge is made to a plaintiff's standing. *Advanced Magnetics*, 106 F.3d at 20-21. Rule 17(a)(3) relief "should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Id.* at 20.

---

[5]      Although defendants challenged Butterfield's standing, "their unspoken premise was that [Butterfield] lacked standing because [BMMF] remained . . . the real party in interest." *Advanced Magnetics*, 106 F.3d at 20; *see also id.* (applying Rule 17 "because if [plaintiff] has no standing to pursue the claims of the selling shareholders, it is precisely because the selling shareholders are, with respect to those claims, the real parties in interest"); *Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corps.*, No. 91 CIV 2050 (SHS), 1998 WL 236227, at *6 (S.D.N.Y. Mar. 31, 1998) (rejecting attempt to distinguish real party in interest and lack of standing and noting that "the difference for our purposes is merely semantic"); *id.* (""Standing is similar to the real party in interest rule inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits.'").

The Court erred in holding that "a 'ratification' in a 2012 Reliance Declaration does not cure [Butterfield's] deficiency" (Order at *6) because Rule 17 contemplates that ratification occur **after** a complaint is filed and **after** an objection is made to a plaintiff's standing.  *See In re Vivendi Universal, S.A.*, 605 F. Supp. 2d 570, 584 (S.D.N.Y. 2009) ("*Advanced Magnetics* stands for the proposition that a standing defect at the commencement of suit does not require dismissal of the action with prejudice.").   "Given the Rule's proscription that after 'ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest,' it would be directly contrary to the Rule to bar **relation back** of such ratification, joinder or substitution."  *Id.* at 583.  Indeed, "[a] suit may proceed **to its conclusion** even where the plaintiff initially filing a complaint is not the real party in interest" if the defect is remedied through Rule 17's procedures.  *Berisford Metals Corp. v. M/V Copiapo*, 653 F. Supp. 419, 421 (S.D.N.Y. 1986).

Here, to the extent that BMMF retained any claims relating to the Cheyne notes after its sale to Butterfield at par, Barry Hanson, Director of BMMF, ratified "that **Butterfield is authorized to pursue recovery related to the CP and MTNs and BMMF agrees to be bound by any decisions or judgments in this action**."   Reliance Decl., ¶7.  Nothing more is required.  *See Wells Fargo Northwest Bank, Nat'l Ass'n v. Varig-S.A.*, No. 02 Civ. 6078 (JSR), 2003 WL 21508341, at *3 (S.D.N.Y. June 27, 2003) (ratification effective where the real party in interest, by affidavit, "confirm[ed] its approval of plaintiffs' exercise of remedies against [the defendant] . . . [and agreed] to be bound by any determination reached" in the litigation), *aff'd*, 108 F. App'x 6 (2d Cir. 2004).[6]

BMMF's ratification was timely effected on February 27, 2012, mere weeks after defendants' first objection to Butterfield's standing.  *See* Reliance Decl., ¶7 and accompanying

---

[6]     Because DAF is no longer in existence, it cannot ratify Commerzbank's claims.  This alone compels the conclusion that Commerzbank has standing.  *See, e.g.*, *Banque Arabe*, 57 F.3d at 153.

signature page; *see also* 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure: Civil 3d* §1555, at 575-76 (3d ed. 2002) ("What constitutes a reasonable time is a matter of judicial discretion and will depend upon the facts of each case.").  Defendants' first objection to Butterfield's standing was made in their January 23, 2012 motion for summary judgment.  Indeed, in the face of ***five*** complaints filed by Butterfield over the past ***two years***, defendants have never raised an objection to its standing, by way of a motion to dismiss or otherwise.  Defendants again failed to specify any objection to Butterfield's standing in their pre-summary judgment motion letter to the Court.  *See* Ex. 2, attached hereto.  And when the Court inquired about defendants' standing argument at the pre-motion conference, they similarly failed to identify any issue with Butterfield's standing.  *See* Ex. 3 at 12:25-13:8, attached hereto; *see also Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 1339489, at *3 (N.D. Ill. Apr. 18, 2012) (finding defendants failed to make a Rule 17(a) objection where, at a hearing, they "fail[ed] to assert it explicitly in response to [the] court's direct question about the parties' status").[7]

---

[7]    Any argument that defendants put Butterfield on notice of an "objection" to its status as real party in interest by virtue of a boilerplate standing affirmative defense in defendants' answers, which apparently applied to all 15 plaintiffs, misses the mark.  For example, in *Wielgus* the court found an affirmative defense regarding standing, even where, unlike here, it specified the specific plaintiffs who defendants believed lacked standing, to be insufficient to put plaintiffs on notice of an objection for purposes of Rule 17.  There, as here, "[n]othing in the affirmative defense . . . would have put [plaintiffs] on notice that they considered [some other party] to be the real party in interest."  *Id.*; *see also In re W.R. Grace & Co.*, 285 B.R. 148, 155 (Bankr. D. Del. 2002) (finding "boilerplate" affirmative defense stating that "'Plaintiffs' claims are barred to the extent Plaintiffs lack standing with respect to some or all of the causes of action asserted in the Complaint'" did not constitute an objection for purposes of Rule 17); *Signal Int'l LLC v. Miss. DOT*, 579 F.3d 478, 490 (5th Cir. 2009) (noting that Rule 17(a) defense must be raised "plainly").  *Alaska Russia Salmon Caviar Co., Inc. v. M/V* "*MARIT MAERSK,*" No. 98 CIV 7685 (DLC), 2000 WL 145124 (S.D.N.Y. Feb. 2, 2000), is not to the contrary.  There, the court found plaintiffs failed to timely comply with Rule 17 after defendants raised an objection to their standing in document requests and at a hearing before the court, at which time the court set a briefing schedule and specifically advised plaintiffs that any joinder of the real parties in interest "should not be delayed."  *Id.* at *4.  Despite the court's admonition, the *Alaska Russia* plaintiffs never joined or ratified the real parties in interest.  *Id.*

- 8 -

Moreover, Rule 17 "is intended in 'the interests of justice.'" *Adelphia*, 2011 WL 6434009, at

*4. "'Modern decisions are inclined to be lenient when an honest mistake has been made in

choosing the party in whose name the action is to be filed.'" *Id.* Indeed, Rule 17 relief should be

denied only where there is "no semblance of any reasonable basis for the naming of an incorrect

party." *Advanced Magnetics*, 106 F.3d at 20. Here, any mistake on the part of Butterfield as to its

standing was inadvertent. Even if Butterfield "erred in believing that their assignment agreements

had the legal effect of permitting the claims to be pursued in [its own name], . . . it would be unjust

to allow defendants to foreclose pursuit of [valid fraud claims] by taking advantage of that otherwise

inconsequential error." *Id.* at 21; Fed. R. Civ. P. 17, advisory committee notes (1966) (Rule 17 "is

intended to prevent forfeiture when determination of the proper party to sue is difficult or when an

understandable mistake has been made.").

Further, defendants would suffer no prejudice by BMMF's ratification, as it does "not alter

the substance of the action" in any way. *Park B. Smith, Inc. v. CHF Indus.*, 811 F. Supp. 2d 766,

773 (S.D.N.Y. 2011). Where, as here, "defendants had notice in the original complaint of the nature

of the claims against them, [Rule 17 relief] does not unfairly prejudice them." *Wiwa v. Royal Dutch

Petroleum Co.*, No. 96 Civ. 8386 (KMW) (HBP), 2009 WL 464946, at *10 (S.D.N.Y. Feb. 25,

---

Defendants' affirmative defense challenging plaintiffs' status as real party in interest was a third factor militating in favor of the *Alaska Russia* court's finding of undue delay. *Id.* Here, however, even had defendants moved to dismiss for lack of standing earlier, BMMF's ratification would still be timely. For example, in *Adelphia*, plaintiffs did not seek to remedy a standing defect until years after defendants raised a challenge to plaintiff's standing in a motion to dismiss. *In re Adelphia Commc'ns. Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2011 WL 6434009, at *4 (S.D.N.Y. Dec. 21, 2011). Nevertheless, the court held that a party faced with a Rule 17(a) objection is not required to "forthwith seek ratification, joinder or substitution at that party's peril, even if the party takes a different view of the validity of the objection; such a party is surely acting reasonably if it awaits the court's decision of the motion." *In re Adelphia Commc'ns. Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2009 WL 1490599, at *3 (S.D.N.Y. May 21, 2009). There is no undue delay here, where BMMF ratified Butterfield's claims **before** and within **two weeks** after the Court's ruling on defendants' motion challenging Butterfield's standing.

- 9 -

2009).  Ratification of Butterfield's claims, which have proceeded in this litigation for nearly two years, does not alter the action in any way.

Permitting ratification here is also the "'wiser answer to the problem of expediting trials and avoiding [the] unnecessary delay and expense of requiring an action to be started anew where a [ratification] is desired though the subject matter of the action[] remains identical.'" *Park B. Smith*, 811 F. Supp. 2d at 774.  Here, to the extent it retains any claims, BMMF could "file suit in its own name and the parties would soon be back in the same place." *Id.*; *see also* 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure: Civil 3d* §1554, at 563-64 (3d ed. 2002) ("A dismissal of an action for want of the real party in interest is not on the merits and should be framed so that it will not bar any action that the real party in interest might decide to bring at a later time."); *Vivendi*, 605 F. Supp. 2d at 585 (noting the inefficiencies of granting summary judgment for lack of standing on the basis that assignments were obtained post-filing of the complaint because plaintiff could simply re-file its action).

Finally, the purpose of Rule 17(a) is to prevent defendants from being subjected to subsequent suits based on the same transaction.  *Alaska Russia*, 2000 WL 145124, at *5.  Because BMMF has ratified Butterfield's claims and agreed to be bound by any judgment in this action, "there is no suggestion that the defendants will be exposed to the kind of potential double-liability that [Rule 17] is designed to prevent." *Wielgus*, 2012 WL 1339489 at *3.  This is especially true here, where BMMF did not suffer any losses in connection with their purchase of Cheyne notes. *See* Reliance Decl., ¶7.

## IV.   CONCLUSION

For the foregoing reasons, Butterfield's and Commerzbank's motion for reconsideration should be granted.

- 10 -

757626_1

DATED:  August 31, 2012                    Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           MICHAEL J. DOWD
                                           DANIEL S. DROSMAN
                                           DARRYL J. ALVARADO


                                                    s/ DARRYL J. ALVARADO
                                           _____
                                                   DARRYL J. ALVARADO

                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101-3301
                                           Telephone:  619/231-1058
                                           619/231-7423 (fax)
                                           miked@rgrdlaw.com
                                           dand@rgrdlaw.com
                                           dalvarado@rgrdlaw.com

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           SAMUEL H. RUDMAN
                                           58 South Service Road, Suite 200
                                           Melville, NY  11747
                                           Telephone:  631/367-7100
                                           631/367-1173 (fax)
                                           srudman@rgrdlaw.com

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           LUKE O. BROOKS
                                           JASON C. DAVIS
                                           Post Montgomery Center
                                           One Montgomery Street, Suite 1800
                                           San Francisco, CA  94104
                                           Telephone:  415/288-4545
                                           415/288-4534 (fax)
                                           lukeb@rgrdlaw.com
                                           jdavis@rgrdlaw.com

                                           Attorneys for Plaintiffs

- 11 -

757626_1

POMERANTZ GROSSMAN HUFFORD
  DAHLSTROM & GROSS LLP
MARC I. GROSS
TAMAR A. WEINRIB
600 Third Avenue
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
migross@pomlaw.com
taweinrib@pomlaw.com

Additional Attorneys for Plaintiff State Board of
Administration of Florida

757626_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 31, 2012.

s/ DARRYL J. ALVARADO
DARRYL J. ALVARADO

ROBBINS GELLER RUDMAN
&amp; DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: dalvarado@rgrdlaw.com

757626_1

## Mailing Information for a Case 1:08-cv-07508-SAS-DCF

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Mario Aieta**
  maieta@ssbb.com,managingclerk@ssbb.com,marioaieta@gmail.com,dgerard@ssbb.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Andrea Rose Butler**
  abutler@cahill.com

- **Dai Wai Chin Feman**
  dchinfeman@ssbb.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com

- **Patrick Joseph Coughlin**
  patc@rgrdlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Michael Joseph Dowd**
  miked@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,jillk@rgrdlaw.com,E_File_SD@rgrdlaw.com,nlindell@rgrdlaw.com,tholindrake@rgrdlaw.com,jcharo@rgrdlaw.com

- **Jessica Lynn Freese**
  jessica.freese@davispolk.com

- **Charles Alan Gilman**
  cgilman@cahill.com

- **Marc Ian Gross**
  migross@pomlaw.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Jeffrey B. Korn**
  jkorn@willkie.com

- **William Ross Miller , Jr**
  william.miller@dpw.com,ecf.ct.papers@dpw.com

- **Tariq Mundiya**
  maosdny@willkie.com,jsim@willkie.com,tmundiya@willkie.com

- **David Owen**
  dowen@cahill.com

- **Antonio Jorge Perez-Marques**
  antonio.perez@dpw.com,ecf.ct.papers@dpw.com

- **Dean I. Ringel**
  DRingel@Cahill.com,JHall@cahill.com

- **Christopher Joseph Roche**
  croche@kaplanrice.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com,ecf.ct.papers@davispolk.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com,jdoty@ssbb.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew Dickens Schlichter**
  andrew.schlichter@dpw.com

- **Jessica T. Shinnefield**
  jshinnefield@rgrdlaw.com

- **Aaron Mark Zeisler**
  azeisler@ssbb.com,managingclerk@ssbb.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
David C. Walton
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301
```