UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-------------------------------------------------------X

ABU DHABI COMMERCIAL BANK, KING
COUNTY, WASHINGTON, SEI
INVESTMENTS COMPANY, SEI
INVESTMENT STRATEGIES, LLC, THE
BANK OF N.T. BUTTERFIELD & SON
LIMITED, SFT COLLECTIVE INVESTMENT
FUND, DEUTSCHE POSTBANK AG,
GLOBAL INVESTMENT SERVICES
LIMITED, GULF INTERNATIONAL BANK
B.S.C., NATIONAL AGRICULTURAL
COOPERATIVE FEDERATION, STATE
BOARD OF ADMINISTRATION OF
FLORIDA, COMMONWEALTH OF
PENNSYLVANIA PUBLIC SCHOOL
EMPLOYEES' RETIREMENT SYSTEM,
BANK SINOPAC, BANK HAPOALIM B.M.,
COMMERZBANK AG, and KBL EUROPEAN
PRIVATE BANKERS S.A.,

**OPINION AND ORDER**

08 Civ. 7508 (SAS)

Plaintiffs,

- against -

MORGAN STANLEY & CO.
INCORPORATED, MORGAN STANLEY &
CO. INTERNATIONAL LIMITED, MOODY'S
INVESTORS SERVICE, INC., MOODY'S
INVESTORS SERVICE LTD., STANDARD
AND POOR'S RATINGS SERVICES and THE
McGRAW HILL COMPANIES, INC.,

Defendants.

-------------------------------------------------------X

1

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.      INTRODUCTION

          Plaintiffs are institutional investors asserting claims of fraud, aiding

and abetting fraud, and negligent misrepresentation arising from the 2007 collapse

of the Cheyne structured investment vehicle ("SIV").  Defendants are Morgan

Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited

(together, "Morgan Stanley") — the arranger/placement agent of the Cheyne SIV;

Moody's Investors  Service, Inc. and Moody's Investors Service Ltd. (collectively

"Moody's"); and Standard & Poor's Ratings Services and The McGraw Hill

Companies, Inc. (collectively "S & P," and, together with Moody's, the "Ratings

Agencies") — the agencies that rated the notes issued by Cheyne.  In my August

17, 2012 summary judgment Opinion and Order, I dismissed the fraud claims

against Morgan Stanley and the aiding and abetting fraud claims against the rating

agencies.[1]  For twelve of the fifteen plaintiffs, I allowed the fraud claims against

the rating agencies and the aiding and abetting claims against Morgan Stanley to

proceed.  However, I dismissed: (1) the claims of plaintiff The Bank of N.T.

Butterfield & Son Limited ("Butterfield"); (2) the claims of plaintiff Commerzbank

AG ("Commerzbank") that arise out of the Allianz–Dresdner Daily Asset Fund's

---

          [1]      *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No.
08 Civ. 7508, --- F. Supp. 2d ---, 2012 WL 3584278 (S.D.N.Y. Aug. 17, 2012).

("DAF") investments in Cheyne; and (3) the claims of plaintiff SEI Investments Company ("SEI").  SEI, Commerzbank, and Butterfield now move for reconsideration of my August 17, 2012 Opinion and Order.  In connection with their reconsideration motions, SEI and Commerzbank move for leave to file declarations.  For the reasons set forth below: (1) plaintiffs' motion for leave to file declarations is denied; (2) SEI's motion for reconsideration is granted; (3) Butterfield's motion for reconsideration is granted; and (4) Commerzbank's motion for reconsideration is denied.

## II.   BACKGROUND

Familiarity with the facts and the procedural history is assumed.

## III.   LEGAL STANDARD

### A.   Reconsideration

Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court.[2]  "A motion for reconsideration is appropriate where 'the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might

---

[2]   *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

reasonably be expected to alter the conclusion reached by the court.'"[3]  Further,

"[t]ypical grounds for reconsideration include 'an intervening change of

controlling law, the availability of new evidence, or the need to correct a clear error

or prevent manifest injustice.'"[4]  Yet, because "the purpose of Local Rule 6.3 is to

'ensure the finality of decisions and to prevent the practice of a losing party

examining a decision and then plugging the gaps of a lost motion with additional

matters,'"[5] the Rule must be "narrowly construed and strictly applied so as to avoid

repetitive arguments on issues that have been considered fully by the Court."[6]

### B.    Summary Judgment

"Summary judgment is designed to pierce the pleadings to flush out

those cases that are predestined to result in a directed verdict."[7]  Thus, summary

---

[3]    *Medisim Ltd. v. BestMed LLC*, No. 10 Civ 2463, 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (quoting *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003)).

[4]    *Gucci America, Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2011 WL 6326032, at *1 (S.D.N.Y. Dec. 16, 2011) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[5]    *Medisim*, 2012 WL 1450420, at *1 (quoting *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008)).

[6]    *United States v. Treacy*, No. 08 Cr. 0366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation omitted).

[7]    *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).

judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[8] "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor."[9] "'A fact is material when it might affect the outcome of the suit under governing law.'"[10] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[11] "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim."[12]

In deciding a motion for summary judgment, a court must "'construe the facts in the light most favorable to the non-moving party and must resolve all

---

[8]      Fed. R. Civ. P. 56(c).

[9]      *Sanchez v. Connecticut Natural Gas Co.*, 421 Fed. App'x 33, 34 (2d Cir. 2011) (quoting *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000)).

[10]      *Carter v. Incorporated Village of Ocean Beach*, 415 Fed. App'x 290, 292 (2d Cir. 2011) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[11]      *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted).

[12]      *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

ambiguities and draw all reasonable inferences against the movant.'"[13]  However,

"'[c]redibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge.'"[14]

"'The role of the court is not to resolve disputed issues of fact but to assess

whether there are any factual issues to be tried.'"[15]

### C. Summary Judgment Standard for Fraud and Aiding and Abetting Claims

      In New York, a plaintiff alleging fraud must establish each element of

its fraud claim by "clear and convincing evidence."[16]  The same is true for a

plaintiff asserting a claim of aiding and abetting fraud.[17]  Thus, the appropriate

summary judgment question is whether the evidence on the record could support a

---

[13]    *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

[14]    *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

[15]    *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

[16]    *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).

[17]    *See de Abreu v. Bank of America Corp.*, 812 F. Supp. 2d 316, 322 (S.D.N.Y. 2011) ("'A claim for aiding and abetting fraud must be proven by clear and convincing evidence.'") (quoting *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 488 (S.D.N.Y. 2001)).

6

reasonable jury finding that the plaintiff has shown each element of either a fraud or an aiding and abetting claim by clear and convincing evidence.

## IV.   APPLICABLE LAW

### A.   Fraud

To recover damages for fraud under New York law, a plaintiff must prove: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury.[18] "The claim also requires a showing of proximate causation, such that the injury 'is the natural and probable consequence of the defrauder's misrepresentation or . . . the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud.'"[19]

In addition to establishing scienter, plaintiffs must show that they reasonably relied on the false and misleading statements to their detriment.

Reasonable reliance entails a duty to investigate the

---

[18]   *See AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 208 (2d Cir. 2000).

[19]   *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 104-05 (2d Cir. 2001) (quoting *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1044 (2d Cir. 1986)).

> legitimacy of an investment opportunity where plaintiff was placed on guard or practically faced with the facts.  Only [w]hen matters are held to be peculiarly within defendant's knowledge [ ] [is it] said that plaintiff may rely without prosecuting an investigation, as he ha[d] no independent means of ascertaining the truth.[20]

An "evaluation of the reasonable-reliance element [should involve]  many factors to 'consider and balance,' no single one of which is 'dispositive.'"[21]  "Accordingly, reasonable reliance is often a question of fact for the jury rather than a question of law for the court."[22]

### B.    Standing

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue."[23]  The plaintiff bears the burden of establishing standing, which, at summary judgment requires setting forth "specific facts," showing:  (1) "injury in fact"; (2) "a causal

---

[20]    *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006) (alterations and omissions in original) (quotation marks omitted).

[21]    *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 81 (2d Cir. 2011) (quoting *Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993)).

[22]    *Id.*

[23]    *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972).  *Accord National Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 87 (2d Cir. 1988).

connection between the injury and [defendants' conduct]"; and (3) likelihood that "injury will be redressed by a favorable decision."[24]  Standing is "assessed as of the time the lawsuit is brought."[25]

An assignee who holds "legal title to an injured party's claim has constitutional standing to pursue the claim. . . ."[26]  New York law permits "free assignability of [fraud] claims,"[27] and "any act or words are sufficient which show an intention of transferring the chose in action to the assignee."[28]  For example, transferring "all rights, title and interest" in a given transaction is "sufficient to effect the assignment of tort claims based on fraud."[29]  "'An assignment may be made by an oral communication.'"[30]

---

[24]   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[25]   *Comer v. Cisneros*, 37 F.3d 775, 787 (2d Cir. 1994) (citing *Lujan*, 504 U.S. at 571 n.4 (1992)).

[26]   *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (citing *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 271 (2008)).

[27]   *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995).

[28]   *Id.* at 151-52.

[29]   *Id.* The transaction at issue in *Banque Arabe* was participation in a particular loan.

[30]   *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, Nos. 93 Civ. 6876, 94 Civ. 2713, 2000 WL 1876915, at *1 (S.D.N.Y. Dec. 22, 2000) (quoting

### C.    Real Party in Interest

Under Rule 17(a):

[A] court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

The Second Circuit has held that when defendants assert that a party other than plaintiff has standing, "their unspoken premise [is] that [plaintiffs] lacked standing because [the non-party] remained . . . the real party in interest."[31]  Further, Rule 17(a)(3) relief "should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants."[32]  Rule 17 allows that ratification may occur at any time after an objection is made to a plaintiffs standing — it may occur after a complaint is

---

*American Banana Co. v. Venezolana Internacional de Aviacion S.A.*, 411 N.Y.S.2d 889, 890 (1st Dep't 1979)).

[31]    *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997).  *Accord Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corps.*, No. 91 Civ. 2050, 1998 WL 236227, at *6 (S.D.N.Y. Mar. 31, 1998) (noting that in such a situation, the distinction between "real party in interest" and a lack of standing is "merely semantic").

[32]    *Id.*

filed,[33] or even after a suit proceeds to its conclusion.[34]  All that rule 17 requires of plaintiffs is that they remedy any "real party in interest" deficiency within "a reasonable time."[35]

## V.    DISCUSSION

### A.    Leave to File Declarations

SEI seeks to submit a declaration "to more fully explain the evidence" that SEI relied on the ratings issued by Moody's and S&P when it made its decision to invest in Cheyne, and Commerzbank seeks to submit a declaration demonstrating that Commerzbank has standing to pursue its claims rising out of DAF's investment in Cheyne.  However, the Second Circuit has repeatedly held that new evidence may not be considered on a motion for reconsideration.[36]  In

---

[33]      *See In re Vivendi Universal, S.A.*, 605 F. Supp. 2d 570, 584 (S.D.N.Y. 2009) ("*Advanced Magnetics* stands for the proposition that a standing defect at the commencement of suit does not require dismissal of the action with prejudice.").

[34]      *See Berisford Metals Corp. v. M/V Copiapo*, 653 F. Supp. 419, 421 (S.D.N.Y. 1986) ("A suit may proceed to its conclusion even where the plaintiff initially filing a complaint is not the real party in interest [if the defect is remedied via Rule 17 procedures].").

[35]      *See* 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure: Civil 3d* § 1555, at 575-76 (3d ed. 2002) ("What constitutes a reasonable time is a matter of judicial discretion and will depend on the facts of each case.").

[36]      *See Hines v. Overstock.com, Inc.*, 380 Fed. App'x 22, 25 (2d Cir. 2010) (affirming the district court's denial of a motion for reconsideration "because [defendant] could have introduced this evidence in its initial motion but

11

accordance with the well-settled law, I have routinely declined to consider new

arguments and evidence made on motions for reconsideration.[37]

        Plaintiffs argue that it is only improper for courts to consider

arguments/evidence that could have been advanced/introduced on the initial

motion.[38]  Plaintiffs assert that SEI's declaration should be considered because it

could not — due to page limitations imposed by the Court — sufficiently explain

the evidence it submitted in its Rule 56.1 statement.[39]  Similarly, Commerzbank

---

did not"); *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948
F.2d 111, 115 (2d Cir. 1991) (confirming that a party making a motion for
reconsideration may not "'advance new facts, issues, or arguments'") (quoting
*Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)).

[37]    *See Learning Annex Holdings, LLC v. Rich Global, LLC*, 860 F. Supp.
2d 237, 241-42 (S.D.N.Y. 2012) ("A motion for reconsideration is not an
'opportunity for making new arguments that could have been previously
advanced.'") (quoting *Associated Press v. United States Dep't of Defense*, 395 F.
Supp. 2d 17, 19 (S.D.N.Y. 2005)).

[38]    *See* Reply in Support of Plaintiffs SEI Investments Company's and
Commerzbank AG's Motion for Leave to File Declarations, at 1-2 (citing *Hines*,
380 Fed. App'x at 25).

[39]    *Id.* at 1.  Plaintiffs also believe that SEI's declaration should be
considered in light of "the Court's assurance that a declaration of reliance would be
enough to establish reliance at the summary judgment stage."  *Id.* (citing February
8, 2012 Hearing Transcript ("Hr'g Tr.") at 14-16).  Although I did suggest to
plaintiffs that a declaration of reliance might be sufficient to establish a material
issue of fact on reliance, plaintiffs and defendants submitted additional evidence —
including documentary evidence and deposition transcripts — bearing on whether
SEI relied on the ratings.  My summary judgment Opinion and Order was based on
those materials.  My earlier suggestion regarding the possible adequacy of a
declaration of reliance does not support the notion that new materials may now be

asserts that "due to the limitation on the number and length of declarations plaintiffs were permitted to submit with their opposition brief, Commerzbank could not have submitted these declarations in connection with [its opposition to summary judgment]."[40]  Plaintiffs misunderstand the test for whether a party could have submitted evidence on its original motion.  While it is true that plaintiffs sought leave to provide more detailed declarations with their original motion and I denied their request, parties *always* function under constraints.  Plaintiffs faced a series of tactical decisions — as many parties in complex litigations do — and had to make difficult decisions as to which declarations, arguments, and evidence were most essential to their opposition to defendants' motion.  Were page limitations — and a court's refusal to bend those limitations — grounds to allow parties to submit additional materials on their motions for reconsideration, then the limited nature of reconsideration would be eviscerated (as would page limits for that matter).

Plaintiffs also argue that the Court should consider its new declarations because it "overlooked the [original] declarations or misapprehended their meaning."[41]  If this is so, I have no doubt that plaintiffs made those arguments

---

submitted.

[40]    *Id.*

[41]    *Id.* at 2.

13

in their memoranda of law supporting reconsideration.  Because I see no need to

allow plaintiffs additional pages to explain their arguments via declarations,

plaintiffs' motion for leave to file declarations is denied.

> **B.     SEI'S Motion for Reconsideration**

In the summary judgment Opinion and Order, I analyzed SEI's

reliance evidence as follows:

> SEI is suing on investments made by an investment advisor,
> Columbia Management Advisors ("CMA").  Defendants provide
> evidence that CMA expressly disagreed with the ratings, and
> argue that CMA therefore could not have relied on the ratings in
> deciding to invest in Cheyne on behalf of the SEI Funds.
> Plaintiffs counter with testimony from CMA that securities would
> not likely be considered for investment unless they had "Tier 1"
> ratings.  Plaintiffs also provide evidence that CMA was not
> authorized to purchase unrated notes.  The evidence does not,
> however, support an inference that CMA relied on the high ratings
> issued by Moody's and S&P in making the decision to invest in
> Cheyne on behalf of SEI.  For one thing, SEI's 30(b)(6) designee
> testified only that "a rating" — and not necessarily high ratings,
> or the ratings actually issued by the Rating Agencies — was
> required before CMA could purchase a note.  For another, CMA
> testified that: (1) its own analysts did an extensive analysis which
> did not rely on and was independent of the ratings; and (2) it could
> consider notes which lacked a "Tier 1" rating.  In sum, SEI has
> provided no evidence that the actual ratings issued by Moody's
> and S&P were a substantial factor in CMA's decision to invest.
> Accordingly, SEI's claims are dismissed.[42]

However, I overlooked two pieces of evidence submitted by plaintiffs which create

---

[42]     *Abu Dhabi*, 2012 WL 3584278, at *17.

a material issue of fact as to whether the specific ratings issued by Moody's and

S&P *were* a substantial factor in CMA's decision to invest.

   *First*, plaintiffs submitted testimony by CMA that under Rule 2a-7,

"there was a specific requirement that two out of the three ratings have to be

deemed Tier 1 from the major rating agencies."[43]  Further, CMA clarified that "[a]

top tier rating is defined as the top ratings category per Moody's or S&P.  So, for

example, A-1+, A-1, are the top tier short-term ratings for S&P.  P-1 is the top tier

rating for Moody's."[44]  The larger context of CMA's testimony makes it clear that

it *could not* have considered notes which lacked a Tier 1 rating when deciding to

invest on behalf of SEI.[45]

   Further, SEI's reliance declaration was entitled to greater weight than

I originally gave it.  At a February hearing, I denied plaintiffs' request for leave to

---

[43] *See* Deposition of Paul T. Quistberg, CMA's 30(b)(6) designee ("Quistberg Dep."), at 253:12-15.  Plaintiffs' decision to divide their reliance argument and evidence into two sections in both their opposition brief and Rule 56.1 statement may have obscured some of the evidence regarding SEI's reliance.

[44] *Id.* at 258:24-259:3.

[45] CMA's testimony that an issue coming to market without a Tier 1 rating "could be" looked at was unclear.  *See Abu Dhabi*, 2012 WL 3584278, at *17 n.243 (citing Quistberg Dep. at 253:19-254:10).  CMA might have been stating that it *could* consider such a product when making decisions to invest for SEI.  However, it is equally plausible that CMA was making a *general* statement regarding how such issues are received by the market.

file additional declarations on reliance — indicating that a single declaration from plaintiffs stating that the ratings were a factor in their investment decision would likely be sufficient to survive summary judgment:

> [MR. DROSMAN:] [I]t is extremely important that we be permitted to provide at least one declaration per plaintiff so that they have an opportunity to explain to the court, provide the court with a proffer of evidence that they would give at trial.
>
> THE COURT: What do they have to say other than, "I relied on the credit rating when I made this purchase?" . . . . You said that you don't think it is that simple, but I am not trying a case on summary judgment. I have to draw every inference in favor of the non-moving party if it swears under oath to reliance at least in part. That is the reliance argument. It said so. Who am I to say they're lying? They say they relied, so they relied. So reliance isn't going to be easy for the defendant.[46]

In its reliance declaration, SEI asserted:

> The investment guidelines governing the investment sub-advisors' provision of investment advisory services and governing the purchase of the Rated Notes on behalf of . . . SEI required the investment sub-advisors to rely on the ratings *assigned* to the Rated Notes. The investment sub-advisors [CMA] could not have purchased the Rated Notes on behalf of . . . SEI without the *assigned* ratings. The ratings were a substantial factor in these investment decisions.[47]

In holding that CMA had failed to show that it relied on the specific ratings issued

---

[46]   H'rg Tr. at 14-16

[47]   Declaration of Plaintiffs Regarding Reliance in Support of Plaintiffs' Opposition to Defendants' Joint Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(c) ( "Reliance Decl."), ¶ 3 (emphasis added).

by the rating agencies, I gave insufficient weight to the word "assigned," used

multiple times in SEI's rating declaration.  That word provides some evidence that

CMA relied on the high ratings issued by Moody's and S&P — and not just the

fact that the notes were rated — when deciding to invest on behalf of SEI.  The

declaration — combined the portions of CMA's testimony that I overlooked — are

sufficient to create a material issue of fact as to whether CMA relied on the ratings.

SEI's motion for reconsideration is therefore granted.

### C.    Butterfield's Motion for Reconsideration

In my summary judgment Opinion and Order, I dismissed

Butterfield's claims for lack of standing based on the following reasoning:

> Butterfield is suing on an investment made by the Butterfield
> Money Market Fund ("BMMF"), which was managed by
> Butterfield's wholly-owned subsidiary, Butterfield Asset
> Management ("BAM").  Defendants argue that Butterfield lacks
> standing to sue on behalf of BMMF because there is no evidence
> that BMMF assigned its right of action to Butterfield.  In its
> declaration on reliance, Butterfield asserts that through its
> purchase of "[notes issued by Cheyne] at par from wholly-owned
> affiliate, [BMMF], on July 11, 2008," it "acquired BMMF's entire
> interest in the CP and MTNs."  However, the mere purchase of
> notes is insufficient to establish an assignment of rights, and the
> bare assertion that Butterfield "acquired all rights and claims
> relating to the Rated Notes"—without any supporting facts—is
> insufficient to withstand summary judgment.  Finally, because
> standing is assessed at the time the complaint is filed, a
> "ratification" in a 2012 Reliance Declaration does not cure the

deficiency.[48]

In so holding, I overlooked Rule 17(a)'s express allowance for ratification by the "real party in interest" as long a it is done within "a reasonable time."[49]

Defendants' *first* objection to Butterfield's standing was made in their January 23, 2012 motion for summary judgment.  Within weeks, BMMF ratified that Butterfield was authorized to pursue recovery on its behalf.[50]  This declaration was sufficient to cure any such "real party in interest" deficiency.[51]

Defendants argue that ratification should not be permitted, as allowing it would improperly expand plaintiffs' rights under substantive state law.[52]  Defendants are correct that if an assignment would be invalid under governing

---

[48]     *Abu Dhabi*, 2012 WL 3584278, at *6.

[49]     *See supra*, Part IV.C.

[50]     *See* Reliance Decl. ¶ 7 ("Butterfield is authorized to pursue recovery related to the [notes issued by Cheyne] and BMMF agrees to be bound by any decisions or judgments in this action.").  The Reliance Declaration was signed on February 27, 2012.

[51]     *See Wells Fargo Northwest Bank, Nat'l Ass'n v. Varig-S.A.*, No. 02 Civ. 6078, 2003 WL 21508341, at *3 (S.D.N.Y. June 27, 2003) (accepting as effective a ratification in which the real party in interest — by affidavit — "confirm[s] its approval of plaintiffs' exercise of remedies against [the defendant] . . . [and agreed] to be bound by any determination reached").

[52]     *See* Defendants' Memorandum of Law in Opposition to the Bank of N.T. Butterfield & Son Limited's and Commerzbank AG's Motion for Reconsideration ("Def. Mem."), at 7.

state law, ratification cannot cure the defect.[53]  However, defendants do not offer

any reason that assignment would be invalid under New York law here.  On the

contrary, "New York law permits 'free assignability of [fraud] claims.'"[54]

Defendants also argue that BMMF cannot ratify Butterfield's claims

under Rule 17(a) because it has no standing in its own right and is therefore not a

"real party in interest."  Defendants assert that because Buttefield purchased

BMMF's notes at par, Butterfield suffered no loss and therefore lacks standing.[55]

This argument — coupled with this Court's holding that the purchase of notes at

par does not constitute an assignment of claims arising out of the original

acquisition of those notes[56] — amount to an assertion that there is *no* real party in

interest, and that BMMF's claims have evaporated.  Such an outcome is untenable.

Instead, the timely ratification confirms that Butterfield stands in the shoes of

BMMF; if BMMF suffered a loss, Butterfield is the "real party in interest" and

may assert those claims.  Butterfield is the real party in interest.  Accordingly,

---

[53]     *See id.* (citing *Stichting ter Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v. Schreiber*, 407 F. 3d 34, 48-49 (2d Cir. 2005)).

[54]     *Abu Dhabi*, 2012 WL 3584278, at *5 (quoting *Banque Arabe*, 57 F.3d at 153) (alteration in original).

[55]     *See* Def. Mem. at 8.

[56]     *See Abu Dhabi*, 2012 WL 3584278, at *6.

Butterfield's motion for reconsideration is granted.

### D.      Commerzbank's Motion for Reconsideration

Whereas BMMF's ratification was timely — filed mere weeks after defendants first raised an objection to its standing — Commerzbank's current attempt to file a ratification is not timely.  Commerzbank has provided no reason it did not file a ratification declaration along with plaintiffs' opposition to defendants' motion for summary judgment, as Butterfield did.  Because this ratification is filed more than "a reasonable time" after objections to Commerzbank's standing were raised, Rule 17 does not apply, and I will not consider this submission.

In my summary judgment Opinion and Order, I held that Commerzbank lacked standing based on the following reasoning:

> Commerzbank is suing both on [notes] it purchased for itself and on [DAF]'s investments in Cheyne. Dresdner Bank A.G. ("Dresdner") purchased the DAF notes on October 9, 2007, and Commerzbank acquired Dresdner in May 2009.   Although Commerzbank offers evidence that it has acquired any potential rights of action possessed by Dresdner, it has provided no evidence that DAF assigned its rights of action to Dresdner. Commerzbank argues that it nonetheless has standing by virtue of the fact that it "acquired the Rated Notes and [was] thus record [owner] of the notes before bringing suit."    However, Commerzbank provides no support for its assertion that, under New York law, the record holder of a rated note may bring fraud

claims on behalf of prior holders, even without an assignment.[57]

Commerzbank now makes a series of arguments as to why Dresdner's purchase of notes from DAF had the effect of an assignment of rights from DAF to Dresdner.[58] In essence, these arguments are an expanded version of the argument Commerzbank made — and I rejected — in its opposition to defendants' motion for summary judgment. Although Commerzbank argues that I overlooked controlling case law in its favor, I cited to all of the cases it claims I overlooked. While *International Design Concepts, LLC v. Saks Inc.* — which is not controlling law — holds that a transfer of "all assets" is "broad enough to encompass all causes of action owned by" the transferor,[59] plaintiffs' reliance declaration did not refer to a transfer of "all assets." Rather, it stated that "Dresdner purchased [notes] at par from DAF, an affiliate of Dresdner, on October 8, 2007."[60] Without more, this statement does not establish that DAF assigned tort rights to Dresdner.

Commerzbank also argues that I overlooked controlling law that it has

---

[57]       *Id.*

[58]       *See* Plaintiffs the Bank of N.T. Butterfield & Son Limited's and Commerzbank AG's Motion for Reconsideration of the August 17, 2012 Opinion and Order on Defendants' Motion for Summary Judgment, at 2-6.

[59]       *International Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 237 (S.D.N.Y. 2007).

[60]       Reliance Decl. ¶ 8.

21

standing by virtue of the fact that DAF is no longer in existence. The Second Circuit has held that when a party about to become defunct executes an assignment agreement transferring "[all] rights, title and interest," such language is broad enough to include a transfer of tort claims.[61] However, Commerzbank has not submitted any assignment agreement executed by DAF, and I have no knowledge that such an such agreement exists. The only evidence plaintiffs provided the Court in connection with DAF's dissolution is the assertion in their reliance declaration that "DAF was wound down in the second half of 2008"[62] — roughly a year after Dresdner's purchase of notes from DAF. In their summary judgment opposition, plaintiffs provided no evidence that DAF's sale of notes to Dresdner was made in contemplation of its dissolution, or that the terms of the sale were broad enough to include an assignment of tort claims. The arguments that Commerzbank has made on reconsideration — as well as its attempt to submit both a declaration and a ratification at this time — are attempts to "plug the gaps" in its summary judgment submissions. Accordingly, Commerzbank's motion for reconsideration is denied.

## VI.   CONCLUSION

---

[61]    *Banque Arabe*, 57 F.3d at 153.

[62]    Reliance Decl. ¶ 8.

For the reasons stated above: (1) plaintiffs' motion for leave to file documents is denied; (2) SEI's motion for reconsideration is granted; (3) Butterfield's motion for reconsideration is granted; and (4) Commerzbank's motion for reconsideration is denied.  The Clerk of the Court is directed to close these motions (Docket Nos. 480, 482 and 484).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 7, 2012

**- Appearances -**

**For Plaintiffs:**

Patrick J. Coughlin, Esq.
Daniel S. Drosman, Esq.
Jessica T. Shinnefield, Esq.
Jarrett S. Charo, Esq.
Darryl J. Alvarado, Esq.
X. Jay Alvarez, Esq.
David C. Walton, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
(619) 231-1058

Samuel H. Rudman, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

Luke O. Brooks, Esq.
Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
(415) 288-4545

**Additional Attorneys for Plaintiff State Board of Administration of Florida:**

Marc I. Gross, Esq.
Pomertantz Haudek Grossman & Gross LLP
100 Park Avenue
New York, NY 10017
(212) 661-1100

**For Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited:**

James P. Rouhandeh, Esq.
Antonio J. Perez-Marques, Esq.
William R. Miller, Jr., Esq.
Jessica L. Freese, Esq.
Christopher J. Roche, Esq.
Andrew D. Schlichter, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

**For Defendants Moody's Investors Service, Incorporated and Moody's Investors Service Limited:**

Joshua M. Rubins, Esq.
James J. Coster, Esq.
Mario Aieta, Esq.
Dai Wai Chin Feman, Esq.
Justin E. Klein, Esq.
Aaron M. Zeisler, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, 11th Floor
New York, NY 10169
(212) 818-9200

**For Defendants Standard & Poor's Rating Services and The McGraw-Hill Companies, Incorporated:**

Floyd Abrams, Esq.
Dean I. Ringel, Esq.
Tammy L. Roy, Esq.
Andrea R. Butler, Esq.
David Owen, Esq.
Adam N. Zurofsky, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, NY 10005
(212) 701-3000