UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABU DHABI COMMERCIAL BANK, et al.,

Plaintiffs,

-against-

MORGAN STANLEY & CO., INC., et al.,

Defendants.

Civil Action No. 1:08-cv-07508-SAS-DCF

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OMNIBUS MOTION IN LIMINE

James P. Rouhandeh
Antonio J. Perez-Marques
Richard A. Cooper
Gina Castellano
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
*Attorneys for Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited*

James J. Coster
Joshua M. Rubins
James Doty
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, New York 10169
(212) 818-9200
*Attorneys for Defendants Moody's Investors Service, Inc. and Moody's Investors Service Ltd.*

Floyd Abrams
Dean Ringel
Charles A. Gilman
Tammy L. Roy
Jason M. Hall
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000
*Attorneys for Defendants The McGraw-Hill Companies, Inc. and Standard & Poor's Rating Services*

Mark A. Kirsch
Joel M. Cohen
Lawrence J. Zweifach
Christopher M. Joralemon
Mary Kay Dunning
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 48th Floor
New York, NY 10166
(212) 351-4000
*Attorneys for Defendants Moody's Investors Service, Inc. and Moody's Investors Service Ltd.*

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND ........................................................................... 4

III. ARGUMENT .................................................................................................... 6

   A.   THE SCOPE OF THIS CASE MUST REMAIN LIMITED TO THE
        CHEYNE SIV ........................................................................................... 6

   B.   EVIDENCE UNRELATED TO THE CHEYNE SIV SHOULD BE
        EXCLUDED .............................................................................................. 8

        1.   Evidence Concerning the Rating Processes of Structured
             Finance Products Other Than the Cheyne SIV Notes Should
             Be Excluded ..................................................................................... 8

        2.   Evidence Concerning Persons Who Were Not Responsible
             for Rating the Cheyne SIV Notes Should Be Excluded ................. 11

        3.   Evidence Concerning Morgan Stanley Unrelated to the
             Structuring of the Cheyne SIV Should Be Excluded...................... 16

             a.   Evidence Concerning Morgan Stanley's Loan-Level Due
                  Diligence Should Be Excluded ............................................ 16

             b.   Evidence Concerning Morgan Stanley's Securitization
                  Business and RMBS Sponsored Assets Should Be
                  Excluded .............................................................................. 18

             c.   Evidence Relating to the Morgan Stanley Personnel Who
                  Worked Exclusively on the Warehouse Should Be
                  Excluded .............................................................................. 19

             d.   Evidence Concerning Morgan Stanley, Unrelated to and
                  Post-Dating the Structuring of the SIV Should Be
                  Excluded .............................................................................. 21

        4.   Evidence About Defendants' Revenue Unrelated to the
             Cheyne SIV Should Be Excluded ................................................... 22

        5.   Statements Relating to Non-Cheyne Activities of
             Defendants, Including After-the-Fact Reports and Other
             Lawsuits against Defendants, Should Be Excluded ........................ 23

        6.   Evidence Relating to the Treatment of HELs as LEAs
             Should Be Excluded ....................................................................... 26

   C.   LIMITING INSTRUCTIONS WILL NOT CURE THE PREJUDICE
        POSED BY THESE CATEGORIES OF EVIDENCE ............................. 27

D.   PLAINTIFF WITNESSES SHOULD BE PRECLUDED FROM
TESTIFYING AS TO SUBJECTS ABOUT WHICH THEIR RULE
30(B)(6) DESIGNEES DISCLAIMED KNOWLEDGE .......................................... 27

IV.  CONCLUSION ................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### Cases

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.* ,
--- F. Supp. 2d ---, 2012 WL 3584278 (S.D.N.Y. Aug. 17, 2012) .................. 1, 2, 9, 11, 16, 21

*Anderson v. City of New York*,
657 F. Supp. 1571 (S.D.N.Y. 1987) ...................................................................... 24

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
No. 04 Civ. 10014 PKL, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ............... 11

*Arlio* v. *Lively*,
474 F.3d 46 (2d Cir. 2007) .................................................................................. 26

*Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196 (11th Cir. 1986).................... 24

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
860 F. Supp. 2d 251(S.D.N.Y. 2012) ............................................................. 17, 25

*Brough* v. *Imperial Sterling Ltd.*,
297 F.3d 1172 (11th Cir. 2002) ........................................................................... 23

*Chemtex LLC v. St. Anthony Enters., Inc.*,
490 F. Supp. 2d 536 (S.D.N.Y. 2007) ................................................................. 16

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ................................................................................ 22

*City of New York v. Pullman*,
662 F.2d 910 (2d Cir. 1981) ................................................................................ 25

*City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*,
679 F.3d 64 (2d Cir. 2012) .................................................................................. 12

*Cole Sys. Assocs., Inc. v. Mun. Emergency Servs.*,
No. 08 CV 6417(BSJ), 2010 WL 4942229 (S.D.N.Y. Dec. 3, 2010) .................... 15

*D'Cunha* v. *Genovese/Eckerd Corp.*,
415 F. App'x 275 (2d Cir. 2011).......................................................................... 25

*Evans v. Port Authority of New York and New Jersey.*,
192 F. Supp. 2d 247 (S.D.N.Y. 2002) ................................................................... 9

*Fait v. Regions Financial Corp.*,
655 F.3d 105 (2d Cir. 2011) ................................................................................ 12

*Fed. Housing Fin. Agency* v. *UBS Americas, Inc.*,
858 F. Supp. 2d 306 (S.D.N.Y. 2012) .................................................................. 12

*Geddes* v. *United Financial Group*,
559 F.2d 557 (9th Cir. 1977) ............................................................................... 23

*In re General Electric Sec. Litig.*,
856 F. Supp. 2d 645 (S.D.N.Y. 2012) .................................................................. 12

*In re Sanofi-Aventis Sec. Litig.*,
774 F. Supp. 2d 549 (S.D.N.Y. 2011) .................................................................. 22

*In re September 11 Litig.*,
621 F. Supp. 2d 131 (S.D.N.Y. 2009) ................................................ 24, 25

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*,
--- F. Supp. 2d ----, 2013 WL 45878 (S.D.N.Y. Jan. 3, 2013) ................. 15

*Kinsey v. Cendant Corp.*,
588 F. Supp. 2d 516 (S.D.N.Y. 2008) ................................................ 11

*Koufakis* v. *Carvel*,
425 F.2d 892 (2d Cir. 1970) .............................................................. 23

*Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*,
248 F.R.D. 126 (S.D.N.Y. 2007) ........................................................ 28

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
261 F.R.D 13 (S.D.N.Y. 2009) .......................................................... 16

*Old Chief v. United States*,
519 U.S. 172 (1997) ......................................................................... 23

*Palmieri v. Defaria*,
88 F.3d 136 (2d Cir. 1996) ................................................................. 6

*Park W. Radiology v. CareCore Nat'l LLC*,
675 F. Supp. 2d 314 (S.D.N.Y. 2009) ............................................. 16, 25

*Pearce v. E.F. Hutton Group, Inc.*,
653 F. Supp. 810 (D.D.C. 1987) ........................................................ 24

*Reilly v. Natwest Markets Grp., Inc.*,
181 F.3d 253 (2d Cir. 1999) .......................................................... 27, 28

*Rodriguez* v. *Modern Handling Equipment of NJ, Inc.*,
604 F. Supp. 2d 612 (S.D.N.Y. 2009) ................................................. 13

*Spanski Enters., Inc. v. Telewizja Polska, S.A.*,
2009 WL 3270794 (S.D.N.Y. Oct. 13, 2009) ....................................... 28

*Spanski Enters., Inc. v. Telewizja Polska, S.A.*,
No. 07 Civ. 930, 2009 WL 3270794 (S.D.N.Y. Oct. 13, 2009) ............... 28

*United States v. Bermudez*,
529 F.3d 158 (2d Cir. 2008) .............................................................. 11

*United States v. Malpeso*,
115 F.3d 155 (2d Cir. 1997) .............................................................. 16

*United States v. McDermott*,
245 F.3d 133 (2d Cir. 2001) .............................................................. 27

*Wells Fargo Bank Northwest N.A. v. Taca Int'l Airlines*,
247 F. Supp. 2d 352 (S.D.N.Y. 2002) ................................................. 22

## Rules

Fed. R. Civ. P. 26 ................................................................................ 7

Fed. R. Evid. 401 .............................................................................. 12

Fed. R. Evid. 402 ......................................................................... 8, 12

Fed. R. Evid. 403 ............................................................................... 8

**Other Authorities**

2 Wigmore,
   Evidence § 443 (3d ed. 1940) ................................................................................. 11

22A Wright & Graham,
   Federal Practice and Procedure § 5216 .................................................................. 11

Defendants—Moody's Investors Service, Inc. and Moody's Investors Service Ltd. ("Moody's"); The McGraw-Hill Companies, Inc. and Standard & Poor's Ratings Services ("S&P"), and Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited ("Morgan Stanley")—respectfully submit this memorandum of law in support of their omnibus motion in limine to exclude certain categories of evidence unrelated to the rating of Notes issued by the Cheyne SIV[1], as set forth in the omnibus motion.

## I.  **INTRODUCTION**

As this Court has already determined, the credit ratings assigned to the Cheyne SIV Notes by Moody's and S&P (the "Rating Agencies") "are the only alleged misstatements" at issue, *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.* ("*ADCB*"), --- F. Supp. 2d ---, 2012 WL 3584278, at *7 (S.D.N.Y. Aug. 17, 2012), and such ratings are not actionable unless "the ratings *both* misstated the opinions or beliefs held by the Rating Agencies *and* were false or misleading with respect to the underlying subject matter they address," *id.* at *12. Evidence not related to the rating process for the Cheyne SIV is not relevant to this fundamental inquiry.[2]

---

[1] In accordance with the agreed-upon and ordered schedule, defendants will defer responding to the Omnibus Motion *in Limine* filed by Plaintiffs on January 14 until Defendants' Opposition Brief (to be filed February 11). The Appendix, which is attached to this memorandum, contains a list of those exhibits and witnesses that defendants move to exclude in whole or in part pursuant to the specific elements of this omnibus motion. Upon request, defendants will provide the Court with a disc containing these exhibits and witness transcripts.

[2] Plaintiffs themselves have repeatedly recognized that this case is about the ratings assigned to the Cheyne SIV Notes. *See* Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, dated Dec. 22, 2009, at *14 ("The misrepresentations at issue are the false credit ratings that defendants assigned to the [Cheyne SIV] Rated Notes and the Cheyne SIV, which they disseminated to plaintiffs."); Ninth Amended Complaint at ¶ 241 ("The Rating Agencies assigned materially false and misleading credit ratings to the Cheyne SIV and the Rated Notes"); *id.* at ¶ 2 (The "Rated Notes" are the Senior and Capital notes of Cheyne); Ex. 1, at 4 ("Limiting the confines of relevance to the Cheyne SIV—as opposed to all SIVs or all structured finance investments—is consistent with the Court's view of 'what is needed for the trial of this case—not a broadening, grand inquisition into the world of SIVs generally.'" (citing Report and Recommendation No. 18)); Plaintiffs' Interrogatory Responses, dated May 2, 2011 (objecting to various interrogatories propounded by defendants on the basis that they sought "information without

In their complaint, plaintiffs allege that the Rating Agencies committed fraud in rating the Cheyne SIV Notes.  Plaintiffs also allege that Morgan Stanley aided and abetted the Rating Agencies' fraud.  Those are the claims that survived summary judgment and will be tried to the jury.[3]  *See ADCB*, 2012 WL 3584278, at *7–23; Dkt. 501, Opinion and Order, dated Oct. 5, 2012.  Plaintiffs must prove that those *who rated Cheyne*—each Rating Agency's Cheyne SIV rating committee—disbelieved those ratings.  *See ADCB*, 2012 WL 3584278, at *11, 13.  With respect to Morgan Stanley, plaintiffs must prove that those who structured the Cheyne SIV had actual, not constructive, knowledge of the Rating Agencies' alleged fraud and substantially assisted in it.  *Id*. at *22 & n.302.

Trial of those claims will be complex enough, and the proceedings before the jury will remain manageable and fair to all parties only so long as the evidence remains focused on the Cheyne SIV—the only investment at issue in this case.  Accordingly, defendants respectfully submit that the Court should exclude documents and testimony concerning (1) the rating processes for structured finance products other than the Cheyne SIV Notes; (2) persons who were not responsible for rating the Cheyne SIV Notes; (3) (a) Morgan Stanley's loan due diligence; (b) Morgan Stanley's securitization business and residential mortgage-backed security ("RMBS") assets sponsored by Morgan Stanley; (c) Morgan Stanley's personnel who worked exclusively on the Morgan Stanley warehouse; (d) Morgan Stanley, unrelated to and post-dating the structuring of the SIV; (4) defendants' revenues unrelated to the Cheyne SIV; (5) after-the-fact-commentary on the financial crisis, including government testimony or reports and other

---

any nexus to the Cheyne SIV").  Citations to "Ex. _" refer to the exhibits to the Declaration of Mark A. Kirsch, filed contemporaneously herewith.

[3] Morgan Stanley's motion for summary judgment on the negligent misrepresentation claim against it is pending before this Court.  The Court's rulings may require additional motions on the evidence.

lawsuits against defendants; and (6) the treatment of home equity loans ("HELs") as liquidity eligible assets ("LEAs").  Defendants also seek to preclude plaintiff witnesses from testifying as to subjects about which their corporate designees disclaimed knowledge.

This Court has repeatedly recognized that this trial cannot comprise an inquiry into general allegations of wrongdoing in the financial markets.  *See* Jan. 26, 2011 Hr'g Tr. at 21 ("This is a case about Cheyne . . . . It can't range into a full investigation of [the Ratings Agencies]. [Plaintiffs are] not the U.S. Attorney's Office.  [Plaintiffs] are not prosecuting a broad investigation.  [Plaintiffs] have a case here that involves particular transactions."); *see also* Nov. 12, 2012 Hr'g Tr. at 69 ("I can't try the whole system.  I can't try the entire method and practice of rating everything.").  Yet plaintiffs' witness and exhibit lists suggest that they intend to put the entire ratings system on trial by introducing evidence far afield from the Cheyne SIV ratings themselves or how each Rating Agency's rating committee rated the Cheyne SIV, confusing the jury with inflammatory documents and testimony concerning assets and events that have no bearing on, and thus are irrelevant to, the issues to be tried.  For example, hundreds of documents listed on plaintiffs' exhibit list relate entirely to the rating processes of asset-backed securities ("ABS")—including RMBS and collateralized-debt obligations ("CDOs")—other than the Cheyne SIV.  Plaintiffs also intend to proffer a number of witnesses whose knowledge and experience relate solely to the ratings processes for RMBS, CDOs, and other ABS classes, even though these witnesses explicitly testified at their depositions that they lacked both knowledge of the Cheyne SIV and contact with those who rated it.[4]  Allowing this evidence would transform a case about the Cheyne SIV ratings into a trial of a cobbled-together "indictment of the last five

---

[4] Defendants of necessity list a comparable volume of exhibits to respond to this barrage of irrelevance.

years of our country's financial system."  Nov. 2, 2010 Hr'g Tr. at 27.

The Cheyne SIV case is complicated enough.  The rating processes for hundreds of indi-
vidual assets acquired at various points in time by Cheyne, or the general rating processes for
classes of securities in which the SIV was authorized to invest, could be the subject of multiple
separate and equally complicated, lengthy proceedings.  The evidence that plaintiffs propose to
introduce is irrelevant and inadmissible; if admitted, it would only serve to confuse, inflame, and
divert the jury from its task of reaching a verdict on plaintiffs' claims, all of which concern only
the Cheyne SIV Notes.  Such a course would not only be contrary to law, but also plainly preju-
dicial to defendants, who have a right to have their conduct assessed with respect to the specific
wrongdoing alleged in the Ninth Amended Complaint, which concerns the Cheyne SIV alone.
Defendants respectfully submit that the Federal Rules of Evidence, the contours of the operative
complaint, and the Court's summary judgment ruling all compel that the trial be limited to the
ratings of the Cheyne SIV Notes.

## II.    FACTUAL BACKGROUND

This is a case about the rating process of the Cheyne SIV Notes.  A SIV, or structured in-
vestment vehicle, is an entity that issues short-term and medium-term debt and uses the proceeds
to purchase longer term assets.  Unlike some structured finance products, a SIV's portfolio of
assets is actively managed and can change daily at the discretion of the SIV manager.

The Rating Agencies in 2005 rated the structure (or "program") of the Cheyne SIV each
pursuant to its own distinct, published SIV rating criteria and approach.  When each Rating
Agency's Cheyne SIV rating committee issued its rating opinions in 2005, the Cheyne SIV did
not actually own any assets.  The rating committees, to determine their respective rating opin-
ions, relied on documentation from the SIV's manager, Cheyne Capital Management ("Cheyne

Capital"), who represented that the Cheyne SIV would have certain structural features and portfolio concentration limits for each asset class that the SIV could, and therefore might, acquire. Specifically, as stated in the Information Memoranda and the Rating Agencies' New Issue Reports available to all prospective investors, the ratings on the Cheyne SIV Notes were based on an analysis of "buckets" of assets that the SIV could acquire in the future once it launched, *e.g.*, up to X% "AAA" RMBS, up to Y% "AA" CDOs, up to Z% credit card assets.[5]  It was Cheyne Capital—*not* the Rating Agencies and *not* Morgan Stanley—who had the responsibility for later filling the buckets within the stated limits and changing assets within those limits throughout the life of the SIV as it deemed appropriate in its sole discretion.  Cheyne Capital acted to add or change assets held by the SIV without the need for any prior notice to or agreement from the Rating Agencies or Morgan Stanley.  After the launch of the Cheyne SIV, the Rating Agencies received weekly certificates from the Bank of New York Mellon that the SIV was in compliance with its structural criteria, which were the representations upon which the ratings had been issued.

The Cheyne SIV rating committee at each Rating Agency deliberated on and assigned rating opinions, which became effective in the summer of 2005.  Each Rating Agency's lead analyst, and most of the members of each Rating Agency's Cheyne SIV rating committee, were based in London.  The Cheyne SIV rating committees were free-standing groups responsible for the rating and did not require approval by management or any other group to issue their rating opinions.

---

[5] The Rating Agencies employed different methodologies in assessing Senior and Capital Notes, cognizant that each type of note posed different risks and those methods differed as between the Rating Agencies.  Both methodologies required the consideration of quantitative factors potentially affecting credit risk, and qualitative factors.  *See* Ex. 2(a), at 9–12; Ex. 2(b), at 4–5, 19.

The rating process for the Cheyne SIV Notes, which began in early 2004 and continued through August 2005, did not involve the evaluation or re-evaluation (or "re-rating") of individual "underlying assets." Nor could it. As stated above, the SIV contained no assets at the time the ratings were issued. Moreover, the vast majority of the assets in which the Cheyne SIV actually invested, after it launched, simply did not exist in 2004 and the first half of 2005, but were rather structured and sold in late 2005, 2006, and 2007—months or years after the SIV's structure had been finalized and the SIV launched. Such assets, if rated by either Rating Agency, were rated by rating committees with responsibility and expertise for rating that asset or asset class, separate and apart from the Cheyne SIV rating committees. The members of these rating committees were largely based in New York and the committees differed in composition from the Cheyne rating committees.

Morgan Stanley acted as structurer for the Cheyne SIV. The Morgan Stanley structuring team communicated with the rating committees on Cheyne Capital's behalf. Neither the Morgan Stanley structuring team, nor any other Morgan Stanley personnel, selected the Cheyne SIV's assets. Rather, *Cheyne Capital* had sole authority to manage the Cheyne SIV's portfolio of assets within the structural limits as represented to the Rating Agencies; such limits were disclosed to investors in the Information Memoranda.

## III.   ARGUMENT

### A.   THE SCOPE OF THIS CASE MUST REMAIN LIMITED TO THE CHEYNE SIV

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quotation marks omitted). Excluding certain evidence unrelat-

ed to the rating process for the Cheyne SIV in advance of trial would allow this Court to ensure that the trial stays on the clear path established by plaintiffs' own complaint, the Court's summary judgment order, and the parties' dealings to this point.

During the course of discovery, plaintiffs received documents from the Rating Agencies that are not directly tied to the Cheyne SIV rating process—such as the productions to various governmental bodies (although the government inquiries focused only on the Rating Agencies' general performance, *not* on any *particular* ratings, let alone the Cheyne SIV), and the complete rating files of approximately 10% of the assets the Cheyne SIV owned at some point (although it is undisputed that the Cheyne SIV rating committees never reviewed these files). Such is the nature of discovery. *See* Fed. R. Civ. P. 26. Now that discovery has concluded, plaintiffs cannot introduce this or similar evidence at trial unless it is directly connected to the Cheyne SIV rating process.

Plaintiffs' proposed trial exhibit list, however, contains hundreds of documents that have nothing to do with the Cheyne SIV ratings. So, too, with their witness list: Of plaintiffs' proposed thirteen live Moody's witnesses, only two served on the Moody's Cheyne SIV rating committee; of plaintiffs' proposed fourteen live S&P witnesses, only two served on the S&P Cheyne SIV rating committee; and of plaintiffs' proposed eleven live Morgan Stanley witnesses, only three were involved with the SIV's structuring or had communication with the Rating Agencies concerning the Cheyne SIV. Plaintiffs thus plan to offer a raft of witnesses discussing, and hundreds of documents about, the process by which RMBS (and CDOs and other ABS) were rated by other analysts, in other places, at other times, or proposals for rating such other assets that were never employed. None of this evidence is relevant to the rating of the Cheyne SIV.

Furthermore, even if the Court were to conclude that some of this evidence might be min-

imally relevant, its probative value would be substantially outweighed by the significant—and certain—risks of confusing and misleading the jury, wasting time, and unfairly prejudicing defendants.  Independently, each risk tips the balance strongly in favor of exclusion.  Fed. R. Evid. 403.  Under Rule 403, courts routinely exclude evidence "inviting a mini-trial on an issue that is both legally inconsequential and potentially unfairly prejudicial."  *Plew v. Limited Brands, Inc.*, No. 08 Civ. 3741, 2012 WL 379933, at *8 (S.D.N.Y. Feb. 6, 2012); *see also, e.g., United States v. James*, 609 F.2d 36, 46 n.11 (2d Cir. 1979).  Combined, the risks are so significant as to preclude any doubt that such evidence must be excluded.  *See, e.g., Dollman v. Mast Indus., Inc.*, 2011 WL 3911035, at *1 (S.D.N.Y. Sept. 6, 2011) (excluding evidence on combined grounds of unfair prejudice, confusion of issues, and waste of time); *United States v. Kahale*, 789 F. Supp. 2d 359, 385–86 (E.D.N.Y. 2009).

As explained below with respect to particular categories of evidence, Rules 402 and 403 prohibit plaintiffs from trying a case exponentially broader than the one alleged in their complaint and allowed to proceed to trial by this Court in its summary-judgment opinion.

**B.     EVIDENCE UNRELATED TO THE CHEYNE SIV SHOULD BE EXCLUDED**

### 1.     Evidence Concerning the Rating Processes of Structured Finance Products Other Than the Cheyne SIV Notes Should Be Excluded

Plaintiffs invested in the Notes issued by the Cheyne SIV, and their fraud claim turns on whether the Rating Agencies' rating opinions on *those* Notes were actionably false.  The rating of securities *other than* the Cheyne Notes, whether or not the Cheyne SIV subsequently invested in such securities, says nothing about the Cheyne rating opinions issued by each Rating Agency's Cheyne SIV rating committee.

*a.*  Evidence regarding the rating of assets other than the Cheyne SIV is irrelevant and should be excluded on that basis.  Plaintiffs' attempt to introduce this kind of evidence appears to

be premised on a misunderstanding of how the Cheyne SIV was structured and rated.  The Cheyne SIV rating committees did not "re-rate" assets owned by the Cheyne SIV; the SIV owned no assets at the time it was rated.  Rather, each rating committee used various models or matrices to analyze hypothetical rosters of assets in order to determine the likelihood that a Cheyne Noteholder would receive its promised principal and interest payments at maturity.  Only *after* the rating committees issued their Cheyne rating opinions did *Cheyne Capital*, the SIV manager, fill the Cheyne "buckets" with actual assets.  Indeed, Cheyne Capital bought and sold 680 assets (the vast majority of which did not exist in 2005) throughout Cheyne's life without prior notice to or agreement from each rating committee.

In light of how the Cheyne SIV was structured and rated, neither the rating processes for any asset that was acquired post-launch (and post-SIV rating) by the SIV, nor the rating processes of other structured finance products generally, has any bearing on the elements of plaintiffs' claims.  *See ADCB*, 2012 WL 3584278, at *13 ("It is axiomatic that fraud may not be proven by hindsight and that plaintiffs must provide evidence that the ratings were highly unreasonable or disbelieved by the Rating Agencies *at the time they were issued*").  Certainly plaintiffs have not made, and cannot make, the case for admissibility.  *Cf. Evans v. Port Auth. of New York and New Jersey*, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) ("The burden of establishing admissibility, of course, is with the proponent of the evidence").

Plaintiffs' proposed evidence regarding the rating processes for other structured finance products cast no light on whether, in 2005, the rating committees believed that the Cheyne Notes would be repaid.  For example, at plaintiffs' behest, the Court permitted discovery of 10% (68) of the "deal files" from each Rating Agency relating to the assets held by Cheyne at any point during the life of the SIV.  Plaintiffs chose only sub-prime RMBS for their review and millions

of pages of documents were produced to plaintiffs concerning those assets. Yet there is nothing in those documents connecting the rating of those assets to the rating processes for the Cheyne SIV or to any member of the Cheyne SIV rating committees. This and similar evidence is only relevant if plaintiffs can proffer a connection between it and the Cheyne rating committees. But after years of discovery, weeks of depositions, and millions of pages of document production, plaintiffs cannot do this even as to documents relating to assets purchased by Cheyne Capital, let alone the substantial number of documents about assets that have no connection to the Cheyne SIV whatsoever.[6] Plaintiffs chose to focus discovery on these documents. The fact that they cannot proffer this connection only emphasizes that the evidence as to the rating processes for ABS other than the Cheyne SIV is plainly irrelevant.

    *b.* Even if evidence regarding the rating of non-Cheyne assets were found to be minimally relevant, the risks of introducing it into this trial far outweigh whatever probative value it may have. Attempting to explain the rating process for every asset class, let alone every individual asset that was at any point in time owned by the Cheyne SIV, would hopelessly complicate the trial and waste the Court's time and judicial resources. Evaluating the rating process for even one of these other structured securities would involve the same difficulties as evaluating the rating processes for the Cheyne SIV Notes themselves. These are financial instruments that cannot be explained by introducing a single document or asking a single question. If evidence as to RMBS or CDO ratings (just to cite a few of the asset classes reflected in plaintiffs' exhibits) were admitted, the Rating Agencies would have to justify their rating opinions on entire asset classes or illustrate the point by reference to many individual structured finance products. To do

---

[6] The "deal files" documents were never seen by the Cheyne SIV rating committees and are irrelevant. But were such documents admitted, it would open the door to defendants introducing other assets included in the SIV to rebut suggestions that it was filled with poorly performing assets.

so, the Rating Agencies would be forced to introduce additional, complex evidence wholly unrelated to the Cheyne SIV and call "new witnesses." 22A Wright & Graham, Federal Practice and Procedure § 5216, at 117 (quoting 2 Wigmore, Evidence § 443, at 428 (3d ed. 1940)). If the Court permits plaintiffs to broaden this case at the eleventh hour, "the trial will be unduly prolonged, and the multiplicity of minor issues will be such that the jury will lose sight of the main issue, and the whole evidence will be only a mass of confused data from which it will be difficult to extract the kernel of controversy." *Id.*

Further, evidence unrelated to the Cheyne rating process would unfairly invite the jury to decide the case on the basis of plaintiffs' implausible theory that defendants were responsible for the financial crisis. "[P]arties are not permitted to argue to the fact finder's potential economic sympathies or prejudices," *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518–19 (S.D.N.Y. 2008), because such evidence increases "[t]he risk . . . that a jury will convict for [reasons] other than those charged." *United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) (internal quotation marks and citation omitted); *see Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014 PKL, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009). Under Rule 403, plaintiffs should not be allowed to play on jurors' frustrations with the economy, generally, or large financial institutions, specifically, in an effort to obfuscate the question at issue here.

## 2.    Evidence Concerning Persons Who Were Not Responsible for Rating the Cheyne SIV Notes Should Be Excluded

The Court has held that the ratings of the Cheyne SIV are fact-based opinions. *See ADCB*, 2012 WL 3584278, at *10. The Second Circuit has made clear that, with respect to allegations of false opinions, plaintiffs must prove both objective and subjective falsity; further, subjective falsity can be proven only with evidence that the opinion's *speaker* did not genuinely or honestly believe his opinion. *See Fait v. Regions Financial Corp.*, 655 F.3d 105, 111 (2d Cir.

11

2011) (Opinions are only "actionable if they misstate the opinions or belief held . . . *and* are false or misleading with respect to the underlying subject matter they address."); *see also City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 67–68 (2d Cir. 2012).  In other words, for an opinion to be subjectively false, the *speaker* or "originator of the opinion" must have disbelieved the opinion expressed at the time it was made.  *Fed. Housing Fin. Agency* v. *UBS Americas, Inc.*, 858 F. Supp. 2d 306, 325–27 (S.D.N.Y. 2012).  Indeed, *Fait* "impos[es] upon the plaintiff the duty to plead that *the person who formed the opinion* did not believe the opinion when she expressed it."  *Id.* at 325 (emphasis added); *see also In re General Electric Sec. Litig.*, 856 F. Supp. 2d 645, 656 (S.D.N.Y. 2012) ("A statement of opinion is not actionable unless the *speaker* disbelieved it at the time he expressed it.") (emphasis added)).  Because it is undisputed that the Cheyne SIV was rated by each Rating Agency's Cheyne rating committee, plaintiffs must prove that those entities did not genuinely believe their Cheyne SIV rating opinions when they issued them.  *See, e.g.*, Doc. 179, Plaintiffs' Application, dated Oct. 12, 2010, at 5–6 (seeking discovery from "analysts on the *committee of analysts at* [*S&P/Moody's*] *responsible for assigning the Cheyne SIV* with the false credit ratings") (emphasis added).

a.  The Court should ensure that the case remains limited to a specific and focused inquiry into the process used by each rating committee to evaluate the Cheyne SIV Notes.  Evidence directed to other issues is irrelevant and inadmissible.  Fed. R. Evid. 401, 402.  Plaintiffs nonetheless seek to introduce witnesses and documents that have nothing to do with whether the Cheyne rating committees—the "speakers" in this case—believed their respective ratings of the Cheyne SIV Notes.  Several of plaintiffs' witnesses have nothing to do with the Cheyne rating process.  For example, plaintiffs seek to introduce the testimony of:

- **Frank Raiter**: A former S&P employee who left S&P in April of 2005, months before the final rating and the launch of the Cheyne SIV. ■■■■■■■■■■■■■■■■■■■■■■■■



- **Jason Rowe**: ████████████████████████████████████
████████████████████████████████████████
██████████████

- **Jerome Fons**: ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
██   Mr. Fons's testimony would be not only irrelevant but also almost entirely specula-
tive.

The witnesses identified in the Appendix should be excluded as having no personal knowledge

of the Cheyne SIV's rating process, nor any contact with those who were involved in the pro-

cess.[7]

   Documents proffered by plaintiffs on summary judgment and included on their proposed

trial exhibit list further demonstrate their desire to expand the ambit of the already complex

Cheyne SIV case.  These documents include inflammatory, irrelevant statements made by indi-

viduals who neither sat on the Cheyne SIV ratings committees, nor communicated with those

---

[7] These witnesses are subject to additional evidentiary objections.  For example, Mr. Rowe's re-
port and testimony also are inadmissible hearsay.  *See, e.g., Rodriguez* v. *Modern Handling
Equipment of NJ, Inc.*, 604 F. Supp. 2d 612, 623 (S.D.N.Y. 2009).  Plaintiffs' separate *in limine*
motion addresses two other proposed witnesses, Moody's CEO, Raymond McDaniel, and a for-
mer Moody's employee, William Harrington, even though the Court did not authorize briefing
on that issue.  *See* Nov. 12, 2012 Tr. at 22.  While plaintiffs' substantive arguments will be ad-
dressed in defendants' responsive brief, the Court should be aware that those are based in large
part on the demonstrably false assertion that Mr. McDaniel authored or drafted certain internal
memoranda even though both the U.S. Senate Permanent Subcommittee on Investigations Report
(Ex. 10(a), at 277–78 n. 1072–74) and the Financial Crisis Inquiry Commission (Ex. 10(b), at
209–10) confirmed otherwise, as plaintiffs have long been on notice.

who did.  *See*, *e.g.*, Pls'. Opp. to SJ at 13–14.  In one such document, ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████  In

another document, ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████  Where, as here, plaintiffs' fraud claim

turns on the state of mind of the Cheyne SIV rating committees, such documents have no possi-

ble relevance.  Moreover, admission of these comments would necessitate "mini-trials" ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████.[8]

  Plaintiffs' plan to proffer evidence that Fitch Ratings did not rate the Cheyne SIV is

likewise irrelevant to the narrowly focused inquiry presented by plaintiffs' claim: the genuinely

held beliefs of those who *did* rate Cheyne.  No evidence regarding each Rating Agency's rating

committee can be gleaned from Fitch's inaction.  Fitch is a nonparty to this suit and plaintiffs

have provided no evidence that its inaction had any influence on those who rated the Cheyne

SIV.  The jury is not being asked to consider whether each Rating Agency *should* have rated the

---

[8] In a negligent misrepresentation suit against Moody's and S&P relating to the ratings of three SIVs (including Cheyne), a California trial court sustained defendants' objections and summarily rejected admission of these same statements.  Ex. 12.

Cheyne SIV; rather, they are being asked to find facts regarding the ratings themselves.  A non-party's lack of action does not constitute probative evidence.

Ultimately, witnesses, documents, statements, opinions, and facts that cast no light on the subjective beliefs of each Rating Agency's Cheyne rating committee are not germane to the narrow question of whether the Cheyne rating committees issued actionable misstatements. Plaintiffs bear the burden of establishing admissibility, and they have failed to demonstrate how these statements are relevant to the question of whether the Rating Agencies issued a rating knowing that *that rating* was unsupported by facts or analysis.  *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, --- F. Supp. 2d ----, 2013 WL 45878, at *4 (S.D.N.Y. Jan. 3 2013).  Because plaintiffs' claim turns on the falsity of the Cheyne SIV ratings, evidence regarding the state of mind of analysts who did not participate in the Cheyne rating process has *zero* relevance to the case pleaded by plaintiffs.  *See, e.g.*, *Cole Sys. Assocs., Inc. v. Mun. Emergency Servs*., No. 08 CV 6417(BSJ), 2010 WL 4942229, at *1 (S.D.N.Y. Dec. 3, 2010) (excluding the testimony of the defendant's former customer because the testimony concerned a project unrelated to the issue in the case).

*b.*  Even if evidence by, from, or about persons who lacked personal knowledge as to the rating of the Cheyne SIV Notes were minimally relevant to this case, it should be excluded because any minimal probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, and undue delay.  Plaintiffs' attempt to introduce evidence about the beliefs of analysts who did not serve on each Rating Agency's rating committee will have the "likely (and presumably intended) effect" of "shift[ing] the focus away from the relevant evidence"—*i.e.*, each rating committee's alleged wrongdoing—"to the tangentially related [alleged] misdeeds" of other employees.  *United States v. Malpeso*, 115 F.3d 155, 163 (2d

Cir. 1997).  There can be no other reason for plaintiffs to introduce inflammatory comments such as the one by the non-Cheyne rating committee member who stated, ████████████████

████████████████████████████████  Given that the statements cited were not made until years after the rating of the Cheyne SIV, and did not relate to the SIV, they cannot have probative value as to the 2005 state of mind of the members of the Cheyne SIV ratings committees.  Because such evidence will only "elicit a strong negative reaction from the jury for reasons not at all relevant to this litigation," it should be excluded.  *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 323 (S.D.N.Y. 2009).

### 3.   Evidence Concerning Morgan Stanley Unrelated to the Structuring of the Cheyne SIV Should Be Excluded

#### a.   Evidence Concerning Morgan Stanley's Loan-Level Due Diligence Should Be Excluded

Documents and testimony relating to Morgan Stanley's loan-level due diligence are irrelevant and should be excluded.  The "due diligence" at issue was not conducted in connection with the Cheyne SIV transaction (much less the Cheyne SIV ratings at issue in this case), and it was not conducted by or communicated to the Morgan Stanley Cheyne SIV structuring team.  It is thus irrelevant to the pertinent question of whether Morgan Stanley had actual knowledge that the ratings "were both misleading and disbelieved by the Rating Agencies when issued."  *ADCB*, 2012 WL 3584278, at *11.  Plaintiffs can prove such alleged actual knowledge only through those Morgan Stanley employees who worked on structuring the Cheyne SIV and communicated with the rating committees that rated the SIV.  *See Chemtex LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007) (requiring "'actual,' as opposed to merely constructive, knowledge of the primary wrong"); *see also Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D 13, 24 n.11 (S.D.N.Y. 2009) (allegations of a defendant's "collective knowledge" are "insufficient to establish actual knowledge," and cannot be used "when

[plaintiff] is unable to allege that any specific employee(s) had the requisite knowledge").  After years of fact discovery and months of expert discovery, plaintiffs remain unable to establish any connection between Morgan Stanley's loan-level due diligence and the Cheyne SIV.

Plaintiffs have had every opportunity to attempt to establish such a connection through extensive discovery, and have failed to do so.  After moving the Northern District of Texas to compel the deposition of Anton Peterson (a Florida-based Morgan Stanley employee who oversaw loan-level due diligence), plaintiffs did not ask once in his deposition about the Cheyne SIV or credit ratings.  Even though plaintiffs have no evidence that Mr. Peterson had any connection with the Cheyne SIV or Morgan Stanley personnel who were involved in structuring the Cheyne SIV, plaintiffs have included Mr. Peterson on their trial witness list.  Testimony from Mr. Peterson is irrelevant to the issues in this litigation, as are plaintiffs' proposed trial exhibits relating to Morgan Stanley's loan due diligence because they relate to individual mortgage loans that were not held by the Cheyne SIV, ██████████████████ and thus have no relation to the ratings on the Cheyne SIV or the Morgan Stanley Cheyne SIV structuring team.

Documents and testimony related to loan-level diligence are also prejudicial and would substantially lengthen the proceedings—requiring, in addition to Mr. Peterson, a third-party fact witness, two expert witnesses and hundreds of exhibits.  Morgan Stanley's diligence work is complex, and the introduction of such evidence would require Morgan Stanley to call witnesses and offer exhibits to put this work in context, and to make clear to the jury what is abundantly clear already: it has nothing to do with the Cheyne SIV.  *See Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 258 (S.D.N.Y. 2012).  The related risk that the jury could—contrary to the evidence—be confused or misled into impermissibly ascribing

constructive, rather than actual, knowledge to Morgan Stanley only underscores that this evidence should be excluded now.

### b. Evidence Concerning Morgan Stanley's Securitization Business and RMBS Sponsored Assets Should Be Excluded

For the same reasons, documents and testimony relating to Morgan Stanley's securitization business should be excluded. Plaintiffs have listed as trial witnesses Steven Shapiro and Frank Telesca, members of Morgan Stanley's Securitized Product Group who oversaw securitizations. Like Mr. Peterson (discussed above), there is no evidence at all that Messrs. Shapiro and Telesca had any involvement whatsoever with the Cheyne SIV, much less its ratings. Moreover, neither of them has been deposed. Discovery is over, and there is neither any evidentiary basis for these witnesses to appear on plaintiffs' witness list, nor any need for their testimony at trial. Their testimony would be irrelevant to Morgan Stanley's actual knowledge of the allegedly fraudulent ratings of the Cheyne SIV Notes or substantial assistance in the alleged fraud.

Evidence relating to securitization activity at Morgan Stanley should be excluded for the additional reason that it has no bearing on the ratings assigned to the Cheyne SIV. Plaintiffs' proposed witness and exhibit lists seek to introduce voluminous evidence about Morgan Stanley's securitizations, including (1) securitizations never held by the SIV, (2) securitizations that were purchased by the SIV only after the ratings had already been assigned, and (3) securitizations purchased at the SIV's launch. All of this evidence should be excluded.

*Securitizations never held by the SIV.* As this case is about the Cheyne SIV, securitizations that were never held by the Cheyne SIV are irrelevant and must be excluded. The introduction of such evidence would only prolong the trial and confuse the jury.

*Morgan Stanley sponsored assets purchased after launch.* For the same reason, Morgan Stanley sponsored assets that were purchased by the Cheyne SIV only after it had launched—and

its ratings assigned—cannot have any relevance to the ratings at issue or to whether Morgan Stanley had actual knowledge of the alleged fraud or substantially assisted therein.  And, as noted above, the Cheyne SIV Notes were rated based on asset classes, without regard to particular assets, *see supra* pp. 4–6.  Documents and testimony about such individual assets are irrelevant.

*Morgan Stanley sponsored assets purchased at launch*.  Documents concerning the few Morgan Stanley securitizations the SIV purchased at launch are no more relevant.  Of the twenty-three Morgan Stanley sponsored assets that the Cheyne SIV held at any point, only *thirteen* were among the first assets purchased by the SIV at its launch.  Of those thirteen, only *six* were still in the Cheyne SIV's portfolio at the time of default: the others were sold, and thus could not possibly have had any bearing on any investor losses.[9]  *Compare* Ex. 13(a), at -957, -965, *with* Ex. 13(b), at -518, -602.  Because the ratings were not based on individual assets, evidence about these securitizations is irrelevant for the same reasons.

For the reasons above, documents and testimony concerning Morgan Stanley securitizations are irrelevant and should be excluded.  The introduction of such evidence would lengthen the trial and substantially prejudice Morgan Stanley.  If plaintiffs were permitted to introduce such evidence, Morgan Stanley would need to introduce a significant amount of evidence to place plaintiffs' evidence in context and demonstrate to the jury its irrelevance to the allegations.  Again, the risk of juror confusion only underscores the need to exclude this irrelevant evidence.

### c.    Evidence Relating to the Morgan Stanley Personnel Who Worked Exclusively on the Warehouse Should Be Excluded

Plaintiffs intend to call as trial witnesses three Morgan Stanley personnel who worked on the trading desk and played various roles with respect to the warehouse:  Howard Hubler, Brett

---

[9] This evidence is also irrelevant to loss causation.  Those six assets had no effect on the Cheyne SIV's entry into Enforcement.  *See* Ex. 2(c), at 48–49.  The Rebuttal Report of Plaintiffs' expert, Michael A. Goldstein, contains no response.

Kalesky, and Erik Siegel.  There is no evidence, however, that these proposed witnesses—none of whom have been deposed—had any involvement in structuring the SIV or communicating with the rating committees that rated the SIV.  These individuals' limited roles, along with the irrelevant, potentially confusing nature of the warehouse financing itself, require the exclusion of their testimony.

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Morgan Stanley did not and could not select any assets that would ultimately become part of the Cheyne SIV portfolio ███████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████   ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

   Because Messrs. Hubler, Kalesky and Siegel were not involved in the ratings process, their work on the warehouse is entirely irrelevant to whether Morgan Stanley had actual knowledge of or substantially assisted in the Rating Agencies' alleged fraud and they should be excluded from trial.  Moreover, if such evidence were admitted, it would confuse the jury and lengthen trial with three additional witnesses and corresponding documents, again requiring substantial explanation by Morgan Stanley in order to put into context and demonstrate the irrelevance of this complex and unfamiliar financing arrangement.  The risk of juror confusion is par-

ticularly acute because, throughout this litigation, plaintiffs have labored to mischaracterize the warehouse facility in an effort to ascribe to Morgan Stanley an asset selection role that all witnesses—even plaintiffs themselves—admit resided exclusively with Cheyne Capital, not with Morgan Stanley. *See, e.g.*, Ex. 6. at 107:6–109:16, 112:17–113:18; Ex. 7(a). at 228:12–16. Plaintiffs should not be permitted to introduce irrelevant evidence concerning this pre-launch financing arrangement, which can serve (and has been advanced) only to confuse and mislead.

### d. Evidence Concerning Morgan Stanley, Unrelated to and Post-Dating the Structuring of the SIV Should Be Excluded

Plaintiffs seek to introduce irrelevant documents and testimony concerning Morgan Stanley employees' comments on and evaluations of the Cheyne SIV years after the SIV launched. As explained above, documents and testimony concerning Morgan Stanley are only relevant to the extent that they bear on the actual knowledge and assistance of the Morgan Stanley structuring team at the time the ratings were issued. Post-launch evaluations of the Cheyne SIV's structure or rating are not probative of actual knowledge or substantial assistance at the time of ratings; they are hindsight and must be excluded. *See ADCB*, 2012 WL 3584278, at *12–13. Documents containing, for example, valuations of the Cheyne SIV portfolio and inflammatory comments taken out of content, such as an email sent in the summer of 2007 that refers to the SIV as a "[s]ort of a CP roach motel," Ex. 11(c), are entirely irrelevant to whether the structuring team had actual knowledge of and substantially assisted in the alleged fraud.[10]  These irrelevant documents and any corresponding testimony are only intended to prejudice Morgan Stanley and confuse the jury and therefore must be excluded.

---

[10] The testimony of Navindu Katugampola should be precluded for the same reason. ███████████████ ████████████████████████████████████████████████ The testimony of Ralph Al Raheb is similarly irrelevant. ██████████████ ██████████████████████████████████████████████████

4.    **Evidence About Defendants' Revenue Unrelated to the Cheyne SIV Should Be Excluded**

Any evidence regarding defendants' general corporate wealth or revenue earned unrelated to rating the Cheyne SIV should be excluded.  It is undisputed that defendants—like the vast majority of plaintiffs—are for-profit enterprises whose goal is to maximize shareholder value. But evidence that defendants have been successful in that endeavor as a general matter sheds no light on whether each rating committee genuinely believed its rating opinion when issued (or any other issue relevant to liability).  "[T]he desire to maximize revenue from a product"—here, the Rating Agencies' rating of any structured finance product or Morgan Stanley's structuring of those products—"can be ascribed to any for-profit company in any industry[,]" and thus is irrelevant to demonstrating each rating committee's state of mind.  *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 570 (S.D.N.Y. 2011); *cf. Wells Fargo Bank Northwest N.A. v. Taca Int'l Airlines*, 247 F. Supp. 2d 352, 365 (S.D.N.Y. 2002) ("[A] generalized profit motive that could be imputed to any for-profit company, is insufficient for purposes of inferring scienter." (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)).  This evidence, introduced to further plaintiffs' improper attempt to try the ratings system, is irrelevant to the Cheyne SIV's rating processes.[11]  Moreover, allowing plaintiffs to introduce evidence of defendants' non-Cheyne revenue and profits would be enormously prejudicial.  As the Court has already recognized, "To

---

[11] And as to the Cheyne SIV, plaintiffs should be precluded from arguing to the jury that S&P "received three times their normal corporate rating fees for rating the [Cheyne] SIV."  Pls'. Opp. to SJ at 17 (citing Opp. to Statement of Undisputed Facts ¶¶ 8(a) and 8(b)).  The only basis plaintiffs cite for this contention is the double hearsay statement of two individuals not affiliated with S&P, which in turn cites to a Bloomberg article that compares fees for an unspecified "CDO" (not a SIV) and an unspecified corporate bond.  By contrast, the only admissible (and dispositive) evidence in the record on the comparison of SIV fees to corporate rating fees is the sworn testimony of an S&P employee with direct knowledge of the fees S&P charged for rating SIVs. He directly contradicts plaintiffs' unsupported claim, ███████████████████████████
███████████████████████████████████████████████

just have big numbers floating around to sort of try to prejudice the jury is not right. . . . [Plaintiffs cannot] make [defendants] out to be bad actors because they're rich."   Nov. 12, 2012 Hr'g Tr. at 56–57.  In other words, introducing this type of evidence serves no other purpose than to entice the jury into rendering a "decision on an improper basis," *Old Chief v. United States*, 519 U.S. 172, 180 (1997)—namely, "soaking" the successful corporations involved.  This appeal to inflame anti-corporate sentiment amongst the jury is impermissible.[12]

### 5. Statements Relating to Non-Cheyne Activities of Defendants, Including After-the-Fact Reports and Other Lawsuits against Defendants, Should Be Excluded

Through their proposed exhibit list, plaintiffs have indicated their intention to introduce evidence of government reports and investigations, and their underlying testimony, exploring the causes of the unprecedented financial crisis.[13]  Plaintiffs may also attempt to proffer evidence about other lawsuits involving defendants.[14]  Such evidence should be excluded for three independent reasons.

*First*, government reports, investigations, congressional testimony, and other lawsuits in

---

[12] *See Koufakis* v. *Carvel*, 425 F.2d 892, 902 (2d Cir. 1970) ("[S]uggesting that the defendant should respond in damages because he is rich and the plaintiff is poor, are grounds for a new trial."); *Brough* v. *Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002) ("The general rule is that, during trial, 'no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's.'") (citation omitted); *Geddes* v. *United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("It has been widely held by the courts . . . that the financial standing of the defendant is inadmissible as evidence in determining the amount of compensatory damages to be awarded.").

[13] Examples of plaintiffs' proffered evidence include reports issued by the Financial Crisis Inquiry Commission ("FCIC"), the U.S. Securities and Exchange Commission ("SEC"), and the Senate Permanent Subcommittee on Investigations ("PSI").

[14] In the past five years, defendants have been sued in state and federal courts by public and private entities looking to place blame for the losses suffered as a result of the unprecedented financial crisis. Similarly, like many large corporations, defendants also have faced employment lawsuits lodged by former employees.  With the exception of the California state-court case discussed above, none of these lawsuits is premised on the Cheyne SIV.

the wake of the financial crisis are not relevant to the key disputed issue in this case—whether each Rating Agency's rating committee disbelieved its rating of Cheyne at the time of the rating opinion's issuance—or to any other issue of consequence.  Not a single one of these reports or investigations is premised on or directed to the allegedly fraudulent rating of the Cheyne SIV. Moreover, not a single one of these reports or investigations, or any of the underlying testimony, sheds any light on either rating committee's state of mind when issuing the Cheyne rating opinions.  Not only were these government inquiries not initiated until well after the Cheyne SIV entered Enforcement; they only offer hindsight allegations of wrongdoing with respect to *other* investments.[15]  In a similar vein, unproven lawsuits and factual allegations about *other* investments and *other* structured finance products are not probative of *actual* alleged wrongdoing in this case. Because these government reports, investigations, Congressional testimony, and other lawsuits lack any probative value to any of the disputed issues in this case (and most especially the key disputed issue: state of mind), this Court should exclude them under Rule 402.

*Second*, government reports and investigations, their underlying testimony, and other lawsuits constitute inadmissible hearsay not covered by any exception to the hearsay rule.  With respect to government reports and investigations, courts routinely exclude evidence of government reports as inadmissible hearsay not subject to any exception.  *See Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986); *Anderson v. City of New York*, 657 F. Supp. 1571, 1578–80 (S.D.N.Y. 1987); *Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810, 814 (D.D.C. 1987); *In re September 11 Litig.*, 621 F. Supp. 2d 131, 157 (S.D.N.Y. 2009) ("The im-

---

[15] The post-hoc quality of such review renders of dubious relevance most documents created after the launch of the Cheyne vehicle.  The more distant evidence is from the initial rating, either temporally or spatially, the less relevance it has. At some point such evidence becomes categorically inadmissible, the plaintiffs' explanatory burden becomes insurmountable, or both.  Indeed, the Court recognized this manageability concern at the last conference.  *See* Jan. 7, 2013 Hr'g Tr. at 57.

primatur of the [government report] would extend to findings that were not fully tested and could not adequately be rebutted.").  Likewise, the Second Circuit and district courts in this circuit routinely exclude references to other lawsuits, including their factual allegations and evidence, as inadmissible hearsay not subject to any exception.  *See, e.g.*, *D'Cunha* v. *Genovese/Eckerd Corp.*, 415 F. App'x 275, 278 (2d Cir. 2011) (holding that the district court "properly excluded the complaint, the answer, and [plaintiff's] deposition, as these documents were inadmissible hearsay"); *Park W. Radiology*, 675 F. Supp. 2d at 330 (excluding evidence concerning other lawsuits brought against the defendant as inadmissible hearsay).  This Court should do the same.

*Third*, even assuming the minimal relevance of such evidence, its probative value is substantially outweighed by the risks of prejudice, confusing the issues, and misleading the jury. Although government reports contain mere allegations—allegations that have not been proven through an adversarial review process, *see In re Sept. 11 Litig.*, 621 F. Supp. 2d at 157 (admission of a government report "cannot be permitted to displace the time-tested search for truth by examination and cross-examination")—their formal nature and tone could easily mislead a jury as to the significance of their contents and result in jurors placing undue weight on the findings. *See, e.g.*, *City of New York v. Pullman*, 662 F.2d 910, 915 (2d Cir. 1981); *Sept. 11 Litig.*, 621 F. Supp. 2d at 157.  Similarly, courts in this circuit routinely exclude evidence of other lawsuits brought against a party because "any probative value of references to the [o]ther [l]itigations is substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, and waste of time under [Rule] 403."  *Park W. Radiology*, 675 F. Supp. 2d at 330; *see also AFTRA*, 860 F. Supp. 2d at 253 (noting that "[c]ourts generally exclude evidence of other related lawsuits"; granting defendant-securities lending agent's motion in limine to exclude "evidence of the existence of similar lawsuits [against other securities lending agents]").  As the Second Cir-

cuit has emphasized, admitting such evidence "'inevitably result[s] in trying those cases . . . before the jury,' and '[t]he merits of the . . . other cases would become inextricably intertwined with the case at bar.'"  *Arlio* v. *Lively*, 474 F.3d 46, 53 (2d Cir. 2007) (citation omitted).  This case is no different: allowing such references would transform this case, one limited to the Cheyne SIV, into a general inquest as to the financial crisis, in which the merits of those lawsuits and reports would become of issue, thereby confusing the issues, misleading the jury, and inevitably leading to additional counter-evidence and testimony.

**6.    Evidence Relating to the Treatment of HELs as LEAs Should Be Excluded[16]**

Plaintiffs also should be precluded from introducing evidence concerning the classification of HELs as LEAs because such classification had no effect whatsoever on the outcome of the Cheyne SIV or on plaintiffs' losses.  Plaintiffs have previously argued that Morgan Stanley "strong-armed [the rating agencies] into classifying HELs as 'liquid' in performing critical liquidity tests" and that "Moody's later admitted that this 'was a mistake.'"  Pls'. Opp. to SJ at 10. However, plaintiffs have not established any factual basis for such arguments, ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████  Plaintiffs offered no evidence to the contrary.  *See* Expert Report of Michael A. Goldstein; ████████████████████  As such, the classification of HELs as LEAs is irrelevant to plaintiffs' claims and, if allowed, would unduly prejudice defendants and confuse the jury with

---

[16] Defendants did not include this motion in their pre-motion letter to the Court because it arose in connection with expert discovery and plaintiffs' November 26, 2012 pretrial order.

complicated, and unnecessary, evidence and testimony.

## C. LIMITING INSTRUCTIONS WILL NOT CURE THE PREJUDICE POSED BY THESE CATEGORIES OF EVIDENCE

A limiting instruction—no matter how carefully given—could not cure the prejudice that surely would result from introducing the evidence discussed in this motion. Such an instruction is insufficient to cure the risk of prejudice where the "jury [would] be called upon to perform humanly impossible feats of mental dexterity" to merely hew to a limiting instruction. *United States v. McDermott*, 245 F.3d 133, 139–40 (2d Cir. 2001). Allowing the jury to hear highly complex evidence unrelated to Cheyne as part of a broader case about the entire ratings system would require just that. Admission of the irrelevant evidence plaintiffs propose to proffer would certainly and immediately cloud the issues and confuse the jury, not to mention waste the limited time allocated for trying the true subject of this case: *the ratings of the Cheyne SIV Notes*. And the presentation of inflammatory evidence purportedly linking defendants to the allegedly false rating of irrelevant structured finance products would only compound the confusion and allow plaintiffs to succeed with their gambit of misdirection.

## D. PLAINTIFF WITNESSES SHOULD BE PRECLUDED FROM TESTIFYING AS TO SUBJECTS ABOUT WHICH THEIR RULE 30(B)(6) DESIGNEES DISCLAIMED KNOWLEDGE[17]

Plaintiffs should not be permitted to engage in trial by surprise, and call witnesses to testify as to key subjects about which their Rule 30(b)(6) corporate representatives ("designees") disclaimed knowledge. Notwithstanding plaintiffs' clear obligation to prepare their designees on the topics included in the 30(b)(6) notices, *see Reilly v. Natwest Markets Grp., Inc*., 181 F.3d 253, 268 (2d Cir. 1999), a number of their designees disclaimed knowledge of topics that go to

---

[17] Defendants did not include this motion in their pre-motion letter to the Court because it arose out of plaintiffs' November 26, 2012 pretrial order.

the heart of plaintiffs' claims.  As a result, plaintiffs frustrated defendants' attempts to get discovery regarding the basis of plaintiffs' investment decisions.  Plaintiffs now seek to call at trial those designees who disclaimed such knowledge, and in some instances to call other witnesses, presumably to testify as to those subjects on which their designees were unprepared.  Plaintiffs should not be permitted to benefit from their strategic decision not to educate designees and then to spring those witnesses (or others who have knowledge of those critical topics) at trial.

The Second Circuit has approved similar relief, holding that a trial court has discretion to preclude a party from offering trial testimony on a topic if the party's designee was unable to answer questions about that topic during his deposition.  *Reilly*, 181 F.3d at 268–69.  As described below, the inadequacies in certain 30(b)(6) deponents' testimonies were egregious enough to justify this relief.  *Cf. Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y. 2007); *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, No. 07 Civ. 930, 2009 WL 3270794, at *3 (S.D.N.Y. Oct. 13, 2009).

For example, in addition to **SFT's designee**, Phillip Picariello, SFT has now designated Ty Danco as a trial witness. ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████   ██████████████
████████████████   **Commerzbank** designated Sascha Klaus as its 30(b)(6) witness, and has now designated Marianne Medora as a trial witness. ████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████

**SinoPac** designated James Chen as its 30(b)(6) witness, and has now designated Ted

28

Liao as a trial witness.  Mr. Chen testified that Mr. Liao approved SinoPac's investment in the Cheyne SIV, but that Mr. Liao was not employed by SinoPac at the time of the 30(b)(6) and refused to help prepare Mr. Chen for his testimony.  *See* Ex. 8(b), at 10:22–11:5.  Mr. Chen was unable to testify regarding what documents Mr. Liao reviewed prior to approving the Cheyne SIV investment, or what role the ratings played in Mr. Liao's analysis.  *Id.*, at 26:17–28:5.  **GIB** designated Yaser Humaidan as its 30(b)(6) witness, and has now designated Massood Zafar as a witness for trial.  Although Mr. Humaidan consulted Mr. Zafar prior to testifying, Mr. Humaidan testified that he did not know what information Mr. Zafar reviewed before making the determination to invest in the Cheyne SIV.  Ex. 8(c), at 27:11–28:7, 69:18–23.  Mr. Humaidan was unable to testify as to what information the GIB investment committee relied on in approving the Cheyne investment.  *See, e.g., id.*, at 24:2–25:19, 27:11–29:20.

Plaintiffs frustrated defendants' attempts to get discovery on these key issues, so now they should bear the consequences of those actions.  Accordingly, defendants respectfully request that the Court preclude plaintiffs' witnesses from testifying as to subjects about which their Rule 30(b)(6) designees disclaimed knowledge.

\*        \*        \*

Two starkly divergent paths lay before the Court.  On the one hand, the Court could continue to limit the scope of this case to the crucial issue: the rating of the Cheyne SIV—the case that plaintiffs have alleged, and the case that this Court envisioned in its orders, hearings, and statements.  The trial will be large, complex, novel, and expensive—but manageable.  On the other hand, the Court could allow plaintiffs to broaden the case to encompass the entire structured finance universe, including the Rating Agencies' ratings of *all* structured finance products, even though review of these ratings was not part of the Cheyne rating committees' rating pro-

cesses.  If the Court allows plaintiffs to transform the scope of this case on the eve of trial to en-

compass the broad categories of irrelevant evidence discussed in this memorandum, the trial will

become larger, more complex, even more expensive—and wholly unmanageable.

### IV.   CONCLUSION

For these reasons, this Court should grant defendants' omnibus motion in limine and ex-

clude documents and testimony concerning the following categories of evidence unrelated to the

rating of the Cheyne SIV Notes, and as specifically listed in the Appendix: (1) the rating

processes for structured finance products other than the Cheyne SIV Notes; (2) persons who

were not responsible for rating the Cheyne SIV Notes; (3) (a) Morgan Stanley's loan due

diligence; (b) Morgan Stanley's securitization business and RMBS assets sponsored by Morgan

Stanley; (c) Morgan Stanley's personnel who worked exclusively on the Morgan Stanley

warehouse; (d) Morgan Stanley, unrelated to and post-dating the structuring of the SIV; (4)

defendants' revenue received unrelated to the Cheyne SIV; (5) after-the-fact-commentary on the

financial crisis, including government testimony or reports and other lawsuits against defendants;

and (6) the treatment of HELs as LEAs.  The Court should also preclude plaintiff witnesses from

testifying as to subjects about which their corporate designees disclaimed knowledge.

Respectfully submitted.

Dated:   January 21, 2013
         New York, New York

DAVIS POLK & WARDWELL LLP

By:  _____

James P. Rouhandeh
james.rouhandeh@davispolk.com
Antonio J. Perez-Marques
antonio.perez@davispolk.com
Richard A. Cooper
richard.cooper@davispolk.com
Gina Castellano
gina.castellano@davispolk.com
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
(212) 701-5800 (fax)
*Attorneys for Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited*

CAHILL GORDON & REINDEL LLP

By:  _____

Floyd Abrams
fabrams@cahill.com
Dean Ringel
dringel@cahill.com
Charles A. Gilman
cgilman@cahill.com
Tammy L. Roy
troy@cahill.com
Jason M. Hall
jhall@cahill.com
80 Pine Street
New York, NY 10005
Telephone: (212) 701-3000
(212) 269-5420 (fax)
*Attorneys for Defendants Standard & Poor's Ratings Services and The McGraw-Hill Companies, Inc.*

SATTERLEE STEPHENS BURKE & BURKE
LLP

By:
_____
James J. Coster
jcoster@ssbb.com
Joshua M. Rubins
jrubins@ssbb.com
James Doty
jdoty@ssbb.com
230 Park Avenue, 11th Floor
New York, NY 10169
Telephone: (212) 818-9200
(212) 818-9606 (fax)
*Attorneys for Defendants Moody's Investors Service, Inc. and Moody's Investors Service, Ltd.*

GIBSON, DUNN & CRUTCHER LLP

By:   /s/ Mark A. Kirsch             
        Mark A. Kirsch
        mkirsch@gibsondunn.com
        Joel M. Cohen
        jcohen@gibsondunn.com
        Lawrence J. Zweifach
        lzweifach@gibsondunn.com
        Christopher M. Joralemon
        cjoralemon@gibsondunn.com
        Mary Kay Dunning
        mkdunning@gibsondunn.com
        200 Park Avenue, 48th Floor
        New York, NY 10166
        Telephone: (212) 351-4000
        (212) 351-4035 (fax)
        *Attorneys for Defendants Moody's Investors Service, Inc. and Moody's Investors Service, Ltd.*