

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ABU DHABI COMMERCIAL BANK, et al.,

                Plaintiffs,

    - against -

MORGAN STANLEY & CO. INC., MORGAN
STANLEY & CO. INTERNATIONAL LTD.,
MOODY'S INVESTORS SERVICE, INC.,
MOODY'S INVESTORS SERVICE LTD.,
STANDARD AND POOR'S RATINGS
SERVICES and THE MCGRAW HILL
COMPANIES, INC.,

                Defendants.

------------------------------------------------------------X

**OPINION AND ORDER**

08 Civ. 7508 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

I.    **INTRODUCTION**

       Defendants challenge this Court's subject matter jurisdiction under 28 U.S.C. § 1332[1] on the ground that joinder of the Commonwealth of Pennsylvania Public School Employees' Retirement System ("PSERS") and the State Board of Administration of Florida ("FSBA") destroys diversity jurisdiction because PSERS

---

[1] The relevant provision of Section 1332 creates federal jurisdiction over civil actions between citizens of different States where the matter in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

and FSBA are arms of their respective States, and not *citizens* of *any* state.[2] Plaintiffs argue that the Court has supplemental jurisdiction over the claims of non-diverse parties joined under Federal Rule of Civil Procedure 20 and, moreover, that entities which are citizens of *no* state do not destroy diversity. In addition they argue that FSBA is not an arm of the state of Florida. I conclude that joinder of an arm of the State under Rule 20 destroys diversity jurisdiction, but that only PSERS is an arm of the state requiring dismissal in order to preserve this Court's jurisdiction.[3]

## II. APPLICABLE LAW[4]

### A. Supplemental Jurisdiction

Section 1367(a) provides in relevant part that:

---

[2] Defendants raised this motion by letter dated November 26, 2012, to which plaintiffs responded on December 3, 2012. I heard argument on January 7, 2013 and the parties submitted additional letters in support of their positions on January 11, 2013. At the Court's request plaintiff FSBA submitted a third letter on January 25, 2013.

[3] Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." "This Rule allows the district court to dismiss . . . parties whose presence in the litigation destroys jurisdiction [] if those parties are not indispensable and if there would be no prejudice to the parties [and] proceed as if the nondiverse parties were never part of the case." *In re Lorazepam & Clorazepate Antitrust Litig.*, 631 F.3d 537, 542 (D.C. Cir. 2011).

[4] Familiarity with the background of this case is presumed and is unnecessary to resolution of the matter at hand.

> Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.[5]

Subsections (b) and (c) expressly foreclose supplemental jurisdiction over claims of non-diverse plaintiffs joined under Rule 19 (for necessary parties), claims of a non-diverse absentee seeking to intervene as a plaintiff under Rule 24, and claims *against* a non-diverse party joined under Rules 14, 19, 20 or 24.[6]

### B.   Arm of the State Analysis

It is well established that "a State is not a 'citizen' for purposes of [] diversity jurisdiction."[7] This restriction extends to a plaintiff who is an arm or alter ego of a state.[8] In determining whether an entity was an arm of the state for diversity purposes, the Supreme Court declined to accept a county's own characterization of its relationship with the state of California and instead conducted "a detailed examination of the relevant provisions of California law –

---

[5]   28 U.S.C. § 1367(a).

[6]   *See id.* § 1367(b), (c).

[7]   *Moor v. Alameda*, 411 U.S. 693, 717 (1973).

[8]   *See id.*

3

beyond simply the generalization contained in . . . the state constitution."[9] Although it did not establish a formal test, the Supreme Court considered six factors in reaching the conclusion that a California county was not an arm of the state: (1) whether it had "corporate powers and [was] designated a body corporate and politic;" (2) whether it "could sue and be sued;" (3) whether it was "a local public entity in contrast to the State and state agencies;" (4) whether it was "liable for all judgments against it [and] authorized to levy taxes to pay such judgments;" (5) whether it could "sell, hold, or otherwise deal in property;" and (6) whether it was "empowered to issue general obligation bonds payable from county taxes" which "create no obligation on the part of the State."[10]

The Second Circuit has not elaborated on the approach set forth in *Moor* for determining whether a governmental entity is a citizen for purposes of diversity jurisdiction,[11] although it has addressed the question. In *World Trade Center Properties, L.L.C. v. Hartford Fire Ins. Co.*, the court made clear that the fact that an entity is a "state-created body" with obligations to the state does not

---

[9] *Id.* at 719.

[10] *Id.*

[11] *See Eastern Savings Bank v. Walker*, 775 F. Supp. 2d 565, 569 (E.D.N.Y. 2011) ("The Second Circuit has not written extensively on its approach for determining whether a governmental entity is a citizen for purposes of diversity jurisdiction.").

4

foreclose the possibility of its being a citizen for diversity purposes.[12]  The Second Circuit held that the Port Authority was a citizen for diversity purposes where it was defined under New York Law as "'a body corporate and politic'" with the mission of "'development of public transportation, terminal, and other facilities of commerce,'" and "'governed by a board of commissioners, whose resolutions are essentially legislative acts of the bi-state entity that must be approved by the governors of both states.'"[13]  In another case, the Second Circuit found that the Connecticut Development Authority, which was alleged to be "an agency of the State of Connecticut" was "a political subdivision of the state that is empowered to sue and be sued" and therefore was "a citizen of Connecticut for purposes of diversity of citizenship."[14]

## III.   DISCUSSION

### A.   Supplemental Jurisdiction Over Non-Diverse Plaintiffs

---

[12]   *See* 345 F.3d at 162–63.

[13]   *Id.* (quoting *Baron v. Port Auth.*, 271 F.3d 81, 83 (2d Cir. 2001) (citing N.Y. Unconsol. Law §§ 6403-07, 7151-52)).  The court also found that the fact that the entity had been treated as a political subdivision of the state and denied sovereign immunity weighed against finding it was an arm of the state.  *See id.*

[14]   *N.Y. Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 n.5 (2d Cir. 1983) (citing *Illinois v. City of Milwaukee*, 406 U.S. 91, 97 (1972)).

### 1.  Joinder of Non-Diverse Plaintiffs Under Rule 20 Destroys Diversity Jurisdiction

This case involves plaintiffs joined under Rule 20 and therefore is not explicitly excluded from supplemental jurisdiction under Section 1367(a).  In *Exxon Mobil Corp. v. Allapattah Services*, the Supreme Court authorized exercise of supplemental jurisdiction over plaintiffs joined under Rule 19 who did not independently meet the amount-in-controversy requirement.[15]  The Court specifically noted that "[n]othing in the text of § 1367(b) . . . withholds supplemental jurisdiction over the claims of plaintiffs permissively joined under Rule 20 . . . ."[16]  However, the Court distinguished incomplete *diversity*, which it held "destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere."[17]

If this statement in *Exxon* left any doubt as to whether supplemental jurisdiction exists over the claims of non-diverse plaintiffs, in *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, the Second Circuit clarified that "a defect of [diversity, as opposed to amount-in-controversy] eliminates every claim in the action, including any jurisdictionally proper action that might otherwise have anchored

---

[15]  *See* 545 U.S. 546 (2005).

[16]  *Id.* at 560.

[17]  *Id.* at 554.

original jurisdiction, and *removes the civil action from the purview of § 1367 altogether*."[18] In short, both the Supreme Court and the Second Circuit have held that the presence of a non-diverse plaintiff "deprives the court of original jurisdiction over the entire action."[19] Therefore, joinder of a non-diverse party, whether under Rule 19 or Rule 20 would destroy this Court's subject matter jurisdiction.[20]

### 2. Joinder of *Non-Citizen* Plaintiffs Violates the Complete Diversity Requirement

Plaintiffs argue that the above conclusion does not resolve the issue of whether PSERS and FSBA must be dropped from the case. They raise the

---

[18] *See* 500 F.3d 171, 179 (2d Cir. 2007) (emphasis added) (citing *Exxon*, 545 U.S. at 564 ("[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original jurisdiction over the entire action.")). The Second Circuit explained that "[t]he reason for the different treatment of these two § 1332 requirements is found in their differing purposes. The purpose of the amount-in-controversy requirement, on one hand, is fulfilled by a single claim of sufficient importance to warrant a federal forum and is not negated by additional, smaller claims. A failure of diversity, on the other hand, contaminates the action, so to speak, and takes away any justification for providing a federal forum." *Id.*

[19] *Exxon*, 545 U.S. at 564.

[20] *See Merrill Lynch*, 500 F.3d at 179 ("It is now apparent that the contamination theory furnishes limitations on joinder in certain circumstances that may well extend beyond the restrictions listed in § 1367(b)."); *id.* ("[J]oinder of [a citizen of the same state as a defendant] does not fall within any such exception. A leading practice treatise says "parties that are joined under Rules 19 *and 20* ... must independently satisfy the jurisdictional requirements.").

seemingly novel argument that the "contamination theory" is inapplicable to joinder of parties that are not technically citizens of *any* state, and certainly are not citizens of the same state as defendants (*i.e.* non-diverse). While there is some logic to their argument,[21] every court to address the question, including the Second Circuit, has held that the initial inclusion of an arm of the state *destroys* complete diversity where it would otherwise exist and plaintiffs cite no case in support of their argument.[22] Therefore, joinder of an arm of the state would defeat diversity

---

[21]     *Exxon* merely held that "the presence . . . of a single plaintiff *from the same State as a single defendant* deprives the district court of original jurisdiction over the entire action." 545 U.S. 562 (emphasis added). The court in *Merrill Lynch* noted that "[t]he Supreme Court d[id] not define the reach of the contamination theory . . . but instead relie[d] on the Court's consistent construction of the complete diversity rule." *Merrill Lynch*, 500 F.3d at 179. It is not obvious that joinder of entities which are not citizens of *any* state implicate the contamination theory that is the basis for the restriction on joinder of non-diverse parties. *Moor v. Alameda* held only that a state or arm of the state may not form the *basis* for federal diversity jurisdiction. 411 U.S. at 717 ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."). By the same token, as *non*-citizens, these entities do not obviously *destroy* federal diversity jurisdiction where it otherwise exists. The contamination theory is premised on the idea that "there is no justification for providing a federal forum where there are non-diverse parties on both sides of the lawsuit." *Exxon*, 545 U.S. at 562. To the extent that these arms of the state were citizens, they would unquestionably be diverse from defendants. Thus, one might argue that the fact that they are not citizens at all should not destroy federal jurisdiction, just as the fact that they are not citizens cannot create it.

[22]     *See, e.g.*, *World Trade Center Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 161 (2d Cir. 2003) *abrogated on other grounds in Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) ("Defendant Port Authority presents a closer question on jurisdiction because it is a state-created body, thereby raising the

jurisdiction.

### B. Whether the FSBA Is an Arm of the State for Diversity Purposes

Plaintiffs concede that PSERS is an arm of Pennsylvania. Therefore, in light of the foregoing conclusions, it must be dismissed. However, plaintiffs dispute that the FSBA is an arm of the state of Florida. Although federal law governs the analysis of when an entity is an arm of the state for diversity purposes, Florida law governs this Court's understanding of the FSBA's relationship to the State, federal law governs the analysis of when an entity is an arm of the state for diversity purposes.[23]

---

possibility that it is a not a "citizen" of any state, the effect of which would be to destroy diversity."); *Long v. District of Columbia*, 820 F.2d 409, 416 (D.C. Cir. 1987) (holding that, absent dismissal of the District of Columbia, federal diversity jurisdiction would be lacking in suit against a diverse co-defendant); *Chisholm v. United of Omaha Life Ins. Co.*, 514 F. Supp. 2d 318, 322 (D. Conn. 2007) (finding that the inclusion of a state agency as a defendant "destroy[ed] complete diversity"); *Tomback v. UnumProvident Corp.*, No. 05 Civ. 3157, 2005 WL 2596449, at *3 (N.D. Cal. Oct. 13, 2005) (finding no diversity jurisdiction due to inclusion of the California Commissioner of Insurance in a suit against diverse insurers); *Batton v. Georgia Gulf*, 261 F. Supp. 2d 575, 583 (M.D. La. 2003) (finding that "[n]owhere is there any provision allowing diversity jurisdiction where a non-citizen state is a party"); *Jakoubek v. Fortis Benefits Ins. Co.*, 301 F. Supp. 2d 1045, 1049 (D. Neb. 2003) (finding that "[s]ince the State defendants are not citizens, they and the plaintiff cannot be citizens of different states" for the purposes of Section 1332); *Wilkerson v. Missouri Dep't of Mental Health*, 279 F. Supp. 2d 1079, 1080 (E.D. Mo. 2003) ("The inclusion of a Missouri state agency as a defendant . . . destroys the required diversity of citizenship").

[23] *See Moor*, 411 U.S. at 718-19 (looking to California law to determine the status of a California county for purposes of resolving, under federal law,

The FSBA is a creation of Florida law tasked with "invest[ing] all . . . funds specifically required by law to be invested by the board."[24]  "The [FSBA] may invest any funds of any state agency, any state university or college, any unit of local government [et cetera] . . . pursuant to the terms of a trust agreement [with the head of the relevant entity]" subject to approval by the Board.[25]  It is the duty of the FSBA to "see that the moneys [it invests on behalf of various state and local entities] are at all times handled in the best interests of the state."[26]

The question whether the FSBA is sufficiently distinct from the state to render it a Florida citizen is a difficult one.  The FSBA is charged with investing on behalf of state *and* municipal entities, and is closely aligned with the state.  For example, the FSBA is accounted for in the State of Florida's audited financial statements as a "blended component unit" meaning "either (1) the component unit's governing body is substantively the same as the governing body of the state or (2) the component unit provides services entirely, or almost entirely, to the state or otherwise exclusively, or almost exclusively, benefits the state even though the

---

whether it was a citizen of California for diversity purposes).

[24]     Fla. Stat. Ann. § 215.44(1).

[25]     *Id.*

[26]     *Id.* § 215.44(2)(a)(1).

component unit does not provide services directly to the state."[27]

However, the Florida Supreme Court opined on the question, albeit over fifty years ago, and, until that decision is overturned, its interpretation of Florida law largely settles the matter. As a Florida District Court applying the factors set forth in *Moor* held, "[t]he Florida Supreme Court has characterized the FSBA as a 'body corporate' which is distinguishable from the State of Florida."[28] In *Holland v. Watson*, the court recognized that "the duties of the [FSBA] are in

---

[27] Summary of Significant Accounting Policies, Comprehensive Annual Financial Report of the State of Florida for the fiscal year ended June 30, 2011, at 54, http://www.myfloridacfo.com/aadir/statewide_financial_reporting/1entirecafr11.pdf. The Governmental Accounting Standards Board ("GASB") summary states that because blended component units are "so intertwined with the primary government that they are, in substance, the same as the primary government" the units should essentially be "reported as part of the primary government." Government Accounting Standards Board, Summary of Statement No. 14 at 1, http://www.gasb.org/st/summary/gstsm14.html. *See also Treadstone Capital Mgmt, L.P. v. TBTW Holdings*, No. 09 Civ. 1099, 2010 WL 1038653, at *4 (W.D. Mich. Mar. 18, 2010) (holding that the FSBA was an arm of the state for diversity purposes).

[28] *State Bd. of Admin. of Florida v. Rite Aid Corp.*, No. 04 Civ. 209, at *6 (N.D. Fla. Sept. 19, 2000) (citing *Holland v. Watson*, 14 So. 2d 200 (Fla. 1943) (holding that the BSA was empowered to retain separate counsel from the Attorney General and was not a traditional executive department notwithstanding the fact that the Governor, Treasurer and State Comptroller were the titular heads of the Board) and *State v. State Bd. of Admin.*, 25 So.2d 880, 881 (Fla. 1946) (recognizing FSBA as corporate body in context of whether it was authorized to issue refunding bonds)). The Florida District Court relied on the factors set forth in *Moor*.

11

the main fiscal" and were "previously performed by the counties and special road and bridge districts and are in no way related to the duties imposed on the officers of the administrative departments by the Constitution and the statute."[29] *Holland* also held that "[t]he very fact that [the Florida Constitution] creates the Board *a body corporate with power to sue and be sued* . . . would seem to foreclose the question [of whether it is authorized to employ counsel to assist it]."[30]

More recently the Florida Supreme Court characterized the FSBA as a "state fiscal agency."[31] However, the Second Circuit made clear that the fact that

---

[29] *Holland*, 14 So. 2d at 202.

[30] *Id.* at 203. The court recognized that "[t]his rule may not apply . . . when the members act in their official capacity and perform public duties" but noted that here, "all acts are performed in its corporate capacity and are in no sense related to their duties as state officers." *Id.* Thus, the holding in *Florida State Bd. of Admin. v. Alliance Capital Mgmt., L.P.*, that FSBA had brought the case "in its official capacity as a state agency carrying out one of its statutory purposes," does not answer the question whether the FSBA may be a citizen of Florida under the test set out in *Moor*. No. 02 Civ. 1104, 2003 WL 22719563, at *1-2 (Fla. Cir. Ct., Leon Cty. Jan. 21, 2003).

[31] *State v. Division of Bond Fin. of the Dep't. of Gen. Servs.*, 278 So.2d 614, 616 (Fla. 1973). *Accord Alliance Capital Mgmt.*, 2003 WL 22719563, at *1-2 (holding that "[t]he State Board of Administration is charged with investing and reinvesting funds of the State Retirement System" and is "clearly" an "'agency' as defined by section 119.011(2), Florida Statutes"). In addition, the FSBA's Corporate Governance Principles state that it is "an agency of Florida state government that provides a variety of investment services to various governmental entities." FSBA Corporate Governance Principles & Proxy Voting Guidelines, March 2012, at 1.

an entity is characterized as a state agency does not foreclose the possibility that the entity is a citizen for diversity purposes.[32] Moreover, although the Board of the FSBA is composed of the Governor, the State Chief Financial Officer and the State Attorney General,[33] the Florida Supreme Court noted that "in performing the duties [of fiscal administration] laid on them, the members of the Board act without reference to their duties as state officers" and the Board "might have been composed of three teachers, three preachers, three doctors, or three sheriffs."[34]

In addition, the FSBA has the ability to sell, hold or otherwise deal in property including the power to "execute . . . agreements relating to real, personal and mixed property, services, commodities and capital outlay items required for the day-to-day operations of the Board . . . [and to] negotiate, enter into and execute contracts and agreements to carry out the administrative, investment and

---

[32] *See N.Y. Life Ins. Co.*, 700 F.2d at 95 n.5.

[33] *See* Fla. Stat. Ann. § 215.44(1). Under the Second Circuit's sovereign immunity analysis this might ordinarily suggest that the FSBA is an arm of the state. *See McGinty v. New York*, 251 F.3d 84, 96 (2d Cir. 2001) (finding the fact that "officers are designated by statute," the "state comptroller serves as administrative head [and trustee]," the "state attorney general serves as legal advisor" and "the System is subject to supervision by the state superintendent of insurance" who is "appointed by the governor with the advice and consent of the senate" suggested that the entity was an arm of the state) (internal citations omitted).

[34] *Holland*, 14 So. 2d at 202.

debt functions of the Board."[35] It has the power to "make purchases, sales, exchanges, investments, and reinvestments for and on behalf of" the funds it manages for state and local entities.[36] With these obligations comes the right to bring suit as well as the ability to be sued, in its own name, in court.[37]

The weight of Florida authority, both state and federal, dictates that, while closely aligned with the state of Florida, the FSBA is separate for the purposes of diversity jurisdiction. This is consistent with Second Circuit and Supreme Court case law holding that corporate status and the ability to sue and be sued in its own capacity renders an entity a citizen for diversity purposes.[38] The

---

[35] Fla. Admin. Code Ann. R. 19-3.016.

[36] Fla. Stat. Ann. § 215.44(1).

[37] *See e.g.*, *Florida State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc.*, 262 F. Supp. 2d 1004, 1010 (D. Minn. 2003) (diversity suit brought by the FSBA, represented by a private law firm, based on its investment in a Minnesota building against engineering firm hired to evaluate buildings condition).

[38] The guidance of the Supreme Court and two Second Circuit cases addressing this exact question makes it unnecessary to resort to Second Circuit cases addressing the related but distinct question of sovereign immunity. *See McGinty*, 251 F.3d at 96 (setting forth six factor test considering: (1) how the entity is referred to in its documents of origin; (2) how the governing members are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding upon the state). I find that the factors set forth in *Moor* and loosely applied by the Second Circuit provide sufficient guidance. When applied by the Florida District Court they led to the conclusion that inclusion of the FSBA does

decision to exercise jurisdiction over the FSBA is made easier by the knowledge that, if the FSBA's citizenship is appealed post-judgment and the court of appeals disagrees with my conclusion, it has the power to dismiss the FSBA while preserving the judgment as to the other concededly diverse parties.[39]

## III. CONCLUSION

For the foregoing reasons, PSERS is dismissed in order to preserve this Court's subject matter jurisdiction.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         February 1, 2013

---

not destroy diversity jurisdiction.

[39] *See Curley v. Brignoli, Curley & Roberts Assoc.*, 915 F.2d 81, 88-89 (2d Cir. 1990) ("[C]ircuit courts have the power, even after judgment has been rendered below, to dismiss a dispensable party whose presence prevents statutory diversity jurisdiction" as long as dismissal will not prejudice the remaining parties to the litigation) (*citing Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 109 (1989)). The Second Circuit rested its decision on Federal Rule of Civil Procedure 21, which states that "[m]isjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just." *See id.* at 89. The Second Circuit held that "dismissal is particularly appropriate [where] it spares [other] plaintiffs [] prejudice . . . without impacting in any unfairly adverse manner upon defendants." *Id.*

15

## - Appearances -

**For Plaintiffs:**

Patrick J. Coughlin, Esq.
Daniel S. Drosman, Esq.
Jessica T. Shinnefield, Esq.
Jarrett S. Charo, Esq.
Darryl J. Alvarado, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
(619) 231-1058

Samuel H. Rudman, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

Luke O. Brooks, Esq.
Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
(415) 288-4545

**Additional Attorneys for Plaintiff State Board of Administration of Florida:**

Marc I. Gross, Esq.
Tamar A. Weinrib, Esq.
Pomertantz Haudek Grossman & Gross LLP
100 Park Avenue
New York, NY 10017
(212) 661-1100

**For Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited:**

James P. Rouhandeh, Esq.
Antonio J. Perez-Marques, Esq.
William R. Miller, Jr., Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

**For Defendants Moody's Investors Service, Incorporated and Moody's Investors Service Limited:**

Joshua M. Rubins, Esq.
James J. Coster, Esq.
Mario Aieta, Esq.
James I. Doty, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, 11th Floor
New York, NY 10169
(212) 818-9200

Mark A. Kirsch, Esq.
Christopher M. Joralemon, Esq.
Joel M. Cohen, Esq.
Lawrence J. Zweifach, Esq.
Mary K. Dunning, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 48th Floor
New York, NY 10166
(212) 351-5391

**For Defendants Standard & Poor's Rating Services and The McGraw-Hill Companies, Incorporated:**

Floyd Abrams, Esq.
Dean I. Ringel, Esq.
Charles A. Gilman, Esq.
Tammy L. Roy, Esq.
Jason M. Hall, Esq.

Cahill Gordon & Reindel LLP
80 Pine Street
New York, NY 10005
(212) 701-3000