UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

ABU DHABI COMMERCIAL BANK, et al.,　　　:　Civil Action No. 1:08-cv-07508-SAS-DCF
Individually and On Behalf of All Others　　　:
Similarly Situated,　　　　　　　　　　　　:　CLASS ACTION
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiffs,　　　　:　PLAINTIFFS' OMNIBUS MEMORANDUM
　　　　　　　　　　　　　　　　　　　　:　OF LAW IN SUPPORT OF THEIR
　　vs.　　　　　　　　　　　　　　　　:　*DAUBERT* MOTIONS
　　　　　　　　　　　　　　　　　　　　:
MORGAN STANLEY & CO.　　　　　　　　:　**[REDACTED]**
INCORPORATED, et al.,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　　　:
　　　　　　　　　　　　　　　　　　　　:

———————————————————— x

812379_1

# TABLE OF CONTENTS

**Page**

I.   S&P'S COUNSEL REFUSED TO COMPLY WITH THE COURT'S JANUARY 22, 2013 ORDER REGARDING FABOZZI AND BIRTEL ...............................................1

II.  BIRTEL'S AND FABOZZI'S OPINIONS ARE INADMISSIBLE .................................4

    A.   Fabozzi's and Birtel's Opinions Must Be Excluded Because They Are Wholly Devoid of Methodology and Are Utterly Unreliable .................................4

    B.   Fabozzi's and Birtel's Opinions Are Irrelevant and Improper Subjects for Expert Testimony and Should Be Excluded in Their Entirety ..............................7

        1.   Fabozzi's Report Contains Nothing More than Improper Factual Narrative .....................................................................................................7

        2.   Fabozzi's and Birtel's Reports Improperly Opine on Motivations, Knowledge and Intent ..........................................................................8

III. CORNELL'S OPINIONS ARE INADMISSIBLE...............................................................9

    A.   Cornell Is Not Qualified to Opine on SIV Ratings ...................................................9

    B.   Cornell's Report Consists of Inadmissible Narrative Concerning the General SIV Rating Process.....................................................................................10

    C.   Cornell's Opinions Are Inadmissible *Ipse Dixit* and Irrelevant............................11

IV.  GRENADIER'S OPINIONS ARE INADMISSIBLE .......................................................14

    A.   Background ...............................................................................................................14

    B.   Grenadier Applied a Legally Incorrect Loss Causation Standard ..........................16

    C.   Grenadier's Opinions Are Not Supported by Any Acceptable Methodology .............................................................................................................21

    D.   Grenadier's Opinion that Plaintiffs' Losses Were Caused by Disclosed Risks Is Contrary to This Court's Prior Rulings.....................................................25

    E.   If Allowed, Grenadier's Opinions Concerning the Defendants' State of Mind Would Improperly Usurp the Role of the Jury............................................26

V.   KATRIEN VAN ACOLEYEN SHOULD BE PRECLUDED FROM TESTIFYING ON TOPICS FOR WHICH SHE LACKS EXPERTISE AND/OR

**Page**

PERSONAL KNOWLEDGE OR WHICH ARE ISSUES OF FACT FOR THE
JURY OR OF LAW FOR THE COURT..........................................................................27

VI.   CONCLUSION.............................................................................................................30

812379_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
   514 F. Supp. 2d 571 (S.D.N.Y. 2007)......................................................................7

*405 Condo Assocs. LLC v. Greenwich Ins. Co.*,
   No. 11 Civ. 9662 (SAS), 2012 WL 6700225
   (S.D.N.Y. Dec. 26, 2012)...............................................................................13

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
   No. 08 Civ. 7508(SAS), 2012 WL 3584278
   (S.D.N.Y. Aug. 17, 2012) ...................................................................... *passim*

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
   646 F. Supp. 2d 385 (S.D.N.Y. 2009),
   *aff'd*, 386 F. App'x 5 (2d Cir. 2010).................................................................20

*Algarin v. N.Y. City Dep't of Corr.*,
   460 F. Supp. 2d 469 (S.D.N.Y. 2006).................................................................6

*Amorgianos v. AMTRAK*,
   303 F.3d 256 (2d Cir. 2002)...............................................................................5

*Andrews v. Metro N. C.R. Co.*,
   882 F.2d 705 (2d Cir. 1989)...................................................................7, 11, 17

*Baker v. Urban Outfitters, Inc.*,
   254 F. Supp. 2d 346 (S.D.N.Y. 2003).................................................................9

*Bank of China v. NBM LLC*,
   359 F.3d 171 (2d Cir. 2004)...............................................................................27

*Berk v. St. Vincent's Hosp. & Med. Ctr.*,
   380 F. Supp. 2d 334 (S.D.N.Y. 2005).................................................................6

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*,
   No. 03 Civ. 7037(PKC), 2005 WL 4684238
   (S.D.N.Y. Apr. 11, 2005).................................................................................18

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)..................................................................................... *passim*

*GE v. Joiner*,
   522 U.S. 136 (1997)...............................................................................6, 13

- iii -

**Page**

*Highland Capital Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005)..................................................................9, 24

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008).........................................................9, 10, 11, 24

*In re Fosamax Prods. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009)..................................................................7, 11

*In re Initial Pub. Offering Sec. Litig.*,
   174 F. Supp. 2d 61 (S.D.N.Y. 2001)........................................................................29

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   643 F. Supp. 2d 482 (S.D.N.Y. 2009).......................................................................8

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
   No. 1:00-1898, 2008 WL 2324112
   (S.D.N.Y. June 5, 2008)..........................................................................................18

*In re Novatel Wireless Sec. Litig.*,
   846 F. Supp. 2d 1104 (S.D. Cal. 2012).....................................................................17

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004)..........................................................9, 11, 17, 26

*In re Zyprexa Prods. Liab. Litig.*,
   489 F. Supp. 2d 230 (E.D.N.Y. 2007) ........................................................................5

*King Cnty. v. IKB Deutsche Industriebank AG*,
   708 F. Supp. 2d 334 (S.D.N.Y. 2010)...............................................................19, 23, 26

*Klaczak v. Consol. Med. Transp. Inc.*,
   No. 96 C 6502, 2005 WL 1564981
   (N.D. Ill. May 26, 2005) .........................................................................................27

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005).....................................................................................18

*Louros v. Kreicas*,
   367 F. Supp. 2d 572 (S.D.N.Y. 2005).......................................................................19

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007)........................................................................11

**Page**

*Nimely v. City of New York,*
    414 F.3d 381 (2d Cir. 2005)................................................................5

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
    716 F. Supp. 2d 220 (S.D.N.Y. 2010)................................................9

*Primavera Familienstiftung v. Askin,*
    130 F. Supp. 2d 450 (S.D.N.Y. 2001).............................................6, 8

*Reilly v. NatWest Mkts. Grp., Inc.,*
    181 F.3d 253 (2d Cir. 1999).............................................................28

*Santoro v. Donnelly,*
    340 F. Supp. 2d 464 (S.D.N.Y. 2004)..............................................6

*Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.,*
    958 F.2d 1169 (1st Cir. 1992)..........................................................10

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 26(a)(2)(B)(i)-(ii).....................................................................18
    Rule 26(a)(2)(B)...........................................................................4, 18
    Rule 26(a)(2)(C)..........................................................................27, 30
    Rule 30(b)(6).....................................................................................28

Federal Rules of Evidence
    Rule 702 ..................................................................................*passim*
    Rule 702(a)........................................................................................25

812379_1

## I.   S&P'S COUNSEL REFUSED TO COMPLY WITH THE COURT'S JANUARY 22, 2013 ORDER REGARDING FABOZZI AND BIRTEL

On December 20, 2012, plaintiffs wrote the Court to outline anticipated expert challenges, pointing out that the analyses and conclusions in the expert reports of Ryan Birtel, Frank Fabozzi and Bradford Cornell overlapped substantially:

> Fabozzi, Birtel and Cornell are all designated as rating methodology experts. Each expert offers very similar analyses and conclusions.



Ex. 1 at 3.[1]  Plaintiffs also called attention to Fabozzi's improper effort to bolster the reliability and credibility of Birtel:

*Id.* at 2 (citing the Expert Report of Frank J. Fabozzi ("Fabozzi Report"), ¶¶216-217 (Ex. 2)).

At a hearing on December 27, 2012, the Court agreed with plaintiffs: "Fabozzi should go and Birtel and Cornell should not be allowed to repeat each other."  12/27/12 Hrg. Tr. at 53:6-7.  The Court continued: "I don't see why we need Fabozzi at all to improperly bolster Birtel and talk about S&P, and for the remaining two they can't repeat each other . . . ."  *Id.* at 53:13-16.

After S&P tried to "supplement" Fabozzi's report more than three months after the deadline for expert disclosures (and after it had an opportunity to assess Birtel's deposition), the Court issued an Order (1) prohibiting defendants from supplementing Fabozzi's Report, (2) precluding

---

[1]      All exhibits ("Ex.") are attached to the Declaration of Daniel S. Drosman in Support of Plaintiffs' *Daubert* Motions unless otherwise noted.

- 1 -

overlapping testimony by Birtel and Fabozzi, and (3) requiring the parties to meet and confer on which matters will be covered by Birtel and which will be covered by Fabozzi.   Dkt. No. 550 ("January 22, 2013 Order") at 2.   The Court indicated that if the parties could not agree on which matters would be covered by each expert, "the depositions and reports of Birtel and Fabozzi must be submitted to the Court and I will decide which matters Fabozzi will be permitted to cover." *Id*. at 2-3.

Despite the Court's clear directive, S&P has refused to comply with the January 22, 2013 Order. ***First***, despite a Court Order requiring them to do so, S&P's counsel flatly refused to identify the information in Fabozzi's report and the information in Birtel's report that S&P intends to present at trial.   Two days after the Court issued its January 22, 2013 Order, S&P said it would not comply with the Order because the information "cannot be supplied at this point, months in advance of the trial and prior to hearing the testimony to be offered by plaintiffs to which the expert testimony will respond."   *See* Ex. 3.   Plaintiffs advised S&P that its "refusal to identify by paragraph number the information contained in Fabozzi's report and the information in Birtel's report that you intend to present at trial violates the Court's Order" and told S&P that plaintiffs would "raise it with the Court at the appropriate time."   *See id*.   In the Court's January 22, 2013 Order, the Court said it would "decide which matters Fabozzi will be permitted to cover" if the parties cannot reach an agreement. Dkt. No. 550 at 3.   In light of S&P's refusal to discuss the subject, however, the Court should not be burdened with this exercise.   Instead, both experts should be precluded from testifying.

***Second***, defendants plainly intend to ignore the Court's Order prohibiting them from supplementing Fabozzi's testimony.   ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████   – an opinion also offered by Birtel.   ████████████████

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████ It is this

new opinion that the Court has excluded "[i]n the interest of avoiding gamesmanship and preventing

duplicative expert testimony."  Dkt. No. 550 at 2.

    In an effort to sidestep the Court's Order, at his deposition, Fabozzi pretended that his

supplemental opinion that ██████████████████████████████ was somehow

contained in his original report.  At his deposition, Fabozzi conceded ████████████████

█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
██████████████████████████████████████ There can be no legitimate dispute

that Fabozzi's original report does not contain any opinion regarding ███████████████

████████████████████████████████████████

    Nonetheless, at his deposition, Fabozzi testified:

█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████

Fabozzi's testimony ████████████████ flouts this Court's January 22, 2012 Order, which prohibits Fabozzi from supplementing his original report.  It also violates Rule 26(a)(2)(B), which provides that an expert report "***must*** contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them" and "(ii) the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(2)(B).[2]  S&P should be compelled to cease its gamesmanship once and for all; Fabozzi should be limited to any admissible non-duplicative opinions that are contained in his original report.

## II.   BIRTEL'S AND FABOZZI'S OPINIONS ARE INADMISSIBLE

Because the opinions of Fabozzi and Birtel overlap substantially, their expert testimony is infected with many of the same disqualifying weaknesses.

### A.   Fabozzi's and Birtel's Opinions Must Be Excluded Because They Are Wholly Devoid of Methodology and Are Utterly Unreliable

The reliability prong of the *Daubert* analysis, in and of itself, provides another basis for excluding the opinions of both Fabozzi and Birtel: they are based on no methodology at all, let alone one sufficiently reliable to withstand scrutiny under *Daubert* principles.  To be sufficiently reliable under Fed. R. Evid. 702, expert testimony "must be supported by appropriate validation."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)  To determine that, courts consider factors such as whether a theory or technique can be or has been tested or subjected to peer review, whether there are standards controlling its operation, the known and potential error rate of the theory or technique, and whether it has attracted widespread acceptance in the relevant community.  *See id.* at 593-94.  The expert must demonstrate that his "'conclusions [are] supported by good grounds for each step in the analysis . . . any step that renders the analysis unreliable under the Daubert factors

---

[2]      Emphasis is added and citations are omitted throughout unless otherwise indicated.

renders the expert's testimony inadmissible.'" *Amorgianos v. AMTRAK*, 303 F.3d 256, 267 (2d Cir.

2002).  Thus, "'when an expert opinion is based on data, a methodology, or studies that are simply

inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that

unreliable opinion testimony.'"  *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005).

     Here, Fabozzi has not utilized any discernible methodology.



*see also In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 288

(E.D.N.Y. 2007) (excluding testimony of expert who had not reviewed any data nor conducted any

independent analysis of the issues).

     Likewise, Birtel failed to utilize any cognizable methodology in developing his opinions.





 *See Santoro v. Donnelly*, 340 F. Supp. 2d 464, 475 (S.D.N.Y. 2004) (quoting

*GE v. Joiner*, 522 U.S. 136, 146 (1997)).

      Fabozzi's and Birtel's opinions, based entirely on their unsupported professional musings,

are the ultimate *ipse dixit*.  "An anecdotal account of one expert's experience . . . does not by itself

equate to a methodology, let alone one generally accepted by the relevant professional community."

*Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 354 (S.D.N.Y. 2005); *see also, e.g.*,

*Algarin v. N.Y. City Dep't of Corr.*, 460 F. Supp. 2d 469, 477 (S.D.N.Y. 2006); *Primavera*

- 6 -

*Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001). Here, the "methodology" employed by Fabozzi and Birtel, based solely on their own experience, is purely subjective, speculative and precludes all possibility of testing or analysis for reliability. Consequently, Fabozzi's and Birtel's unreliable testimony must be excluded because it is "inherently subjective and speculative" and "cannot be tested, . . . has no known rate of error, and . . . is not subject to any particular standards or controls." *See, e.g.*, *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 514 F. Supp. 2d 571, 574-77 (S.D.N.Y. 2007).

**B.    Fabozzi's and Birtel's Opinions Are Irrelevant and Improper Subjects for Expert Testimony and Should Be Excluded in Their Entirety**

**1.    Fabozzi's Report Contains Nothing More than Improper Factual Narrative**



*In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding narrative because experts "will not be permitted merely to . . . 'regurgitate' the evidence" and "to the extent such evidence is admissible, it should be presented to the [factfinder] directly"). Rule 702 does not permit a party to circumvent the rules prohibiting hearsay and speculative testimony by using an expert as a glorified storyteller, particularly when the testimony addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. C.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989). As a

result, Fabozzi's testimony should be excluded.

      **2.**     **Fabozzi's and Birtel's Reports Improperly Opine on Motivations, Knowledge and Intent**



*See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 495, 498 (S.D.N.Y. 2009) (stating that expert may not opine on ultimate legal conclusions).

      An expert may not "supplant the role of counsel in making argument at trial, and the role of the [factfinder] [in] interpreting the evidence." *Primavera*, 130 F. Supp. 2d at 529. Thus, "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert

testimony." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *see Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 182-83 (S.D.N.Y. 2008) (expert's "belief about a party's state of mind is an improper subject for expert testimony and cannot be saved by couching his opinion as 'industry custom and practice'"); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005). Fabozzi and Birtel should be precluded from stepping into the shoes of counsel and opining on the understanding, intent or motivation of plaintiffs, "sophisticated investors," S&P or any other person, or to argue for a particular interpretation of the record facts.

## III.    CORNELL'S OPINIONS ARE INADMISSIBLE

### A.    Cornell Is Not Qualified to Opine on SIV Ratings



*See Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353-54 (S.D.N.Y. 2003) (excluding expert who lacked sufficient "'knowledge, skill, experience, training or education'" in the relevant field).

But merely serving as a professional expert witness does not qualify Cornell, who has no relevant expertise, to testify in this case. *See, e.g., Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 716 F. Supp. 2d 220, 225 n.34 (S.D.N.Y. 2010)

- 9 -

(Scheindlin, J.); *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1174 (1st Cir. 1992).

**B.    Cornell's Report Consists of Inadmissible Narrative Concerning the General SIV Rating Process**



In sum, more than half of Cornell's report is nothing more than "factual narrative of events giving rise to this action [and] is inadmissible.  [Cornell] has no personal knowledge of these facts and they are lay matters that the jury is capable of understanding and deciding without [Cornell's] testimony."  *Highland Capital*, 551 F. Supp. 2d at 180.



- 10 -

[REDACTED]

is not a cognizable methodology under either *Daubert* or Fed. R. Evid. 702.  *See Rezulin*, 309 F. Supp. 2d at 549, 551 (rejecting expert's "narrative reciting" of facts because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence").

Indeed, this Court has already once excluded Cornell's testimony where, as here, Cornell sought to opine on summary information.  *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 677-78 (S.D.N.Y. 2007); *see also Highland Capital*, 551 F. Supp. 2d at 180, 183, 187 (noting that "an expert's factual narrative is unnecessary" and inadmissible) [REDACTED]

[REDACTED] As such, it is inadmissible.  *Fosamax*, 645 F. Supp. 2d at 192.  This is particularly true here, where [REDACTED] lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help."  *Andrews*, 882 F.2d at 708.

**C.**   **Cornell's Opinions Are Inadmissible *Ipse Dixit* and Irrelevant**

[REDACTED]



- 12 -

████████████████████████████████████████████████████

████████████████████████████████████████ ⬛ *405 Condo Assocs. LLC v.*

*Greenwich Ins. Co.*, No. 11 Civ. 9662 (SAS), 2012 WL 6700225, at *5 (S.D.N.Y. Dec. 26, 2012).

████████████████████████████████████████████████████

████████████████████████ ⬛*GE*, 522 U.S. at 146.

████████████████████████████████████████████████████

- 13 -



☐Because

Cornell's opinions will not "help the trier of fact to understand the evidence or to determine a ***fact in issue***," they are inadmissible.  Fed. R. Evid. 702.

## IV.   GRENADIER'S OPINIONS ARE INADMISSIBLE

### A.   Background

On September 16, 2012, plaintiffs served the report of loss causation and damages expert Michael A. Goldstein, Ph.D. ("Goldstein Report").  Ex. 10.  Goldstein determined that the materialization of the risks concealed by defendants' false ratings caused plaintiffs' losses. Specifically, Goldstein established that the Cheyne SIV was driven into receivership when investors began to realize that the ratings on the subprime assets held by Cheyne did not represent the actual risk inherent in those securities.

These announcements revealed to the market that the ratings models were unmistakably flawed.

No other event that day explains this movement, establishing that the problems with the ratings revealed in the announcements were not previously known to the market.

The subsequent decline suggests that with the market's realization that the ratings were false, it now understood that subprime RMBS assets were actually vulnerable to the events that were unfolding in the housing market – prices were now responding to those events when they had not before.

- 15 -

The Goldstein analyses establish that the fraudulent ratings indeed concealed the high vulnerability of Cheyne's subprime assets to even small shifts in the housing market, and misled many investors into believing that their securities could weather the (at the time) mild problems in housing.  Once investors realized that the ratings were wrong, however, they came to understand this vulnerability and their expected probabilities of default on highly rated subprime notes started (correctly) responding to events that were unfolding in housing.  As a result, the value of Cheyne's subprime assets started falling, causing the SIV to enter enforcement and ultimately receivership, liquidation and losses suffered by plaintiffs.  Because the fraudulent ratings by defendants concealed the vulnerability of Cheyne's Notes to the slowdown in housing, and the slowdown in housing was ultimately what caused plaintiffs' losses, Goldstein's analyses established loss causation under the materialization of risk standard.

In response, defendants served the Expert Report of Steven Grenadier, Ph.D.  Ex. 12.



Each of Grenadier's opinions is flawed and inadmissible.

**B.    Grenadier Applied a Legally Incorrect Loss Causation Standard**

Grenadier's conclusion that defendants' fraud did not cause plaintiffs' losses is inadmissible

because he applied an undefined and inappropriate loss causation standard in violation of "[o]ne of the fundamental requirements of Rule 702 . . . that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Rezulin*, 309 F. Supp. 2d at 540.  The Supreme Court in *Daubert* described this requirement as "'fit'" and pointed out that "'Rule 702's "helpfulness" standard requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility.'" *Id.*; *Daubert*, 509 U.S. at 591-92.  Grenadier does not satisfy this basic requirement.

As an initial matter, Grenadier failed to define the standard for loss causation that he applied – despite concluding that defendants' fraud did not cause plaintiffs' losses.  In his report, Grenadier did not identify his definition of loss causation or explain what is required to establish loss causation under the standard he employed.

Grenadier's failure to articulate the standard he applied for loss causation renders his conclusions inadmissible, for "[a]lthough testimony that embraces an ultimate issue to be decided by the jury is not inadmissible *per se*, . . . it should not be received if it is based on 'inadequately explored legal criteria.'" *Andrews*, 882 F.2d at 709-10; *see also In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012) (excluding Cornell for applying the incorrect loss causation standard).

Grenadier's failure to define his standard is also problematic because an expert must explain

- 17 -

the method that led to his conclusion and make his analysis transparent so it can be reproduced and tested. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 1:00-1898, 2008 WL 2324112, at *3-*4 (S.D.N.Y. June 5, 2008) (excluding expert opinion because expert "fails to identify any methodology and thereby prevents the Court any means by which to assess the reliability of his opinions"). This requirement of transparency is also mandated by Rule 26(a)(2)(B), which provides that an expert's written report must contain "a complete statement of all opinions the witness will express and ***the basis and reasons for them***," as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Thus, if an expert's report fails to include "***essential details*** needed to understand and assess [his] conclusions" it fails to satisfy Rule 26(a)(2)(B) and should be excluded under *Daubert*. *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037(PKC), 2005 WL 4684238, at *7 (S.D.N.Y. Apr. 11, 2005). In short, defendants cannot meet their burden of establishing "fit" and "transparency" because Grenadier did not apply a defined loss causation standard. *Daubert*, 509 U.S. at 592 n.10.

Although Grenadier failed to identify the loss causation standard he applied, it is evident from his report and testimony that his conclusions are based on a standard that is contrary to settled case law, including the Court's prior decisions in this action.[9] For loss causation, the Second Circuit requires "that the loss be foreseeable ***and*** that the loss be caused by the materialization of the concealed risk." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (emphasis in original). Under the materialization of the risk standard, defendants caused plaintiffs' losses if the false ratings concealed the degree of vulnerability that plaintiffs' investments had to certain risks, and those risks later materialized and were responsible for plaintiffs' losses. *Abu Dhabi Commercial*

- 18 -

*Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508(SAS), 2012 WL 3584278, at *20 (S.D.N.Y. Aug. 17, 2012).[10]

     Grenadier did not apply or apparently even understand the materialization of the risk standard when reaching his conclusion that defendants' fraud did not cause plaintiffs' losses.  As discussed above, Goldstein established that Cheyne's HEL portfolio directly led to losses for Cheyne's noteholders. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This conclusion is based on a gross misapplication of the law.  The false ratings concealed true credit risks associated with the SIV's notes, including the poor quality of the SIV's assets and extent of its vulnerability to declines in the housing market.  *Abu Dhabi*, 2012 WL 3584278, at *19; *King Cnty.*, 708 F. Supp. 2d at 340.  Thus, under the "materialization of the risk" standard, Grenadier's analysis establishes, rather than defeats, loss causation.  Grenadier's proposed testimony to the contrary would only serve to confuse and mislead the jury.

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[10]    As the Court held in *King County*, "the risk that caused plaintiffs' losses – that [Cheyne] consisted of toxic assets that would become worthless – was precisely within the zone of risk concealed by the Top Ratings.  That plaintiffs would suffer losses when these toxic assets collapsed and [Cheyne] entered receivership was reasonably foreseeable.  Therefore, . . . the materialization of the risk concealed by the Top Ratings caused plaintiffs' losses."  *King Cnty. v. IKB Deutsche Industriebank AG*, 708 F. Supp. 2d 334, 340 (S.D.N.Y. 2010); *see also Louros v. Kreicas*, 367 F. Supp. 2d 572, 579 (S.D.N.Y. 2005).

██████████████████████████████████████████████████████████

██████████████████████████ This far exceeds the standard set forth in *AIG* for non

efficient-market cases that "plaintiffs show that the defendant misrepresented the value of the assets

that were to be used to pay back the plaintiffs and that this shortfall in value was at least the amount

of the plaintiffs' losses." *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 646 F. Supp. 2d

385, 403-04 (S.D.N.Y. 2009) ("For purposes of proving loss causation with respect to the

defendant's actions, it is irrelevant whether other causes also depleted some of the value of the

Trust."), *aff'd*, 386 F. App'x 5 (2d Cir. 2010).  The conclusion also ignores plaintiffs' allegation that

the false ratings concealed Cheyne's vulnerability to toxic subprime assets across the market.

Rather than apply the materialization of the risk standard, Grenadier improperly analyzed

loss causation under the framework of a typical stock-drop case.  Under his standard, █████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████ Application

of this "stock-drop" framework is also contrary to applicable law.  As this Court held in denying

defendants' motion for summary judgment, "'proving loss causation in connection with the sale of

privately-offered, asset-backed securities such as [the Rated Notes] is a different undertaking from

proving loss causation in a typical stock drop case.'"  *Abu Dhabi*, 2012 WL 3584278, at *20 n.279

(quoting *AIG*, 646 F. Supp. 2d at 403).  Plaintiffs are not required to demonstrate an announcement

- 20 -

(or series of announcements) "lead[ing] to an immediate and measurable drop in the price of the assets." *Id.* at *20.  Instead, "a plaintiff may demonstrate loss causation by showing a causal link between the fraud and a 'decrease in the amount of money returned to [plaintiffs] over the course of the securitization.'" *Id.*  Grenadier does not address this standard.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████; *Abu Dhabi*, 2012 WL 3584278, at *20.  Grenadier should not be permitted to present these theories to the jury because, as the Court held, they are "***legally irrelevant*** and def[y] common sense." *Abu Dhabi*, 2012 WL 3584278, at *20 (holding that this argument "make[] the bizarre assumption that all of the Cheyne SIV's assets could have been liquidated without any liquidation discount" when such an "unplanned, disorderly sale would have likely resulted in even more losses than plaintiffs actually suffered").[11]

### C.    Grenadier's Opinions Are Not Supported by Any Acceptable Methodology

█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████This opinion must be excluded because Grenadier failed to follow any discernable, methodology in the formation of his opinion, in contravention of Fed. R. Evid. 702.  Grenadier's "methodology" consists of nothing more than the *ipse dixit* conclusion that Cheyne's collapse was caused by a vaguely described market event.  For example ██████████████████████████████████████████

---

[11]    Several of Grenadier's secondary conclusions are also based on the assumption that Cheyne and its underlying assets traded on an efficient market even though he concedes, and the Court previously held, that the "[r]ated notes do not trade in an efficient market like shares of publicly-traded stock." *Abu Dhabi*, 2012 WL 3584278, at *20.

812379_1

The lack of methodology is fatal to Grenadier's opinions.

All that can be concluded from Grenadier's analysis is that at some point in 2007 or 2008 there was a credit crisis – a fact which almost every American knows.

Grenadier's conclusion that declines in the Cheyne SIV's asset portfolio were driven by declines in the overall economy is also speculative.

In short, Grenadier has no basis whatsoever to conclude that plaintiffs' losses were due to a market-wide event unrelated to defendants' fraud.

- 22 -

████████████████████████████████████████████████████ This admission is fatal to Grenadier's conclusion that defendants' fraud did not cause plaintiffs' losses, because the existence of concealed credit problems in these very assets is one of the primary risks that plaintiffs contend was concealed by the false ratings. *Abu Dhabi*, 2012 WL 3584278, at *19; *King Cnty.*, 708 F. Supp. 2d at 340.

Not only did Grenadier fail to apply a recognized methodology, but, in many instances, he relied on nothing more than his own subjective (and often speculative) judgment. ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Expert opinion based on such subjective judgments, rather than tested and proven

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████ This assumption is demonstrably incorrect as both S&P's and Moody's ratings were tied directly to, and influenced by, the ratings. Grenadier's report is rife with speculative assertions.

methodologies, is regularly excluded on the grounds that it is unreliable.  *See Daubert*, 509 U.S. at

593-94 (including among factors that trial court may consider in determining expert's reliability

"whether the expert's technique can be challenged in some objective sense, or whether it is simply a

subjective conclusory approach that cannot reasonably be assessed for reliability"); *Highland*

*Capital*, 379 F. Supp. 2d 473 n.2 ("[r]ule 702 requires that 'expert testimony rest on "knowledge,"' a

term that "connotes more than subjective belief or unsupported speculation"'").



*See also Highland Capital*, 379 F. Supp. 2d at 473 n.2 ("'[A]n expert who is relying

"solely . . . on experience . . . must explain how that experience leads to the conclusions reached,

why that experience is a sufficient basis for the opinion, and how that experience is reliably applied

to the facts."'").

Grenadier's opinions concerning damages are equally speculative.

**D.    Grenadier's Opinion that Plaintiffs' Losses Were Caused by Disclosed Risks Is Contrary to This Court's Prior Rulings**

Grenadier relies on risk disclosures that the Court ruled are inapplicable to support his opinion that plaintiffs' losses were caused by disclosed risks.

These opinions are irrelevant and will not "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a).  The Court has already evaluated these same disclaimers and concluded that they do not "'"directly address the risk that plaintiffs' claim was not disclosed."'" *Abu Dhabi*, 2012 WL 3584278, at *20.  This is because plaintiffs do not assert that defendants "hid the ***possibility*** that the Cheyne SIV could collapse and go into enforcement mode," but instead, that the notes were fraudulently rated and the ratings did not reflect their actual risk.  *Id*. at *13 (emphasis in original).  Thus, as the Court held, the relevant question is whether defendants disclosed "that the ratings assigned to Cheyne: (1) were unsupported by facts or reasoned analysis; and (2) misstated the likelihood of collapse." *Id*. at *20.  Grenadier's deposition testimony confirms that he has no basis to testify that those facts were disclosed.[15]

### E.  If Allowed, Grenadier's Opinions Concerning the Defendants' State of Mind Would Improperly Usurp the Role of the Jury

This testimony should be excluded because it is speculative, irrelevant and invades the province of the jury by opining on defendants' state of mind.  The relevant question for loss causation is whether one could reasonably predict that concealment of inferior credit quality through false ratings could lead to losses for plaintiffs, not whether the scope and magnitude of the event causing those losses was foreseeable.  *King Cnty.*, 708 F. Supp. 2d at 340 will therefore confuse the jury and usurp the Court's role by suggesting an improper legal standard.

Grenadier has no basis for his conclusion that defendants' knowledge was equivalent to the "market's" knowledge and no basis to suggest that defendants' knowledge can be established by reference to market participants in general.  Notably, Grenadier did not cite a single document from the defendants' files or identify a single line of testimony from a witness in this case to support his conclusion.[16]  Nor did he use a reliable (or even definable) methodology to test his hypothesis.

Finally, the testimony also should be excluded because Grenadier's opinion and proffered testimony as to defendants' state of mind is nothing more than an attempt to instruct the jury on whether defendants acted knowingly or recklessly in assigning false ratings, which is not a proper subject of expert testimony.  *See, e.g.*, *Rezulin*, 309 F. Supp. 2d at 546 ("the opinions of these witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise"); *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 WL 1564981, at *8 (N.D. Ill. May 26, 2005) ("precedent teaches that proffered expert assertions about another's subjective intent or knowledge are not helpful to the jury, which is equally if not much better suited to make these assessments than the parties' competing paid experts").

## V.   KATRIEN VAN ACOLEYEN SHOULD BE PRECLUDED FROM TESTIFYING ON TOPICS FOR WHICH SHE LACKS EXPERTISE AND/OR PERSONAL KNOWLEDGE OR WHICH ARE ISSUES OF FACT FOR THE JURY OR OF LAW FOR THE COURT

On December 7, 2012, S&P provided Fed. R. Civ. P. 26(a)(2)(C) disclosures for Katrien van Acoleyen, who is currently a Managing Director with S&P's London office.  The disclosures set forth 49 paragraphs containing wide-ranging "facts and opinions to which Katrien van Acoleyen is expected to testify at trial."  Ex. 14 at 1.  Ms. van Acoleyen lacks the expertise and personal knowledge for many of the facts and opinions set forth in her disclosures, her conclusions are not based on any acceptable methodology, and S&P has not identified how she reached these conclusions.  In addition, nearly all of her proposed "expert" testimony improperly duplicates the opinions of defendants' retained experts.  Still other facts and opinions contained in Ms. van Acoleyen's disclosures are within the province of the jury.  Accordingly, Ms. van Acoleyen should

not be permitted to testify on topics for which she lacks expertise and/or personal knowledge or which are issues of fact for the jury or of law for the Court.[17]

Further, a party seeking to proffer expert testimony from an employee under Fed. R. Evid. 702 is "obligated to satisfy the reliability requirements set forth in that Rule." *Bank of China v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004). S&P has not satisfied that requirement. Indeed, the vast majority of Ms. van Acoleyen's proffered testimony is completely speculative. Ms. van Acoleyen has provided no basis for, and has no expertise or personal knowledge to support, her opinions concerning investors' general use of, reliance on and understanding of S&P's ratings (Ex. 14, ¶¶6, 9-10); Qualified Institutional Buyers' and Qualified Purchasers' "general[] familiarity" with supposed limitations on ratings (*id.*, ¶10); market participants' knowledge of S&P's conflicts of interest (*id.*, ¶14); the creation of the SIV market, performance of SIVs during and after the financial crisis, and S&P's "general process" for rating SIVs (*id.*, ¶¶20-26); the precise cause of Cheyne's demise and plaintiffs' losses (*id.*, ¶¶45-49); the impact of market events on "all structured finance securities" (*id.*, ¶45); or market participants' anticipation of the market's downturn (*id.*). These opinions, based on assumptions and speculation, and without objective scientific, technical, academic or factual foundation, are inadmissible.

These opinions, and the others proffered by Ms. van Acoleyen, are also entirely duplicative of defendants' experts Birtel (ratings methodologies for Cheyne and SIVs in general/meaning of ratings/market's use of ratings), Fabozzi (same), Grenadier (cause of Cheyne's collapse and plaintiffs' losses) and Brian Cartwright (Qualified Institutional Buyers). S&P's improper attempt to pile on an additional witness to sum up the testimony of its other experts should be rejected.

---

[17]     Ms. van Acoleyen should be precluded from testifying for the additional reason that S&P failed to timely provide her Fed. R. Civ. P. 26(a)(2)(C) disclosures.

- 28 -

812379_1

Ms. van Acoleyen's testimony should also be constrained by S&P's Rule 30(b)(6) testimony. When deposed on these topics, S&P's Rule 30(b)(6) designees provided far less information, and offered far less detail, than contained in Ms. van Acoleyen's "expected" testimony.  Any testimony by Ms. van Acoleyen must therefore be limited to information provided by S&P's Rule 30(b)(6) designees.  *Reilly v. NatWest Mkts. Grp., Inc.*, 181 F.3d 253, 268 (2d Cir. 1999).

Ms. van Acoleyen's opinion testimony also invades the province of the Court and jury.  For example, Ms. van Acoleyen is expected to testify that "credit ratings are opinions about creditworthiness," are "forward-looking opinions," and are made "in accordance with S&P's criteria and the rating committee's experience and expertise."  Ex. 14, ¶6.  These opinions invade improperly the province of the Court, which has already held that ratings are "fact-based opinions" that are actionable if "a rating agency ***knowingly*** issues a rating that is either unsupported by reasoned analysis or without a factual foundation, it is stating a fact-based opinion that it does not believe to be true."  *Abu Dhabi*, 2012 WL 3584278, at *10 (emphasis in original); *see also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (Scheindlin, J.) ("[E]xperts may not invade the court's province by testifying on issues of law.").  ██████████

████████████████████████████████████████████████████████

Similarly, Ms. van Acoleyen's anticipated testimony "that the individuals who in fact comprised the committee that rated the Cheyne SIV were appropriately trained and experienced to undertake the rating of the Cheyne SIV, and that they did so consistent with S&P's then-existing criteria, methodologies and guidelines for the rating of SIVs" (Ex. 14, ¶27) and that "in the rating of the Cheyne SIV S&P followed its customary and usual practices" (*id.*, ¶28) invades improperly the province of the jury.  So too does Ms. van Acoleyen's testimony "that the approach the S&P Cheyne

- 29 -

SIV rating committee used to evaluate and rate the Cheyne SIV was consistent with S&P's published SIV criteria and with the publications that specifically described the Cheyne SIV ratings." *Id.*, ¶39.

Accordingly, Ms. van Acoleyen should not be permitted to testify, if at all, on topics for which she lacks expertise and/or personal knowledge or which are issues of fact for the jury or of law for the Court.[18]

## VI.   CONCLUSION

For the reasons set forth herein, the Court should grant plaintiffs' *Daubert* motions to exclude expert testimony.

DATED:  February 8, 2013            Respectfully submitted,

                                                ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
                                                MICHAEL J. DOWD
                                                DANIEL S. DROSMAN
                                                DARRYL J. ALVARADO
                                                ANGEL P. LAU
                                                HILLARY B. STAKEM


                                                      s/ DANIEL S. DROSMAN
                                                  DANIEL S. DROSMAN

---

[18]       Plaintiffs have not provided an exhaustive list of every improper opinion contained in Ms. van Acoleyen's Rule 26(a)(2)(C) disclosures.  In the event the Court permits Ms. van Acoleyen to testify, plaintiffs reserve their right to object at trial to testimony proffered by Ms. van Acoleyen that is duplicative or for which she lacks expertise and/or personal knowledge or which goes to issues of fact for the jury or of law for the Court.

812379_1

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
miked@rgrdlaw.com
ddrosman@rgrdlaw.com
dalvarado@rgrdlaw.com
alau@rgrdlaw.com
hstakem@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
LUKE O. BROOKS
JASON C. DAVIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
lukeb@rgrdlaw.com
jdavis@rgrdlaw.com

Attorneys for Plaintiffs

POMERANTZ GROSSMAN HUFFORD
   DAHLSTROM & GROSS LLP
MARC I. GROSS
TAMAR A. WEINRIB
600 Third Avenue
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
migross@pomlaw.com
taweinrib@pomlaw.com

Additional Attorneys for Plaintiff State Board of
Administration of Florida

CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2013, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on February 8, 2013.

s/ DANIEL S. DROSMAN
DANIEL S. DROSMAN

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: ddrosman@rgrdlaw.com

## Mailing Information for a Case 1:08-cv-07508-SAS-DCF

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Mario Aieta**
  maieta@ssbb.com,managingclerk@ssbb.com,marioaieta@gmail.com,dgerard@ssbb.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Greg Donald Andres**
  greg.andres@davispolk.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Gina Marie Castellano**
  gina.castellano@davispolk.com

- **Dai Wai Chin Feman**
  dchinfeman@ssbb.com

- **Joel M. Cohen**
  jcohen@gibsondunn.com,aarias@gibsondunn.com,mkdunning@gibsondunn.com,snurhussein@gibsondunn.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com

- **Patrick Joseph Coughlin**
  patc@rgrdlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Michael Joseph Dowd**
  miked@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,jillk@rgrdlaw.com,E_File_SD@rgrdlaw.com,nlindell@rgrdlaw.com,tholindrake@rgrdlaw.com,jcharo@rgrdlaw.com

- **Mary K Dunning**
  mkdunning@gibsondunn.com,dwolber@gibsondunn.com,mkatz@gibsondunn.com,aarias@gibsondunn.com,arublin@gibsondunn.com,pwade@gibsondunn.com,cdieng

- **Jessica Lynn Freese**
  jessica.freese@davispolk.com

- **Charles Alan Gilman**
  cgilman@cahill.com

- **Marc Ian Gross**
  migross@pomlaw.com

- **Goutam Umesh Jois**
  gjois@gibsondunn.com

- **Christopher Michael Joralemon**
  cjoralemon@gibsondunn.com,aarias@gibsondunn.com

- **Mark Adam Kirsch**
  mkirsch@gibsondunn.com,aarias@gibsondunn.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Jeffrey B. Korn**
  jkorn@willkie.com,maosdny@willkie.com

- **Angel P. Lau**
  alau@rgrdlaw.com

- **William Ross Miller , Jr**
  william.miller@dpw.com,ecf.ct.papers@dpw.com

- **Paul Steel Mishkin**
  paul.mishkin@dpw.com

- **Tariq Mundiya**
  maosdny@willkie.com,jsim@willkie.com,tmundiya@willkie.com

- **David Owen**
  dowen@cahill.com

- **Antonio Jorge Perez-Marques**
  antonio.perez@dpw.com,ecf.ct.papers@dpw.com

- **Dean I. Ringel**
  DRingel@Cahill.com,JHall@cahill.com

- **Christopher Joseph Roche**
  croche@kaplanrice.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com,ecf.ct.papers@davispolk.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com,jdoty@ssbb.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew Dickens Schlichter**
  andrew.schlichter@dpw.com

- **Jessica T. Shinnefield**
  jshinnefield@rgrdlaw.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Robert Frank Wise , Jr**
  rwise@dpw.com,ecf.ct.papers@dpw.com

- **Aaron Mark Zeisler**
  azeisler@ssbb.com,managingclerk@ssbb.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

- **Lawrence Jay Zweifach**
  lzweifach@gibsondunn.com,aarias@gibsondunn.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
David C. Walton
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301
```